UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, ) | |
| LUCINDA COX, ) | |
| STEPHANIE SNYDER Individually and on ) | |
| behalf of others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| SHERMAN CAPITAL LLC, ) | |
| MEETING STREET PARTNERS II INC., ) | |
| SHERMAN FINANCIAL GROUP LLC, ) | |
| SHERMAN CAPITAL MARKETS LLC, ) | |
| LVNV FUNDING LLC, ) No. 1:12-cv-01654-TWP-MJD |
| RESURGENT CAPITAL SERVICES LP, ) | |
| SHERMAN ORIGINATOR III LLC, ) | |
| SHERMAN ACQUISITION LLC, ) | |
| BENJAMIN W. NAVARRO, ) | |
| LESLIE G. GUTIERREZ, ) | |
| SCOTT E. SILVER, ) | |
| KEVIN P. BRANIGAN, ) | |
| ROBERT A. RODERICK, ) | |
| KENNETT KENDALL, ) | |
| JOHN DOES 1-50, ) | |
| SHERMAN ORIGINATOR LLC, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Andrew Cox, Lucinda Cox, and Stephanie Snyder's ("Plaintiffs") Motion, on behalf of themselves and the Class, for Class Certification, filed on November 9, 2012. [Dkt. 5.] For the following reasons, the Magistrate Judge recommends that the district judge **GRANT** the motion and **CERTIFY** the subclasses.

1

## I. **Background**

This suit alleges fraud, unjust enrichment, racketeering, and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. [Dkt. 77 at 1.] Plaintiffs filed their Complaint on November 9, 2012, and on the same day Plaintiffs also filed their Motion for Class Certification. [Dkts. 1, 5.] Plaintiffs did not file a brief in support of their Motion for Class Certification, but two pages in the Complaint were dedicated to a number of Class Action Allegations. [Dkt. 1 at 20-21.] In their Complaint, Plaintiffs allege that their action is brought on behalf both themselves as individuals and on behalf of three subclasses: (1) an FDCPA Subclass, (2) a Restitution Subclass, and (3) a RICO Subclass. [*Id.*]

In response to Plaintiffs' Complaint, on January 22, 2013, Defendants Sherman Capital LLC et al. ("Defendants") filed a Motion to Dismiss alleging, in part, that Plaintiffs lack personal jurisdiction over all Defendants, other than LVNV Funding LLC ("LVNV"). [Dkt. 21.] Upon encountering difficulty in conducting the discovery necessary to respond to Defendants' Motion to Dismiss, the Plaintiffs filed, and the Court granted, two motions to compel answers from the six named Defendants during their depositions. [Dkts. 40, 55, 77, 88.] The Court accordingly ordered that the depositions in question should proceed without further obstruction, though limited the scope of the depositions to the issue of personal jurisdiction only, as requested by the Defendants. [Dkts. 55, 91.] The depositions were finally completed by June 21, 2013 [dkt. 130-15], and on July 3, 2013 Plaintiffs filed their response to Defendants' Motion to Dismiss. [Dkt. 130.]

Meanwhile, on May 15, 2013, Defendants filed their Response in Opposition to Plaintiffs' Motion for Class Certification. [Dkt. 70.] In the midst of compelling the named Defendants to respond to certain lines of questioning during their depositions, Plaintiffs did not

file, nor were they required to file, a reply brief.  The Court now rules on Plaintiffs' Motion for Class Certification with full knowledge that Plaintiffs' access to certification discovery was restricted, in part, by the aforementioned discovery disputes.

## II. Standard of Review

Pursuant to Rule 23, the named parties of a class of plaintiffs may sue on behalf of all the members of the class if:

> (1) the class is so **numerous** that joinder of all members is impracticable;
> (2) there are questions of law or fact **common** to the class;
> (3) the claims or defenses of the representative parties are **typical** of the claims or defenses of the class; and
> (4) the representative parties will fairly and **adequately** protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).  Additionally, the movants must also prove that (5) "the questions of law or fact common to class members **predominate** over any questions affecting only individual members," and (6) "a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added); *see Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997) (acknowledging that predominance and superiority are additional "criteria" of the class certification analysis); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (noting that a proposed class must meet both the 23(a) requirements of numerosity, typicality commonality and adequacy and the 23(b) requirements of predominance and superiority in order to be certified).

The determination of whether to certify a putative class is within the broad discretion of the district court.  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  While consideration of class certification is not "a dress rehearsal for trial on the merits," the court "must receive evidence and resolve the disputes before deciding whether to certify the

class." *Messner*, 669 F.3d at 811 (quoting *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003) ("[c]lass certification requires a *rigorous investigation* into the propriety of proceeding as a class") (emphasis added). Accordingly, any evidence that had been submitted to the court should be taken into consideration, such as any motions, briefs, pleadings, or exhibits. *See id.*; *In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 273 F.R.D. 424, 436 (N.D. Ind. 2008) ("[t]he court looks beyond the pleadings to analyze the claims, defenses, relevant facts, and applicable substantive law that may be necessary to determine whether certification is appropriate").

The burden of proof is on the named plaintiffs to show that a proposed class meets the Rule 23 requirements. *Messner*, 669 F.3d at 811. However, Rule 23 also mandates that a court determine whether to certify the proposed class "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). The Seventh Circuit interprets this timing requirement to mean that "a judge should determine whether to grant or deny certification *prior* to ruling on the merits." *Chavez v. Illinois State Police*, 251 F.3d 612, 630 (7th Cir. 2001) (emphasis added). It can even be preferential for the plaintiffs to move to certify the class at the same time that they file their complaint in order to prevent any efforts by the defendants to buy off the named plaintiffs. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011).

Where there has been no discovery on the issue of class certification, the district court may rule on the appropriateness of class certification by construing all reasonable inferences in favor of the named plaintiffs. *See, e.g.*, *Boyce v. Wachovia Sec., LLC*, 5:09-CV-263-FL, 2010 WL 1253744 (E.D.N.C. Feb. 17, 2010) ("any such ambiguities in the complaint will be construed in favor of the plaintiffs and in favor of a class allegation"); *Sjoblom v. Charter*

*Commc'ns, LLC*, 3:07-CV-0451-BBC, 2007 WL 4560541 (W.D. Wis. Dec. 19, 2007) ("[b]ecause defendants challenge class certification solely on the basis of the allegations in the complaint, the proper standard is the same as that applied in deciding a motion to dismiss for failure to state a claim"); *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 614 (W.D. Wis. 2003) ("when there has been no discovery and the defendants challenge class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim").

### III.  Discussion

When there are several, distinct subclasses within one putative class, each subclass may be treated as its own class.  Fed. R. Civ. P. 24(c)(5); *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 599 (7th Cir. 1993) ("[s]ubclasses must satisfy the class action requirements before they may be certified").  Accordingly, the named plaintiffs bear the burden of proving each element of certification for each subclass.  *See Messne*r, 669 F.3d at 811.  In order for a subclass to be certified, each member of the subclass must want the same relief. *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 368 (7th Cir. 2012).  A definition of a class or subclass may not be so broadly defined so as to include potential parties who were not harmed by the defendant's alleged conduct.  *Messner*, 669 F.3d at 825; *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).  In this matter, the named plaintiffs define three separate subclasses, and the Court will address each subclass individually.

   A. ***The FDCPA Subclass***

The named Plaintiffs define the FDCPA subclass as

   (i)   all Indiana citizens
   (ii)  who were the subject of collection activity by the Defendants

  (iii)  in an attempt to collect a debt incurred for personal, family, or household purposes
  (iv)  which were served with process or contacted in any matter by Defendants
  (v)  during the one year period prior to the filing of this original complaint in this action through trial of this cause which are in violation of the FDCPA.

[Dkt. 1 at 20.] The Seventh Circuit has recognized that, because the FDCPA "is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not," a named plaintiff who did not suffer actual damages may properly represent a class that purportedly suffered actual damages. *Keele v. Wexler*, 149 F.3d 589, 593-94 (7th Cir. 1998). The focus of a class certification analysis is, therefore, not on whether a plaintiff paid or did not pay the alleged debt, but is instead on the debt collector's misconduct. *Id.* at 594.

  1. **Numerosity**

  Defendants allege that Plaintiffs fail to meet their burden for proving the numerosity requirement by relying exclusively on "boilerplate allegations based on information and belief," arguing that further proof is needed. [Dkt. 70 at 7-8.] It is true that Plaintiffs may not rely on "conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). However, it is also true that "plaintiffs are not required to specify the exact number of persons in the class." *Id.* In certifying an FDCPA class, evidence of widespread use by a commercial defendant of standard, form collection letters is sufficient to satisfy the numerosity requirement. *See, e.g.*, *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 296 (N.D. Ill. 2007).

  In their complaint, Plaintiffs allege that Defendants' "thousands of phone calls and dunning letters and hundreds of filings of virtually identical lawsuits" make joinder of all of the class members impracticable. [Dkt. 1 at 20.] If true, such widespread, automated acts of debt collection would qualify as the exact kind of act that *Wahl* and other cases have found meet the

numerosity burden. Because the Court assumes the truth of plaintiff's assertions until certification discovery is able to be conducted, these allegations meet the numerosity requirement for Plaintiffs' FDCPA class.

### 2. Commonality/Predominance

Defendants further argue that Plaintiffs have not adduced proof that there are common issues of law or fact or that any such common issues predominate over individual issues in this matter. [Dkt. 70 at 12.] It is the Defendants, however, who do not make any specific arguments against the FDCPA class's commonality or predominance, focusing their arguments instead against the RICO and Restitution subclasses. [*See id.* at 12-17.] In their Complaint, Plaintiffs allege that the factual issue in common is whether the putative class members were subject to collection activity by an unlicensed or unregistered collector. [Dkt. 1 at 20.] Plaintiffs go on to assert that whether such actions, if proven, were in violation of the FDCPA is the principal legal issue for this purported subclass, and these common issues predominate over any questions affecting an individual member. [*Id.* at 20-21.]

As recognized by the Supreme Court, the commonality requirement is "subsumed" by the more restrictive predominance requirement, so the two elements will be examined together. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 609 (1997). A "common nucleus of operative fact" in a putative FDCPA class does not rest on common payment activity of the members, but on the common activity of the collector(s). *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("the fact that Keele did not pay the collection fee is largely irrelevant; factual variations among class members' grievances do not defeat a class action"). Predominance, specifically, exists when the common questions are significant and the resolution of the common questions in a single adjudication resolves the questions for all of the members of the putative class. *Messner*

*v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).  As there is no evidence that contradicts Plaintiffs' assertions that the FDCPA class meets the commonality and predominance requirements, our inquiry continues to the following requirements.

### 3. Typicality

Defendants argue against typicality by asserting that, because LVNV actually owned the alleged debts of the Plaintiffs, the Plaintiffs are not a member of the FDCPA class.  [Dkt. 70 at 10.]  Plaintiffs, however, assert that their claims are typical of those of the putative class members because the claims are based on the same facts and legal theories.  [Dkt. 1 at 21.]  Some of the facts that are allegedly typical of the FDCPA class include the Defendants' acts to collect Plaintiffs' alleged debt, such as sending collection letters and making telephone calls, while Defendants lacked authorization to collect on debts in the State of Indiana.  [*Id.* at 5-8.]

Typicality exists when the plaintiff's claim arises out of the "same event or practice or course of conduct" and when the same legal theories and defenses apply to said claims.  *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quotations omitted).  In the FDCPA context, the emphasis is, again, on the uniform acts of the defendant toward each individual, not the uniform position of the individual plaintiffs.  *See id.*  Assuming that Plaintiffs can prove that Defendants attempted to collect on the putative members' assets in a sufficiently similar and improper manner, then such uniform course of conduct meets the typicality requirement, regardless of the validity of the sought-after debt.

### 4. Adequacy

Courts within the Seventh Circuit have identified a three-part test for adequacy in the context of FDCPA class certification:

> (1) the class representative cannot have antagonistic or conflicting claims with other members of the class,

> (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy, and
> (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*See, e.g.*, *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995). Plaintiffs assert that retained counsel is experienced in handling FDCPA cases and class actions, and neither the Plaintiffs nor their Counsel have an interest adverse to the vigorous pursuance of this action. [Dkt. 1 at 21.] Defendants dispute the third element only, noting that Plaintiffs' Counsel has not offered evidence of their class counsel experience and arguing that Plaintiffs' Counsel has lacked diligence in the litigation of the present case. [Dkt. 70 at 11.]

First, the Defendants argue that Plaintiffs' failure to present certification discovery is evidence of inadequacy of representation. However, the presentation of certification discovery is irrelevant at this stage of the proceedings, and certification cannot be denied on that ground. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (noting that counsel "failed to develop a full record for *summary judgment* consideration," not class certification consideration). Defendants in their brief cite to *Gomez* for support, but the facts are distinguishable—there, the prosed Class Counsel had previously been adjudicated inadequate to represent a class in a related case, which is not the case in this matter. *Id.*

Defendants then argue that Plaintiffs' decision to not withdraw this, admittedly scant, Motion for Class Certification and re-file after conducting further discovery amounts to a breach of proposed counsel's fiduciary duty to the proposed class. [Dkt. 70 at 11.] Defendants' support for this argument, however, is also scant, relying on a case where the proposed class counsel had blatantly violated the ABA and the Illinois Codes of Professional Responsibility during the course of the representation. *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F. Supp. 643, 656

9

(N.D. Ill. 1986). While Plaintiffs' counsel's efforts were indeed minimal with regard to this Motion for Class Certification, such minimalism does not rise to inadequacy of counsel.

Finally, Defendants argue that Plaintiffs' counsel's general lack of diligence and case management skills should disqualify his as an adequate attorney. [Dkt. 70 at 11.] For this assertion, Defendants rely on a case that rejected class counsel due to the "lack of careful management of the discovery process." *Davidson v. Citizens Gas & Coke Util.*, 238 F.R.D. 225, 227 (S.D. Ind. 2006). However, Plaintiffs' counsel has won both of their motions to compel discovery filed in this matter. Thus, when taking into account "counsel's performance in the very litigation at issue," as Defendants urge the Court to do, the Court finds Plaintiffs' record to be satisfactory. *Id.* at 231. Accordingly, provided, again, that Plaintiffs prove their assertions to be true, Plaintiffs have met their burden in meeting the adequacy requirement of class certification.

### 5. Superiority

Courts examining FDCPA class certification have recognized that the "guiding principle" of the superiority requirement is the preservation of the economies of time, effort, and expense and the promotion of uniformity among persons similarly situated, balanced against the procedural fairness and desirable results. *Avila v. Van Ru Credit Corp.*, No. 94 C 3234, 1995 WL 41425 at *6 (N.D. Ill. Jan. 31, 1995). While Plaintiffs assert that a class action would be superior to other available methods, Defendants argue that an FDCPA claim in general is not suitable for a class action because recovery would not be minimal and the FDCPA allows recovery of attorney's fees and costs. [Dkt. 70 at 19-20.]

Defendants' arguments here are without merit. If Defendants' allegations were true then any purported FDCPA class certification would fail on the issue of superiority merely by virtue

of being brought on FDCPA claims.  However, Defendants fail to acknowledge that federal courts throughout the United States, including the Seventh Circuit, have repeatedly certified class actions brought under the FDCPA.  *See, e.g.*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (ruling on a defendant's invalid defense in an FDCPA-based class action lawsuit); *Vassalle v. Midland Funding LLC,* 708 F.3d 747 (6th Cir. 2013) (ruling on the settlement of an FDCPA class action lawsuit); *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011) (ruling on the liability of a defendant in an FDCPA class action lawsuit); *Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098 (10th Cir. 2010) (finding award of attorneys' fees reasonable in FDCPA class action lawsuit); *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004) (finding that an offer of judgment to plaintiff did not render moot the FDCPA class action lawsuit); *Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) (finding certification appropriate in an FDCPA class action lawsuit).

In practice, the fact that a putative class's claim is brought under the FDCPA weighs in favor of the superiority requirement.  Specifically, "it is reasonable to assume that the class members, alleged to have previously defaulted on credit card debts, may not be in a financial position to pursue individual lawsuits."  *See, e.g.*, *Foreman v. PRA III*, LLC, No. 05 C 3372, 2007 WL 704478 (N.D. Ill. Mar. 5, 2007).  In light of such a nature of FDCPA claims, the Court finds that the superiority requirement is met.  Having found each of the class certification elements to be so satisfied, the Court hereby recommends that the district judge certify the Plaintiffs' FDCPA subclass.

### B. *The RICO Subclass*

The named Plaintiffs define the RICO subclass as

    (i)     all Indiana citizens
    (ii)    who paid money to Defendants

   (iii) under Defendants scheme to defraud
   (iv) using the mail or wires
   (v) during the four year period prior to the filing of this original complaint in this action through trial of this cause.

[Dkt. 1 at 20.]  The Seventh Circuit, in approving certification of a RICO class, has held that "[t]he fact that there is some factual variation among the class grievances will not defeat a class action." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992).  In other words, while a defendant's alleged fraudulent misrepresentation scheme may affect different members of a class of plaintiffs to different degrees, the fact that the class members each suffered *some* degree of damage satisfies the requirements of RICO class certification.  *See id.*

### 1. Numerosity

Defendants make no argument against numerosity that is unique to the RICO subclass [dkt. 70 at 7-8], and Plaintiffs similarly rely on their allegations of "thousands of phone calls and dunning letters and hundreds of filings of virtually identical lawsuits" [dkt. 1 at 20] to assert numerosity.  In the context of a putative RICO class, a court is entitled to make "common sense assumptions in order to find support for numerosity." *Nat'l Org. For Women*, Inc. v. Scheidler, 172 F.R.D. 351, 359 (N.D. Ill. 1997) (citations omitted).  Assuming that Plaintiffs' allegations are true, it is reasonable to conclude that the RICO subclass would indeed be so numerous that joinder is impractical, and the numerosity requirement is satisfied.

### 2. Commonality/Predominance

Plaintiffs assert that the RICO subclass shares the common factual issue of "whether Defendants committed a scheme of fraud using the mail, wireless, telephone, faxes, and Internet." [Dkt. 1 at 21.]  Plaintiffs additionally assert that the questions of law or fact common to the class are predominant. [*Id.*]  In response, Defendants assert that Plaintiffs' RICO claims "involve extensive individualized inquiries regarding injuries and damages." [Dkt. 70 at 17.]

Specifically, Defendants argue that (1) Plaintiffs have not plead class-wide reliance on a uniform misrepresentation and (2) members of the putative RICO class have suffered individualized damages that make a class action unsustainable. [Dkt. 70 at 12-18.]

The Seventh Circuit has noted, in the RICO class context, that "the fact that there is some factual variation among the class grievances will not defeat a class action," so long as there is a common nucleus of operative fact that predominates over individualized inquiries. *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). Such common questions in RICO class actions include whether there was an enterprise, whether extortion was committed, threatened, or conspired to be committed, whether defendants' illegal activities constituted a pattern of racketeering, and whether such activities caused the class members to suffer injury. *See Nat'l Org. For Women, Inc. v. Scheidler*, 172 F.R.D. 351, 360 (N.D. Ill. 1997).

Individualized inquiries do not seem to predominate over the class-wide inquiries. As Defendants point out in their brief, courts outside of the Seventh Circuit have found that the use of "uniform, scripted, and standardized materials" can be indicative of a uniform misrepresentation. [Dkt. 70 at 15, (citations omitted).] Plaintiffs assert that Defendants' debt collection activities were indeed uniform, alleging that the lawsuits filed were "virtually identical." It is reasonable to conclude that the putative class members could have relied on such a uniform misrepresentation in a manner that satisfies the commonality and predominance requirements. Additionally, the mere fact that the putative class members paid Defendants varying amounts does not defeat a class action, as *Rosario* makes it clear that a varying degree of damages suffered by putative class members does not defeat certification. In fact, a swift examination of a bank statement, business records, or a court judgment will evidence any damages suffered by each class member, so any individualized inquiry would not be "extensive,"

and such an inquiry would not defeat the predominance of class-wide questions of law or fact. Accordingly, the commonality and predominance requirements of the RICO subclass are met.

### 3. Typicality

Because none of the named plaintiffs voluntarily paid their alleged debts, Defendants argue that the typicality requirement is not met. [Dkt. 70 at 9-10.] The Plaintiffs, however, argue that they have suffered adequate and direct harm, such as legal fees and damaged credit ratings, which have caused each named plaintiff varied financial repercussions. [Dkt. 130 at 20; 130-21 at 3-4; 130-22 at 3; 130-23 at 2.] Again, the Seventh Circuit in *Rosario* emphasizes that a RICO class does not fail due to varying degrees of damages suffered by the putative class members, even when certain members were "satisfied" with the defendant's services. 963 F.2d at 1018 (finding that, while a "satisfied" class member may have suffered less injury, that is not to say that the member suffered "no injury," and the typicality requirement was deemed satisfied). So long as the class representatives suffered damages as a result of Defendants' fraudulent misrepresentations, the typicality requirement is satisfied.

### 4. Adequacy

Defendants make no arguments that are unique to any particular subclass with regard to the adequacy requirement. [Dkt. 70 at 10-12.] Accordingly, this analysis is identical to the analysis conducted for the adequacy element of the FDCPA subclass certification, and Plaintiffs have met their burden for the adequacy of the putative RICO subclass.

### 5. Superiority

In arguing against superiority of the RICO class, Defendants make a parallel argument to their defense of the FDCPA class certification. [Dkt. 70 at 19-20.] Defendants' argument is, again, without merit, as the mere fact that a class action is brought under RICO does not defeat

the superiority requirement of class certification. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241 (3d Cir. 2009); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350 (11th Cir. 2009); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 659 (7th Cir. 2004). Although courts are hesitant to certify a nationwide RICO class that would require a court to examine the elements of common law fraud for each individual state, the application of one state's laws renders such a class action superior to individual law suits. *See In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 293-94 (N.D. Ill. 1999). Here, the putative RICO subclass is limited to "all Indiana citizens," so the superiority requirement is met. Having found each of the class certification elements to be so satisfied, the Court recommends that the district judge certify the Plaintiffs' RICO subclass.

### C. The Restitution Subclass

The named Plaintiffs define the restitution subclass as

(i) all Indiana citizens
(ii) who paid money to Defendants
(iii) in regard to an alleged debt owed to Defendants
(iv) during the six year period prior to the filing of the original complaint in this action through the trial of this cause.

[Dkt. 1 at 20.] Under the Restatement of Restitution, a person who has been unjustly enriched at the other's expense is required to make restitution to the other, as measured not by the plaintiff's loss but by the defendant's unjust gain. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 487 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010). A purported restitution or unjust enrichment class fails when there is no proof of deception or where proof of the amount of unjust enrichment cannot be shown. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006).

#### 1. Numerosity

Again, Defendants make no argument against numerosity that is unique to the Restitution subclass [dkt. 70 at 7-8], and Plaintiffs rely on their allegations of "thousands of phone calls and

dunning letters and hundreds of filings of virtually identical lawsuits" [dkt. 1 at 20] to assert numerosity. Assuming that Plaintiffs' allegations are true, it is reasonable to conclude that the Restitution subclass would indeed be so numerous that joinder is impractical, and the numerosity requirement is satisfied.

### 2. Commonality/Predominance

Plaintiffs assert that "[t]here are questions of law or fact common to the classes, which common issues predominate over any issues involving only individual class members." [Dkt. 1 at 20.] Specifically with regard to the Restitution subclass, Plaintiffs plead that the common factual issue is "whether Defendants received monetary benefit from members," and the legal issues are "whether Defendants engaged in collection without legal standing and whether it would be inequitable for Defendants to retain the benefit without paying fair value for it." [*Id.* at 21.] In response, Defendants argue that common issues of law or fact do not predominate because (1) the misrepresentation element cannot be proven by non-uniform, oral representations, (2) the reliance element is an individualized fact inquiry, (3) there is no class-wide evidence of actual damages, and (4) whether enrichment is "unjust" is an individualized fact inquiry. [Dkt. 70 at 12-19.]

First, although Defendants' first argument is factually correct, it is not properly applied to Plaintiffs' assertions. It is true that the use of non-uniform or oral misrepresentations would cause that element of fraud to sway in favor of individualized litigation "when the stakes are large enough to justify individual suits." *See Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 957 (7th Cir. 1998). However, the Plaintiffs allege that the Defendants employed "robo-signed affidavits" and "hundreds of filings of virtually identical lawsuits" in their pursuance of Plaintiffs' alleged debt. [Dkt. 1 at 20, 27.] Such acts could reasonably be

16

considered sufficiently uniform in order for the misrepresentation element of common law fraud to weigh in favor of class certification.

Defendants then argue that two further elements of actual fraud in Indiana, reliance and damages, require individualized inquiry. There are five elements to actual fraud: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kesling v. Kesling*, 546 F. Supp. 2d 627, 638 (N.D. Ind. 2008). While reliance may be an individualized inquiry, damages in a suit for unjust enrichment are not measured by the Plaintiffs' individual losses, but by the Defendants' unjust gain. *See Saltzman v. Pella Corp.*, 257 F.R.D. 471, 487 (N.D. Ill. 2009) *aff'd*, 606 F.3d 391 (7th Cir. 2010). The amount of money that Defendants collected as a result of such uniform and false misrepresentations can be determined by examining bank statement, business records, or court judgments, for example. As such, the issue of damages to the Restitution subclass is not, as Defendants assert, an individualized inquiry. Thus, only one of the five elements of actual fraud weighs against class certification, and the common issues of law or fact predominate.

Finally, Defendants argue that "unjust" is a subjective measure, and that unjust enrichment by definition requires individualized inquiry. Because unjust enrichment is a claim that is specific to state law, cases where claims of unjust enrichment would involve putative members from more than one state are typically not certified as class actions. *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 531 (N.D. Ill. 2008). Because the putative Restitution subclass is restricted to "all Indiana citizens," this is not a reason for finding certification inappropriate.

The underlying liability on which the unjust enrichment claim is based impacts whether a particular claim for unjust enrichment requires individualized inquiry.  *See In re FedEx Ground Package Sys., Inc., Employment Practices Litig.*, 283 F.R.D. 427 (N.D. Ind. 2012) (finding that certification is appropriate where employment status can be measured by operating agreement or company policy while certification is inappropriate in states that require inquiry into the actual relationship to prove employment status).  Here, the unjust enrichment claim is predicated on actual fraud, which the Court has already discussed and found ripe for certification.  Because the common issues of law or fact for the fraud claims predominate over those that require individual inquiry and because the Plaintiffs' unjust enrichment claim is based on Defendants' alleged fraud, the commonality and predominance requirements have been met.

### 3. Typicality

In an identical argument as against the RICO subclass, Defendants argue that the typicality requirement is not met because none of the named plaintiffs voluntarily paid their alleged debts.  [Dkt. 70 at 9-10.]  Again, Plaintiffs argue that they have suffered adequate and direct harm, such as legal fees and damaged credit ratings, which have caused each named plaintiff varied financial repercussions.  [Dkt. 130 at 20; 130-21 at 3-4; 130-22 at 3; 130-23 at 2.]  In the context of a Restitution class, the typicality requirement can be satisfied "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."  *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 526 (N.D. Ill. 2008) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)) (finding that the unjust enrichment claim met the typicality requirement).  So long as the class representatives' claims "arise from the same event or practice or course of conduct," the typicality requirement is met.

*Id.* Because Plaintiffs allege a common scheme of fraud from which all the members' injuries are derived, the typicality requirement is met.

### 4. Adequacy

Defendants make no arguments that are unique to any particular subclass with regard to the adequacy requirement. [Dkt. 70 at 10-12.] Accordingly, this analysis is identical to the analysis conducted for the adequacy element of the FDCPA subclass certification, and Plaintiffs have met their burden for the adequacy of the putative Restitution subclass.

### 5. Superiority

Defendants make no arguments against superiority that are specific to the Restitution subclass; they merely assert, without citing to any case law, that Plaintiffs' "bald assertion" that the superiority requirement is met is insufficient. [Dkt. 70 at 19.] Even where one sentence in a forty-five page complaint is in itself a bald assertion, the Court has a duty to look to the entire record in determining whether class certification is appropriate. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). Similar to the RICO class analysis, a single nationwide Restitution class, which would require inquiry into the law of many states, is unmanageable, but a class limited to members whose cases can be decided through inquiry into the law of limited states is sufficient for certification. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002). Because the Restitution subclass is restricted to "all Indiana citizens," it would be more fair and efficient to decide the putative members' cases in a class action, making it superior to individual actions. Having found each of the class certification elements to be so satisfied, the Court recommends that the district judge certify the Plaintiffs' Restitution subclass.

Therefore, the Court recommends that the district judge invoke its broad discretion and **GRANT** Plaintiffs' Motion for Class Certification. [Dkt. 5]. However, if further discovery during the litigation of this matter reveals evidence contrary to any of the reasonable inferences of this decision, Defendants may move to decertify the class pursuant to Rule 23.

### IV. Conclusion

For the aforementioned reasons, the Court should **GRANT** Plaintiffs' Motion for Class Certification. [Dkt. 5.] Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 07/18/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:
All Electronically Registered Counsel