UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANDREW  COX,                                    )
LUCINDA  COX,                                   )
STEPHANIE  SNYDER,                              )
                                                )
                    Plaintiffs,                 )
                                                )
            vs.                                 )
                                                )
SHERMAN CAPITAL LLC,                            )
MEETING STREET PARTNERS II INC.,                )
SHERMAN FINANCIAL GROUP LLC,                    )
SHERMAN CAPITAL MARKETS LLC,                    )
LVNV FUNDING LLC,                               )
RESURGENT CAPITAL SERVICES LP,                  )     No. 1:12-cv-01654-TWP-MJD
SHERMAN ORIGINATOR III LLC,                     )
SHERMAN ACQUISITION LLC,                        )
BENJAMIN W. NAVARRO,                            )
LESLIE G. GUTIERREZ,                            )
SCOTT E. SILVER,                                )
KEVIN P. BRANIGAN,                              )
ROBERT A. RODERICK,                             )
KENNETT  KENDALL,                               )
JOHN DOES 1-50,                                 )
SHERMAN ORIGINATOR LLC,                         )
                                                )
                    Defendants.                 )


# REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants Sherman Capital LLC, Meeting Street

Partners II Inc., Sherman Financial Group LLC, Sherman Capital Markets LLC, LVNV Funding

LLC, Resurgent Capital Services LP, Sherman Originator LLC, Sherman Originator III LLC,

Sherman Acquisition LLC, Benjamin W. Navarro, Leslie G. Gutierrez, Scott E. Silver, Kevin P.

Branigan, Robert A. Roderick, and Kennett Kendall's ("Defendants") Motion to Dismiss. [Dkt. 21.] For the following reasons, the Magistrate Judge recommends that the district judge **GRANT** in part and **DENY** in part Defendants' motion.

## I. Background

This matter involves claims brought by Plaintiffs Andrew Cox, Lucinda Cox, and Stephanie Snyder, individually and on behalf of others similarly situated, ("Plaintiffs") alleging common law fraud, unjust enrichment, and restitution; three counts of Fair Debt Collection Practices Act (FDCPA) violations; and three counts of Racketeer Influenced and Corrupt Organizations Act (RICO) violations. [Dkt. 1.]

Plaintiff Andrew Cox, who served as a financial analyst for the FBI for five years, has a total of twenty-eight years of experience in banking and finance experience, including securitization and collection compliance. [*Id.* at 4] In June 2010, Mr. Cox and his wife (and co-signor), Lucinda Cox, allegedly began to receive collection letters and phone calls from Defendants "and a cadre of other agents" regarding alleged debt that was originally due to Chase Bank. [*Id.* at 4-5.] Mr. Cox claims to have made several telephonic and written requests that Defendants prove their ownership of the alleged debt, apart from a Chase billing statement from November 2011, and to have notified Defendants that they were not licensed or registered in Indiana. [*Id.* at 5.] Without being provided answers to these questions, Defendants allegedly continued to pursue their collection of Cox's alleged debt. [*Id.*]

Defendants also collected on the alleged debt of Plaintiff Stephanie Snyder. Defendants then pursued Ms. Snyder's alleged Sears/Citibank debt, basing their ownership on a "non-notarized, robo-signed affidavit." [*Id.*] After Defendants obtained a default judgment against Ms. Snyder, her wages were garnished beginning in September 2012. [*Id.* at 5-6.] Ms. Snyder,

however, avers that she had no knowledge of Defendants or their suit against her until the Proceeding Supplemental was mailed to her employer on the matter, after the default judgment had been entered against her. [*Id.* at 5.]

The six individual defendants together "own, manage, direct, operate, supervise, and oversee the business activities of all the Sherman business entities." [*Id.* at 6.] Defendant Navarro was the Chief Executive Officer of Defendant Sherman Financial Group and Chairman of Defendant Sherman Capital Markets. [Dkt. 130 at 7-8.] Defendant Gutierrez was Chief Financial Officer of Defendant Sherman Capital Markets and of Defendant Sherman Financial Group, conducting "financial reporting for all Sherman entities." [Dkt. 130 at 6 (quoting dkt. 130-17 at 9).] Defendant Silver is the Vice President of Defendant Sherman Capital, the General Counsel for Defendant Sherman Capital Markets, and the solitary lawyer for all the named corporate defendants aside from Defendant Resurgent, whose lawyers Defendant Silver oversees. [Dkt. 130 at 6-7.] Defendant Branigan is the President for Defendant LVNV, an investment banker for Defendant Sherman Capital Markets, the Vice President of Defendant Sherman Financial Group, the Vice President of Defendant Sherman Capital, an officer of Defendant Sherman Originator III, an officer of Defendant Sherman Originator, and possibly an officer of Defendant Sherman Acquisition. [Dkt. 130 at 7.] Defendant Roderick is a Director at Defendant Sherman Capital Markets and the Manager of Alegis Group, of which Defendant Sherman Financial Group is a limited partner, and provides operational review, such as review of the purchasing of Defendant Sherman Financial Group's credit card accounts. [*Id.*] Defendant Kendall is the Chief Financial Officer of Defendant Sherman Capital Markets and the Treasurer of LVNV, preparing daily financial reports for Moody's and banks. [*Id.* at 6.]

The interrelation of the named corporate defendants is no clearer. When this suit was filed, Defendant Sherman Capital wholly owned Defendants Sherman Capital Markets and Sherman Financial Group, and since the Complaint was filed Defendant Meeting Street Partners II was collapsed into Defendant Sherman Capital for "tax reasons." [Dkt. 130 at 3.] Defendant Sherman Financial Group in turn wholly owns Defendant Sherman Originator, which itself owns Defendant LVNV. [Dkt. 130 at 4.] In addition to owning Defendant Sherman Originator, Defendant Sherman Financial Group also owns Defendants Sherman Originator III, Resurgent Capital Services, and Sherman Acquisition. [*Id.*] Plaintiffs allege that Defendant Sherman Capital does nothing but act as a holding company, as current owner of Defendant Sherman Financial Group. [*Id.* at 3-5.] Defendant Sherman Financial Group is a financial services company, while Defendant Sherman Capital Markets serves as the "investment bankers," raising capital for Defendant LVNV Funding. [*Id.* at 4-5 (quoting dkt. 130-20 at 24).] Plaintiffs also allege that Defendants Sherman Originator, Sherman Originator III, and Sherman Acquisition are all "special purpose vehicles" or "shell companies" that purchase from institutional sellers, which purchases "end up with LVNV." [*Id.* at 4 (quoting dkt. 130-17 at 13).] Defendant LVNV Funding has a servicing agreement with Defendant Resurgent Capital Services, which was hired to collect on LVNV's credit card accounts, such as Plaintiffs' alleged debt. [*Id.* at 6.]

Plaintiffs filed their Complaint on November 9, 2012. [Dkts. 1, 5.] In response to Plaintiffs' Complaint, the six individual defendants and nine corporate defendants discussed above ("Defendants") filed this Motion to Dismiss. [Dkt. 21.] Plaintiffs were permitted to conduct limited jurisdictional discovery so that they could respond to the jurisdictional aspect of Defendants' motion to dismiss. [Dkt. 55.] However, it took Plaintiffs a second successful filing of a motion to compel the individual defendants' deposition responses in order for Plaintiffs to

be able to respond to Defendants' motion. [Dkts. 88, 130.] Defendants filed their reply brief in August 2013 [dkt. 143], and the Court now rules on Defendants' Motion to Dismiss [dkt. 21].

## II. <u>Discussion</u>

In response to a plaintiff's complaint, Rule 12 permits certain defenses to be asserted by motion, so long as the defendant files the motion to dismiss before making a responsive pleading. Fed. R. Civ. P. 12(b). Defendants' motion to dismiss for failure to state a claim upon which relief can be granted and, in the alternative, their motion to dismiss for lack of personal jurisdiction are two such motions. *Id.* at 12(b)(2), (6). When considering dismissal of a plaintiff's complaint, the court must "accept all well-pleaded facts as true, draw all inferences in favor of the plaintiff, and resolve all ambiguities in favor of the plaintiff." *Curtis v. Bembenek*, 48 F.3d 281, 283 (7th Cir. 1995). The Court will address Defendants' motions in succession.

### A. *Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim*

Rule 12(b)(6) permits a defendant to move to dismiss claims against it if the pleadings do not sufficiently plead claims for which relief can be granted. Fed. R. Civ. P. 12(b)(6). While a complaint is not required to have "detailed factual allegations," the factual allegations of the complaint must at least "raise a right to relief above the speculative level" in order to survive a 12(b)(6) motion to dismiss; mere recitation of the elements of a claim is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The alleged factual allegations must state a claim that is "plausible on its face," though the court is allowed to draw "reasonable inference[s]" that lead to a conclusion that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even so, "the bar to survive a motion to dismiss is not high." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (taking into account *Iqbal* and *Twombly*).

In evaluating a 12(b)(6) motion to dismiss, a court may not take into account matters outside the pleadings and their exhibits without converting the motion into a motion for summary judgment, in which case the court must give advance notice to the parties. Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713 (7th Cir. 2013). However, a 12(b)(6) motion to dismiss merely tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir.1990). Where a complaint is dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the district court, absent just cause such as undue burden or futility, is required to freely grant a plaintiff's motion for leave to amend their complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

### 1. Plaintiffs' Common Law Fraud Claim

Defendants argue that the Plaintiffs fail to meet the "heightened pleading standard" for a common law fraud claim under Rule 9(b). [Dkt. 22 at 23.] Specifically, Defendants assert that Plaintiffs' failure to identify precisely which defendant(s) made the alleged misrepresentation, instead claiming that "Defendants" collectively made the misrepresentation, fails to satisfy Rule 9(b). [*Id.*] Plaintiffs, in response, assert that the "clandestine and complex" nature of Defendants' corporate and ownership structure justifies their claim that even the parent companies and their owners and executives are responsible for the misrepresentations of their agents. [Dkt. 130 at 30-31.]

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud," but conditions of the person's mind "may be alleged generally." Fed. R. Civ. P. 9(b). Under Indiana law, the plaintiff must plead five elements to successfully allege common law fraud: "(i) material misrepresentation of past or existing facts by the party to be charged (ii)

which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." *Kesling v. Kesling*, 546 F.Supp.2d 627, 638 (N.D.Ind.2008).   Under the heightened pleading standard, the plaintiff must allege the "who, what, when, and where of the alleged fraud" in order to survive a 12(b)(6) motion to dismiss.  *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999) (citations omitted).  At issue here is "the who."

It is true that a complaint should specify who was involved in what fraudulent activity in order to inform each defendants of his, her, or its alleged participation in the fraud.  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).  However, a well-pleaded theory of agency, alter ego, veil-piercing, or respondeat superior are instances in which the misrepresentations of the few are imputed to the remaining defendants, providing sufficient specificity to notify such defendants of their participation in the allegedly fraudulent activity. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (discussing the fundamental need to pierce the corporate veil from a subsidiary to a parent and even to the parent's shareholder when "the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud"); *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987) (noting in the context of alter ego and veil-piercing theories that "Indiana courts will disregard corporate identity . . . to protect innocent third parties from fraud or injustice when transacting business with a corporate entity" where misrepresentation, agency relationships, and intermingling of corporate identities or funds exist).

Here, Plaintiffs have sufficiently pleaded the allegations of fraud as against the Defendants.  The Complaint clearly states that "Defendants **and their agents** have engaged in fraudulent collection activity by impermissibly pulling credit reports, performing manual and

automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents with no legal ownership of a debt," implying the existence of an agency relationship. [Dkt. 1 at 3 (emphasis added).] Plaintiffs further assert:

> While the aforementioned illegal activities are visibly performed by LVNV and Resurgent, the strings are ultimately pulled by Sherman including Sherman Capital, MSPII, SFG, SCM, SOLLC, SOLLCIII, SALLC, and the Individual Defendants. Under the Third Restatement of Agency and Respondeat Superior, all the Defendants are liable for the acts of LVNV and Resurgent.

[*Id.* at 3-4.] Plaintiffs go on to note that the six named individual defendants "manage, direct, operate, supervise, and oversee the business activities of all the Sherman business entities, which all are interrelated in a clandestine and complex business structure." [*Id.* at 6.] As for the nine named entities, Plaintiffs breakdown the organization of the "Sherman structure" by identifying Defendants Sherman Capital and Meeting Street Partners II as the owners and operators of Defendants Sherman Capital Markets and Sherman Financial Group, which owns, controls and operates all of the other corporate defendants. [*Id.*] Plaintiffs also identify Defendant LVNV as having engaged in the fraudulent collection activity and Defendant Resurgent as Defendant LVNV's "master servicer." [*Id.* at 7.] Several exhibits to the Complaint further evidence Defendants LVNV and Resurgent's "visible" involvement in the allegedly fraudulent collection activity. [Dkts. 1-1, 1-2, 1-3.]

Based on these allegations in Plaintiffs' Complaint, the Court reasonably infers that "the who" of the alleged fraudulent activity are Defendants LVNV and Resurgent, directly. However, Plaintiffs further allege that "interrelated" and "clandestine" nature of the "Sherman structure" entities and their individual owners and executives causes the actions of Defendants LVNV and Resurgent to be imputed to all of the named defendants. Because the Court now rules only on the sufficiency of the Complaint and not the merits of the case, accepting all well-pleaded facts

as true, the Court finds that Plaintiffs' Common Law Fraud claim should withstand Defendants' Motion to Dismiss.[1]

## 2. Plaintiffs' Unjust Enrichment and Restitution Claims[2]

Defendants argue that, because "Plaintiffs have not established that Defendants have done anything wrong," there can be no claim for unjust enrichment. [Dkt. 22 at 24.] Under Indiana law, a claim for unjust enrichment "allows for recovery 'where the circumstances are such that under the law of natural and immutable justice there should be a recovery.'" *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 735 (7th Cir. 2011) (quoting *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind.2009)). It is the plaintiff's burden to establish that a "measurable benefit" has been conferred on the defendant by the plaintiff and that the defendant's retention of such a benefit would be unjust. *Id.* at 735-36 (finding that "[t]here is simply nothing inequitable or unjust about the plaintiff paying for services it ordered and received" where a technical violation of a regulation produces a "tiny windfall").

In this matter, Plaintiffs have asserted that monies paid by the Plaintiffs, such as the garnishment of Plaintiff Snyder's wages, are such a "measurable benefit" that it would be unjust for Defendants to retain them. [Dkts. 1 at 28-29, 130 at 31.] Although Plaintiffs have not yet proven that "Defendants have done anything wrong," the Court does not yet decide the merits of the case. Plaintiffs have certainly alleged that Defendants have committed several wrongs, and,

---

[1] Defendants make this same argument, that Plaintiffs' aggregation of each named defendant is insufficient to state a claim under Rule 12(b)(6), as against all of Plaintiffs' nine claims in this matter. [Dkt. 22 at 3-6.] Relying on Rule 8(a)'s requirement that a complaint must give sufficient notice to each defendant of the claims against them, Defendants argue that Plaintiffs' use of "Defendants" and "Sherman" to refer to all of the fifteen named defendants at once causes the Complaint to fail. Fed. R. Civ. P. 8(a). However, for the same reasons addressed in this section, the Court finds that Plaintiffs have met the requirement of Rule 8(a). To the extent that Defendants have raised a similar argument in a context that requires unique argument and analysis, the Court views these "arguments" as waived as skeletal and undeveloped. *See United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991).

[2] Although treated as two separate claims in Plaintiffs' Complaint, the two theories are interrelated. Under the Restatement of Restitution, a person who has been unjustly enriched at the other's expense is required to make restitution to the other. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 487 (N.D.Ill.2009), *aff'd*, 606 F.3d 391 (7th Cir.2010). Because "unjust enrichment" is the effect of the wrong and "restitution" is the remedy to that same wrong, the Court addresses the two purported claims as one.

accepting all well-pleaded facts as true, the Court finds that it is plausible that Plaintiffs, both named and others similarly situated, have conferred a measurable benefit upon Defendants by paying alleged debts that Defendants did not own. Accordingly, the Court finds that Plaintiffs' Unjust Enrichment and Restitution claims should withstand Defendants' Motion to Dismiss.

### 3. Plaintiffs' FDCPA Claims

First, Defendants argue that Plaintiffs' FDCPA claims fail as to all defendants other than Defendant LVNV because none of the other defendants is a "debt collector" under the FDCPA, quoting the following definition:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

[Dkt. 22 at 22 (quoting 15 U.S.C. § 1692a(6)).] In response, Plaintiffs point out that the FDCPA's plain language includes any person who "directly **or indirectly**" attempts to collect such debts on a regular basis. [Dkt. 130 at 29 (quoting 15 U.S.C. § 1692a(6)) (emphasis added).]

In the Seventh Circuit, "a corporate affiliate is excluded from the [FDCPA's] coverage so long as it satisfies two conditions: (1) the affiliate collects debts only for entities with which it is affiliated or related; **and** (2) the principal business of the affiliate is not debt collection." *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998) (emphasis added). As for individual defendants, the Seventh Circuit has recognized that, "in limited circumstances where the corporate veil is pierced," the FDCPA may recognize personal liability for shareholders or employees. *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000); *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil").

Here, each named defendant can plausibly qualify as a "debt collector" under the FDCPA. While not all named corporate defendants directly acted to collect on Plaintiffs' debt, Plaintiffs have alleged that they are all "related by common ownership or affiliated by corporate control." 15 U.S.C. § 1692a(6)(B). Accordingly, such affiliates can only be excluded from the FDCPA claims if they have satisfied *both* conditions discussed in *Aubert*: (1) that the affiliate only collects debt owned by its affiliate *and* (2) that the affiliates are not in the business of collecting debt. Plaintiffs have clearly alleged that the "Sherman structure" acted fraudulently to collect Plaintiffs debt "with no legal ownership of a debt," so the debt collected was allegedly not belonging to the affiliate collector, arguably negating the first *Aubert* prong. [Dkt. 1 at 3.] Additionally, Plaintiffs have unequivocally asserted that each corporate defendant is acting in concert with one another [dkt. 1 at 6-8], and their Complaint attaches an exhibit of Defendant Sherman Financial Group's business overview from 2009 asserting that "Sherman is the nation's largest unsecured distressed debt buyer," with a renewed focus on the growing consumer credit card debt [dkt. 1-5 at 3, 5-6, 13], indicating that the "Sherman structure" is, indeed, in the business of collecting debt and arguably negating the second *Aubert* prong. Accordingly, Plaintiffs have successfully asserted plausible allegations that the named corporate defendants are "debt collectors" under the FDCPA.

Here, the named individual defendants are also plausibly "debt collectors" under the FDCPA. Although under usual circumstances a shareholder or executive of a "debt collector" is not him or herself a "debt collector" according to the FDCPA, *Pettit* and *White* carve an exception where the plaintiffs assert a theory that piercing the corporate veil of a "debt collector" is appropriate. In response to Defendants' assertions that Plaintiffs lack personal jurisdiction over all defendants except Defendant LVNV and Defendant Resurgent, Plaintiffs plainly assert

jurisdiction over both the remaining corporate defendants and all of the individual defendants through "Piercing the Corporate Veil/Alter Ego Theory."  [Dkt. 130 at 15-17.]  Because Plaintiffs make an argument for veil-piercing, it is plausible that the named individual defendants, too, could be "debt collectors" according to the FDCPA.  As such, Plaintiffs' FDCPA claims should not be dismissed based on Defendants' argument that all of the defendants, save Defendant LVNV, cannot be liable under the FDCPA as "debt collectors."

Defendants also argue that FDCPA Count I should be dismissed because their contact with Indiana consumers was "incidental," exempting Defendants from Indiana's debt collection license requirement.  [Dkt. 22 at 19.]  Plaintiffs, in response, argue that, although phone calls or using mail service may be "incidental contacts" under Indiana Code § 25-11-1-5, Defendants' threatening, initiating, and filing of lawsuits is not "incidental."  [Dkt. 130 at 26.]  While Indiana courts have not yet interpreted whether this "incidental contact" exemption from Indiana's debt collection licensing requirement includes the filing of a lawsuit, Judge Cherry of the Northern District of Indiana found that this very question of whether the defendant was a "collection agency" under Indiana Code § 25-11-1 was a genuine issue of material fact, unripe for summary judgment.  *Fausset v. Mortgage First, LLC*, 4:09-CV-42-PRC, 2010 WL 987169 (N.D. Ind. Mar. 12, 2010) (where plaintiff argued that defendant was a "collection agency" required to be licensed based on their filing of a state court lawsuit).  Because all of Plaintiffs' well-pleaded facts are to be accepted as true upon evaluating a motion to dismiss, the Court presumes Defendants' judgment against Plaintiff Snyder as more than "incidental contact," and Count I cannot be dismissed based on Defendants' assertion that they were not required to obtain a license.

Defendants then assert that FDCPA Count II should be dismissed because their actions fall into either the "maintaining, defending, or settling any proceeding" exception or the "[s]ecuring or collecting debts" exception to Indiana's Certificate of Authority requirement. [Dkt. 22 at 20 (quoting IND. CODE § 23-1-49, 23-17-26).] Plaintiffs argue that Defendants' misrepresentation that they were authorized to do business in Indiana without having such a certificate is sufficient to support Plaintiffs' FDCPA claim. [Dkt. 130 at 26-27.] Further, Plaintiffs assert that the "filing" or "initiating" of a proceeding constitutes "transacting business" in Indiana, as does the collection of a debt that is not secured by property. [*Id.* at 27-28.]

While it is possible that Defendants have engaged in activities that fall under an exception or two, this level of scrutiny is not necessary to determine whether Plaintiffs' claim is plausible. Whether a company "transacts business" within a district is measured by various "everyday business concepts," which are measured by factors such as (1) the extent of the defendant's business solicitation in the district, (2) the amount of profit gained by the defendant from the district, and (3) the continuity and regularity of the defendant's business activities in the district. *Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1006 (N.D. Ind. 2000), *aff'd*, 248 F.3d 1159 (7th Cir. 2000) (citing to *United States v. Scophony Corp.*, 333 U.S. 795 (1948)). If a company fundamentally meets these criteria, then even conducting potentially exempt activity, such as the maintenance of a proceeding, does not exempt the company from the certification requirement. *See* IND. CODE § 23-1-49-2(a) ("A foreign company transacting business in Indiana without a certificate of authority may not maintain a proceeding in any court in Indiana until it obtains a certificate of authority").

In this matter, Plaintiffs have asserted that Defendants regularly conduct profitable business in Indiana. In Defendant Sherman Financial Group's own presentation materials, it

emphasized that it is the "Leading Purchaser of Charged-Off Credit Card Debt," having purchased $9,555 million, or nearly $10 billion, in credit card debt in 2005 alone. [Dkt. 1-5 at 13.] Plaintiffs have also moved for class certification based on the likelihood that numerous other Indiana residents received form collection letters and robo-signed affidavits from Defendants, estimating that Defendants defrauded Indiana residents of more than $25 million within the relevant time period. [Dkt. 1 at 5, 20-21, 33.] It is reasonable to infer, from Plaintiffs' well-pleaded facts, that Defendants' business model regularly sees substantial income from their active collection efforts from Indiana residents, so Count II should not be dismissed based on Defendants' arguments that they do not transact business in Indiana.[3]

Finally, Defendants argue that Count III should be dismissed because Plaintiffs cannot base an FDCPA claim on allegations that Defendants did not legally own the debt they attempted to collect. [Dkt. 22 at 21.] However, such claims based on misrepresentations made during debt collection have repeatedly been upheld within the Seventh Circuit. *See, e.g.*, *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (upholding the district court's finding of FDCPA violation based on a false representation, even when the representation was unintentional); *Matmanivong v. Unifund CCR Partners*, 08 CV 6415, 2009 WL 1181529 (N.D. Ill. Apr. 28, 2009) (finding that a "defendant's lack of ownership of the debt could support a cause of action under the FDCPA"); *Jenkins v. Centurion Capital Corp.*, 07 C 3838, 2007 WL 4109235 (N.D. Ill. Nov. 15, 2007) (not dismissing a claim based on defendant's failure to attach the alleged contract evidencing debt ownership to the defendant's state-court complaint). In their Complaint, Plaintiffs assert that Defendants, after multiple requests, failed to present evidence of

---

[3] In the second-to-last sentence of their argument to dismiss Count II, defendants haphazardly add "[m]oreover, the foreign registration statute clearly sets forth that only the attorney general has standing to collect penalties for violations." [Dkt. 22 at 21.] The Court is, again, reminded of Judges Posner, Easterbrook, and Dumbauld's wise, *per curiam* words that "[j]udges are not like pigs, hunting for truffles buried in briefs," and this skeletal "argument" is deemed waived. *United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991).

debt ownership [dkt. 1 at 5] and additionally claim that Defendant LVNV "has a history of possessing no proof of debt ownership" [*id.* at 13]. Thus, the Court should accept all well-pleaded facts as true, finding that Plaintiffs have plead adequate specificity of Defendants' lack of presentation of ownership of the alleged debt during their collection efforts. Each of Plaintiffs' FDCPA claims should thereby not be dismissed.

### 4. Plaintiffs' RICO Claims

Defendants first argue that each of Plaintiffs' three RICO claims fails for lack of particularity, specifically asserting that Rule 9(b)'s heightened pleading requirement is not met because the defendants are "lumped" together and the allegations are made "upon information and belief." [Dkt. 22 at 7-9.] Plaintiffs respond that the Complaint gave Defendants proper 9(b) notice as to how each of them were allegedly involved in the purported fraud, and Defendants' "evasive tactics used in the discovery process to cover up" its fraudulent conduct justifies pleadings based on information and belief. [Dkt. 130 at 19.]

Defendants properly indicate that a RICO claim's predicate acts of mail fraud and wire fraud are required to meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) ("[w]ithout an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendant or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established"). However, as discussed with regard to Plaintiffs' Common Law Fraud claim, the Complaint clearly states that Defendants LVNV and Resurgent "visibly performed" the fraudulent activity, as evidenced by alleged facts and exhibits, while "the strings are ultimately pulled" by each of the other corporate and individual defendants.

[Dkt. 1 at 3-4; Dkts. 1-1, 1-2, 1-3]. As *Bestfoods* and *Koch* indicate,[4] it is plausible for a company or its owners or executives to be held liable for the fraudulent misrepresentations of its agent or alter ego. Plaintiffs have properly and sufficiently plead these theories, so Defendants' argument that they were improperly "lumped" together similarly fails in the RICO context.

Aside from identifying *who* was allegedly involved in the fraudulent RICO predicate acts with specificity, Plaintiffs are also required to plead the acts themselves pursuant to Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). In the context of a RICO claim, the general rule is that it is insufficient to plead the predicate acts of mail fraud and wire fraud based "upon information and belief." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). However, where the information is inaccessible to the plaintiff and the complaint pleads ground for the suspicions plead, such claims withstand a motion to dismiss. *Id.* ("allegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions"); *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 684 (7th Cir. 1992) ("the duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions").

In this matter the Court itself has observed Defendants' obstinate efforts to withhold information from Plaintiffs, as it took Plaintiffs two successful motions to compel in order to be able to complete depositions on the limited question of personal jurisdiction. While this observation is not the basis for the Court's decision, it is consistent with Plaintiffs' allegations that Defendants' operations are "clandestine" and that the "Sherman structure" was created "as a dumping ground to illegally collect on its bad debts" for a substantial profit. [Dkt. 1 at 6, 15,

---

[4] See subsection II.A.1. of this Report and Recommendation for further analysis.

17.]  Although five of the forty-seven paragraphs that comprise Plaintiffs' three RICO claims do make allegations based on information and belief, these allegations relate to conduct as against the putative class and amongst Defendants, which is not readily accessible.  [*Id.* at 30-43]  Instead, Plaintiffs plead their basis for believing that Defendants coordinated their debt collection amongst themselves and that such collection activities affected a significant number of Indiana residents.  [*Id.* at 17-21.]  Accordingly, Plaintiffs have sufficiently plead their grounds for suspicion of the facts plead on information and belief, and the RICO claims of the Complaint should not fail under Rule 9(b).

Defendants then argue that Plaintiffs did not sufficiently plead the causation element of their RICO claims and therefore lack standing to bring their RICO claims.  [Dkt. 22 at 10-12.]  In order to have standing, the plaintiffs must allege that the purported pattern of racketeering activity was both the legal and the factual cause of their damages.  *See, e.g.*, *DeGuelle v. Camilli*, 664 F.3d 192, 19, 204 (7th Cir. 2011) (reversing the district court's decision dismissing plaintiff's complaint for lack of proximate cause when the damages alleged included being fired, sued, and defamed).  However, "[t]he existence of multiple victims with different injuries does not foreclose a finding of proximate cause; in fact, one of the hallmarks of a RICO violation is the occurrence of distinct injuries affecting several victims."  *RWB Servs., LLC v. Hartford Computer Grp., Inc.*, 539 F.3d 681, 688 (7th Cir. 2008) (finding that, so long as the victim's injuries are reasonably foreseeable, the victim is a proper plaintiff).  Accordingly, so long as it is plausible that a jury could find that Plaintiffs' injuries were reasonably foreseeable consequences of the alleged pattern of racketeering activity, the claims should not be dismissed.

A pattern of racketeering activity, which must cause the plaintiffs' injuries, requires at least two isolated acts of racketeering activity, such as mail fraud or wire fraud.  18 U.S.C. §

1961(1), (5).  The pattern of racketeering activity alleged in Plaintiffs' Complaint consists of Defendants use of the mails and wires to misrepresent their ownership of the alleged debt to Plaintiffs.  [Dkt. 1 at 34-36, Dkt. 130 at 20-21.]  Although Defendants contend that Plaintiffs "rely on vague and conclusory allegations" to allege causation [dkt. 22 at 11], Plaintiffs plead that Defendants' unwanted phone calls, threats of legal action, filing of collection claims, and collection of Plaintiffs' money caused Plaintiffs' financial injuries, such as Plaintiff Snyder's wage garnishment [dkt. 1 at 4-6, 42-43].  Using the *RWB* causation standard, it is entirely reasonable to foresee that the racketeering activities alleged—acts of debt collection—would cause Plaintiffs to suffer financial damages such as paying Defendants, willingly or not, and paying lawyers to legally defend themselves against Defendants.  As seen in *RWB*, the fact that the named plaintiffs and the members of the putative class suffered different damages is not a bar to a successful RICO claim.  Because it is plausible that Plaintiffs' alleged pattern of racketeering activity caused their actual damages, the RICO claims should not be dismissed for lack of standing.

Next, Defendants argue, from several angles, that the alleged enterprise was not sufficiently plead.  Specifically, Defendants argue that Plaintiffs did not plead an enterprise, that any enterprise pleaded is the same as the racketeering activity, that any enterprise pleaded lacks the requisite structure, and that any enterprise pleaded is the same as the Defendants.  [Dkt. 22 at 12-18.]  In response, Plaintiffs assert that they have sufficiently plead that there is an enterprise, that it is distinct from the activities that the enterprise conducted, that it has a structure, and that by identifying the "Sherman structure" Plaintiffs did not allege an enterprise that is identical to the Defendants.  [Dkt. 130 at 22-25.]

The Seventh Circuit recognizes a RICO enterprise as "an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or consensual decision-making." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (citations omitted). Such an enterprise "must have some continuity and some differentiation of the roles within it" with "a common purpose of engaging in a course of conduct," but "there need not be much structure." *Id.* at 645. It is insufficient, however, to assert that any group that joins together to conduct a pattern of racketeering activity, such as a scheme to defraud consumers that has no structure or goals, is a RICO enterprise. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675-76 (7th Cir. 2000).

In this matter, Plaintiffs have alleged an intricate structure that more than meets the hierarchical requirement of a RICO enterprise, identifying which defendants own and operate the others and how each named defendant fits into the hierarchy. [Dkt. 1 at 6-8, 36-37.] The established pattern of racketeering activity is separate from the "Sherman structure" identified by Plaintiffs, as the fraudulent debt collection is "the means through which the enterprise interacts with society," while it is the actual organization that is the enterprise. *Jennings v. Emry*, 910 F.2d 1434, 1440 (7th Cir. 1990) (finding that, because the law enforcement personnel did not exist "with the support of the government offices," there was no enterprise). Here, the defendants allegedly acted with the support of the "Sherman structure," which is enough to distinguish this case from *Jennings*.

In viewing the "Sherman structure" as the enterprise, the enterprise is not indistinct from the defendants themselves, however. Although Plaintiffs refer to Defendants as a collective for convenience, the fact that Plaintiffs have attempted to name all of the potentially liable parties does not take away from the fact that each defendant purportedly played a particular, distinct role

in the enterprise. It is true that there must be a difference between the RICO person (the defendant) and the RICO enterprise. *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004). However, in *Baker* the alleged enterprise was the sole defendant, and in this matter no one defendant is identical to the "Sherman structure. While Plaintiffs will have to prove that each defendant, a RICO person who executes, directly or indirectly, the pattern of racketeering activity, has control over the RICO enterprise, *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997), the Court does not at this point make any findings on the merits. On a motion to dismiss, the Court accepts all well-pleaded facts as true, and thus it is plausible that the "Sherman structure," as distinct from both the collection activity and each distinct defendant, is a RICO enterprise. Accordingly, Plaintiffs' RICO claims pursuant to section 1962(b) and (c) should not be dismissed.

Finally, Defendants argue that Plaintiffs' RICO conspiracy claim must be dismissed because Plaintiffs failed to plead an agreement to conspire instead of mere participation in the alleged conspiracy. [Dkt. 22 at 18.] Although there is to be a broad construction of the RICO conspiracy provision, the courts should not use RICO conspiracy "to criminalize mere association with an enterprise." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (quotations omitted). Indeed, "[a] conspiracy to violate RICO may be shown by proof that the defendant, by his words or actions, objectively manifested an **agreement to participate**, directly or indirectly, in the affairs of an enterprise"; mere participation is not enough. *DeGuelle v. Camilli*, 664 F.3d 192, 204 (7th Cir. 2011) (emphasis added). However, once the plan is in place, a partner, supporter, or even a third party who agreed to participate can be guilty of RICO conspiracy. *Salinas v. United States*, 522 U.S. 52, 64 (1997).

The Court again reiterates its duty to accept all well-pleaded facts as true in evaluating Defendants' motion to dismiss. In their Complaint, Plaintiffs assert that, in order to "successfully and convincingly bluff Plaintiffs and the Courts into believing that Defendants had authority to collect," Defendants acquired, maintained, controlled, and operated the enterprise in order to run their "collection scheme" under an "aura of bona fide authority." [Dkt. 1 at 38-39.] Specifically, Plaintiffs plead that "Defendants separately and in conjunction with each other conspired to defraud Plaintiffs into paying money to Defendant's [sic] enterprise." [*Id.*] While it is not enough to be familiar with and responsible for the allegedly illegal policies of a company, the inclusion of each defendant's corporate title and the roles that each would play in the enterprise can help a RICO conspiracy claim survive a motion to dismiss by implying agreement to participate. *Goren v. New Vision Int'l, Inc.*, 156 F.3d at 732.

Plaintiffs' Complaint describes in detail how the individual defendants "own, manage, direct, operate, supervise, and oversee the business activities of all the Sherman business entities, which are all interrelated in a clandestine business structure," how Defendants Sherman Capital and Meeting Street Partners II own and operate Defendant Sherman Financial Group, how Defendant Sherman Financial Group is Defendant LVNV's Collateralized Debt Obligation arranger, how Defendant Sherman Capital Markets is Defendant LVNV's Collateralized Debt Obligation manager, how Defendant Navarro is the General Manager of Defendant LVNV, how Defendant Branigan is the President of Defendant LVNV, how Defendant Silver is the Secretary of Defendant LVNV, how Defendant Gutierrez is the Chief Financial Officer of Defendant LVNV, how Defendant Kendall is the Treasurer of Defendant LVNV, how Defendant Resurgent is the master servicer of Defendant LVNV's Collateralized Debt Obligation, how Defendants Sherman Originator and Sherman Originator III are the sponsors and/or originators of Defendant

LVNV's Collateralized Debt Obligation, and how Defendant Sherman Acquisition repackages and sells the information on consumers from whom Sherman deems it too costly for Defendant LVNV to collect debt. [Dkt. 1 at 6-8.] The Complaint then expounds on how the entire "Sherman structure" functions in concert with Defendant LVNV's Collateralized Debt Obligation practices, which lead to the alleged conspiracy's predicate acts of mail fraud and wire fraud. [*Id.* at 9-19.]

Accordingly, the Court accepts Plaintiffs' assertion that the individuals and entities in their alleged roles actively agreed to this business plan, as asserted by Plaintiffs. Thus, Plaintiffs have met the *Goren* standard for a corporate RICO conspiracy agreement for each named defendant, except for Defendant Roderick, whose specific job title was curiously omitted by Plaintiffs in their Complaint. [*See* dkt. 1 at 6-8.] For the aforementioned reasons, each of Plaintiffs' eight other claims against each of the fifteen named defendants cannot at this time be dismissed, and neither can the RICO conspiracy claim as against the other fourteen named defendants aside from Defendant Roderick. The Magistrate Judge so recommends that all claims be upheld except for Plaintiffs 18 U.S.C. § 1962(d) claim against Defendant Roderick.[5]

### B. Defendants' 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

---

[5] That is not to say that there is no evidence before the Court that Defendant Roderick was involved in the alleged conspiracy. In his deposition, Defendant Roderick admits that he is a member of Defendant Sherman Financial Group (which, eventually, wholly owns Defendant LVNV), that he is a manager at Alegis Group, LLC (which is the general partner of Defendant Resurgent), that his role as a manager at Alegis Group, LLC was to make sure that Defendant Resurgent had operating authority, that he is a director of Defendant Sherman Capital Markets (which manages Defendant LVNV's Collateral Debt Obligations), and that his role as director of Defendant Sherman Capital Markets required him to have necessary group meetings with Defendant Navarro, Defendant Kendall, Defendant Gutierrez, Defendant Silver, and Defendant Branigan. [*See* dkt. 130-19.] However, the Court may not rely on the contents of a deposition when ruling on a motion to dismiss without giving advance notice to the parties and converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d); Rutherford v. Judge & Dolph Ltd., 707 F.3d 710, 713 (7th Cir. 2013). Accordingly, pursuant to the Court's mandate to grant a plaintiff leave to amend their complaint in order to otherwise avoid their claim being dismissed with prejudice on a technicality, the Magistrate Judge recommends that the Court grant Plaintiffs fourteen (14) days from the date of its Entry, with respect to this Report and Recommendation, to amend the Complaint to add Defendant Roderick's job title and role in the conspiracy in order to preserve Plaintiffs' RICO conspiracy claim against Defendant Roderick. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(2) requires that a claim be dismissed when personal jurisdiction is lacking, and the Plaintiff bears the burden of proving that jurisdiction is proper. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir.2003). In order to prove personal jurisdiction, Federal Rule of Civil Procedure 4(e) requires that the forum's long-arm statute confer personal jurisdiction over the defendants, while the Fourteenth Amendment's principles of due process also apply. *See, e.g.*, *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). In 2003, Indiana amended Indiana Trial Rule 4.4(A) to reduce personal jurisdiction analysis to demand no further analysis than consistence with the federal Due Process Clause. *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 967 (Ind.2006). As such, so long as a defendant "purposefully established 'minimum contacts' in the forum State" such that the defendant could foresee causing injury to a resident of that state, finding personal jurisdiction over that defendant comports with due process and is therefore proper in Indiana. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (referencing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

However, pursuant to Rule 4(k), Congress has the authority to pass legislation that provides for nationwide service of process. *See* Fed. R. Civ. P. 4(k)(1)(D). In such circumstances, a plaintiff bringing claims pursuant to such legislation automatically establishes personal jurisdiction, with no need to evaluate whether a defendant purposefully availed himself to the particular forum state in question. *See, e.g.*, *Smith v. Jefferson Cnty. Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987) ("there is no constitutional obstacle to nationwide service of process in the federal courts in federal question cases"). RICO is one such statute that codifies nationwide service of process.

18 U.S.C. § 1965(b). Accordingly, "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court," RICO grants that a finding of personal jurisdiction is appropriate. *Id.*; *Liask*, 834 F.2d at 672 ("RICO contains an explicit grant of nationwide service"). Because Plaintiffs' RICO claims should not be dismissed at this time, it is not necessary to delve deeper into the question of personal jurisdiction.

However, even in the absence of Plaintiffs' RICO claims, Plaintiffs have met their burden of proving personal jurisdiction over each named defendant in this matter. First, Defendants do not dispute the Court's personal jurisdiction over Defendants LVNV and Resurgent, as those defendants acted directly to collect Plaintiffs' debt in Indiana. [Dkt. 143 at 26.] Plaintiffs argue that all the named corporate defendants, aside from Defendants Resurgent and Sherman Capital Markets, are shell companies, while Defendant Sherman Capital Markets exerts greater-than-normal control over Defendant LVNV, making personal jurisdiction over each of the corporate defendants appropriate. [Dkt. 130 at 9-10.] Because the individual defendants have a combined controlling ownership in the company and simultaneously run the company, Plaintiffs argue that personal jurisdiction over the named individual defendants is also appropriate. [*Id.* at 10-12.] Plaintiffs argue in the alternative that, through Indiana's alter ego theory of liability, it is appropriate to pierce the corporate veils of Defendants LVNV and Resurgent to find for personal jurisdiction over each of the corporate and individual defendants. [*Id.* at 15-17.]

When a district court rules on a motion to dismiss without holding an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Under this standard, any dispute regarding the facts presented anywhere in the record is resolved in the plaintiff's favor.

*Id.* at 782-83. As a general rule, mere corporate ownership is not sufficient to warrant a finding of personal jurisdiction where corporate formalities are observed and there is no unusually high degree of control of the subsidiary by the parent. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000) (finding the observation of corporate formalities, joined with the parent company's lack of dominance over the subsidiary, to be significant reasoning to not impute the actions of the subsidiary to the parent). As for the issue of individual defendants, when a court finds for personal jurisdiction over an entity, it also has personal jurisdiction over individuals who (1) have a combined controlling ownership of the company and (2) simultaneously run the company, such as officers or directors. *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255, 1262 (S.D. Ind. 1997) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir.1994) (two shareholders, each with one-third ownership, who also ran the company); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522-23 (9th Cir.1989) (two shareholders, each with one-half ownership, who also served as the company's sole officers and directors)).

In the alternative, "[t]he activities of a subsidiary may suffice to assert jurisdiction over the parent if there is some basis for piercing the corporate veil," *KM Enterprises, Inc. v. Global Traffic Technologies, Inc.*, 725 F.3d 718 (7th Cir. 2013). Indiana law grants that, in order to protect innocent third parties from fraud, when a company is "functioning as an alter ego or a mere instrumentality of an individual or another corporation, it may be appropriate to disregard the corporate form and pierce the veil." *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. 2012). The precise inquiry is exceedingly fact specific, and "a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable

action is warranted." *Id.* Although not exhaustive, the following list of factors is considered upon such an inquiry:

(1)     undercapitalization of the corporation,
(2)     the absence of corporate records,
(3)     fraudulent representations by corporate shareholders or directors,
(4)     use of the corporation to promote fraud, injustice, or illegal activities,
(5)     payment by the corporation of individual obligations,
(6)     commingling of assets and affairs,
(7)     failure to observe required corporate formalities
(8)     the use of similar corporate names
(9)     sharing common principal corporate officers, directors, and employees
(10)    similar business purposes
(11)    sharing office locations, business cards, or telephone numbers, and
(12)    other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*Id.* (reversing the trial court's grant of summary judgment, which incorrectly decided that the defendant was a separate corporate entity with no minimal contacts with Indiana).

In applying these standards to the appropriate case law, the Court reiterates that the Plaintiffs do not at this time carry the burden of proving personal jurisdiction by a preponderance of the evidence; they need only make a *prima facie* showing, and any facts in dispute are resolved in Plaintiffs' favor. *Purdue*, 338 F.3d 773, 782-83. Although *Central States* found that, despite corporate ownership, the subsidiary's contacts with Indiana would not be imputed upon the parent corporation, there was clear, and significant, evidence of the observance of corporate formalities and no indication that the parent exercised an unusual degree of control over the subsidiary. Here, Plaintiffs have provided the Court with significant evidence of common ownership and a lack of the observance of corporate formalities, in addition to clear evidence of Defendants' control over Defendants LVNV and Resurgent, the subsidiaries in question.

Defendants do not deny that there is common ownership that traces Defendant LVNV to each of the other corporate defendants over which Plaintiffs attempt to attain personal

jurisdiction through a theory of agency or control. Defendant LVNV is wholly owned by

Defendant Sherman Originator, which is wholly owned by Defendant Sherman Financial Group,

along with Defendant Sherman Originator's sister companies, Defendants Sherman Originator

III and Sherman Acquisition (which all do the same thing). [Dkt. 130 at 3-6.] Defendant

Sherman Financial Group also owns 99% of Defendant Resurgent, which conducts business as

Defendant LVNV's master servicer in debt collection. Defendant Sherman Financial Group has

its own sister company, Defendant Sherman Capital Markets, which are both wholly owned by

Defendant Sherman Capital (into which Defendant Market Street Partners II has been collapsed,

for tax reasons). [*Id.*] This structure is strikingly reminiscent of the corporate structure in

*Wesleyan*, where Judge Barker imputed the contacts of the Indiana corporation to the other eight

corporations, six limited partnerships, and three individuals that allegedly engaged in

constructive fraud, securities violations, and RICO violations. *Wesleyan*, 964 F. Supp. 1255.

In addition to the common ownership among the corporate defendants in this matter,

there is an evident lack of observance of corporate formalities. In his deposition, Defendant

Navarro, CEO of Defendant Sherman Financial Group and owner of Defendant Sherman Capital,

stated that he was unsure if he was ever President of Defendant Sherman Financial Group

because the Sherman structure, which Defendant Navarro named after his childhood dog, is "not

big on titles." [Dkt. 130-15.] A Mr. Michael Bahner, who was also present at Defendant

Navarro's deposition, stepped in to remind Plaintiffs' counsel that "in general terms all these

companies just self perpetuate, if you want to get general," when Plaintiffs' counsel was

attempting to treat each corporate defendants as its own entity. [*Id.*] Defendant Navarro was

also not certain about which of the corporate defendants he had ownership of, while Defendant

Kenall, CFO and director of Defendant Sherman Capital Markets and Treasurer of Defendant

LVNV, also noted that he "would have to see an ownership chart to specify [his] ownership interest in these [Sherman] entities." [*Id.*; Dkt. 130-16.]

While Defendant Kendall admitted to having an ownership interest in "Sherman Financial Group," he later clarified that in saying "Sherman Financial Group" he was referring to "[a]ll the Sherman entities," and defense counsel even noted, after Defendant Kendall admitted to working for "Sherman Capital Markets," that Defendant Kendall "works for Sherman." [Dkt. 130-16.] Defendant Kendall further affirms, like Defendant Roderick, that the "Sherman structure" runs its business by having "informal meetings" on "a variety of different things" by a "wide, varied group of people" who make decisions regarding the defendant corporate entities, including those that do not have employees, such as Defendant LVNV. [*Id.*; 130-19.] Defendant Kendall also confirmed that, at the time that the transactions at issue allegedly occurred, each of the individual defendants were employees at Sherman Capital Markets, which contradicts "Chairman" Defendant Navarro's statement in his deposition. [*Id.*] Just these few depositions make it clear to the Court that what Defendants argue is "a typical corporate family of upstream and downstream entities, sister corporations, and the normal day-to-day functions of some of those entities' executives" is in reality more like an amoeba—a one-celled organism with no definite shape.

Defendants are correct in asserting that evidence of mere control of a subsidiary is not enough to weigh in favor of a finding of personal jurisdiction, as "[p]arents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent." *Abelesz v. OTP Bank*, 692 F.3d 638, 659 (7th Cir. 2012). However, when it is a common practice for a varied group of employees of a sister company (Defendant Sherman Capital Markets) to informally meet to determine the direction of its sister company's wholly-owned subsidiary's

(Defendant Sherman Originator) wholly-owned subsidiary (Defendant LVNV), this does not strike the Court as a typical level of control. Unlike in *Central States*, this matter involves parent and sister companies that not only have common ownership but also do not appear to observe proper corporate formalities while they display an unusually high degree of control over Defendant LVNV. Accordingly, Plaintiffs have presented *prima facie* evidence that personal jurisdiction over all corporate defendants is appropriate through their agency Defendant LVNV's contacts with the state of Indiana.

With regard to the individual defendants, it is not as clear that the standard, as laid out in *Wesleyan*, has been met. In *Wesleyan*, the three individual defendants were alleged to be the "controlling principals, sole shareholders, sole directors, and officers of the nine corporate defendants." *Wesleyan*, 964 F. Supp. at 1262. The blame for the lack of clarity, however, does not seem to lie with the Plaintiffs. While Defendant Navarro does not report any affiliation with Defendant LVNV in his deposition, he is the sole Manager of Defendant LVNV, according to the Rhode Island Secretary of State's certificate records, which was registered on January 5, 2012. [Dkt. 130-3; 130-15.] Somehow, only thirteen days later, Defendant Navarro was no longer the Manager of Defendant LVNV, but Defendants Silver, Branigan, and Gutierrez were the sole three Managers of Defendant LVNV, according to the Massachusetts Secretary of State's certificate records, which was filed on January 18, 2012. [Dkt. 13-4.] Less than one month after that, Defendant LVNV registered with the Indiana Secretary of State, reporting that "This Limited Liability Company Does Not Have Managers," which report was created on February 16, 2012. [Dkt. 130-2.]

Plaintiffs, unable to gather precise figures of ownership during their attempts to perform discovery, argued that "Individual Defendants have ownership in all the Corporate Defendants as

they are rolled into SFG" [dkt. 130 at 3] and that "[t]he Individual Defendants own, manage, direct, operate, supervise, and oversee the business activities of all the Sherman business entities, which are all interrelated in a clandestine and complex business structure" [dkt. 1 at 6]. Because the precise ownership of the "Sherman structure" is a fact at issue in this matter, the Court will accept the Plaintiffs' well-pleaded facts as true, especially in light of Plaintiffs' evidence of Defendants' inability, if not unwillingness, to admit to their exact ownership in the various corporate defendants. As such, Plaintiffs have met their burden to present *prima facie* evidence that a finding of personal jurisdiction over each of the corporate defendants and the individual defendants through a theory of agency is appropriate.

Finally, even though jurisdiction is proper through RICO's nationwide service of process and agency theory, the Court addresses whether Plaintiffs have presented *prima facie* evidence that Defendants LVNV and Resurgent are the alter egos of the other named defendants, pursuant to Indiana law and the *Reed* factors. Plaintiffs have presented evidence alleging (1) fraudulent representations by corporation shareholders or directors, (2) use of the corporation to promote fraud and illegal activities, (3) the commingling of assets and affairs, (4) the failure to observe required corporate formalities, (5) the use of similar corporate names, (6) the sharing of common principal corporate officers, directors, and employees, (7) a similar business purpose, (8) and a common office location, which amount to two-thirds of the *Reed* factors. [*See* dkt 1; 130; 130-15; 130-16; 130-17; 130-18; 130-19; 130-20.]

In addition, the Court finds that, in light of Defendants' obstinance during the discovery process and Plaintiffs' evidence of dubious and unscrupulous practices, the equitable remedy of piercing the corporate veil, through Defendants LVNV and Resurgent to Defendant Sherman Originator to Defendant Sherman Financial Group; to Defendants Sherman Originator III,

Sherman Acquisition and Sherman Capital; to Defendants Market Street Partners II and Sherman Capital Markets; to Defendants Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall, would be appropriate. Accordingly, the Magistrate Judge recommends that the Court deny Defendants' 12(b)(2) Motion to Dismiss for lack of personal jurisdiction on the independent grounds of RICO's nationwide service of process, Defendants' control over Defendants LVNV and Resurgent as their agents, and by piercing the corporate veil.

### III. Conclusion

For the aforementioned reasons, the Court should **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss. [Dkt. 21.] Specifically, the Magistrate Judge recommends that Defendants' Motion to Dismiss be **granted** with respect to Plaintiffs' RICO conspiracy claim against Defendant Roderick and that Plaintiffs be granted fourteen (14) days within the date of the Court's Order to amend their Complaint so as to plead Defendant Roderick's particular involvement in the alleged conspiracy. The Magistrate Judge recommends that Defendants' Motion to Dismiss be **denied** with respect to each of Plaintiffs remaining claims as against all of the named defendants. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 09/30/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert D. Cheesebourough
ruaneagle@aol.com

Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
boruta17@hotmail.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

David A. Maas
REED SMITH LLP
dmaas@reedsmith.com

Gary S. Caplan
REED SMITH LLP
gcaplan@reedsmith.com

Michael L. DeMarino
REED SMITH LLP
mdemarino@reedsmith.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com