**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX, | ) | |
| and STEPHANIE SNYDER, | ) | |
| individually and on behalf of | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12-cv-1654-TWP-MJD |
| | ) | CLASS ACTION |
| | ) | |
| SHERMAN CAPITAL LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS TO THE SEPTEMBER 30, 2013 REPORT AND**
**RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS**

Gary S. Caplan, pro hac vice
Michael L. DeMarino, pro hac vice
David A. Maas, pro hac vice
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL  60606-7507
(312) 207-2000
(312) 207-6400 (Facsimile)
gcaplan@reedsmith.com

James W. Riley, Jr.
Atty. No. 6073-49
141 East Washington Street, Fourth Floor
Indianapolis, IN  46204
(317) 636-8000
(317) 636-8027 (Facsimile)
jriley@rbelaw.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  THIS COURT'S INTERVENTION IS NEEDED TO ENSURE THAT
    FEDERAL PLEADING REQUIREMENTS ARE MET AND ENFORCED ...................1

II. RELEVANT BACKGROUND FOR THIS OBJECTION...................................................3

III. THE CHARGING ALLEGATIONS UNDERLYING THE CAUSES OF
    ACTION IN PLAINTIFFS' COMPLAINT CANNOT SURVIVE UNDER
    CONTROLLING NOTICE PLEADING PRINCIPLES ..............................................6

    A.  The Unfocused And Amorphous Allegations In Plaintiffs' Nine Cause Of
        Action Complaint Against 65 Defendants Do Not Meet Pleading
        Standards Established By Well-Settled Federal Law. .............................................6

    B.  Plaintiffs' Complaint Does Not Sufficiently Allege the Required Elements
        Of Their RICO Claims..........................................................................................8

        1.  The Magistrate Judge Erroneously Concluded That RICO's
            Elements Were Adequately Alleged..........................................................9

        2.  The Magistrate Judge Erroneously Credited Inferences From
            Boilerplate Agency Allegations And Unpled Corporate Veil
            Piercing Allegations In Finding Plaintiffs' Fraud and RICO
            Claims Sufficient. ...................................................................................15

        3.  The Magistrate Judge Erroneously Concluded That Plaintiffs'
            RICO Claims Could Survive Based On "Information And
            Belief."....................................................................................................19

    C.  Plaintiffs' Complaint Does Not Sufficiently Allege The Prerequisites For
        A FDCPA Claim Under Federal Law....................................................................21

        1.  The Magistrate Judge Used The Wrong Standard For
            Determining Whether A Corporate Affiliate Is A "Debt
            Collector" Under The FDCPA...................................................................21

        2.  The Magistrate Judge Erroneously Found That Plaintiffs'
            Pleading Could Support Claims Against Individual Owners Or
            Officers. ..................................................................................................23

        3.  The Magistrate Judge Erroneously Concluded That Plaintiffs'
            Pleading Established A Violation Of Indiana's Collection
            Agency Act Or Its Foreign Corporation Registration Statute....................24

    D.  Plaintiffs' Complaint Does Not Sufficiently Allege Common Law Claims
        For Unjust Enrichment, Restitution, Or Fraud......................................................26

IV.   THE PERSONAL JURISDICTIONAL ALLEGATIONS IN PLAINTIFFS' OPERATIVE COMPLAINT ARE INSUFFICIENT TO MEET CONTROLLING FEDERAL STANDARDS.................................................................................26

    A.   This Court Lacks Personal  Jurisdiction over the Defendants Other than LVNV and Resurgent Absent a Viable RICO Claim. ...........................................26

    B.   The Recommendation Fails to Reconcile *Wesleyan* with Later Seventh Circuit Cases. ......................................................................................27

    C.   "Common Ownership" is Not a Factor or Test Used by Courts............................29

    D.   The Magistrate Judge Failed to Apply a "Clear Evidence" Evidentiary Burden  to Plaintiffs' Jurisdictional Evidence. ........................................30

    E.   Plaintiffs Failed to Provide "Clear Evidence" of an Unusually High Degree of  Control or Lack of Corporate Formalities...........................................31

        1.   Plaintiff Failed to Provide Clear Evidence of an Unusually High Degree of Control. ...................................................................31

            a.   The Defendants are Not to Blame for Plaintiffs' Lack of "Clear Evidence."..................................................................... 32

        2.   Plaintiffs Failed to Provide Clear Evidence of a Lack of Corporate Formalities. ...............................................................33

V.   CONCLUSION.................................................................................35

**<u>TABLE OF AUTHORITIES</u>**

<u>Page</u>

**Cases**

*Abelesz v. OTP Bank,*
    692 F.3d 638 (7th Cir. 2012) ......................................................................... passim

*Antonio v. Wal-Mart,*
    No. 1:07-cv-006-JDT-TAB, 2007 WL 2884371 (S.D. Ind. Sept. 27, 2007) ............................ 1

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................ 1, 7, 17

*Aubert v. Am. Gen. Fin., Inc.,*
    137 F.3d 976 (7th Cir. 1998) ............................................................... 22, 23

*Baker v. IBP, Inc.,*
    357 F.3d 685 (7th Cir. 2004) ............................................................... 11, 12

*Bankers Trust Co. v. Old Republic Ins. Co.,*
    959 F.2d 677 (7th Cir. 1992) .................................................................... 21

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................... 1, 2, 7, 17

*Bissessur v. Ind. Univ. Bd. of Trs.,*
    581 F.3d 599 (7th Cir. 2009) ..................................................................... 2

*Blair v. Infineon Techs. AG,*
    720 F. Supp. 2d 462 (D. Del. 2010)............................................................. 19

*Brouwer v. Raffensperger, Hughes & Co.,*
    199 F.3d 961 (7th Cir. 2000) ..................................................................... 9

*Brown v. County of Cook,*
    549 F. Supp. 2d 1026 (N.D. Ill. 2008) ........................................................... 12

*Buck Creek Coal, Inc. v. United Workers of Am.,*
    917 F. Supp. 601 (S.D. Ind. 1995)................................................................ 9

*Capstone Int'l, Inc. v. Univentures, Inc.,*
    Cause No. 3:10-CV-416 JD, 2011 WL 4529372 (N.D. Ind. Sept. 28, 2011) ............................ 1

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,*
    230 F.3d 934 (7th Cir. 2000) ...................................................... 29, 30, 33, 34

*Coronet Ins. Co. v. Seyfarth,*
    665 F. Supp. 661 (N.D. Ill. 1987) ................................................................ 8

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.,*
    941 F.2d 1220 (D.C. Cir. 1991) ................................................................. 10

*Design Time, Inc. v. Synthetic Diamond Tech., Inc.,*
    674 F. Supp. 1564 (N.D. Ind, 1987) .............................................................. 8

*E.E.O.C. v. Concentra Health Servs., Inc.*,
   496 F.3d 773 (7th Cir. 2007) ............................................................................... 2

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
   807 F. Supp. 2d 732 (N.D. Ill. 2011) ................................................................. 34

*Emery v. Am. Gen. Fin., Inc.*,
   134 F.3d 1321 (7th Cir. 1998) ...................................................................... 14, 15

*Fausset v. Mortgage First, LLC*,
   Cause No. 4:09-CV-42-PRC, 2010 WL 987169 (N.D. Ind. Mar. 12, 2010) ...... 24, 25

*Fitzgerald v. Chrysler Corp.*,
   116 F.3d 225 (7th Cir. 1997) ......................................................... 11, 13, 14, 15

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998) ............................................................................... 9

*Griffin v. Milwaukee County*,
   369 F. App'x 741 (7th Cir. 2010) ...................................................................... 7

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*,
   747 F.2d 384 (7th Cir. 1984) ............................................................................. 11

*IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*,
   136 F.3d 537 (7th Cir. 1998) ............................................................................. 32

*Ind. Patient's Comp. Fund v. Wolfe*,
   735 N.E.2d 1187 (Ind. Ct. App. 2000) ............................................................. 26

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ...................................................................... 12

*Koch Ref. v. Farmers Union Cent. Exch., Inc.*,
   831 F.2d 1339 (7th Cir. 1987) ..................................................................... 18, 19

*Laborers' Pension Fund v. Lay-Com, Inc.*,
   580 F.3d 602 (7th Cir. 2009) .............................................................. 19, 33, 34

*Lachmund v. ADM Investor Servs., Inc.*,
   191 F.3d 777 (7th Cir. 1999) ......................................................................... 9, 17

*Lex, Inc. v. Bd. of Trs.of the Town of Paragon* ,
   808 N.E.2d 104 (Ind. Ct. App. 2004) ............................................................... 26

*Lincoln Nat'l Bank v. Lampe*,
   414 F. Supp. 1270 (N.D. Ill. 1976) .................................................................... 8

*Mathioudakis v. Conversational Computing Corp.*,
   1:12-cv-00558-JMS-DKL, 2012 U.S. Dist. LEXIS 130786 (S.D. Ind. Sept. 13, 2012) .... 17, 18

*McCauley v. City of Chi.*,
   671 F.3d 611 (7th Cir. 2011) ............................................................................... 2

*McLaughlin Equip. Co. v. Newcourt Credit Group, Inc.*,
   IP98-0127-C-T/G, 2004 U.S. Dist. LEXIS 13939 (S.D. Ind. Feb. 18, 2004) ........... 10

*McManaway v. KBR, Inc.*,
   695 F. Supp. 2d 883 (S.D. Ind. 2010) ................................................................. 28

*NNDYM IN, Inc. v. UV Imports, Inc.*,
   No. 3:09-cv-129-TWP-WGH, 2011 WL 5238824 (S.D. Ind. Nov. 1, 2011) .................... 18, 19

*Odishelidze v. Aetna Life & Cas. Co.*,
   853 F.2d 21 (1st Cir. 1988) ................................................................................. 12

*Parker v. Chase Home Fin., LLC*,
   No. 11-05043-CV-DGK, 2011 WL 4972328 (W.D. Mo. October 19, 2011) ........................ 8

*Pena v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*,
   No. 08 C 4222, 2009 WL 2177239 (N.D. Ill. July 21, 2009) ................................... 12

*Pettit v. Retrieval Masters Creditor Bureau, Inc.*,
   211 F.3d 1057 (7th Cir. 2000) ............................................................................ 23

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) ......................................................... 28, 30, 31, 33

*Resolution Trust Corp. v. S & K Chevrolet Co.*,
   918 F. Supp. 1235 (C.D. Ill. 1996) ....................................................................... 10

*Resolution Trust Corp. v. S & K Chevrolet Co.*,
   923 F. Supp. 135 (C.D. Ill. 1996) ......................................................................... 10

*Rice v. Strunk*,
   670 N.E.2d 1280 (Ind. 1996) ............................................................................. 26

*RWB Servs., LLC v. Hartford Computer Group, Inc.*,
   539 F.3d 681 (7th Cir. 2008) ............................................................................. 11

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479, 496-97 (1985) .............................................................................. 11

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................................................... 2

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ............................................................................ 13

*Thatcher v. City of Kokomo*,
   962 N.E.2d 1224 (Ind. 2012) ............................................................................. 26

*Uni* Quality, Inc. v. Infotronx, Inc.*,
   974 F.2d 918 (7th Cir. 1992) .......................................................................... 7, 21

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ..................................................................................... 18, 19

*United States v. Neapolitan*,
   791 F.2d 489 (7th Cir. 1986) ............................................................................... 9

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994) ................................................................................. 8

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
   751 F.2d 117 (2d Cir. 1984) .................................................................................. 32

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) ................................................................... 12

*Wesleyan Pension Fund, Inc. v. First Albany Corp.*,
   964 F. Supp. 1255 (S.D. Ind. 1997) .............................................. 27, 28, 29, 30, 31

*White v. Goodman*,
   200 F.3d 1016 (7th Cir. 2000) .................................................................. 22, 23, 24

*Young v. Harbor Mortor Works, Inc.*,
   Civil Action No. 2:07-CV-0031JVB, 2009 WL 187793 (N.D. Ind. Jan. 27, 2009) ................ 17

## Statutes

15 U.S.C. § 1692 ....................................................................................... 22, 23, 25

18 U.S.C. § 1962 *et seq.* ........................................................................... passim

18 U.S.C. § 1964 ................................................................................................ 10

18 U.S.C. § 1965 .................................................................................................. 6

28 U.S.C. § 636 ................................................................................................... 1

Fair Debt Collection Practices Act ................................................................ passim

Ind. Code 23-1-49-1 ..................................................................................... 25, 26

Indiana Collection Agency Act ..................................................................... 24, 25

Indiana Foreign Corporation Registration Statute ................................... 24, 25, 26

## Rules

Fed. R. Civ. P.  8 ......................................................................................... 18, 19

Fed. R. Civ. P.  9 ..................................................................... 17, 18, 19, 20, 26

Fed. R. Civ. P. 12 .................................................................................... 1, 5, 35

Fed. R. Civ. P. 30 ......................................................................................... 33, 35

Fed. R. Civ. P. 72 ................................................................................................. 1

I.   **THIS COURT'S INTERVENTION IS NEEDED TO ENSURE THAT FEDERAL PLEADING REQUIREMENTS ARE MET AND ENFORCED**

Settling the pleadings in complex litigation is an important and often difficult task. Strong judicial policies—reflected in opinions from the U.S. Supreme Court and the Seventh Circuit—provide that in order to facilitate fair, efficient, and less costly litigation, more must be required of a pleader than alleging legal conclusions directed against multiple defendants without specific facts to support them.  Those expectations are raised even higher when, as here, serious accusations of a RICO mail and wire fraud conspiracy are made.  In this case, the Magistrate Judge's decision most certainly addresses the pertinent pleading flaws identified in Defendants' Motion to Dismiss.  But in doing so, it loses sight of the need for particularized factual allegations to meet what federal law unequivocally demands.  Defendants therefore urge this Court to reject the Magistrate Judge's decision and force Plaintiffs to replead with the specificity needed to sustain the claims they purport to bring against each named Defendant.[1]

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009).  Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  The complaint also must describe the claim in sufficient detail to give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545).

---

[1] In reviewing a ruling on motion to dismiss for failure to state a claim or for lack of personal jurisdiction, this Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see, e.g., Capstone Int'l, Inc. v. Univentures, Inc.*, Cause No. 3:10-CV-416 JD, 2011 WL 4529372, at *1 (N.D. Ind. Sept. 28, 2011) (motion to dismiss for improper venue is a dispositive motion so "[i]f there are Objections, the Court reviews the objected-to portions of the report and recommendation de novo, taking new evidence if necessary and giving no deference to the magistrate judge's decision") (citing 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)); *Antonio v. Wal-Mart*, No. 1:07-cv-006-JDT-TAB, 2007 WL 2884371, at *1 (S.D. Ind. Sept. 27, 2007) ("If an Objection is made to a magistrate judge's recommendation on a dispositive motion, the district judge must make a de novo determination on the record of those portions of the recommendation to which Objection is made.") (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)).

To comply with this standard, "a plaintiff has the obligation to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 547). "A more complex case … will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-405 (7th Cir. 2010). Finally, as the Seventh Circuit has reiterated many times, factual detail means just that—bare conclusions tied to a recital of the legal elements of a claim will not suffice. *See McCauley v. City of Chi.*, 671 F.3d 611, 616-18 (7th Cir. 2011) (citing cases).

Plaintiffs' operative Complaint fails to meet these basic requirements. The Complaint's opening paragraphs lump 65 different Defendants together, defining and referring to them collectively as "Defendants" or "Sherman." After that, in only a few rare instances, do Plaintiffs ever mention a specific Defendant by name, or refer to any one Defendant in a non-collective way. And none of those paragraphs advise *which* specific Defendant was involved, *how* that particular Defendant was involved, or even in the broadest possible terms *what* each Defendant is alleged to have done as part of the alleged misconduct. Unanimous and controlling authority provides that the failure to make particularized allegations as to each Defendant is alone sufficient to compel dismissal of Plaintiffs' Complaint and, by parity of reasoning, to sustain this Objection and direct that Defendants' motion be granted. But other reasons for dismissal are apparent and compel the rejection of the Magistrate Judge's ruling as well. For example:

- Plaintiffs' Complaint does not sufficiently allege the elements supporting their RICO claims and the Magistrate Judge's ruling makes it clear why that is so;

- Plaintiffs' Complaint does not sufficiently allege a Fair Debt Collection Practices Act violation and the Magistrate Judge's ruling again establishes that that is so;

- Plaintiffs' various common law claims likewise are insufficiently alleged and fail along with their federal counterparts; and

- Plaintiffs' jurisdictional allegations are insufficient to what federal law requires under due process and nothing in the Magistrate Judge's ruling supports a contrary conclusion.

Defendants recognize that the Magistrate Judge put considerable effort into his ruling. That ruling also makes clear his belief that if enough assumptions are made, the Plaintiffs can bring the claims they have alleged against the "Sherman Defendants" in some fashion. But that is not the pleading standard the federal law imposes and it is not the way that this law is applied. Factual detail as to each particular Defendant and on each particular claim must be in the operative complaint to meet basic notice pleading requirements. That detail indisputably is absent and its absence compels this Court's intervention before this action moves forward.

## II.   RELEVANT BACKGROUND FOR THIS OBJECTION

The Complaint here is lengthy, but its factual detail is sparse. Plaintiffs apparently are residents of Indiana who incurred credit card debts that were subsequently acquired by Defendant LVNV. (Comp. ¶¶ 15-17, Exs. A, B). LVNV thereafter engaged in standard collection activities to recover debts Plaintiffs allegedly owed. Plaintiff Andrew Cox received a letter in response to his request for validation of his debt from LVNV's counsel, Brachfield Law Group. (Comp., Ex. A). Plaintiff Lucinda Cox alleges that she co-signed for Plaintiff Andrew Cox's debt, although the letter attached to the Complaint is addressed solely to Plaintiff Andrew Cox. (Comp. ¶ 16, Ex. A). Plaintiff Stephanie Snyder suffered a default judgment on a debt originally owed to Citibank, with LVNV thereafter collecting a portion of the default amount. In support of its effort, LVNV filed an affidavit attesting to Plaintiff Snyder's indebtedness of $3,637.05. (Comp. ¶ 17, Exs. B, C).

Based on these two unrelated collection efforts by LVNV, on November 9, 2012, Plaintiffs filed a class action Complaint against sixty-five Defendants, alleging three claims for violations of the FDCPA, a claim for common law fraud, one for restitution, another for unjust enrichment, and three claims for violations of The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962 *et seq.* ("RICO"). Many of the Complaint's allegations are unconnected to Plaintiffs or any alleged harm they conceivably could have sustained through LVNV's debt allocation effects. In fact, most of the allegations lay out an *ad hominem* attack on Defendants' purported securitization practices. But there are no allegations that Plaintiffs invested in any securities.

Moreover, while the Complaint covers 45 pages and some 199 paragraphs, only a handful of those paragraphs have even the barest of factual detail, and even then, they are non-specific. There are, on analysis, only two even arguably relevant factual allegations: (1) that LVNV operated in Indiana without a necessary license and/or registration; and (2) that "Defendants" (described only generically) attempt to collect on debts that they purchase but do not own. (Compl. ¶¶ 58, 64, 74-79.)

Because of the absence of the requisite jurisdictional allegations, at a teleconference in December 2012, the parties were instructed to conduct jurisdictional discovery, while Defendants prepared their Motion to Dismiss. Plaintiffs did not, however, serve any written discovery on any Defendant until after the Motion to Dismiss had been fully briefed. They did take the depositions of the six individual Defendants. But their counsel asked almost no questions regarding any of Defendants' contacts with Indiana. Instead, counsel attempted to elicit substantive information regarding the RICO claims, and sought information about the relationships between various corporate Defendants. (*See, e.g.*, Kendall Dep., Dkt. 130-16, at

108:23-109:20).  As it happened, the individual Defendants did not know certain details about Defendants' corporate structure.  (*See*, *e.g.*, Branigan Dep, Dkt. 130-20, at 83:24-84:15).

Relying on well-settled and controlling legal principles under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), Defendants' Motion to Dismiss exposed the patent infirmities in Plaintiffs' allegations and the absence of the necessary jurisdictional facts.  Given the complexity of Plaintiffs' allegations and claims, including under RICO, the Defendants carefully explained why Plaintiffs' Complaint—which provided no factual specificity and indiscriminately lumped all the Defendants together—did not meet the most basic federal pleading requirements. Further, the absence of any jurisdictional allegations as to any Defendant other than Resurgent and LVNV failed to meet basic due process requirements necessary to sustain personal jurisdiction.

Plaintiffs' responding brief made no serious attempt to defend the adequacy of their operative Complaint on either its charging or jurisdictional allegations.  Rather, Plaintiffs offered a number of new factual contentions (without support), and included testimony from the Individual Defendants' depositions to try to prop up their deficient claims.  (*See, e.g.*, Dkt. 130, at 29 (citing testimony from jurisdictional depositions to attempt to show substantive involvement of corporate defendants with respect to Plaintiffs' debts).)  No amended complaint was offered.  And, none of the new contentions or factual detail appeared in the Complaint to which the motion was directed.  In reply, Defendants emphasized why Plaintiffs' off-complaint excursion could not cure the fundamental gaps in their operative pleading.  Federal law accordingly compelled dismissal given the lack of particularized allegations to substantiate their claims.

On September 30, 2013, the Magistrate Judge nevertheless issued a Report and Recommendation (the "Recommendation") providing that this Court should deny Defendants' motion to dismiss in every respect but one.  (Dkt. 151, Report And Recommendation ("R&R").)  The Recommendation advises the Court to find that Plaintiffs have successfully pled all 9 of their claims against all 65 Defendants with the exception of one curable pleading failure as to one individual Defendant with respect to one RICO claim.  (R&R at 5-22.)  It further advises that regardless of whether Plaintiffs' RICO claim survives this Court's *de novo* review, the Court should assert personal jurisdiction over all of the non-resident Defendants based on an agency and/or alter ego theory.[2]  (R&R at 22-31.)

Defendants filed timely Objections from the Magistrate Judge's Recommendation on October 15, 2013.

## III. THE CHARGING ALLEGATIONS UNDERLYING THE CAUSES OF ACTION IN PLAINTIFFS' COMPLAINT CANNOT SURVIVE UNDER CONTROLLING NOTICE PLEADING PRINCIPLES

### A. The Unfocused And Amorphous Allegations In Plaintiffs' Nine Cause Of Action Complaint Against 65 Defendants Do Not Meet Pleading Standards Established By Well-Settled Federal Law.

The Magistrate Judge's ruling addresses Defendants' arguments identifying the multiple flaws in Plaintiffs' Complaint.  In rejecting those arguments, the Magistrate Judge is relies on (1) what purportedly is implicit from boilerplate allegations that are made and (2) conjectural surmise about allegations that are not made, but purportedly implicit from the discovery taken on the jurisdictional issues.  The legally infirm allegations in Plaintiffs' Complaint cannot, however, be rescued in this fashion.

In particular, the Magistrate Judge's ruling reflects his belief that Defendants can figure out their own unlawful conduct from the generic allegations Plaintiffs make about the corporate

---

[2] As Defendants acknowledged in their briefs, RICO provides for nationwide service of process, so if Plaintiffs' RICO claims passed muster, Defendants' jurisdictional dispute would be moot.  *See* 18 U.S.C. § 1965(b).

relationship among the "Sherman entities."  Based on that supposed awareness, the Magistrate Judge found no fault in Plaintiffs' lumping the Defendants together, and went so far as to conclude that the doctrine of alter ego should be applied based on certain evidence submitted in connection with the Motion to Dismiss.  Simply put, and as *Twombly* and *Iqbal* provide, the federal rules demand more specificity in a complaint's charging allegations  than the generic allegations made against "the Defendants" to meet the fairness considerations that underlie our notice pleading rules.  Efforts at indiscriminately lumping Defendants together are rejected, uniformly, because they do not provide the notice necessary to enable a party to mount a defense.

This is not a mere technicality.  Time and time again, courts have noted the profound unfairness that follows from sanctioning indiscriminate allegations made against multiple defendants, where factual specificity is lacking as to each one.  These cases note that defendants should not be left to guess at what they are being accused of, particularly where serious accusations, like a RICO conspiracy and fraud, are made.  *Uni\* Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (noting the serious consequences of such allegations).

Further, to the extent the Magistrate Judge had to look to the evidence outside the pleading to try to solve these deficiencies, the Recommendation still is legally infirm.  That evidence is not part of the operative Complaint and cannot be said to provide notice of allegations actually made against a particular Defendant.  Nor does it provide any of the missing factual detail on what any of the Defendants did, and to whom, and when.  *See Griffin v. Milwaukee County*, 369 F. App'x 741, 743 (7th Cir. 2010)[3] (dismissing a complaint because it "is unclear how each defendant is supposed to have participated; some defendants listed in the caption are not even mentioned in the body of the complaint."); *Parker v. Chase Home Fin., LLC,* No. 11-05043-CV-DGK, 2011 WL 4972328, at *2 (W.D. Mo. October 19, 2011) (same).

---

[3] A compendium of all unpublished cases cited herein is attached hereto as Exhibit A.

The leading case in this regard is the Seventh Circuit's thoughtful opinion in *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994), which captures and discusses the multiple cases dismissing complaints that are—like this one—bereft of factual detail and in which defendants were "lumped" together.    20 F.3d at 771-78 (and cases cited).   *Vicom*, moreover, has plenty of company.  *See e.g., Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 666 (N.D. Ill. 1987) ("Plaintiffs may not 'lump' defendants together in general allegations of fraudulent activity, implying that each defendant is responsible for the statements and actions of others."); *Design Time, Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ind, 1987) (discussing prohibition on lumping defendants together); *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270, 1278 (N.D. Ill. 1976) (same**)**.  Plaintiffs' generic lumping together of "the Defendants," while leaving any specific factual detail aside, permeates each of their causes of action and is exactly the practice the case law condemns.  If the fair notice principles the federal law embodies are to have any meaning, the operative Complaint here cannot stand.  This Objection should be sustained, and Defendants' Motion to Dismiss should be granted, for this reason alone.

### B.    Plaintiffs' Complaint Does Not Sufficiently Allege the Required Elements Of Their RICO Claims.

The Magistrate Judge's erroneous sanctioning of Plaintiffs' generic accusations is reason enough for this Court's intervention.  But use of those infirm generic accusations is not the only flaw in Plaintiffs' Complaint.  Plaintiffs advance three separate RICO claims here, yet they do so without the allegations necessary to support their foundational elements.   Settled law again shows that this does not pass muster, particularly where the heightened pleadings standards applicable to RICO claims are invoked.

**1.      The Magistrate Judge Erroneously Concluded That RICO's Elements Were Adequately Alleged.**

Plaintiffs' operative Complaint fails to plead, with any factual specificity as to any Defendant, much less each one of the 65 Defendants, the essential elements of their three RICO claims.  For example, with regard to "conspiracy," Plaintiffs' allegations are limited to the conclusory assertions that Defendants "conspired to defraud Plaintiffs" or that Defendants "did conspire to conduct and participate in said RICO enterprise."   (Compl.   ¶¶ 162 and 176.) Plaintiffs provide no allegations of any agreement to commit predicate acts.  Nor with respect to their allegations of mail and wire fraud, does their Complaint describe the specific roles of any of the Defendants.

More specifically, to plead a § 1962(d) conspiracy under RICO, Plaintiffs must allege that Defendants "agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity" and that they also "'agreed that someone would commit at least two predicate acts to accomplish those goals.'"  *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 784-85 (7th Cir. 1999) (quoting *Goren v. New Vision Int'l, Inc*., 156 F.3d 721, 732 (7th Cir. 1998)).   More particularly, Plaintiffs "<u>must allege that</u>" Defendants "'<u>agreed to the objective of a violation of RICO</u>.'"   *Goren*, 156 F.3d at 732 (emphasis added) (quoting *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986)); *see also Brouwer v. Raffensperger, Hughes & Co*., 199 F.3d 961, 965 (7th Cir. 2000).  A plaintiff must also plead "facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy."  *Lachmund,* 191 F.3d at 785.  *See Buck Creek Coal, Inc. v. United Workers of Am.*, 917 F. Supp. 601, 614 (S.D. Ind. 1995) (dismissing § 1964(d) claim because plaintiffs alleged no facts by which an agreement to commit a substantive RICO offense could be supported, other than general allegations that defendants

committed predicate acts).  Yet, this Court will search in vain for these needed allegations—they are not pleaded.

The Recommendation also does not address Plaintiffs' failure to plead an acquisition injury but instead collapses the causation requirements of §1962(c) and § 1962(b). (R&R at 17.) Unlike § 1962(c), which only requires that the racketeering activity proximately caused a plaintiff's damages, a § 1962(b) violation requires that a plaintiff "allege an acquisition injury analogous to the 'use or investment injury' required under § 1962(a)." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991)."  Here, the Magistrate Judge determined *only* that Plaintiffs sufficiently alleged an injury from the predicate acts (R&R at 18), which as authority makes clear, is not enough to allege causation for a § 1962(b) claim. *Resolution Trust Corp. v. S & K Chevrolet Co*., 918 F. Supp. 1235, 1245 (C.D. Ill. 1996), *opinion vacated in part on reconsideration*, 923 F. Supp. 135 (C.D. Ill. 1996 ("[I]t would be illogical to hold that a predicate act injury is sufficient to provide a plaintiff with standing under both sections 1962(a) and 1962(c) . . . . For the same reason, the Court finds that in order to state a claim under § 1962(b), a plaintiff must allege that he was injured by the defendant's acquisition or maintenance of an interest in the enterprise."); *see also McLaughlin Equip. Co. v. Newcourt Credit Group, Inc*., IP98-0127-C-T/G, 2004 U.S. Dist. LEXIS 13939, 108-109 (S.D. Ind. Feb. 18, 2004) ("[T]o prevail on a § 1962(b) claim, a plaintiff must show . . . injury from the defendant's acquisition or maintenance of an interest in or control of a RICO enterprise,  in addition to injury from the predicate acts.") (emphasis added).

Central to the Magistrate Judge's error was his reliance on the causation standard discussed in *RWB Servs., LLC v. Hartford Computer Group, Inc*., 539 F.3d 681, 683 (7th Cir. 2008).  *RWB* did not involve a § 1962(b) claim but instead decided the issue of causation in the

context of a § 1962(c) claim. *Id.* Again, the causation standards of §§ 1962(b) and 1962(c) are not the same. But here, the Magistrate Judge's Recommendation obscures this distinction by determining that causation is satisfied for purposes of 1962(b) solely by reference to *RWB*. Because the Magistrate Judge incorrectly applied the causation standard for a § 1962(c) claim to Plaintiffs' 1962(b) claim, the Recommendation improperly allowed Plaintiffs' § 1962(b) to survive despite their failure to allege an "acquisition injury."

And, finally, the Magistrate Judge correctly recognized that "there must be a difference between the RICO person (the defendant) and the RICO enterprise." (R&R at 20 (citing *Baker v. IBP, Inc.*, 357 F.3d 685, 691 (7th Cir. 2004))). Indeed, the Seventh Circuit and the Supreme Court have made clear that "[w]ithout a difference between the defendant and the 'enterprise' there can be no violation of RICO." *Baker*, 357 F.3d at 692 (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227-28 (7th Cir. 1997); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 747 F.2d 384, 401-02 (7th Cir. 1984). But Plaintiffs' Complaint fails to comply with this requirement as well. There is no enterprise alleged here that *is* distinct from "the Defendants."

While there are many reasons to reject the Magistrate Judge's analysis, his belief that a RICO enterprise was properly alleged is perhaps the most material. As the Magistrate Judge pointed out, Plaintiffs' alleged enterprise is the so-called "Sherman Structure," which is entirely made up of the Defendants in this case. (R&R at 20.) But in attempting to distinguish this case from controlling Seventh Circuit authority, namely *Baker*, the Magistrate Judge held that the alleged enterprise is nonetheless distinct from the Defendants because "in *Baker* the alleged enterprise was the sole defendant and in this matter no one defendant is identical to the Sherman Structure." (R&R at 20.) This holding is erroneous for several reasons.

- 11 -

First, *Baker* did <u>not</u> involve an "alleged enterprise that was the sole defendant." As pointed out in Defendants' opening brief, the complaint in *Baker* alleged that the "enterprise" was the defendant corporation, "<u>plus the persons and organizations who help it find aliens to hire</u>." *Id.* (emphasis added).  Second, *Baker* does not suggest, much less hold, that an enterprise fails the distinction test *only* when an alleged enterprise is comprised of the sole defendant.  That rule, which the Magistrate Judge fashions from misreading *Baker,* is fundamentally incompatible with federal RICO jurisprudence.

Third, a number of jurisdictions, including courts within the Seventh Circuit, have found that an alleged RICO enterprise, consisting of a group of entities or individuals, is not sufficiently distinct from the same group of RICO defendants—precisely our situation here.  *See e.g. Pena v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, No. 08 C 4222, 2009 WL 2177239, at *4 (N.D. Ill. July 21, 2009) ("When a plaintiff seeks to hold a <u>group</u> of RICO persons liable, and that <u>group</u> is identical to the <u>group</u> making up the alleged enterprise, the RICO claim fails because the persons are not distinct from the enterprise.") (emphasis added); *Brown v. County of Cook*, 549 F. Supp. 2d 1026, 1030 (N.D. Ill. 2008) (finding no viable RICO claim where defendants were the same as the alleged enterprise); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 784 (N.D. Ill. 2008) (same); *see also Odishelidze v. Aetna Life & Cas. Co.*, 853 F.2d 21, 23 (1st Cir. 1988) (finding no RICO claim where "Aetna companies and their officers or employees (the named defendants)" were the same as the alleged enterprise); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 658 (S.D.N.Y. 1996) (same).

In this case, there is no escaping the fact that Plaintiffs seek to hold liable as racketeer Defendants the exact same individuals and entities that make up the alleged RICO enterprise. Plaintiffs fully admit this in their Complaint, alleging that "each Defendant participated in and

<u>are members and part of</u> this *enterprise . . .*" (emphasis in original and added) (Dkt. 1 at 39.)  On this basis alone, the Court should find that the alleged enterprise is not distinct from the Defendants and that Plaintiffs' § 1962(c) claim fails as a matter of law.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("[A] party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims.")

If more conceivably is needed, the Seventh Circuit's opinion in *Fitzgerald* lays the matter firmly to rest.  Confronted with an enterprise similar to the one Plaintiffs allege here, the Court in *Fitzgerald* found that the enterprise element was not met based on its refusal to find the Defendant, Chrysler Corp., distinct from an enterprise composed of its subsidiaries and dealer agents.  *Fitzgerald*, 116 F.3d at 226.  Specifically, the Court concluded that "where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, <u>so that their role in the manufacturer's illegal acts is entirely incidental</u>, differing not at all from what it would be if these agents were the employees of a totally integrated enterprise, the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute." *Id*. (emphasis added.)

Rather than grapple with applying the rules espoused in *Fitzgerald,* the Magistrate Judge declared that structure and hierarchy is essentially the beginning and end of the enterprise analysis.  But *Fitzgerald* is the controlling precedent—directly analogous to this case and cited extensively in Defendants' briefs, yet the Magistrate Judge did not address it in his Report and Recommendation.

Crucial to the Seventh Circuit's holding in *Fitzgerald* was Judge Posner's description of the prototypical RICO case as one in which a "person bent on criminal activity seizes control of a previously legitimate firm and uses the firm's resources, contacts, facilities, and appearance of

legitimacy to perpetrate more, and less easily discovered, criminal acts than he could do in his own person, that is, without channeling his criminal activities through the enterprise that he has taken over." *Id*. at 227. In comparing *Fitzgerald* to the prototypical case, Judge Posner stated that the subsidiaries were only a "conduit" and that they did not, by their incidental role in the alleged fraud, "lend an air of legitimacy to a person or entity that unless masked by a legitimate-seeming enterprise would be quickly discovered to be engaged in criminal acts." *Id*. at 227-228.

The Seventh Circuit also addressed the requirement that the RICO enterprise be separate and distinct from the RICO person in *Emery v. Am. Gen. Fin., Inc*., 134 F.3d 1321, 1324 (7th Cir. 1998), a case involving "loan flipping." In *Emery*, American General Finance Corporation (AGFC), its wholly-owned subsidiary American General Finance, Inc. (AGFI), and ten unnamed individual defendants were named as defendants. AGFC engages in consumer lending and AGFI conducts AGFC's business in Illinois. The ten individual defendants allegedly devised the policies used by the corporate defendants. The RICO enterprise, although variously described, was "essentially the corporate group." *Id*. at 1324.

Relying on *Fitzgerald,* the Seventh Circuit found that the distinction requirement was not met. The court explained that where the defendant corporation operated through wholly-owned subsidiaries, "the parent would be exercising power that is inherent in its ownership of wholly-owned subsidiaries." *Id*. Judge Posner emphasized that the corporate defendant "must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate … firm and uses the firm as the instrument of his criminality." *Id.* at 1324.

The enterprise alleged here is no different from the enterprises rejected in *Fitzgerald* and *Emery*. Plaintiffs allege an enterprise called the "Sherman Structure," consisting of all the entity

- 14 -

Defendants, which allegedly are all subsidiaries and affiliated corporations of one another.  Thus, as in *Fitzgerald* and *Emery*, the enterprise and Defendants here are simply a corporate family of related entities (affiliates) that necessarily have business relationships and in which the alleged illegal acts were incidental to the entities' decision to operate through those business relationships.  Comparing this case to the prototypical RICO cases described in *Fitzgerald* and *Emery,* it is clear that Defendants are not engaged in the sort of abuses at which RICO is aimed.

In short, the Magistrate Judge's decision finding that Plaintiffs' adequately alleged RICO violations is error and compels the granting of this Objection.  The Magistrate Judge's Recommendation incorrectly expands RICO in the very way that Judge Posner cautioned against when he explained that RICO does not encompass every fraud case merely by showing "a pattern of fraud and some uses of the mails or telecommunications to further the fraud. . . ." *Fitzgerald,* 116 F.3d at 226; *see also Emery*, 134 F.3d at 1324 (affirming the dismissal of RICO claim and stating that "proof that defendants conducted the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c), is [not] satisfied merely by showing that the pattern of predicate acts (the mail frauds, in this case) were committed by a firm that has agents or affiliates.").  Plaintiffs' RICO claims, as alleged, are subject to dismissal under controlling law in this Circuit and elsewhere.

> **2.     The Magistrate Judge Erroneously Credited Inferences From Boilerplate Agency Allegations And Unpled Corporate Veil Piercing Allegations In Finding Plaintiffs' Fraud and RICO Claims Sufficient.**

The Magistrate Judge tried to make up for the lack of specific factual RICO allegations by resorting to the Complaint's boilerplate allegations of agency, and its own off-complaint excursion into the propriety of piecing the corporate veil.  Both these steps are missteps that support the granting of this Objection and the Complaint's dismissal.

In particular, the Magistrate Judge determined that Plaintiffs properly pleaded a theory of agency and veil-piercing and that, by doing so, Plaintiffs "provid[ed] sufficient specificity to notify such defendants of their participation in the allegedly fraudulent activity."  (R&R at 7.) The Recommendation thus relies on Plaintiffs' non-specific allegations of fraud to establish the agency relationships between the Defendants:

> [The] Complaint clearly states that "Defendants and their agents have engaged in fraudulent collection activity by impermissibly pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents with no legal ownership of  a debt**,"** **implying the existence of an agency relationship**. . . .

(R&R at 8 (citing Dkt. 1. at 3.) (emphasis added))

The Magistrate Judge then followed his agency determination with relying on Plaintiffs' pleaded conclusions of law:

> While the aforementioned illegal activities are visibly performed by LVNV and Resurgent, the strings are ultimately pulled by Sherman including Sherman Capital, MSPII, SFG, SCM, SOLLC, SOLLCIII, SALLC, and the Individual Defendants.  Under the Third Restatement of Agency and Respondeat Superior, all the Defendants are liable for the acts of LVNV and Resurgent. . . .
>
> Defendants and their agents have engaged in fraudulent collection activity by impermissibly pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents with no legal ownership of a debt . . .

(R&R at 8 (citing Dkt. 1. at 3-4.))

In a similar fashion, the Recommendation relies on the same allegations to conclude that Plaintiffs adequately pleaded veil-piercing:

> [A]s discussed with regard to Plaintiffs' Common Law Fraud claim, the Complaint clearly states that Defendants LVNV and Resurgent 'visibly performed' the fraudulent activity, as evidenced by the alleged facts and exhibits, while 'the strings are ultimately pulled by each of the other corporate and individual defendants.'
>
> . . . . [I]t is plausible for a company or its owners or executives to be held liable for the fraudulent misrepresentations of its agent or alter ego.

- 16 -

(R&R at 16 (citing Dkt. 1 at 3-4.))

But the problem with the Magistrate Judge's analysis is that the factual detail he supplies to meet the fundamental notice pleading requirements is drawn from boilerplate allegations of fact and law.  Stated differently, although the Recommendation correctly acknowledges that Plaintiffs must plead both their fraud claim and RICO predicate acts with Rule 9(b) particularity, the Magistrate Judge plainly failed to apply Rule 9(b) to the allegations supporting Plaintiffs' agency and veil-piercing theory.  Under the pleading standards of *Twombly* and *Iqbal*, and particularly under Rule 9(b), it is apparent that Plaintiffs' Complaint fails to properly plead an agency relationship or grounds for veil-piercing.  The Recommendation should be rejected for these reasons as well.

To begin with, controlling Seventh Circuit authority is clear that "[w]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." *Lachmund*, 191 F.3d at 783; *Young v. Harbor Mortor Works, Inc.*, Civil Action No. 2:07-CV-0031JVB, 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (applying *Lachmund* and determining that because plaintiff failed to sufficiently plead agency under Rule 9(b), the alleged misrepresentations are not imputable).  Similarly, courts in this jurisdiction and elsewhere apply Rule 9(b) to veil-piercing claims that are based on fraud.  *See Mathioudakis v. Conversational Computing Corp.*, 1:12-cv-00558-JMS-DKL, 2012 U.S. Dist. LEXIS 130786, at *9-11 (S.D. Ind. Sept. 13, 2012) (recognizing that "when a party attempts to pierce the corporate veil based on fraud, the  fraud allegations must comply with Federal Rule of Civil Procedure 9(b).").

Under Rule 9(b)—or even Rule 8 for that matter—Plaintiffs' formulaic and conclusory allegations are simply not sufficiently pled.  The Magistrate Judge conceded as much when he noted that these allegations at best "impl[y] the existence of an agency relationship. . . ." (R&R at 8.) (emphasis added)  Even the notion of an "implication" is too generous in this case.  On the contrary, the most basic facts about the alleged agency relationship are absent.

Like the analysis of Plaintiffs' agency theory, the Magistrate Judge's finding that Plaintiffs sufficiently pleaded a veil-piercing theory is factually unsupported and analyzed under the wrong pleading standard.  (R&R at 7.)  The Magistrate Judge pointed to only two allegations that even touch on veil-piercing:  (1) Plaintiffs' allegation that Defendants "all are interrelated in a clandestine and complex business structure" (R&R at 8 (citing Dkt. 1 at 6)) and (2) Plaintiffs' allegation "that Defendants LVNV and Resurgent 'visibly performed' the fraudulent activity, as evidenced by the alleged facts and exhibits, while 'the strings are ultimately pulled by' each of the other corporate and individual defendants." (R&R at 8 and 15.)

These two allegations are not sufficient—under any standard—to conclude that Plaintiffs properly pleaded a veil-piercing theory.  Nowhere in the Complaint do Plaintiffs allege any of the factors that courts use to determine whether a plaintiff has sufficiently pleaded a veil-piercing theory.[4]  *See NNDYM IN, Inc. v. UV Imports, Inc*., No. 3:09-cv-129-TWP-WGH, 2011 WL 5238824, at *2 (S.D. Ind. Nov. 1, 2011) (observing that when determining whether a plaintiff has sufficiently pleaded a veil-piercing claim, courts must consider whether plaintiff has sufficiently pleaded the state's substantive veil-piercing factors).

---

[4] The Recommendation also incorrectly relies on two cases to excuse Plaintiffs' pleading failures regarding agency and veil piercing: *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) and *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987).  Neither of these cases supports the proposition for which they are cited. First, *Bestfoods*, which was an appeal taken after a 15-day bench trial, did not involve pleading standards, but rather merely discussed the importance of veil-piercing generally.  524 U.S. at 62.  Similarly, *Koch* did not involve pleading standards, but rather held that a bankruptcy trustee can bring a claim for veil-piercing.  831 F.2d at 1345. Neither *Bestfoods* nor *Koch* discuss, much less hold, that veil-piercing or agency can somehow obviate the notice requirements under Rules 8(a) or 9(b).

Moreover, because all of the entities are incorporated or organized under the laws of Delaware, Plaintiffs were required to plead Delaware's veil-piercing factors—not Indiana's. *Cf. Laborers' Pension Fund v. Lay-Com, Inc*., 580 F.3d 602, 610 (7th Cir. 2009) ("Veil-piercing is an equitable remedy governed by state law, here the law of Illinois because that is where all of the corporations at issue were incorporated."). Delaware courts consider seven factors to determine whether a corporation and its shareholders operated as a single corporate entity: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation in merely a façade." *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470-71 (D. Del. 2010). Plaintiffs' Complaint alleges **none** of these factors. Even the most generous reading of the Complaint does not support finding that Plaintiffs' minimal allegations of "clandestine" operations and "pulling of strings" can meet these specific requirements.

In sum, the patent deficiencies in the Complaint's RICO allegations cannot be overcome by the surmise and conjecture the Magistrate Judge offers in his decision. The controlling legal principles require factual specificity in the Complaint itself. That specificity is absent, and this Objection should be granted.

### 3.  The Magistrate Judge Erroneously Concluded That Plaintiffs' RICO Claims Could Survive Based On "Information And Belief."

Despite acknowledging that allegations based on "information and belief" fail to satisfy Rule 9(b)'s particularity requirements, the Magistrate Judge incorrectly concluded that Plaintiffs sufficiently pleaded RICO predicate acts using precisely such allegations. (R&R at 16-17.) The Magistrate Judge tried to excuse Plaintiffs' "information and belief" allegations by characterizing them as not relating to the RICO predicate acts or to Plaintiffs, but to "conduct

against the putative class and amongst Defendants, which is not readily accessible."   (R&R at 17.)

However, Plaintiffs' "information and belief" allegations directly concern the alleged RICO predicate acts, which consist of mail and wire fraud:

- Defendants swept money out of frozen checking and savings accounts of <u>Plaintiffs</u> . . . . Dkt. 1, ¶ 142

- Defendants filed false proofs of claims in bankruptcy cases file by <u>Plaintiffs</u>. . . . Dkt. 1, ¶ 143.

- Defendants swept money out of <u>Plaintiffs</u>' payroll accounts  . . . by wire transfer. . . . Dkt. 1, ¶  144.

The Magistrate Judge recognized but excused Plaintiffs' pleading failure, concluding that the necessary information was "inaccessible."  (R&R at 17.)  While pleading on information and belief is permissible when (1) information is inaccessible, <u>and</u> (2) a plaintiff pleads "grounds for suspicion," neither the Magistrate Judge nor Plaintiffs can point to any allegation in the Complaint that pleads "grounds for suspicion."   The closest the Recommendation comes is attacking Defendants over the parties' discovery dispute regarding the scope of personal jurisdiction discovery.  *See* R&R at 16 (noting "Defendants' obstinate efforts to withhold discovery" and then claiming such alleged conduct is consistent with "Plaintiffs' allegations that Defendants' operations are 'clandestine.'")

But this sort of "suspicion" was not alleged in the Complaint, and even if it was, the discovery dispute between the parties during the course of this litigation is not sufficient to excuse pleading fraud based on "information and belief."   On the contrary, the Seventh Circuit has repeatedly held that when pleading fraud, allegations made upon "information and belief are insufficient."   *Uni\*Quality, Inc.*, 974 F.2d at 924; *Bankers Trust Co. v. Old Republic Ins*. *C*o., 959 F.2d 677, 684 (7th Cir. 1992) ("[T]he duty to plead the circumstances constituting fraud with

- 20 -

particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff, in which event he had to plead the grounds for his suspicions.")   For this reason also, Plaintiffs' RICO claims fail to pass muster and the Objection should be sustained on this ground also.

### C. Plaintiffs' Complaint Does Not Sufficiently Allege The Prerequisites For A FDCPA Claim Under Federal Law.

#### 1. The Magistrate Judge Used The Wrong Standard For Determining Whether A Corporate Affiliate Is A "Debt Collector" Under The FDCPA.

Plaintiffs' Complaint indiscriminately named all the corporate Defendants in their FDCPA claims, without any specific allegations of direct or indirect collection activities by any Defendants other than LVNV and Resurgent.  Accordingly, Defendants moved to dismiss these claims because none of the remaining entities was described as a "debt collector" under the FDCPA.  In the Recommendation, the Magistrate Judge used the wrong standard to determine whether any of these affiliates is "debt collector."  Under the correct standard, Plaintiffs' FDCPA claims against these entities cannot survive Defendants' Motion to Dismiss.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."   15 U.S.C. § 1692a(6).  The statute, however, specifically excludes from this definition of a debt collector "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts." 15 U.S.C. § 1692a(6)(B).

This exclusion has been parsed by the Seventh Circuit as follows: "a corporate affiliate is excluded from the Act's coverage so long as it satisfies two conditions: (1) the affiliate collects debts only for entities with which it is affiliated or related; and (2) the principal business of the affiliate is not debt collection." *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). By way of example, the exclusion provides that an affiliate of a hospital that actively collects debts only for the hospital is not subject to the FDCPA even though it otherwise fits the definition of a debt collector because it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

The Magistrate Judge misconstrues this provision by stating that "affiliates can <u>only</u> be excluded from the FDCPA claims if they have satisfied both conditions discussed in *Aubert*: (1) that the affiliate only collects debt owned by its affiliate and (2) that the affiliates are not in the business of collecting debt."   (R&R at 11) (emphasis added.)   Under the Magistrate's construction, *every* affiliate of a debt collector would also be subject to FDCPA claims regardless of whether it otherwise fits the FDCPA's definition of a debt collector.   This construction is incorrect on its face and clearly not contemplated by the FDCPA.  *See White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (joinder of extraneous defendants in FDCPA claims improper where no independent basis for their inclusion).   On the contrary, *Aubert* and Section 1692a(6)(B) provide an exclusion from the FDCPA for corporate affiliates *that otherwise fall under the FDCPA's definition of a* "debt collector."  *See Aubert*, 137 F.3d at 978. In other words, to be subject to the FDCPA, an affiliate must (1) meet the threshold definition of a "debt collector"; and (2) not satisfy the exclusion set forth in 1692a(6)(B) and *Aubert*.

In this case, the Complaint contains no allegations that bring any corporate affiliate other than LVNV or Resurgent within the debt collector definition.   Therefore, Plaintiffs' FDCPA

- 22 -

claims fail to state a claim against any corporate Defendant other than LVNV and Resurgent.

### 2.  The Magistrate Judge Erroneously Found That Plaintiffs' Pleading Could Support Claims Against Individual Owners Or Officers.

The Magistrate Judge recognized that owners and officers of a debt collector are generally not subject to FDCPA claims (R&R at 10) except "in limited circumstances where the corporate veil is pierced."  Nonetheless, the Magistrate Judge determined that Plaintiffs stated claims against the Individual Defendants despite no veil-piercing allegations in the Complaint. The Recommendation is at odds with established law.

For all the reasons set forth above, Plaintiffs failed to allege veil-piercing sufficiently to survive a motion to dismiss.  Plaintiffs' veil-piercing theory only arose in the context of the parties' jurisdictional dispute and appears nowhere in the Complaint.  With that in mind, the Complaint's indiscriminate naming of owners and officers of entities far removed from any collection activity is legally infirm.  The law is clear that "[i]ndividuals who do not otherwise meet the statutory definition of 'debt collector' cannot be held liable under the Act."  *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000).  Indeed, the Seventh Circuit has twice cautioned plaintiffs and their counsel that "FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions."  *Id.* at 1059; *see also White*, 200 F.3d 1019.  Judge Posner explained that, "[t]he joinder of these defendants illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed."  *White*, 200 F.3d at 1019.

Plaintiffs named the individual Defendants in the FDCPA counts before any of the jurisdictional discovery that spawned Plaintiffs' veil-piercing theory of personal jurisdiction.  In other words, at the time the Complaint was filed, Plaintiffs engaged in exactly the kind of

pleading the Seventh Circuit has twice admonished is frivolous.  The FDCPA claims as to the Individual Defendants accordingly are subject to dismissal also.

> **3.    The Magistrate Judge Erroneously Concluded That Plaintiffs' Pleading Established A Violation Of Indiana's Collection Agency Act Or Its Foreign Corporation Registration Statute.**

Defendants demonstrated in their Motion to Dismiss that, as a general matter, Plaintiffs cannot state an FDCPA claim based on the allegation that LVNV lacked a license under the Indiana Collection Agency Act ("ICAA") or failed to register under the Indiana Foreign Corporation Registration Statute ("IFCRS").  The Magistrate Judge erroneously disagreed, but even under the Magistrate Judge's reasoning, these allegations still cannot survive dismissal.

First, by the Magistrate Judge's own analysis, Plaintiffs Andrew Cox and Lucinda Cox have no claim under the ICAA based on LVNV's alleged lack of a license.   The Recommendation acknowledges that Defendants' alleged actions with respect to Andrew Cox and Lucinda Cox – telephone calls and letters – constitute "incidental contact," which is specifically exempted from the licensing requirement of the ICAA.  Indeed, the Magistrate found a plausible claim solely based on "Defendants' judgment against Plaintiff Snyder as more than 'incidental contact.'"  (R&R at 12.)

Second, with respect to all the Plaintiffs, the Magistrate Judge relied on *Fausset v. Mortgage First, LLC*, Cause No. 4:09-CV-42-PRC, 2010 WL 987169 (N.D. Ind. Mar. 12, 2010), to determine that a plaintiff can plausibly state an FDCPA claim based on an alleged violation of the ICAA.  (R&R at 12.)  In *Fausset*, however, the court found that bringing a lawsuit in Indiana without a license cannot give rise to a misrepresentation claim under § 1692e, which prohibits use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt."   15 U.S.C. § 1692e; *Fausset*, 2010 WL 987169 at *4 ("[p]laintiff has failed to provide this Court with, and the Court's own research does not reveal, case law

- 24 -

indicating that the mere filing of a lawsuit constitutes a misrepresentation that a party is licensed in the state"). Plaintiffs have not alleged Defendants made any affirmative representation that they were licensed. Accordingly, Plaintiffs' § 1692e claims should be dismissed.

Third, turning to the IFCRS, that statute provides that "[a] foreign corporation may not transact business in Indiana until it obtains a certificate of authority from the secretary of state." Ind. Code 23-1-49-1(a). The statute, however, specifically exempts the activities that Plaintiffs complain of from the very definition of "transact[ing] business." Indeed, the statute provides that the following **do not** constitute "transacting business within the meaning of subsection (a)":

> (1) Maintaining, defending, or settling any proceeding.
> …
> (8) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts.

Ind. Code 23-1-49-1(b) (emphasis added).

Here, the actions Defendants engaged in "fall under an exception or two." (R&R at 13.) But, using circular reasoning, the Magistrate asserts that even though Defendants satisfy definitional exceptions to transacting business, they still must register because they "transact business." (R&R at 13.) To reach this result, the Magistrate Judge incorrectly imports a definition of "transacting business" from outside the IFCRS that does not include the definitional exceptions. This reasoning compromises basic rules of statutory interpretation. If a statute is clear and unambiguous on its face, no room exists for judicial construction. *Thatcher v. City of Kokomo*, 962 N.E.2d 1224, 1227 (Ind. 2012). Here, the ICFRS defines "transacting business" in the negative by providing an enumerated, non-exhaustive list of activities that do not require registration under the statute. *See* Ind. Code 23-1-49-1(b). These definitional exceptions to "transacting business" are unambiguous and binding on the courts. *Ind. Patient's Comp. Fund v. Wolfe*, 735 N.E.2d 1187, 1191 (Ind. Ct. App. 2000). Indeed, if the exclusions did not apply

- 25 -

when a party is "transacting business" as that term is understood *outside* IFCRS, then the exclusions would be meaningless.  *Lex, Inc. v. Bd. of Trs.of the Town of Paragon* , 808 N.E.2d 104, 109 (Ind. Ct. App. 2004).  Accordingly, the Defendants' alleged conduct, all of which falls *within* the enumerated exceptions to "transacting business," does not require registration under the IFCRS and dismissal is compelled on this ground as well.

   **D.     Plaintiffs' Complaint Does Not Sufficiently Allege Common Law Claims For Unjust Enrichment, Restitution, Or Fraud.**

        Plaintiff's infirm attempt at generic pleading dooms their state law claims, just as it does with their federal counterparts.  In addition, Plaintiffs claim for common law fraud also fails because the Complaint abjectly fails to meet the heightened pleading standard imposed by Rule 9(b).  To state a claim for fraud under Indiana law, Plaintiffs must plead with particularity: (1) material misrepresentation of past or existing facts by a particular defendant; (2) which was false; (3) which was made with knowledge or reckless ignorance of the falseness; (4) which was relied upon by Plaintiffs; and (5) which proximately caused Plaintiffs' injury. *See Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996).  As noted here, however, Plaintiffs fraud claim fails because it does not identify which Defendant made the alleged misrepresentations, let alone when, where, or how.  Given the infirmity in those allegations, it follows that these claims also are subject to dismissal.

**IV.    THE PERSONAL JURISDICTIONAL ALLEGATIONS IN PLAINTIFFS' OPERATIVE COMPLAINT ARE INSUFFICIENT TO MEET CONTROLLING FEDERAL STANDARDS**

   **A.     This Court Lacks Personal  Jurisdiction over the Defendants Other than LVNV and Resurgent Absent a Viable RICO Claim.**

        The Magistrate Judge held that even absent RICO personal jurisdiction which allows for nationwide service of process, the Court can exercise personal jurisdiction over each named defendant on the basis that LVNV's and Resurgent's contacts are imputable to the remaining

Defendants through an agency or veil-piercing theory.[5]   (R&R at 24.)   The Magistrate Judge's Recommendation, however, incorrectly relies on a holding from *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255 (S.D. Ind. 1997) that is incompatible with more recent Seventh Circuit cases, which only impute jurisdictional contacts when there is an "unusually high degree of control" or a "subsidiary's corporate existence is simply a formality." Instead of reconciling *Wesleyan* with later Seventh Circuit cases, the Magistrate Judge focuses primarily on "common ownership" as the basis in which to impute jurisdictional contacts.   In addition, the Magistrate Judge failed to apply the correct evidentiary burden— "clear evidence"—to Plaintiffs' insufficient evidentiary support. Finally, the Recommendation improperly relies upon Indiana's veil-piercing factors to determine personal jurisdiction instead of the factors from Defendants' state of incorporation—Delaware.

**B.     The Recommendation Fails to Reconcile *Wesleyan* with Later Seventh Circuit Cases.**

The Magistrate Judge misreads *Wesleyan*.   Initially, *Wesleyan* acknowledges that there is a presumption that the jurisdictional contacts of a subsidiary are not imputable to a parent.   964 F. Supp. at 1261.   But more importantly, a central holding in *Wesleyan* is that this presumption only may be overcome with "clear evidence" that "[the parent] exerted greater than normal control over its subsidiaries, or that the subsidiaries acted as agents for the [parent], or that the subsidiaries were merely empty shells."   *Id.* at 1262; s*ee also McManaway v. KBR, Inc.*, 695 F. Supp. 2d 883, 896 (S.D. Ind. 2010) (same) (citing *Wesleyan*).   This holding is supplemented by later Seventh Circuit cases holding that jurisdictional contacts are not imputable unless there is an "unusually high degree of control" or that the "subsidiary's corporate existence is simply a

---

[5] Plaintiffs' Complaint also does not set forth contacts of any Defendant to the state of Indiana, other than LVNV. There are no allegations that any Defendant resides in, is incorporated in, or conducts business in Indiana.   There are no allegations regarding any Defendant owning property or having employees in Indiana.   Nor does the Complaint allege any facts supporting personal jurisdiction in Indiana over any Defendant other than LVNV.

formality." *See Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 (7th Cir. 2003).  Combining *Wesleyan* with the test applied in more recent Seventh Circuit cases, the "unusually high degree of control" test supplants the "greater than normal control" standard.[6]  The resulting test to impute jurisdictional contacts under Southern District of Indiana and Seventh Circuit law is: "clear evidence" that the parent exercised an "unusually high degree of control" over the subsidiary, or that the "subsidiary's corporate existence is simply a formality."  This standard is consistent with both *Wesleyan* and post-*Wesleyan* Seventh Circuit cases.  The Magistrate Judge erred in failing to apply this more rigorous test to impute jurisdictional contacts.

Instead, the Magistrate Judge applies a different "rule" from *Wesleyan* that is simply incompatible with more recent Seventh Circuit cases: "when a court finds for personal jurisdiction over an entity, it also has personal jurisdictional over individuals who (1) have a combined *controlling* ownership of the company and (2) simultaneously run the company, such as officers or directors.  (R&R at 25 (*citing Wesleyan*, 964 F. Supp. at 1262.))  While Judge Barker did find personal jurisdiction over the individual defendants based on allegations that they were "controlling principals, sole shareholders, sole directors, and officers on the nine corporate defendants," this holding is inconsistent with later Seventh Circuit cases that have held that "ownership" is not a basis in which to impute jurisdictional contacts. *Wesleyan*, 964 F. Supp. at 1262.

The Seventh Circuit makes this point clear.  *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000), which was decided three years after *Wesleyan*, declared that ownership in a company alone is not a sufficient basis to

---

[6] *Wesleyan* also held that jurisdictional contacts are imputable when a parent utilizes the subsidiary as an agent or the subsidiary is a merely a shell.  Seventh Circuit cases have not utilized this test and the Magistrate Judge does not apply it.

impute jurisdictional contacts from the company to the owner.  *Id*.  ("We join other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact."); *See also, Abelesz*, 692 F.3d at 658 ("[C]onstitutional due process requires that personal jurisdiction cannot be premised on . . . stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary.") (quoting *Cent. States*, 230 F.3d at  944.)  Such a rule would render the corporate structure a nullity and subject individual and corporate owners to personal jurisdiction absent jurisdictional contacts.   "Ownership" cannot be the guideline to impute personal jurisdiction.

### C.   "Common Ownership" is Not a Factor or Test Used by Courts.

Straying from the standard articulated by the Seventh Circuit, the Magistrate Judge creates an entirely new basis on which to impute jurisdictional contacts: "Common Ownership." (R&R at 26.)  The Magistrate Judge's finding of "common ownership" is an overriding factor in his overall determination that Plaintiffs made a *prima facia* showing of personal jurisdiction.  For instance, throughout his personal jurisdiction analysis, the Magistrate Judge repeatedly refers to the allegedly ominous fact that there is "common ownership":

- Plaintiffs have provided the Court with significant evidence of common ownership. (R&R at 26.)

- Defendants do not deny that there is common ownership.  (R&R at 26.)

- In addition to the common ownership among the corporate defendants. . . . (R&R at 27.)

- Unlike *Central States*, this matter involves parent and sister companies that . . . have common ownership. . . . (R&R at 29.)

The Magistrate Judge points to no authority that holds that "common ownership" is a basis to impute jurisdictional contacts.  "Common ownership" was not a factor considered in

*Abelesz*, *Purdue*, or *Central States*.  It is not even a basis for the holding imputing personal jurisdiction in *Wesleyan*—which is no longer consistent with Seventh Circuit law—which relied on allegations that the individual defendants were the "controlling principals, sole shareholders, sole directors, and officers on the nine corporate defendants." *Wesleyan*, 964 F. Supp. at 1262.

The circumstances in which jurisdictional contacts are imputable are narrow—and "common ownership" is not among them. *See Abelesz*, 692 F.3d at 658; *Purdue* 338 F.3d at 788. To accept the Magistrate Judge's reasoning and impute jurisdictional contacts on the basis of "common ownership" between defendants would unduly expand personal jurisdiction to nearly limitless situations.  Common ownership is present in countless corporate structures and nearly every allegation of veil-piercing. Exercising personal jurisdiction over entities and individuals simply because of "common ownership" is completely inconsistent with Seventh Circuit precedent that expressly holds that jurisdictional contacts are not imputable merely on the basis of ownership.  In short, the Magistrate Judge analyzed personal jurisdiction under an erroneous standard which is contrary to Seventh Circuit precedent.

**D.    The Magistrate Judge Failed to Apply a "Clear Evidence" Evidentiary Burden to Plaintiffs' Jurisdictional Evidence.**

It is true that in ordinary circumstances, Plaintiffs need only make a *prima facia* showing of personal jurisdiction.  (R&R at 24 (citing *Purdue Research Found.*, 338 F.3d at 782.))  But under the combined holdings of *Wesleyan* and the Seventh Circuit, to overcome the presumption that jurisdictional contacts are generally not imputable, a plaintiff still must present "clear evidence" that the parent exercised an "unusually high degree of control" or that the "subsidiary's corporate existence is simply a formality."  *See Abelesz*, 692 F.3d at 658; *Purdue,* 338 F.3d at 788.  The Magistrate Judge, however, utilized the *prima facia* evidentiary burden. For example, the Magistrate Judge declared that the "Court addresses whether Plaintiffs have

presented <u>prima facia</u> evidence that Defendants LVNV and Resurgent are the alter egos of the other named defendants. . . .” (R&R at 30.) (emphasis added) and “Plaintiffs have presented <u>prima facia</u> evidence that personal jurisdiction over all the corporate defendants is appropriate through their agency (sic) Defendant LVNV’s contacts . . . .”  (R&R at 29.) Because the Magistrate Judge clearly applied a “*prima facia*” evidentiary burden to Plaintiffs’ evidence rather than the “clear evidence” burden, the Magistrate Judge erred.

> **E.     Plaintiffs Failed to Provide “Clear Evidence” of an Unusually High Degree of Control or Lack of Corporate Formalities.**
>
> > **1.     Plaintiff Failed to Provide Clear Evidence of an Unusually High Degree of Control.**

The Magistrate Judge relied on testimony by Defendant Kendall that Sherman Capital Markets held ‘informal meetings’ on ‘a variety of different things’ by a ‘wide, varied group of people’ (within Sherman Capital Markets) and sometimes, those meetings resulted in decisions about Defendant LVNV.  (R&R at 28 (citing Dkt. 130-19.)  Based on this testimony alone, the Magistrate Judge summarized plaintiff’s evidentiary support as follows: “it is common practice for a varied group of employees of a sister company (Defendant Sherman Capital Markets) to informally meet to determine the direction of its sister’s company’s wholly-owned subsidiary’s wholly-owned subsidiary (Defendant LVNV) . . . .”  (R&R at 28-29.)  This conclusion did not “strike” the Magistrate Judge “as a typical level of control.” (R&R at 29.)  But this generalized observation is not enough to support a finding that Plaintiffs presented “clear evidence” of an unusually high degree of control, but rather denotes the typical level of control that naturally exists in a  typical parent-subsidiary relationship.

The Seventh Circuit and other jurisdictions recognize that all officers or parents control, direct, or supervise the entity or subsidiary to some degree.  *See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (“Parents  of  wholly  owned  subsidiaries

necessarily control, direct, and supervise the subsidiaries to some extent); *Abelesz*, 692 F.3d at 659 (same) (citing *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984) ("The officers of any corporation that owns the stock of another necessarily exercise a considerable degree of control over the subsidiary corporation and the discharge of that supervision alone is not enough to subject the parent to New York jurisdiction.").  While the Magistrate Judge acknowledged this general rule, he essentially ignores it and concludes without any authority or support—indeed without "clear evidence"—that common ownership and informal meetings constituted an "unusually high degree of control."  This was error.

### a. The Defendants are Not to Blame for Plaintiffs' Lack of "Clear Evidence."

Even though "ownership" is not a basis to impute jurisdictional contacts, the Recommendation seems to excuse Plaintiffs' failure to provide "clear evidence" because Defendants somehow prevented Plaintiffs from "gathering precise ownership figures."  (R&R at 30.)  This is incorrect.  Plaintiffs had ample opportunity to discover this information, but chose not to.  Plaintiffs did not serve written discovery until after they had responded to Defendants' motion to dismiss.  Plaintiffs did not take 30(b)(6) depositions.  Plaintiffs have never delineated the ownership structure of the defendant entities for the Court for the purposes of imputing personal jurisdiction. Instead, Plaintiffs chose only to take the depositions of the individual defendants and, remarkably, only asked one Individual Defendant (Mr. Roderick) about his individual ownership interest in one corporate entity and he responded with a precise figure: 2%. (Dkt. 130-17.) The fault for not presenting evidence of ownership interests lies solely with Plaintiffs, not Defendants.

**2.      Plaintiffs Failed to Provide Clear Evidence of a Lack of Corporate Formalities.**

The Magistrate Judge held that Defendants' alleged failure to follow corporate formalities allowed him to impute jurisdictional contacts of LVNV and Resurgent to the remaining Defendants.  (R&R at 27.)  In concluding that corporate formalities were not present, the Magistrate Judge apparently applied Indiana's veil-piecing factors. (R&R at 26 and 30.) First, none of the Seventh Circuit cases that analyzed whether imputation was proper did so in light of a state's veil-piercing factors.    See *Abelesz*, 692 F.3d at 658; *Purdue,* 338 F.3d at 788; *Cent. States*, 230 F.3d at  944.

Second, even if consideration of state veil-piercing factors were relevant, the Magistrate Judge looked to the law of the wrong jurisdiction to apply veil-piercing factors.  The Magistrate Judge incorrectly applies Indiana's veil-piercing factors to Plaintiffs' alleged "factual" evidence. (R&R at 26.)  To the extent a court should even consider ordinary veil-piercing factors at all, it should consider the veil-piercing factors of the state of Defendants' incorporation.  Because all of the entities are incorporated or organized under the laws of Delaware, the Magistrate Judge was required, if at all, to apply Delaware's factors—not Indiana's.   *Laborers' Pension Fund*, 580 F.3d at 610 ("Veil-piercing is an equitable remedy governed by state law, here the law of Illinois because that is where all of the corporations at issue were incorporated.").

As already discussed, Delaware courts consider seven factors to determine whether a corporation and its shareholders operated as a single corporate entity. (*See* supra at 19.)  Despite the holding in the Recommendation, Plaintiff's do not provide "clear evidence" of any defendant entity's failure to follow corporate formalities.   Neither Plaintiffs' Complaint nor their evidentiary submissions provide a single fact to support Delaware's factors for piercing. (*See* supra at 19, discussing Delaware's factors.)  For example, there is no proof that any defendant

entity does not properly maintain corporate records, or hold regular board meetings, or adopt board resolutions, or otherwise maintains separate business records from its sister or parent companies. *Cent. States*, at 945 (7th Cir. 2000) (declining to impute contacts and noting that the companies at issue "maintained separate books, records, financial statements, and tax returns"); *see also Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 736 (N.D. Ill. 2011) (finding corporate formalities observed where company had "distinct corporate by-laws and regular board meetings.") Plaintiffs had the opportunity to seek discovery on these issues, but chose not to. Ultimately, Plaintiffs did not and could not provide any such evidence.

Still, the Magistrate Judge held that Plaintiffs provided *prima facia* evidence that Defendants failed to observe corporate formalities, mistakenly relying on random excerpts of deposition testimony. For instance, the Magistrate Judge relies on Mr. Navarro's statement that we are "not big on titles." (R&R. at 27.) But here Mr. Navarro was merely describing a relaxed corporate atmosphere. There is no testimony that any corporate entity lacked appropriate officers, directors, or lacked appropriate capitalization. There is no testimony that any corporation commingled funds with another, or with any of the individual defendants. That a company treats all employees equally, and is "not big on titles" does not mean the corporation does not follow the proper corporate formalities.

The Magistrate Judge also apparently relied on the fact that the Individual Defendants during their depositions were unsure about the exact ownership structure of the corporate Defendants. (R&R at 27.) This, too, is not a factor considered under the proper corporate formalities test. And in any event, Defendants repeatedly encouraged Plaintiffs to take 30(b)(6) depositions of the entity Defendants so they could properly depose a corporate representative who has knowledge of the precise ownership structure. Plaintiffs, however, refused. (*See* Dkt.

149 at 6 (discussing the discovery history in this case).) Plaintiffs did not meet their burden of demonstrating by "clear evidence" that the corporate entities did not follow the proper corporate formalities.[7]

Plaintiffs have failed to provide clear evidence to satisfy any of the veil-piercing factors. This Court should reject the Recommendation to impute personal jurisdiction over the Defendants.

## V.    CONCLUSION

Plaintiffs' non-specific and generic allegations lack the factual detail federal pleading standards indisputably require.   Consistent with these standards, the Court should reject the Report and Recommendation and instead (1) dismiss Plaintiffs' Complaint under  Fed. R. Civ. P. 12(b)(6) for failure to state a claim; and (2) dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) as to all Defendants other than LVNV and Resurgent for lack of personal jurisdiction.

Dated:  October 15, 2013                        Respectfully submitted,

                                                s/ Gary S. Caplan
                                                Gary S. Caplan, pro hac vice
                                                Michael L. DeMarino, pro hac vice
                                                David A. Maas, pro hac vice
                                                REED SMITH LLP
                                                10 South Wacker Drive, 40th Floor
                                                Chicago, IL  60606-7507
                                                (312) 207-2000
                                                (312) 207-6400 (Facsimile)
                                                gcaplan@reedsmith.com

                                                James W. Riley, Jr.
                                                Atty. No. 6073-49
                                                141 East Washington Street, Fourth Floor
                                                Indianapolis, IN  46204
                                                (317) 636-8000
                                                (317) 636-8027 (Facsimile)
                                                jriley@rbelaw.com

                                                *Attorneys for Defendants*

---

[7] The Magistrate Judge also incorrectly relied on a statement that Defendants' *counsel* made during Mr. Navarro's deposition. (R&R at 27.)  A statement by counsel is not testimony of the witness and simply is not evidence.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2013 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.


<u>s/ Gary S. Caplan</u>