**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX, and STEPHANIE SNYDER, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:12-cv-1654-TWP-MJD CLASS ACTION |
| SHERMAN CAPITAL LLC; MEETING STREET PARTNERS II INC.; SHERMAN FINANCIAL GROUP LLC; SHERMAN CAPITAL MARKETS LLC; LVNV FUNDING LLC; RESURGENT CAPITAL SERVICES LP; SHERMAN ORIGINATOR LLC; SHERMAN ORIGINATOR III, LLC; SHERMAN ACQUISITION, LLC; BENJAMIN W. NAVARRO; LESLIE G. GUTIERREZ; SCOTT E. SILVER; KEVIN P. BRANIGAN; ROBERT A. RODERICK; KENNETT KENDALL; and JOHN DOES 1-50, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPPOSITION**
**TO PLAINTIFFS' MOTION TO COMPEL**

Defendants submit this Response in Opposition to Plaintiffs' Motion to Compel Regarding Written Discovery ("Motion to Compel").

**INTRODUCTION**

Responding to Plaintiffs' voluminous discovery requests has been a significant undertaking for Defendants. Plaintiffs' Requests to Produce and Interrogatories are nearly limitless, numbering 538 and 128, respectively. Compounding matters, Plaintiffs are conducting discovery in a case in which they

have sued a multitude of defendant entities whose business activities and corporate structure they do not fully understand.  These challenges have resulted in several discovery requests that overreach and are simply outside of the scope of permissible discovery.  Additionally, many of Plaintiffs' discovery requests are ambiguous, repetitive, and directed to the wrong party.  The challenge for Defendants has been to decipher what exactly Plaintiffs are asking for, while determining whether that requested information falls within the permissible scope of discovery.  Because of these unique challenges Defendants repeatedly have made themselves available to meet and confer regarding the discovery disputes.

For example, on October 18, 2013, Defendants sent Plaintiffs a letter that acknowledged the complexity of scope and sheer number of discovery requests Plaintiffs sought and provided a road map for Plaintiffs to understand particular discovery responses that might, on the surface, seem formulaic. (Defendants' Oct. 18 letter, Ex. A.)  This explanation was necessary because many of Plaintiffs' discovery requests were not only needlessly repetitive but also directed to the wrong Defendant.

Thus, when Plaintiffs made a broad discovery request to one entity, like Sherman Capital Markets, LLC ("SCM"), and that request was for documents that were in the possession of a different entity, like Resurgent, the Defendant responded that it would produce the document to the extent it was in its control, possession, or custody.   As the parent of a parent of Resurgent, SCM arguably could request the documents from Resurgent and then produce the documents itself; however, to avoid multiple Defendants producing the same documents, it made more sense to simply have the entity that had possession of the documents produce them.  This attempt to streamline and simplify production was communicated to Plaintiffs.  If Plaintiffs are uncertain as to which Defendant produced which document, they need only look at that document's Bates label, which identifies the producing party.

In addition to providing a roadmap to their discovery responses, two of Defendants' counsel, who both reside in the northern suburbs of Chicago, offered to appear in person—and did appear in

person—at a meet and confer conference held on October 29, 2013, at the office of Riley Bennet & Egloff, LLP, in Indianapolis.   During this meet and confer, the parties discussed the discovery issues raised in Plaintiffs' October 22, 2013 Rule 37 letter.  (Plaintiffs' Rule 37 Letter, Ex. B.)   Specifically, Plaintiffs' Rule 37 Letter addressed discrete issues that Plaintiffs believed they needed to resolve in order to have a meaningful settlement conference that was scheduled to take place on December 11, 2013.

In response to the meet and confer conference, Defendants sent Plaintiffs two letters on November 14, and 15, 2013 that identified the amount of debt collected from Indiana residents in the 4 years prior to the Complaint and the ownership of all the entities, with the exception of Sherman Capital Markets LLC and Sherman Capital LLC.  (Defendants' Nov. 14 and 15 letter, Ex. C.)   On December 16, 2013, Defendants agreed to produce amounts collected for two additional years -- the 6 years prior to the lawsuit.  (Defendants' Dec. 16 Letter, Ex. D.)  This was also communicated to Plaintiffs in a phone conversation on October 31, 2013—one of several conversations the parties had after the meet and confer and in order to resolve the issues raised in Plaintiffs' Rule 37 letter.  Defendants are working to produce this information.

Defendants' efforts to resolve the discovery disputes did not stop there.   Understanding that many of the discovery disputes identified in Plaintiffs' Rule 37 letter revolved around Plaintiffs' misconception that Defendants (i) do not own the debts at issue, and (ii) do not securitize debts and sell securities to Indiana consumers, Defendants *again* offered to meet in person to answer any questions that Plaintiffs may have about these issues. In fact, Defendants offered to bring high-ranking business executives who could explain Defendants' debt collection business and dispel Plaintiffs' suspicions of (i) lack of ownership and (ii) securitization and securities sales.   Specifically, Defendants offered to fly across the country to meet Plaintiffs in their counsel's offices to discuss corporate structure, ownership

issues, and any discovery issues Plaintiffs might have had.   Plaintiffs declined this invitation, which Defendants offered twice—once by phone and again in an email.  (Riley email, Dec. 11, 2013, Ex. E.)

The parties were making progress on their discovery disputes when Plaintiffs unilaterally ceased negotiations and filed their Motion to Compel.  Importantly, Plaintiffs motion does not even discuss the parties' negotiations or Defendants' concessions. Plaintiffs, who refuse to make a single discovery concession on any of their 666 requests, insist that because they have asked for certain documents, they are entitled to them.  Plaintiffs are incorrect.  Discovery has a discernible scope; it must be relevant to the claims or defenses in a case.  Plaintiffs have never attempted to explain *why* certain requests are relevant to their claims but instead have simply responded that they "need" the disputed documents. Unfortunately, Plaintiffs refuse to accept that some of their discovery requests are poorly drafted or simply outside the scope of permissible discovery.  Plaintiffs, likewise, cannot accept that Defendants own the debts at issue, and do not securitize or sell securities to Indiana consumers.  Defendants have tried to explain to Plaintiffs that they cannot produce documents related to activities that Defendants do not engage in.

Instead of continuing to work through the discovery matters identified in Plaintiffs' Rule 37 letter, Plaintiffs moved forward with their Motion to Compel.  Plaintiffs' Motion to Compel, however, identified, for the first time, an entirely new set of discovery issues that were never the subject of a Rule 37 letter or the required meet and confer conference.  Accordingly Defendants were not even aware that a discovery dispute existed as to these issues.   As discussed in Section A below, Plaintiffs were required to attempt to resolve these issues with Defendants and their failure to do so is grounds to deny their Motion to Compel.  The discovery issues that were covered in Plaintiffs' Rule 37 letter and prior meet and confer conferences between counsel are discussed in Section B below.   Although the parties met and conferred on these issues in Section B, the Court should nevertheless deny Plaintiffs' Motion to

Compel for the additional reasons that Plaintiffs' request are over broad, unduly burdensome, and outside the permissible scope of discovery.

## ARGUMENT

**A.      Plaintiffs Have Not Satisfied Rule 37's Meet and Confer Requirements**

The Court should deny Plaintiffs' Motion to Compel for the straightforward reason that Plaintiffs failed to meet and confer with Defendants on a wide range of discovery issues that only now have been brought to Defendants' attention in Plaintiffs' Motion to Compel.   As touched on above, Plaintiffs' Rule 37 letter identified a discreet number of issues that they felt needed to be resolved prior to mediation. The parties met and conferred several times on those discreet issues.   Most of Plaintiffs' Motion, however, addresses new discovery disputes that the parties have never discussed, that Defendants were not even aware existed and, most importantly, that Defendants are confident could have been resolved—or at the very least narrowed—prior to Plaintiffs filing their Motion to Compel.   Plaintiffs' failure to meet and confer needlessly frustrates Rule 37's goal of promoting judicial economy.

Local Rule 37-1 and Federal Rule 37(a) require that the parties meet and confer in good faith to try to resolve discovery disputes before seeking court action, such as a motion to compel.  The meet and confer requirement is only satisfied by meaningful dialogue on discovery issues.  *Loparex, LLC v. MPI Release Technologies, LLC*,  2011 WL 1871167, *2 (S.D. Ind. May 16, 2011) ("If a more interactive and meaningful meeting is infeasible, Local Rule 37.1 requires, at the very least, an attempt to *fully exchange views* before filing discovery motions.") (emphasis added); *Am. Gen. Life Ins. Co. v. Germaine Tomlinson Ins. Trust*, 2010 WL 2348713, *1 (S.D. Ind. June 8, 2010) ("And the Court denies the Motion to Compel in its entirety because it appears that the Tomlinson Defendants have failed to undertake a meaningful meet-and-confer for the purposes of Local Rule 37.1. For example, the record reveals no evidence that they even considered narrowing the scope of the requested discovery to reduce the burden necessary to answer it.").

Accordingly, courts have routinely denied motions to compel where, as here, the parties did not **fully** discuss discovery issues before bringing those issues before the court. *See Forest River Hous., Inc. v. Patriot Homes, Inc.*, 2007 WL 1376289, *1 (N.D. Ind. May 7, 2007) (denying motion to compel where the communications were not "meaningful" dialogue); *Design Basics, Inc. v. Granite Ridge Builders, Inc.*, 2007 WL 1830809, *1-*2 (N.D. Ind. June 21, 2007) (denying motion where conferences did not cover the full scope of issues); *Loparex, LLC v. MPI Release Technologies*, LLC, 2011 WL 1871167, *2 (S.D. Ind. May 16, 2011)(denying motion where the emails exchanged merited further discussion).

Like the cases above, Plaintiffs' meet and confer efforts fall short of what is required under Rule 37. Notably, Plaintiffs failed to meet and confer with Defendants on an overwhelming majority of the issues that are raised for the *first* time in Plaintiffs' Motion to Compel. These issues are listed below and Defendants notified Plaintiffs that the parties have not attempted to resolve any of the issues listed below. (Defendants' Letter, Jan. 9, 2014, Ex. F.)

| |
|---|
| 1. Plaintiffs' assertion that Defendants' interrogatory responses do not comply with Rule 33(b)(1)(B)(3)(5). (Dkt. 173 p. 2.) |
| 2. Plaintiffs' assertion that Defendants failed to specify the documents responsive to a particular request. (*Id*.) |
| 3. Plaintiffs' assertion that Defendants do not identify the custodian of responsive documents outside their possession, custody, or control. (*Id*. at 3.) |
| 4. Plaintiffs' assertion that Defendants have produced only two purchase contracts. (*Id*. at 4.) |
| 5. Plaintiffs' assertion that Defendants failed to produce documents in searchable and manipulatable electronic format. (*Id*. at 5-7.) |
| 6. Plaintiffs' assertion that in Request for production 25 and 26 to LVNV, "plaintiffs" does not merely refer to Plaintiffs Cox and Snyder but to *all* alleged debtors in Indiana. (*Id*. at 14.) |
| 7. Plaintiffs' assertion that Defendants should produce a privilege log (*Id*. at 19.) |
| 8. Plaintiffs assertion that Defendants are required to produce "copies of *any* litigation" that involves violations of the FDCPA. (emphasis added) (*Id*. at 20.) |
| 9. Plaintiffs' assertion that Defendants' production of its insurance declaration is deficient. (*Id*. at 21.) |

| 10. Plaintiffs' assertion that Defendants' confusion as to what is meant by the term "investors" or which specific financial reports Plaintiffs are asking for is without merit. (*Id.* at 21-22.) |
| --- |
| 11. Plaintiffs' assertion that Defendants' relevance objection to producing tax returns is without merit. (*Id.* at 22.) |
| 12. Plaintiffs take issue with Defendants' objections to producing SEC filings. (*Id.* at 23.) |
| 13. Plaintiffs take issue with Defendants' objections to production of internal communications between Defendants. (*Id.* at 24.) |
| 14. Plaintiffs take issue with Defendants' objection to production of verification procedures. (*Id.* at 26.) |
| 15. Plaintiffs' assertion that Defendants' objections to producing documents related to consumer reporting agencies is without merit. (*Id.* at 26-27.) |
| 16. Plaintiffs' assertion that Defendants failed to produce adequate responses to LVNV interrogatory numbers 15 and 16. |

Because Plaintiffs failed to meet and confer with Defendants on the majority of the issues raised in their Motion, the Court is now saddled with an arduous and burdensome number of discovery issues to decide which have never been discussed and narrowed by the parties. For instance, Plaintiffs claim that Defendants have produced only two purchase contracts. (*Id.* at 4.) Defendants believe that Plaintiffs are simply mistaken on this issue because Defendants' counsel emailed all of the relevant purchase contracts to Plaintiffs' counsel on November 14, 2013. (*See* DeMarino email, Ex. G.) Likewise, had the parties met and conferred on issues like what Defendants mean by the term "investors," Defendants would not have to be forced to wonder whether they mean any equity holder, debt holders, or equity holders with voting rights, convertible equity, or if Plaintiffs are referring to the alleged Indiana security holders. The parties, moreover, could have discussed what Plaintiffs specifically mean by "financial reports," since this is such a broad term and literally encompasses *any* document that has sums or totals numbers, including, for instance, payroll tax calculations, office and vehicle lease payments, and capital expenditures, to name a few. Similarly, the Defendants' "tax returns" are broad and cover aspects of Defendants' business that have nothing to do with their debt collection business.

And certainly, for example, had Plaintiffs met and conferred with Defendants regarding the particular format of certain production documents, Defendants could have worked to accommodate Plaintiffs. These are just a few examples of how a proper meet and confer could have narrowed the issues before the Court.

The bottom line is that it is fundamentally unfair and inefficient for Plaintiffs to ask the Court to decide discovery disputes that they have not brought to Defendants' attention or attempted to resolve themselves. In short, Rule 37 demands more than what Plaintiffs have done. Because Plaintiffs have failed to properly meet and confer, the Court should deny Plaintiffs' Motion to Compel without prejudice and order the parties to meet and confer on the issues that they have not attempted to resolve. In the alternative, if the Court is inclined to rule on the discovery disputes in which the parties have not conferred, Defendants request an opportunity to further substantively address those issues.

**B.      The Court Should Deny Plaintiffs' Motion to Compel as it relates to the Discovery Issues on which the Parties Met and Conferred Because Plaintiffs' Discovery Requests are Improper and Outside the Permissible Scope of Discovery**

      **(1)      The Purchase Price of the Contracts is a Protectable Trade Secret and Not Relevant to Any Claims or Defenses**

Plaintiffs' discovery requests seek production of purchase agreements (along with exhibits) that cover the portfolio purchase of accounts belonging to Indiana residents. (*See* Dkt. 173 p. 4.) To date, Defendants have produced all of the relevant purchase agreements along with the attachments but have redacted these documents in two respects: (1) purchase price has been omitted and (2) the identity of the Indiana residents has been omitted. Defendants' minimal redactions are justified for several reasons, ranging from the need to protect confidential trade secret information to legal doctrines protecting the identity of class members prior to class certification.

Initially, Defendants produced two purchase agreements with minimal redactions related to the price calculation of the portfolio of accounts as well as some indemnity provisions. During the in-person meet and confer, the parties discussed these redactions and Defendants eventually agreed to

un-redact the indemnity provisions, which Defendants did and reproduced on November 14, 2013.  (Ex. G.)  The parties did not reach an agreement with respect to the purchase price, however.  Plaintiffs insisted at the meet and confer, in various conversations afterwards, and now in their Motion, that they *need* to know the purchase price.   Plaintiffs, however, have never been able to articulate a reason, much less a justification, for why they "need" or are entitled to this information.

The redacted portions of the purchase agreements include purchase price calculations that are proprietary, trade-secret information.  These price calculations are essentially the negotiated price that the purchasing entity (sometimes defendant Sherman Originator, sometimes defendant Sherman Originator II) paid for the portfolio of accounts.  The redacted information is highly confidential and trade-secret information for two critical reasons.  First, it represents the *amount* paid for the portfolio of accounts; and second, and equally important, it illustrates *how* the purchasing entity determines how to value the portfolio of accounts.   Defendants have taken steps to ensure that this information remains confidential, including inserting confidentiality provisions into the purchase agreements and designating these purchase agreements as confidential pursuant to the protective order in this litigation.

Courts in this jurisdiction have repeatedly held, in many contexts, that information related to purchase price is a type of trade secret.  *See Ball Mem. Hosp., Inc. v. Mutual Hosp. Ins., Inc*. ., 784 F.2d 1325, 1345–46 (7th Cir.1986) (protecting confidential bidding data from disclosure based on concern that competitors could use the data "to raise their prices" or more generally "use it to advantage in the next round of negotiations");   *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F.Supp.2d 667, 681 (S.D.Ind.1998) ("information about customers, cost, and pricing is among the most fragile and ephemeral types of trade secrets"); *F.T.C. v. OSF Healthcare Sys*., No. 11 C 50344, 2012 WL 1144620, at *3 (N.D.Ill. Apr.5, 2012) (protecting "contract terms, contract negotiations and strategies, and pricing information" as trade secrets).

This case does not involve price fixing, antitrust violations or any other issues that might render a purchase price relevant to Plaintiffs' claims. In fact, none of Plaintiffs' claims revolve around the price that a defendant entity paid for the portfolio of accounts. Because Plaintiffs' have utterly failed to demonstrate why they require this proprietary information in order to successfully assert claims grounded in allegations of failure to own the debt and register as a debt collector, the Court should deny Plaintiffs' bid for unredacted purchase price.

 (2) **The Identity of Class Members is Improper Before Class Certification Because Plaintiffs are Shopping for a New Class representative, and the Information they Seek is not Required to Substantiate Their Class Allegations and Involves Privacy Concerns**

During meet and confer discussions, Defendants agreed that Plaintiffs are entitled to information identifying Indiana debtors in the limited instances where a lawsuit has been filed because that information is already public. Defendants, however, maintain that it is wholly inappropriate and improper to provide the identity of each individual Indiana debtor who is a potential class member prior to class certification. In a class action, such as this one, class claims are proved through the claims of the class representative, here Plaintiffs Cox and Snyder. *See Sperling v. Hoffmann–La Roche, Inc.*, 145 F.R.D. 357, 364 (D.N.J.1992) ("[I]n class actions, plaintiffs are expected to rely on the class representative to pursue their claims."); *Spicer v. Chicago Bd. Options Exch., Inc.*, 88 C 2139, 1990 WL 16983 (N.D. Ill. Jan. 31, 1990) ("Typicality, the third 23(a) requisite, means that evidence supporting the class representatives' claims must also prove the claims of the other class members.").

Perhaps Plaintiffs understand that their class representatives, Cox and the Snyder, cannot adequately represent the asserted class because, among other things, LVNV does own the debts of these Plaintiffs. Indeed, Defendants properly produced chain of title documents demonstrating this. In a letter dated October 18, 2013, counsel explained to Plaintiffs that:

> In the case of Plaintiff Snyder, Sherman Originator purchased the account portfolio from Citi and then, in turn, transferred and assigned those accounts to LVNV.

> In the case of Plaintiffs Cox, Sherman Originator III, LLC purchased the account portfolio from Chase and then, in turn, transferred and assigned those accounts to Sherman Originator, who then transferred and assigned the accounts to LVNV.

(See Defendants' Oct. 18 letter, Ex. A.)

In addition to providing this explanation, Defendants produced all of the documents reflecting these purchases and subsequent assignments. The documents demonstrating chain of title include the purchase agreements, the Bill of Sale, the Transfer and Assignment Agreement, and Exhibit A to the purchase agreement, which lists the accounts purchased. To help clarify things further for Plaintiffs, Defendants explained:

> [W]e have produced a spread sheet of the data string of accounts that we received from the seller (Chase or Citi) and that contains Plaintiffs' Cox's and Snyder's accounts listed on it. Because thousands of accounts are purchased at a time, we have only produced the ten names that come before and after the names "Cox" and "Snyder." The names before and after Plaintiffs' names are redacted in accordance with privacy laws.
>
> (*Id.*)[1]

Because the chain-of-title documents demonstrate that LVNV owns Plaintiffs' debt, Plaintiffs seek the names of other Indiana debtors so they can locate a proper class representative. While Defendants are confident that they own the debt of all putative class members, it is nonetheless fundamentally improper to produce information identifying potential class members prior to class certification. "Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, 05-CV-4659 (DLI) (MDG, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) (collecting cases).

---

[1] Plaintiffs also take issue with the fact that Defendants did not produce this and other information in an electronically searchable format. First, Plaintiffs never conferred with Defendants on this issue. Second, Defendants never initially requested the information in particular format. The Federal Rules state that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained *or in a reasonably usable form or forms.*" Fed. R. Civ. P. 34 (emphasis added). Accordingly, courts have allowed production of electronically stored information in non-native form where native form was not originally requested, and where, as here, the information was reasonably usable, as produced. *See e.g., Autotech Techs. LP v. Automationdirect.com, Inc.*, 248 F.R.D. 556, 559 (N.D. Ill. 2008).

Moreover, as a general matter, plaintiffs are not permitted to obtain discovery solely related to identifying potential class members before class certification. *See* 1 McLaughlin on Class Actions § 3:7 (10th ed.) ("Plaintiffs are not entitled to pre-class certification discovery from defendant of information identifying potential class members when such information is sought merely for the purpose of identifying such individuals for notice of a class action."). Instead, "[p]re-certification discovery that is permitted 'should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, yet not so broad that the discovery efforts present an undue burden to the defendant.'" *Welch v. Eli Lilly & Co.*, 1:06CV0641RLY-JMS, 2008 WL 1776413 (S.D. Ind. Apr. 16, 2008) (citation omitted); *see also Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 1:09CV0340-SEB-DML, 2010 WL 723283 (S.D. Ind. Feb. 25, 2010) (denying a motion to compel where plaintiffs discovery request went "far beyond what is reasonably necessary to substantiate [plaintiff's] class allegations.").

Here, Plaintiffs have not articulated why names and addresses are relevant at this point in the case, or more importantly, how this sort of identifying information is needed to substantiate their class allegations. Indeed, it is not. Defendants have already provided names of putative class members against whom LVNV has filed collection actions. Plaintiffs therefore presumably seek additional class member names and contact information for no reason but to identify potential class members, or new class representatives, which as cited above, is improper. Moreover, in addition to being unnecessary, Plaintiffs' attempts to acquire names and addresses—that are not already public—raises important privacy concerns that, when balanced against Plaintiffs' need for this information, render theses requests all the more improper. *See Bryant v. City of New York*, 2000 U.S. Dist. LEXIS 18548, at *5-*8 (S.D.N.Y. Dec. 27, 2000) (Denying plaintiffs' discovery request of the identities of putative class members consisting of protestor arrestees because of the sensitive nature of arrests).

Importantly, this is not case in which the putative class members bought a defective product or were denied some sort of employee benefit.  Rather, each putative class member is a debtor who has failed to pay his or her credit card balance—sometimes resulting in a substantial amount owed.   Thus, producing class names and addresses not only fully discloses the identity of the putative class member but also discloses the highly sensitive fact that a particular individual has not paid a credit card debt, carries significant debt, and has been the subject of collection activity, including in some instances, garnishment of wages.

In short, Plaintiffs should not be allowed discovery of names and contact information for the improper purpose of shopping for a class representative, especially when this information is not needed to substantiate their claims and involves important privacy concerns.   The Court should therefore deny Plaintiffs' Motion to Compel to the extent it seeks to compel the disclosure of the identities and addresses of potential class members.

**(3)      Documents Related to the Collection Activity of All Putative Class Members Was
          Never Requested And Is In the Possession of Third Party Collection Agencies and Law
          Firms**

Plaintiffs' Motion asks the court to compel production of all documents related to Defendants' collection activities with respect to all putative class members.  The Court should deny this request for three reasons: (1) Plaintiffs never actually requested these documents as to anyone other than the named Plaintiffs; (2) as discussed above, this request for information and documents regarding such an expansive number of putative class members is premature prior to certification of any classes; and (3) even if Plaintiffs were to have requested these documents, the requests are grossly overbroad and unduly burdensome in seeking hundreds of thousands of documents from hundreds of third parties such that this discovery, if permitted, should be done at Plaintiffs' expense, not Defendants.

First, the Court should deny this request because Plaintiffs never asked for this information in their discovery requests, but rather only sought documents regarding collection activities related to the named Plaintiffs.  Plaintiffs' requests for production numbers 25 and 26 state as follows:

REQUEST FOR PRODUCTION NO. 25:

All documents relating to the alleged debt of Plaintiffs and the collection thereof.

REQUEST FOR PRODUCTION NO. 26:

All documents in your possession relating to all Defendants' activities to collect the alleged debts from Plaintiffs.

These requests clearly only seek documents regarding collection activities for the named Plaintiffs: Andrew Cox, Lucinda Cox, and Stephanie Snyder.  Separate from these discovery requests and for purposes of preparing for a settlement conference, Plaintiffs' counsel subsequently asked Defendants' counsel for information beyond the scope of Plaintiffs' discovery requests.  (See Ex. B.)  Defendants never agreed to produce such information for purposes of the mediation.  More significantly, Plaintiffs never served formal discovery requests broadening the scope of their requests to include all putative class members.   Accordingly, Defendants are under no obligation to produce documents related to all putative class members in response to these requests.  Plaintiffs cannot amend their discovery requests by way of a motion to compel.

Furthermore, even if Plaintiffs had served requests seeking documents related to all putative class members, such discovery is grossly overbroad, unduly burdensome, and not calculated to substantiate Plaintiffs' class claims.  In a class action, Plaintiffs bear the burden of showing that class discovery is likely to substantiate the class allegations. *See Welch v. Eli Lilly & Co.*, 1:06CV0641RLY-JMS, 2008 WL 1776413 (S.D. Ind. Apr. 16, 2008) (denying motion to compel class-wide discovery prior to certification).  As discussed above, Plaintiffs are entitled to pre-certification discovery such that they have "a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23,

yet not so broad that the discovery efforts present an undue burden to the defendant." *Id.* (citation omitted).

Here, Plaintiffs' Motion suggests they seek discovery regarding in excess of 600,000 accounts, which would be a patently undue burden to Defendants. Defendants have produced documents related to collection activities with respect to the named Plaintiffs, and even the documents for these mere two accounts are voluminous, totaling well over 100 pages. Plaintiffs' Motion seeks production of the same voluminous records for in excess of 600,000 accounts of possible putative class members. Defendants have made clear to Plaintiffs that these documents are in the possession of more than a hundred different third party law firms and collection agencies. Coordinating collection and copying of these materials from so many different third parties would require an enormous investment of time and money. At the meet and confer conference, Defendants proposed collection and production of a sampling of putative class members' files, but Plaintiffs failed to propose a protocol for such sampling and ceased all negotiations on the issue. Plaintiffs have provided no reasonable justification that they need production of files for *all* 600,000 as opposed to a sampling at this juncture in light of the enormous burden of wholesale production.

If Plaintiffs are permitted to conduct this discovery related to *all* putative class members, the Court should order Plaintiffs to cover the enormous expense of collecting and copying such responsive documents. While the responding party normally bears the costs of complying with discovery requests, courts have discretion to shift costs to the requesting party in order to protect the responding party from undue burden or expense. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358-59 (1978); *Spears v. City of Indianapolis*, 74 F.3d 153, 158 (7th Cir. 1996); *Annex Books, Inc. v. City of Indianapolis*, 2012 WL 892170 (S.D. Ind. Mar. 14, 2012). In the class action context, cost-shifting is appropriate where plaintiffs seek expensive discovery in advance of class certification. Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331, 341 (E.D. Pa. 2012) (holding that "where (1) class certification is pending, and (2) the

plaintiffs have asked for very extensive discovery, compliance with which will be very expensive, that absent compelling equitable circumstances to the contrary, the plaintiffs should pay for the discovery they seek. If the plaintiffs have confidence in their contention that the Court should certify the class, then the plaintiffs should have no objection to making an investment.").

Here, Plaintiffs are seeking hugely expensive and burdensome pre-certification discovery without reasonable justification such that they should have to carry the cost.  Plaintiffs have pointed to no equitable circumstances to the contrary.

**(4)     Moody's Documents, SEC Filings, and Consumer Reporting Documents are Not Relevant to Any of Plaintiffs' Claims or Defendants' Defenses.**

Throughout this case, Plaintiffs have sought discovery on several topics that have no relevance to any of Plaintiffs' claims in this action.   Defendants believe that Plaintiffs' attempts to uncover information related to securitization, the sale of securities, Moody's ratings, and most recently, unrelated FDCPA lawsuits and consumer reporting documents, are really just a veiled attempt to "fish" for potential claims to assert against Defendants.   The Court should deny Plaintiffs' bid for discovery on these issues because the information that Plaintiffs seek is outside the permissible scope of discovery under Rule 26.

Indeed, there are limits to what a party may properly seek via discovery. "District courts need not condone the use of discovery to engage in 'fishing expedition[s].'" *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir.2004) (citing *Exxon Corp. v. Crosby–Mississippi Res., Ltd.*, 40 F.3d 1474, 1487 (5th Cir.1995)). Thus, the courts will not compel discovery that is wholly speculative. *Id.*

Plaintiffs' claims in this case center around two core allegations that they build and pile on claims for fraud and violations of the FDCPA and RICO.  These allegations are that (1) Defendants did not own the debt they collected and (2) Defendants failed to register and license in Indiana as a debt collector.   Importantly, Plaintiffs do *not* assert any claims for securities violations and do not assert any claims related to consumer reporting violations—such as a claim under the Fair Credit Reporting Act

(FCRA).   Despite the absence of these claims, Plaintiffs' discovery requests seek production of documents that Plaintiffs ostensibly want for the purpose of amending their complaint to include these new type of claims.   To date, Plaintiffs have not articulated how these requests are relevant to their *asserted* claims.

A prime example of this is Plaintiffs' request for *all* lawsuits against Defendants that involve *any* alleged FDCPA violation. (Dkt. 173, p. 20.)    As written, this request is overly broad and requests production of an enormous amount of information that has no relevance to the FDCPA claims that Plaintiffs actually assert.   For instance, the fact that a plaintiff may have alleged a FDCPA violation for calling before 8:00 am or 9:00 pm (*See* 15 USC 1692c] § 805(a)(1) has no bearing on FDCPA claims involving a failure to own the debt or register.   For the same reasons, Defendants should not have to produce documents related to consumer reporting agencies; Plaintiffs have not asserted any claims for violations of the FCRA.

Some of Plaintiffs' other requests are even less relevant than their requests for every FDCPA lawsuit or consumer reporting documents.   At no point during the parties' meet and confer discussions have Plaintiffs offered a reason *why* Plaintiffs require or are entitled to SEC filings or Moody's documents. Instead, their argument has been—and their Motion is not much different—that Plaintiffs have requested this information and therefore Defendants must not only have it, but should also produce it. Plaintiffs' Motion goes only slightly further, arguing that Defendants should be compelled to produce this information because Plaintiffs' Complaint contains unsupported *allegations* of securitization and the sale of securities. (Dkt. 173 p. 13.) The scope of discovery, however, is not solely determined by what a plaintiff contrives to *allege* in the complaint.   If this were the case, a plaintiff could compel testimony of a witness's infidelity in an unrelated antitrust case simply by alleging in the complaint that the witness engaged in an extra-marital affair.   Because these requests are not within the permissible scope of discovery, Defendants are not required to answer, explain, or otherwise produce

anything related to whether they file anything with the SEC.   And in any event, SEC filings are public and equally available to Plaintiffs—a point that renders their request all the more improper, since Plaintiffs can just as easily conduct a search on EDGAR or sec.gov to determine if Defendants file any documents which relate to Plaintiffs' claims.

Defendants have consistently explained to Plaintiffs that they do not sell securities to Indiana consumers or securitize the debt they collect.  Plaintiffs, however, continue to push for documents that do not exist.  For instance, in addition to the testimony of each Individual Defendant, Defendants' counsel has repeatedly explained to Plaintiffs—during the in-person meet and confer and in subsequent discussions—that the existence of certain Moody's documents relating to Defendants is not evidence of securitization or the sale of securities.  Defendants explained that LVNV borrows money from various lenders in order to finance the purchase of portfolios of credit card accounts.   To secure the payment on the loan, the lender, in turn, takes a security interest in the account receivables, in the same way that a lender takes a security interest in any collateral pledged in a typical purchase money security interest under the UCC. *See In re Myers*, 393 B.R. 616, 619-20 (Bankr. S.D. Ind. 2008) (explaining that a PMSI is when the lender takes a security interest in the collateral that was bought with the money borrowed from the lender).

Before the lender agrees to extend credit, however, it typically requires a threshold credit rating from Moody's.  The credit rating reflects LVNV's creditworthiness and ability to pay back the loan—but has nothing to with securitization or the sale of securities to Indiana consumers.

Defendants further explained that they are not familiar with, much less in possession, control, or custody of, the specific Moody's documents being requested since these documents apparently are created by Moody's and  will likely need to be subpoenaed from Moody's.   Plaintiffs' proper course of

conduct is to request documents from Moody's or depose a Moody's corporate representatives to clarify this issue.[2]

Moreover, as discussed above, Defendants offered to fly representatives to Plaintiffs' offices at Plaintiffs' convenience, and work through the misunderstanding that Defendants securitize or offer securities to Indiana consumers.   Unfortunately, Plaintiffs refused this offer.  Defendants are unclear as to what more they can do to explain to Plaintiffs that their request for SEC and Moody's documents is outside the scope of permissible discovery.  The Complaint does assert a specific claim regarding securitization and Defendants do not engage in his activity.  Because Plaintiffs seek to compel the production of documents that are outside of the scope of permissible discovery, their Motion to Compel should be denied.

## CONCLUSION

For the reasons stated above, the Court should (i) order the parties to meet and confer on the discovery disputes that Plaintiffs failed to bring to Defendants' attention prior to filing Plaintiffs' Motion to Compel and (ii) deny Plaintiffs' Motion to Compel insofar as it seeks to compel discovery responses regarding issues that were properly met and conferred upon.


Dated: January 14, 2014                             Respectfully submitted,

                                                    s/ Gary S. Caplan
                                                    Gary S. Caplan, pro hac vice
                                                    Michael L. DeMarino, pro hac vice
                                                    David A. Maas, pro hac vice
                                                    REEDSMITH LLP
                                                    10 South Wacker Drive, 40th Floor
                                                    Chicago, IL  60606-7507

---

[2] Defendants also explained that Exhibit E to the Complaint, which contains the term "securitization," was not generated by any of the Defendants; rather, Defendants believe that this was a document created by MGIC or Radian, both former affiliates with Sherman Financial Group prior to the actions complained of by Plaintiffs. Defendants, moreover, explained to Plaintiffs that they do not know why the "term" securitization appears in the Radian and MGIC presentation.

(312) 207-2000
(312) 207-6400 (Facsimile)
gcaplan@reedsmith.com

James W. Riley, Jr.
Atty. No. 6073-49
141 East Washington Street, Fourth Floor
Indianapolis, IN  46204
(317) 636-8000
(317) 636-8027 (Facsimile)
jriley@rbelaw.com
**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 14, 2014 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing to all counsel of record.

s/ Gary S. Caplan _____