UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, <br> LUCINDA COX, <br> STEPHANIE SNYDER Individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SHERMAN CAPITAL LLC, <br> MEETING STREET PARTNERS II INC., <br> SHERMAN FINANCIAL GROUP LLC, <br> SHERMAN CAPITAL MARKETS LLC, <br> LVNV FUNDING LLC, <br> RESURGENT CAPITAL SERVICES LP, <br> SHERMAN ORIGINATOR III LLC, <br> SHERMAN ACQUISITION LLC, <br> BENJAMIN W. NAVARRO, <br> LESLIE G. GUTIERREZ, <br> SCOTT E. SILVER, <br> KEVIN P. BRANIGAN, <br> ROBERT A. RODERICK, <br> KENNETT KENDALL, <br> JOHN DOES 1-50, <br> SHERMAN ORIGINATOR LLC, <br><br> Defendants. | No. 1:12-cv-01654-TWP-MJD |

**ORDER ON PLAINTIFFS' MOTION TO COMPEL**

This matter comes before the Court on Andrew Cox, Lucinda Cox, and Stephanie Snyder's ("Plaintiffs") Motion to Compel Regarding Written Discovery, filed on December 20, 2013. [Dkt. 172.] For the following reasons, the Court hereby **GRANTS** in part and **DENIES** in part the Plaintiffs' motion to compel.

1

## I. Background

This case alleges claims of fraud, unjust enrichment, Racketeer Influenced and Corrupt Organizations Act (RICO) violations, and Fair Debt Collection Practices Act (FDCPA) violations.  [Dkt. 1.]  These claims arise out of the alleged acts of Defendants Sherman Capital LLC, Meeting Street Partners II Inc., Sherman Financial Group LLC, Sherman Capital Markets LLC, LVNV Funding LLC, Resurgent Capital Services LP, Sherman Originator III LLC, Sherman Acquisition LLC, and Sherman Originator LLC ("Entity Defendants") and Defendants Benjamin W. Navarro, Leslie G. Gutierrez, Scott E. Silver, Kevin P. Branigan, Robert A. Roderick, and Kennett Kendall ("Individual Defendants"), collectively "Defendants."  Upon filing this lawsuit, Plaintiffs also moved to have this matter certified as a class action [Dkt. 5], which the Magistrate Judge has recommended that the District Judge grant [Dkt. 131].  However, the Defendants have objected to this recommendation [Dkt. 133], and the District Judge has not yet ruled on that objection.

From the outset, Plaintiffs have had difficulty acquiring discovery from Defendants in this matter.  Plaintiffs have already filed two motions to compel regarding Defendants' reluctance to acquiesce to Plaintiffs' deposition requests and to cooperate during the depositions.  [Dkt. 40, 77.]  The Court granted both such motions to compel.  [Dkts. 55, 88.]  On October 11, 2013, Defendants responded to Plaintiffs' interrogatories and requests for production that had been served on the Entity Defendants, but Plaintiffs believe Defendants' responses to be "incomplete and evasive."  [Dkt. 172 at 2.]  After making a "good faith" effort to obtain discovery from the Defendants without requesting action by the Court, Plaintiffs were unable to resolve their issues with Defendants' responses, and Plaintiffs filed present Motion to Compel Regarding Written Discovery.  [*Id.* at 4.]  Oral argument was held on Plaintiffs' motion to

compel at a hearing on January 31, 2014 [Dkt. 202], and the Court now considers Plaintiffs' motion.

## II.  Discussion

Rule 37 permits a party to file a motion to compel a required disclosure upon "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a). A required disclosure, as defined by Rule 26, includes information that a party "may use to support its claims." Fed. R. Civ. P. 26 (a)(1)(A). When there is good cause, "the court may order discovery of any matter **relevant**" to the issues of the case. Fed. R. Civ. P. 26 (b)(1) (emphasis added). However, information that is not relevant to a claim or defense is not discoverable. *Id.*

This Court has "broad discretion in discovery matters," including the consideration of a motion to compel discovery. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) (citing *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000)). Plaintiffs allege several deficiencies regarding Defendants' responses to Plaintiffs' written discovery requests, and the Court will address such allegations herein.

### A.  General Deficiencies

Before addressing specific grievances regarding Defendants' responses to their requests, Plaintiffs allege several general deficiencies. Plaintiffs' two general grievances regarding Defendants' interrogatory answers are (1) the interrogatories were not answered under oath nor signed by an officer or agent, as mandated by Rule 33(b), and (2) many responses indicate that business records are responsive to the interrogatory but fail to specify the records in sufficient detail so as to enable Plaintiffs to locate and identify such records, as required by Rule 33(d). [Dkt 173 at 2-3 (citing Fed. R. Civ. P. 33(b)(1)(B)(3), (5) and 33(d)(1)).] Plaintiffs further allege that Defendants' responses to document requests are generally insufficient because Defendants merely state that they "will produce documents . . . to the extent such documents are in

3

defendants' possession, custody, or control" without stating whether such documents are known to exist and, if so, identifying the defendant or entity in possession, custody, or control of such a document so that the Plaintiffs may subpoena it.  [*Id.* at 3]  Plaintiffs then move for the Court to order Defendants to comply with such requests within ten days of the date of this order.

In response, Defendants believe that "the vast majority" of the issues that Plaintiffs raise in their motion to compel have been resolved since the motion was filed, as, according to Defendants, many of the issues raised in Plaintiff's motion had not been previously discussed with Defendants.[1]  [Dkt. 202 at 4.]  The general issues that the parties agreed to prior to the hearing on the motion include the verification of interrogatory answers, the identification of documents that would be responsive to interrogatories, and the identification of which defendant is in possession of which document.  [*Id.* at 4-5.]  Accordingly, the only general deficiency remaining is that much of Defendants' responses state that the Defendants "will produce" responsive information without any reference to a production timeline.  The Court will grant Plaintiffs' request to give the Defendants a response deadline, and Defendants agreed at oral argument that thirty days "would not seem unreasonable."  [*Id.* at 64.]  Thus, Defendants are ordered to submit complete and responsive answers to Plaintiffs' requests for written discovery

---

[1] The parties additionally came to agreements prior to the Court's hearing on the matter regarding many of Plaintiffs' specific issues with Defendants' responses.  With regard to issue VIII, Litigation Against Defendant Alleging Violations of the FDCPA, the Defendants agreed to "produce a list of all Indiana FDCPA suits for the last four years, and complaints, if they are in defendant's [sic] possession, custody, or control," and Plaintiffs "are agreeable to that production."  [Dkt. 202 at 40.]  With regard to issue IX, Insurance Policies, the Defendants "produced an insurance policy" that is believed to be the relevant policy, as "Rule 26(a)(1) requires any defendant that has an insurance policy that's covering any part of [the case at issue to produce it] for inspection."  [*Id.* at 41.]  With regard to issue XII, Documents Regarding Plaintiffs' Alleged Debt Sent Between Two Defendants, or Between Defendant and Sherman Financial Group, the Plaintiffs agree not to pursue request number 55 to Defendant LVNV at this time because Plaintiffs "believe it would be included in the production for [request number] 54," and Defendants "agreed to produce the information [of request number 54]," if discovered.  [*Id.* at 48.]  With regard to issue XIII, The Use of Collection Notices, Plaintiffs are "willing to waive [the issue] for the time being and not pursue [it]."  [*Id.*]  With regard to issue XV, Consumer Reporting Agencies, Plaintiffs "agree to, for the moment, waive that request."  [*Id.* at 53.]  This is a complete list of Plaintiffs' specific issues with Defendants' responses that were disposed of prior to the hearing on the matter.  The remaining issues are addressed herein.

and produce all documents responsive thereto within twenty-eight (28) days of the date of this Order.

### B.      Indiana Agreements, Data Strings, Law Suits, and Accounts

Plaintiffs make several requests for information pertaining to the putative classes of Indiana residents.  Such production requests include the "purchase contracts pursuant to which Indiana accounts were purchased by the defendants," other "information about [Defendants'] Indiana accounts, regardless of whether the information was contained in the purchase agreement or the exhibits and attachments," and information "concerning collection activities for all plaintiffs, which . . . includes all alleged debtors in Indiana."  [Dkt. 173 at 5, 8, 14, 27.]  Defendants argue that such information is not relevant, as the Court has not yet certified the matter as a class action, and that any efforts to produce such information would be overly broad and unduly burdensome upon the Defendants in light of the current lack of class certification.  [*See* Dkt. 185 at 10-16; Dkt. 202 at 10-20.]  Plaintiffs, in reply, assert that Defendants have waived the class action certification objection to these production requests because the objection was not timely raised in Defendants' responses to Plaintiffs' requests for production, but instead was raised for the first time in response to Plaintiffs' motion to compel.  [Dkt. 189 at 4-7.]

It is true that an objection to a discovery request must be raised "in timely fashion." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 605 (7th Cir. 1981). Failure to raise an objection to a Rule 34 request for production in a timely manner waives the responding party's right to assert the objection at a later time.  *See, e.g.*, *Buonauro v. City of Berwyn*, 08 C 6687, 2011 WL 116870 (N.D. Ill. Jan. 10, 2011) ("It is well-established that the failure to [raise objections to discovery requests] in a timely manner waives a subsequent assertion of objections in the absence of good cause"); *Peterson v. Farrakhan*, 2:03CV319, 2005 WL 2465254 (N.D. Ind. Oct. 5, 2005) ("it is firmly established in [the Seventh] Circuit that a

party who fails to timely respond to discovery requests waives his objections thereto"). While Rule 34 does not precisely delineate when an objection is "timely" or not, the rule clearly states that a party upon whom the discovery request has been made has thirty days to respond, and an objection to a part of the request must specify the reasons for so objecting in such response. Fed. R. Civ. P. 34(b)(2). This is interpreted to mean that the time for raising an objection is in the "initial response to Plaintiffs' discovery requests," and failure to do so constitutes waiver of the objection. *Buonauro*, 2011 WL 116870, at *4.

Defendants first argue that their class certification objection is not waived as untimely because it was raised in a letter to Plaintiffs' counsel on October 29, 2013, eighteen days after submitting their initial responses to Plaintiffs' requests for production. [Dkt. 202 at 11-12.] Rule 34, however, does not grant a party forty-eight days to respond to a request for production, and Rule 34 does not provide a follow-up letter exception to the requirement that an objection be raised specifically in the formal responses. Thus, the Court is inclined to follow *Buonauro* and find that Defendants have waived their class certification objection by not timely raising it in their initial responses to Plaintiffs' Rule 34 requests for production.

Defendants then attempt to resuscitate their class certification objection by weaving it into their overly broad and unduly burdensome objections [*see* Dkt. 202 at 27], which were raised in Defendants' initial responses to Plaintiffs' requests [*see* Dkt. 173 at 9, 15, 27]. Specifically, Defendants argue that, until the matter is certified as a class action, Plaintiffs' requests for production that address the alleged class are overly broad, and it would be unduly burdensome for the Defendants to comply with such requests that may prove to be wasted efforts if the Court does not certify the class. [*See* Dkt. 202.] Again, this specific explication of Defendants' overly broad and unduly burdensome objections was not made clear in their initial

6

responses.  Instead, Defendants' responses merely make general assertions that "Defendant further objects on the grounds that this request is overly broad and unduly burdensome" [Dkt. 173 at 9] and "Defendant further objects that this request is unduly burdensome, over broad and not limited in time or scope" [*id.* at 15].

Courts within the Seventh Circuit openly admonish parties for making conclusory objections to discovery requests without specifying the reasoning behind those objections. *United Auto. Ins. v. Veluchamy*, 09 C 5487, 2010 WL 749980, at *5 (N.D. Ill. Mar. 4, 2010) (finding that the responding party's objection is "waived because boilerplate responses are improper"); *Perry v. City of Gary, Ind.*, 2:08CV280JVB-PRC, 2009 WL 2253157, at *4 (N.D. Ind. July 27, 2009) (granting motion to compel when the responding party "failed to provide reasons why the Requests are unduly burdensome").  In the event that overly broad and unduly burdensome objections are not waived, however, the party raising the objection still "must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome." *Perry*, 2009 WL 2253157, at *4.  Though a discovery request may extend to a large putative class that has not yet been certified, such a request is not overbroad or unduly burdensome on its face.  *See Wiginton v. Ellis*, 02 C 6832, 2003 WL 22232907 (N.D. Ill. Sept. 16, 2003) (ordering the defendant to produce a list of all its current and former female employees before the court certified the class action).

Accordingly, a request is not overly broad and unduly burdensome merely because a class action has not yet been certified, as the Defendants would have the Court believe. Regardless of whether the Defendants waived their class certification objection, the Court overrules such an objection because the requests are not overbroad or unduly burdensome.  Thus,

7

Defendants are ordered to produce information pertaining to the putative class members, including but not limited to the requested account purchase agreements,[2] other documents identifying Indiana accounts, and answers to the interrogatory regarding Defendant LVNV's lawsuits and the identification of the related cause numbers, names, and addresses.

### C. Debt Collection Activities

Another disputed category of Plaintiffs' discovery requests relates to Defendants' debt collection activities, including debt verification. [Dkt. 173 at 14, 26.] In response, Defendants argue that the request is overly broad and unduly burdensome because such debt collection activities and confirmations are irrelevant to the issues in the complaint. [Dkt. 202 at 27.] Specifically, Defendants argue that the complaint only alleges FDCPA violations due to Defendants' alleged lack of licensing and registration—not violations based on wrongful collection activities or collection of unverified debts. [*Id.*] Plaintiffs maintain that any such readily available information is relevant and necessary "to verify the information that [the Defendants] have provided, and also for the plaintiff's [sic] class and their attorneys to see the actual damages and types of damages that are involved in the case." [*Id.* at 33.]

In their complaint, Plaintiffs allege three counts based on FDCPA violations: (1) Failure to Obtain a Debt Collection License, (2) Failure to Obtain a Registration, and (3) Failure to Actually Own the Debt. [Dkt. 1 at 22-26.] Plaintiffs define the putative FDCPA Subclass as:

> (i) all Indiana citizens (ii) whom were the **subject of collection activity** by the Defendants (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) which were served with process of contacted in any matter by Defendants (v) during the one year period prior to the filing of this

---

[2] Defendants have redacted the price from the agreements produced thus far because it is Defendants' "special sauce" and they believe that the price paid is irrelevant to Plaintiffs' claims. [Dkt. 202 at 6-9.] In response, Plaintiffs argue that the price is relevant to prove whether the contracts are valid. [*Id.*] However, even if the debt was sold for one dollar, it has long been established that "valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient." *Davis v. Wells*, 104 U.S. 159, 168 (1881). Thus, Plaintiffs need not see the actual price to know whether the agreements are valid, and the Defendants may produce price-redacted versions of the account purchase agreements.

>original complaint in this action through trial of this cause which are in violation of the FDCPA.

[*Id.* at 20 (emphasis added).] Although the details of Defendants' debt collection activities do not appear relevant to the Plaintiffs' first two FDCPA counts, such collection activities do indeed seem relevant to Count III, failure to own the debt they acted to collect. Further, it is particularly pertinent that the putative FDCPA Subclass is defined as citizens of Indiana who were subjected to "collection activity by the Defendants." With the putative subclass so defined, the Court finds that Defendants' debt collection activities in Indiana are relevant to Plaintiffs' case and thus the request is not overbroad.

Having found this category of requests relevant, however, does not fully address Defendants' argument that such a production would be unduly burdensome as well as overbroad. Defendants, in a letter to Plaintiffs' counsel, have estimated that they have filed roughly 33,000 lawsuits in Indiana alone in order to collect on their debt. [Dkt. 202 at 29.] Having responded to the request solely with regard to the three named Plaintiffs, Defendants have already produced documents "stacked about three to four inches high." [*Id.* at 27.] At oral argument, Plaintiffs conceded that they "do not necessarily" require such comprehensive responses for each member of the putative class but instead would be satisfied with what the Defendants refer to as a "bankruptcy form" for each putative class member. [*Id.* at 28-30.] This one-page summary purportedly includes the amount of the claim, the last time there was a collection effort, the current balance, the debt purchase date, the name of the entity from which the debt was purchased, the last payment date, and the current owner of the debt. [*Id.*] Defendants only have such summaries prepared for the cases in which the putative class members filed for bankruptcy, but Plaintiffs have the right to relevant information that would not be unduly burdensome for the Defendants to produce.

Accordingly, the Court finds that Defendants would not be unduly burdened by the act of extracting these bankruptcy forms for the defendant debtors in their Indiana lawsuits for the relevant time period. Additionally, because the FDCPA has a four-year statute of limitations, this response is limited to the extractable forms regarding cases pertaining to the four-year time period preceding the date of filing of Plaintiffs' complaint. Defendants are so ordered to produce these bankruptcy forms in satisfaction of Defendant LVNV's document requests numbered 25, 26, 28, 57, 66, and 68, and all such parallel requests to other defendants. Lastly, because Defendants' debt collection activities are relevant, Defendants are also compelled to respond to Defendant LVNV's document request number 61, and all such parallel requests to other defendants, which requests production of "[a]ll documents relating to the Defendant's procedures to provide verification[3] of the alleged debt." [Dkt. 173 at 26.]

### D. Ownership and Affiliation

Another contested issue concerns Plaintiffs' "repeated[] attempt[s] to learn who are the true owners of these defendants." [Dkt. 202 at 42.] In an attempt to gather such evidence, Plaintiffs request that Defendants produce their financial reports and statements, their income tax returns, and interrogatory answers regarding ownership and affiliation of and between Defendants. [Dkt. 173 at 21-23, 28-29.] In response, Defendants assert that the information is irrelevant and the requests are vague because Defendants are uncertain of what Plaintiffs mean by "financial reports and statements," "investors," "other," "participants," and "officers." [*Id.*] Defendants further assert that Plaintiffs' ownership and affiliation interrogatory "seeks information that is confidential and proprietary in nature and/or covered under attorney/client privilege and trade secret privilege." [*Id.* at 29.]

---

[3] Defendants' vagueness objection is overruled, as Plaintiffs conceded at oral argument that "verification" does not refer to the FDCPA term of art but merely to the "Webster's Dictionary definition." [Dkt. 202 at 49-52.]

First, Plaintiffs' claims are based in part on Plaintiffs' allegations that the Defendants are all "interrelated in a clandenstine and complex business structure." [Dkt. 1 at 6.] Thus, information regarding Defendants' ownership and affiliation is relevant to a claim or defense at issue. The Court gives little weight to Defendants' assertion that the terms "financial reports and statements" or "investors" are vague, as they are common terms in the corporate world, and these objections are overruled. Thus, the Defendants are ordered to respond to Defendant LVNV's document requests numbered 51 and 52, and all such parallel requests to other defendants.

With regard to Plaintiffs' interrogatory number 11 to Defendant LVNV, the Court concedes that the word "other" is a dangling modifier, but all parties agreed at oral argument that any vagueness with regard to the word "other" is eliminated upon adding the word "defendant" thereafter. [Dkt. 202 at 57.] With this modification in mind, Defendants conceded that the Court clarified all vagueness at oral argument and that no further confusion remained. [*Id.* at 58-59.] Further, no defendant in this matter is a law firm or practicing law, so there is no attorney client privilege at issue. Although the entities seem to "share general counsel," disclosing such a fact is not a disclosure of privileged or even confidential information. Finally, Defendants make no argument as to how their business structure and/or job titles are trade secrets. Accordingly, Defendants' confidentiality and privilege objection is overruled, and Defendants are ordered to respond to Defendant LVNV's interrogatory number 11, and all such parallel interrogatories to other defendants.

### E. Securities-related Information

The final category addressed by Plaintiffs in their motion to compel relates to Defendants' alleged securitization activities. [Dkt. 173 at 10-14 (Moody's Information), 23-24 (SEC Filings).] It is Plaintiffs' belief that "the defendants engaged in securitization, that they are not licensed to do so," and they request that Defendants produce certain documents in order to

11

prove this assertion. [Dkt. 202 at 21.] Defendants, however, assert that the requested information is irrelevant to Plaintiffs' claim in the matter, as there are no claims for the unlawful sale of securities. [*Id*. at 23-25.] Plaintiffs insist that any such securitization information is relevant to Plaintiffs' RICO counts "to show a pattern of illegal activity," and Defendants should not be able to hide behind their assertion that they are not involved in securitization in order to prevent Plaintiffs from having access to any such information. [*Id.* at 22-23.]

It is true that Plaintiffs' complaint includes factual allegations that Defendants' "business is the purchasing, securitizing, and servicing of bad debts." [Dkt. 1 at 9-15.] However, the "pattern of racketeering activity" alleged in Plaintiffs' RICO claims appears to be limited to Defendants' allegedly fraudulent acts of illegally, and systematically, collecting on Plaintiffs' debt without being licensed to collect on such debt. [Dkt. 202 at 32-36.] The complaint, as it stands, does not go so far as to allege that Defendants' securitization is the pattern of racketeering activity that caused Plaintiffs' damages. [*See id.*] Thus, the Moody's information requested by Plaintiffs is not relevant and therefore not discoverable. The SEC Filings, however, are likely to contain information regarding Defendants' ownership and affiliation, discussed above. Thus, Defendants' SEC filings remain relevant, and Defendants are ordered to respond to Defendant LVNV's document request number 53 and all such parallel requests to other defendants. [Dkt. 173 at 23.]

### III.  Conclusion

For the aforementioned reasons, the Court hereby **GRANTS** in part and **DENIES** in part Plaintiffs' Motion to Compel Regarding Written Discovery. [Dkt. 172.] The Court grants Defendants twenty-eight (28) days from the date of this Order to supplement its responses to Plaintiffs' interrogatories and requests for production in a manner consistent with this Order.

Date: 02/24/2014

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert D. Cheesebourough
ruaneagle@aol.com

Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
boruta17@hotmail.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Jeffrey A. Townsend
PLEWS SHADLEY RACHER & BRAUN
jtownsend@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

David A. Maas
REED SMITH LLP
dmaas@reedsmith.com

Gary S. Caplan
REED SMITH LLP
gcaplan@reedsmith.com

James A. Rolfes
REED SMITH LLP
jrolfes@reedsmith.com

Michael L. DeMarino
REED SMITH LLP
mdemarino@reedsmith.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com