EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX,<br>and STEPHANIE SNYDER,<br>individually and on behalf of<br>others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>SHERMAN CAPITAL LLC;<br>MEETING STREET PARTNERS II INC.;<br>SHERMAN FINANCIAL GROUP LLC;<br>SHERMAN CAPITAL MARKETS LLC;<br>LVNV FUNDING LLC;<br>RESURGENT CAPITAL SERVICES LP;<br>SHERMAN ORIGINATOR LLC;<br>SHERMAN ORIGINATOR III, LLC;<br>SHERMAN ACQUISITION, LLC;<br>BENJAMIN W. NAVARRO;<br>LESLIE G. GUTIERREZ;<br>SCOTT E. SILVER;<br>KEVIN P. BRANIGAN;<br>ROBERT A. RODERICK;<br>KENNETH KENDALL;<br>AND JOHN DOES 1-50<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:12-cv-1654-TWP-MJD<br>CLASS ACTION |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL REGARDING
WRITTEN DISCOVERY**

**A. Plaintiffs Have Satisfied the Meet and Confer Requirements.**

  In their response brief [Dkt. 185], defendants suggest that the parties should have gotten

together for one more meet and confer. The parties have submitted numerous exhibits for this

motion showing the efforts plaintiffs made to resolve this discovery dispute. Defendants say

they "offered to bring high-ranking business executives." Response Brief, p. 3 [Dkt. 185].

However, defendants have demonstrated that meeting with their attorneys and high-ranking business executives is a waste of time.

For example, plaintiffs have long sought information about the ownership of defendants. Defendants would not disclose their ownership, and this Court ordered additional depositions. (Dkt. 88). On June 21, 2013, plaintiffs' counsel travelled to South Carolina. Defendants' high-level executive, Mr. Navarro, was asked about the ownership. Mr. Navarro said that the ownership of defendants used to "flow up" to Sherman Capital LLC. However, after plaintiffs filed this lawsuit, defendants changed the ownership to a Sub S corporation. Mr. Navarro and his lawyers, Mr. Caplan and Mr. DeMarino, refused to disclose the new ownership:





Deposition transcript of Benjamin W. Navarro (June 21, 2013) pg. 10, lines 10-20, pg. 16, lines 3-12, pg. 35, lines 1-25, pg. 36, lines 1-3. (Designated as Confidential by defendants and filed under seal as Exhibit W).

Since the June 21, 2013 deposition, defendants have never suggested that another meeting with their high-ranking executive would actually be productive. Despite the numerous meet and confers between counsel as reflected in the filed exhibits (Dkt. 173, Exhibits Q, R, S, T, and V), defendants suggest in their response brief that some of the issues in plaintiffs' opening brief were not specifically discussed. The response brief lists 16 items. (Dkt. 185, p.6, 7). Upon receipt of the response brief, plaintiffs immediately contacted defendants to arrange a conference call for the purpose of addressing these issues. The conference call was held on Tuesday,

January 21, 2014.[1]  On Wednesday, January 22, 2014, defendants provided a written response concerning the issues.  A copy of defendants' response is attached as Exhibit Z. (Defense counsel's January 22, 2014 email).

**B.     Defendants Have Waived Their New Objections.**

In their response brief, defendants do not address specific discovery requests or the written responses provided on October 11, 2013.  Instead, defendants use their response brief to raise new objections.  These new objections, raised for the first time in their response brief are untimely.  Defendants should have raised their objections three months ago on October 11, 2013, when they served their discovery responses.  Defendants have waived their right to raise these new objections. *Slabaugh v. State Farm Fire & Casualty Company*, 2013 U.S. Dist. LEXIS 126666*4, 5 (S.D. Ind.).

> An objection to interrogatories or to a request for production of documents not raised in a timely manner is considered waived, unless the Court excuses the failure "for good cause." *Fed. R. Civ. P. 33(b)(4)* ("Any ground not stated in a timely objection is waived"); *Fed. R. Civ. P. 34(b)(2)* ("The party . . . must respond within 30 days"). The Seventh Circuit has held that the district court "must consider relevant objections," regardless of the timeliness of the objection. *Cont'l Ins. Co. v. Chase Manhattan Mortgage Corp., 59 F. App'x 830, 839 (7th Cir. 2003)*. However, such relevant objections are limited to the delinquent party's objection based on an inability or incapacity to produce the requested responses or documents. *See id.* (finding the district court's refusal to consider the party's undue burden objection an abuse of discretion); *United Auto. Ins. Co. v. Veluchamy, 747 F. Supp. 2d 1021, 1032 (N.D. Ill. 2010)* (holding that noncompliance with *Rule 26* can result in a waiver of the attorney-client privilege, work-product protection, and even protection from the *Fifth Amendment*); *Ritacca v. Abbott Laboratories, 203 F.R.D. 332, 335 (N.D. Ill. 2001)* (holding that an "inexcusable and unjustified delay" warranted waiver of the attorney-client privilege). Thus, unless the delinquent party is incapable of producing the requested responses or documents, an unreasonable delay in a response to interrogatories or requests for production constitutes a waiver of any objection.

*Id.*

---

[1] Present on the conference call were counsel for defendants Gary Caplan, David Maas, and James Riley and counsel for plaintiffs Fred Emhardt, Matthew Boruta, and Jeffrey Townsend.

Defendants' delay in raising the new objections is unreasonable. Defendants' new objections should be considered waived.

Plaintiffs served the discovery requests on defendants on August 8, 2013. Defendants sought additional time to respond and plaintiffs agreed. Then on October 11, 2013, defendants served their responses.

Since August 8, 2013, defendants have known the scope of the discovery requests. Defendants could have moved for a protective order pursuant to F.R.C.P. 37 to limit the scope of discovery. Defendants failed to do so. Defendants could have availed themselves of the directive in the case management orders, which provide: "any party who believes that bifurcation of discovery . . . is appropriate with respect to any issue or claim shall notify the Court as soon as practicable." (Dkt. 27, III. J., Dkt. 156, I. I.). Defendants failed to do so. In their written responses, served October 11, 2013, defendants could have raised their new objections. Defendants failed to do so.

In their new, untimely objections, defendants generally seek to halt all meaningful discovery until after class certification. Not only are such objections untimely, they are directly contrary to many of defendants' discovery responses. Defendants expressly agreed to produce class wide discovery, including the purchase agreements between the defendants and the banks, together with all exhibits and attachments. After defendants expressly agreed to produce these documents, plaintiffs met and conferred with defendants in an effort to actually obtain that promised discovery as well as other discovery that defendants agreed to provide. The efforts were fruitless.

On December 11, 2013, plaintiffs advised the Court during the status conference that defendants had been uncooperative in providing discovery responses and advised the Court that a motion to compel would be forthcoming.  Neither before or during the status conference did defendants suggest that plaintiffs' discovery request were premature or that defendants' cooperation should be delayed until after class certification.

Plaintiffs filed the present motion to compel on December 20, 2013.  Defendants filed their response on January 14, 2014, asserting, for the first time, that some of the discovery requests were premature and defendants should not be troubled to respond to class discovery before certification.  In support of the new and untimely objections, defendants cite *Welch v. Eli Lilly & Company*, 2008 U.S. Dist. LEXIS 32812; 2008 WL 1776413 (S.D. Ind.) and *Lady Di's, Inc. v. Enhanced Servs. Billing*, 2010 U.S. Dist. LEXIS 17565; 2010 WL 723283 (S.D. Ind.).  In *Lady Di's*, Magistrate Judge Debra McVicker-Lynch, citing *Welch*, held that in a class action such as this, the plaintiffs are entitled to class wide discovery before certification of the class as follows: "A plaintiff 'bears the burden of advancing a *prima facie* showing that the class action requirements of Fed.R.Civ.P. 23 are satisfied *or* that discovery is likely to produce substantiation of the class allegations.' " *Lady Di's*, 2010 U.S. Dist. LEXIS 17565 *6 (pinpoint citations omitted)(italics in original).

Defendants' response brief fails to articulate this applicable standard.  In this case, plaintiffs <u>have</u> advanced a *prima facie* showing that the class action requirements are satisfied. The Court has considered class certification issues, including defendants' objections, and the Magistrate Judge has recommended that the district judge grant class certification and certify the subclasses. (Dkt. 131).  Last year, defendants asked the Court to delay consideration of the certification issue <u>to allow plaintiffs to conduct class wide discovery first</u>.  In their opposition to

certification, defendants pushed for plaintiffs to "withdraw and re-file their class certification motion after completing class discovery." (Dkt. 70, p. 11; *See also*, July 18, 2013 Report and Recommendation (Dkt. 131, p.9), in which defendants' position was acknowledged.). Consistent with the ruling in *Lady Di's*, and in accordance with defendants' previous litigation position seeking prompt class wide discovery, even if the new, untimely objections were not waived, plaintiffs are entitled to pursue this discovery.

In *Wiginton v. CB Richard Ellis*, 2003 U.S. Dist. LEXIS 16266*12, 13 (N.D. Ill.), the court ordered defendant to produce class wide discovery prior to certification of the class. The court noted that the information may be useful to plaintiffs at the class certification and trial stage and ordered production of the requested discovery:

> On a final note, Plaintiffs have asked the Court to order CBRE to produce an address list of all current and former female employees since January 1, 1997. Upon questioning in oral argument, Defendant indicated that they object to the request as overbroad. Nonetheless, even if this is a large number, the putative class includes all current and former female employees so the request is not overbroad. The identities of these women are clearly relevant. Furthermore, statistical evidence may potentially be used by Plaintiffs at the class certification and trial stage. While Defendant might prefer to remain in the superior litigation position of being able to investigate what evidence any of these women might be able to offer, while denying Plaintiffs the same access, it has not persuaded us that Plaintiffs' request should not be granted. Defendant is therefore ordered to produce the list of female employee as requested by Plaintiffs.

*Wiginton* at *12, 13. In the present case, class discovery will provide evidence relevant to the issues for trial, and, if necessary, will further bear on class certification.

## C.   Defendants Have Not Produced Meaningful Information.

In their response brief, defendants argue that no further discovery is needed from them, because "defendants have already provided names of putative class members against whom LVNV has filed collection actions." (Dkt. 185, p.12). Defendants also say they produced on December 16, 2013 "a disk containing account IDs and amounts collected for November 2008 to

November 2013 . . . . Defendants are also preparing for production of information regarding aggregate and individual amounts collected for November 2006 to November 2008 for purposes of a six year look back from the date of Plaintiffs' Complaint." (Defendant letter, December 16, 2013, Dkt. 185-4).

Defendants suggest no further discovery is needed because they have already provided the "names of putative class members" and "account IDs and amounts collected." Defendants fail to point out that their production of "names" was just that: 786 pages of random un-alphabetized names. The production of "account IDs and amounts collected" was, again, simply that: 25,506 pages of random numbers that are presumably account IDs and amounts collected. For the Court's review, copies of 2 pages of the "names of putative class members" are attached as Exhibit X. Two pages from the disk containing "account IDs and amounts collected" are attached as Exhibit Y. The produced documents are meaningless and useless.

The information was pulled from "Data Strings" that are normally maintained in a fully searchable and manipulable electronic format. Rather than producing this information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," (F.R.C.P. 34(b)(2)(E)(ii)), defendants have altered the information to make it unusable. Yet, at the same time, they represent to the Court that these documents exemplify their cooperation in the discovery process. Defendants should be required to produce more than meaningless bits of data.

**D.      No Undue Burden Exists.**

Defendants raise a new, untimely objection that producing anything other than meaningless data would be an undue burden warranting cost shifting to the plaintiffs.

Defendants cite *Annex Books, Inc. v. City of Indianapolis*, 2012 U.S. Dist. LEXIS 34247; 2012 WL 892170 (S.D. Ind.) in support. In *Annex Books*, unlike the present case, Magistrate Judge Tim Baker observed that the producing party had actually tried to produce the data, but could not. In *Annex Books*, the party took several steps "to produce bookkeeping data in a responsibly usable format," including hiring a forensic computer specialist who spent 20 hours compiling data, an additional 12 hours assisting with access to the data and hiring a second computer specialist to help. *Id.* at *4. In *Annex Books*, the data was inaccessible. Nevertheless, as Magistrate Judge Baker explained, except where data is inaccessible, "[g]enerally, a responding party bears the costs of complying with discovery requests." *Id.* at *7.

Defendants make no showing that responding to the discovery requests will be difficult or expensive. In their response brief, defendants state that they have "made clear to plaintiffs" that some of the information requested is "in the possession of more than 100 different third party law firms and collection agencies." (Dkt. 185, p. 15). Unlike the facts in *Annex Books*, defendants do not suggest that the requested information is "inaccessible." *Id.* at *7. To the contrary, defendants have demonstrated that they <u>do</u> have complete access to the requested information and to the data reflecting collection activities of its agents. Any prudent large-scale collection firm operates paperlessly and the information can be copied to a disk. Defendants have demonstrated they have complete access to the requested information, and the Court should order defendants to produce the information.

**E.   Trade Secrets and Confidential Information Should Be Produced and Can Be Marked "Confidential"**

Defendants raise a new, untimely objection based on trade secrets. Defendants suggest that the price information in their purchase agreements with the banks is a type of trade secret,

relying on *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, 784 F.2d 1325 (7th Cir. 1986). There, the court agreed that producing sensitive price information to a competitor could be unfairly advantageous to the competitor. *Id.* at 1345. Accordingly, the Seventh Circuit approved of the district court's procedure limiting access to the produced information under a protective order. *Id.* The court did <u>not</u> limit discovery, only access to the produced documents.

The issue was addressed more recently in *Slabaugh v. State Farm Fire & Casualty Co.*, 2013 U.S. Dist. LEXIS 126666*13 (S.D. Ind.). In *Slabaugh*, the court explained that "[t]here is no *per se* privilege exempting trade secrets from discovery." *Id.* *13 (citations omitted). "Instead, *Federal Rules of Civil Procedure 26(c)* protects the unnecessary disclosure of trade secret information through the Court's discretionary issuance of protective orders." *Id.* The Court overruled defendants' objections based on grounds alleging trade secret and advised that the defendant was at liberty to move for a protective order. *Id.*

In this case, a protective order is already in place that permits defendants to mark sensitive information as "Confidential." Similarly, defendants may mark as "Confidential" information they produce for which they have "privacy" concerns. Defendants say that their collection activities against Indiana consumers, "including in some instances, garnishment of wages," could be sensitive. (Dkt. 185, p. 13). Defendants' claimed concern about privacy rings hollow. For a price, defendants access financial and other information about Indiana consumers for the sole purpose of collecting money. All of this relates to original transactions in which defendants had absolutely no involvement. If defendants indeed are concerned for Indiana consumers' privacy, the information can be produced subject to the existing protective order.

**F.     Defendants Should Be Ordered to Produce the Requested Documents and Answer the Interrogatories.**

In plaintiffs' opening brief, plaintiffs grouped the discovery requests and responses that are the subject of this motion to compel into 17 sections labeled II through XVIII. In their response brief, defendants respond generally rather than section by section. In an effort to address each of the discovery sections, plaintiffs set forth below the 17 categories at issue numbered to correspond with their opening brief. In support of their motion to compel, and in reply to defendants' response brief, plaintiffs provide the following.

**II.     General Deficiency of Interrogatory Answers.**

Following the meet and confer held on January 21, 2014, defendants agreed to verify the interrogatory answers. (Defense counsel's email January 22, 2014, item 1, attached as Exhibit Z). In addition to verifying the answers, for interrogatories where defendants state that they will produce documents responsive to the interrogatory, defendants should be ordered to specify the records that must be reviewed, in sufficient detail to enable plaintiffs to locate and identify them as readily as defendants could, as required by F.R.C.P. 33(d)(1).

**III.     General Deficiencies of Responses Concerning the Production of Documents**

Plaintiffs requested that, if a defendant is aware that a document exists, but defendant takes the position that the document is not in defendant's possession, custody, or control, defendant should be required to state unequivocally that the document exists and identify the defendant or entity in possession, custody, or control of the document so that plaintiffs may subpoena it. Defendants have agreed to identify the entities with possession, custody, or control over responsive documents. (Defense counsel's email January 22, 2014, item 2, attached as

Exhibit Z). The Court should order defendants to provide the information in unequivocal responses.

### IV.   Account Purchase Agreements and Attachments Identifying the Accounts

**Document Requests to Sherman Originator LLC [Exhibit P]**

REQUEST FOR PRODUCTION NO. 13, 22, 19, 20

**Document Requests to Sherman Originator III [Exhibit N]**

REQUEST FOR PRODUCTION NO. 3, 19

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 18, 21

In their October 11, 2013 responses to these document requests, defendants <u>agreed</u> to produce the responsive documents. In general, the responsive documents are the purchase and sale contracts between the defendants on the one hand and the banks and other third parties on the other hand, with all attachments and exhibits. Defendants agreed to produce not only the documents with respect to the named plaintiffs' accounts, but also "additional contracts pursuant to which Indiana accounts were purchased." (Dkt. 185, Exhibit A, p.2).

To date, defendants have provided only redacted copies of purchase and sale contracts without the purchase price. Further, with respect to the attachments, defendants have redacted all information in the "Data String" except information relating to the named plaintiffs.

In their response brief, defendants fail to address their initial agreement to produce the requested information and instead raise the new, untimely objections addressed above. Defendants have waived the new, untimely objections and in any event, the new, untimely objections are without merit. This Court should order defendants to produce complete copies of unredacted purchase and sale contracts pursuant to which Indiana accounts were purchased. All

attachments and exhibits to the purchase and sale contracts, including the "Data Strings", should be produced in their entireties and in a fully searchable and manipulable electronic format with the connections between data fields intact.

## V.   Requests for Documents Identifying Indiana Accounts.

**Document Requests to LVNV** [Exhibit B]

REQUEST FOR PRODUCTION NO. 70, 70, 71

In its October 11, 2013 discovery responses, LVNV <u>agreed</u> to produce the documents and data accounts showing each credit card account purchased, acquired, or otherwise handled by LVNV for each consumer with an Indiana address since the filing of the complaint. Defendants objected to providing the information for the six years preceding the filing of the complaint. Plaintiffs have shown that the applicable period for the statute of limitations in Indiana for fraud is six years. In their response brief, defendants do not dispute that the relevant time period for discovery includes the six years prior to the filing of the complaint. The Court should order the defendants to produce the data identifying all of their accounts for each Indiana consumer with an Indiana address in the six years preceding the filing of the complaint. The documents and data should be produced in their entirety and in a fully searchable and manipulable electronic format with the connections between the data fields intact.

## VI.   Moody's Information.

**Document Requests to LVNV** [Exhibit B]

REQUEST FOR PRODUCTION NO. 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40

Plaintiffs requested specific documents relating to the Moody's corporation. In their response brief, defendants state:

> Plaintiffs, however, continue to push for documents that do not exist. For instance . . . the existence of certain Moody's documents relating to Defendants is not evidence of securitization or the sale of securities.

(Dkt. 185, p. 18).

The Court should order defendants to state unequivocally whether the documents exist. If the documents are in the possession, custody, or control of defendants they should be ordered to produce the Moody's documents.

### VII.   Documents Related to Debt Collection Activities.

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 25, 26, 28, 66, 68

Plaintiffs requested documents and data showing defendants' collection activities directed at Indiana consumers within the six-year time period preceding the filing of the complaint. In their October 11, 2013 discovery responses, defendants agreed to produce the information limited to the four years preceding the filing of the complaint. As stated above, defendants have not contested that the relevant discovery period is six years. In their response brief, defendants suggest that they understood document requests 25 and 26 to seek information about the named plaintiffs only. However, subsequent to serving the discovery, plaintiffs have clarified that they are seeking the following:

4.    Identification of all collection activities undertaken in Indiana by any of the defendants or their agents within the six years prior to the filing of the complaint, with each consumer targeted identified by name, address, and phone number.

*See*, Dkt. 173, Exhibits Q and S (discovery letters sent by plaintiffs on October 22, 2013 and November 5, 2013, respectively).

Defendants initially agreed to produce the requested information and documents. Defendants' new, untimely objections that may relate to these requests should be considered waived and be overruled.  Defendants should be ordered to produce documents responsive to requests for production numbers 25 and 26 with respect to all Indiana consumers for the six-year time period preceding the date of the complaint.

Defendants should further be ordered to produce the documents and materials responsive to requests for production numbers 28, 66, and 68 as they <u>agreed</u> to do in their October 11, 2013 responses, and the relevant time should be for the six-year period preceding the date of the complaint.[2]  The documents and information should be produced in their entireties and in a fully searchable and manipulable electronic format with the connections between data fields intact.

## VIII.   Litigation Against Defendant Alleging Violations of FDCPA.

### Document Request to LVNV [Exhibit B]

REQUEST FOR PRODUCTION NO. 48

Plaintiffs requested copies of litigations filed against the defendants alleging violations of the Fair Debt Collection Practices Act (FDCPA).  On January 22, 2014, defendants agreed to produce "a list of all Indiana FDCPA suits for the last four years, and produce complaints if they are in defendants' possession, custody, or control  . . . ." (Defense counsel's email January 22, 2014, item 10, attached as Exhibit Z).  Plaintiffs are agreeable to this production.

---

[2] Defendants have objected to request for production number 57 as vague and confusing.  Plaintiffs acknowledge that the documents requested by document request 57 are likely contained in the documents responsive to requests number 26, 28, 66, and 68.

**IX.    Insurance Policies.**

**Document Request to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 50

Plaintiffs requested defendants' insurance policies. Defendants agreed to provide copies
of the insurance policies. (*See,* Defense counsel's email January 22, 2014, item 3, attached as
Exhibit Z).

**X.    Financial Reports and Income Tax Returns.**

**Document Request to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 51, 52.

Plaintiffs requested financial reports to investors and tax returns for the past two years
from the defendants. The requested documents are relevant to the issues of ownership of
defendants, securitization and sale of securities, corporate structure, identity of current and
former officers, and net value for purposes of statutory and/or punitive damages. Defendants
objected claiming that "financial reports" is confusing. During the telephone conference
between counsel on Tuesday, January 21, 2014, plaintiffs identified several types of reports
likely to exist. Defendants did not acknowledge the existence of any reports. For purposes of
this motion, plaintiffs are willing to limit the requests to any audited financial reports during the
two year period. The audited financial reports, together with the defendants' tax returns, are
relevant to the plaintiffs' claims. The Court should order defendants to produce the responsive
documents for the past two years.

## XI.   SEC Filings.

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 53

Plaintiffs requested SEC filings from the defendants.  On January 22, 2014, counsel for defendants wrote, "To my knowledge, defendants have no SEC filings to produce." (Defense counsel's email January 22, 2014, item 11, attached as Exhibit Z).  The Court should order defendants to state unequivocally whether the documents exist, and if so, they should be produced.

## XII.   Documents Regarding Plaintiffs' Alleged Debt Sent Between Two Defendants, or Between Defendant and Sherman Financial Group.

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 54, 55

In request for production number 54, plaintiffs requested defendants' internal communications regarding the plaintiffs' alleged debt.  In their October 11, 2013 responses, defendants <u>agreed</u> to produce these documents. The Court should order that documents responsive to request number 54 be produced.[3]

## XIII.   The Use of Collection Notices.

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 56

Defendants objected claiming confusion. Plaintiffs are agreeable to reviewing the documents to be produced by defendants before further pursuing request number 56.

---

[3] The documents requested in document request number 55 should be included in the documents responsive to request for production number 54, and plaintiffs do not seek duplicate production of this material.

**XIV.   Verification of the Alleged Debt.**

**Document Requests to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 61

Plaintiffs requested documents showing the procedures that defendants have in place to verify that the amounts of the alleged debts they attempt to collect from Indiana consumers is actually owed by the debtors.  Defendants claim confusion.  If defendants do not attempt to verify the alleged debt in any way, and have no responsive documents, they should be ordered to say so unequivocally.  If internal procedures exist for verifying the alleged debt, defendants should be ordered to produce the responsive documents.

**XV.   Consumer Reporting Agencies.**

**Document Request to LVNV [Exhibit B]**

REQUEST FOR PRODUCTION NO. 62

Plaintiffs requested documents relating to defendants' association with consumer reporting agencies.  Defendants object based on relevancy.  The defendants' relationships with these consumer reporting agencies is relevant to plaintiffs' claims that defendants acted illegally and in violation of the FDCPA.  The Court should order defendants to produce documents disclosing relationships between defendants and the consumer reporting agencies.

**XVI.   Interrogatory Regarding LVNV's Lawsuits and the Identification of Cause Numbers, Names and Addresses.**

**Interrogatory to LVNV [Exhibit A][4]**

INTERROGATORY NO. 9.

---

[4] In their opening brief, at p. 27, plaintiffs inadvertently directed the Court's attention to the document requests filed as Exhibit B.  The correct document is Exhibit A.

18

In its October 11, 2013 response to the interrogatory, defendant agreed to produce

documents responsive to the interrogatory within the four-year period preceding the date of the

filing of the complaint. Defendant should be required to answer the interrogatory and/or produce

documents in the manner required by F.R.C.P. 33(b) and (d).  The relevant period should be six

years.

### XVII.  Interrogatory Regarding Ownership and Affiliation of and Between Defendants.

**Interrogatory to LVNV** [Exhibit A]

INTERROGATORY NO. 11

Plaintiffs served an interrogatory asking defendants to explain the affiliations among the

defendants including common ownership and officers. Defendant objected claiming confusion

and that the request seeks confidential, proprietary and/or privileged material.  On January 22,

2014, defendants agreed to provide "Ownership information on Sherman Capital Markets and

Sherman Capital LLC . . . ." (Defense counsel's email January 22, 2014, item 5, attached as

Exhibit Z).  Defendants further agreed to provide a privilege log for withheld documents. *Id.* at

item 4.  The Court should order defendants to unambiguously identify all owners of all

defendants including all owners of any new entities defendants have created since the filing of

the complaint.

### XVIII.   Interrogatory Seeking Specific Information Underlying Defendants' Collection Efforts and the Related Data.

**Interrogatories to LVNV** [Exhibit A]

INTERROGATORY NO. 15, 16

Plaintiffs served interrogatories seeking a step-by-step description of the process whereby

information from the banks and other third parties is delivered to defendants and ultimately used

in the collection process.  In its October 11, 2013 response, LVNV <u>agreed</u> to produce documents responsive to the interrogatories.  The Court should order LVNV to answer interrogatories 15 and 16 consistent with the requirements of F.R.C.P. 33(b) and (d).

### Conclusion

For the reasons stated above, plaintiffs request that this Court order defendants to produce all requested documents and to answer all interrogatories fully and completely within 10 days of the Court's order.

Respectfully submitted

*s/ Jeffrey A. Townsend*

George M. Plews, Attorney No. 6274-49
Peter M. Racher, Attorney No. 11293-53
Frederick D. Emhart, Attorney No. 10952-49
Jeffrey A. Townsend, Attorney No. 14082-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN  46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
        pracher@psrb.com
        femhardt@psrb.com
        jtownsend@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA, L.P.A.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
        boruta17@hotmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of January 2014, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/ Jeffrey A. Townsend*