# EXHIBIT I

```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF INDIANA
                    INDIANAPOLIS DIVISION


ANDREW COX, LUCINDA COX, and       )
STEPHANIE SNYDER, Individually     )
and on behalf of others            )
similarly situated,                )
                                   )
                                   ) Cause No.
        Plaintiffs,                ) 1:12-CV-1654-TWP-MJD
                                   ) Indianapolis, Indiana
    vs.                            ) CLASS ACTION
                                   ) January 31, 2014
                                   ) 9:04 a.m.
SHERMAN CAPITAL, LLC; MEETING      )
STREET PARTNERS II, INC.;          )
SHERMAN FINANCIAL GROUP, LLC;      )
SHERMAN CAPITAL MARKETS, LLC;      )
LVNV FUNDING, LLC; RESURGENT       )
CAPITAL SERVICES LP; SHERMAN       )
ORIGINATOR, LLC; SHERMAN           )
ORIGINATOR III, LLC; SHERMAN       )
ACQUISITION, LLC; BENJAMIN W.      )
NAVARRO; LESLIE G. GUTIERREZ;      )
SCHOTT E. SILVER; KEVIN P.         )
BRANIGAN; ROBERT A. RODERICK;      )
KENNETT KENDALL; AND JOHN DOES     )
1-50,                              )
                                   )
        Defendants.                )
```

**Before the Honorable
MARK J. DINSMORE**

OFFICIAL REPORTER'S TRANSCRIPT OF
HEARING ON MOTION TO COMPEL


Court Reporter:        David W. Moxley, RMR, CRR, CMRS
                       United States District Court
                       46 East Ohio Street, Room 340
                       Indianapolis, Indiana  46204

PROCEEDINGS TAKEN BY AUDIO RECORDING
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

1    THE COURT: All right. What's next?
2    MR. TOWNSEND: Item IX on page 21, insurance
3  policies. This is another discovery request that we have
4  discussed since the filing of the motion, and the defendants
5  have yesterday produced an insurance policy, which we
6  appreciate. I don't know, they didn't represent whether it
7  was all of the insurance policies, but I don't believe they
8  have an objection to producing whatever policies they have. I
9  just don't know if the one we received is all of them.
10   MR. CAPLAN: I believe it's the relevant policy for
11 them, but we can certainly talk some more if there's anything
12 else you think you need.
13   THE COURT: I mean, Rule 26(a)(1) requires any
14 defendant that has an insurance policy that's covering any
15 part of this is supposed to be produced for inspection. So,
16 since they formally requested it, it ought to be produced.
17 That would be my position.
18   MR. CAPLAN: Agreed.
19   THE COURT: All right. What else?
20   MR. TOWNSEND: Next is item X, which is requests 51
21 and 52.
22   THE COURT: Okay.
23   MR. TOWNSEND: And that is financial reports to
24 investors and the tax returns of the defendants. We believe
25 that the information is relevant to go to the issues of the

1  ownership of Defendants, which we have repeatedly attempted to
2  learn who are the true owners of these defendants.  They've
3  repeatedly failed to disclose the true ownership.
4          We believe that the financial information contained
5  in the reports and the tax returns will also shed light on
6  the -- whether and to what extent they engage in
7  securitization of securities.  It will help to identify the
8  current and former officers of the corporations or entities so
9  that we can follow up with depositions of the most
10 knowledgeable people.  And it will go to punitive damages, as
11 well.
12         We have agreed -- we've discussed with Defendants
13 the financial reports they claimed that they produced.  They
14 prepare many financial reports.  We don't know which ones
15 they've produced -- or prepared, which ones go to their
16 investors, their owners.  We have agreed in our reply to limit
17 our initial request to only audited financial reports that the
18 company has prepared in the last two years, take a look and
19 see what information is contained in those that may be
20 sufficient.
21         We asked what type of reports that they have in
22 addition to their employee reports and things, and didn't get
23 a clear answer.  So, audited financial statements that would
24 disclose the ownership and the structure of the corporations,
25 reveal the securitization, and the same with respect to the

1 tax returns.
2          THE COURT: Mr. Caplan?
3          MR. CAPLAN: Your Honor, just because Plaintiffs
4 file a lawsuit against Defendants doesn't give them the right
5 to just say, "Let me have all of your financial information."
6 There has to be a reason why it's relevant. They, for the
7 first time after they filed a motion to dismiss, in their
8 conference, they suggested that it would relate to ownership,
9 securitization, as they just said. I don't think that our
10 financial data has anything to do with that.
11         The only thing that they've offered, that is
12 potentially even relevant, is punitive damages, which they've
13 now offered, said in their reply brief for the first time.
14 When we talked about it, they offered no reason why they
15 thought any of this was relevant.
16         And the punitive damage claim here, there's no
17 punitive damages for RICO, there's no punitive damages under
18 the Fair Debt Collection Practices Act. The only claim I can
19 see is their fraud claim, I believe.
20         And our position is that to disclose financial
21 information, tax returns, and whatever amorphous financial
22 information they've requested and wouldn't limit is extremely
23 premature at this stage, or not even at issue. We don't even
24 know what claims are surviving. And, clearly, there's been --
25 we haven't gotten past the motion to dismiss stage, let alone

```
                                                              44
```

1  summary judgment, in order to be discussing punitive damages.
2          I believe Your Honor had a recent decision which
3  addressed that --
4          THE COURT:  Now you're going to start citing my
5  cases?
6          MR. CAPLAN:  I think it's the *Ripberger* case.
7          THE COURT:  Okay.  Plaintiff's brief cited a lot of
8  familiar cases.  Anything else on this?
9          MR. TOWNSEND:  Just to the point of the ownership of
10 the defendants.  We've sought mightily to learn that.  The
11 issue was raised by the defendants in their motion to dismiss,
12 but in the initial corporate disclosure statement the
13 defendants identified their ownership.  And then eight days
14 later they changed the ownership of their structure by
15 creating new entities.
16         In a deposition that we took of one of their
17 chairmen, the guy that names the corporation, he says that
18 even after that, they had set up a sub S corporation that now
19 was the new owner.
20         In the meet-and-confer, the defendants have agreed
21 to provide ownership information, and did; and, indeed, two
22 days ago, on January 29, sent a letter outlining the ownership
23 of the entities, which we appreciate.  But the information in
24 the letter contradicts the sworn testimony of their chairman,
25 who testifies about these matters.

1        And it also appears that the entities that they've
2   identified now are the -- are entities that were created eight
3   days after their corporate disclosure statement, which has not
4   been amended as Federal Rule 7.1 might suggest it should have
5   been.
6        And so we're at a loss to actually identify who the
7   actual owners of this company are, and we continue to search
8   for that. We believe that these two document requests will
9   shed more light on that issue.
10       MR. CAPLAN: I guess there's two responses, Your
11  Honor. One is, financial information will not provide them
12  the ownership information. I think they're separate
13  categories. And so I stand on what I said about the financial
14  information.
15       With regard to the ownership information, which is
16  new, we did provide them with the ownership of the two
17  entities that they had asked for, and I don't agree that it
18  contradicts what the person said. I think the fact that there
19  was an S corp from one individual that changed is a bit of a
20  red herring here, because what that S corp has anything to do
21  with the licensing of other entities, LVNV and Resurgent, down
22  the road, they're -- I know they're focused on an S corp of
23  one individual, but I don't see the actual relevance here with
24  regard to any of the claims. But there's nothing nefarious
25  about it. It was done -- you know, I guess that's all I would

```
                                                              46
 1   say about it.
 2              With regard to the ownership, I think they have the
 3   ownership.  We've suggested to them and to the Court long ago
 4   that if they're going to ask individuals about who owns what
 5   entities, they can tell you what they know, but perhaps the
 6   30(b)(6) deposition would be the best way for them to explore
 7   the org chart we've given them.
 8              They haven't done that yet.  All they've done is
 9   taken individual depositions, Your Honor.  So for them to
10   claim all this confusion when we've provided them the
11   information, I think it rings a little hollow.  We've provided
12   them what they have asked for.  And regardless of what their
13   theories are, I believe we've complied with their discovery
14   requests.
15              THE COURT:  Anything else?
16              MR. TOWNSEND:  No, Your Honor.
17              THE COURT:  Okay.  What's next?  XI?  Let's resolve
18   that one.
19              MR. TOWNSEND:  XI is -- Your Honor, I don't think
20   we -- we don't believe we've resolved -- although I might as
21   well say that we received a letter from Defendant's counsel
22   stating on January 2nd (inaudible).
23              THE COURT:  Well, if any of these did exist, they
24   would be on Edgar, wouldn't they?
25              MR. TOWNSEND:  No.  We haven't been able to find
```