**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

ANDREW COX, LUCINDA COX, and STEPHANIE SNYDER, individually and on behalf of others similarly situated,

Plaintiffs,

v.

SHERMAN CAPITAL LLC, *et al.*,

Defendants.

Civil Action No. 1:12-cv-1654-TWP-MJD
CLASS ACTION

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STAY MAGISTRATE'S ORDER OR IN THE ALTERNATIVE FOR RECONSIDERATION**

Plaintiffs Andrew and Lucinda Cox and Stephanie Snyder have received an organization chart that shows [REDACTED] They also have obtained disclosure – first through a letter from counsel and then as part of verified amended interrogatory responses – of the names of the persons and entities that own Sherman Capital. Further, the former Individual Defendants have acknowledged their indirect ownership of these entities and each of the Entity Defendants have also provided a [REDACTED] to the extent they serve in such capacities. Thus, despite their frequent complaints to the contrary, Plaintiffs already have the information regarding the "ownership and structure of the [D]efendant [E]ntities." (*See* Pls.'Opp. to Defs.' Mot. for Reconsideration of the Magistrate's Order [Dkt. 233] ("Pls' Opp.") at 2.).

That Plaintiffs persist in their requests for financial statements and income tax returns of these private companies thus emanates, not from a desire to develop information regarding organizational structure, but rather from a veiled effort to intimidate the Defendants by pressing for disclosure of private financial information. As stated in the case Plaintiffs themselves cite, "[d]iscovery aimed at an opponent's personal finances is a quick route to the underside of the opponent's skin." *Finch v. City of Indianapolis*, No. 01-08-cv-432-DML-RLY, 2011 WL 2516242 at *4 (S.D. Ind. June 23, 2011). Given their lack of substantive need, Plaintiffs not surprisingly use their response in opposition to the motion to reconsider to mischaracterize testimony and assign malicious intent where none exists. They further implicitly concede that obtaining organization information is not an adequate basis for their requests by raising yet a new 'net worth' justification that they failed to articulate in numerous meet and confer sessions, the briefing on the motion to compel or at oral argument. All of this only shows Plaintiffs' lack of a genuine basis to require further disclosure of what all recognize as confidential and sensitive financial information.[1]

That the District Court has now dismissed all claims against the former Individual Defendants, as well as the Complaints' RICO and fraud counts, only further demands reconsideration and rejection of Plaintiffs' request for the Entity Defendants' financial statements and income tax returns. As presently structured, Plaintiffs' claims rest on whether LVNV owns their credit card accounts, as well as a determination as to whether LVNV's and Resurgent's parent companies "indirectly engaged in collection activities." (*See* Order on Pls.' Mot. to Compel [Dkt. 210] at 15-16.) The Entity Defendants' financial information, whether in

[1] As the District Court dismissed the Plaintiffs' fraud claims, the Plaintiffs no longer have a basis to demand punitive damages, and thus such a claim cannot support the Plaintiffs' request for the Defendants' financial statements or income tax returns

the financial statements or income tax returns, or the [redacted] has no relevance to the narrowed claims remaining after the Court's decision on the motion to dismiss. Because Plaintiffs in requesting financial statements and income tax returns seek irrelevant information, this Court should reconsider its ruling on Plaintiffs' motion to compel, and reverse its order requiring the production of these documents, or in the alternative, stay this portion of its Order until the District Court can rule on the Defendants' Objection to the order to compel.

## ARGUMENT

### I. The Defendants Have Consistently Disclosed Their Organizational Structure.

From the start of this litigation, Plaintiffs had an outline of the organizational structure of the Entity Defendants (*i.e.*, Sherman Capital, LLC, Sherman Financial Group, LLC, Sherman Originator, LLC, LVNV Funding, LLC and Resurgent Capital Services LP).[2] As set forth in a Summary Order to Cease and Desist before the Maryland State Collection Agency Licensing Board (*see* [Dkt. 130-14]) (which apparently Plaintiffs relied upon to draft Complaint allegations), Sherman Capital owned and operated Sherman Financial Group, which in turn owned directly or through the other Entity Defendants, Sherman Originator, LVNV and Resurgent. Sherman Financial Group's production of an organizational chart confirmed that structure, as did the Entity Defendants' Corporate Disclosure Statement [Dkt. 12], a letter from Defendants' counsel, and LVNV's amended response to Plaintiffs' Interrogatory 11. (*See* Mem. of Law ISO Defs.' Mot. for Reconsideration of Magistrate's Order or in the Alternative to Stay

[2] As originally pled, the Entity Defendants also included Sherman Capital Markets, LLC, Sherman Acquisition, LLC, Sherman Originator III, LLC and Meeting Street Partners II, Inc. as defendants. Meeting Street Partners II, Inc. dissolved prior to the filing of Plaintiffs' complaint and the Court dismissed all claims against Sherman Capital Markets, LLC, Sherman Acquisition, LLC and Sherman Originator III, LLC. (*See* Entry on Mot. to Reconsider [Dkt. 237] at 7.)

[Dkt. 219] ("Defs.' Mem.") at Exs. D, E and M; Def. LVNV Funding LLC's Am. Obj. and Responses to Pls.' First Set of Interrogatories at 16-17 ("LVNV Am. Inter. Resp.," attached hereto as Ex. N.)[3] Further discovery responses identified the Entity Defendants' officers as well as the positions, if any, the former Individual Defendants held at these entities. (*See* LVNV Am. Inter. Resp. at 18-19 (Ex. N); collection of Entity Defendants' Am. Obj. and Responses to First Set of Interrogatories, at Response to Interrogatory No. 3 (attached hereto at Ex. O).)[4] They additionally have received information in response to their asserted need to know the "ownership of defendants," and in particular the ownership of Sherman Capital and Sherman Capital Markets, the so-called "entities sitting at the top of the corporate structure." (*See* Pls.' Opp. at 5.) In particular, Defendants' counsel disclosed this information in a letter aimed at resolving discovery disputes, as well as in LVNV's amended interrogatory response even though the Plaintiffs had not specifically asked for such information in either an Interrogatory or a Request for Production of documents. (*See* Defs.' Mem. at Ex. F; LVNV Am. Inter. Resp. at 17-18 (Ex. N).)

To further show that the audited financial statements of the two Entity Defendants that produce such reports do not contain the structural information the Plaintiffs imagined, the Defendants also provided those portions of [REDACTED] financial statements that refer to [REDACTED]

---

[3] The Plaintiffs take issue with the Entity Defendants' Corporate Disclosure Statement because it does not disclose [REDACTED]–many which were created after the Corporate Disclosure Statement was filed – that have an ownership interest in Sherman Capital. (*See* Pls.' Opp. at 7; 03/27/14 Aff. of April Keaton at Ex. 1 [Dkt. 235].) FRCP 7.1(a) requires corporate parties to file a disclosure statement that "identifies any parent corporation and any publicly held corporation owning 10% or more of its stock." Because none of the [REDACTED] [REDACTED]dentified meet this definition, FRCP 7.1(a) does <u>not</u> require disclosure of these entities.

[4] Plaintiffs named Benjamin W. Navarro, Leslie G. Gutierrez, Scott E. Silver, Kevin P. Branigan, Robert A. Roderick and Kennett Kendall individually as defendants. The District Court dismissed all claims asserted against these Individual Defendants. (*See* Entry on Mot. to Reconsider [Dkt. 237] at 7.)

(*See* Defs.' Mem. at Exs. K and L.) That disclosure shows (*Id.* at Ex. K.) Certainly such disclosure does not equate to the expansive Entity Defendant "ownership and structure" upon which the Plaintiffs now demand production of financial statements. (*see Id.* at Ex. L), but still do not reveal either an "amoeba" like structure, nor the pejorative "true ownership of the entities at the top of the chart." (*See* Pls.' Opp. at 6-7.) The fact remains that, not only did Plaintiffs already have that the vast majority of the financial information and other disclosures contained in these two audited financial statements have nothing to do with Plaintiffs' claimed need for structural information.[5]

That nothing in this document addresses the "structural information" of the named Entity Defendants or the relationships among them, however, has not stopped the Plaintiffs from pursuing this income tax return.[6] Instead, we now learn that Plaintiffs purportedly seek this tax return to

5

6

[redacted] (*See* Pls.' Opp. at 10.) As noted above, the Defendants have already disclosed [redacted] that Plaintiffs had never previously requested. But why such [redacted] is relevant is neither apparent nor explained. Moreover, the Court has dismissed all claims the Plaintiffs asserted against the Individual Defendants, only further calling for a finding that the [redacted] lack any relevance to the remaining claims in Plaintiffs' Complaint.

What is also true, and what the cases Plaintiffs cite say, is that income tax return information is private, and its disclosure is not lightly ordered, especially in the absence of considering alternative disclosures. For instance, in *Crissen v. Gupta*, No. 2:12-cv-355-JMS-WGH, 2013 WL 5960965 (S.D. Ind. Nov. 7, 2013), the court, after concluding the discovery of tax returns was within its discretion under *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992), ordered production of income tax returns only after the party opposing such discovery failed to direct the court to alternative sources of information. *Crissen*, at *5. Similarly, the court in *Jackson v. N'Genuity Enterprises Co.*, No. 09 C 6010, 2010 WL 4928912 (N.D. Ill. Nov. 29, 2010), stated that discovery of income tax returns is not had simply for the asking, and reversed its initial denial of a request for the production of income tax returns only after the plaintiff had exhausted alternative means of obtaining the requested information. *Id.* at *2. As the Entity Defendants have provided alternative disclosure of the ownership information Plaintiffs requested, the Plaintiffs have no legitimate need to see [redacted]

---

[redacted]

## II. The Former Individual Defendants Acknowledge Their Ownership Interests in the Entity Defendants.

Plaintiffs also mischaracterize and take out of context the deposition testimony of the former Individual Defendants regarding their ownership of the Entity Defendants. As an initial matter, Plaintiffs seemingly forget that the Court limited questioning of these deponents to issues related to personal jurisdiction over the Individual Defendants. Specifically, in allowing such depositions to proceed even though the Defendants had filed for the dismissal of all claims, the Court acknowledged the concern that Plaintiffs may use such depositions to conduct a "fishing expedition," and limited the depositions to inquiry pertaining to the issue of personal jurisdiction within the scope of Indiana's Long-Arm Statute. (*See* Entry on Pls.' Mot. to Compel [Dkt. 55].) Consequently, Defendants' counsel objected to Plaintiffs' detailed questions about the former Individual Defendants' ownership of the Entity Defendants, which even Plaintiffs' counsel admitted were aimed in part at developing support for Plaintiffs' alleged RICO claims. (*See* May, 15, 2013 Kennett R. Kendall Deposition at 32-33(attached hereto at Ex. Y).) Defendants also rejected Plaintiffs' previously unarticulated theory that they could establish personal jurisdiction, not through the Individual Defendants' contacts with Indiana, but rather as a result of their ownership of alleged "shell" companies – a theory of personal jurisdiction even the Court indicated it had not heard of prior to these depositions. (*See* May 17, 2013 Deposition of Kevin P. Branigan at 53-55 (attached hereto as Ex. P).) So novel was this line of reasoning, that the Court, when called during the initial depositions of the former Individual Defendants, commented that it was unwilling to rule upon Defendants' objection to this line of questioning without full briefing on the issue. (*Id.*) But once the parties briefed that issue, and the Court overruled Defendants' objection, the Individual Defendants answered Plaintiffs' questions to the

best of their abilities.[7]  Thus, the Defendants' objections to Plaintiffs' questions had nothing to do with a supposed "subterfuge," but rather arose from a legitimate dispute as to the appropriate parameters of a court-imposed limitation on deposition testimony.[8]

Further, when the depositions resumed, the former Individual Defendants provided the ownership information Plaintiffs now claim they need.  For instance, Kevin Branigan testified as follows:



 (*See* June 21, 2014 Deposition of Kevin P. Branigan at 74, 77; *see also* 80-81 (same) (attached hereto as Ex. Q.)  Benjamin Navarro similarly testified:



(June 21 2014 Deposition of Benjamin W. Navarro at 10 (attached hereto as Ex. R).)[9] The same can be said of Leslie Gutierrez:

---

[7] In its recently entered order dismissing claims against the former Individual Defendants, the District Court held that evidence of the former Individual Defendants' ownership and management interests in Sherman Capital or Sherman Financial Group would not provide a sufficient basis to impute jurisdiction contacts from the Entity Defendants to the individual owners.  (*See* Entry on Motion to Reconsider [Dkt. 237] at 7, *citing Cent. States, SE. &SW. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).)

[8] Even after considering Defendants' objection to Plaintiffs' questions concerning the former Individual Defendants' ownership interests, the Court re-imposed the limitations in its previous order for the continued depositions of such individuals.  (*See* Order Regarding Defendants' Mot. for Reconsideration [Dkt. 91].)

[redacted]

(June 20, 2013 Deposition of Leslie G. Gutierrez at 13-14 (attached hereto as Ex. S).)

That said, two of the former Individual Defendants indicated that [redacted] In particular, Kennett Kendal, after indicating he had an ownership interest in Sherman Financial Group, testified as follows,

[redacted]

[9] Plaintiffs falsely assert that Mr. Navarro "flat refused" to provide the name of the S-corp he identified as holding his ownership interest. In fact, Mr. Navarro, said he could not remember the name but could find out the name, testifying as follows:

[redacted]

(Navarro Dep. at 34-36 (Ex. R) (objections omitted).) [redacted]

(June 20, 2013 Deposition of Kennett R. Kendall, III (objections omitted) (attached hereto as Ex. T) at 61-62.) Similarly, Richard Roderick [REDACTED] [REDACTED] testifying via telephone as follows:

[REDACTED]

(June 19, 2013 Deposition of Robert A. Roderick at 34-35 (attached here to as Ex. U.).) Mr. Roderick then went on to testify that [REDACTED] [REDACTED] but even in that testimony, Mr. Roderick expressed his lack of knowledge of the ownership structure, testifying;

[REDACTED]

(*Id.* at 38- 39, 54.) Thus, while the testimony of these two witnesses may not be accurate, their testimony, as well as the testimony of the former Individual Defendants as a whole, simply does not evidence a refusal, blatant or otherwise, to cooperate in discovery, nor did the testimony in any way prevent the Plaintiffs from receiving disclosure of the Sherman Capital owners. Further, although suggested by Defendants' counsel, Plaintiffs never sought, or took, an FRCP 30(b)(6) deposition on this ownership question. Thus, Plaintiffs both have received the information sought through alternative means and rejected an alternative means of getting further confirmation of that information. Under such circumstances, the request for income tax returns and financial statements should be denied.

## III. The Court Should Reject the Plaintiffs' Newly Articulated Need for Net Worth Information as a Basis to Obtain the Financial Statements and Income Tax Returns.

Impliedly conceding that their requests for the Entity Defendants' financial statements and income tax returns do not arise from any need for additional information about the Entity Defendants' structure, Plaintiffs now argue for the first time that relevance relates to their need to discover net worth information. (Pls. Opp. at 14-15.)[10] But this effort also fails, not only because Plaintiffs have waived this argument by failing to raise it in meet and confer sessions, their briefs or at oral argument, but also because the Defendants have provided Plaintiffs with the net worth information needed to assess potential statutory damages under the FDCPA.

In particular, Plaintiffs received net worth disclosures for LVNV and Resurgent in response to requests for production of documents that the Plaintiffs propounded on these entities.

[10] The Plaintiffs falsely assert they previously argued the relevance of the requested financial statements and income tax returns rested upon a need to determine the Defendants' net worth for the purpose of assessing statutory damages under the Fair Debt Collection Practices Act (FDCPA). (Pls.' Opp. at 14.) As Defendants set forth in detail, with citation to the record that is noticeably absent in Plaintiffs' brief, the Plaintiffs never linked their request for the financial statements and income tax returns to the purported need for net worth information. (*See* Defs.' Mem. at 3-5 and Exhibits cited therein.)

(*See* LVNV Funding, LLC Amd. Obj. and Responses to Pls.' First Set of RFP of Documents, at 28 and LVNV 2892 (attached hereto as Ex. V); Def. Resurgent Capital Services, LP's Amd. Obj. and Responses to Pls.' First Set of RFP of Documents, at 30 and Resurgent 680) (attached hereto as Ex. W).) While true that the other Entity Defendants objected to the relevance of such net worth documents, and indicated that such documents were outside the scope of the matters alleged, these Entity Defendants further explained that if Plaintiffs prove a basis to assess statutory FDCPA damages thus making the disclosure of their net worth irrelevant. (*See* Def. Sherman Financial Group, LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 24-25; Def. Sherman Capital LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 24-25; Sherman Originator, LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 23 (attached hereto as Ex. X.)[11] In other words, as the FDCPA limits the amount of statutory damages to the lesser of $500,000 or 1% of the net worth of the entities deemed to be debt collectors, (*see* 15 U.S.C. § 1692k(a)(2)(B)),[12] Thus, disclosure of the precise amount of the net worth of the Entity Defendants other than LVNV and Resurgence has no relevance.

[11] Originally, the Defendants objected on relevance and scope grounds, indicating they would produce relevant documents. The amended answers further provided the explanation for this objection and referred to net worth documents showing LVNV's and Resurgent's net worths.

[12] In the case of a class action, a debt collector is liable for "(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

**CONCLUSION**

For all the above stated reasons, and the reasons stated in Defendants' Memorandum of Law in Support of their Motion for Reconsideration of the Magistrate's Order, or in the Alternative For Stay [Dkt. 219], the Defendants respectfully ask that the Court reconsider its order compelling the production of the financial statements and income tax returns, or in the alternative, grant a stay of that order until the District Court can rule on Defendants' Objection to that order.

Dated: April 7, 2014 Respectfully submitted,

s/ James A. Rolfes

Thomas Allen *pro hac vice*
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
(412) 288-3131
(412) 288-3086 (Facsimile)
tallen@reedsmith.com

James A. Rolfes *pro hac vice*
jrolfes@reedsmith.com
Michael DeMarino *pro hac vice*
mdemarino@reedsmith.com
David A. Maas *pro hac vice*
dmaas@reedsmith.com
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507
(312) 207-1000
(312) 207-6400 (Facsimile)

James W. Riley, Jr.
Atty. No. 6073-49
RILEY BENNETT &
EGLOFF LLP
141 East Washington Street
Fourth Floor
Indianapolis, IN 46204
(317) 636-8000
(317) 636-8027 (Facsimile)
jriley@rbelaw.com

*Attorneys for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2014 a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing to all counsel of record.

/s/James A. Rolfes