IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX, and STEPHANIE SNYDER, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:12-cv-1654-TWP-MJD CLASS ACTION |
| SHERMAN CAPITAL LLC; MEETING STREET PARTNERS II INC.; SHERMAN FINANCIAL GROUP LLC; SHERMAN CAPITAL MARKETS LLC; LVNV FUNDING LLC; RESURGENT CAPITAL SERVICES LP; SHERMAN ORIGINATOR LLC; SHERMAN ORIGINATOR III, LLC; SHERMAN ACQUISITION, LLC; BENJAMIN W. NAVARRO; LESLIE G. GUTIERREZ; SCOTT E. SILVER; KEVIN P. BRANIGAN; ROBERT A. RODERICK; KENNETH KENDALL; AND JOHN DOES1-50 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR
RECONSIDERATION OF THE MAGISTRATE'S ORDER,
OR IN THE ALTERNATIVE TO STAY [DKT. 218] AND
DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S ORDER ON
PLAINTIFFS' MOTION TO COMPEL [DKT. 216]

Plaintiffs, Andrew Cox, Lucinda Cox, and Stephanie Snyder, individually and

on behalf of others similarly situated, provide this memorandum in opposition to

Defendants' Motion for Reconsideration of the Magistrate's Order, or in the
Alternative to Stay [Dkt. 218] and Defendants' Objection to Magistrate Judge's
Order on Plaintiffs' Motion to Compel [Dkt. 216]. Plaintiffs previously filed
Plaintiffs' Response to Defendants' Emergency Motion for Stay [Dkt. 230] which
addressed the stay issue contained in Document 218. Defendants' motions should
be denied, and the defendant entities should be ordered, again, to produce their
financial statements and tax returns.

## I.    Introduction

From the outset of this lawsuit, plaintiffs sought to learn the ownership and
structure of the defendant entities. Defendants refused to disclose that ownership
and structure. Defendants went so far as to file Defendants' Corporate Disclosure
Statement, and then, 8 days later, reorganize their ownership and structure.

Defendants do not dispute that the ownership and structure of the defendant
entities is relevant to the claims and issues in this case.[1] Defendants have admitted
that all of their entities are inter-related, pass-through companies with the true
ownership sitting above the named defendant entities. It is this true ownership
that defendants restructure and refuse to disclose.

In an effort to learn the truth, plaintiffs took fruitless depositions, and then
served document requests seeking the tax returns and financial statements for the
past two years. The documents will disclose the true ownership and structure, at

---

[1] See, Memorandum of Law and Support of Defendants' Motion for Reconsideration of Magistrate's
Order or in the Alternative to Stay [Dkt. 219] (03/10/14), p. 2 (". . . the Court instead wrote that the
Entity Defendants' ownership and affiliation were relevant – a matter not in dispute . . . .").

2

least as of the end of each of those two years.  Defendants admit that the financial statements contain ownership information about the entities,[2] but still, they refuse to produce them.  Although defendants are silent about the contents of the entity tax returns, those tax returns necessarily contain ownership information as well.

The tax returns and financial statements are relevant also to other issues and claims in the case, including the net worth of the defendant entities for purposes of calculating statutory damages.  This is plaintiffs' third motion seeking to compel discovery of the information relevant to ownership and structure of the defendant entities.  The Magistrate Judge has granted all three [Dkts. 55, 88, 210].  Defendants should be ordered to produce the requested documents.

## II.  Procedural Background

On December 11, 2012, defendants filed Defendants' Corporate Disclosure Statement [Dkt. 12].  The statement has not been supplemented pursuant to Fed.R.Civ.P. 7.1(b)(2).

On June 21, 2013, plaintiffs deposed defendant Benjamin W. Navarro.  He testified that ▉▉▉▉▉▉ in the defendant entities flowed through a new, recently created ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ When asked to identify this ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Mr. Navarro flat refused, although the information was readily available, and exclaimed, "I don't know why that is material to you, but I'm not going to name that entity."  Deposition transcript of

_____

[2] See, Defendants' Memorandum of Law [Dkt. 219] (03/10/14), p. 7, n.5, where defendants explain, in part, the ownership information contained in their financial statements.

Benjamin W. Navarro (June 21, 2013) pg. 10, lines 10-20, pg. 16, lines 3-12, pg. 35, lines 1-25, pg. 36, lines 2-3 [Dkt. 191]. (Designated as Confidential by defendants and filed under seal as Exhibit W, re Dkt 189).

On May 16, 2013, plaintiffs deposed defendant Robert Roderick. Mr. Roderick testified that he has ███████████████████████████████ that he is not a ███████████████████████ and that he has no ownership interests in ██████████████████████████ Deposition transcript of Robert Roderick (May 16, 2013)(marked as confidential by defendants), pg. 54, lines 7-16, attached (and filed under seal) as Exhibit A.

On August 8, 2013, plaintiffs served their written discovery requests that are the subject of these pending motions. Defendants served their written responses on October 11, 2013. The requests and responses concerning the tax returns and financial statements are as follows:

REQUEST FOR PRODUCTION NO. 51:

All financial reports and statements to investors of the Defendant for the past two years.

RESPONSE TO REQUEST FOR PRODUCTION NO. 51: Defendant incorporates by reference its Preliminary Statement and General Objections as though fully set forth herein. Defendant further objects on the grounds that Plaintiffs' request seeks information that is not relevant in that it is not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this request to the extent this request goes beyond the scope of the matters alleged. Defendant further objects on the grounds that this request is vague and confusing and fails to define or identify the terms "financial reports and statements" and fails to identify the alleged "investors" to which this request refers.

REQUEST FOR PRODUCTION NO. 52:

All income tax returns of the Defendant for the past two years.

RESPONSE TO REQUEST FOR PRODUCTION NO. 52: Defendant incorporates by reference its Preliminary Statement and General Objections as though fully set forth herein. Defendant further objects on the grounds that Plaintiffs' request seeks information that is not relevant in that it is not reasonably calculated to lead to the discovery of admissible evidence. Defendant objects to this request to the extent this request goes beyond the scope of the matters alleged.

Dkt. 173, p. 21-22 (12/20/13).[3]

Defendants produced no documents responsive to Request for Production Nos. 51 and 52. On November 14, 2013, following efforts to resolve the discovery dispute, defendants' counsel sent a letter purporting to describe, in part, the ownership structure of defendants. Dkt. 219, Exhibit E. The letter provided no ownership information about the entities sitting at the top of the corporate structure – ██████████████████████████████ It is this missing information that should identify the true owners of the defendant entities, or at least help lead plaintiffs and the Court to the true owners.

On December 20, 2013, plaintiffs filed their motion to compel production of the tax returns and financial statements [Dkt. 172]. Plaintiffs informed the Court that, "defendants' financial reports and statements, as well as their tax returns are relevant to the issues of ownership of defendants, securitization and sale of securities, corporate structure, identity of current and former officers, and net value for purposes of punitive damages." Dkt. 173, p. 22 (12/20/13).

---

[3] Although defendants purportedly incorporate "general objections" by reference, they make no argument that any general objection is relevant to these pending motions.

On January 29, 2014, defendants' counsel sent a second letter purporting to disclose the ownership of the entities. Dkt. 219, Exhibit F. The letter provides:



*Id.*

## III.   Defendants Refuse to Truthfully Explain the Structure and Ownership of the Defendant Entities

This Court has already determined that the inter-relation of the corporate defendants is convoluted and unclear. Dkt. 151, p.4. The Court "has observed defendants' obstinate efforts to withhold information from plaintiffs . . . ." *Id.* at p. 16. The Court further observed that, "Just these few depositions make it clear to the Court that what Defendants argue is 'a typical corporate family of upstream and downstream entities, sister corporations, and the normal day-to-day functions of some of those entities' executives' is in reality more like an amoeba—a one-celled organism with no definite shape." *Id.* at p. 28. The Court also observed, "Defendants' inability, if not unwillingness, to admit to their exact ownership in the various corporate defendants." *Id.* at p. 30.

6

Defendants have provided a redacted organizational chart.  Dkt. 219, Exhibit
D.  The redacted chart does not show the true ownership of the entities at the top of
the chart.  Perhaps that information was redacted.  The redacted chart shows the
majority of the defendant entities being interconnected with ultimate ownership
flowing up through ███████████████████.

The corporate disclosure statement says that the owners of Sherman Capital
LLC are "private individuals."  Dkt. 12.  Mr. Navarro testified that the ownership of
███████████████ somehow flowed to a ████████████ that he
refused identify.  Defendant Roderick testified that ████████████████
██████████████ yet defendants' attorney provided a January 29, 2014 letter
stating that ████████████████████████████████ The
letter also provides that ██████████████ at least in part ████████
████████████████████████ This information is contrary to the
corporate disclosure statement that has never been amended.  Counsel's letter fails
to disclose that defendants ██████████████████████████
████████ on December 19, 2012, just 8 days after defendants filed Defendants'
Corporate Disclosure Statement with this Court.[4]  And, the letter fails to account
for ████████████.

Despite this subterfuge, defendants say that they have already produced
documents sufficient to fully disclose the ownership of, and relationship between,
the defendant entities.  On the contrary, defendant entities have shown that their

_____
[4] See, Affidavit of April Keaton and attachments filed as Exhibit B to this memorandum.

7

ownership and structure is a moving target, and they blatantly refuse to cooperate in discovery.

## IV.    Standard of Review

Defendants have moved for reconsideration of the Order on Plaintiffs' Motion to Compel [Dkt. 210] and have objected to that Order pursuant to Fed.R.Civ.P. 72(a). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Publishers Resource Inc. v. Walker-Davis Publications Inc.*, 762 F.2d 557, 561 (7th Cir.1985) (citations omitted). A motion for reconsideration should not "*serve as the occasion to tender new legal theories for the first time.*" *Id.* (italics in original).

"A motion to reconsider is appropriate when the court patently misunderstood a party, made a decision outside the adversarial issues presented by the parties, or made an error of apprehension and not reasoning, as well as when a controlling or significant change in the facts or law occurred after the order was issued." *Spencer County Redevelopment Comm'n v. AK Seal Corp.*, 2011 U.S. Dist. LEXIS 7985, *3-4 (S.D. Ind.).

In *Weeks v. Samsung*, 126 F.3d 926, 943 (7th Cir. 1997), the Seventh Circuit described the standard of review as follows:

> District courts enjoy extremely broad discretion in controlling discovery. *Leffler v. Meer*, 60 F.3d 369, 374 (7th Cir. 1995) (citation omitted). Because the district court is in a far better position than we are to pass on discovery matters, we will reverse the district court's exercise of discretion as to discovery matters only upon a showing of an abuse of that discretion. We also

8

will not reverse the district court's decision absent a clear showing that the denial of discovery would result in actual and substantial prejudice to the complaining litigant. *Id.* (citations omitted); The district court's review of any discovery-related decisions made by the magistrate judge is governed by *Rule 72(a) of the Federal Rules of Civil Procedure*, which provides: The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. *Fed. R. Civ. P. 72(a); see also28 U.S.C. § 636(b)(1)*. The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made.

More recently, in *Domanus v. Lewicki*, 743 F.3d 290, 2014 U.S. App. LEXIS 2140,

*5, 6 (7th Cir. 2014), the Court reaffirmed the standard applicable to the present

motions:

> *Section 636* of the Federal Magistrates Act and *Federal Rule of Civil Procedure 72(a)* govern district court review of nondispositive magistrate judge decisions. *28 U.S.C. § 636(b)(1)(A)* (providing that a district judge may reconsider any pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law); *Fed. R. Civ. P. 72(a)* (The district judge ... must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.) In short, the district judge reviews magistrate-judge discovery decisions for clear error. *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). . . . We, in turn, review all of the district judge's discovery-related sanction decisions only for an abuse of discretion. *Dotson v. Bravo*, 321 F.3d 663, 666 (7th Cir. 2003). We uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (citation omitted).

*Id.*

Here, the Magistrate Judge did not err in ordering defendants to produce their tax returns and financial statements. Defendants' only objections to Request for Production Nos. 51 and 52 were (1) lack of relevance, and (2) that request 51

9

concerning financial reports was "vague and confusing." In their pending motions,
defendants no longer suggest that Document Request No. 51 is vague or confusing.

Only in a further effort to avoid production of documents, defendants now
have submitted heavily redacted copies of two financial statements [Dkt. 219,
Exhibits K and L]. Defendants admit the financial statements contain information
about the ownership and structure of the defendant entities. Dkt. 219, p.7., n.5.
Defendants are completely silent about the contents of the entity tax returns.

Tax returns of limited liability companies necessarily contain Schedule K-1
information identifying the owners of the companies and their ownership
percentages. The Seventh Circuit recently relied on tax returns as evidence of
ownership and structure when addressing "a web of corporate and partnership
entities serving dubious purposes," and "a confusing maze of entities and financial
dealings." *Cole v. Commissioner of Internal Revenue,* 637 F.3d 767, 769 (7th Cir.
2011). In *Cole,* to untangle the entity web, the Court considered information
contained in the defendants' tax returns:

> Scott filed SCC's first and only tax return for tax year 2000 on March 25,
> 2005. SCC was declared the 99% owner of the Bentley Group (with Darren
> the remaining 1% owner) in the Bentley Group's 2001 tax return, filed
> November 10, 2004 . . . . Scott also created JAC Investments, LLC. Scott
> reported on JAC's 2001 tax return that Jennifer Cole owned 50% of JAC and
> her family trust owned another 49%. Scott reported owning the remaining 1%
> . . . .

*Id.* at 769, 770.

10

In the present case, the defendant entities' tax returns will also identify the entity owners and relationships amount them. "It is common knowledge that tax returns show more than just income . . . ." *United States v. Six Hundred Forty-Four Thousand Eight Hundred Sixty & 00/100 Dollars,* 2007 U.S. Dist. LEXIS 28820, *6, 7 (M.D. Ill) (further holding that "[t]ax returns in the hands of a taxpayer are not privileged.").

Defendants incorrectly suggest that the Magistrate Judge's Order compelling the production of tax returns is erroneous simply because the documents are tax returns. Defendants rely on *Charles v. Quality Carriers, Inc.*, 2010 U.S. Dist. LEXIS 8284, *1 (S.D. Ind 2010) and *Finch v. City of Indianapolis*, 2011 U.S. Dist. LEXIS 67577, *18 (S.D. Ind 2011). In *Charles*, the court considered a subpoena requesting financial information from a third-party expert. The court held that non-parties are to be protected from undue burden, and the third-party expert was not required to produce his financial information. 2010 U.S. Dist. LEXIS 8284 at *4, 5. In *Finch*, the court considered a request for tax returns from public officials who had raised qualified immunity defenses, and the Court noted that it is routine to place limits on discovery pending adjudication of a qualified immunity defense. 2011 U.S. Dist. LEXIS 67577 at *13. In the present case, defendants are not third-parties entitled to special protection or individual public officials who have raised immunity defenses.

Defendants say they now have privacy concerns that they failed to raise as objections to the discovery requests. But, a Stipulated Protective Order [Dkt. 73] is

11

already in place. To the extent defendants have actual concerns about privacy, as opposed to concerns about disclosing the true nature of their ownership and structure, such privacy concerns are addressed by the Stipulated Protective Order. *Ripberger v. Corizon, Inc.*, 2012 U.S. Dist. LEXIS 134648, \*8-9 (S.D. Ind)("The current protective order in place, however, can be expanded to cover the tax returns. Because a protective order is obtainable, that the documents are confidential and proprietary is not a basis to object to their production.").

Defendants say that some courts outside of the Seventh Circuit adopt a special discovery standard for tax returns. But, no such standard exists within the Seventh Circuit. In *Crissen v. Gupta*, 2013 U.S. Dist. LEXIS 159534, \*14-16 (S.D. Ind), the defendant objected to the production of tax returns arguing that such returns are "undiscoverable." The court disagreed:

> Accordingly, the documents forming the basis of Request 8 could be precluded from discovery only by the case law Vinod argues renders his tax returns undiscoverable. (*See* Dkt. 115 at 17 (citing *Poulos v. Naas Foods, Inc., 959 F.2d 69 (7th Cir. 1992)*). On that count, the Court declines to accept Vinod's reading of *Poulos*. Quite plainly, the Court of Appeals held that "[t]ax returns in the hands of a taxpayer are not privileged," and that "Poulos was properly compelled to produce his tax returns." *Poulos, 959 F.2d at 74-75*. Even if *Poulos* stood for the proposition that discoverability of tax returns may be compelled only if there is no reasonable alternative source for the information requested, Vinod's bald assertion that he "has already provided multiple reasonable, alternative sources of information showing his exact costs incurred and paid" does not direct the Court to those alternative sources. (*See* Dkt. 116 at 16-17). Discoverability of tax returns is a matter for the discretion of the trial court, *see Poulos, 959 F.2d at 75*, and the Court finds no reason why Vinod's returns should be shielded from discovery. . . . However, the Court generally holds that tax documents of any stripe are confidential business information. Therefore, Vinod must produce these documents, but he may do so subject to the more limited protective order as amended by this entry.

12

*Id.*

In *Jackson v. N'Genuity Enters. Co.*, 2010 U.S. Dist. LEXIS 125899, *6-10

(N.D. Ill.), the court analyzed the discoverability of tax returns and held that, in the

Seventh Circuit, there is no heightened showing that must be made before tax

returns are discoverable:

> At the hearing today, counsel for the defendants objected to a turnover of the personal returns. That objection is not persuasive. It has long been beyond debate that income tax returns are not privileged or otherwise immune from discovery. *See St. Regis Paper Co. v. United States, 368 U.S. 208, 218-19, 82 S. Ct. 289, 7 L. Ed. 2d 240 (1961)*; *Poulos v. Naas Foods, Inc., 959 F.2d 69, 74-75 (7th Cir.1992)*; *Commodity Futures Trading Com'n v. Collins, 997 F.2d 1230, 1233 (7th Cir.1993)*; *Camphausen v. Schweitzer, 2010 U.S. Dist. LEXIS 117030, 2010 WL 4539452, 3 (N.D.Ill.2010)*(St. Eve. J.); *U.S. v. Six Hundred Forty-Four Thousand Eight Hundred Sixty and 00/100 Dollars in U.S. Currency, 2007 U.S. Dist. LEXIS 28820, 2007 WL 1164361, 2 (C.D.Ill.2007)*; *Raiser v. O'Shaughnessy, 1992 U.S. Dist. LEXIS 16001, 1992 WL 309541, 1 (N.D.Ill.1992)*(Moran, C.J.). This is not to say that income tax returns are discoverable for the asking. They are not. *See, e.g., Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 813 (7th Cir.1994)*. Like all other evidence sought in discovery, the returns must be relevant.
>
> Some courts have suggested that there is a heightened showing that must be made before tax returns are discoverable. In their view, it is not enough that the returns are relevant; there must be a compelling need for the information and/or it must not be available from another source. *See, e.g., Trilegiant Corp. v. Sitel Corp., 2010 U.S. Dist. LEXIS 121490, 2010 WL 4668950, 7 (S.D.N.Y.2010)*; *Thornton v. UL Enterprises, LLC, 2010 U.S. Dist. LEXIS 120464, 2010 WL 4721235, 3 (W.D.Pa.2010)*. Nothing in <u>Rule 26</u> or in the regulations or statutes governing income tax returns compels this additional overlay, and the Seventh Circuit has not adopted such a position. Indeed, the court said in *Poulos*: "We express no opinion at this time on the validity or proper formulation of this policy against disclosure." And, it emphasized that "if we were to recognize some sort of presumption against disclosure, we would certainly leave enforcement of the policy to the discretion of the trial court...." *959 F.2d at 75* . . . .
>
> The unique facts of this case more than amply support the conclusion that the tax returns sought by Mr. Jackson are singularly relevant. Accordingly, the individual defendants shall produce copies of their individual income tax returns, state and federal, for the reporting years 2001-2009 on a rolling

basis consistent with the timetable and other conditions set forth in the
accompanying minute order.

*Id.* (citations omitted).

Plaintiffs served proper document requests. Defendants objected based on
relevance and refused to produce them. The requested documents are relevant to
ownership and structure of the defendant entities. Defendants agree that ownership
and structure are relevant to the claims and issues in this case. The plaintiffs
properly filed a motion to compel. Magistrate Judge Dinsmore correctly granted the
motion. The Order compelling production of the tax returns and financial
statements is consistent with – and certainly not contrary to – the law of the
Seventh Circuit. There is no error. Defendants should be ordered to produce the
financial statements and tax returns.

## V.     The Tax Returns and Financial Statements Are Also Relevant To The Issue of Statutory Damages

As noted above, defendants' only objection timely made to the production of
the tax returns and financial statements is lack of relevance. As plaintiffs argued
in their motion to compel, the documents are also relevant to the issue of net worth
and statutory damages in this Fair Debt Collection Practices Act (FDCPA) case
brought as a class action. The Magistrate Judge has already determined that
plaintiffs have "successfully asserted plausible allegations that the named corporate
defendants are 'debt collectors' under the FDCPA." Dkt. 151, p. 11. Just last
month, in a separate FDCPA case filed as a class action, the Court ruled that, in an
FDCPA class action case, the net worth of the defendants is a relevant area of

14

discovery, even before class certification. *Green v. Monarch Recovery Mgmt.*, 2014 U.S. Dist. LEXIS 21324, *4 (S.D. Ind).

In the present case, the tax returns and financial statements are relevant to the issue of the defendants' net worth, and they should be produced.

## VI.    Conclusion

Because the requested documents are relevant to the claims and issues in this case, the Magistrate Judge did not err in ordering defendants to "respond to Defendant LVNV's Document Requests numbered 51 and 52, and all such parallel requests to other Defendants." Dkt. 210, p. 11.  Documents requests 51 and 52, served August 8, 2013, requested all financial reports and tax returns "for the past two years."  Accordingly, the requests sought the tax returns and financial statements for the years 2011 and 2012.  Defendants have delayed production for several months and have demonstrated a willingness to make alterations among the defendant entities to hide information.  At present, defendants' 2013 tax returns and financial statements should be available, or will be available in the immediate future.

The Court should deny defendants' motion for reconsideration of, and objection to, the February 24, 2014 Order on Plaintiffs' Motion to Compel.  Due to defendants' delay, plaintiffs request that defendants be ordered to produce the requested documents for the years 2011, 2012, and 2013.  If the 2013 documents are

15

not yet prepared, defendants should be ordered to produce them within 10 days

after the documents are prepared.  Plaintiffs request all other relief just and proper.

Respectfully submitted

s/ Jeffrey A. Townsend
*Attorney for Plaintiffs Andrew Cox, Lucinda*
*Cox, and Stephanie Snyder, individually and*
*on behalf of others similarly situated*

George M. Plews, Attorney No. 6274-49
Peter M. Racher, Attorney No. 11293-53
Frederick D. Emhart, Attorney No. 10952-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN  46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
        pracher@psrb.com
        femhardt@psrb.com


Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA, L.P.A.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
        ruaneagle@aol.com
        boruta17@hotmail.com

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March 2014, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/ Jeffrey A. Townsend*

17