# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANDREW COX, LUCINDA COX,   ) Civil Action No.: 1:12-cv-1654-TWP-MJD
STEPHANIE SNYDER,           ) CLASS ACTION
ERIC COTTEY, ROBERT GOODALL, )
and GICHE EDISON, individually   )
and on behalf of others similarly   )
situated,                         )
     Plaintiffs,            )
                             )
     v.                   )     **JURY TRIAL DEMANDED**
                             )
SHERMAN CAPITAL LLC;       )
SHERMAN FINANCIAL GROUP LLC;)
SHERMAN CAPITAL MARKETS LLC;)
RESURGENT CAPITAL SERVICES LP;)
LVNV FUNDING LLC;         )
SHERMAN ORIGINATOR LLC;   )
SHERMAN ORIGINATOR III, LLC;  )
HUGER STREET LLC;         )
MOULTRIE STREET LLC;       )
WOOLFE STREET LLC;        )
FULTON STREET LLC:         )
JASPER STREET LLC;         )
CONCORD STREET LLC;        )
HAGOOD STREET LLC;        )
CHARLOTTE STREET LLC;      )
ARCHDALE STREET LLC;       )
JACOBS ALLEY LLC;         )
PEACHTREE STREET LLC;      )
GREENHILL STREET LLC;      )
CHALMERS STREET LLC;       )
PRINCESS STREET LLC;       )
BENJAMIN W. NAVARRO;      )
LESLIE G. GUTIERREZ;        )
SCOTT E. SILVER;           )
KEVIN P. BRANIGAN;        )
ROBERT A. RODERICK;       )
KENNETT KENDALL;         )
UNKNOWN S CORPORATION    )
and JOHN DOES 1-50.        )
     Defendants.          )

1

## AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

On behalf of the putative class, plaintiffs, ANDREW COX, LUCINDA COX STEPHANIE SNYDER, ERIC COTTEY, ROBERT GOODALL, AND GICHE EDISON bring this complaint against the defendants for their violations of the Fair Debt Collection Practices Act, 15 USC 1692 *et seq.* ("FDCPA"), violation of the United States Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sections 1961, 1962 (c) & (d) and 1964 (a) and (c), and fraud, restitution, unjust enrichment.

Defendants include Sherman Financial Group LLC ("SFG"), Sherman Capital LLC ("Sherman Capital"), Sherman Capital Markets LLC ("SCM"), LVNV Funding LLC ("LVNV"), Resurgent Capital Services LP ("Resurgent"), Sherman Originator LLC ("SO"), and Sherman Originator III LLC ("SOIII") (collectively "Sherman Entities").

Defendants further include Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC (collectively "New Shell Companies").

Defendants further include Benjamin W. Navarro ("Navarro"), Leslie G. Gutierrez ("Gutierrez"), Scott E. Silver ("Silver"), Kevin P. Branigan ("Branigan"),

Robert A. Roderick ("Roderick"), and Kennett Kendall ("Kendall") collectively "Individual Defendants")

Defendants further include an S Corporation created by certain defendants, the identity of which S Corporation is unknown to plaintiffs ("Unknown S Corp.").

Sherman Capital, New Shell Companies, and Unknown S Corp. are collectively referred to as "Sherman Capital."

The above named defendants are collectively referred to as "Sherman."

## INTRODUCTION

1.     This action arises out of Sherman's improper conduct in a scheme to manipulate consumers to pay money on alleged debt obligations that are not owed to LVNV.  During the period November 2008 through November 15, 2013, Sherman wrongfully collected from Indiana Consumers tens of millions of dollars.  Sherman continues to wrongfully collect to this day and the foreseeable future.

2.     Sherman buys data reflecting plaintiffs' past credit card activity and nonpublic personal information.  Sherman does not acquire legal ownership of plaintiffs' debt obligations.

3.     Until recently, no Sherman Entity (except Resurgent) was licensed or registered in the State of Indiana to do business or to collect debts.  Prior to becoming licensed or registered, the Sherman Entities engaged in their collection activities in the State of Indiana.

4.     Sherman regularly purchases data about Indiana charged-off consumer credit card accounts, and then securitizes this pool of information into a

3

synthetic collateralized debt obligations (CDOs), including a LVNV collateralized debt obligation ("LVNV CDO").

5.      Defendants, through their agent Resurgent, then improperly collect money from Indiana consumers on the information contained in the data for a fee. Defendants, through their agent Resurgent, does not collect money for their own account, but rather, collect money on behalf of the LVNV CDO that Sherman created.   The collected money flows through the Defendants (which extract fees) and then is used to purchase more data and pay the unknown certificate holders of the LVNV collateralized debt obligation.

6.      In its collection activities in Indiana, directly or through its collection agents, Defendants falsely represent that LVNV is collecting money on its own behalf and has the absolute right to do so.

7.      This class action seeks to recover the monies improperly collected from Indiana consumers by LVNV and Defendants, through its agent Resurgent, through fraudulently means and in violation of the FDCPA, RICO, and common law fraud. This class action further seeks to recover such monies under the theories of unjust enrichment and restitution.

8.      Defendants, through Resurgent and Resurgent's agents, have engaged in fraudulent collection activities by impermissibly pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents when LVNV has no

legal ownership of a debt. As such, Plaintiffs, on behalf of the putative subclass, seek statutory damages under the FDCPA.

9.      Pursuant to RICO, 18 U.S.C. §§ 1961, 1962 (c) and (d) and 1964 (c), Plaintiffs on behalf of the putative subclass, seek treble damages sustained as a result of Defendants' schemes and artifices to defraud, acts of mail fraud (18 U.S.C. §§ 1341), wire fraud (18 U.S.C. §1343), interstate transportation of stolen property (pursuant to 18 USC §2314), and extortion (18 U.S.C. §1951).  Plaintiffs together seek disgorgement of Defendants' profits under 18 U.S.C. § 1964(a) as the wrongful conduct continues since the filing of the original complaint.

10.      Plaintiffs further seek judgment ordering Sherman to disgorge the ill-gotten monies under common law fraud, restitution, and unjust enrichment and requiring defendants to return the total amount of dollars collected from the putative subclass members over the past six years, plus treble damages.

11.      Plaintiffs further seek a judgment declaring that Plaintiffs are under no obligation to render payment to any defendant arising from alleged money that Defendants may claim is owed to them.

12.      LVNV's primary collection agent is Resurgent, one of the Sherman Entities.  However, the strings are ultimately pulled by the Unknown S Corp., which employed the New Shell Companies, which employed Sherman Capital, which employed SFG, which employed SCM (on behalf of SO, SOIII, and LVNV), which employed Resurgent, which employed both Indiana and out-of-state law firms and collection agencies.  The Individual

Defendants are owners, directors, managers, and employees of The Unknown S Corp., the New Shell Companies, Sherman Capital, SFG, SCM, Resurgent, SO, SOIII, and LVNV.

13.     Under the Third Restatement of Agency and *respondeat superior*, each named defendant, known and unknown, is jointly and severally liable for the improper acts of LVNV, Resurgent, and the collection companies and law firms that LVNV and Resurgent hire to harass Indiana consumers under the false pretenses of a debt.

14.     The Sherman Entities, the New Shell Companies, the Individual Defendants and the Unknown S Corp., are alter egos of each other with common ownership, common control, and common officers and directors with a lack of corporate formalities.  The Sherman Entities are named after Navarro's childhood dog and the New Shell Companies are all named after streets in Charleston SC.

15.     Sherman has intentionally structured and restructured itself to shield its ultimate ownership in an attempt to avoid liability for the improper and illegal actions.  Internal accounting practices allow the Sherman Entities, the New Shell Entities, and the Unknown S Corp. to manipulate balance sheets and financial statements so that assets and net worth of any given entity can quickly be moved to leave an empty shell in an effort to avoid liability.

16.     Since April 2005, Defendants, through Resurgent and Resurgent's agents on behalf of the LVNV CDO, have initiated hundreds of thousands of consumer credit actions including dunning letters, telephone calls, reports to credit rating agencies, and tens of thousands of collection lawsuits which have wrongfully restrained bank accounts, garnished wages, placed liens on property, and/or pressured Indiana consumers into payment plans. The alleged debts and judgments procured by Resurgent and LVNV appear on consumer credit reports and prevent Indiana consumers from obtaining housing, employment, insurance and affordable credit.

17.     In the Indiana traditional collection activities (letters and telephone calls) initiated by Resurgent and LVNV, neither LVNV nor Resurgent possess any proof of the alleged debt other than a printout of data provided by a third party.  Sherman purchases data only, not the actual underlying debt obligations or receivables.

18.     In the Indiana lawsuits initiated by Resurgent and LVNV, neither LVNV nor Resurgent possess any proof of the alleged debt other than a false affidavit created by a subcontracted law firm and signed by a Resurgent employee based entirely on a printout of data provided by a third party rather than personal knowledge.  Sherman purchases data only, not the actual underlying debt obligations or receivables.

## JURISDICTION & VENUE

19.     This Court has jurisdiction over Defendants under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337, 1367 because Plaintiffs' claims constitute a federal question arising under the FDCPA.

20.     Venue in this district is proper because Plaintiffs reside here, Defendants do business in this district, and Defendants have significant contacts with the district pursuant to 28 U.S.C. § 1391.

21.     This Court has jurisdiction over Defendants under 28 U.S.C. § 1332(a) because the total amount in controversy for this class action exceeds $75,000 exclusive of interest and costs.  This Court has jurisdiction over Defendants under 28 U.S.C. § 1332(d) because the total amount in controversy for this class action exceeds $5,000,000 exclusive of interest and costs, and a member of the class is a citizen of a State different from a Defendant.

22.     This Court has nationwide jurisdiction over Defendants under RICO, 18 U.S.C. §§ 1961, 1962(c) & (d) and 1964(c).

23.     Pursuant to 18 U.S.C. §1965(b), RICO contains an explicit grant of nationwide service over all Defendants.

24.     This Court has jurisdiction over defendants under theories of alter ego, agency and veil piercing.

25.     This Court has jurisdiction over LVNV by virtue of LVNV's collection activities within Indiana including direct contact to consumers and initiation of litigation within the state.

26.     This Court has jurisdiction over Resurgent by virtue of Resurgent's collection activities within Indiana including direct contact to consumers and initiation of litigation within the state.

27.     This Court has jurisdiction over Sherman Capital, SFG, SO which are parent companies and alter egos of LVNV.

28.     This Court has jurisdiction over SCM and SOIII as the alter ego of Sherman Capital, SFG and SO, and under the theory of *respondeat superior*.

29.     This Court has jurisdiction over Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall, because they each individually own as well as operate, supervise, manage, direct, oversee, and control the Sherman Entities to such extent that they are individually and collectively the alter egos of the Sherman Entities. Jurisdiction further exists under the theories of *respondeat superior* and agency.

## PARTIES

### Plaintiffs

30.     Plaintiff, Andrew Cox, is a natural person and citizen of the State of Indiana, residing in Marion County.  Andrew has 28 years of experience in banking and finance, which included securitization and collection compliance.  Further, Andrew spent 5 years with the Federal Bureau of Investigation (FBI) as a financial analyst for corporate white-collar crime.  Andrew has been the victim of Sherman's illegal collection activities concerning two alleged Chase Bank USA NA credit card debts.  Andrew received collection letters and telephone calls from Sherman's agents.  Andrew is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).

Documents showing illegal collection activities against Andrew are attached as Exhibit 1.

31.     Plaintiff, Lucinda Cox, is a natural person and citizen of the State of Indiana, residing in Marion County.  Lucinda is Andrew's wife and co-signor on one of the alleged Chase Bank USA NA credit card debts.  Lucinda received collection letters and phone calls from Sherman's agents.  Lucinda is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3). Documents showing illegal collection activities against Lucinda are attached as Exhibit 1.

32.     Plaintiff, Stephanie Snyder, is a natural person and citizen of the State of Indiana, residing in Marion County.  Stephanie has been the victim of Sherman's illegal collection activities concerning alleged Sears/Citibank credit card debts.  Stephanie received collection letters and phone calls from Sherman and its agents.  Stephanie is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).  Documents showing illegal collection activities against Stephanie are attached as Exhibit 2.

33.     Plaintiff, Eric Cottey, is a natural person and citizen of the State of Indiana, residing in Hendricks County.  Eric has been the victim of Sherman's illegal collection activities concerning an alleged Yamaha Rbp/HSBC Bank Nevada NA credit card debt.  Eric received collection letters and phone calls from Sherman's agents.  Eric is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).  Documents showing illegal collection activities against Eric are attached as Exhibit 3.

34.     Plaintiff, Robert Goodall, is a natural person and citizen of the State of Indiana, residing in Marion County.  Robert has been the victim of Sherman's illegal collection activities concerning an alleged Chase Bank USA NA debt. Goodall received a proof of claim and other documents from Sherman's agents. Goodall is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3). Documents showing illegal collection activities against Robert are attached as <u>Exhibit 4</u>.

35.     Plaintiff, Giche Edison, is a natural person and citizen of the State of Indiana, residing in Marion County.  Edison has been the victim of Sherman's illegal collection activities concerning alleged Saks Fifth Avenue/HSBC credit card debt assigned to Arrow Financial.  Edison received collection letters and phone calls from Sherman's agents.  Edison is a "consumer" as that term is defined at 15 USC 1692a(3). Documents showing illegal collection activities against Giche are attached as <u>Exhibit 5</u>.

## Defendants

36.     Defendant Sherman Capital is a Delaware limited liability company, which owns, employs and operates SFG.  All of the other Sherman entities (with the exception of SCM) are ultimately owned, controlled, employed, and operated by SFG as subsidiaries and/or affiliates.    Sherman Capital is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  Sherman Capital is a "debt collector" as defined by the FDCPA, 15 U.S.C.

§ 1692a(6).   The business address for Sherman Capital is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

37.     Defendant SFG is a Delaware corporation headquartered in New York, NY.  SFG is owned by Sherman Capital.  SFG created and maintains several collateralized debt obligations including LVNV.  SFG wholly owns and operates the purchasing vehicles SO and SOIII and the holding vehicle LVNV.  LVNV, SO, SOIII are mere instrumentalities of SFG. SFG has entered into a management servicing contract with SCM to essentially operate and manage the purchasing and holding vehicles. SCM employs Resurgent. SFG owns and operates Alegis Group LLC and Resurgent.  Through its subsidiaries, SFG is a complex business structure primarily engaged in the business of purchasing and collecting on charged-off consumer accounts (including Indiana consumers) via mail, telephone, internet, and civil debt collection lawsuits.  Attached as Exhibit 6 are documents describing the complex business structure.  SFG is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  The business address for SFG is 200 Meeting Street, suite 206, Charleston, South Carolina 29401.

38.     Defendant SCM is a Delaware limited liability company.  SCM is an unregistered investment bank.  As an investment bank, SCM operates and manages the collateralized debt obligations by purchasing and repackaging data through assignment amongst SOIII, SO, and LVNV.  SCM purchases, securitizes, and services data consisting of nonpublic personal information of Indiana consumers. SFG entered into a management services agreement with SCM to operate and

manage the purchasing and holding vehicles in return for incentives and management fees.  Through this management services agreement, SCM exerts control over the daily affairs including financing for and capitalization of the SFG subsidiaries, SOIII, SO, and LVNV as well as receiving any correspondence to SOIII and SO.  SCM has subcontracted the collections or servicing activities to Resurgent. With Resurgent's input, SCM determines which Indiana accounts are designated for "pre-legal" collections, "legal" collections and "warehouse."   Indiana accounts designated "warehouse" are sold by SM acting as broker for the LVNV CDO to other "debt buyers'" including American Acceptance Company LLC, an Indiana limited liability company that is owned by Bowman, Heintz, Vician & Boscia PC.  SCM is primarily engaged in the business of purchasing and collecting on defaulted Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits. SCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). SCM was a subsidiary of SFG; but, as of 2010, as a part of Sherman's constant restructuring to avoid liability, SCM, is a wholly-owned subsidiary of Sherman Capital Group Inc. SCM has a business address of 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

 39. Defendant Resurgent is a Delaware limited partnership that was formed between Alegis Group LLC (the General Partner holding a 1% ownership interest) and SFG (the Limited Partner holding a 99% ownership interest).  Alegis Group is a subsidiary of the limited partner, SFG, and has no employees just managers.   Resurgent is subcontracted by SCM to be the master servicer of the

LVNV collateralized debt obligation.  Despite being in existence and acting as a collection agency since June 24, 1999, Resurgent did not license itself as a collection agency in Indiana until January 7, 2007.  The data is placed with Resurgent to engage in collections.  Resurgent maintains a website for voluntary payments and conducts collection activities directly (furnishing reports to credit report agencies) as well as outsourcing collection activities to independently owned collection agencies and law firms pursuant to a "Collection Service Agreement" between Resurgent and its agents.  Resurgent is primarily engaged in the business of collecting money from Indiana consumers via mail, telephone, internet and civil debt collection lawsuits.  Resurgent is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Resurgent has offices in Greenville, SC; Houston, TX, and Cincinnati, OH (where data server is located).  Resurgent's business address is 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.

40.     Defendant LVNV is a Delaware limited liability company.  LVNV is a wholly owned subsidiary of SOLLC.  LVNV is an unregistered synthetic collateralized debt obligation[1], and is identified on SFG's Consolidated Financial Statement as a Variable Interest Entity ("VIE").  As such, LVNV is a special purpose vehicle with no employees, just officers or managers.  LVNV's business and affairs are managed under the direction and control of a Board of Managers. Navarro is the General Manager who is responsible for supervising the operations of LVNV.  Other managers and officers of LVNV include:  Branigan, President;

---

[1] According to Moody's there are two LVNV CDOs.  The LVNV CDO formed in 2005 (which is subject of this litigation.  Another CDO which is controlled by the LVNV CDO was formed in 2007 and is referred to as LVNV and its alter ego PYOD LLC.

Silver, Secretary; Gutierrez, Chief Financial Officer; and Kendall, Chief Financial Officer and Treasurer.  LVNV disregards its LLC structure and files contradictory reports with various states.  On January 5, 2012, LVNV reported to the Rhode Island Secretary of State that its sole manager was defendant Navarro.   On January 18, 2012, LVNV reported to the Massachusetts Secretary of State that defendants Silver, Branigan, and Gutierrez were its sole three managers.  On February 16, 2012, LVNV reported to the Indiana Secretary of State that LVNV has no managers.  As a part of Sherman, LVNV serves as the holding vehicle of "data" on behalf of unknown investors in the LVNV CDOs.  LVNV is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  LVNV is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Despite being named as "creditor" in hundreds of thousands of traditional collection activities (letters and telephone calls) and being named plaintiff in tens of thousands of lawsuits in Indiana, LVNV did not license itself as a collection agency until March 12, 2012 in Indiana.  Despite being named the plaintiff in tens of thousands of collection lawsuits filed in Indiana, LVNV was not registered to conduct business in Indiana until February 16, 2012.  LVNV's business address with the Indiana Secretary of State is 625 Pilot Rd, Suite 3, Las Vegas, NV 89119, but is actually 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

41.     Defendant SO is a Delaware limited liability company.  SO is the only member of LVNV and is wholly-owned subsidiary of SFG.  At least since April 2005,

SO has been a purchasing vehicle for "data" which is assigned to the holding vehicle, LVNV.  SO has no employees, just officers.  SO is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  SO is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Such collection practices occur in Indiana.  SO's business address is c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston South Carolina 29401.

42.     Defendant SOIII is a Delaware limited liability company.  SOIII is a wholly-owned subsidiary of SFG.  At least since November 2008, SOIII has been a purchasing vehicle for "data" which is assigned to SO and reassigned to the holding vehicle, LVNV.  Since 2008, SOIII has had continuous and systematic contacts with Indiana by virtue of the purchase of hundreds of thousands of Indiana consumers' data.  SOIII has no employees, just officers.  SOIII is primarily engaged in the business of in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  SOIII is a "debt collector" as defined by the FDCPA, 15 USC 1692a(6).  SOIII's business address is c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston South Carolina 29401.  The Registered Agent for SOIII is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

43.     Defendants Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC ("New Shell Companies") are Delaware limited liability companies.  The New Shell Companies were created by Sherman on December 19, 2012 for the purposes of hiding the true ownership and control of Sherman Capital and avoiding liability for the Sherman activities.  Collectively, the New Shell Companies, together with Robert Roderick, Avondale St LLC, Robert Banasik, Scott Kester, Daniel Picciano III, Amanda Smith, James Wagner, Philip T. Thurmond Ill, Michael Keaton, Gregory Hammond, Jon Mazzoli, Terry O'Connell, Dennis Grady and the R Roderick trust, own and control Sherman Capital.  Ultimately, each of the New Shell Companies and the other owners of Sherman Capital are jointly and severally liable for Sherman's liability before and after judgment.

44.     Defendant Unknown S Corp. is a corporation created by Sherman in late 2012 or early 2013.  Ownership of the Sherman Entities and New Shell Companies ultimately flows up to the Unknown S Corp.  The Unknown S Corp. was created by Sherman for the purposes of hiding the true ownership and control of Sherman Capital and avoiding liability for the Sherman activities.

45.     The Individual Defendants serve as directors, managers, officers, supervisors and/or employees of the Sherman Entities in varying capacities.  Ownership of Sherman Capital has been a joint venture and the joint venture has

changed hands over time.  Since at least April 2005, the Individual Defendants have had a combined controlling interest in Sherman Capital.

46.     Defendants Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall, upon information and belief, are individuals who reside in and are citizens of the State of South Carolina.

47.     Defendant, Benjamin Navarro, is the founder and an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM. Navarro is the founder and the Chief Executive Officer of SFG and Chairman of SCM.  Navarro is a director at SCM and SFG.  Navarro is the General Manager of LVNV and Manager of Alegis Group.  Navarro created, or caused to be created, the new Shell Companies and the Unknown S Corp. in an effort to hide the ownership of the Sherman Entities and avoid liability.  Navarro's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Navarro participates in the scheme by supervising and overseeing SCM and Resurgent, maintaining relationships with sellers of data, and strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase.  The business address for Navarro is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

48.     Defendant, Leslie Gutierrez is a current or former owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Gutierrez is a current or former chief financial officer of SFG and SCM and LVNV.  Gutierrez is a current or former director at SCM and SFG.  Gutierrez is a current or former manager of LVNV.   Gutierrez signed on Plaintiffs' Transfer and Assignment documents as authorized representative of LVNV.  Gutierrez's duties in the fraudulent scheme includes but are not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Gutierrez participates in the scheme by being SCM's chief financial officer, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, supervising and preparing financial documents to maintain Moody's a Moody's rating, and executing documents on behalf of SFG's subsidiaries.  The business address for Gutierrez is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

49.     Defendant, Scott Silver, is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Silver is the general counsel for SCM and the solitary attorney for all Sherman Entities, except Resurgent, whose attorneys Silver oversees.  Silver's duties in the fraudulent scheme includes but is

19

not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Silver participates in the scheme by being general counsel, supervising and managing compliance with government regulations, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and executing documents on behalf of SFG's subsidiaries. Silver is a director at Sherman Capital Markets and SFG.  Silver is a Manager of LVNV.  Silver is Secretary of SFG.  The business address for Silver is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

50.     Defendant, Kevin Branigan, is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Branigan is the Vice President of Sherman Capital; Vice President of SFG; Officer of SO; Officer of SOIII; Director of Administration of SCM; unregistered investment banker at SCM; President of and manager of LVNV.  Branigan is a director at SCM and SFG.  Branigan signed as authorized representative of SO on Plaintiffs' Transfer & Assignments. Branigan's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Branigan participates in the scheme by being SCM's sales manager supervising investment bankers, maintaining relationships with sellers of data;

strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and executing documents on behalf of SFG's subsidiaries.  The business address for Branigan is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

51.     Defendant, Robert Roderick, is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Roderick is the chief executive officer and manager of Alegis Group; manager of Resurgent; and director of SCM and SFG.  Roderick's duties in the fraudulent scheme includes but is not limited to: designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Roderick participates in the scheme by being the supervising, managing, and overseeing Resurgent, maintaining relationships with sellers of data, maintaining relationships with the collection agencies and law firms employed by Resurgent, supervising and reviewing the performance of the collection agencies and law firms, and strategizing which data to purchase and how to finance the purchase.  The business address for Rodrick is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

52.     Defendant, Kennett Kendall, is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Kendall is the chief financial officer of SFG and SCM and treasurer of LVNV.  Kendall is a director at SCM and

21

SFG and an unregistered investment banker at SCM.  Kendall's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Kendall participates in the scheme by being SCM's chief financial officer, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and supervising and preparing financial documents to maintain a Moody's rating.  The business address for Kendall is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

53.    Sherman, through its agent Resurgent, employs subcontractors such as law firms and collection agencies to find consumers through skip tracing and to collect on the alleged debts.  These subcontractors enter into a Collection Services Agreement  with Resurgent  on behalf of Resurgent's clients, including LVNV. Resurgent obtained a limited power of attorney from LVNV as LVNV's attorney-in-fact, which was signed by Branigan.

54.    Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall were the primary architects of creating a scheme to purchase nonpublic personal information, convert that information into a financial instrument which could be sold to investors, and collect on that information for a profit under the false pretense of "debt buying" by setting up and employing the corporate entities.

55.     LVNV is merely a shell entity and holding company.  The purchasing entities, SO and SOIII, which ultimately assign the data to LVNV, are also shell entities.  LVNV, SO, SOIII are wholly owned subsidiaries of SFG (which is a shell company after hiring SCM).  Resurgent is also a subsidiary of SFG.

56.     As shell companies that were set into operation for a collateralized debt obligation, Sherman Capital ultimately operates and manages LVNV, SO, SOIII.  Sherman Capital has entered into a managerial services contract with SFG. SFG has subcontracted out the managerial operations of the collateralized debt obligation to SCM, for the financing and purchasing of data on behalf of the LVNV CDO investors, and for the servicing of the data on behalf of the LVNV CDO investors, which SCM subcontracted to Resurgent.

57.     The LVNV collateralized debt obligation must be actively managed. The decision making power and control over on the routine operations of the collateralized debt obligation is held by Sherman Capital which has subcontracted that control to SFG which has subcontracted that control to SCM.  This management services agreement calls for SCM to provide essentially all management services for SFG in return for an incentive and management fee and reimbursement.  The only management service not provided by SCM is the collections or servicing which is subcontracted to and performed by Resurgent.

58.     All the Individual Defendants are employees as well as owners and directors of SFG, which contracted with SCM, which contracted with Resurgent. Navarro, Gutierrez, Silver, Branigan, and Kendall function as officers or managers

for the shell entities that have no employees (SO, SOIII, LVNV).  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall function as officers and directors of SCM.  Roderick and Navarro are the managers of Resurgent.  The Individual Defendants have supervised, managed, directed and overseen the business activities of LVNV, SOIII, SO, SFG, SCM, and Resurgent including its traditional collection, litigation collection, credit reporting, and bankruptcy collections in Indiana and Indiana courts.

## FACTUAL ALLEGATIONS

59.     Consumer awareness and the legal system have not fully comprehended the two game changing evolutions that have greatly altered the world's financial landscape: (1) Securitization and (2) Credit Enhancements.

60.     The originating bank, through subsidiaries, pools the credit card receivables into a financial instrument that can be sold to outside investors, a process called "securitization," which results in the creation of an asset-backed security.

61.     The asset-backed security and prospectus are registered with the Securities and Exchange Commission ("SEC").   These documents specifically state that the receivables are sold and transferred to the trust; however, the documents are not stamped or marked to reflect the transfer but instead the computer records are marked as evidence of the transfer.

62.     The main results of securitization are: 1) the originating bank is paid in full; 2) the originating bank surrenders all control and ownership including all rights, title, and interest over the receivables; 3) the outside investors own the

receivables as result of a true sale; 4) evidence of indebtedness is delivered to the Trustee; 5) the originating bank transforms into the servicer for the asset-backed seurity; and 6) the originating bank cannot get the receivables back without violating IRS, SEC, and accounting rules (Financial Accounting Standards Board Statement No. 166-167).

63.     Credit enhancements are a key part of the securitization process since they are guarantees that the risk-averse investors will get paid in full if there is a default of the receivables.  The most common type of credit enhancement is the credit default swap (CDS).  A credit default swap is a written gambler's contract, where a protection seller agrees to compensate the protection buyer for face value of the underlying referenced receivable should a "credit event" such as a consumer bankruptcy or payment default take place.  In exchange for the promise, the protection buyer pays a periodic premium payment to the protection seller.

64.     Upon non-payment, the asset-backed security servicer has 180 days to collect upon the receivable.  If the servicer is unsuccessful, the debt is considered "charged-off".  That means that the servicer informs the investor of the credit event; the credit enhancements are "tapped"; and, the investor is paid in full.  Since the investor is paid in full, there is no longer a debt obligation.  The left over data is what is purchased, securitized, and serviced by Sherman on behalf of the LVNV collateralized debt obligation's outside investors.

65.     While FASB 166-167 prohibits the originating bank from repurchasing the defaulted receivables back from the Trust, it does not prohibit the sale of

information/data about the defaulted receivable.  This data with the nonpublic personal information is not evidence of indebtedness.  The Bill of Sale and Purchase Agreements specifically limit the sale to the originating bank's interest in the receivable, which after securitization is solely the data not ownership of the receivable.[2]

## Plaintiffs' interactions with Defendants

## Andrew & Lucinda Cox

66.     Andrew and Lucinda had a decrease in income as Andrew changed jobs.  Despite contacting Chase in an attempt to set up a payment plan, Andrew and Lucinda were not able to maintain payments on credit cards including two Chase accounts.  After 180 days of default, Chase charged-off the credit card debt on both cards.

67.     Andrew and Lucinda Cox were first contacted in Indiana on or about September 27, 2010 by telephone and by mail on January 22, 2011, by the law firm of Weltman Weinberg & Reis Co. LPA purportedly on behalf of Chase Bank USA NA for two separate accounts.  Andrew sent a dispute letter to Weltman Weinberg & Reis.  The letter was never answered.

68.     Unbeknownst to the Andrew and Lucinda, Chase Bank USA NA and SCM had entered into a Purchase Agreement on December 10, 2010 and their

---

[2] However, the Graham-Leach-Bliley Act ("GLBA") still requires an initial privacy notice, opt-out notice, and annual notice regarding nonpublic personal information. (Defendants sometimes provide the initial privacy notice but do not comply with the other requirements).  GLBA includes "debt buyers" and has civil and criminal penalties for noncompliance.

Heritage First USA account was purportedly sold by Chase to SOIII which assigned to SO which assigned to LVNV on or about April 8, 2011.   On behalf of Chase, Jeffrey Judd signed as "Team Leader" with no indication that an authorized representative nor corporate officer with authority to execute on behalf of Chase.

69.    On or about April 11, 2011, the data was transmitted to Resurgent; and, Resurgent electronically furnished a report to consumer credit reporting agencies, Experian Plc ("Experian") (with corporate headquarters in Dublin Ireland and operational headquarters in Costa Mesa CA, Sao Paulo Brazil, and Nottingham UK), Equifax Inc. ("Equifax") (headquartered in Atlanta, GA), and TransUnion LLC ("TransUnion")(headquartered in Chicago, IL).   The furnished report falsely stated that Andrew and Lucinda owed a debt and that the invalid debt was owed to LVNV. From April 2011 until October 2012, Resurgent transmitted monthly updates to each credit reporting agency which alone equated to 57 individual wire transactions.   In the calendar year 2012, reports were sent to all three credit bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June 14, July 12, August 17, September 13, October 23, November 15 (the reports all made on the same day as the Snyder's reports).   Further, on or about October 12, 2012, Andrew and Lucinda disputed the accuracy of the credit reports and Resurgent used the wires to "verify" the account.

70.    Additionally, Defendants through their agent Resurgent, hired collection agents and transmitted Andrew and Lucinda's data to the collection agents without any further evidence of indebtedness.   Between April 2011 until

August 2011, Resurgent hired Weltman Weinberg & Reis Co. in Cleveland, OH (the WWR National Litigation Network has offices in Brooklyn Heights OH; Cincinnati OH; Columbus OH; Chicago IL; Detroit MI; Ft Lauderdale FL; Philadelphia PA; Pittsburgh PA).  Between August 2011 until November 2012, Resurgent hired The Brachfeld Law Group PC (offices in El Segundo CA and Houston TX).

71.     Andrew and Lucinda received numerous collection letters that all falsely stated the current creditor was LVNV and that a balance was due.

72.     Specifically, Weltman Weinberg & Reis mailed on behalf of Resurgent a collection letter from Cleveland OH on July 6, 2011. The letter falsely stated that LVNV was the creditor and there was a "balance due" to LVNV. The letter stated that Weltman Weinberg & Reis had made several attempts to contact the Andrew and Lucinda.  The letter falsely stated that the law firm was "attempting to collect this debt for our client."

73.     Brachfeld mailed a collection letter on October 6, 2011.  The letter stated that the "Current Creditor" and "Originator" is LVNV, and that there is a "Total Amount Due".  The letter offered various payment plans to be remitted by U.S. Mail.  The letter was mailed from Pennsylvania but demanded that payments be made by mail to Houston, Texas.

74.     Andrew and Lucinda responded by faxing and mailing cease & desist letters on October 12, 2011, October 17, 2011 and November 8, 2011 to The Brachfeld Law Group at both its El Segundo and Houston addresses.  The cease & Desist letters outlined the non-licensing of LVNV as a collection agency in Indiana.

75.     On November 9, 2011, The Brachfeld Law Group responded by mail to Andrew's letters by a "Validation" Letter on or about November 9, 2011.  The letter falsely stated that the "Current Creditor" is LVNV, and "Total Amount Due."

76.     Andrew and Lucinda received numerous harassing telephone calls to their home and cellular numbers requesting payment. Specifically, Weltman Weinberg & Reis made a telephone call on July 7, 2011.

77.     Brachfeld made telephone calls on September 9, 16, 27 and October 11, 30, and November 30 and December 6, 2011.

78.     As a result of the harassment by LVNV through its agents, Andrew and Lucinda were forced to hire legal counsel and their credit ratings continued to be affected.

## Andrew Cox

79.     Unbeknownst to Andrew, his non-joint Chase Bank USA NA account was purportedly sold by Chase Bank USA NA to SOIII which assigned to SO which assigned to LVNV on or about April 7, 2011.  The same "Team Leader" signed on behalf of Chase.

80.     On or about April 11, 2011, Resurgent immediately furnished a report to consumer credit reporting agencies, Experian, Equifax, and TransUnion LLC that falsely stated that Andrew owed a debt and that the invalid debt was owed to LVNV.  From April 2011 until October 2012, Resurgent transmitted monthly updates to each credit reporting agency which alone equated to 57 individual wire

transactions.  In the calendar year 2012, reports were sent to all three credit bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June 14, July 12, August 17, September 13, October 23 (the reports all made on the same day as the Andrew & Lucinda reports).  Further, on or about October 12, 2012, Andrew disputed the accuracy of the credit reports and Resurgent used the wires to "verify" the account.

81.    Defendants, through their agent Resurgent, hired Boudreau and Associates LLC in Salem NH and transmitted Andrew's data to that agent without any further evidence of indebtedness.  Between April 2011 and May 2012, Boudreau & Assoc. made numerous collection telephone calls.

82.    These daily telephone calls to Andrew's cellular and home phone included calls August 8 and 9 and October 5, 10, 12, 2011 (despite never sending the required FDCPA notice  letter) which prompted Andrew to send a dispute letter.

83.    Andrew's initial dispute letter led to Bourdeau & Assoc. mailing a response on or about October 17, 2011, falsely stating that LVNV was the current creditor and owed a debt.  Andrew responded again on October 17 and November 8, 2011, by outlining the need for verification of the alleged debt and the lack of LVNV's licensing and registration.  Neither of these letters were answered.

**Stephanie Snyder**

84.    Stephanie Snyder is a disabled veteran.  She enrolled in college using her vocational rehab from the Veterans Administration.  However, to make ends

meet, Stephanie incurred a massive student loan and credit cards including Sears. Upon graduation, Stephanie was not able to maintain payments. After 180 days of default, Sears charged-off her credit card debt.

85.    Plaintiff Stephanie Snyder's interaction with Sherman is typical of the average Indiana consumer. Unbeknownst to Stephanie, her Sears account was purportedly sold by Citibank (South Dakota) USA to SO which assigned to LVNV on or about April 4, 2007. On behalf of Citibank, Douglass C Morrison (senior officer in charge of securitization at Citibank) signed as CFO of "O&T Finance."

86.    On April 4, 2007, Resurgent immediately furnished a report to Experian, Equifax, and TransUnion that falsely stated that Stephanie owed a debt and that the invalid debt was owed to LVNV. From April 2007 until October 2012, Resurgent transmitted monthly updates to each credit reporting agency which alone equated to 201 individual wire transactions. In the calendar year 2012, reports were sent to all three credit bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June 14, July 12, August 17, September 13, October 23, November 15 (the reports all made on the same day as the Andrew & Lucinda's reports).

87.    Defendants, through their agent Resurgent, hired a cadre of collection agents and transmitted Stephanie's data to the collection agents without any further evidence of indebtedness. Between April 2007 until October 2007, Resurgent hired National Enterprise Systems in Solon, OH. Between October 2007 until July 2008, Resurgent hired Northland Group Inc. in Edina, MN. Between

December 2008 until September 2009, Resurgent hired Allied Interstate Inc. in Columbus, OH.  Between September 2009 until March 2010, Resurgent hired Nelson, Watson & Associates LLC in Haverhill, MA.  Between March 2010 until September 2010, Resurgent hired Weltman, Weinberg  & Reis  in Cleveland, OH [WWR National Litigation Network has offices in Brooklyn Heights OH; Cincinnati OH; Columbus OH; Chicago IL; Detroit MI; Ft Lauderdale FL; Philadelphia PA; Pittsburgh PA].  Between September 2010 until October 2012, Resurgent hired Wright Lerch & Litow LLP in Fort Wayne, IN.

88.     Stephanie received numerous harassing telephone calls to her work and cellular number (which were never provided to Sears).  The callers falsely threaten to "pursue the matter".  Stephanie was constantly asked to make a lump sum payment, which she did not have, and which she repeatedly explained to Resurgent's agent.  There are other telephone calls in Defendants' agents' possession which were made to incorrect or former telephone numbers.

89.     Specifically, Northland Group made telephone calls to Stephanie on October 27, October 28, October 29, November 2, November 5, November 6, and November 8, 2007.

90.     Nelson Watson & Assoc. made telephone calls to Stephanie on September 8, 9, 10, 11, 14,15, 16, 17, 18,21,222, 23, 24, 25, 26, 27, 28, 29, 30, 2009; October 1, 5, 6, 7, 8, 14, 19, 21, 26, 28, 29, 2009; November 2, 4, 5, 9, 11, 13, 16, 20, 24, 25, 27, 30, 2009; December 1, 2, 3, 4, 10, 2009; and February 1, 4, 10, 15, 17, 24, 25, 2010; and March 1, 4, 2010.

91.     Stephanie received numerous collection letters to Stephanie that all falsely stated "Current Creditor:  LVNV Funding LLC" and falsely stated that there was a "Current Balance Due."  There are other collection letters in Defendants' agents' possession which were mailed to incorrect or former addresses.

92.     Specifically, Northland Group mailed a collection letters to Stephanie on October 27[3], November 26, December 26, 2008 and January 25, March 10, and April 25, 2008.  Each letter falsely stated that "Current Creditor: LVNV Funding LLC" and that there was a "Current Balance Due."

93.     Allied Interstate mailed a collection letter to Stephanie on December 15, 2008 and February 9, 2009.  Each letter falsely stated that "Creditor: LVNV Funding LLC" and falsely stated an "Amount Due."

94.     Nelson Watson & Assoc. mailed collection letters to Stephanie on September 9, October 9, 2009; and February 9. 2010.  Each letter falsely stated that "Current Creditor: LVNV Funding LLC" and falsely stated a "Total Balance."

95.     Wright & Lerch mailed collection letters to Stephanie on October 7, November 22, 2010 and March 30, July 22, 2011.  The October 10 letter falsely stated that "Creditor: LVNV Funding LLC" and that "the creditor advises us that you owe a balance."  The other letters state that "Our client: Resurgent Capital Services LP" and "there remains a balance due on the account."

96.     On or about September 28, 2010, Resurgent contracted with Wright & Lerch.  On or about September 30, 2010, Wright & Lerch used the internet to contact Experian to "skip trace" Stephanie.   On or about January 11, 2011, Wright

---

[3] The October 27, 2007 letter stated that the current creditor is "Resurgent Capital Services LP."

& Lerch emailed to Resurgent a document grading a potential suit against Stephanie.

97.     On April 11, 2011, a lawsuit was filed in Hamilton County Superior Court via mail by Wright & Lerch on behalf of LVNV against Stephanie.  However, the notice of the Complaint was mailed to an address Stephanie had not resided in for over 5 years.  This despite the fact that other collection agencies were able to obtain her correct address and telephone number.  However, lack of Stephanie's actual address did not prevent the law firm from filing a Complaint or requesting a Default Judgment after receiving notice that Stephanie had not received the Complaint.  The Complaint contained the false statements that Stephanie "is indebted to" LVNV "on an outstanding balance of $3637.05" which included pre-judgment interest.

98.     The only evidence attached to the Complaint was a fill-in-the-blank Affidavit of Debt executed by an employee of Resurgent falsely stating that Stephanie was indebted to LVNV.

99.     As often is the case with the deluge of lawsuits filed in Indiana by LVNV, a default judgment was entered.  The default judgment was based on an affidavit signed by Resurgent's employee and based on the purchased data.  The Complaint had no other proof of indebtedness.  The affidavit is identical to others filed in Indiana courts.  Further, the law firm used the wires to contact the Department of Defense Manpower Data Center in Arlington VA to verify active military status.

100.    After multiple Proceeding Supplementals, skip tracing, interrogatories to former employers, and court orders to the Indiana Department of Workforce Development which were all facilitated by use of the mails and interstate wires, the law firm finally mailed notice to Stephanie of the lawsuit with a potential bench warrant for failure to appear.

101.    On August 1, 2012, Stephanie nervously appeared at the Hamilton County Court as she thought she could potentially be going to jail.  Stephanie gave her name to a lady with a clipboard standing outside the courtroom who directed her into a room across from the courtroom.  Inside this room, Stephanie was approached by an attorney who asked her questions regarding her income and expenses and her address and telephone number.  Stephanie began to cry at which point the attorney told her that he would recommend to his client to forgive part of the alleged debt and set up a payment plan for the remainder.  This calmed Stephanie who then asked about meeting the judge.  The attorney informed her that the case was not on the docket to be heard, he said the only reason that asked the court for a subpoena was "because that is the only way people show up"; that the only reason to talk to the judge is if there is a problem; and while she could meet the judge they first had to ask the clerk with no guarantees that the judge would talk to them.  Stephanie had to return to work and felt no reason to wait for a chance to meet a judge when she did not know what to say and had been seemingly offered a reasonable payment plan.  As Stephanie left, the attorney gave her

paperwork to the court staff and said that "someone" would contact Stephanie regarding the write off and new payments.

102.    On or about August 3, September 14, September 28, and October 12, 2012, Stephanie's paycheck was garnished in the amount of $1146.56.  The monies were remitted to the Hamilton Superior Court which remitted the monies via US Mail to Wright & Lerch.  Wright & Lerch remitted the monies to Resurgent via the US Mail or wire.

103.    Unable to pay her basic living expenses, Stephanie was forced to retain the legal counsel and file a bankruptcy.  The bankruptcy trustee reported that her case may potentially be an asset case depending upon the amount of her tax return. In order to potentially collect on an asset, Resurgent electronically filed a proof of claim with the US Federal Bankruptcy Court in Indianapolis on March 28, 2013. The proof of claim was objected to for lack of documentation supporting indebtedness and Resurgent electronically filed an amended proof of claim on May 6, 2013.  Both claims falsely stated that the "name of creditor" was "LVNV Funding LLC" and that there was an "amount due".   Also, on May 6, 2013, the Law Office of Karl T. Ryan in Indianapolis IN electronically filed a Response to the Objection on behalf of LVNV.  That Response falsely stated that "the current creditor of the account (LVNV)" and "balance due and owing."

## Eric Cottey

104.    Eric Cottey had acquired credit card debt including being a co-signor on a Rbs Tier 3/HSBC Bank Nevada NA credit card.  Eric was unable to maintain payments on his credit cards.  After 180 days of default, HSBC charged-off the credit card debt.

105.    Unbeknownst to Eric, on or about October 20, 2011, SOIII purchased data about the charged-off account from HSBC Receivables Acquisition (USA) (the receivables seller to the HSBC Credit Card Master Note Trust) was transferred to SO which was transferred to LVNV.

106.    Eric never received the collection activity as the Defendants did not have his current address.

107.    The first time Eric heard of LVNV was when the Complaint filed by Wright & Lerch was mailed to the address of the co-signor.

108.    Fearing garnishment, Eric sought and retained legal counsel.  At which time, Eric pulled a credit report and monthly reports were furnished to the credit bureaus including in the calendar year 2012.

109.    Even though the Complaint was filed Hendricks Superior Court on December 23, 2013; the Affidavit of Debt was produced on June 27, 2012.  The Affidavit is executed by a Resurgent employee and falsely states that LVNV "has obtained a debt from HSBC."

## **Robert Goodall**

110.    Robert Goodall obtained and paid on a Chase credit card from 2002 until 2007 when he was involved in a serious accident resulting in unemployment. After struggling to provide for his family and pay his credit cards, Mr. Goodall could no longer keep up with the credit card payments.  After 180 days of default, Chase charged off the credit card debt.

111.    Robert eventually was able to obtain better employment, but by then was deep in debt.  His creditors refused to work with him and demanded full payment.  Fearing garnishment, Robert was forced into bankruptcy on September 30, 2010.   However, Robert agreed to pay back the creditors.

112.    Robert was unaware that on September 9, 2010 his account was purportedly sold to SOIII which transferred to SO which transferred to LVNV.

113.    Subsequently, Resurgent filed a proof of claim with the US District Bankruptcy Court in Indianapolis on February 10, 2011.  The Claim states that "Name of Creditor (the person or other entity to whom the debtor owes money or property):  LVNV Funding LLC."  The proof of claim is signed by "Joyce Montjoy." Upon information and belief, the signer was deceased.

114.    The Trustee received proceeds from the accident and was preparing to pay on the LVNV claim.  Counsel filed an objection to the LVNV claim.  LVNV then supplemented the proof of claim on 12/30/14.  Once again LVNV falsely stated that it was "Creditor".  However, the amount of claim changed from "7,942.52" to "7904.41" due to this time upon an old statement.  Based on the Resurgent card and

38

signature under penalty of perjury, the Trustee has remitted to Resurgent via wire "$7904.41" in 2014.

## Giche Edison

115.   Giche Edison is a single mother of two daughters.  She is a hairstylist and her income is subject to variation.  She could not keep up with her bills.

116.   Unbeknownst to Giche, her Saks Fifth Avenue account data was sold by HSBC Receivables Acquisition Corp (USA) to Arrow Financial Services LLC in Niles IL.

117.   Unbeknownst to Giche, Arrow Financial sold the account data to SOIII which assigned to SO which reassigned to LVNV on or about September 23, 2011.

118.   Giche started receiving threating telephone calls and letters including a September 26, 2012 letter from Vital Recovery Services, Inc. (Norcross GA) which falsely states that the "Original Creditor:  Arrow Financial Services LLC", the "Current Creditor: LVNV Funding LLC"; and "Total Balance Due $626.88").

119.   The falsely letter stated that, "LVNV Funding LLC has advised us that interest will continue to accrue on your account as provided for in your agreement with the original credit grantor" despite the fact that LVNV is not a party of the original contract.

120.   Giche believed that she could go to jail for owing debts and that her monies could be taken.  This fear caused Giche to seek and retain legal counsel.

## Mail & Wire Fraud

121.    Defendants devised a scheme to defraud, obtain money or property, and unlawfully transfer the money by means of false or fraudulent pretenses and representations under the guise of "debt buying" and employed the Corporate Defendants to implement the scheme.  Defendants knowingly devised or knowingly participated in a scheme or artifice to defraud the Plaintiffs or to obtain money or property of Plaintiffs by means of false or fraudulent pretenses, representations, or promises.  The scheme includes but is not limited to:

    a.  Purchasing and receiving data from originating banks and other third party "data buyers" without Plaintiffs' knowledge;

    b.  Transferring data to a holding vehicle without Plaintiffs' knowledge;

    c.  Creating a collateralized debt obligation without Plaintiffs' knowledge

    d.  Selling data to investors of a collateralized debt obligation without Plaintiffs' knowledge;

    e.  Locating the Plaintiffs by impermissibly pulling credit reports and hiring skip tracers;

    f.  Making false reports to credit reporting agencies against the Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV in violation of the Fair Credit Reporting Act;

    g.  Hiring subcontractors to send collection letters to Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

h.  Providing subcontractors with GLB Act notices to mail to Plaintiffs that improperly omitted an opt-out clause for use of plaintiffs' nonpublic personal information;

i.  Hiring subcontractors to make telephone calls to Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

j.  Hiring subcontractors to file lawsuits against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

k.  Hiring subcontractors to obtain default judgments against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

l.  Producing and filing fraudulent affidavits against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

m.  Producing and filing fraudulent proofs of claims in bankruptcy courts against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

n.  Using judgments obtained against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV to freeze bank accounts, put levies on property, and garnish paychecks of Indiana consumer;

o.  Reinvesting the monies collected under false pretenses into purchasing more data about charged-off accounts and nonpublic personal information to perpetuate the scheme.

41

122.    Defendants could foresee that the U.S. Postal Service and interstate wires would be "used for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 USC 1341 and 1343.

123.    Defendants, through their agent Resurgent, have employed over 150 collection agencies and law firms around the country.

124.    Defendants, through their agent Resurgent, contract with collection agencies to employ traditional collection methods on behalf of LVNV.  These collection agencies have included, but are not limited to, the following:  Capital Management Services LP (listed on Exh. as "subsidiary/affiliate" with offices in Buffalo NY, Las Vegas NV, Houston TX, Greenville SC), Brachfeld Law Group PC (Houston TX and El Segundo CA); Northland Group (Edina MN); Vital Recovery Services (Norcross GA); NES (Solon, OH); Nelson Watson & Associates LLC (Haverhill. MA); Allied Interstate (Tempe, AZ); Boudreau & Associates (Salem NH); Phillips & Cohen Associates (Newark, DE);  Zwicker & Associates (Andover MA) Tate & Kirlin (Philadelphia PA); Blitt & Gaines (Wheeling IL); Weinstein & Riley (Seattle, WA). (Hereinafter collectively referred to as the "Collection Agency Enterprise.")

125.    Defendants, through their agent Resurgent, contract with law firms, which often previously acted through traditional collection methods, to employ litigation-related collection actions on behalf of LVNV.  These law firms have included, but are not limited to the following:  Blatt Hasenmiller Leibsker & Moore

LLC (Chicago IL, Phoeniz AZ, Indianapolis, Philadelphia PA, Bingham Farms MI); Bowman, Heintz, Boscia & Vician (Chicago & Merrillville & Indianapolis); Greene & Cooper PSC (Louisville KY, Cincinnati OH, Roswell GA); Lloyd & McDaniel PLC (Louisville KY); Stenger & Stenger (Grand Rapids MI); Weltman Weinberg & Reis (Cleveland & Columbus OH); Wright & Lerch (Fort Wayne); Javitch, Block & Rathbone LLP (Cleveland OH); Mapother & Mapother (Louisville KY); Borns & Steele PC (Merrillville IN) (hereinafter collectively referred to as the "Law Firm Enterprise").  Some of these law firms, like Weltman Weinberg & Reis, have their own network of attorneys in various states.  The law firms use the wire to conduct skip tracing from sources such as Experian and LexisNexus.  The out of state and non-local law firms use the mail to file Complaints, motions for Proceedings Supplemental, and interrogatories to employers with Indiana Courts. The law firms use the wire to contact the Department of Defense's Manpower Data Center in Virginia to check active military status. The out of state law firms often employ their own subcontractors (local attorneys) to appear at court hearings.

126.   This litigation-related collection activity names LVNV plaintiff and seeks judgment on affidavit produced by the law firm and executed by a Resurgent employee based not on personal knowledge but data referencing a charged-off account.  In addition to LVNV's  case history of failure to possess any evidence of indebtedness, Defendants have already been found to have "knowingly submitted false Affidavits" which "were intended to deceive both the courts and the defendant consumers" in thousands of similar cases filed in Maryland.  *See Summary Order to*

43

*Cease and Desist and Summary Suspension of Collection Agency Licenses*, dated 10/25/11, issued by the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, in Case No.: DFR-FY2012-012.

127.    Defendants, through their agent Resurgent, directly engage in collection activity by furnishing reports to Experian, Equifax, and TransUnion. These reports are produced by Resurgent based not on personal knowledge by data referencing a charged-off account.

128.    Defendants, through their agent Resurgent, directly engage in collection activity by filing proofs of claim in Indiana bankruptcy courts.  These proofs of claim are produced by Resurgent and executed by a resurgent employee based not on personal knowledge but data referencing a charged-off account.

129.    Defendants, through the SFG subsidiary Credit One Bank NA, directly engage in collection activity by the issuance of a Credit One credit card and placing the settlement as a balance on the new credit card.  The receivables are securitized by MHC Receivables LLC.  If a default occurs, the data can be recycled by sale to the LVNV CDO.

130.    Defendants could foresee that the US Postal Service and interstate wires would be used in every dunning letter, telephone call, credit report, proof of claim, and court judgment and enforcement; and each use of the mails and wires has furthered the fraudulent scheme and enabled Defendants to take money and property from Plaintiffs and putative class members by means of false pretenses and misrepresentations.

131.   In particular, Defendants knew or could foresee that the US Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, communications between Defendants for the purpose of purchasing Plaintiffs' data from originating banks and other third party data buyers; locating the Plaintiffs; outsourcing the collection of Plaintiffs data to third parties, mailing dunning letters to Plaintiffs; telephone calls to Plaintiffs' home, cell, and work numbers; reporting Plaintiffs  to credit reporting agencies; and filing lawsuits against Plaintiff's in furtherance of the fraudulent scheme.

132.   Each and every Defendant has specific knowledge that the mails and wires are being utilized in furtherance of the overall purpose of executing the scheme to defraud, and/or it was reasonably foreseeable that the mails and wires would be used.  Without the use of the mails and wires, Defendants could not have made contact with Indiana consumers nor received money from Indiana consumers.

133.   Defendants, acting singly and in concert, personally or through their agents, used the US Postal Service and interstate wires or caused the US Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Indiana consumers within the meaning of 18 USC 1341 and 1343.

134.   It is not possible for Plaintiffs to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the

exclusive control and within the exclusive knowledge of defendants and their

agents.

135.   By way of example, Defendants, through their agents (e.g.  Resurgent,

members of the Law Firm Enterprise, and members of the Collection Agency

Enterprise), specifically used the US Postal Service or interstate wires or caused the

US Postal Service or interstate wires to deliver each and every telephone call,

email, and letter described in paragraphs 66 - 120, including but not limited to

those detailed in the below chart, for the purpose of advancing, furthering,

executing, and concealing the scheme to defraud Plaintiffs.

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | |
| **Andrew & Lucinda Cox Communications** | | | | |
| Wire | 12/10/10 | Chase – NY | SCM – SC | Purchase Agreement of Charged-Off Accounts |
| Wire | 4/7/11 | Chase – NY | SOIII c/o SCM – SC | Transfer of Coxes nonpublic personal information ("NPI") |
| Wire | 4/11/11 | LVNV – SC | Resurgent – OH | Transfer of Coxes NPI |
| Wire | 4/11/11 | Resurgent - SC | Experian – CA | Furnish false r report that debt owed & owed to LVNV |
| Wire | 4/13/11 | Resurgent – SC | Weltman Weinberg Reis – OH | Hire WWR to collect under false pretense of a debt and owed to LVNV |
| Wire | 4/13/11 | Resurgent – SC | WWR – OH | Transfer of Coxes NPI |
| Mail | 7/6/11 | WWR – OH | Coxes – IN | Collection |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | letter falsely stating debt and owed to LVNV |
| Telephone | 7/11/11 | WWR – OH | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| Wire | 8/29/11 | Resurgent – SC | Brachfeld – CA | Hire Brachfeld to collect under false pretense of a debt and owed to LVNV |
| Wire | 8/29/11 | Resurgent – SC | Brachfeld – CA | Transfer of Coxes NPI |
| Telephone | 9/9/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 9/16/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 9/27/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Mail | 10/6/11 | Brachfeld – TX | Coxes – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt- out |
| Telephone | 10/11/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 10/30/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Mail | 11/9/11 | Brachfeld – TX | Coxes – IN | Validation Letter falsely stating debt and owed to LVNV |
| Telephone | 11/30/11 | Brachfeld – TX | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| Telephone | 12/6/11 | Brachfeld – CA | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| **Andrew Cox Communications** | | | | |
| Wire | 12/10/11 | Chase – NY | SCM _SC | Purchase Agreement of Charged-off |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | Accounts |
| Wire | 4/8/11 | Chase – NY | SOIII c/o SCM – SC | Transfer of Andrew's NPI |
| Wire | | LVNV – SC | Resurgent – OH | Transfer of Andrew's NPI |
| Wire | 4/11/11 | Resurgent – SC | Experian – CA | False credit report that debt owed & owed to LVNV |
| Wire | | Resurgent – SC | Boudreau – NH | Hire Boudreau to collect under false pretense of a debt and owed to LVNV |
| Wire | | Resurgent – SC | Boudreau – NH | Transfer of Andrew's NPI |
| Telephone | 8/8/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 8/9/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 10/5/11 | Boudreau- NH | Cox – IN | Collection call |
| Telephone | 10/11/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 10/12/11 | Boudreau – NH | Cox – IN | Collection call |
| Mail | 10/17/11 | Boudreau – NH | Cox – IN | Collection letter falsely stating debt and owed to LVNV |
| **Stephanie Snyder Communications** | | | | |
| Wire | 4/4/07 | Citibank – SD | SCM – SC | Purchase Agreement of Charged-Off Accounts |
| Wire | 4/4/07 | Citibank – SD | SO c/o SCM – SC | Transfer of Snyder's NPI |
| Wire | 4/4/07 | LVNV – SC | Resurgent – OH | Transfer of Snyder's NPI |
| Wire | 4/4/07 | Resurgent– SC | Experian – CA | False credit report that debt owed & owed to LVNV |
| Wire | 4/4/07 | Resurgent – SC | Equifax – GA | False credit report that debt owed & owed to LVNV |
| Wire | 4/4/07 | Resurgent – SC | TransUnion – IL | False credit report that |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
|  |  |  |  | debt owed & owed to LVNV |
| Wire | 4/13/07 | Resurgent – SC | NES – OH | Hire NES to collect under false pretense of a debt and owed to LVNV |
| Wire | 4/13/07 | Resurgent – SC | NES – OH | Transfer of Snyder's NPI |
| Wire | 10/11/07 | Resurgent – SC | Northland - MN | Hire Northland to collect under false pretense of a debt and owed to LVNV |
| Wire | 10/11/17 | Resurgent – SC | Northland - MN | Transfer of Snyder's NPI |
| Mail | 10/27/07 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to Resurgent |
| Mail | 11/26/07 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 1/25/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 3/8/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 4/25/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Wire | 4/11/08 | Resurgent – SC | Allied Interstate – OH | Hire Allied Interstate to collect under false pretense of a debt and |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | owed to LVNV |
| Wire | 4/11/08 | Resurgent – SC | Allied Interstate - OH | Transfer of Snyder's NPI |
| Mail | 12/15/09 | Allied Interstate – OH | Snyder – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt-out |
| Mail | 2/9/09 | Allied Interstate – OH | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Wire | 9/4/09 | Resurgent – SC | Nelson Watson – MA | Hire Nelson Watson to collect under false pretense of a debt and owed to LVNV |
| Wire | 9/4/09 | Resurgent – SC | Nelson Watson – MA | Transfer of Snyder's NPI |
| Wire | 9/7/09 | Nelson Watson – MA | Experian – CA | Skip tracing to update Snyder's NPI |
| Mail | 9/9/09 | Nelson Watson – MA | Snyder – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt-out |
| Wire | 9/10/09 | Nelson Watson – MA | LexisNexis – OH | Skip tracing to update Snyder's NPI |
| Mail | 10/13/09 | Nelson Watson – MA | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 2/9/10 | Nelson Watson – MA | Snyder – IN | Collection letter falsely |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | stating debt & owed to LVNV |
| Wire | 3/16/10 | Resurgent – SC | WWR – OH | Hire WWR to collect under false pretense of a debt and owed to LVNV |
| Wire | 3/16/10 | Resurgent – SC | WWR – OH | Transfer of Snyder's NPI |
| Wire | 9/28/10 | Resurgent – SC | Wright Lerch - IN | Hire Wright Lerch to collect under false pretense of debt and owed to LVNV |
| Wire | 9/28/10 | Resurgent – SC | Wright Lerch – IN | Transfer of Snyder's NPI |
| Wire | 9/30/10 | Wright Lerch – IN | Experian – CA | Skip tracing to update Snyder's NPI |
| Telephone | 11/12/10 | Wright Lerch – IN | Bethany College – KS | Collection call to Snyder's former employer |
| Wire | 3/7/11 | Wright Lerch – IN | Resurgent – SC | Sent affidavit falsely stating that there is a debt & owed to LVNV; and signed with personal knowledge |
| Wire | 3/14/11 | Resurgent – SC | Wright Lerch – IN | Signed affidavit sent |
| Wire | 3/25/11 | Wright Lerch – IN | DOD – VA | Verify active military status |
| Wire or Mail | 9/4/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 9/17/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 10/1/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 10/19/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | garnished wages |
| | | | | |
| Wire | 10/23/12 | Resurgent – SC | Experian – CA Equifax – GA TransUnion - IL | Credit Report falsely stating a debt and owed to LVNV |
| **Eric Cottey Communications** | | | | |
| Wire | 6/27/12 | Resurgent – SC | Wright & Lerch –IN | Sent affidavit falsely stating that there is a debt & owed to LVNV; and signed with personal knowledge |
| **Robert Goodall Communications** | | | | |
| Wire | 2/10/11 | Resurgent – SC | US Court – IN | File proof of claim falsely stating a debt owed & owed to LVNV |
| Wire | 3/7/14 | US Trustee – IN Authorize Suntrust – TN | Resurgent – SC | Wire transfer of $651.75 |
| Wire | 4/4/14 | US Trustee – IN Authorize Suntrust – TN | Resurgent – SC | Wire transfer of $7252.55 |
| | | **Giche Edison Communication** | | |
| Mail | 9/23/11 | Vital Recovery – GA | Edison – IN | Collection letter falsely stating that there is a debt & owed to LVNV |

136.    Some of the wire communications may have occurred between entities

in the same state but upon information and belief crossed interstate borders by

reason of the technology and other mechanisms used to transmit the communication

and that the Sherman Entities have an office in Charleston SC and Resurgent has offices in Greenville SC, Houston TX, and Cincinnati OH.  Further, LVNV has a business address in Las Vegas, Nevada.

137.   Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), with the specific intent to defraud Plaintiffs, was committed for the purpose of obtaining the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, or promises. Defendants', through their agents, (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), acts of mail and wire fraud in violation of 18 USC 1341 and 1343 constitute "a pattern of racketeering activity" within  the meaning of 18 USC 1961(1)(B).

138.   Plaintiffs justifiably relied on Defendants', (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Plaintiffs have suffered direct and proximate harm as a result of Defendants' misrepresentations, omissions, deceptions and acts of concealment as more fully set forth above.  Specifically, damage to their credit ratings, loss of money from bank levies and garnishments, judgment liens placed on property, harassing phone calls and letters, invasion of privacy, and payment of

legal defense fees was suffered as described in paragraphs 66 - 120 . All Class members suffered similar loss.

## **Interstate Transportation of Stolen Property**

139.   Defendants devised and intended to devise a scheme or artifice to defraud and obtain Plaintiffs' money by false pretenses, representations or promises and transported or caused to be transported  money in interstate commerce in the execution or concealment of the scheme or artifice to defraud in violation of 18 U.S.C. § 2314.  In particular, Defendants through their agents (e.g. Resurgent, the members of the Law Firm Enterprise and members of the Collection Agency Enterprise), among other things, transported and caused to be transported in interstate money that belonged to Plaintiffs through voluntary and involuntary payments including bank freezes, garnishment, and bankruptcy claims and had a value in excess of $5,000.

140.   Specifically, Stephanie Snyder's garnishment monies went from her employer to the Hamilton County Court to the law firm to Resurgent in South Carolina.  Specifically, Robert Goodall's monies went to a bank in Memphis TN (Suntrust) where a Trustee in Indianapolis authorized a wire transfer to Resurgent in South Carolina.

141.   Interstate transportation of stolen property was an extension of the scheme to defraud as the wrongfully paid money from Plaintiffs to Defendants was transported out of the State of Indiana.

## Extortion

142.   Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise),, obstructed, delayed, or affected commerce and/or the movement of articles or commodities in commerce, by extortion or attempted or conspired to do so in violation of 18 U.S.C. § 1951

143.   Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise),  obtained money and property from Plaintiffs, with their consent, induced by wrongful use of actual or threatened fear in the form of "sham" collection techniques including actual or threaten litigation.  It is sham litigation in that there is no debt.

144.   Particularly, Defendants, through their agent Resurgent and Wight & Lerch, filed a lawsuit against Stephanie Snyder.  The Lawsuit falsely named LVNV as Plaintiff and falsely complained of a debt.

145.   The Snyder lawsuit was particularly wrongful as Wright & Lerch sent the Complaint to the wrong address.  Defendants, through their agents Resurgent and Wright & Lerch, were aware the address was wrong and intended to exploit that knowledge to its financial advantage to be awarded an uncontested default judgment.  Further, failure to attend a Proceeding Supplemental is grounds for a court to issue a body attachment.  Snyder feared that she would be put in jail for not paying and did not know how to respond since the Complaint looked legitimate. Giche feared going to jail for an alleged debt and sought legal counsel.

146.    The Defendants scheme plays upon the Indiana consumers' fears of imprisonment for owing a debt as well as avoidance of garnishments and other asset seizures which results in voluntary payments and uncontested litigation.

## CLASS ACTION ALLEGATIONS

147.    This action is brought on behalf of the following three classes:

1.  The FDCPA Subclass consists of (i) all Indiana citizens (ii) whom were the subject of collection activity by the Defendants or Defendants' agents (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) which were served with process or contacted in any matter by Defendants or Defendants' agents (v) during the one year period prior to the filing of this original complaint in this action through trial of this cause which are in violation of the FDCPA.

2.  The Rico Subclass consists of (i) all Indiana citizens (ii) who paid money to Defendants (iii) under Defendants scheme to defraud (iv) using the mail and/or wires; (v) and/or interstate transportation of stolen property; (vi) and/or extortion (vii) during the four year period prior to the filing of the original complaint in this action through the trial of this cause.

3.  The Restitution Subclass consists of (i) all Indiana citizens (ii) who paid money to Defendants (iii) in regard to an alleged debt owed to Defendants (iv) during the six year period prior to the filing of the original complaint in this action through the trial of this cause.

148.    Plaintiffs allege that the class is so numerous that joinder of all members of the class is impractical.

149.    During the period November 2008 through November 2011, in the State of Indiana, Sherman collected on at least 622,447 consumer accounts.  The total amount that Sherman collected from Indiana consumers during the time period was at least $52,105,907.37.

150.    During the period December 2011 through November 15, 2013, in the State of Indiana, Sherman collected on at least 551,775 consumer accounts.  The total amount that Sherman collected from Indiana consumers during the time period was at least $27,834,508.13.

151.    During the period November 2008 through November 2011, in the State of Indiana, Sherman filed at least 13,666 lawsuits against Indiana consumers. The total amount that Sherman collected from Indiana consumers during the time period as a result of the lawsuits was at least $12,126,354.00.

152.    During the period December 2011 through November 15, 2013, in the State of Indiana, Sherman filed at least 19,774 lawsuits against Indiana consumers. The total amount that Sherman collected from Indiana consumers during the time period as a result of the lawsuits was at least $6,764,066.79.

153.    There are questions of law or fact common to the classes, which common issues predominate over any issues involving only individual class members.

154.   The common factual issue common to the FDCPA Subclass is whether members were subject to collection activity by or on behalf of Sherman.  The principal legal issue for the FDCPA Subclass is whether Sherman engaged in debt collection with no legal standing in violation of the FDCPA.

155.   The common factual issue to the RICO Subclass is whether Sherman committed a scheme of fraud using the mail, wireless, telephone, faxes, and internet and/or interstate transportation of stolen property and/or extortion.

156.   The common factual issue common to the Restitution Subclass is whether Sherman received a monetary benefit from members.  The principal legal issue for the Restitution Class is whether Sherman engaged in collection without legal standing and whether it would be inequitable for Sherman to retain the benefit without paying fair value for it, in violation of common law.

157.   Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.

158.   Plaintiffs will fairly and adequately protect the interests of the classes. Plaintiffs have retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions.  Neither Plaintiffs nor Counsel have any interest which might cause them not to vigorously pursue this action.

159.   Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

(2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## CLAIMS FOR RELIEF

### COUNT I
### FAILURE TO ACTUALLY OWN THE
### DEBT IN VIOLATION OF THE FDCPA
### (Against All Defendants )

160.    On behalf of FDCPA Subclass members, Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporate same by reference as if all were set forth fully herein.

161.    The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose.

162.    Sherman is precluded from relying on any *bona fide* error defense which relies upon a mistaken interpretation of the legal duties imposed by the FDCPA.

163.    Sherman is strictly liable under the FDCPA upon a finding of a single violation of the Act.

164.    The furnishing of a debt to a credit reporting agency by a debt collector is a communication to which the FDCPA applies.

165.    All Defendants are a "debt collector" as the FDCPA defines a debt collector as any person who uses any instrumentality of interstate commerce, or the mails, the principal purpose of which is the collection of any debts, or who regularly

collects or attempts to collect, *directly or indirectly*, debts owed or asserted to be owed or due to another. 15 U.S.C. § 1692(a)(6).

166.    Under the FDCPA, "Debt" includes an "alleged obligation." 15 U.S.C. § 1692a(5).

167.    Each of the Sherman Entities, as a purchaser or assignee of defaulted debt, is a debt collector under the FDCPA.

168.    All defendants are liable for Sherman's actions, because the various corporate veils created by defendants are shams and should be pierced.

169.    With respect to each class member, LVNV does not legally own a debt, but solely possesses information and data about consumer transactions.

170.    Defendants' actions violate 15 U.S.C. 1692 e of the FDCPA.

171.    Defendants' actions violate 15 U.S.C. §1 692e(5), by making a "threat" to take an action that cannot legally be taken.

172.    Defendants' actions violate 15 U.S.C. 1692 e (2) (A) of the FDCPA by false representing the "character, amount, or legal status" of a non-existent debt.

173.    Defendants' actions violate 15 U.S.C. 1692 e (10) of the FDCPA.

174.    Defendants' actions violate 15 U.S.C.1692 f of the FDCPA.

175.    Defendants' actions violate 15 U.S.C. 1692 f (1) of the FDCPA. Because Sherman has no legal ownership of a debt and as such has no agreement expressly authorizing collection amounts including interest.

*Wherefore*, Plaintiffs, on behalf of the FDCPA Subclass, request that the Court enter judgment in favor of Plaintiffs and the FDCPA Subclass and against Defendants for:

1.  Actual Damages;

2.  Statutory damages;

3.  Attorney's fees, litigation expenses and costs of the instant suit; and

4.  Such other relief as the Court deems proper.

## COUNT II
## FAILURE TO OBTAIN A DEBT COLLECTION LICENSE AS MANDATED BY I.C. 25-11-1 -7 IN VIOLATION OF THE FDCPA

176.    On behalf of FDCPA class members, Plaintiffs incorporate by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

177.    IC 25-11-1-7 makes it an unlawful act to conduct business in Indiana as a collection agency without first having applied for and obtained a license

178.    LVNV licensed itself as a collection agency in Indiana on March 12, 2012 (registration No. 12-0042 CA).  Therefore, LVNV determined that is was required to be licensed in Indiana as a collection agency.

179.    LVNV's unlicensed filing of lawsuits constitutes an unfair means of collecting or attempting to collect a debt in violation of 15 U.S.C. 1692f.  It is unfair and unconscionable to violate Indiana law particularly an Indiana law designed to protect Indiana consumers.

180.    LVNV's failure to obtain a collection agency license as mandated by Indiana Statutes 25-11-1 et seq., while actively engaging in debt collection in the State of Indiana, violated various provisions of the FDCPA including the following: 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

181.    The FDCPA's plain language includes any person who "directly or indirectly" attempts to collect such debts on a regular basis.  15 USC 1692a(6).

182.    Sherman Capital, SFG, SCM, and the Individual Defendants direct LVNV and SO and SOLLP, participate in LVNV.  None of these Sherman entities are licensed in Indiana.  Further, the LVNV CDO, which hired Resurgent, is not licensed in Indiana.  Many of the entities subcontracted by Resurgent are also not licensed in Indiana.

*Wherefore*, Plaintiffs, on behalf of the FDCPA Subclass, request that the Court enters judgment in favor of Plaintiffs and the FDCPA Subclass and against Defendants for:

1.  Actual Damages;

2.  Statutory damages;

3.  Attorney's fees, litigation expenses and costs of the instant suit; and

4.  Such other relief as the Court deems proper.

## COUNT III
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)

**(Defendants Navarro, Gutierrez, Silver, Branigan, Roderick, Kendall, Sherman Capital, SFG, SO, SOIII, SCM, LVNV, and Resurgent)**

183.    Plaintiffs reallege and restate paragraphs 1 through 182.

184.    Navarro, Gutierrez, Silver, Branigan, Roderick, Kendall, Sherman Capital, SFG, SO, SOIII, SCM, LVNV, and Resurgent are hereinafter referred to as the "RICO Defendants."

185.    The following individuals (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact":  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall ("Management Enterprise").

a.  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Management Enterprise's affairs.

b.  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall share the common purpose of (among other things) defrauding members of the plaintiff class of money or property.

c.  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are related in that they are owners, officers, directors, agents and executives within Sherman Capital, SFG, SO, SOIII, SCM, LVNV, and Resurgent.

d.  The Management Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Management Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

e.  Since April 2005, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the Management Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's,

Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

186.    In the alternative to paragraph 185, SFG, LVNV, and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

    a.   Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of SFG's, LVNV's, and Resurgent's affairs.

    b.   Since April 2005 and continuing through the present, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the SFG, LVNV, or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's, Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

187.    In the alternative to paragraphs 185 and 186, the following legal entities (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact": Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent ("Sherman Group Enterprise").

    a.   Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Sherman Group Enterprise's affairs.

b. Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent share the common purpose of (among other things) carrying out Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall's scheme to defraud members of the plaintiff class of money or property.

c. Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent are related in that they are all subsidiaries, affiliates, agents and/or subcontractors of the Sherman Group.

d. The Sherman Group Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Sherman Group Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

e. Since April 2005, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the Sherman Group Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's, Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

188.    The following legal entities (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact":  SCM, SO, SOIII, LVNV and Resurgent ("Sherman Collection Enterprise").

a. Sherman Capital and SFG are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Sherman Collection Enterprise's affairs.

b. SCM, SO, SOIII, LVNV, and Resurgent share the common purpose of (among other things) defrauding members of the plaintiff class of money or property.

c. SCM, SO, SOIII, LVNV, and Resurgent are related in that they are all involved in the operation and management of a collateralized debt obligation including collections on behalf of Sherman.

d. The Sherman Collection Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Sherman

Collection Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

e.  Since April 2005 and continuing to the present, Sherman Capital and SFG have each individually conducted, participated in, engaged in, and operated and managed the affairs of SCM, SO, SOIII, LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Sherman Capital's and SFG's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

189.   In the alternative to paragraph 188, SCM, SO, SOIII, LVNV and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

a.  Sherman Capital and SFG are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of SCM's, SO's, SOIII's, LVNV's or Resurgent's affairs.

b.  Since April 2005 and continuing to the present, Sherman Capital and SFG have each individually conducted, participated in, engaged in, and operated and managed the affairs of the SCM, SO, SOIII, LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Sherman Capital's and SFG's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

190.   The following legal entities (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact": LVNV and Resurgent ("LVNV / Resurgent Enterprise").

a.  SCM, SO and SOIII are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or

66

participated in the conduct of the LVNV / Resurgent Enterprise's affairs.

b. LVNV and Resurgent share the common purpose of (among other things) defrauding members of the plaintiff class of money or property on behalf of Sherman.

c. SCM, LVNV and Resurgent are related in that they are operated and managed by SCM.

d. The LVNV / Resurgent Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the LVNV / Resurgent Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

e. Since April 2005 and continuing to the present, SCM, SO, SOIII have individually conducted, participated in, engaged in, and operated and managed the affairs of the LVNV / Resurgent Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). SCM's, SO's and SOIII's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

191.   In the alternative to paragraph 190, LVNV and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

a. SCM, SO, and SOIII are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of LVNV's or Resurgent's affairs.

b. Since April 2005 and continuing to the present, SCM, SO, and SOIII have individually conducted, participated in, engaged in, and operated and managed the affairs of LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). SCM's, SO's, and SOIII's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

192.   Resurgent is a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

    a. LVNV is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of Resurgent's affairs.

    b. Since April 2005 and continuing to the present, LVNV has conducted, participated in, engaged in, and operated and managed the affairs of Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). LVNV's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

193.    In the alternative to paragraphs 185 – 192, the Law Firm Enterprise is an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that its members are "a group of individuals associated in fact".

    a. Each RICO Defendant is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Collection Agency Enterprise's affairs.

    b. The Members of the Law Firm Enterprise share the common purpose of (among other things) carrying out the RICO Defendants' scheme to defraud members of the plaintiff class of money or property.

    c. The Members of the Law Firm Enterprise are related in that they all employed by Resurgent to collect debt through litigation-related collection activities on behalf of the Sherman Group.

    d. The Law Firm Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Law Firm Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

    e. Since April 2005 and continuing to the present, each RICO Defendant has conducted, participated in, engaged in, and operated and managed the affairs of the Law Firm Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Each RICO Defendant's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

194.   In the alternative to paragraphs 185 – 193, the Collection Agency Enterprise is an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that its members are "a group of individuals associated in fact",

    a.   Each RICO Defendant is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Collection Agency Enterprise's affairs.

    b.   The Members of the Collection Agency Enterprise share the common purpose of (among other things) carrying out the RICO Defendants' scheme to defraud members of the plaintiff class of money or property.

    c.   The Members of the Collection Agency Enterprise are related in that they all employed by Resurgent to collect debt through traditional collection activities on behalf of the Sherman Group.

    d.   The Collection Agency Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Collection Agency Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

    e.   Since April 2005 and continuing to the present, each RICO Defendant has conducted, participated in, engaged in, and operated and managed the affairs of the Collection Agency Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Each RICO Defendant's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraph 142-146, *supra*).

195.   At all relevant times, the enterprises alleged in paragraphs 183 – 194 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

196.   All of the acts of racketeering described in paragraphs 183 – 194 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud the

plaintiff class members of money and property, their common result was to defraud the plaintiff class members of money and property; each RICO Defendant, personally or through his/its agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; consumers whose debt information had been acquired by the RICO Defendants were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

197.    All of the acts of racketeering described in paragraphs 182-195 (*supra*) were continuous so as to form a pattern of racketeering activity in that the RICO Defendants engaged in the predicate acts over a substantial period of time or in that the RICO Defendants' acts of racketeering are the regular way in which the RICO Defendants have done and continue to do business and threaten to continue indefinitely.

198.    As a direct and proximate result of, and by reason of, the activities of the RICO Defendants, and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Plaintiffs suffered damages to the extent their money or property was subject to bank freeze, judicial liens, garnishments, lower credit ratings, hiring of legal counsel to defend, and payments based fraudulent pretenses.  Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

*Wherefore*, Plaintiffs, request that the Court enters judgment in favor of Plaintiffs against Defendants for:

1. Treble damages;

2. Consequential damages; and

3. Punitive damages;

4. Attorney's fees, litigation expenses, and costs of instant suit; and

5. All other relief as necessary in the premises.

## COUNT IV
## RICO Conspiracy - 18 U.S.C. § 1962(d)

**(Defendants Navarro, Gutierrez, Silver, Branigan, Roderick, Kendall, Sherman Capital, SFG, SO, SOIII, SCM, LVNV, and Resurgent)**

199.   Plaintiffs reallege and restate paragraphs 1 through 198.

200.   To the extent some of the RICO Defendants are liable as conspirators under 18 U.S.C. § 1962(d), Count IV is pled in the alternative to Count III.

201.   As alleged in Count III, some or all of the RICO Defendants violated 18 U.S.C. § 1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity.  These Defendants are hereinafter referred to as "Operators and Managers."

202.   To the extent some RICO Defendants are found to have not violated section 1962(c) as Operators and Mangers, those RICO Defendants conspired with the Operators and Managers and thereby violated of 18 U.S.C. § 1962(d).  These RICO Defendants are hereinafter referred to as the Conspirators.

203.   In particular, the Conspirators intended and agreed to further or facilitate an endeavor of the Operators and Managers which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating that criminal endeavor.

204.   Plaintiffs were injured by the Conspirators' overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud (as described in paragraphs 66-138, *supra*), interstate transportation of stolen property (as described in paragraphs 139-141, *supra*), and extortion (as described in paragraphs 142-146, *supra*).

205.   As a direct and proximate result of, and by reason of, the activities of the Conspirators, and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their money or property was subject to bank freeze, judicial liens, garnishments, lower credit ratings, hiring of legal counsel to defend, and consensual payments based upon fraudulent pretenses.  Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT V
## INDIANA COMMON LAW ACTUAL FRAUD
### (Against All Defendants)

206.     On behalf of Restitution Subclass members, Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporate same by references as if all were set forth fully herein.

207.     Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), in each and every furnishing of an alleged debt to a credit reporting agency, in each and every communication to its collection agency subcontractors, on each and every dunning letter sent by it or its agents, and in each and every lawsuit filed on its behalf in Indiana with Defendants' knowledge, made the material misrepresentation that a valid debt existed and that the debt was ultimately owned by, and owed to LVNV as described in paragraphs 66 -120.

208.     Defendants intended to defraud Indiana consumers and intended that Indiana consumers would rely upon their false representations.

209.     Tens of thousands of Indiana consumers justifiably and detrimentally relied upon Defendants' false statements, including Plaintiffs as described in Paragraphs 66-120.

210.     Tens of thousands of Indiana consumers were directly injured by reason of Resurgent and Resurgent's agent's false statements, including Plaintiffs as described in Paragraphs 66-120.

211.    The named Plaintiffs, individually and on behalf of Indiana consumers, allege that each of the defendants were the agents, representatives, servants, employees, principals, joint-venturers, co-conspirators, and/or representatives of each of their codefendants and were acting within the course and scope of their agency, employment, joint-venture, conspiracy, and/or service with the approval, knowledge, authority, acquiescence, and/or ratification of each of the remaining Defendants and, therefore, to the extent that any Defendant did not directly engage in the actions upon which this Count is based, such Defendant should be equally liable for the resulting damages as the defendants who performed such actions.

212.    Indiana consumers who are class members are entitled to monetary damages to fairly and adequately compensate them for the injuries and damages sustained by reason of Defendants' fraud.

213.    In committing the acts of fraud, Defendants have acted intentionally, outrageously, oppressively, despicably, fraudulently, and maliciously in conscious disregard of the plaintiffs' rights and welfare in contravention of Indiana law and public policy.  As a result thereof, plaintiffs are entitled to exemplary and punitive damages in an amount sufficient to properly punish and deter Defendants in an amount to be proven at trial.

214.    With respect to each class member, a fraudulent statement was made that LVNV was owed a debt.  LVNV was not owed a debt, because it only purchased data about consumer transactions.  Even if debt had been purchased, which it was not, LVNV was not the owner of the alleged debt, but rather, third party investors

were the owners, and LVNV was collecting on their behalf. Despite this, LVNV repeatedly represented that it was owed a debt in all communications related to its collection activities.

215.   The wrongful acts and false representations made by Resurgent, LVNV and their collection agents, the subcontractors, should be imputed to each and every Sherman Entity under the theories of agency, alter ego, veil-piercing, and *respondeat superior*.

**Wherefore**, Plaintiffs, on behalf of the Restitution Subclass, request that the Court enters judgment in favor of Plaintiffs and the Restitution Subclass and against Defendants for:

1. Treble damages;

2. Consequential damages; and

3. Punitive damages;

4. Attorney's fees, litigation expenses, and costs of instant suit; and

5. All other relief as necessary in the premises.

## COUNT VI
## CONSTRUCTIVE FRAUD

216.   On behalf of Restitution Subclass members, plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporate same by references as if all were set forth fully herein.

217.   The elements of constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that

duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

218.    Sherman owes a duty to Indiana consumers, which duty is imposed by, among other things, the Graham Leach Bliley Act, 15 U.S.C. §6801, *et seq.* ("GLB Act ") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA")  The GLB Act  imposes an affirmative duty on a financial institution, including LVNV, to protect nonpublic personal information and to not disclose nonpublic information, unless it notifies the consumer that such information is being shared with unaffiliated third parties and provides the consumer with a right to opt-out.  The FCRA imposes an affirmative duty on a furnisher to accurately report credit information.   There also exists a common law duty of keeping nonpublic personal financial information private.

219.    These duties include a requirement that a notice be sent to the Indiana consumers regarding disclosure of nonpublic personal information to unaffiliated entities.

220.    LVNV and the other Defendants failed to notify Indiana consumers that their nonpublic personal information would be shared with the unaffiliated investors of LVNV, and failed to accurately report credit information by alleging that a debt was owed to LVNV, when it was not.

221.    If LVNV and the other Defendants had fulfilled their duties, and if Indiana consumers had been properly notified, such consumers could have opted out and avoided the transfer of their information to the purchasing vehicles, SO and SOIII, the subsequent transfer of their information to the holding company LVNV, the securitization of the information to the unaffiliated LVNV investors, and the sale of the information to other third party "debt buyers."

222.    Indiana consumers reasonably relied upon Sherman to fulfill its duties under the GLB Act to protect their nonpublic personal information and under the FCRA to accurately report credit information.

223.    As a result of the Defendants' breach of its duties and Plaintiffs' reliance, Indiana consumers were injured collectively by paying money on Sherman's debt collection activities that were based entirely on the nonpublic personal information that should never have been transferred to LVNV for collection purposes, or for any other purpose.

224.    Sherman gained an advantage by the breach of its duties by collecting from Indiana consumers, during the period November 2008 through November 15, 2013, tens of millions of dollars.

***Wherefore***, Plaintiffs, request that the Court enters judgment in favor of Plaintiffs against Defendants for:

1.  Treble damages;

2.  Consequential damages; and

3.  Punitive damages;

4.   Attorney's fees, litigation expenses, and costs of instant suit; and

5.   All other relief as necessary in the premises.

## COUNT VII
## RESTITUTION
## (All Defendants)

225.   Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein.

226.   A member of the Restitution class conferred a benefit on the Defendants; more specifically a payment towards an alleged debt owned by LVNV, as described in Paragraphs 66-120.

227.   Defendants have knowledge of the benefit (i.e. the money paid by each respective consumer towards the alleged LVNV debt).

228.   Defendants have accepted or retained the benefits conferred (i.e. the above-referenced payment).

229.   While the money goes to the LVNV investors, before the investors receive the money the following is filtered out:  a servicing fee to Resurgent with a portion flowing to SFG and then to Sherman Capital; an incentive managing fee and reimbursement to SCM pursuant to a management servicing agreement with SFG in which SCM provides essentially all management services for SFG with a portion flowing to SFG and Sherman Capital; a portion of the money is reinvested by SCM into the purchase of more data for the collateralized debt obligation to replace the satisfied data (that which was paid); Sherman Capital which contracted with SFG which has contracted with SCM now only earned a commission at time of

issuing of LVNV securities but earns management fees during the life of the collateralized debt obligation by maintaining a market.  The individuals as both owners and employees of SFG, SCM, and Resurgent also receive management fees for the above activities.

230.   Without the false pretense that LVNV was owed a debt, a reasonable consumer would not pay monies to an entity that bought only data about past transactions, but did not own any debt owing from the consumer.

231.   The circumstances are such that it would be inequitable for defendants to retain the benefit of the tens of millions of dollars that they wrongfully collected from Indiana consumers during the period November 2008 through November 15, 2013 .

*Wherefore*, Plaintiffs, on behalf of the Restitution Subclass, request that the Court enter judgment in favor of Plaintiffs and the Restitution Subclass and against Defendants for:

1.  Actual damages, for the total dollars unlawfully collected by Defendants from the members of the Restitution Subclass over the last six years (plus interest);

2.  An order instructing Defendants to disgorge their ill-gotten monies from the Restitution Subclass;

3.  Litigation expenses and costs of this instant suit; and

4.  Such other and further relief as the Court deems proper.

## COUNT VIII
## UNJUST ENRICHMENT
### (All Defendants)

232.    On behalf of Restitution Subclass members Plaintiffs now re-alleges each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein.  Substance prevails over form.

233.    Plaintiff alleges that the Defendants have unjustly retained a benefit to the Plaintiffs' detriment, and that Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

234.    Plaintiffs have suffered a detriment - monies paid & damage to their credit report, as described in Paragraphs 66-120.

235.    Plaintiffs' detriment has a connection between the detriment and the Defendants' retention of the benefit.

236.    The Defendants' retention of Plaintiffs' monies is a detriment to plaintiffs.

237.    Plaintiffs would have acted differently, had they known Defendants had no standing to file a lawsuit or engage in any other collection as a result of Defendants' failure to be licensed, registered, lack of a debt, and legal ownership of the alleged debt.

238.    The transfer of money from plaintiff to defendant in exchange for paying off alleged debt violated the fundamental principles of justice, equity and good conscience so the Defendants' continued retention of money is a detriment.

239.    The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiff's expense in violation of the common law of Indiana.

240.    Plaintiffs are entitled to disgorgement of ill-gotten gains in an amount to be proved at trial.

***Wherefore,*** Plaintiffs, on behalf of the Restitution Subclass, request an Order from the Court requiring Defendants to disgorge all ill-gotten gains acquired from their deceptive illegal conduct and all other recovery necessary in the premises.

## <u>JURY DEMAND</u>

Plaintiffs hereby demands trial by jury on all issues which a jury may lawfully be convened.

Respectfully submitted,

*s/Frederick D. Emhardt*

*Attorneys for Plaintiffs, Andrew Cox, Lucinda Cox, Stephanie Snyder, Eric Cottey, Robert Goodall, and Giche Edison, individually and on behalf of others similarly situated*

George M. Plews, Attorney No. 6274-49
Peter M. Racher, Attorney No. 11293-53
Frederick D. Emhardt, Attorney No. 10952-49
Jeffrey A. Townsend, Atty. No. 14082-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN  46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
        pracher@psrb.com
        femhardt@psrb.com
        jtownsend@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
        boruta17@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May 2014, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/Frederick D. Emhardt*

82

# Exhibit 1

P.O. Box 11209
DEPT #21999
Oaks, PA 19456

**THE BRACHFELD LAW GROUP, PC**

*Received*
*10-14-11 by*
*regular mail.*

October 06, 2011

Current Creditor : LVNV FUNDING LLC
Originator : LVNV Funding LLC
Originator Account # : 4266841195478290
Reference # : 10485822
Total Amount Due: $23,656.51
Amount Enclosed: _____

13558-30257



Andrew H Cox
4451 BROADWAY ST
INDIANAPOLIS, IN 46205-1847

Brachfeld Law Group, P.C.
P.O. BOX 421088
HOUSTON, TX 77242-1088

----------------------------------------------PLEASE RETURN TOP PORTION WITH PAYMENT -----------------------------------------------

Total Due: $23,656.51

Dear Sir/Madam

You qualify for a reduction on your account for a total payment of $8,279.78. That is a savings of $15,376.73. All payments should be payable to the Brachfeld Law Group. Payment must be received in our office by 10/28/2011. If payment is not received by 5 P.M. on that date, this offer is withdrawn. Additionally, you may qualify for a three month payment; however you must contact an office representative to determine if this will apply to you.

If you take advantage of the above settlement offer to avoid future collection activity on your account, upon receipt of the full settlement funds, honored by our bank, we will consider this account resolved. In the event this settlement offer is not accepted, our client reserves the right to offer a different settlement proposal at a later date.

As of the date of this letter, you owe the total amount due listed above. Because of interest, late charges, and other charges that may vary from day to day, the total amount due on the day you pay may be greater. Hence, if you do not accept this offer, and choose to pay at a later date, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write us or call our office toll free at 866-837-4402.

Although we are a law firm, lawyers may also be debt collectors, and we are operating only as a debt collector and not in any legal capacity at this time. At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. Attorneys in this firm are only licensed in California and we do not sue in any other state. Moreover, because we are not acting in any legal capacity at this time, this letter should not be construed as a threat of suit by our client, as no such decision has been made by our client.

| Send your payments to: | Send overnight delivery to: | Send Correspondence to: |
|---|---|---|
| Brachfeld Law Group, P.C. | Brachfeld Law Group, P.C. | Brachfeld Law Group, P.C. |
| P.O. Box 421088 | 800 W. Sam Houston Parkway South | 880 Apollo St. |
| Houston, TX 77242-1088 | Suite 200 | Suite 155 |
| | Houston, TX 77042 | El Segundo, CA 90245 |

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION.**

PAP-581-A-0



**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

IBS02-13558-30257

# NOTICE OF IMPORTANT CONSUMER RIGHTS

**WE ARE REQUIRED TO PROVIDE THE FOLLOWING INFORMATION UNDER STATE LAW FOR THE STATES INDICATED.  THIS IS NOT A COMPLETE LIST OF YOUR RIGHTS BY STATE.  IF YOU DO NOT RESIDE IN ONE OF THESE STATES, YOU MAY STILL HAVE THE SAME OR SIMILAR RIGHTS UNDER FEDERAL OR STATE LAW.**

CALIFORNIA: THE STATE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT AND THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT REQUIRE THAT, EXCEPT UNDER UNUSUAL CIRCUMSTANCES, COLLECTORS MAY NOT CONTACT YOU BEFORE 8 A.M. OR AFTER 9 P.M.  THEY MAY NOT HARASS YOU BY USING THREATS OF VIOLENCE OR ARREST OR BY USING OBSCENE LANGUAGE. COLLECTORS MAY NOT USE FALSE OR MISLEADING STATEMENTS OR CALL YOU AT WORK IF THEY KNOW OR HAVE REASON TO KNOW THAT YOU MAY NOT RECEIVE PERSONAL PHONE CALLS AT WORK.   FOR THE MOST PART, COLLECTORS MAY NOT TELL ANOTHER PERSON, OTHER THAN YOUR ATTORNEY OR SPOUSE, ABOUT YOUR DEBT.   COLLECTORS MAY CONTACT ANOTHER PERSON TO CONFIRM YOUR LOCATION OR ENFORCE A JUDGMENT.  FOR MORE INFORMATION ABOUT DEBT COLLECTION ACTIVITIES, YOU MAY CONTACT THE FEDERAL TRADE COMMISSION AT 1-877-FTC-HELP OR WWW.FTC.GOV.   AS REQUIRED BY LAW, YOU ARE HEREBY NOTIFIED THAT A NEGATIVE CREDIT REPORT REFLECTING ON YOUR CREDIT RECORD MAY BE SUBMITTED TO A CREDIT REPORTING AGENCY IF YOU FAIL TO FULFILL YOUR CREDIT OBLIGATIONS.

NON PROFIT CREDIT COUNSELING SERVICES MAY BE AVAILABLE IN YOUR AREA.

COLORADO: A CONSUMER HAS THE RIGHT TO REQUEST IN WRITING THAT A DEBT COLLECTOR OR COLLECTION AGENCY CEASE FURTHER COMMUNICATION WITH THE CONSUMER.  A WRITTEN REQUEST TO CEASE COMMUNICATION WILL NOT PROHIBIT THE DEBT COLLECTOR OR COLLECTION AGENCY FROM TAKING ANY OTHER ACTION AUTHORIZED BY LAW TO COLLECT THE DEBT.   FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADCMAIN.CTM.

GEORGIA: THIS IS AN ATTEMPT TO COLLECT A CLAIM AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

MASSACHUSETTS: YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT, ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POST MARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST.   YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE COLLECTOR.  YOU MAY CONTACT US BY TELEPHONE AT (888) 856-2120 BETWEEN 8:00 A.M. AND 5:00 P.M. PACIFIC TIME MONDAY-FRIDAY OR IN WRITING AT 880 APOLLO ST., SUITE 155, EL SEGUNDO, CA 90245.

Received 11-25-11

# THE BRACHFELD LAW GROUP, PC

November 9, 2011

Andrew H Cox
4451 Broadway St
Indianapolis IN 46205-1847

Current Creditor : LVNV FUNDING LLC
Originator : Chase Bank USA, N.A.
Originator Account # :
Reference # : 10485822
Total Amount Due: $23,834.47
Amount Enclosed: _____

Brachfeld Law Group, P.C.
P.O. BOX 421088
HOUSTON, TX  77242-1088

----------------------------------------PLEASE RETURN TOP PORTION WITH PAYMENT----------------------------------------

Dear Sir/Madam,

We are in receipt of your request for Validation of the above referenced debt.

Attached hereto is documentation that we are providing to you in response to your request for validation.
A representative will contact you shortly to discuss this matter. Alternatively we would be pleased to have
you contact this office toll free at 888-856-2120 should you wish to resolve this matter.  You may also
send your payments to: The Brachfeld Law Group, P.C., P.O. Box 421088, Houston, Texas 77242-1088.

Very truly yours,

THE BRACHFELD LAW GROUP, P.C.

THIS FIRM IS A DEBT COLLECTOR. WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

# Exhibit 2

**SMALL CLAIMS COMPLAINT**

540

Name <u>LVNV Funding LLC</u>
<u>As Assignee of Citibank</u>
<u>c/o Wright & Lerch</u>
**Address** <u>2001 Reed Road, Suite 100</u>
**City** <u>Fort Wayne</u> **State** <u>IN</u>  **Zip** <u>46815</u>
**Telephone** <u>(260) 423-6655</u>
            Plaintiff,

FILED

2011 APR 19  A 4: 35

ROBIN WEAVER
CLERK
HAMILTON COUNTY COURTS

HAMILTON SUPERIOR COURT 4
One Hamilton County Square, Ste.292
Noblesville, Indiana 46060-2231
Telephone No. (317)776-8260
CAUSE NO. <u>29D04  1104  SC357D</u>

(1)

Attorney (optional) <u>William C Butler</u>
**Address** <u>2001 Reed Road, Suite 100</u>
**City** <u>Fort Wayne</u>  **State** <u>IN</u>  **Zip** <u>46815</u>
**Telephone** <u>(260) 423-6655</u>
**Attorney No.** <u>22296-02</u>

— AGAINST —

**Name** <u>Stephanie D. Snyder</u>
**Address** <u>1707 Ashley Wood Drive, Apt. A</u>
**City** <u>Westfield</u>, **State** <u>IN</u>  **Zip** <u>46074-8618</u>
**Telephone** _____
            Defendant,

Service By:
(XXX   )Sheriff of <u>HAMILTON</u> County
(_____)Certified Mail

**Exhibit B**

<u>**NOTICE OF CLAIM**</u>

TO THE DEFENDANT FROM THE CLERK OF THE COURTS:

    You have been sued by the Plaintiff whose name appears above. You must appear in the Hamilton Superior Court 4 in person or with your attorney on _____June 9_____, 2011, at 9:30 A.M. for a hearing. The Plaintiff may be given a default judgment against you if you fail to appear at that time.
The Plaintiff's Claim is for:

[XXXX] Account or Note (copy attached)       [____] Rent (Lease attached)       [____] Wages
[____] Contract (copy attached)       [____] Other (specify) _____

Defendant is indebted to Plaintiff on an outstanding balance of $3637.05, with interest thereon at the statutory rate of 8.0000% per annum to the date of judgment, plus court costs, and if applicable, sheriff's fee.

2011 APR 21  AM 8: 35
HAMILTON COUNTY
RECEIVED

_____
William C Butler, #22296-02
Plaintiff (attorney)

**IMPORTANT INFORMATION CONCERNING THIS CLAIM**

    1. The Plaintiff or the Defendant may represent themselves individually or be represented by an attorney. A Small Claims Litigant's Handbook is available at the Clerk and Court Office for each party's benefit. The Plaintiff and Defendant should bring to trial all documents in their possession or under their control concerning this claim. The Court usually does not hear a contested trial on the first hearing date.
    2. If the Defendant does not wish to dispute the Plaintiff's claim, the Defendant still may wish to appear to allow the Court to establish a method for paying the judgment.

## AFFIDAVIT OF DEBT

Comes now affiant, and states:

1. I, Tobie Griffin, am an employee of Resurgent Capital Services, LP, servicing agent for Plaintiff, and I am authorized to make this affidavit.

2. I am of adult age and am fully authorized by Plaintiff to make the following representations which are true according to documents kept in the normal course of Plaintiff's business and/or my personal knowledge. I am familiar with the recordkeeping practices of Plaintiff.

3. Plaintiff has obtained this debt from Citibank and the original owner of this debt was Citibank.

4. Stephanie D Snyder, the Defendant, has an unpaid balance of $3,637.05 on account plus interest at a rate of 8% from 10/27/2006 ("Charge Off Date"). This account was opened on 08/18/2003. The last payment from Defendant was received on 02/24/2006 in the amount of $86.00.

5. The account which is the subject of the Complaint is a credit account.

6. This account balance includes:
   a. Late fees in the amount of $ 0.00 accruing from Charge Off Date
   b. Interest at a rate of 8% beginning from Charge Off Date.
   c. Plaintiff is not seeking attorney's fees.

7. Plaintiff believes that Defendant is not a minor or an incompetent individual.

I swear or affirm under the penalties of perjury that the foregoing representations are true.

Tobie Griffin, Affiant

2010018061

STATE OF INDIANA                    IN THE HAMILTON SUPERIOR COURT
                    SS:
COUNTY OF HAMILTON                  CAUSE NO.


LVNV Funding LLC
      Plaintiff,

vs.                                  AFFIDAVIT OF NON MILITARY SERVICE

Stephanie D. Snyder
      Defendant(s).


Comes now William C. Butler who having been duly sworn, states that he, as attorney for plaintiff,

has caused diligent search to be made regarding the defendant being in the military service of the

United States and no such records can be found.

I affirm, under the penalties of perjury, that the foregoing representations are true.

                                Respectfully submitted
                                Wright & Lerch


                                By:
                                William C. Butler, 22296-02
                                2001 Reed Road, Ste 100
                                Fort Wayne, IN 46815
                                260-423-6655
                                Attorney for Plaintiff

STATE OF INDIANA   )
                ) SS:
                )
COUNTY OF ALLEN   )

Subscribed and sworn to before me, a Notary public in and for said County and State this 25th day of
March 2011.

                                Kristine Ackerman, Notary Public

My Commission Expires:

August 21, 2013                Resident of Indiana County of Allen
2010018061

CONFIDENTIAL                           RESURGENT - 000296

Request for Military Status                                                          Page 1 of 2

Department of Defense Manpower Data Center                          Mar-25-2011 08:38:28

 Military Status Report
Pursuant to the Service Members Civil Relief Act

| ← Last Name | First/Middle | Begin Date | Active Duty Status | Active Duty End Date | Service Agency |
|------------|-------------|-----------|-------------------|---------------------|----------------|
| SNYDER | STEPHANIE | Based on the information you have furnished, the DMDC does not possess any information indicating the individual status. | | | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Service Members Civil Relief Act (50 USC App. §§ 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person is on active duty and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. §521(c).

If you obtain additional information about the person (e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects **active duty status** including date the individual was last on active duty, if it was within the preceding 367 days. For historical information, please contact the Service SCRA points-of-contact.

**CONFIDENTIAL**                          **RESURGENT - 000297**

IN THE HAMILTON SUPERIOR COURT
COUNTY OF HAMILTON, STATE OF INDIANA

LVNV Funding LLC,
Plaintiff,

vs.

Stephanie D. Snyder
***-**-1539
1707 Ashley Wood Drive, Apt. A
Westfield, IN 46074-8618
Defendant.
and
Giant Eagle
ATTN: PAYROLL
5220 Mahoning Ave.
Austintown OH 44515
Garnishee-Defendant.

CAUSE NO.: 29D04-1104-SC-3570

VERIFIED MOTION FOR PROCEEDING
SUPPLEMENTAL, ORDER THEREON, AND
INTERROGATORIES TO GARNISHEE DEFENDANT
NOTICE: I.C. 34-25-3-3 **Provides that
the Garnishee Defendant is accountable
to the Plaintiff for the monies in the
Garnishee Defendant's hands and/or
payable to the Defendant from the date
of service of these interrogatories.

Plaintiff, by counsel, states to the best of his knowledge:
1.  Plaintiff owns the judgment rendered in this cause against the Defendant.
2.  Plaintiff's judgment is unsatisfied, with a balance due, interest and costs.
3.  Plaintiff has no cause to believe that levy of execution against the Defendant will satisfy the judgment.
4.  Garnishee Defendant has or will have in its possession the following personal property of Defendant, to wit: wages,
salaries, commissions, earnings, income or savings/retirement funds.
   Plaintiff requests the Court to issue an order notifying Defendant of hearing on these proceedings and requiring the
Garnishee Defendant to answer interrogatories concerning the Defendant's property in his/her/its possession.

I swear or affirm, under the penalty of perjury, that the foregoing representations are true.

William C. Butler, #22296-02
Wright & Lerch
2001 Reed Road, Suite 100
Fort Wayne IN 46815
Attorney for Plaintiff
(260) 423-6655

ORDER TO DEFENDANT AND NOTICE AND SUMMONS TO GARNISHEE DEFENDANT
Plaintiff files verified motion for proceeding supplemental and interrogatories; motion granted.
Defendant is ordered to appear in this Court located at 292 One Hamilton County Square Noblesville IN 46060 on the
26 day of Oct , 20 11 at 8:30a . Garnishee Defendant is ordered by the Court to answer the interrogatories
on or before 10 12 11 .

Date: _____          _____
                           Judge, Hamilton Superior Court

SERVICE OF PROCESS
I certify that a copy of this Order was mailed, postage prepaid, addressed to the Defendant and a copy mailed certified
mail, return receipt requested, addressed to the Garnishee Defendant, this _____ day of _____, 20___.

Date Mailed: _____          _____
                                     Clerk of Court

2010018061

**CONFIDENTIAL**                    **RESURGENT - 000314**

IN THE HAMILTON SUPERIOR COURT
COUNTY OF HAMILTON, STATE OF INDIANA

LVNV Funding LLC
Plaintiff,

CAUSE NO.: 29D04-1104-SC-3570

vs.

Stephanie D. Snyder
***-**-1539
1148 Canterbury Drive
Greenwood, IN 46143-2770
Defendant,
and
Indiana University
ATTN: PAYROLL
400 E. 7th Street, Room 533
Bloomington, IN 47405
Garnishee-Defendant,

VERIFIED MOTION FOR PROCEEDING
SUPPLEMENTAL, ORDER THEREON, AND
INTERROGATORIES TO GARNISHEE DEFENDANT
NOTICE: I.C. 34-25-3-3 **Provides that
the Garnishee Defendant is accountable
to the Plaintiff for the monies in the
Garnishee Defendant's hands and/or
payable to the Defendant from the date
of service of these interrogatories.

FILED

JUN 22 2012

*Peggy Beaver*
CLERK OF THE
HAMILTON SUPERIOR COURT

Plaintiff, by counsel, states to the best of his knowledge:
1. Plaintiff owns the judgment rendered in this cause against the Defendant.
2. Plaintiff's judgment is unsatisfied, with a balance due, interest and costs.
3. Plaintiff has no cause to believe that levy of execution against the Defendant will satisfy the judgment.
4. Garnishee Defendant has or will have in its possession the following personal property of Defendant, to wit: wages, salaries, commissions, earnings, income or savings/retirement funds.
   Plaintiff requests the Court to issue an order notifying Defendant of hearing on these proceedings and requiring the Garnishee Defendant to answer interrogatories concerning the Defendant's property in his/her/its possession.

I swear or affirm, under the penalty of perjury, that the foregoing representations are true.

William C. Butler, #22296-02
Wright & Lerch
2001 Reed Road, Suite 100
Fort Wayne, IN 46815
Attorney for Plaintiff
(260) 423-6655

FILED

JUN 2 6 2012

CLERK OF THE
HAMILTON SUPERIOR COURT

ORDER TO DEFENDANT AND NOTICE AND SUMMONS TO GARNISHEE DEFENDANT
Plaintiff files verified motion for proceeding supplemental and interrogatories; motion granted.
Defendant is ordered to appear in this Court located at One Hamilton Square, #292, Noblesville, IN 46060 on the _____ day of _____ 2012 at 8.30a. Garnishee Defendant is ordered by the Court to answer the interrogatories on or before ___7\18\12___

Date: JUN 2 6 2012

*J. Richard Campbell*
Judge, Hamilton Superior Court

SERVICE OF PROCESS
I certify that a copy of this Order was mailed, postage prepaid, addressed to the Defendant and by certified mail, return receipt requested, addressed to the Garnishee Defendant, this _____ day of _____, 20__

Date Mailed: _____

2010018061

Exhibit C

# Exhibit 3

| STATE OF INDIANA | ) | IN THE HENDRICKS SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF HENDRICKS | ) | CAUSE NO. |

32003 1312 CC 1233

| LVNV Funding LLC | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| Eric Cottey | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## COMPLAINT

Comes now plaintiff, LVNV Funding LLC, by counsel, and for its cause of action against the defendant, Eric Cottey , states as follows:

1. The plaintiff is a limited liability company organized pursuant to the laws of a state other than Indiana.

2. Defendant is believed to be a resident of Hendricks County, Indiana.

3. The original credit grantor is HSBC Bank Nevada National Association, who issued credit to the defendant under a Yamaha-Rbp Tier 3 branded credit card.

4. The original credit grantor sold or assigned defendant's debt to the plaintiff for valuable consideration.

5. Defendant is in default for failure to pay the plaintiff and the original credit grantor.

6. Defendant is indebted to Plaintiff on an oustanding balance of $13928.10, plus interest and court costs.

7. Demands for payment have been made upon the defendant.

WHEREFORE, plaintiff demands judgment against the defendant in the sum of $13928.10, interest, costs of this action and all other proper relief.

Respectfully submitted,
Wright and Lerch

By:_____
Ross J Lerch, #30732-49
2001 Reed Road, Suite 100
Fort Wayne, IN 46815
(260) 423-6655
Attorney for Plaintiff

2012011887

STATE OF INDIANA          IN THE HENDRICKS SUPERIOR COURT

           SS:

COUNTY OF HENDRICKS        CAUSE NO.


LVNV Funding LLC

        Plaintiff,

vs.

                         AFFIDAVIT OF NON MILITARY SERVICE

Eric Cottey

       Defendant(s).


Comes now the undersigned, who having been duly sworn, states that he, as an attorney for plaintiff, has

caused diligent search to be made regarding the defendant being in the military service of the United States

and no such records can be found.

I affirm, under the penalties of perjury, that the foregoing representations are true.


                        _____

                        Affiant


STATE OF INDIANA     )

                    ) SS:

                    )

COUNTY OF ALLEN     )

Subscribed and sworn to before me, a Notary public in and for said County and State, this December 5, 2013.

                                  Krystal Reppen, Notary Public

                                  My Commission Expires: August 6, 2021

                                  A resident of Indiana County of Huntington

2012011887


                             **KRYSTAL REPPEN**
                            **Notary Public- Seal**
                            **State of Indiana**
                       **My Commission Expires Aug 6, 2021**

Department of Defense Manpower Data Center

Results as of : Dec-05-2013 12:48:13

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>COTTEY</u>

First Name: <u>ERIC</u>

Middle Name:

Active Duty Status As Of: <u>Dec-05-2013</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350



EXHIBIT A (Continued)

ASSIGNMENT AND BILL OF SALE

HSBC Receivables Acquisition Corporation (USA) IV, (hereinafter called "Seller") has entered into an Account Purchase and Sale Agreement as of October 1, 2010 ("Agreement") as amended for the sale of Charged Off Receivables described in Paragraph 1 thereof to Sherman Originator III, LLC (hereinafter called "Purchaser"), upon the terms and conditions set forth in that Agreement.

NOW THEREFORE, for good and valuable consideration, Seller hereby sells, assigns, and transfers to Purchaser, its successors and assigns, all of Seller's rights, title, and interest in each and every one of the Charged Off Receivables described in the Agreement and in Exhibit A attached hereto.

Purchaser and Seller agree that the Purchase Price shall be as stated in Paragraph 3 of the Agreement.

IN WITNESS WHEREOF, Seller has signed and delivered this instrument on the 20th day of October, 2010.

HSBC Receivables Acquisition
Corporation (USA) IV

Paul E Stanborough
Vice President

## Declaration of Account Transfer

Sherman Originator III LLC ("SOLLC III"), without recourse, to the extent permitted by applicable law, transferred, sold, assigned, conveyed, granted and delivered to Sherman Originator LLC ("SOLLC") all of its right, title and interest in and to the receivables and other assets (the "Assets") identified on Exhibit A, in the Receivable File dated October 13, 2010 delivered by HSBC Bank Nevada, N.A. and HSBC Receivbles Acquisition Corporation (USA) IV on October 20, 2010 for purchase by SOLLC III on October 20, 2010.  The transfer of the Assets included electronically stored business records.

SOLLC, subsequent to the above mentioned transfer, transferred, sold, assigned, conveyed, granted and delivered to LVNV Funding LLC ("LVNV"), the above mentioned Assets.  The transfer of the Assets included electronically stored business records.

Sherman Originator III LLC
a Delaware Limited Liability Company

By:_____
    Name:  Jon Mazzoli
    Title:   Director

Sherman Originator LLC
a Delaware Limited Liability Company

By:_____
    Name:  Kevin Branigan
    Title:   Authorized Representative

LVNV Funding LLC
a Delaware Limited Liability Company

By:_____
    Name:  Les Gutierrez
    Title:   Authorized Representative

## AFFIDAVIT OF DEBT

Comes now affiant, and states:

1. I, Juli OBrien, am an employee of Resurgent Capital Services, LP, servicing agent for Plaintiff, and I am authorized to make this affidavit.

2. I am of adult age and am fully authorized by Plaintiff to make the following representations which are true according to documents kept in the normal course of Plaintiff's business and/or my personal knowledge. I am familiar with the recordkeeping practices of Plaintiff.

3. Plaintiff has obtained this debt from HSBC and the original owner of this debt was HSBC Bank Nevada National Association.

4. Eric Cottey, the Defendant, has an unpaid balance of $13,928.10 on account, plus interest at a rate of 8.00% from 9/30/2010. This account was opened on 11/1/2006. The last payment from Defendant was received on 2/28/2010 in the amount of $350.00.

5. The account which is the subject of the Complaint is a credit account.

6. This account balance includes:
   a. Late fees in the amount of $ 0.00 accruing from 9/30/2010.
   b. Interest at a rate of 8.00% beginning from 9/30/2010.
   c. Plaintiff is not seeking attorney's fees.

7. Plaintiff believes that Defendant is not a minor or an incompetent individual.


I swear or affirm under the penalties of perjury that the foregoing representations are true.


_Juli OBrien_

Juli OBrien, Affiant


The foregoing affidavit was signed to and subscribed before me this Wednesday, June 27, 2012.



(Notary Public)


2012011887

Tobie Griffin
Notary Public
State of South Carolina
My Comm. Exp. 00/00/0000

# Exhibit 4

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF INDIANA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>**Goodall, Robert James** | Case Number:<br>1014887 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>LVNV Funding LLC | [X] Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br>**Resurgent Capital Services**<br>PO Box 10587<br>Greenville, SC  29603-0587<br>Telephone number: (864) 235-7336 | Court Claim Number: 9<br>*(If known)*<br><br>Filed on: 2-10-11 |
| Name and address where payment should be sent (if different from above):<br><br>Telephone number: | [ ] Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>[ ] Check this box if you are the debtor or trustee in this case. |

| 1. Amount of Claim as of Date Case Filed: $7,904.41 | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

[ ] Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** MASTERCARD

**3.** Last four digits of any number by which creditor identifies debtor: 0369

    **3a.** Debtor may have scheduled account as:

**4. Secured Claim**
  Check the appropriate box if your claim is secured by a lien on property or a right of setoff and   provide the requested information.

  **Nature of property or right of setoff:** [ ] Real Estate   [ ] Motor Vehicle   [ ] Other
**Describe:**

  **Value of Property: $**    **Annual Interest Rate      %**

  **Amount of arrearage and other charges as of time case filed included in secured claim,**

  **if any: $**    **Basis for perfection**

  **Amount of Secured Claim:**    **Amount Unsecured:**

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Specify the priority of the claim.**

[ ] Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

[ ] Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

[ ] Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

[ ] Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

[ ] Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

[ ] Other – Specify applicable paragraph of 11 U.S.C. §507(a)(__).

    **Amount entitled to priority:**

    $

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 02/10/2011 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Joyce Montjoy*<br>Joyce Montjoy, Bankruptcy Recovery Manager of Resurgent Capital Services as servicing agent for LVNV Funding LLC | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



P.O. Box 10587
Greenville, SC 29603-0587

Phone: (864) 235-7336
Fax: (864) 248-8790
e-Mail: askbk@resurgent.com

**Proof of Claim – Account Detail**

| Borrower Information | |
|---|---|
| Borrower Name: | Goodall,Robert James |
| SSN (redacted): | 9343 |
| Address: | PO Box 269028 |
| City: | Indianapolis |
| State, Zip: | IN 46226-9028 |

| Bankruptcy Case Information | |
|---|---|
| SOUTHERN DISTRICT of INDIANA | |
| Trustee Name: | Robert Brothers |
| Bankruptcy Case Number: | 1014887 |
| Chapter: | 13 |

| Account Information | |
|---|---|
| Account Number (redacted): | 0369 |
| Amount due as of the date the bankruptcy case was filed**: | $7,942.52 |
| Charged off by original creditor on: | 10/30/2009 |
| Last transaction date: | 11/11/2008 |

| Creditor Information | |
|---|---|
| Current Creditor*: | LVNV Funding LLC |
| Purchased by Creditor from: | Chase Bank USA, N.A. |
| Alternative names (if any) for this creditor: | Chase Bank USA, N.A. / HERITAGE FIR |

*Resurgent Capital Services services this account on behalf of the current creditor. Please send any bankruptcy or related notices on this account to our attention at the following address:

Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587
Telephone No.      (864) 235-7336

**Information on this account was obtained from the data files received from the assignor and other information such as Bankruptcy Court records.

The assignor has verified that the balance recorded above is the balance of the account as of the filing date of the bankruptcy and does not include post petition interest, late fees, return check fees, charges representing credit protection plan fees or insurance fees or other charges.

**Claim 10**   **RESURGENT CAPITAL SERVICES**
PO BOX 10587
GREENVILLE SC 29603
(877) 264-5884

(Use CTRL-P to Print this Page)
Close Window

Disbursements to this Claim



## CLAIM DETAIL

| | |
|---|---|
| Case Number | 1014887 |
| Creditor | RESURGENT CAPITAL SERVICES |
| Trustee's Claim Number | 10 |
| Court's Claim Number | |
| Claim Type | U - UNSECURED (U) |
| Claim Filed Date | |
| Mortgage Due Date | |

## CLAIM AMOUNTS

| | |
|---|---|
| Claimed Amount | $7,904.41 |
| Scheduled Amount | $7,904.00 |
| Amount Paid Outside | $0.00 |
| Monthly Payment | $0.00 |
| Principal Owed | $0.00 |
| Principal Paid | $7,904.41 |
| Principal Due | $0.00 |
| Interest Rate | 0.00 |
| Interest Paid | $0.00 |
| Interest Due | $0.00 |
| Collateral Value | $0.00 |
| Collateral Description | |
| Limit | $0.00 |
| Plan Code | $0.00 |
| Percent Allowed | 100.00 |
| Months to Calculate | 0.00 |

### PAYMENT HISTORY FOR CLAIM 10 - RESURGENT CAPITAL SERVICES

(Latest Payments First)          Insurance-          Prev. Cred-

| Disb Date | Check Number | Payee Name | Type | Amount |
|---|---|---|---|---|
| 4/4/2014 | 653189 | RESURGENT CAPITAL SERVICES | AMOUNT DISBURSED TO CREDITOR | $7,252.66 |
| 3/7/2014 | 650614 | RESURGENT CAPITAL SERVICES | AMOUNT DISBURSED TO CREDITOR | $651.75 |

## CLAIM FLAGS

| | |
|---|---|
| Payee Level | 33 |
| Comment | |
| Account Number | 0369 |
| No Cost | |
| No Check | |
| Delete | |
| Stop Disbursement | |
| Continuing | |
| Special | |

## CREDITOR INFORMATION

| | |
|---|---|
| Creditor Name | RESURGENT CAPITAL SERVICES |
| Address 1 | PO BOX 10587 |
| Address 2 | |
| Address 3 | GREENVILLE SC |
| Zip Code | 29603-0587 |
| Contact Name | |
| Phone Number | (877) 264-5884 |
| | 084374 |

# Exhibit 5

PO Box 923748
Norcross, GA 30010-3748
**RETURN SERVICE REQUESTED**

**September 26, 2012**

**VITAL RECOVERY SERVICES, INC.**
PO Box 923748
Norcross, GA 30010-3748
**(800)797-6093**

**Origional Creditor: ARROW FINANCIAL SERVICES, LLC**
**Current Creditor: LVNV Funding LLC**

**New Account #: 016404627**
**Original Account#: 0000007357027197**
**Last Payment Date: 00/00/0000**
**Total Balance Due: $626.88**

00001533  V01

0033          016404627

GICHE EDISON
8042 E 34TH ST
INDIANAPOLIS IN  46226-6473

To make a payment online by check or
credit card: **https://pay.vitalrecovery.com/**
Sign on using payment id: 01640462730

### YOUR ACCOUNT HAS BEEN PURCHASED AND TURNED OVER TO US FOR COLLECTION

Dear GICHE EDISON:

Please be advised that LVNV Funding LLC, the Current Creditor-Debt Purchaser, has purchased the above referenced CONSUMER LOAN account from ARROW FINANCIAL SERVICES, LLC. LVNV Funding LLC has placed your account with this agency for collection. LVNV Funding LLC has advised us that interest will continue to accrue on your account as provided for in your agreement with the original credit grantor.

As of the date of this letter, you owe $626.88. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, call (800)797-6093.

We are offering you the opportunity to settle the account noted above for $313.44, which is only 50% of the total balance. This offer will remain open for forty days from the date of this letter. If you would like to accept this offer after the initial forty day period, please contact us. This offer does not change your rights described below or the time period in which you may exercise these rights. We are not obligated to renew this offer.

Unless you notify Vital Recovery Services, Inc. within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, Inc. will assume this debt is valid. If you notify Vital Recovery Services, Inc. in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, Vital Recovery Services, Inc. will obtain verification of the debt or obtain a copy of a judgment and will mail you a copy of such judgment or verification. If you request of Vital Recovery Services, Inc. in writing within 30 days after receiving this notice Vital Recovery Services, Inc. will provide you with the name and address of the original creditor, if different from the current creditor.

For further information or to pay by phone, please call Vital Recovery Services, Inc. at  (800)797-6093.

### This letter is an attempt to collect a debt by a debt collector.  Any information obtained will be used for that purpose.  This communication is from a debt collector.

---

✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
⬆  **Detach Here And Remit Lower Portion With Payment In The Enclosed Reply Envelope**  ⬆

Make check payable to:

**VITAL RECOVERY SERVICES, INC.**

9282012

**NEW ACCT #:** 016404627
**TOTAL BALANCE DUE:** $626.88

Amount Paid: _____

Home Phone: _____
Daytime Phone: _____

0033  V01          016404627

**VITAL RECOVERY SERVICES, INC.**
**PO BOX 923747**
**NORCROSS, GA 30010-3747**

GICHE EDISON
8042 E 34TH ST
INDIANAPOLIS IN  46226-6473

☐  Check here if address has changed.
    Please note changes on reverse side.

# Exhibit 6

LVNV Funding LLC - Credit Rating - Moody's

Site Tour   About Moody's   Regulatory Affairs   Careers ·   Contact Us   Help

Find ratings, research, analysts and more    GO

Welcome Matt Boruta  M      Profile

**Research & Ratings**      **Products & Solutions**      **News & Events**

My Portfolios   My Alerts   My Events   Log Out

# LVNV Funding LLC
Moody's Org ID: 400039347

| | | |
|---|---|---|
| Closing Date: **08 Apr 2005** | Market Segment: **Structured Finance** | **Analyst** |
| Pay Frequency: **Not Applicable** | Collateral Type: **ABS - Consumer Loans** | |
| | Location of Assets (at Issuance): **UNITED STATES** | Lead Monitoring Analyst  Matias Langer |
| Originator: **Sherman Capital Markets LLC** | | |
| Trustee: **Not Applicable** | | |
| Primary Servicer: **Not Applicable** | | |
| Underwriter: **Direct Offering, Harris Nesbitt Corp.** | | |

Research      **Ratings**      Related Parties

Go to ABS Industry Page

Tranche List

[ ]Export  Results: 1

| Debt ID | Tranche ▲ | Rating Description | Current Rating | Indicator | Watch Status | Last Rating Action | Rating Date | Face Amount(Mil) Original | Current | Maturity | Currency |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MDY:808912506 | Facility Note | PASS-THRU CTFS | Baa2 | (sf) | Not on Watch | Downgrade | 18 Feb 2009 | 784 | 0.0 | 16 Nov 2035 | USD |

**Tranche Detail: MDY:808912506**

| | | | |
|---|---|---|---|
| Coupon Type | | Most Recently Reported Face Amount (Mil) | 0.0 |
| Coupon | | Reporting Date of Face Amount | |
| Base Rate | N/A | Structure | |
| Spread to Base Rate | 0.0 | Tax Election | Debt |
| Support | No | Releasing Office | New York - (Moody's Investors Service, Inc.) |
| Support Type | | Endorsement | EU Endorsed |
| Support Provider | | | |

### RATING HISTORY



Rating History

[ ]Export

| Rating Date | Rating | Indicator | Rating Action |
|---|---|---|---|
| 18 Feb 2009 | Baa2 | (sf) | Downgrade |
| 04 Nov 2008 | ON WATCH | | Possible Downgrade |
| 18 Nov 2005 | A2 | (sf) | New |

*For credit ratings that are derived exclusively from an existing credit rating of a program, series, category/class of debt, support provider or primary rated entity, or that replace a previously assigned provisional rating at the same rating level, Moody's publishes a rating announcement on that series, category/class of debt or program as a whole, on the support provider or primary rated entity, or on the provisional rating, but often does not publish a specific rating announcement on each subsequent bond or note for which the credit rating is derived from the existing credit rating. Rating announcements are usually press releases classified as Rating Actions on www.moodys.com. Please refer to the Research tab on the issuer/entity page for the rating announcement.*

Terms of Use · Privacy Policy · Proprietary Rights     Home · Research & Ratings · Products & Solutions · News & Events · Careers · Contact Us

© 2012 Moody's Investors Service. Inc., Moody's Analytics, Inc. and/or their affiliates and licensors  All rights reserved.

Regional Sites:  **Global**   

LVNV Funding LLC Credit Rating - Moody's

Find ratings, research, analysts and more    GO

**Research & Ratings**    **Products & Solutions**    **News & Events**

# LVNV Funding LLC

Moody's Org ID: 720407008

|  |  |  |  |  |
|---|---|---|---|---|
| Closing Date: | 10 Jul 2007 | Market Segment: | Structured Finance | Analyst |
| Pay Frequency: | Monthly | Collateral Type: | ABS - Consumer Loans | |
| | | Location of Assets (at issuance): | UNITED STATES | Lead Monitoring Analyst: Matias Langer |
| Originator: | Not Applicable | | | |
| Trustee: | Not Applicable | | | |
| Primary Servicer: | Not Applicable | | | |
| Underwriter: | Direct Offering | | | |

Research    **Ratings**    Related Parties

Go to ABS Industry Page

Tranche List

Export   Results: 1

| Debt ID | Tranche | Rating Description | Current Rating | Indicator | Watch Status | Last Rating Action | Rating Date | Face Amount(Mil) Original | Current | Maturity | Currency |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MDY:820409049 | Cl. B | COLL NOTES | B2 | (sf) | Not on Watch | Downgrade | 18 Feb 2009 | 117 | 0.0 | 16 Nov 2035 | USD |

**Tranche Detail: MDY:820409049**

|  |  |  |  |
|---|---|---|---|
| Coupon Type | | Most Recently Reported Face Amount (Mil) | 0.0 |
| Coupon | | Reporting Date of Face Amount | |
| Base Rate | N/A | Structure | |
| Spread to Base Rate | 0.0 | Tax Election | Debt |
| Support | No | Releasing Office | New York - (Moody's Investors Service, Inc.) |
| Support Type | | Endorsement | EU Endorsed |
| Support Provider | | | |

**RATING HISTORY**



| Rating Date | Rating | Indicator | Rating Action |
|---|---|---|---|
| 18 Feb 2009 | B2 | (sf) | Downgrade |
| 04 Nov 2008 | ON WATCH | | Possible Downgrade |
| 24 Jul 2007 | Ba2 | (sf) | New |

For credit ratings that are derived exclusively from an existing credit rating of a program, series, category/class of debt, support provider or primary rated entity, or that replace a previously assigned provisional rating at the same rating level, Moody's publishes a rating announcement on that series, category/class of debt or program as a whole, on the support provider or primary rated entity, or on the provisional rating, but often does not publish a specific rating announcement on each subsequent bond or note for which the credit rating is derived from the existing credit rating. Rating announcements are usually press releases classified as Rating Actions on www.moodys.com. Please refer to the Research tab on the issuer/entity page for the rating announcement.

© 2012 Moody's Investors Service, Inc., Moody's Analytics, Inc and/or their affiliates and licensors  All rights reserved.      Regional Sites: Global

**Exhibit** E

# SHERMAN FINANCIAL GROUP

Presentation for

# RADIAN'S INVESTOR DAY

November 9, 2006

# CONTENTS

## Sherman Overview

Market Overview

Sherman Results

Appendix

- Confidential

# Overview – Sherman's Business

**Profit from Understanding the Distressed Consumer Debtor**

**Buyer:** Sherman is the nation's largest unsecured distressed debt buyer.



**Originator:** With the acquisition of a national bank, Sherman is now a leading nationwide issuer of sub-prime credit cards.



118

# Overview - How We Generate Earnings

| Revenue & Benefits | Expense |
|---|---|

**Portfolio Purchase**

Revenue & Benefits:
- Recoveries in excess of purchase price
- Contractual payments from bankruptcy plans
- Interest, fee income and principal payments on Ascent cards
- Scalable business platform

Expense:
- Amortization of purchase price (non cash)
- Variable cost of third party servicing
- Overhead limited to cost of internal due diligence to evaluate new transactions and monitor performance of servicers

**Direct Originations**

Revenue & Benefits:
- Net interest income from performing credit cards
- Annual cardholder and late payment fees
- Development of consumer lending franchise
- Scalable origination platform
- OCC regulatory stamp of approval

Expense:
- Direct mail (variable) and other origination costs
- In-house servicing costs are fixed but efficiency improves with growth
- Reserves for non-performing accounts

**3rd Party Servicing**

Revenue & Benefits:
- Fee revenues generated for successfully managed bankruptcy plans and balance transfer accounts
- Improves and deepens relationships with portfolio owners (banks, retailers, finance companies)
- Increases knowledge of asset performance without incremental capital exposure
- Enhances potential future portfolio acquisition opportunities through servicing relationships

Expense:
- Marginal increase of in-house servicing cost

119

# Overview – What We Do

**Sherman's Approach to Consumer Debt**



**120**

# Overview - Current Asset Composition



Since inception, Sherman has invested over $2.6BN and recovered over $3.8BN in distressed and sub-performing debt, representing over $46BN in face amount and more than 25MM accounts.

# S Overview – Why Sherman?

## Competitive Advantages

Sherman Financial Group is a full service provider of consumer finance products and services, including purchasing and servicing all types of distressed and bankrupt consumer debt, as well as issuing credit cards. Sherman's competitive advantages include the following:

## 1. Intellectual Capital

| Resource | Benefit |
|---|---|
| **22  Person Front Office**<br>Average of 18 years experience managing relationships, analyzing, pricing, financing, and closing distressed consumer debt deals, as well as proven ability to create value through investments in new business opportunities. | Ability to dominate the distressed debt market through closely maintained relationships with issuers, the creation of innovative structures to meet mutual goals, and the ability to execute transactions quickly and efficiently. Ability to create opportunities that add value while minimizing downside risk. |
| **Senior Operations Management Team**<br>A seasoned group of senior operating personnel with experience not only in collections, but also in a wide array of operating companies. | Ability to quickly add required operating expertise in recovery services of all asset types due to a well managed, professionally run, and scalable operating company with a strong culture. |
| **Credit Origination Management Team**<br>A group of senior banking executives with a proven track record in effectively working with regulators while also providing valuable products to sub-prime consumers. | Sherman has the only OCC regulated nonprime credit card bank in the U.S., which provides a scalable business platform to grow products and services that can be offered to consumers. |
| **100  Person Technology Group**<br>A centralized effort, supporting both the front office as well as all operations infrastructure. | Ability to easily handle all IT requirements, including internal and external reporting requirements, data exchange with issuers, and support of front office analytics through extensive database management and sophisticated model development. |

**122**

# S Overview – Why Sherman?

## 2. Financial Resources

| Resource | Benefit |
|---|---|
| **Partnership with MGIC & Radian**<br><br>**Committed Financing Facilities**<br><br>**Cash Flow** | $222MM in capital and over $1.1BN in financing lines gives Sherman significant financial resources and flexibility.  The continued involvement and oversight of MGIC and Radian add to Sherman's credibility within the industry.<br><br>A current portfolio run rate of over $155MM in monthly gross cash flow provides Sherman with a consistent source of internally generated capital for growth. |

## 3. Operating Capacity

| Resource | Benefit |
|---|---|
| **Resurgent Capital Services**<br>Proprietary servicing operations include a fully automated state of the art bankruptcy operation liquidating both owned and third party assets. Integration with charge-off collections allows for a lifecycle approach to recoveries. | Sherman's approach to recoveries ensures maximum liquidations while complying with applicable laws and providing the flexible operating capacity to allow for opportunistic portfolio purchases of varying size and scale. |
| **Resurgent Recovery Management**<br>The largest outsourcer of distressed consumer paper in the US with a staff of 175 people and over 15 million accounts placed with balances of over $22BN. | |
| **Origination Platform**<br>A leading issuer of sub-prime credit cards with over 1,400,000 active accounts with principal receivables balances of over $565MM. | Sherman's credit card origination and servicing platform can be leveraged to facilitate future growth. |

**123**

# Overview – Credit Card Originations

**The Bank Offers Qualified Customers the Opportunity to Regain Access to Credit.**

Sherman has 2.4 million+ customers that have consistently made payments.

Together, Sherman and the bank help this underserved population…

Sherman provides capital enabling the bank to continue to grow its credit card portfolio.

Sherman's performing customers have made consistent payments on…
- Bankruptcy plans (1.5 million)
- Consumer credit counseling plans (25,000)
- Performing/Sub-performing accounts (100,000)
- Payment plan arrangements (600,000)
- "Ascent Card" for credit rehabilitation customers (175,000)

## Sherman Financial Group

- **Debtors have made consistent payments over an extended period of time.**
- **They have demonstrated a desire to re-establish their credit.**
- **However, access to credit remains difficult.**

**2.4 Million Paying Customers**

Offer customers that qualify a bank card.

**13 Million Additional Customers**

As other customers qualify, provide them with access to the same opportunity.

Bank's Credit Card Program
- Leading Issuer of sub-prime credit cards (1.3MM)
- Customer friendly approach to impaired borrowers' credit rehabilitation
- Provide customers conservative credit line increases & graduation programs
- Systems and technology to handle the high touch needs of customers

## Bank

Bank's Customer Characteristics
- Customer has little or no access to credit
- Lower to Middle Income
- Average balance is $420

Many qualify for a bank credit card.

…and continue to provide the same offer to future qualifying customers.

The bank operates as a credit card bank only, accepting no deposits and retaining no credit card assets on its books.

124

# S  Overview – Our Affiliates

 

## Corporate Governance

  &  

### Oversight

**Jeffrey Lane**, SVP, General Counsel, and Secretary
Mortgage Guaranty Insurance Co.
**Robert Quint**, CFO and EVP Radian Group, Inc.

### Board Participation

**Jeffrey Lane**, SVP, General Counsel, and Secretary MGIC
**Stephen Blose**, VP, MGIC
**Robert Quint**, CFO and EVP Radian Group, Inc.
**Mark Casale**, President, Radian Guaranty, Inc.

### Involvement

**Deal Approval Calls**
On investments greater than $15MM
**Monthly Review Calls**
Financial Statements
Portfolio Performance Review
**Quarterly Board Meetings**
Complete Business Review
Deloitte & Touche Annual Audit Report
Budget Approval
**Approval of Material Operating Decisions**

### Capital Contributions

1998 - $ 44 MM
2001 - $ 30 MM

### Capital Distributions

2003  - $  25 MM
2004  - $ 100 MM
2005  - $ 221 MM
1H06 - $ 121 MM

**125**

- Confidential

# CONTENTS

Market Overview

126

# Market Overview

## Consumer Debt Rising



## Charge-Offs Increasing & Bankruptcies Decreasing



## BK 13 Sales Volume Declining



## Charge-Off Sales Volume & Pricing Increasing



\* Projected

**127**

# ⩓ Market Overview

## 2005 – Leading Purchaser of Charged-Off Credit Card Debt[1]

| 2005 Rank | Buyer Only (in MM) | Credit Card Purchases | Rankings 2004 | 2003 |
|---|---|---|---|---|
| 1. | Sherman Financial Group | $9,555.0 | 1 | 1 |
| 2. | NCO Portfolio Management | $9,003.2 | 9 | 9 |
| 3. | B-Line | $7,018.5 | 2 | 2 |
| 4. | Unifund | $6,032.5 | 4 | 4 |
| 5. | Encore Capital | $4,800.0 | 12 | — |
| 6. | Asta Funding | $4,600.0 | 8 | 3 |
| 7. | Portfolio Recovery Associates | $4,335.0 | 7 | 12 |
| 8. | Max Recovery/eCast | $3,276.0 | 3 | 5 |
| 9. | Collect America | $2,100.0 | 6 | 7 |
| 10. | Arrow Financial | $2,082.5 | 14 | 10 |

Note 1- Source: 2006 Nilson Report

128

# S Market Overview – Barriers to Entry

**Debt Purchasing Industry**

**Sub-Prime Credit Card Industry**

Limited access to
historical data

Required portfolio
valuation and deal
structuring expertise

Required Information
Technology
infra-structure

Difficulty in establishing
relationships with large
issuers that drive supply



Technological and
operational constraints

Highly sophisticated
market

Capital intensive

Regulated industry

Sherman has a competitive edge over current and future market participants based on its size, scale, systems, and intellectual and financial capital.

129

- Confidential

# CONTENTS

## Sherman Results

# Sherman Results – Earnings Stability

**Sherman's Investments Perform Well Through All Economic Cycles**

The short duration of Sherman's assets allows for the rapid re-pricing of the majority of the portfolio.

During economic downturns:

➢ Issuers have more distressed debt (both charge-offs and bankruptcy plans) to sell, driving down market prices.

➢ Defaulted debtors tend to be temporarily distressed and over time will perform better than receivables created during economic prosperity.

➢ The credit card serves as a utility card; there are not large balances at risk.

During times of economic prosperity:

➢ Collections on existing portfolios increase as formerly distressed debtors gain employment.

➢ Issuers have less debt to sell due to lower default rates, driving up the value of the existing portfolio.

➢ New credit card account activity increases and charge-offs on originated credit cards decline, improving profitability.

131

# ⌇ Sherman Results – P & L



## Consolidated Pre-Tax Income

Pre-Tax Income ($ millions)

| Year | Value |
|---|---|
| 2001 | 10.6 |
| 2002 | 40.3 |
| 2003 | 70.9 |
| 2004 | 200.6 |
| 2005 | 288.5 |
| As of 09/30/06 | 241.8 |

## Summary Results

|  | FY 2001 | FY 2002 | FY 2003 | FY 2004 | FY 2005 | As of 09/30/06 |
|---|---|---|---|---|---|---|
| **Portfolio Face Amount** | $ 9.7BN | $ 18.9BN | $ 26.4BN | $ 30.0BN | $ 38.5BN | $46.4BN |
| **Recoveries** | $ 119MM | $ 324MM | $ 529MM | $ 808MM | $ 855MM | $ 802MM |
| **Credit Card Portfolio** | — | — | — | — | $ 398MM | $ 572MM |
| **Total Financing Lines** | $ 200MM | $ 310MM | $ 461MM | $ 500MM | $ 1.05BN | $ 1.1BN |
| **Equity Capitalization** | $ 85MM | $ 116MM | $ 159MM | $ 240MM | $ 236MM | $ 178MM |

132

# ⑀ Summary

Consistent performance since inception through variations in U.S. economic conditions.

Portfolio business model is differentiated through the use of extensive front end due diligence and a wide array of collection techniques such as the credit rehabilitation program.

The acquisition of the bank has significantly diversified Sherman's revenue base and has improved earnings stability.

Uniquely positioned to stay abreast of market conditions and pricing as most major industry transactions are observed.

Consistently conservative balance sheet and financial management.

Ownership has a long-term time horizon which allows more flexibility in executing its growth strategy.

Operations are characterized by best in class process management and a variety of tools used to maximize returns and prudently manage risks.

Sherman's business platforms are scalable and can be leveraged to facilitate future growth.

Experienced, strong, and cohesive management team.

**133**

- Confidential

# CONTENTS

Chemical Review

Market Overview

Chemical Profiles

**Appendix**

# Appendix - Affiliates and Subsidiaries

 **Resurgent Capital Services**

**Resurgent Capital Services, located in Greenville, SC, Sioux Falls, SD and Cincinnati, OH, currently employs over 600 people. Resurgent has four divisions: Investor Services, Bankruptcy Recovery, Performing and Sub-Performing Recovery, and Secured/Unsecured Recovery.**

Resurgent's Investor Services Division acts as the master servicer for over 15 million accounts at over 200 collection agencies and law firms across the country. The Division is divided into five key service areas: Inventory Management, Portfolio Strategy, Portfolio Operations, Customer Service, and Compliance.

Resurgent is one of the largest consumer bankruptcy management companies in the United States.  Its Bankruptcy Recovery Division has developed a life-cycle recovery approach to working bankruptcy accounts to ensure the value of bankrupt consumer receivables are maximized.

Resurgent's Performing and Sub-Performing Division serves as the special servicer for Sherman's secured consumer finance loans, unsecured and consumer credit counseling accounts. This division is also home for the credit card rehabilitation program: Ascent Card. The marketing and servicing operations for the Ascent Card are located in Sioux Falls, SD, and the card is issued through a member bank.

Resurgent's Secured/Unsecured Recovery Division specializes in the servicing and recovery of consumer high-LTV mortgage debt, as well as the collection of non-traditional unsecured debt, and recovery of other non-mortgage collateralized consumer loans.  The common element of all parts of Resurgent's special servicing business is creating and maintaining long-term paying relationships with borrowers that were previously in a highly delinquent repayment status.

**135**

# Appendix - Affiliates and Subsidiaries



## Consupago

**Headquarters:** Mexico City

**Coverage:** National

**Employees:** 310

**Stockholders:** Original Founders: 73.4%
Sherman Financial: 26.6%

**Retail Affiliation:**
Consupago is affiliated with one of the largest retailers in Mexico .

**Key Products:**
Institutional Loans: Cash loans to government employees repaid through payroll deductions

Traditional Loans : In-store loans, both cash and for large purchases

### Institutional Business

- Initiated cash lending in January of 2003
- Portfolio balance of MXN 540 MM as of June, 2006
- Contracts with government employers and unions to originate loans that are paid through payroll deductions
- Middle to low income jobs with extremely low turnover
- Markets to borrowers that are underserved by the formal banking sector and government credit programs
- Highly scalable
- High demand

### Traditional Business

- Initiated operations in July of 2001
- Portfolio balance of MXN 150 MM as of June, 2006
- Origination channel through the retail affiliate (100+ grocery and durable goods stores nationally)
- High touch and labor intensive collection process
- Able to expand through the natural distribution channel of the affiliated retail chain

136

# Appendix - Affiliates and Subsidiaries

 **Capital Management Services**

Capital Management Services was formed in 2006 resulting from a business combination agreement between Ventus Capital Services and Capital Management Services.  The Buffalo, NY-based collection agency has two sites in Buffalo and one site in Las Vegas, NV, Houston, TX and Greenville, SC.

Capital Management Services provides performance-driven receivables management services to financial services companies nationwide.  CMS has expertise in both first and third-party collections as well as experience in recovering all ages of receivables (from primary to quaternary).

The CMS management team, led by Jeff Hauser, has decades of combined experience and a proven track record of successfully managing, growing, and sustaining profitable contingency collection organizations.

**137**

# Appendix - Affiliates and Subsidiaries - Operations Risk Management

## Legal / Compliance Administration

- Sherman maintains an internally developed nationwide network of outside counsel as well as specialized counsel for relevant issues.

- A VP heads the Compliance group that continually assesses and works to mitigate risk based on internal processes, audits and tracking of internal processes, current and proposed legislation, litigation trends and ongoing reviews of consumer concerns.

- Resurgent adheres to the spirit, as well as the intent, of all state, federal and local laws and regulations and monitors legislative revisions. Staff is trained to comply with regulations applicable to their job responsibilities.

- Two VP level attorneys with significant consumer credit experience are on site to oversee outside counsel, raise staff awareness of legal obligations, and assist with legal issues.

- Members of ACA, Debt Buyers Association, and NARCA in order to monitor the most recent laws, legal case law, and hot compliance topics in the industry.

## Process Improvement

- Team of 5 dedicated professionals that are Black Belt or Green Belt certified in Six Sigma methodologies

- Formelized training programs and certifications for key managers; Green Belt and Yellow Belt certifications issued by the Juran Institute

- Production groups utilize key methodologies for production management, dashboard reporting, and process controls

- Six Sigma "Lean" methodologies utilized to eliminate waste in processes

## Agency Management

- Comprehensive approach to agency risk management begins with a rigorous agency screening process.

- Active agencies are grouped into risk tiers based on the volume of assets placed and their recoveries. The risk tier determines the frequency of dial-in and on-site audits.

- Recoveries are optimized through the use of a linear program that allocates placements based on inputs including batch track performance and scorecard evaluations.

## Culture

Resurgent's attention to building productive culture has resulted in:

- Better Business Bureau Marketplace Ethics award for the Greenville site.

- Materially lower turnover than industry norms.

## Licensing / Bonding

- Resurgent is properly licensed for the businesses in which they are engaged.

- Resurgent maintains substantial amounts of relevant insurance coverage.

- A full-time staff attorney is responsible for maintaining all required licensing and related issues.

## Employee Training

- Formal training and procedures manuals have been created along with quick reference guides used as job aids for operations staff.

- All relevant employees are given formal training in FDCPA, relevant portions of the bankruptcy code, and our systems and procedures.

- On-going training is conducted and continuing Education programs are under constant development.

138