**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX, and STEPHANIE SNYDER, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:12-cv-1654-TWP-MJD CLASS ACTION |
| v. | ) ) | |
| SHERMAN CAPITAL LLC, *et al.*, | ) ) | |
| Defendants. | ) | |

**DEFENDANTS' SUPPLEMENTAL REPLY IN SUPPORT OF MOTION FOR
RECONSIDERATION [DKT. 218] AND OBJECTION [DKT. 216]**

As stated in the various submissions concerning the Court's order compelling the production of the Defendants' financial statements and income tax returns [Dkt. 210],[1] the Defendants have provided through multiple sources (including the redacted production of the requested financial statements themselves) the ownership information that, at least initially, served as the Plaintiffs' articulated basis for seeking production of these private and highly sensitive documents.   The produced documents depict a straight forward corporate chart (as opposed to the "amoeba-like" structure Plaintiffs imagine) (*see* [Dkt. 219] at Ex. D) as well as identify the S-corporations that have ownership interests in Sherman Capital LLC (*see* [Dkt 219] at Ex. F; [Dkt. 247-1]).[2] Thus, not surprisingly, Plaintiffs use their Response in this round of

---

[1] Motions, briefs and exhibits related to Defendants' Objection to Magistrate Judge's Order on Plaintiffs' Motion to Compel [Dkt. 216] and Defendants' Motion for Reconsideration of the Magistrate's Order, or in the Alternative to Stay [Dkt. 218], can be found at [Dkt. 217], [Dkt. 219], [Dkt. 220], [Dkt. 220-1 through 7]], [Dkt. 233], [Dkt. 234], [Dkt. 235], [Dkt. 245], [Dkt. 247], [Dkt 247-1 through 7; [Dkt. 248]; [Dkt. 249]; [Dkt. 249-1 through 6]], [Dkt. 271], and [Dkt. 283].

supplemental briefing [Dkt. 271] to articulate three seemingly new bases for their requests. But, once again, Plaintiffs fail to provide any legitimate rationale for the compelled production of the unredacted Sherman Financial Group LLC and Resurgent Capital Services LP audited financial statements, or the Sherman Capital LLC tax return. Neither the new arguments, nor Plaintiffs' previous justifications, provide a sufficient basis to require the production of these documents – especially given the Court's dismissal of parties and counts, and denial of class certification. The Court, therefore, should reconsider, and reverse, its order compelling the production of the Defendants' financial statements and income tax returns.

**ARGUMENT**

## I.     NEITHER THE FINANCIAL STATEMENTS NOR THE INCOME TAX RETURNS PROVIDE EVIDENCE OF A "SINGLE ECONOMIC ENTERPRISE."

In finding that Plaintiffs had stated an FDCPA claim against Defendants Sherman Capital LLC, Sherman Financial Group LLC, and Sherman Originator LLC, the Court reasoned that the Plaintiffs can hold these Defendants liable as indirect debt collectors if Plaintiffs show that LVNV, Resurgent and these Defendants "share an interdependence that renders them a 'single economic enterprise.'" (Entry on Motion for Reconsideration [Dkt. 237] (the "Dismissal Order") at 15-16, *citing Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998).) The Court then noted that Plaintiffs had alleged such an enterprise by claiming the Entity Defendants participated in debt collection activities by "pull[ing] the strings" of LVNV and Resurgent. (Dismissal Order at 16.) The court in *Jenkins* similarly focused its economic enterprise analysis on debt collection activities finding that, to hold that entity liable as an indirect debt collector, a party had to come forward with evidence of an entity's association with, management of, or participation in, the *debt collection activity* leading to the FDCPA violation. *Jenkins*, 999 F.

Supp. at 1142-43.   As neither the Defendants' financial statements nor income tax returns provide evidence related to debt collection activities, they have no relevance to Plaintiffs allegations of a single economic enterprise.

Plaintiffs, however, confuse the "single economic enterprise" analysis in the Dismissal Order and *Jenkins* with the subsequent alter ego discussion in *Jenkins*.   Specifically, once the court in *Jenkins* found that the plaintiff fell 'far short of establishing the facts necessary to find [a holding company and its subsidiary were] engaged in a single economic enterprise," it turned to plaintiffs' secondary argument that the subsidiary was "a corporate fiction designed to avoid the FDCPA's net worth limitation on recovery." *Id.* But here, as the Court expressly stated, "there are no allegations in the Complaint that any of the Defendants were acting as the alter egos of any other Defendant such that a veil-piercing theory would apply."   (Dismissal Order at 11.) Thus, Plaintiffs wrongly look to veil piercing factors as a basis to justify their requests for the Defendants' financial statements and income tax returns.

Further, the consolidated Sherman Financial Group financial statements, Resurgent's financial statements and the Sherman Capital income tax return do not contain the information relevant to showing that LVNV is a corporate fiction such that the Court should ignore its separate corporate existence.   Preparing consolidated financial statements or filing consolidated tax returns in and of themselves say nothing about the control exercised by a parent or affiliated company over its subsidiary or affiliate.   *See e.g., In re Ski Train Fire In Kaprun, Austria On November 11, 2000*, 342 F.Supp.2d 207, 216 (S.D.N.Y. 2004) ("Courts have held…. that factors such as sole ownership, overlapping directors, consolidated financial statements, and reference to the subsidiary as a department are insufficient to establish the type of day-to-day control necessary to disregard corporate separateness); *In Re American Honda Motor Co., Inc.*

*Dealerships Relations Litigation*, 941 F.Supp. 528, 551-552 (D. Maryland 1996) (that "the various [defendant] entities use consolidated financial statements and have interlocking directorates, taken as true, would be insufficient to justify piercing the corporate veil). Nor do these documents give insight as to whether the various entities observe corporate formalities such as separate corporate document preparation, separate board meetings, and maintenance of separate accounts. None of these documents reveals the capitalization or net worth of LVNV, the supposed "sham" organization here. Lastly, while these documents make some references to ownership, "[t]he separate corporate entities of two corporations may not be disregarded merely because one owns the stock of another...." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371 (7th Cir. 2008), *quoting Hornsby v. Hornsby's Stores, Inc.,* 734 F.Supp. 302, 308, 380 (N.D.Ill.1990).

## II.   PLAINTIFFS' HAVE NO BASIS TO ASK FOR FURTHER DISCLOSURE OF THE DEFENDANTS' NET WORTH.

LVNV and Resurgent have each provided net worth disclosure. (*See* [Dkt. 247-4 and 5].) Additionally, each of the remaining Defendants has stated that its net worth will not limit the up to $500,000 in statutory damage available in an FDCPA class action in the event that an FDCPA class is certified. *See* [Dkt 247-6]. In other words, the net worths of the other three remaining Defendants are not relevant for determining a cap on recovery under the FDCPA. The same is true for the restitution and unjust enrichment claims as the damages available for these claims do not depend on the net worth of the Defendants. Lastly, Plaintiffs' newly voiced concerns with the Defendants' initial responses to Plaintiffs' Requests for Production of net worth documents are not presently before the Court. Not only have Defendants revised their responses to these requests as a result of later developments in this case, Plaintiffs have never approached the

Defendants to discuss either their initial or revised responses, or indicated any problem with the production Defendants have made to date.

Further, Plaintiffs do not need further discovery of the Defendants' net worth for class certification or settlement purposes. As noted above, LVNV and Resurgent have disclosed their net worths. Additionally, because the remaining Defendants have disclosed that their net worths will not prevent an award of the maximum statutory damages permitted (in the event a class is certified), further net worth disclosure will add nothing to potential superiority arguments. Thus, this case stands in direct contrast to cases in which defendants claim little or negative net worth as a means of defeating class certification, or seek to avoid disclosure at all, such as in the cases cited in *Green v. Monarch Recovery, Mgmt., Inc.*, 2014 WL 657807 (S.D. Ind. Feb. 18, 2014). *See e.g., Mund v. EMMC, Inc.*, 259 FRD 180, 186 (D. Minn. 2009) (in light of the explicit tie between an FDCPA defendant's net worth and the statutory damages available to unnamed class members, defendant's negative net worth may raise a substantial question over whether a class action is appropriate); *Bode v. Encore Rec. Mgmt., Inc.*, 2006 WL 801017 (E.D. Wisc. March 29, 2006) ("Given that damages in a class action may be calculated based on a defendant's net worth, information concerning the defendant's net worth is relevant and potentially useful in determining whether a class action is superior to other methods of adjudication."); *Kohlenbrener v. Dickinson*, 1996 WL 131736 (N.D. Ill. March 15, 1996) (evidence showing the defendants each had a negative net worth undermined superiority of proceeding with TCPA claim on class basis); *Esparza v. Randall S. Miller & Assoc., P.C.*, 1:08-cv-5940 (N.D. Ill. 2009) (given damages are linked to net worth, the class cannot evaluate reasonableness of any proposed settlement without this knowledge). Unlike these cases, further information about the

Defendants' net worth here will not add any additional information as to the damages available to Plaintiffs' putative class given the statute's $500,000 cap.

### III. THE FINANCIAL STATEMENTS AND INCOME TAX RETURNS DO NOT CONTAIN ANY INFORMATION RELATED TO PLAINTIFFS' WHOLLY UNSUPPORTED CLAIMS OF OWNERSHIP BY "SYNTHETIC COLLATERALIZED DEBT OBLIGATION."

The other basis on which the Court allowed Plaintiffs' FDCPA claim to survive was Plaintiffs' allegation that:

> LVNV is merely a special purpose vehicle that bundles the underlying information about receivables (*i.e.*, the credit card debts) into securities, and then sells the securities to investors as CDOs.

(Dismissal Order at 15.) From the very filing of this case Defendants have disputed this allegation, challenged Plaintiffs to produce evidence in support of the allegation and even questioned Plaintiffs' Rule 11 basis to make this allegation. LVNV does not "bundle receivables into securities" or sell securities, period. (*See* 05/16/13 Deposition of Robert A. Roderrick at 18:22 to 20:20 (attached here to as Ex. Y); 05/17/13 Deposition of Keven P. Branigan at 20:1 to 21:10 (attached hereto at Ex. Z).) Further, the Defendants have produced the transaction documents showing the originating banks' sale of Plaintiffs' accounts to LVNV's affiliates, and the subsequent affiliates' transfers of the accounts to LVNV.  Contrary to yet other allegations in the Complaint, these documents show the sales that result in LVNV's ownership of Plaintiffs' accounts come with representations that the banks at the time of the sales had good and marketable title to Plaintiffs' accounts. In fact, the Citibank sales agreement comes with the further express representation that the accounts when sold were either never securitized, or alternatively, were reassigned to Citibank before the sale that resulted in LVNV's ownership.

Plaintiffs, in contrast, when asked to identify the factual basis for their theory of securitization, could not identify any evidence that gave even an inference that either LVNV, or the banks that sold Plaintiffs' accounts, had securitized those accounts.  Instead, Plaintiffs submitted the following vague, unsubstantiated and unverified interrogatory answer:

> **INTERROGATORY NO. 11**:  Identify all facts that support your contention that LVNV did not own Your debt.
>
> **ANSWER**:  The originating banks securitized the credit card receivables to a trust.  FASB 166-167 states that this was a true sale.  The purchase agreement and Bill of Sale limited the Defendant's purchase to solely what the originating bank could sell to defendants.  The purchasing agreement only sold data to defendants.  The originating bank cannot sell the servicing rights because the servicing rights end upon charge-off.

In *Scott v. Bank of America*, 2013 WL 6164276 (E.D. Pa. 2013), the court rejected the theory that "securitizing credit card receivables necessarily divests the issuing company of any ownership interest in the account" given that, among other things, the securitization documents provided that "if an account falls into default and has all its receivables charged off as uncollectible, those receivables are automatically ejected from the trust and sold back to the ... entity that originated them."  *Id*. at *2-3.

Given that Plaintiffs' securitization theories lack any connection to the facts, it is easy to see why the financial statements and income tax returns they request do not contain any relevant information.  There is nothing in these documents that relate to securitization of credit card accounts, or any references to Defendants "collect[ing] debt on behalf of CDOs."  Further, Defendants have already provided the full reference to "Variable Interest Entities" in the redacted Sherman Financial Group audited financial statements. (*See* [Dkt. 219] at Ex. K, p. 9-10.) Plaintiffs further fail to articulate why the fact that one entity categorizes collateralized debt obligations as variable interest entities, as in *In re Citigroup, Inc. Sec. Litig.*, 753 F. Supp. 2d

206, 218 (S.D.N.Y. 2010) ("Citigroup considered its CDOs to be 'variable interest entities' ('VIEs').") , says anything about the nature of the variable interest entities referred to in Sherman Financial Group's financial statements which make no references to CDOs.  Plaintiffs' wild and baseless claims of securitizations and CDOs do not make them true, nor result in such words or concepts appearing in documents where they do not exist.  Such false theories also do not provide a basis to produce the requested financial statements or income tax returns.

## CONCLUSION

For all the above stated reasons stated above, and in Defendants' motion, objection and briefs previously submitted to the Court, the Defendants respectfully ask that the Court reconsider its order compelling the production of the Defendants' financial statements and income tax returns, and deny Plaintiffs' requests for the production of such documents.

Dated:   May 27, 2014                          Respectfully submitted,


                                               s/*James A. Rolfes*_____


Thomas Allen *pro hac vice*          James A. Rolfes  *pro hac vice*       James W. Riley, Jr.
REED SMITH LLP                       jrolfes@reedsmith.com                 Atty. No. 6073-49
225 Fifth Avenue                     Michael DeMarino *pro hac vice*       RILEY BENNETT &
Pittsburgh, PA 15222                 mdemarino@reedsmith.com               EGLOFF LLP
(412) 288-3131                       David A. Maas *pro hac vice*          141 East Washington Street
(412) 288-3086 (Facsimile)           dmaas@reedsmith.com                   Fourth Floor
tallen@reedsmith.com                 REED SMITH LLP                        Indianapolis, IN  46204
                                     10 South Wacker Drive                  (317) 636-8000
                                     Chicago, IL  60606-7507                (317) 636-8027 (Facsimile)
                                     (312) 207-1000                        jriley@rbelaw.com
                                     (312) 207-6400 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2014 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing to all counsel of record.

/s/   *James A. Rolfes*