UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, LUCINDA COX, ) | Civil Action No.: 1:12-cv-1654-TWP-MJD |
| STEPHANIE SNYDER, ) | CLASS ACTION |
| and, ROBERT GOODALL, ) | |
| individually ) | |
| and on behalf of others similarly ) | |
| situated, ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| SHERMAN CAPITAL LLC; ) | |
| SHERMAN FINANCIAL GROUP LLC;) | |
| RESURGENT CAPITAL SERVICES LP;) | |
| LVNV FUNDING LLC; ) | |
| SHERMAN ORIGINATOR LLC; ) | |
| HUGER STREET LLC; ) | |
| MOULTRIE STREET LLC; ) | |
| WOOLFE STREET LLC; ) | |
| FULTON STREET LLC: ) | |
| JASPER STREET LLC; ) | |
| CONCORD STREET LLC; ) | |
| HAGOOD STREET LLC; ) | |
| CHARLOTTE STREET LLC; ) | |
| ARCHDALE STREET LLC; ) | |
| JACOBS ALLEY LLC; ) | |
| PEACHTREE STREET LLC; ) | |
| GREENHILL STREET LLC; ) | |
| CHALMERS STREET LLC; ) | |
| AND PRINCESS STREET LLC; ) | |
| UNKNOWN S CORPORATION ) | |
| and JOHN DOES 1-50. ) | |
|     Defendants. ) | |

**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

On behalf of the putative class, plaintiffs, ANDREW COX, LUCINDA COX

STEPHANIE SNYDER, and ROBERT GOODALL, bring this complaint against the

defendants for their violations of the Fair Debt Collection Practices Act, 15 USC 1692 *et seq.* ("FDCPA"), violation of the United States Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sections 1961, 1962 (c) & (d) and 1964 (a) and (c), and fraud, restitution, unjust enrichment.

Defendants include Sherman Financial Group LLC ("SFG"), Sherman Capital LLC ("Sherman Capital"), LVNV Funding LLC ("LVNV"), Resurgent Capital Services LP ("Resurgent"),  and Sherman Originator LLC ("SO"),(collectively "Sherman Entities").

Defendants further include Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC (collectively "New Shell Companies").

Defendants further include an S Corporation created by certain defendants, the identity of which S Corporation is unknown to plaintiffs ("Unknown S Corp.").

Sherman Capital, New Shell Companies, and Unknown S Corp. are collectively referred to as "Sherman Capital."

The above named defendants are collectively referred to as "Sherman."

## INTRODUCTION

1.     This action arises out of Sherman's improper conduct in a scheme to manipulate consumers to pay money on alleged debt obligations that are not owed

to LVNV.  During the period November 2008 through November 15, 2013, Sherman wrongfully collected from Indiana Consumers tens of millions of dollars.  Sherman continues to wrongfully collect to this day and the foreseeable future.

2.     Sherman buys data reflecting plaintiffs' past credit card activity and nonpublic personal information.  Sherman does not acquire legal ownership of plaintiffs' debt obligations.

3.     Until recently, no Sherman Entity (except Resurgent) was licensed or registered in the State of Indiana to do business or to collect debts.  Prior to becoming licensed or registered, the Sherman Entities engaged in their collection activities in the State of Indiana.

4.     Sherman regularly purchases data about Indiana charged-off consumer credit card accounts, and then securitizes this pool of information into a synthetic collateralized debt obligations (CDOs), including a LVNV collateralized debt obligation ("LVNV CDO").

5.     Defendants, through their agent Resurgent, then improperly collect money from Indiana consumers on the information contained in the data for a fee. Defendants, through their agent Resurgent, does not collect money for their own account, but rather, collect money on behalf of the LVNV CDO that Sherman created.   The collected money flows through the Defendants (which extract fees) and then is used to purchase more data and pay the unknown certificate holders of the LVNV collateralized debt obligation.

6.      In its collection activities in Indiana, directly or through its collection agents, Defendants falsely represent that LVNV is collecting money on its own behalf and has the absolute right to do so.

7.      This class action seeks to recover the monies improperly collected from Indiana consumers by LVNV and Defendants, through its agent Resurgent, through fraudulently means and in violation of the FDCPA, RICO, and common law fraud. This class action further seeks to recover such monies under the theories of unjust enrichment and restitution.

8.      Defendants, through Resurgent and Resurgent's agents, have engaged in fraudulent collection activities by impermissibly pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits against Indiana residents when LVNV has no legal ownership of a debt. As such, Plaintiffs, on behalf of the putative subclass, seek statutory damages under the FDCPA.

9.      Pursuant to RICO, 18 U.S.C. §§ 1961, 1962 (c) and (d) and 1964 (c), Plaintiffs on behalf of the putative subclass, seek treble damages sustained as a result of Defendants' schemes and artifices to defraud, acts of mail fraud (18 U.S.C. §§ 1341), wire fraud (18 U.S.C. §1343), interstate transportation of stolen property (pursuant to 18 USC §2314), and extortion (18 U.S.C. §1951).  Plaintiffs together seek disgorgement of Defendants' profits under 18 U.S.C. § 1964(a) as the wrongful conduct continues since the filing of the original complaint.

10.    Plaintiffs further seek judgment ordering Sherman to disgorge the ill-gotten monies under common law fraud, restitution, and unjust enrichment and requiring defendants to return the total amount of dollars collected from the putative subclass members over the past six years, plus treble damages.

11.    Plaintiffs further seek a judgment declaring that Plaintiffs are under no obligation to render payment to any defendant arising from alleged money that Defendants may claim is owed to them.

12.    LVNV's primary collection agent is Resurgent, one of the Sherman Entities.  However, the strings are ultimately pulled by the Unknown S Corp., which employed the New Shell Companies, which employed Sherman Capital, which employed SFG, which employed SCM (on behalf of SO, SOIII, and LVNV), which employed Resurgent, which employed both Indiana and out-of-state law firms and collection agencies.  The individual participants are owners, directors, managers, and employees of The Unknown S Corp., the New Shell Companies, Sherman Capital, SFG, SCM, Resurgent, SO, SOIII, and LVNV.

13.    Under the Third Restatement of Agency and *respondeat superior*, each named defendant, known and unknown, is jointly and severally liable for the improper acts of LVNV, Resurgent, and the collection companies and law firms that LVNV and Resurgent hire to harass Indiana consumers under the false pretenses of a debt.

14.     The Sherman Entities, the New Shell Companies, the Individual participants and the Unknown S Corp., are alter egos of each other with common ownership, common control, and common officers and directors with a lack of corporate formalities.  The Sherman Entities are named after Navarro's childhood dog and the New Shell Companies are all named after streets in Charleston SC.

15.     Sherman has intentionally structured and restructured itself to shield its ultimate ownership in an attempt to avoid liability for the improper and illegal actions.  Internal accounting practices allow the Sherman Entities, the New Shell Entities, and the Unknown S Corp. to manipulate balance sheets and financial statements so that assets and net worth of any given entity can quickly be moved to leave an empty shell in an effort to avoid liability.

16.     Since April 2005, Defendants, through Resurgent and Resurgent's agents on behalf of the LVNV CDO, have initiated hundreds of thousands of consumer credit actions including dunning letters, telephone calls, reports to credit rating agencies, and tens of thousands of collection lawsuits which have wrongfully restrained bank accounts, garnished wages, placed liens on property, and/or pressured Indiana consumers into payment plans. The alleged debts and judgments procured by Resurgent and LVNV appear on consumer credit reports and prevent Indiana consumers from obtaining housing, employment, insurance and affordable credit.

17.     In the Indiana traditional collection activities (letters and telephone calls) initiated by Resurgent and LVNV, neither LVNV nor Resurgent possess any proof of the alleged debt other than a printout of data provided by a third party.  Sherman purchases data only, not the actual underlying debt obligations or receivables.

18.     In the Indiana lawsuits initiated by Resurgent and LVNV, neither LVNV nor Resurgent possess any proof of the alleged debt other than a false affidavit created by a subcontracted law firm and signed by a Resurgent employee based entirely on a printout of data provided by a third party rather than personal knowledge.  Sherman purchases data only, not the actual underlying debt obligations or receivables.


## JURISDICTION & VENUE

19.     This Court has jurisdiction over Defendants under 15 U.S.C. § 1692k(d) and 28 U.S.C. §§ 1331, 1337, 1367 because Plaintiffs' claims constitute a federal question arising under the FDCPA.

20.     Venue in this district is proper because Plaintiffs reside here, Defendants do business in this district, and Defendants have significant contacts with the district pursuant to 28 U.S.C. § 1391.

21.     This Court has jurisdiction over Defendants under 28 U.S.C. § 1332(a) because the total amount in controversy for this class action exceeds $75,000

exclusive of interest and costs.  This Court has jurisdiction over Defendants under 28 U.S.C. § 1332(d) because the total amount in controversy for this class action exceeds $5,000,000 exclusive of interest and costs, and a member of the class is a citizen of a State different from a Defendant.

22.     This Court has nationwide jurisdiction over Defendants under RICO, 18 U.S.C. §§ 1961, 1962(c) & (d) and 1964(c).

23.     Pursuant to 18 U.S.C. §1965(b), RICO contains an explicit grant of nationwide service over all Defendants.

24.     This Court has jurisdiction over defendants under theories of alter ego, agency and veil piercing.

25.     This Court has jurisdiction over LVNV by virtue of LVNV's collection activities within Indiana including direct contact to consumers and initiation of litigation within the state.

26.     This Court has jurisdiction over Resurgent by virtue of Resurgent's collection activities within Indiana including direct contact to consumers and initiation of litigation within the state.

27.     This Court has jurisdiction over Sherman Capital, SFG, SO which are parent companies and alter egos of LVNV.

28.     This Court has jurisdiction over SCM and SOIII as the alter ego of Sherman Capital, SFG and SO, and under the theory of *respondeat superior*.

29.     This Court would have jurisdiction over Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall, because they each individually own as well as

operate, supervise, manage, direct, oversee, and control the Sherman Entities to such extent that they are individually and collectively the alter egos of the Sherman Entities, but the y have been dismissed with prejudice in a prior order.  PARTIES

## Plaintiffs

30.    Plaintiff, Andrew Cox, is a natural person and citizen of the State of Indiana, residing in Marion County.  Andrew has 28 years of experience in banking and finance, which included securitization and collection compliance.  Further, Andrew spent 5 years with the Federal Bureau of Investigation (FBI) as a financial analyst for corporate white-collar crime.  Andrew has been the victim of Sherman's illegal collection activities concerning two alleged Chase Bank USA NA credit card debts.  Andrew received collection letters and telephone calls from Sherman's agents.  Andrew is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).  Documents showing illegal collection activities against Andrew are attached as Exhibit 1.

31.    Plaintiff, Lucinda Cox, is a natural person and citizen of the State of Indiana, residing in Marion County.  Lucinda is Andrew's wife and co-signor on one of the alleged Chase Bank USA NA credit card debts.  Lucinda received collection letters and phone calls from Sherman's agents.  Lucinda is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3). Documents showing illegal collection activities against Lucinda are attached as Exhibit 1.

32.    Plaintiff, Stephanie Snyder, is a natural person and citizen of the State of Indiana, residing in Marion County.  Stephanie has been the victim of Sherman's

illegal collection activities concerning an alleged Sears/Citibank credit card debts. Stephanie received collection letters and phone calls from Sherman and its agents. Stephanie is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3). Documents showing illegal collection activities against Stephanie are attached as Exhibit 2.

33.     Plaintiff, Robert Goodall, is a natural person and citizen of the State of Indiana, residing in Marion County.  Robert has been the victim of Sherman's illegal collection activities concerning an alleged Chase Bank USA NA debt. Goodall received a proof of claim and other documents from Sherman's agents. Goodall is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3). Documents showing illegal collection activities against Robert are attached as Exhibit 3.

## Defendants

34.     Defendant Sherman Capital is a Delaware limited liability company, which owns, employs and operates SFG.  All of the other Sherman entities (with the exception of SCM) are ultimately owned, controlled, employed, and operated by SFG as subsidiaries and/or affiliates.    Sherman Capital is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  Sherman Capital is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  The business address for Sherman Capital is 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

35.     Defendant SFG is a Delaware corporation headquartered in New York, NY.  SFG is owned by Sherman Capital.  SFG created and maintains several collateralized debt obligations including LVNV.  SFG wholly owns and operates the purchasing vehicles SO and SOIII and the holding vehicle LVNV.  LVNV, SO, SOIII are mere instrumentalities of SFG. SFG has entered into a management servicing contract with SCM to essentially operate and manage the purchasing and holding vehicles. SCM employs Resurgent. SFG owns and operates Alegis Group LLC and Resurgent.  Through its subsidiaries, SFG is a complex business structure primarily engaged in the business of purchasing and collecting on charged-off consumer accounts (including Indiana consumers) via mail, telephone, internet, and civil debt collection lawsuits.  Attached as Exhibit 4 are documents describing the complex business structure.  SFG is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  The business address for SFG is 200 Meeting Street, suite 206, Charleston, South Carolina 29401.

36.     Sherman Capital Markets LLC "SCM") is not a defendant because it was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint.  SCM is a Delaware limited liability company.  SCM is an unregistered investment bank.  As an investment bank, SCM operates and manages the collateralized debt obligations by purchasing and repackaging data through assignment amongst SOIII, SO, and LVNV.  SCM purchases, securitizes, and services data consisting of nonpublic personal information of Indiana consumers. SFG entered into a management services agreement with SCM to operate and

manage the purchasing and holding vehicles in return for incentives and management fees.  Through this management services agreement, SCM exerts control over the daily affairs including financing for and capitalization of the SFG subsidiaries, SOIII, SO, and LVNV as well as receiving any correspondence to SOIII and SO.  SCM has subcontracted the collections or servicing activities to Resurgent. With Resurgent's input, SCM determines which Indiana accounts are designated for "pre-legal" collections, "legal" collections and "warehouse."   Indiana accounts designated "warehouse" are sold by SM acting as broker for the LVNV CDO to other "debt buyers'" including American Acceptance Company LLC, an Indiana limited liability company that is owned by Bowman, Heintz, Vician & Boscia PC.  SCM is primarily engaged in the business of purchasing and collecting on defaulted Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits. SCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). SCM was a subsidiary of SFG; but, as of 2010, as a part of Sherman's constant restructuring to avoid liability, SCM, is a wholly-owned subsidiary of Sherman Capital Group Inc. SCM has a business address of 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

37.   Defendant Resurgent is a Delaware limited partnership that was formed between Alegis Group LLC (the General Partner holding a 1% ownership interest) and SFG (the Limited Partner holding a 99% ownership interest).  Alegis Group is a subsidiary of the limited partner, SFG, and has no employees just managers.   Resurgent is subcontracted by SCM to be the master servicer of the

LVNV collateralized debt obligation.  Despite being in existence and acting as a collection agency since June 24, 1999, Resurgent did not license itself as a collection agency in Indiana until January 7, 2007.  The data is placed with Resurgent to engage in collections.  Resurgent maintains a website for voluntary payments and conducts collection activities directly (furnishing reports to credit report agencies) as well as outsourcing collection activities to independently owned collection agencies and law firms pursuant to a "Collection Service Agreement" between Resurgent and its agents.  Resurgent is primarily engaged in the business of collecting money from Indiana consumers via mail, telephone, internet and civil debt collection lawsuits.  Resurgent is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Resurgent has offices in Greenville, SC; Houston, TX, and Cincinnati, OH (where data server is located).  Resurgent's business address is 15 S. Main Street, Suite 600, Greenville, South Carolina 29601.

38.    Defendant LVNV is a Delaware limited liability company.  LVNV is a wholly owned subsidiary of SOLLC.  LVNV is an unregistered synthetic collateralized debt obligation[1], and is identified on SFG's Consolidated Financial Statement as a Variable Interest Entity ("VIE").  As such, LVNV is a special purpose vehicle with no employees, just officers or managers.  LVNV's business and affairs are managed under the direction and control of a Board of Managers.  Navarro is the General Manager who is responsible for supervising the operations of LVNV.  Other managers and officers of LVNV include:  Branigan, President;

---

[1] According to Moody's there are two LVNV CDOs.  The LVNV CDO formed in 2005 (which is subject of this litigation.  Another CDO which is controlled by the LVNV CDO was formed in 2007 and is referred to as LVNV and its alter ego PYOD LLC.

Silver, Secretary; Gutierrez, Chief Financial Officer; and Kendall, Chief Financial
Officer and Treasurer.  LVNV disregards its LLC structure and files contradictory
reports with various states.  On January 5, 2012, LVNV reported to the Rhode
Island Secretary of State that its sole manager was defendant Navarro.   On
January 18, 2012, LVNV reported to the Massachusetts Secretary of State that
defendants Silver, Branigan, and Gutierrez were its sole three managers.  On
February 16, 2012, LVNV reported to the Indiana Secretary of State that LVNV has
no managers.  As a part of Sherman, LVNV serves as the holding vehicle of "data"
on behalf of unknown investors in the LVNV CDOs.  LVNV is primarily engaged in
the business of purchasing, and collecting on, data containing information about
Indiana consumer accounts via mail, telephone, internet and civil debt collection
lawsuits.  LVNV is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).
Despite being named as "creditor" in hundreds of thousands of traditional collection
activities (letters and telephone calls) and being named plaintiff in tens of
thousands of lawsuits in Indiana, LVNV did not license itself as a collection agency
until March 12, 2012 in Indiana.  Despite being named the plaintiff in tens of
thousands of collection lawsuits filed in Indiana, LVNV was not registered to
conduct business in Indiana until February 16, 2012.  LVNV's business address
with the Indiana Secretary of State is 625 Pilot Rd, Suite 3, Las Vegas, NV 89119,
but is actually 200 Meeting Street, Suite 206, Charleston, South Carolina 29401.

    39.    Defendant SO is a Delaware limited liability company.  SO is the only
member of LVNV and is wholly-owned subsidiary of SFG.  At least since April 2005,

14

SO has been a purchasing vehicle for "data" which is assigned to the holding vehicle, LVNV.  SO has no employees, just officers.  SO is primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  SO is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).  Such collection practices occur in Indiana.  SO's business address is c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston South Carolina 29401.

40.     Sherman Originator III LLC ("SOIII") is not a defendant because it was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint.  SOIII is a Delaware limited liability company.  SOIII is a wholly-owned subsidiary of SFG.  At least since November 2008, SOIII has been a purchasing vehicle for "data" which is assigned to SO and reassigned to the holding vehicle, LVNV.  Since 2008, SOIII has had continuous and systematic contacts with Indiana by virtue of the purchase of hundreds of thousands of Indiana consumers' data.  SOIII has no employees, just officers.  SOIII is primarily engaged in the business of in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits.  SOIII is a "debt collector" as defined by the FDCPA, 15 USC 1692a(6).  SOIII's business address is c/o Sherman Capital Markets LLC, 200 Meeting Street, Suite 206, Charleston South Carolina 29401.  The Registered Agent

for SOIII is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

41.     Defendants Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC ("New Shell Companies") are Delaware limited liability companies.  The New Shell Companies were created by Sherman on December 19, 2012 for the purposes of hiding the true ownership and control of Sherman Capital and avoiding liability for the Sherman activities.  Collectively, the New Shell Companies, together with Robert Roderick, Avondale St LLC, Robert Banasik, Scott Kester, Daniel Picciano III, Amanda Smith, James Wagner, Philip T. Thurmond Ill, Michael Keaton, Gregory Hammond, Jon Mazzoli, Terry O'Connell, Dennis Grady and the R Roderick trust, own and control Sherman Capital.  Ultimately, each of the New Shell Companies and the other owners of Sherman Capital are jointly and severally liable for Sherman's liability before and after judgment.

42.     Defendant Unknown S Corp. is a corporation created by Sherman in late 2012 or early 2013.  Ownership of the Sherman Entities and New Shell Companies ultimately flows up to the Unknown S Corp.  The Unknown S Corp. was created by Sherman for the purposes of hiding the true ownership and control of Sherman Capital and avoiding liability for the Sherman activities.

43.     The individual participants serve as directors, managers, officers, supervisors and/or employees of the Sherman Entities in varying capacities. Ownership of Sherman Capital has been a joint venture and the joint venture has changed hands over time.  Since at least April 2005, the individual participants have had a combined controlling interest in Sherman Capital.

44.     Benjamin Navarro, Leslie Gutierrez, Scott Silver, Kevin Branigan, Robert Roderick, and Kenneth Kendall, upon information and belief, are individuals who reside in and are citizens of the State of South Carolina.

45.     Benjamin Navarro is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint. Navarro is the founder and an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Navarro is the founder and the Chief Executive Officer of SFG and Chairman of SCM.  Navarro is a director at SCM and SFG. Navarro is the General Manager of LVNV and Manager of Alegis Group.  Navarro created, or caused to be created, the new Shell Companies and the Unknown S Corp. in an effort to hide the ownership of the Sherman Entities and avoid liability. Navarro's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Navarro participates in the scheme by supervising and overseeing SCM and Resurgent, maintaining relationships with sellers of data, and strategizing,

17

supervising, managing, directing and overseeing which data to purchase and how to finance the purchase.  The business address for Navarro is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

46.     Leslie Gutierrez is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint. Gutierrez  is a current or former owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Gutierrez is a current or former chief financial officer of SFG and SCM and LVNV.  Gutierrez is a current or former director at SCM and SFG.  Gutierrez is a current or former manager of LVNV. Gutierrez signed on Plaintiffs' Transfer and Assignment documents as authorized representative of LVNV.  Gutierrez's duties in the fraudulent scheme includes but are not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Gutierrez participates in the scheme by being SCM's chief financial officer, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, supervising and preparing financial documents to maintain Moody's a Moody's rating, and executing documents on behalf of SFG's subsidiaries.  The business address for Gutierrez is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

47.     Scott Silver is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint.  Silver is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Silver is the general counsel for SCM and the solitary attorney for all Sherman Entities, except Resurgent, whose attorneys Silver oversees.  Silver's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Silver participates in the scheme by being general counsel, supervising and managing compliance with government regulations, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and executing documents on behalf of SFG's subsidiaries. Silver is a director at Sherman Capital Markets and SFG.  Silver is a Manager of LVNV.  Silver is Secretary of SFG.  The business address for Silver is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

48.     Kevin Branigan is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint. Branigan is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Branigan is the Vice President of Sherman Capital; Vice

President of SFG; Officer of SO; Officer of SOIII; Director of Administration of SCM; unregistered investment banker at SCM; President of and manager of LVNV. Branigan is a director at SCM and SFG.  Branigan signed as authorized representative of SO on Plaintiffs' Transfer & Assignments.  Branigan's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Branigan participates in the scheme by being SCM's sales manager supervising investment bankers, maintaining relationships with sellers of data; strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and executing documents on behalf of SFG's subsidiaries.  The business address for Branigan is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

49.    Robert Roderick is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint. Roderick is an owner of Sherman Capital, which  owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Roderick is the chief executive officer and manager of Alegis Group; manager of Resurgent; and director of SCM and SFG.  Roderick's duties in the fraudulent scheme includes but is not limited to:  designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Roderick

participates in the scheme by being the supervising, managing, and overseeing Resurgent, maintaining relationships with sellers of data, maintaining relationships with the collection agencies and law firms employed by Resurgent, supervising and reviewing the performance of the collection agencies and law firms, and strategizing which data to purchase and how to finance the purchase.  The business address for Rodrick is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

50.    Kenneth Kendall is not a defendant because he was dismissed for lack of personal jurisdiction, but did participate in the events of this complaint.  Kendall is an owner of Sherman Capital, which owns and controls SFG and its subsidiaries (SO, SOIII, LVNV, and Resurgent) and has a management services agreement with SCM.  Kendall is the chief financial officer of SFG and SCM and treasurer of LVNV. Kendall is a director at SCM and SFG and an unregistered investment banker at SCM.  Kendall's duties in the fraudulent scheme includes but is not limited to: designing and organizing the scheme, incorporating and employing the corporate entities to carry out the scheme, and participating in the scheme as evidenced by his corporate titles.  Kendall participates in the scheme by being SCM's chief financial officer, maintaining relationships with sellers of data, strategizing, supervising, managing, directing and overseeing which data to purchase and how to finance the purchase, and supervising and preparing financial documents to maintain a Moody's rating.  The business address for Kendall is 200 Meeting Street, Suite 206 Charleston, South Carolina 29401.

51.     Sherman, through its agent Resurgent, employs subcontractors such as law firms and collection agencies to find consumers through skip tracing and to collect on the alleged debts.  These subcontractors enter into a Collection Services Agreement  with Resurgent  on behalf of Resurgent's clients, including LVNV. Resurgent obtained a limited power of attorney from LVNV as LVNV's attorney-in-fact, which was signed by Branigan.

52.     Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall were the primary architects of creating a scheme to purchase nonpublic personal information, convert that information into a financial instrument which could be sold to investors, and collect on that information for a profit under the false pretense of "debt buying" by setting up and employing the corporate entities.

53.     LVNV is merely a shell entity and holding company.  The purchasing entities, SO and SOIII, which ultimately assign the data to LVNV, are also shell entities.  LVNV, SO, SOIII are wholly owned subsidiaries of SFG (which is a shell company after hiring SCM).  Resurgent is also a subsidiary of SFG.

54.     As shell companies that were set into operation for a collateralized debt obligation, Sherman Capital ultimately operates and manages LVNV, SO, SOIII.  Sherman Capital has entered into a managerial services contract with SFG. SFG has subcontracted out the managerial operations of the collateralized debt obligation to SCM, for the financing and purchasing of data on behalf of the LVNV CDO investors, and for the servicing of the data on behalf of the LVNV CDO investors, which SCM subcontracted to Resurgent.

55.     The LVNV collateralized debt obligation must be actively managed. The decision making power and control over on the routine operations of the collateralized debt obligation is held by Sherman Capital which has subcontracted that control to SFG which has subcontracted that control to SCM.  This management services agreement calls for SCM to provide essentially all management services for SFG in return for an incentive and management fee and reimbursement.  The only management service not provided by SCM is the collections or servicing which is subcontracted to and performed by Resurgent.

56.     All the individual participants are employees as well as owners and directors of SFG, which contracted with SCM, which contracted with Resurgent. Navarro, Gutierrez, Silver, Branigan, and Kendall function as officers or managers for the shell entities that have no employees (SO, SOIII, LVNV).  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall function as officers and directors of SCM.  Roderick and Navarro are the managers of Resurgent.  The individual participants have supervised, managed, directed and overseen the business activities of LVNV, SOIII, SO, SFG, SCM, and Resurgent including its traditional collection, litigation collection, credit reporting, and bankruptcy collections in Indiana and Indiana courts.

## **FACTUAL ALLEGATIONS**

57.     Consumer awareness and the legal system have not fully comprehended the two game changing evolutions that have greatly altered the world's financial landscape: (1) Securitization and (2) Credit Enhancements.

58.     The originating bank, through subsidiaries, pools the credit card receivables into a financial instrument that can be sold to outside investors, a process called "securitization," which results in the creation of an asset-backed security.

59.     The asset-backed security and prospectus are registered with the Securities and Exchange Commission ("SEC").   These documents specifically state that the receivables are sold and transferred to the trust; however, the documents are not stamped or marked to reflect the transfer but instead the computer records are marked as evidence of the transfer.

60.     The main results of securitization are: 1) the originating bank is paid in full; 2) the originating bank surrenders all control and ownership including all rights, title, and interest over the receivables; 3) the outside investors own the receivables as result of a true sale; 4) evidence of indebtedness is delivered to the Trustee; 5) the originating bank transforms into the servicer for the asset-backed seurity; and 6) the originating bank cannot get the receivables back without violating IRS, SEC, and U.S. Generally Accepted Accounting Principles (GAAP) Accounting Standards Update (ASU) 2009-16, which amended Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 860 (formerly FASB 140), Transfers and Servicing.

61.     Credit enhancements, including overcollateralization, are a key part of the securitization process since they are guarantees that the risk-averse investors will get paid in full if there is a default of the receivables.  The most common type of credit enhancement is the credit default swap (CDS).  A credit default swap is a

written gambler's contract, where a protection seller agrees to compensate the protection buyer for face value of the underlying referenced receivable should a "credit event" such as a consumer bankruptcy or payment default take place.  In exchange for the promise, the protection buyer pays a periodic premium payment to the protection seller.

62.     Upon non-payment, the asset-backed security servicer has 180 days to collect upon the receivable.  If the servicer is unsuccessful, the debt is considered "charged-off".  That means that the servicer informs the investor of the credit event; the credit enhancements are "tapped"; and, the investor is paid in full.  Since the investor is paid in full, there is no longer a debt obligation.  The left over data is what is purchased, securitized, and serviced by Sherman on behalf of the LVNV collateralized debt obligation's outside investors.

63.     While ASU2009-16 prohibits the originating bank from repurchasing the defaulted receivables back from the Trust, it does not prohibit the sale of information/data about the defaulted receivable.  This data with the nonpublic personal information is not evidence of indebtedness.  The Bill of Sale and Purchase Agreements specifically limit the sale to the originating bank's interest in the receivable, which after securitization is solely the data not ownership of the receivable.[2]

---

[2] However, the Graham-Leach-Bliley Act ("GLBA") still requires an initial privacy notice, opt-out notice, and annual notice regarding nonpublic personal information. (Defendants sometimes provide the initial privacy notice but do not comply with the other requirements).  GLBA includes "debt buyers" and has civil and criminal penalties for noncompliance.

## Plaintiffs' interactions with Defendants

## Andrew & Lucinda Cox

64.     Andrew and Lucinda had a decrease in income as Andrew changed jobs.  Despite contacting Chase in an attempt to set up a payment plan, Andrew and Lucinda were not able to maintain payments on credit cards including two Chase accounts.  After 180 days of default, Chase charged-off the credit card debt on both cards.

65.     Andrew and Lucinda Cox were first contacted in Indiana on or about September 27, 2010 by telephone and by mail on January 22, 2011, by the law firm of Weltman Weinberg & Reis Co. LPA purportedly on behalf of Chase Bank USA NA for two separate accounts.  Andrew sent a dispute letter to Weltman Weinberg & Reis.  The letter was never answered.

66.     Unbeknownst to the Andrew and Lucinda, Chase Bank USA NA and SCM had entered into a Purchase Agreement on December 10, 2010 and their Heritage First USA account was purportedly sold by Chase to SOIII which assigned to SO which assigned to LVNV on or about April 8, 2011.   On behalf of Chase, Jeffrey Judd signed as "Team Leader" with no indication that an authorized representative nor corporate officer with authority to execute on behalf of Chase.

67.     On or about April 11, 2011, the data was transmitted to Resurgent; and, Resurgent electronically furnished a report to consumer credit reporting agencies, Experian Plc ("Experian") (with corporate headquarters in Dublin Ireland and operational headquarters in Costa Mesa CA, Sao Paulo Brazil, and Nottingham

UK), Equifax Inc. ("Equifax") (headquartered in Atlanta, GA), and TransUnion LLC

("TransUnion")(headquartered in Chicago, IL).  The furnished report falsely stated

that Andrew and Lucinda owed a debt and that the invalid debt was owed to LVNV.

From April 2011 until October 2012, Resurgent transmitted monthly updates to

each credit reporting agency which alone equated to 57 individual wire

transactions.  In the calendar year 2012, reports were sent to all three credit

bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June

14, July 12, August 17, September 13, October 23, November 15 (the reports all

made on the same day as the Snyder's reports).  Further, on or about October 12,

2012, Andrew and Lucinda disputed the accuracy of the credit reports and

Resurgent used the wires to "verify" the account.

68.    Additionally, Defendants through their agent Resurgent, hired

collection agents and transmitted Andrew and Lucinda's data to the collection

agents without any further evidence of indebtedness.  Between April 2011 until

August 2011, Resurgent hired Weltman Weinberg  & Reis Co. in Cleveland, OH (the

WWR National Litigation Network has offices in Brooklyn Heights OH; Cincinnati

OH; Columbus OH; Chicago IL; Detroit MI; Ft Lauderdale FL; Philadelphia PA;

Pittsburgh PA).  Between August 2011 until November 2012, Resurgent hired The

Brachfeld Law Group PC (offices in El Segundo CA and Houston TX).

69.    Andrew and Lucinda received numerous collection letters that all

falsely stated the current creditor was LVNV and that a balance was due.

70.     Specifically, Weltman Weinberg & Reis mailed on behalf of Resurgent a collection letter from Cleveland OH on July 6, 2011. The letter falsely stated that LVNV was the creditor and there was a "balance due" to LVNV. The letter stated that Weltman Weinberg & Reis had made several attempts to contact the Andrew and Lucinda.  The letter falsely stated that the law firm was "attempting to collect this debt for our client."

71.     Brachfeld mailed a collection letter on October 6, 2011.  The letter stated that the "Current Creditor" and "Originator" is LVNV, and that there is a "Total Amount Due".  The letter offered various payment plans to be remitted by U.S. Mail.  The letter was mailed from Pennsylvania but demanded that payments be made by mail to Houston, Texas.

72.     Andrew and Lucinda responded by faxing and mailing cease & desist letters on October 12, 2011, October 17, 2011 and November 8, 2011 to The Brachfeld Law Group at both its El Segundo and Houston addresses.  The cease & Desist letters outlined the non-licensing of LVNV as a collection agency in Indiana.

73.     On November 9, 2011, The Brachfeld Law Group responded by mail to Andrew's letters by a "Validation" Letter on or about November 9, 2011.  The letter falsely stated that the "Current Creditor" is LVNV, and "Total Amount Due."

74.     Andrew and Lucinda received numerous harassing telephone calls to their home and cellular numbers requesting payment. Specifically, Weltman Weinberg & Reis made a telephone call on July 7, 2011.

75.     Brachfeld made  telephone calls on September 9, 16, 27 and October 11, 30, and November 30 and December 6, 2011.

76.     As a result of the harassment by LVNV through its agents, Andrew and Lucinda were forced to hire legal counsel and their credit ratings continued to be affected.

## Andrew Cox

77.     Unbeknownst to Andrew, his non-joint Chase Bank USA NA account was purportedly sold by Chase Bank USA NA to SOIII which assigned to SO which assigned to LVNV on or about April 7, 2011.  The same "Team Leader" signed on behalf of Chase.

78.     On or about April 11, 2011, Resurgent immediately furnished a report to consumer credit reporting agencies, Experian, Equifax, and TransUnion LLC that falsely stated that Andrew owed a debt and that the invalid debt was owed to LVNV.  From April 2011 until October 2012, Resurgent transmitted monthly updates to each credit reporting agency which alone equated to 57 individual wire transactions.  In the calendar year 2012, reports were sent to all three credit bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June 14, July 12, August 17, September 13, October 23 (the reports all made on the same day as the Andrew & Lucinda reports).  Further, on or about October 12, 2012, Andrew disputed the accuracy of the credit reports and Resurgent used the wires to "verify" the account.

79.     Defendants, through their agent Resurgent, hired Boudreau and Associates LLC in Salem NH and transmitted Andrew's data to that agent without any further evidence of indebtedness.  Between April 2011 until May 2012, Boudreau & Assoc. made numerous collection telephone calls.

80.     These daily telephone calls to Andrew's cellular and home phone included calls August 8 and 9 and October 5, 10, 12, 2011 (despite never sending the required FDCPA notice  letter) which prompted Andrew to send a dispute letter.

81.     Andrew's initial dispute letter led to Bourdeau & Assoc. mailing a response on or about October 17, 2011, falsely stating that LVNV was the current creditor and owed a debt.  Andrew responded again on October 17 and November 8, 2011, by outlining the need for verification of the alleged debt and the lack of LVNV's licensing and registration.  Neither of these letters were answered.

## Stephanie Snyder

82.     Stephanie Snyder is a disabled veteran.  She enrolled in college using her vocational rehab from the Veterans Administration.  However, to make ends meet, Stephanie incurred a massive student loan and credit cards including Sears. Upon graduation, Stephanie was not able to maintain payments.  After 180 days of default, Sears charged-off her credit card debt.

83.     Plaintiff Stephanie Snyder's interaction with Sherman is typical of the average Indiana consumer.  Unbeknownst to Stephanie, her Sears account was purportedly sold by Citibank (South Dakota) USA to SO which assigned to LVNV

on or about April 4, 2007.   On behalf of Citibank, Douglass C Morrison (senior officer in charge of securitization at Citibank) signed as CFO of "O&T Finance."

84.    On April 4, 2007, Resurgent immediately furnished a report to Experian, Equifax, and TransUnion that falsely stated that Stephanie owed a debt and that the invalid debt was owed to LVNV.  From April 2007 until October 2012, Resurgent transmitted monthly updates to each credit reporting agency which alone equated to 201 individual wire transactions.  In the calendar year 2012, reports were sent to all three credit bureaus on January 24, February 19, March 1, March 30, April 19, May 16, June 14, July 12, August 17, September 13, October 23, November 15 (the reports all made on the same day as the Andrew & Lucinda's reports).

85.    Defendants, through their agent Resurgent, hired a cadre of collection agents and transmitted Stephanie's data to the collection agents without any further evidence of indebtedness.  Between April 2007 until October 2007, Resurgent hired National Enterprise Systems in Solon, OH.  Between October 2007 until July 2008, Resurgent hired Northland Group Inc. in Edina, MN.  Between December 2008 until September 2009, Resurgent hired Allied Interstate Inc. in Columbus, OH.  Between September 2009 until March 2010, Resurgent hired Nelson, Watson & Associates LLC in Haverhill, MA.  Between March 2010 until September 2010, Resurgent hired Weltman, Weinberg  & Reis  in Cleveland, OH [WWR National Litigation Network has offices in Brooklyn Heights OH; Cincinnati OH; Columbus OH; Chicago IL; Detroit MI; Ft Lauderdale FL; Philadelphia PA;

Pittsburgh PA].  Between September 2010 until October 2012, Resurgent hired Wright Lerch & Litow LLP in Fort Wayne, IN.

86.    Stephanie received numerous harassing telephone calls to her work and cellular number (which were never provided to Sears).  The callers falsely threaten to "pursue the matter".  Stephanie was constantly asked to make a lump sum payment, which she did not have, and which she repeatedly explained to Resurgent's agent.  There are other telephone calls in Defendants' agents' possession which were made to incorrect or former telephone numbers.

87.    Specifically, Northland Group made telephone calls to Stephanie on October 27, October 28, October 29, November 2, November 5, November 6, and November 8, 2007.

88.    Nelson Watson & Assoc. made telephone calls to Stephanie on September 8, 9, 10, 11, 14,15, 16, 17, 18,21,222, 23, 24, 25, 26, 27, 28, 29, 30, 2009; October 1, 5, 6, 7, 8, 14, 19, 21, 26, 28, 29, 2009; November 2, 4, 5, 9, 11, 13, 16, 20, 24, 25, 27, 30, 2009; December 1, 2, 3, 4, 10, 2009; and February 1, 4, 10, 15, 17, 24, 25, 2010; and March 1, 4, 2010.

89.    Stephanie received numerous collection letters to Stephanie that all falsely stated "Current Creditor:  LVNV Funding LLC" and falsely stated that there was a "Current Balance Due."  There are other collection letters in Defendants' agents' possession which were mailed to incorrect or former addresses.

90.     Specifically, Northland Group mailed a collection letters to Stephanie on October 27[3], November 26, December 26, 2008 and January 25, March 10, and April 25, 2008.  Each letter falsely stated that "Current Creditor: LVNV Funding LLC" and that there was a "Current Balance Due."

91.     Allied Interstate mailed a collection letter to Stephanie on December 15, 2008 and February 9, 2009.  Each letter falsely stated that "Creditor: LVNV Funding LLC" and falsely stated an "Amount Due."

92.     Nelson Watson & Assoc. mailed collection letters to Stephanie on September 9, October 9, 2009; and February 9. 2010.  Each letter falsely stated that "Current Creditor: LVNV Funding LLC" and falsely stated a "Total Balance."

93.     Wright & Lerch mailed collection letters to Stephanie on October 7, November 22, 2010 and March 30, July 22, 2011.  The October 10 letter falsely stated that "Creditor: LVNV Funding LLC" and that "the creditor advises us that you owe a balance."  The other letters state that "Our client: Resurgent Capital Services LP" and "there remains a balance due on the account."

94.     On or about September 28, 2010, Resurgent contracted with Wright & Lerch.  On or about September 30, 2010, Wright & Lerch used the internet to contact Experian to "skip trace" Stephanie.   On or about January 11, 2011, Wright & Lerch emailed to Resurgent a document grading a potential suit against Stephanie.

95.     On April 11, 2011, a lawsuit was filed in Hamilton County Superior Court via mail by Wright & Lerch on behalf of LVNV against Stephanie.  However,

---

[3] The October 27, 2007 letter stated that the current creditor is "Resurgent Capital Services LP."

the notice of the Complaint was mailed to an address Stephanie had not resided in

for over 5 years.  This despite the fact that other collection agencies were able to

obtain her correct address and telephone number.  However, lack of Stephanie's

actual address did not prevent the law firm from filing a Complaint or requesting a

Default Judgment after receiving notice that Stephanie had not received the

Complaint.  The Complaint contained the false statements that Stephanie "is

indebted to" LVNV "on an outstanding balance of $3637.05" which included pre-

judgment interest.

96.     The only evidence attached to the Complaint was a fill-in-the-blank

Affidavit of Debt executed by an employee of Resurgent falsely stating that

Stephanie was indebted to LVNV.

97.     As often is the case with the deluge of lawsuits filed in Indiana by

LVNV, a default judgment was entered.  The default judgment was based on an

affidavit signed by Resurgent's employee and based on the purchased data.  The

Complaint had no other proof of indebtedness.  The affidavit is identical to others

filed in Indiana courts.  Further, the law firm used the wires to contact the

Department of Defense Manpower Data Center in Arlington VA to verify active

military status.

98.     After multiple Proceeding Supplementals, skip tracing, interrogatories

to former employers, and court orders to the Indiana Department of Workforce

Development which were all facilitated by use of the mails and interstate wires, the

law firm finally mailed notice to Stephanie of the lawsuit with a potential bench warrant for failure to appear.

99.    On August 1, 2012, Stephanie nervously appeared at the Hamilton County Court as she thought she could potentially be going to jail.  Stephanie gave her name to a lady with a clipboard standing outside the courtroom who directed her into a room across from the courtroom.  Inside this room, Stephanie was approached by an attorney who asked her questions regarding her income and expenses and her address and telephone number.  Stephanie began to cry at which point the attorney told her that he would recommend to his client to forgive part of the alleged debt and set up a payment plan for the remainder.  This calmed Stephanie who then asked about meeting the judge.  The attorney informed her that the case was not on the docket to be heard, he said the only reason that asked the court for a subpoena was "because that is the only way people show up"; that the only reason to talk to the judge is if there is a problem; and while she could meet the judge they first had to ask the clerk with no guarantees that the judge would talk to them.  Stephanie had to return to work and felt no reason to wait for a chance to meet a judge when she did not know what to say and had been seemingly offered a reasonable payment plan.  As Stephanie left, the attorney gave her paperwork to the court staff and said that "someone" would contact Stephanie regarding the write off and new payments.

100.    On or about August 3, September 14, September 28, and October 12, 2012, Stephanie's paycheck was garnished in the amount of $1146.56.  The monies

were remitted to the Hamilton Superior Court which remitted the monies via US Mail to Wright & Lerch.  Wright & Lerch remitted the monies to Resurgent via the US Mail or wire.

101.    Unable to pay her basic living expenses, Stephanie was forced to retain the legal counsel and file a bankruptcy.  The bankruptcy trustee reported that her case may potentially be an asset case depending upon the amount of her tax return. In order to potentially collect on an asset, Resurgent electronically filed a proof of claim with the US Federal Bankruptcy Court in Indianapolis on March 28, 2013. The proof of claim was objected to for lack of documentation supporting indebtedness and Resurgent electronically filed an amended proof of claim on May 6, 2013.  Both claims falsely stated that the "name of creditor" was "LVNV Funding LLC" and that there was an "amount due".   Also, on May 6, 2013, the Law Office of Karl T. Ryan in Indianapolis IN electronically filed a Response to the Objection on behalf of LVNV.  That Response falsely stated that "the current creditor of the account (LVNV)" and "balance due and owing."

## **Robert Goodall**

102.    Robert Goodall obtained and paid on a Chase credit card from 2002 until 2007 when he was involved in a serious accident resulting in unemployment. After struggling to provide for his family and pay his credit cards, Mr. Goodall could no longer keep up with the credit card payments.  After 180 days of default, Chase charged off the credit card debt.

103.    Robert eventually was able to obtain better employment, but by then was deep in debt.  His creditors refused to work with him and demanded full payment.  Fearing garnishment, Robert was forced into bankruptcy on September 30, 2010.  However, Robert agreed to pay back the creditors.

104.    Robert was unaware that on September 9, 2010 his account was purportedly sold to SOIII which transferred to SO which transferred to LVNV.

105.    Subsequently, Resurgent filed a proof of claim with the US District Bankruptcy Court in Indianapolis on February 10, 2011.  The Claim states that "Name of Creditor (the person or other entity to whom the debtor owes money or property):  LVNV Funding LLC."  The proof of claim is signed by "Joyce Montjoy."  Upon information and belief, the signer was deceased.

106.    The Trustee received proceeds from the accident and was preparing to pay on the LVNV claim.  Counsel filed an objection to the LVNV claim.  LVNV then supplemented the proof of claim on 12/30/14.  Once again LVNV falsely stated that it was "Creditor".  However, the amount of claim changed from "7,942.52" to "7904.41" due to this time upon an old statement.  Based on the Resurgent card and signature under penalty of perjury, the Trustee has remitted to Resurgent via wire "$7904.41" in 2014.

**Mail & Wire Fraud**

107.    Defendants devised a scheme to defraud, obtain money or property, and unlawfully transfer the money by means of false or fraudulent pretenses and

representations under the guise of "debt buying" and employed the Corporate

Defendants to implement the scheme.  Defendants knowingly devised or knowingly

participated in a scheme or artifice to defraud the Plaintiffs or to obtain money or

property of Plaintiffs by means of false or fraudulent pretenses, representations, or

promises.  The scheme includes but is not limited to:

a.  Purchasing and receiving data from originating banks and other third
    party "data buyers" without Plaintiffs' knowledge;

b.  Transferring data to a holding vehicle without Plaintiffs' knowledge;

c.  Creating a collateralized debt obligation without Plaintiffs' knowledge

d.  Selling data to investors of a collateralized debt obligation without
    Plaintiffs' knowledge;

e.  Locating the Plaintiffs by impermissibly pulling credit reports and hiring
    skip tracers;

f.  Making false reports to credit reporting agencies against the Plaintiffs
    under the false pretense of a valid debt and that the invalid debt was
    owed to LVNV in violation of the Fair Credit Reporting Act;

g.  Hiring subcontractors to send collection letters to Plaintiffs under the
    false pretense of a valid debt and that the invalid debt was owed to LVNV;

h.  Providing subcontractors with GLB Act notices to mail to Plaintiffs that
    improperly omitted an opt-out clause for use of plaintiffs' nonpublic
    personal information;

i.  Hiring subcontractors to make telephone calls to Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

j.  Hiring subcontractors to file lawsuits against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

k.  Hiring subcontractors to obtain default judgments against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

l.  Producing and filing fraudulent affidavits against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

m.  Producing and filing fraudulent proofs of claims in bankruptcy courts against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV;

n.  Using judgments obtained against Plaintiffs under the false pretense of a valid debt and that the invalid debt was owed to LVNV to freeze bank accounts, put levies on property, and garnish paychecks of Indiana consumer;

o.  Reinvesting the monies collected under false pretenses into purchasing more data about charged-off accounts and nonpublic personal information to perpetuate the scheme.

108.  Defendants could foresee that the U.S. Postal Service and interstate wires would be "used for the purpose of" advancing, furthering, executing,

concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 USC 1341 and 1343.

109.    Defendants, through their agent Resurgent, have employed over 150 collection agencies and law firms around the country.

110.    Defendants, through their agent Resurgent, contract with collection agencies to employ traditional collection methods on behalf of LVNV.  These collection agencies have included, but are not limited to, the following:  Capital Management Services LP (listed on Exh. as "subsidiary/affiliate" with offices in Buffalo NY, Las Vegas NV, Houston TX, Greenville SC), Brachfeld Law Group PC (Houston TX and El Segundo CA); Northland Group (Edina MN); Vital Recovery Services (Norcross GA); NES (Solon, OH); Nelson Watson & Associates LLC (Haverhill. MA); Allied Interstate (Tempe, AZ); Boudreau & Associates (Salem NH); Phillips & Cohen Associates (Newark, DE);  Zwicker & Associates (Andover MA) Tate & Kirlin (Philadelphia PA); Blitt & Gaines (Wheeling IL); Weinstein & Riley (Seattle, WA). (Hereinafter collectively referred to as the "Collection Agency Enterprise.")

111.    Defendants, through their agent Resurgent, contract with law firms, which often previously acted through traditional collection methods, to employ litigation-related collection actions on behalf of LVNV.  These law firms have included, but are not limited to the following:  Blatt Hasenmiller Leibsker & Moore LLC (Chicago IL, Phoeniz AZ, Indianapolis, Philadelphia PA, Bingham Farms MI); Bowman, Heintz, Boscia & Vician (Chicago & Merrillville & Indianapolis); Greene

& Cooper PSC (Louisville KY, Cincinnati OH, Roswell GA); Lloyd & McDaniel PLC (Louisville KY); Stenger & Stenger (Grand Rapids MI); Weltman Weinberg & Reis (Cleveland & Columbus OH); Wright & Lerch (Fort Wayne); Javitch, Block & Rathbone LLP (Cleveland OH); Mapother & Mapother (Louisville KY); Borns & Steele PC (Merrillville IN) (hereinafter collectively referred to as the "Law Firm Enterprise"). Some of these law firms, like Weltman Weinberg & Reis, have their own network of attorneys in various states. The law firms use the wire to conduct skip tracing from sources such as Experian and LexisNexus. The out of state and non-local law firms use the mail to file Complaints, motions for Proceedings Supplemental, and interrogatories to employers with Indiana Courts. The law firms use the wire to contact the Department of Defense's Manpower Data Center in Virginia to check active military status. The out of state law firms often employ their own subcontractors (local attorneys) to appear at court hearings.

112.    This litigation-related collection activity names LVNV plaintiff and seeks judgment on affidavit produced by the law firm and executed by a Resurgent employee based not on personal knowledge but data referencing a charged-off account. In addition to LVNV's case history of failure to possess any evidence of indebtedness, Defendants have already been found to have "knowingly submitted false Affidavits" which "were intended to deceive both the courts and the defendant consumers" in thousands of similar cases filed in Maryland. *See Summary Order to Cease and Desist and Summary Suspension of Collection Agency Licenses*, dated

10/25/11, issued by the Maryland State Collection Agency Licensing Board in the Office of the Commissioner of Financial Regulation, in Case No.: DFR-FY2012-012.

113.    Defendants, through their agent Resurgent, directly engage in collection activity by furnishing  reports to Experian, Equifax, and TransUnion. These reports are produced by Resurgent based not on personal knowledge by data referencing a charged-off account.

114.    Defendants, through their agent Resurgent, directly engage in collection activity by filing proofs of claim in Indiana bankruptcy courts.  These proofs of claim are produced by Resurgent and executed by a resurgent employee based not on personal knowledge but data referencing a charged-off account.

115.    Defendants, through the SFG subsidiary Credit One Bank NA, directly engage in collection activity by the issuance of a Credit One credit card and placing the settlement as a balance on the new credit card.  The receivables are securitized by MHC Receivables LLC.  If a default occurs, the data can be recycled by sale to the LVNV CDO.

116.    Defendants could foresee that the US Postal Service and interstate wires would be used in every dunning letter, telephone call, credit report, proof of claim, and court judgment and enforcement; and each use of the mails and wires has furthered the fraudulent scheme and enabled Defendants to take money and property from Plaintiffs and putative class members by means of false pretenses and misrepresentations.

117.    In particular, Defendants knew or could foresee that the US Postal Service and interstate wires would be used to receive and/or deliver, *inter alia*, communications between Defendants for the purpose of purchasing Plaintiffs' data from originating banks and other third party data buyers; locating the Plaintiffs; outsourcing the collection of Plaintiffs data to third parties, mailing dunning letters to Plaintiffs; telephone calls to Plaintiffs' home, cell, and work numbers; reporting Plaintiffs to credit reporting agencies; and filing lawsuits against Plaintiff's in furtherance of the fraudulent scheme.

118.    Each and every Defendant has specific knowledge that the mails and wires are being utilized in furtherance of the overall purpose of executing the scheme to defraud, and/or it was reasonably foreseeable that the mails and wires would be used.  Without the use of the mails and wires, Defendants could not have made contact with Indiana consumers nor received money from Indiana consumers.

119.    Defendants, acting singly and in concert, personally or through their agents, used the US Postal Service and interstate wires or caused the US Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud Indiana consumers within the meaning of 18 USC 1341 and 1343.

120.    It is not possible for Plaintiffs to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many such communications are within the

exclusive control and within the exclusive knowledge of defendants and their agents.

121.   By way of example, Defendants, through their agents (e.g.  Resurgent, members of the Law Firm Enterprise, and members of the Collection Agency Enterprise), specifically used the US Postal Service or interstate wires or caused the US Postal Service or interstate wires to deliver each and every telephone call, email, and letter described in paragraphs 64 - 106, including but not limited to those detailed in the below chart, for the purpose of advancing, furthering, executing, and concealing the scheme to defraud Plaintiffs.

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | |
| Andrew & Lucinda Cox Communications | | | | |
| Wire | 12/10/10 | Chase – NY | SCM – SC | Purchase Agreement of Charged-Off Accounts |
| Wire | 4/7/11 | Chase – NY | SOIII c/o SCM – SC | Transfer of Coxes nonpublic personal information ("NPI") |
| Wire | 4/11/11 | LVNV – SC | Resurgent – OH | Transfer of Coxes NPI |
| Wire | 4/11/11 | Resurgent - SC | Experian – CA | Furnish false r report that debt owed & owed to LVNV |
| Wire | 4/13/11 | Resurgent – SC | Weltman Weinberg Reis – OH | Hire WWR to collect under false pretense of a debt and owed to LVNV |
| Wire | 4/13/11 | Resurgent – SC | WWR – OH | Transfer of Coxes NPI |
| Mail | 7/6/11 | WWR – OH | Coxes – IN | Collection |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | letter falsely stating debt and owed to LVNV |
| Telephone | 7/11/11 | WWR – OH | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| Wire | 8/29/11 | Resurgent – SC | Brachfeld – CA | Hire Brachfeld to collect under false pretense of a debt and owed to LVNV |
| Wire | 8/29/11 | Resurgent – SC | Brachfeld – CA | Transfer of Coxes NPI |
| Telephone | 9/9/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 9/16/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 9/27/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Mail | 10/6/11 | Brachfeld – TX | Coxes – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt- out |
| Telephone | 10/11/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Telephone | 10/30/11 | Brachfeld – TX | Coxes – IN | Collection call |
| Mail | 11/9/11 | Brachfeld – TX | Coxes – IN | Validation Letter falsely stating debt and owed to LVNV |
| Telephone | 11/30/11 | Brachfeld – TX | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| Telephone | 12/6/11 | Brachfeld – CA | Coxes – IN | Collection call falsely stating debt and owed to LVNV |
| **Andrew Cox Communications** | | | | |
| Wire | 12/10/11 | Chase – NY | SCM _SC | Purchase Agreement of Charged-off |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | Accounts |
| Wire | 4/8/11 | Chase – NY | SOIII c/o SCM – SC | Transfer of Andrew's NPI |
| Wire | | LVNV – SC | Resurgent – OH | Transfer of Andrew's NPI |
| Wire | 4/11/11 | Resurgent – SC | Experian – CA | False credit report that debt owed & owed to LVNV |
| Wire | | Resurgent – SC | Boudreau – NH | Hire Boudreau to collect under false pretense of a debt and owed to LVNV |
| Wire | | Resurgent – SC | Boudreau – NH | Transfer of Andrew's NPI |
| Telephone | 8/8/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 8/9/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 10/5/11 | Boudreau- NH | Cox – IN | Collection call |
| Telephone | 10/11/11 | Boudreau – NH | Cox – IN | Collection call |
| Telephone | 10/12/11 | Boudreau – NH | Cox – IN | Collection call |
| Mail | 10/17/11 | Boudreau – NH | Cox – IN | Collection letter falsely stating debt and owed to LVNV |
| **Stephanie Snyder Communications** | | | | |
| Wire | 4/4/07 | Citibank – SD | SCM – SC | Purchase Agreement of Charged-Off Accounts |
| Wire | 4/4/07 | Citibank – SD | SO c/o SCM – SC | Transfer of Snyder's NPI |
| Wire | 4/4/07 | LVNV – SC | Resurgent – OH | Transfer of Snyder's NPI |
| Wire | 4/4/07 | Resurgent– SC | Experian – CA | False credit report that debt owed & owed to LVNV |
| Wire | 4/4/07 | Resurgent – SC | Equifax – GA | False credit report that debt owed & owed to LVNV |
| Wire | 4/4/07 | Resurgent – SC | TransUnion – IL | False credit report that |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | debt owed & owed to LVNV |
| Wire | 4/13/07 | Resurgent – SC | NES – OH | Hire NES to collect under false pretense of a debt and owed to LVNV |
| Wire | 4/13/07 | Resurgent – SC | NES – OH | Transfer of Snyder's NPI |
| Wire | 10/11/07 | Resurgent – SC | Northland - MN | Hire Northland to collect under false pretense of a debt and owed to LVNV |
| Wire | 10/11/17 | Resurgent – SC | Northland - MN | Transfer of Snyder's NPI |
| Mail | 10/27/07 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to Resurgent |
| Mail | 11/26/07 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 1/25/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 3/8/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 4/25/08 | Northland – MN | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Wire | 4/11/08 | Resurgent – SC | Allied Interstate – OH | Hire Allied Interstate to collect under false pretense of a debt and |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | owed to LVNV |
| Wire | 4/11/08 | Resurgent – SC | Allied Interstate - OH | Transfer of Snyder's NPI |
| Mail | 12/15/09 | Allied Interstate – OH | Snyder – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt-out |
| Mail | 2/9/09 | Allied Interstate – OH | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Wire | 9/4/09 | Resurgent – SC | Nelson Watson – MA | Hire Nelson Watson to collect under false pretense of a debt and owed to LVNV |
| Wire | 9/4/09 | Resurgent – SC | Nelson Watson – MA | Transfer of Snyder's NPI |
| Wire | 9/7/09 | Nelson Watson – MA | Experian – CA | Skip tracing to update Snyder's NPI |
| Mail | 9/9/09 | Nelson Watson – MA | Snyder – IN | Collection letter falsely stating debt and owed to LVNV; improper GLB Act notice with no opt-out |
| Wire | 9/10/09 | Nelson Watson – MA | LexisNexis – OH | Skip tracing to update Snyder's NPI |
| Mail | 10/13/09 | Nelson Watson – MA | Snyder – IN | Collection letter falsely stating debt and owed to LVNV |
| Mail | 2/9/10 | Nelson Watson – MA | Snyder – IN | Collection letter falsely |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | stating debt & owed to LVNV |
| Wire | 3/16/10 | Resurgent – SC | WWR – OH | Hire WWR to collect under false pretense of a debt and owed to LVNV |
| Wire | 3/16/10 | Resurgent – SC | WWR – OH | Transfer of Snyder's NPI |
| Wire | 9/28/10 | Resurgent – SC | Wright Lerch - IN | Hire Wright Lerch to collect under false pretense of debt and owed to LVNV |
| Wire | 9/28/10 | Resurgent – SC | Wright Lerch – IN | Transfer of Snyder's NPI |
| Wire | 9/30/10 | Wright Lerch – IN | Experian – CA | Skip tracing to update Snyder's NPI |
| Telephone | 11/12/10 | Wright Lerch – IN | Bethany College – KS | Collection call to Snyder's former employer |
| Wire | 3/7/11 | Wright Lerch – IN | Resurgent – SC | Sent affidavit falsely stating that there is a debt & owed to LVNV; and signed with personal knowledge |
| Wire | 3/14/11 | Resurgent – SC | Wright Lerch – IN | Signed affidavit sent |
| Wire | 3/25/11 | Wright Lerch – IN | DOD – VA | Verify active military status |
| Wire or Mail | 9/4/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 9/17/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 10/1/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely garnished wages |
| Wire or Mail | 10/19/12 | Wright Lerch – IN | Resurgent – SC | Remit falsely |

| Type of Communication | Date | From | To | Purpose |
|---|---|---|---|---|
| | | | | garnished wages |
| | | | | |
| Wire | 10/23/12 | Resurgent – SC | Experian – CA Equifax – GA TransUnion - IL | Credit Report falsely stating a debt and owed to LVNV |
| | | | | |
| | Robert Goodall Communications | | | |
| Wire | 2/10/11 | Resurgent – SC | US Court – IN | File proof of claim falsely stating a debt owed & owed to LVNV |
| Wire | 3/7/14 | US Trustee – IN Authorize Suntrust – TN | Resurgent – SC | Wire transfer of $651.75 |
| Wire | 4/4/14 | US Trustee – IN Authorize Suntrust – TN | Resurgent – SC | Wire transfer of $7252.55 |
| | | | | |
| | | | | |

122.    Some of the wire communications may have occurred between entities in the same state but upon information and belief crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication and that the Sherman Entities have an office in Charleston SC and Resurgent has offices in Greenville SC, Houston TX, and Cincinnati OH.  Further, LVNV has a business address in Las Vegas, Nevada.

123.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency

Enterprise), with the specific intent to defraud Plaintiffs, was committed for the purpose of obtaining the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, or promises. Defendants', through their agents, (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), acts of mail and wire fraud in violation of 18 USC 1341 and 1343 constitute "a pattern of racketeering activity" within the meaning of 18 USC 1961(1)(B).

124.   Plaintiffs justifiably relied on Defendants', (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Plaintiffs have suffered direct and proximate harm as a result of Defendants' misrepresentations, omissions, deceptions and acts of concealment as more fully set forth above.  Specifically, damage to their credit ratings, loss of money from bank levies and garnishments, judgment liens placed on property, harassing phone calls and letters, invasion of privacy, and payment of legal defense fees was suffered as described in paragraphs 64 - 106.  All Class members suffered similar loss.

## **Interstate Transportation of Stolen Property**

125.   Defendants devised and intended to devise a scheme or artifice to defraud and obtain Plaintiffs' money by false pretenses, representations or promises and transported or caused to be transported  money in interstate commerce in the

execution or concealment of the scheme or artifice to defraud in violation of 18 U.S.C. § 2314.  In particular, Defendants through their agents (e.g. Resurgent, the members of the Law Firm Enterprise and members of the Collection Agency Enterprise), among other things, transported and caused to be transported in interstate money that belonged to Plaintiffs through voluntary and involuntary payments including bank freezes, garnishment, and bankruptcy claims and had a value in excess of $5,000.

126.    Specifically, Stephanie Snyder's garnishment monies went from her employer to the Hamilton County Court to the law firm to Resurgent in South Carolina.  Specifically, Robert Goodall's monies went to a bank in Memphis TN (Suntrust) where a Trustee in Indianapolis authorized a wire transfer to Resurgent in South Carolina.

127.    Interstate transportation of stolen property was an extension of the scheme to defraud as the wrongfully paid money from Plaintiffs to Defendants was transported out of the State of Indiana.

## **Extortion**

128.    Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise),, obstructed, delayed, or affected commerce and/or the movement of articles or commodities in commerce, by extortion or attempted or conspired to do so in violation of 18 U.S.C. § 1951

129.    Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise),  obtained money and property from Plaintiffs, with their consent, induced by wrongful use of actual or threatened fear in the form of "sham" collection techniques including actual or threaten litigation.  It is sham litigation in that there is no debt.

130.    Particularly, Defendants, through their agent Resurgent and Wight & Lerch, filed a lawsuit against Stephanie Snyder.  The Lawsuit falsely named LVNV as Plaintiff and falsely complained of a debt.

131.    The Snyder lawsuit was particularly wrongful as Wright & Lerch sent the Complaint to the wrong address.  Defendants, through their agents Resurgent and Wright & Lerch, were aware the address was wrong and intended to exploit that knowledge to its financial advantage to be awarded an uncontested default judgment.  Further, failure to attend a Proceeding Supplemental is grounds for a court to issue a body attachment.  Snyder feared that she would be put in jail for not paying and did not know how to respond since the Complaint looked legitimate.

132.    The Defendants scheme plays upon the Indiana consumers' fears of imprisonment for owing a debt as well as avoidance of garnishments and other asset seizures which results in voluntary payments and uncontested litigation.

## CLASS ACTION ALLEGATIONS

133.    This action is brought on behalf of the following three classes:

1.  The FDCPA Subclass consists of (i) all Indiana citizens (ii) whom were the subject of collection activity by the Defendants or Defendants'

agents (iii) in an attempt to collect a debt incurred for personal, family, or household purposes (iv) which were served with process or contacted in any matter by Defendants or Defendants' agents (v) during the one year period prior to the filing of this original complaint in this action through trial of this cause which are in violation of the FDCPA.

2. The Rico Subclass consists of (i) all Indiana citizens (ii) who paid money to Defendants (iii) under Defendants scheme to defraud (iv) using the mail and/or wires; (v) and/or interstate transportation of stolen property; (vi) and/or extortion (vii) during the four year period prior to the filing of the original complaint in this action through the trial of this cause.

3. The Restitution Subclass consists of (i) all Indiana citizens (ii) who paid money to Defendants (iii) in regard to an alleged debt owed to Defendants (iv) during the six year period prior to the filing of the original complaint in this action through the trial of this cause.

134.    Plaintiffs allege that the class is so numerous that joinder of all members of the class is impractical.

135.    During the period November 2008 through November 2011, in the State of Indiana, Sherman collected on at least 622,447 consumer accounts.  The total amount that Sherman collected from Indiana consumers during the time period was at least $52,105,907.37.

136.   During the period December 2011 through November 15, 2013, in the State of Indiana, Sherman collected on at least 551,775 consumer accounts.  The total amount that Sherman collected from Indiana consumers during the time period was at least $27,834,508.13.

137.   During the period November 2008 through November 2011, in the State of Indiana, Sherman filed at least 13,666 lawsuits against Indiana consumers. The total amount that Sherman collected from Indiana consumers during the time period as a result of the lawsuits was at least $12,126,354.00.

138.   During the period December 2011 through November 15, 2013, in the State of Indiana, Sherman filed at least 19,774 lawsuits against Indiana consumers. The total amount that Sherman collected from Indiana consumers during the time period as a result of the lawsuits was at least $6,764,066.79.

139.   There are questions of law or fact common to the classes, which common issues predominate over any issues involving only individual class members.

140.   The common factual issue common to the FDCPA Subclass is whether members were subject to collection activity by or on behalf of Sherman.  The principal legal issue for the FDCPA Subclass is whether Sherman engaged in debt collection with no legal standing in violation of the FDCPA.

141.   The common factual issue to the RICO Subclass is whether Sherman committed a scheme of fraud using the mail, wireless, telephone, faxes, and internet and/or interstate transportation of stolen property and/or extortion.

142.    The common factual issue common to the Restitution Subclass is whether Sherman received a monetary benefit from members.  The principal legal issue for the Restitution Class is whether Sherman engaged in collection without legal standing and whether it would be inequitable for Sherman to retain the benefit without paying fair value for it, in violation of common law.

143.    Plaintiffs' claims are typical of those of the class members.  All are based on the same facts and legal theories.

144.    Plaintiffs will fairly and adequately protect the interests of the classes.  Plaintiffs have retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions.  Neither Plaintiffs nor Counsel have any interest which might cause them not to vigorously pursue this action.

145.    Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

(1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.

(2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## <u>CLAIMS FOR RELIEF</u>

## <u>COUNT I</u>

## <u>FAILURE TO ACTUALLY OWN THE<br>DEBT IN VIOLATION OF THE FDCPA</u>

146.    On behalf of FDCPA Subclass members, Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporate same by reference as if all were set forth fully herein.

147.    The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose.

148.    Sherman is precluded from relying on any *bona fide* error defense which relies upon a mistaken interpretation of the legal duties imposed by the FDCPA.

149.    Sherman is strictly liable under the FDCPA upon a finding of a single violation of the Act.

150.    The furnishing of a debt to a credit reporting agency by a debt collector is a communication to which the FDCPA applies.

151.    All Defendants are a "debt collector" as the FDCPA defines a debt collector as any person who uses any instrumentality of interstate commerce, or the mails, the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, *directly or indirectly*, debts owed or asserted to be owed or due to another. 15 U.S.C. § 1692(a)(6).

152.   Under the FDCPA, "Debt" includes an "alleged obligation." 15 U.S.C. § 1692a(5).

153.   Each of the Sherman Entities, as a purchaser or assignee of defaulted debt, is a debt collector under the FDCPA.

154.   All defendants are liable for Sherman's actions, because the various corporate veils created by defendants are shams and should be pierced.

155.   With respect to each class member, LVNV does not legally own a debt, but solely possesses information and data about consumer transactions.

156.   Defendants' actions violate 15 U.S.C. 1692 e of the FDCPA.

157.   Defendants' actions violate 15 U.S.C. §1 692e(5), by making a "threat" to take an action that cannot legally be taken.

158.   Defendants' actions violate 15 U.S.C. 1692 e (2) (A) of the FDCPA by false representing the "character, amount, or legal status" of a non-existent debt.

159.   Defendants' actions violate 15 U.S.C. 1692 e (10) of the FDCPA.

160.   Defendants' actions violate 15 U.S.C.1692 f of the FDCPA.

161.   Defendants' actions violate 15 U.S.C. 1692 f (1) of the FDCPA. Because Sherman has no legal ownership of a debt and as such has no agreement expressly authorizing collection amounts including interest.

***Wherefore***, Plaintiffs, on behalf of the FDCPA Subclass, request that the Court enter judgment in favor of Plaintiffs and the FDCPA Subclass and against Defendants for:

1.  Actual Damages;

2. Statutory damages;

3. Attorney's fees, litigation expenses and costs of the instant suit; and

4. Such other relief as the Court deems proper.

## COUNT II

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)

162.   Plaintiffs reallege and restate paragraphs 1 through 161.

163.   Navarro, Gutierrez, Silver, Branigan, Roderick, Kendall, SCM, and SOIII participated in the RICO offense but have been dismissed with prejudice for lack of personal jurisdiction.  Defendants Sherman Capital, SFG, SO, LVNV, and Resurgent are hereinafter referred to as the "RICO Defendants."

164.   The following individuals (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated in fact":  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall ("Management Enterprise").

    a. Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Management Enterprise's affairs.
    b. Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall share the common purpose of (among other things) defrauding members of the plaintiff class of money or property;
    c. Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are related in that they are owners, officers, directors, agents and executives within Sherman Capital, SFG, SO, SOIII, SCM, LVNV, and Resurgent.

    d.  The Management Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Management Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

    e.  Since April 2005, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the Management Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's, Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

165.    In the alternative to paragraph 164, SFG, LVNV, and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

    a.  Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of SFG's, LVNV's, and Resurgent's affairs.

    b.  Since April 2005 and continuing through the present, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the SFG, LVNV, or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's, Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

166.    In the alternative to paragraphs 164 and 165, the following legal entities (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are "a group of individuals associated

in fact": Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent ("Sherman

Group Enterprise").

    a. Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Sherman Group Enterprise's affairs.

    b. Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent share the common purpose of (among other things) carrying out Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall's scheme to defraud members of the plaintiff class of money or property;

    c. Sherman Capital, SFG, SO, SOIII, LVNV, SCM and Resurgent are related in that they are all subsidiaries, affiliates, agents and/or subcontractors of the Sherman Group.

    d. The Sherman Group Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Sherman Group Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

    e. Since April 2005, Navarro, Gutierrez, Silver, Branigan, Roderick, and Kendall have each individually conducted, participated in, engaged in, and operated and managed the affairs of the Sherman Group Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Navarro's, Gutierrez's, Silver's, Branigan's, Roderick's, and Kendall's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

167.    The following legal entities (or any combination thereof) constitute an

"enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are

"a group of individuals associated in fact":  SCM, SO, SOIII, LVNV and Resurgent

("Sherman Collection Enterprise").

    a. Sherman Capital and SFG are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Sherman Collection Enterprise's affairs.

b. SCM, SO, SOIII, LVNV, and Resurgent share the common purpose of (among other things) defrauding members of the plaintiff class of money or property;

c. SCM, SO, SOIII, LVNV, and Resurgent are related in that they are all involved in the operation and management of a collateralized debt obligation including collections on behalf of Sherman.

d. The Sherman Collection Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Sherman Collection Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

e. Since April 2005 and continuing to the present, Sherman Capital and SFG have each individually conducted, participated in, engaged in, and operated and managed the affairs of SCM, SO, SOIII, LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Sherman Capital's and SFG's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

168. In the alternative to paragraphs 167, SCM, SO, SOIII, LVNV and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

a. Sherman Capital and SFG are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of SCM's, SO's, SOIII's, LVNV's or Resurgent's affairs.

b. Since April 2005 and continuing to the present, Sherman Capital and SFG have each individually conducted, participated in, engaged in, and operated and managed the affairs of the SCM, SO, SOIII, LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Sherman Capital's and SFG's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

169. The following legal entities (or any combination thereof) constitute an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that they are

"a group of individuals associated in fact": LVNV and Resurgent ("LVNV / Resurgent Enterprise").

   a. SCM, SO and SOIII are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the LVNV / Resurgent Enterprise's affairs.
   b. LVNV and Resurgent share the common purpose of (among other things) defrauding members of the plaintiff class of money or property on behalf of Sherman;
   c. SCM, LVNV and Resurgent are related in that they are operated and managed by SCM.
   d. The LVNV / Resurgent Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the LVNV / Resurgent Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).
   e. Since April 2005 and continuing to the present, SCM, SO, SOIII have individually conducted, participated in, engaged in, and operated and managed the affairs of the LVNV / Resurgent Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). SCM's, SO's and SOIII's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

   170.   In the alternative to paragraph 169, LVNV and Resurgent are each a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

   a. SCM, SO, and SOIII are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of LVNV's or Resurgent's affairs.
   b. Since April 2005 and continuing to the present, SCM, SO, and SOIII have individually conducted, participated in, engaged in, and operated and managed the affairs of LVNV or Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). SCM's, SO's, and SOIII's pattern of racketeering activity consists of the acts of mail and wire fraud (described in

paragraphs 64-124 *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

171.   Resurgent is a legal entity that constitutes an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c).

    a.   LVNV is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of Resurgent's affairs.

    b.   Since April 2005 and continuing to the present, LVNV has conducted, participated in, engaged in, and operated and managed the affairs of Resurgent through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). LVNV's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

172.   In the alternative to paragraphs 164 – 171, ,the Law Firm Enterprise an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c), in that its members are "a group of individuals associated in fact".

    a.   Each RICO Defendant is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Law Firm Enterprise's affairs.

    b.   The Members of the Law Firm Enterprise share the common purpose of (among other things) carrying out the RICO Defendants' scheme to defraud members of the plaintiff class of money or property;

    c.   The Members of the Law Firm Enterprise are related in that they all employed by Resurgent to collect debt through litigation-related collection activitiess on behalf of the Sherman Group.

    d.   The Law Firm Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Law Firm Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).

    e.   Since April 2005 and continuing to the present, each RICO Defendant has conducted, participated in, engaged in, and operated and managed the affairs of the Law Firm Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1),

64

1961(5) & 1962(c). Each RICO Defendant's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

173.    In the alternative to paragraphs 164 – 172, the Collection Agency

Enterprise is an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c),

in that its members are "a group of individuals associated in fact",

a.  Each RICO Defendant is a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c), who individually associated with and/or participated in the conduct of the Collection Agency Enterprise's affairs.
b.  The Members of the Collection Agency Enterprise share the common purpose of (among other things) carrying out the RICO Defendants' scheme to defraud members of the plaintiff class of money or property;
c.  The Members of the Collection Agency Enterprise are related in that they all employed by Resurgent to collect debt through traditional collection activities on behalf of the Sherman Group.
d.  The Collection Agency Enterprise possesses sufficient longevity for the members to carry out their purpose(s) in that the Collection Agency Enterprise has existed since April 2005, continues to operate to the present, and threatens to operate until November 2035 (at a minimum).
e.  Since April 2005 and continuing to the present, each RICO Defendant has conducted, participated in, engaged in, and operated and managed the affairs of the Collection Agency Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Each RICO Defendant's pattern of racketeering activity consists of the acts of mail and wire fraud (described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraph 128-132, *supra*).

174.    At all relevant times, the enterprises alleged in paragraphs 162 – 173

(*supra*) were engaged in, and their activities affected, interstate commerce and

foreign commerce.

175.   All of the acts of racketeering described in paragraphs 162 – 173 (*supra*) were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud the plaintiff class members of money and property, their common result was to defraud the plaintiff class members of money and property; each RICO Defendant, personally or through his/its agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission; consumers whose debt information had been acquired by the RICO Defendants were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

176.   All of the acts of racketeering described in paragraphs 162-174 (*supra*) were continuous so as to form a pattern of racketeering activity in that the RICO Defendants engaged in the predicate acts over a substantial period of time or in that the RICO Defendants' acts of racketeering are the regular way in which the RICO Defendants have done and continue to do business and threaten to continue indefinitely.

177.   As a direct and proximate result of, and by reason of, the activities of the RICO Defendants, and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c).  Among other things, Plaintiffs suffered damages to the extent their money or property was subject to bank freeze, judicial liens, garnishments, lower credit ratings, hiring of legal counsel to defend, and payments based

fraudulent pretenses.  Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

*Wherefore*, Plaintiffs, request that the Court enters judgment in favor of Plaintiffs against Defendants for:

1.  Treble damages;

2.  Consequential damages; and

3.  Punitive damages;

4.  Attorney's fees, litigation expenses, and costs of instant suit; and

5.  All other relief as necessary in the premises.

## COUNT III

### RICO Conspiracy - 18 U.S.C. § 1962(d)

178.   Plaintiffs reallege and restate paragraphs 1 through 177.

179.   To the extent some of the RICO Defendants are liable as conspirators under 18 U.S.C. § 1962(d), Count III is pled in the alternative to Count II.

180.   As alleged in Count II, some or all of the RICO Defendants violated 18 U.S.C. § 1962(c) by conducting or participating, directly or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity.  These Defendants are hereinafter referred to as "Operators and Managers."

181.   To the extent some RICO Defendants are found to have not violated section 1962(c) as Operators and Mangers, those RICO Defendants conspired with the

Operators and Managers and thereby violated of 18 U.S.C. § 1962(d). These RICO Defendants are hereinafter referred to as the Conspirators.

182.   In particular, the Conspirators intended and agreed to further or facilitate an endeavor of the Operators and Managers which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating that criminal endeavor.

183.   Plaintiffs were injured by the Conspirators' overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud (as described in paragraphs 64-124, *supra*), interstate transportation of stolen property (as described in paragraphs 125-127, *supra*), and extortion (as described in paragraphs 128-132, *supra*).

184.   As a direct and proximate result of, and by reason of, the activities of the Conspirators, and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their money or property was_subject to bank freeze, judicial liens, garnishments, lower credit ratings, hiring of legal counsel to defend, and consensual payments based upon fraudulent pretenses. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT IV

## INDIANA COMMON LAW ACTUAL FRAUD

185.    On behalf of Restitution Subclass members, Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporate same by references as if all were set forth fully herein.

186.    Defendants', through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise), in each and every furnishing to a credit reporting agency, in each and every communication to its collection agency subcontractors, on each and every dunning letter sent by it or its agents, and in each and every lawsuit filed on its behalf in Indiana with Defendants' knowledge, made the material misrepresentation that a valid debt existed and that the debt was ultimately owned by, and owed to LVNV as described in paragraphs 64 -106.

187.    Defendants intended to defraud Indiana consumers and intended that Indiana consumers would rely upon their false representations.

188.    Tens of thousands of Indiana consumers justifiably and detrimentally relied upon Defendants' false statements, including Plaintiffs as described in Paragraphs 64-106.

189.    Tens of thousands of Indiana consumers were directly injured by reason of Resurgent and Resurgent's agent's false statements, including Plaintiffs as described in Paragraphs 64-106.

190.    The named Plaintiffs, individually and on behalf of Indiana consumers, allege that each of the defendants were the agents, representatives, servants, employees, principals, joint-venturers, co-conspirators, and/or representatives of each of their codefendants and were acting within the course and scope of their agency, employment, joint-venture, conspiracy, and/or service with the approval, knowledge, authority, acquiescence, and/or ratification of each of the remaining Defendants and, therefore, to the extent that any Defendant did not directly engage in the actions upon which this Count is based, such Defendant should be equally liable for the resulting damages as the defendants who performed such actions.

191.    Indiana consumers who are class members are entitled to monetary damages to fairly and adequately compensate them for the injuries and damages sustained by reason of Defendants' fraud.

192.    In committing the acts of fraud, Defendants have acted intentionally, outrageously, oppressively, despicably, fraudulently, and maliciously in conscious disregard of the plaintiffs' rights and welfare in contravention of Indiana law and public policy.  As a result thereof, plaintiffs are entitled to exemplary and punitive damages in an amount sufficient to properly punish and deter Defendants in an amount to be proven at trial.

193.    With respect to each class member, a fraudulent statement was made that LVNV was owed a debt.  LVNV was not owed a debt, because it only purchased data about consumer transactions.  Even if debt had been purchased, which it was not, LVNV was not the owner of the alleged debt, but rather, third party investors

70

were the owners, and LVNV was collecting on their behalf.  Despite this, LVNV repeatedly represented that it was owed a debt in all communications related to its collection activities.

194.   The wrongful acts and false representations made by Resurgent, LVNV and their collection agents, the subcontractors, should be imputed to each and every Sherman Entity under the theories of agency, alter ego, veil-piercing, and *respondeat superior*.

**Wherefore**, Plaintiffs, on behalf of the Restitution Subclass, request that the Court enters judgment in favor of Plaintiffs and the Restitution Subclass and against Defendants for:

1.  Treble damages;

2.  Consequential damages; and

3.  Punitive damages;

4.  Attorney's fees, litigation expenses, and costs of instant suit; and

5.  All other relief as necessary in the premises.

## COUNT V

## CONSTRUCTIVE FRAUD

195.   On behalf of Restitution Subclass members, plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein.

196.   The elements of constructive fraud are: (1) a duty owing by the party to be charged to the complaining party due to their relationship; (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

197.   Sherman owes a duty to Indiana consumers, which duty is imposed by, among other things, the Graham Leach Bliley Act, 15 U.S.C. §6801, *et seq.* ("GLB Act ") and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA")  The GLB Act  imposes an affirmative duty on a financial institution, including LVNV, to protect nonpublic personal information and to not disclose nonpublic information, unless it notifies the consumer that such information is being shared with unaffiliated third parties and provides the consumer with a right to opt-out.  The FCRA imposes an affirmative duty on a furnisher to accurately report credit information.   There also exists a common law duty of keeping nonpublic personal financial information private.

198.   These duties include a requirement that a notice be sent to the Indiana consumers regarding disclosure of nonpublic personal information to unaffiliated entities.

199.   LVNV and the other Defendants failed to notify Indiana consumers that their nonpublic personal information would be shared with the unaffiliated

investors of LVNV, and failed to accurately report credit information by alleging that a debt was owed to LVNV, when it was not.

200.    If LVNV and the other Defendants had fulfilled their duties, and if Indiana consumers had been properly notified, such consumers could have opted out and avoided the transfer of their information to the purchasing vehicles, SO and SOIII, the subsequent transfer of their information to the holding company LVNV, the securitization of the information to the unaffiliated LVNV investors, and the sale of the information to other third party "debt buyers."

201.    Indiana consumers reasonably relied upon Sherman to fulfill its duties under the GLB Act to protect their nonpublic personal information and under the FCRA to accurately report credit information.

202.    As a result of the Defendants' breach of its duties and Plaintiffs' reliance, Indiana consumers were injured collectively by paying money on Sherman's debt collection activities that were based entirely on the nonpublic personal information that should never have been transferred to LVNV for collection purposes, or for any other purpose.

203.    Sherman gained an advantage by the breach of its duties by collecting from Indiana consumers, during the period November 2008 through November 15, 2013, tens of millions of dollars.

***Wherefore***, Plaintiffs, request that the Court enters judgment in favor of Plaintiffs against Defendants for:

1.  Treble damages;

2.  Consequential damages; and

3.  Punitive damages;

4.  Attorney's fees, litigation expenses, and costs of instant suit; and

5.  All other relief as necessary in the premises.

## COUNT VI

## RESTITUTION

204.   Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein.

205.   A member of the Restitution class conferred a benefit on the Defendants; more specifically a payment towards an alleged debt owned by LVNV, as described in Paragraphs 64-106.

206.   Defendants have knowledge of the benefit (i.e. the money paid by each respective consumer towards the alleged LVNV debt).

207.   Defendants have accepted or retained the benefits conferred (i.e. the above-referenced payment).

208.   While the money goes to the LVNV investors, before the investors receive the money the following is filtered out:  a servicing fee to Resurgent with a portion flowing to SFG and then to Sherman Capital; an incentive managing fee and reimbursement to SCM pursuant to a management servicing agreement with SFG in which SCM provides essentially all management services for SFG with a portion flowing to SFG and Sherman Capital; a portion of the money is reinvested

74

by SCM into the purchase of more data for the collateralized debt obligation to replace the satisfied data (that which was paid); Sherman Capital which contracted with SFG which has contracted with SCM now only earned a commission at time of issuing of LVNV securities but earns management fees during the life of the collateralized debt obligation by maintaining a market.  The individuals as both owners and employees of SFG, SCM, and Resurgent also receive management fees for the above activities.

209.   Without the false pretense that LVNV was owed a debt, a reasonable consumer would not pay monies to an entity that bought only data about past transactions, but did not own any debt owing from the consumer.

210.   The circumstances are such that it would be inequitable for defendants to retain the benefit of the tens of millions of dollars that they wrongfully collected from Indiana consumers during the period November 2008 through November 15, 2013 .

*Wherefore*, Plaintiffs, on behalf of the Restitution Subclass, request that the Court enter judgment in favor of Plaintiffs and the Restitution Subclass and against Defendants for:

1.  Actual damages, for the total dollars unlawfully collected by Defendants from the members of the Restitution Subclass over the last six years (plus interest);

2.  An order instructing Defendants to disgorge their ill-gotten monies from the Restitution Subclass;

3.   Litigation expenses and costs of this instant suit; and

4.   Such other and further relief as the Court deems proper.

## COUNT VII

## UNJUST ENRICHMENT

211.   On behalf of Restitution Subclass members Plaintiffs now re-alleges each and every allegation as set forth above, and hereby incorporates same by references as if all were set forth fully herein.   Substance prevails over form.

212.   Plaintiff alleges that the Defendants have unjustly retained a benefit to the Plaintiffs' detriment, and that Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

213.   Plaintiffs have suffered a detriment - monies paid & damage to their credit report, as described in Paragraphs 64-106.

214.   Plaintiffs' detriment has a connection between the detriment and the Defendants' retention of the benefit.

215.   The Defendants' retention of Plaintiffs' monies is a detriment to plaintiffs.

216.   Plaintiffs would have acted differently, had they known Defendants had no standing to file a lawsuit or engage in any other collection as a result of

Defendants' failure to be licensed, registered, lack of a debt, and legal ownership of the alleged debt.

217.    The transfer of money from plaintiff to defendant in exchange for paying off alleged debt violated the fundamental principles of justice, equity and good conscience so the Defendants' continued retention of money is a detriment.

218.    The acts of Defendants complained of herein constitute unjust enrichment of Defendants at Plaintiff's expense in violation of the common law of Indiana.

219.    Plaintiffs are entitled to disgorgement of ill-gotten gains in an amount to be proved at trial.

**Wherefore,** Plaintiffs, on behalf of the Restitution Subclass, request an Order from the Court requiring Defendants to disgorge all ill-gotten gains acquired from their deceptive illegal conduct and all other recovery necessary in the premises.

## JURY DEMAND

Plaintiffs hereby demands trial by jury on all issues which a jury may lawfully be convened.

Respectfully submitted

*s/Frederick D. Emhardt*
*Attorneys for Plaintiffs, Andrew Cox, Lucinda Cox, Stephanie Snyder, and Robert Goodall, individually and on behalf of others similarly situated*

George M. Plews, Attorney No. 6274-49
Frederick D. Emhardt, Attorney No. 10952-49
Amy E. Romig, Attorney No. 22523-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN  46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
        femhardt@psrb.com
        aromig@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707
Email: rdc@home-saver.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of September 2014, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

<u>s/Frederick D. Emhardt</u>