IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, *et al.*, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) Civil Action No. 1:12-cv-1654-TWP-MJD ) |
| v. | ) CLASS ACTION ) |
| SHERMAN CAPITAL LLC, *et al.*, | ) ) ) |
| Defendants. | ) |

### DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S SEPTEMBER 5, 2014 ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants Sherman Capital LLC, Sherman Financial Group LLC, LVNV Funding LLC, Resurgent Capital Services LP and Sherman Originator LLC (hereinafter "the Entity Defendants") hereby submit the following objection to the Magistrate Judge's September 5, 2014 Order on Defendants' Motion for Reconsideration [Dkt. No. 300] (hereinafter the "September 5 Order").

### INTRODUCTION

As he had in his February 24, 2014 Order on Plaintiffs' Motion to Compel [Dkt. 210], (the "February 24 Order"), the Magistrate Judge made two critical errors in requiring the production of the Entity Defendants' highly sensitive and private financial statements and income tax returns. First, the Magistrate Judge did not set forth any analysis or explanation for concluding that these documents were relevant to any party's claim or defense and, thus, were within the scope of discovery permitted under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Instead, the Magistrate Judge's Order merely states that documents regarding the

Entity Defendants' "ownership or affiliation" are relevant, (*see* Feb. 24 Order at 11; Sept. 5 Order at 5-6), without ever expressly analyzing whether, or finding that, the requested financial statements and income tax returns contain the ownership or corporate structure information the Plaintiffs actually asked for. The Magistrate Judge then compounded this error by failing to recognize that the Entity Defendants already produced information about the Entity Defendants' ownership and affiliation from other sources, thus avoiding the need to produce sensitive financial information not relevant to any claim or defense in this matter. As this represents clear error, the Court should reverse the Magistrate Judge's Orders to the extent they require the Entity Defendants to produce financial statements and income tax returns.

## BACKGROUND

The Magistrate Judge's Orders concern two document requests served on each of the five Entity Defendants as part of Plaintiffs' First Set of Requests for Production of Documents. Those two requests sought "All financial reports and statements to investors of the Defendant for the past two years" and "All income tax returns of the Defendant for the past two years," respectively. (*See* Mem. of Law in Support of Pls.' Mot. to Compel Regarding Written Discovery [Dkt. No. 173] ("Pls." Mem."), at 21-22; Def. LVNV Funding LLC's Objs. and Resps. To Pls.' First Requests for Production of Docs. at Reqs. 51 and 52 (attached as Ex. A).)

The Entity Defendants objected to both of these requests as not relevant to the Plaintiffs' claims, as well as for vagueness to the extent Plaintiffs failed to define the term "financial reports and statements." *Id.* In the meet and confer sessions to address those objections, Plaintiffs asserted a need to understand who owned each of the Defendant Entities as the sole reason for the relevance of the financial statements and income tax return requests. (*See* 10/22/13 Emhardt Letter to Caplan (attached as Ex. B) (purporting to "state the plaintiffs' position as to outstanding

discovery," Plaintiffs without reference to either financial statements or income tax returns, discuss a need for the names of a non-defendant S-corporation and its officers and directors, and express a need for "information about the defendant entities" in addition to a previously provided ownership chart).)[1]  In reply, the Entity Defendants offered to, and did, provide Plaintiffs the ownership information that they requested.  (*See* 11/14/13 Caplan Letter to Cheesbourough and Emhardt (attached as Ex. D) (providing "ownership structure of entity defendants"); 01/29/14 Caplan Letter to Cheesbourough and Emhardt (attached as Ex. E) (same).)

Even so, on December 20, 2013, Plaintiffs filed a motion to compel, requesting among other things that the Magistrate Judge compel the production of the Entity Defendants' financial statements and income tax returns.  (Pls.' Mot. to Compel Regarding Written Discovery [Dkt. 172]).  In support of this aspect of their motion to compel, Plaintiffs expanded their articulation of the relevance of the requested financial statements and income tax returns as follows:

> Defendants' financial reports and statements, as well as their tax returns are relevant to the issues of ownership of defendants, securitization and sale of securities, corporate structure, identity of current and former officers, and net value for purposes of punitive damages.

(Mem. in Support of Pls.' Mot. to Compel Written Discovery [Dkt. 173] at 22.)  To address the Entity Defendants' vagueness objection, Plaintiffs in their motion to compel briefing limited their request for financial statements to "any audited financial reports during the two year period."  (Reply in Support of Pls.' Mot. to Compel Regarding Written Discovery [Dkt. 189] at 16.)

At the January 31, 2014 hearing on their motion to compel, Plaintiffs conceded that they had received the ownership information they sought from three different sources:  (i) the Entity Defendants' initial corporate disclosure statement; (ii) a letter from counsel for the Entity

---

[1] *See* Sherman Financial Group LLC Organization Chart (attached as Ex. C).

Defendants; and (iii) depositions of several of the officers of the Entity Defendants.  (Trans. of Motion to Compel Hearing 01/31/14 [Dkt. 202]("Trans.") at 44 (*see* excerpt from [Dkt. 202] attached as Ex. F).)  Even so, Plaintiffs persisted in their demand for the financial statements and income tax returns claiming that the creation of an S-corporation after the filing of the initial disclosure statement, and the allegedly contradictory testimony of one witness as to the ownership of one of the Entity Defendants, put them "at a loss" to identify the actual owners of Defendants.  (*Id*. at 44-45.)  They further argued, without citation to any evidence or basis other than counsel's argument, that Plaintiffs' counsel "believed" financial information and income tax returns would be relevant to "ownership of the Defendants" and "who are the true owners of these defendants," and added that such documents would "shed light on … [the] extent [Defendants] engage in securitizations."  (*Id*. at 42.)

Counsel for the Entity Defendants stated in response that the Entity Defendants' financial data would not reveal the type of ownership information Plaintiffs sought (*i.e.*, the names of S-corporations created *after* the filing of the lawsuit) or anything about securitization. (*Id. at* 43-45.)  Further, to the extent the Entity Defendants' corporate structure had changes after the filing of the lawsuit (*i.e.*, the addition of an S-corporation), Defendants had disclosed the change.  (*Id.*; *see also* 06/21/13 Deposition of Benjamin W. Navarro at 10, 14-16 (attached as Ex. G).)  Moreover, review of the witness testimony Plaintiffs challenged at the hearing on the Motion to Compel shows that the deposed officer provided ownership information consistent with the written disclosures.   (*Compare* Navarro Dep. at 14-16, 34-35 (Ex. G) (indicating recent formation of entities, named after streets in Charleston SC, that own Sherman Capital LLC) to 01/29/14 Caplan Letter (Ex. E) (disclosing that the owners of Sherman Capital LLC include LLCs bearing Charleston street names).)   Defendants further supplied precedent for the

proposition that, if the only basis for seeking financial statement disclosure was a claim for punitive damages, such production should occur only at a later stage in the discovery process, if at all. (*See* Trans. at 43-44 (Ex. F.) Thus, the financial statements and income tax returns the Plaintiffs sought either did not have any of the information they claimed as a basis for these document requests or were premature.

Apparently ignoring the meet and confer negotiations, the briefs and the argument on the motion to compel, the Magistrate Judge on February 24, 2014 compelled the production of the financial statements and income tax returns stating "information regarding Defendants' ownership and affiliation" is relevant to a claim or defense at issue because Plaintiffs had alleged that the Defendants are all "interrelated in a [clandestine] and complex business structure." (Feb. 24 Order at 11.) Thereafter, the Entity Defendants timely filed a motion to reconsider or stay this portion of the Magistrate Judge's Order, arguing that in compelling the production of these documents, the Magistrate had failed to provide either a factual or legal basis for ordering the production of private financial statements or income tax returns. (Def.'s Mot. for Reconsideration of the Magistrate's Order, or in the Alternative to Stay [Dkt. 218]). They additionally provided the Magistrate Judge with case law that cautioned against the compelled production of confidential financial information and income tax returns absent a finding of the clear relevance of such information and consideration of alternative sources for such discovery. While that motion was pending, this Court issued its order sustaining, in part, the Defendants' Objection to the Magistrate's Judge's Report and Recommendation on the Motion to Dismiss [Dkt. 237]. In particular, in that order the Court dismissed the RICO claim that served as the Magistrate's sole articulated basis for the compelled production of the financial statements and income tax returns. Additionally, the Entity Defendants also produced those portions of the

requested financial statements that made any reference to affiliates, ownership, officers or securitizations.  (*See* at Exs. H and I.)  This disclosure corroborated what the Entity Defendants had told the Plaintiffs and the Magistrate Judge, namely, that the financial statements do not reveal a complex business structure, names of officers or anything about securitizations.  Instead, the produced financial statement disclosures state only that: Sherman Financial Group's reported financial results includes the financial results of other Entity Defendants; Sherman Capital owns Sherman Financial Group; and that Sherman Financial Group owns 99% of Resurgent, and nothing about newly created S-corporations.

But once again the Magistrate Judge seemingly gave no consideration to any of this or the fact that the financial information and income tax returns do not contain the corporate structure information Plaintiffs requested.  Instead, in his September 5, 2014 denial of the Entity Defendants' Motion for Reconsideration, the Magistrate Judge reasoned the financial information contained in those financial statements and the completely separate income tax returns "appear … reasonably calculated to lead to the discovery of admissible evidence," because the financial statements contain "references to ownership and affiliation."  (Sept. 5 Order at 6.)  Other than acknowledging that the Entity Defendants did not dispute the relevance of ownership and affiliation information generally – as Plaintiffs had not argued such general ownership and affiliation was the reason for their document requests – the Magistrate Judge failed to provide any explanation for his finding that the financial information in the financial statements, or the tax returns generally, also are relevant.  He then ordered the production of an additional third years' worth of financial statements and income tax returns even though Plaintiffs in their written discovery requests had limited their document requests to financial statements and income tax returns for the two years preceding the original document request.

Thus, not only had the Magistrate Judge failed to address the discovery Plaintiffs claimed they needed, he expanded that discovery beyond what Plaintiffs had asked for and did so without giving the Entity Defendants an opportunity to respond.

## STANDARD OF REVIEW

Rule 72(a) provides that "[t]he District Judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." The Court of Appeals for the Seventh Circuit has held that "[t]he clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Company, Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

## ARGUMENT

Both times the Magistrate Judge has ordered the Entity Defendants to produce financial statements and income tax returns, he has failed to address the issue Plaintiffs presented in their motion to compel. In particular, Plaintiffs said they sought this discovery based on a supposed need to know the Entity Defendants' ownership and corporate structure, and more precisely the identity of S-corporation formed after the start of the litigation. In response, the Entity Defendants produced information showing the ownership and corporate structure information Plaintiff's claimed they needed, including identification of the S-corporations and all references in the requested financial statements that reflected the affiliations and ownership of the Entity Defendants even though that was not the articulated basis for Plaintiffs' document requests. The Magistrate Judge, however, ignored all of this, and instead ordered the production of highly sensitive and private information without explanation as to how financial information in the

requested financial statements, or the tax returns generally, relate to the ownership and corporate structure objectives Plaintiffs articulated.

As is clear from the record, the Entity Defendants consistently have objected to the production of financial statements and income tax returns based on the Plaintiffs' inability to link these requests to any party's claim or defense. Absent that showing, such discovery falls outside the scope of relevant discovery under FRCP 26(b)(1).

In his initial ruling on Plaintiffs' motion to compel these documents, the Magistrate Judge devoted only two sentences of his Order to address this objection, stating:

> Plaintiffs' claims are based in part on Plaintiffs' allegations that the Defendants are all "interrelated in a clandenstine [sic] and complex business structure." [Dkt. 1-6] Thus, information regarding Defendants' ownership and affiliation is relevant to a claim or defense at issue.

(Magistrate Judge's Order at 11.) This explanation on its face fails to address the actual issue Plaintiffs put before the Magistrate Judge – namely, whether Plaintiffs could force the production of financial statements and income tax returns when such documents did not contain the corporate structure disclosure, officer names, securitization or security sales information they sought and, in any event, when that information had already been provided to Plaintiffs. What-is-more, however, is that with the District Court's dismissal of RICO claims purportedly perpetrated by the alleged 'interrelated, clandestine and complex business structure,' the sole basis initially articulated by the Magistrate Judge was eliminated as well.[2] Further, the meaninglessness of the Magistrate Judge's generalized statements about the relevance of "ownership and affiliation" only became more pronounced when the Entity Defendants also

---

[2] In his order, the Magistrate Judge indicates the Court's grant of allowing Plaintiffs to file an amended complaint allowed the Court to assume that the relevance of Plaintiffs' document requests could be based on the not yet filed claims. (September 5 Order at 8) This analysis wrongly relies on matters not yet before the Court and assumes that Plaintiffs can replead their RICO claims in a manner that will survive a motion to dismiss. None of this has occurred. To the extent the Magistrate Judge continued to rely on the dismissed RICO claims as a basis for his decision (as it appears that he did), he committed clear error.

produced all information in the financial statements that revealed any affiliation information among the Entity Defendants. None of this information revealed either an "amoeba" like structure or the pejorative "true ownership of the entities at the top of the chart" as Plaintiffs imagined that it would. This information instead made clear that the original justification the Magistrate Judge provided failed to address the concerns actually raised in Plaintiffs' Motion to Compel and required, at minimum, that the Magistrate Judge in ruling on the Motion to Reconsider make specific reference to reasons Plaintiffs had articulated for the discovery and the actual content of the documents themselves. The Magistrate Judge, however, never did this analysis.

Instead, the Magistrate Judge September 5 Order once again ordered the production of the financial information in the financial statements, and the income tax returns without ever discussing how he came to the determination such financial information and income tax returns contains either the ownership or corporate structure information requested. (Sept. 5 Order p. 6.) In sum, the Magistrate Judge based his decision to compel the production of financial information and income tax returns on a complete *non sequitor, i.e.*, that ownership and affiliation is relevant, and without ever making the threshold determination that the financial information in the financial statements, and income tax returns generally, actually contain the information Plaintiffs sought.

Had he done so, the Magistrate would have found that the financial information in the two audited financial statements requested does not disclose ownership or corporate structure information requested. Instead, it shows the financial results of two private companies. He further would have found that the income tax return of Sherman Capital (the only Entity Defendant that files such a return) does not provide the "structural information" Plaintiffs' said

they needed.[3] Moreover, the minimal ownership information contained in this document relates only to persons and private entities either dismissed from, or never joined to, this matter. But the Magistrate Judge's opinion does not reflect any consideration of this material or how this order will result in the forced disclosure of non-relevant, private financial information of persons and entities that are not parties to this law suit. The September 5 Order simply does not reflect a reasoned exercise of the discretion afforded the court on discovery matters.

The Magistrate Judge's refusal to consider the Entity Defendants' alternative production of ownership and corporate structure information, or the sensitive nature of the financial information and income tax returns he ordered the Entity Defendants to produce, only further confirms this abuse of the discretion. Specifically, the Entity Defendants produced the ownership and corporate structure information in at least the following ways:

- The Entity Defendants filed a Corporate Disclosure Statement in this case describing the ownership of each of the Entity Defendants. ([Dkt. No. 12], (Ex. J).).

- The Entity Defendants produced an organizational chart showing ownership of some of the Entity Defedants and correspondence of counsel explaining the ownership of the remaining Entity Defendants. (*See* Ex. C (discussed at Trans. 44-46 (Ex. F).)

- Counsel for the Entity Defendants offered to produce a corporate designee witness to address questions Plaintiffs may have about the ownership and affiliation of the Entity Defendants. (Trans. at 46.)

- The Entity Defendants answered Plaintiffs' interrogatory regarding each Entity Defendant's affiliation with any other Defendant. (Def. LVNV Funding, LLC's Amd. Responses to Pls.' First Set of Interrogatories, Resp. to Interrogatory 11 (attached as Ex. K).

---

[3] The Sherman Capital income tax return identifies the owners of Sherman Capital, but, other than their relationship as co-owners of Sherman Capital, these tax returns do not disclose other relationships, if any, between these owners. The only other "relationship" disclosed is that Sherman Capital is the majority and managing member of Sherman Financial Group, LLC. All of this information had already been provided to Plaintiffs.

- The Entity Defendants have produced to Plaintiffs redacted versions of the audited financial statements of Defendant Sherman Financial Group LLC and Subsidiaries for the years ending December 31, 2012 and 2011, and redacted versions of the audited financial statements of Defendant Resurgent Capital Services LP and Subsidiary for the years ending December 31, 2012 and 2011. (*See* Exs. H and I.)[4]

Given the Entity Defendants' demonstrated willingness to disclose information about their ownership and affiliation, Plaintiffs should not be allowed to review the Entity Defendants' most sensitive financial information, as well as the private financial information of non-parties, merely to "doublecheck" the Entity Defendants' statements about their ownership.

This is especially true given the privacy concerns associated with producing confidential financial statements and income tax returns. In particular, various courts have recognized that producing the financial statements of private corporations is not to be done lightly. *See Finch v. City of Indianapolis*, 1:08-CV-0432-DML-RLY, 2011 WL 2516242 at *4 (S.D. Ind. June 23, 2011,) (recognizing the sensitivity of personal financial information and stating "[d]iscovery aimed at an opponent's personal finances is a quick route to the underside of the opponent's skin."); *Charles v. Quality Carriers, Inc.*, 1:08-CV-00428-RLY-JMS, 2010 WL 396356 at *2 (S.D. Ind. Jan. 28, 2010) (recognizing that a third party's finances constitute "private and highly sensitive information"); *Fischer v. Life Ins. Co. of N. Am.*, 1:08-CV-0396-WTL-TAB, 2009 WL 734705 at *5 (S.D. Ind. Mar. 19, 2009) (denying motion to compel financial information because such information was "particularly sensitive" and "less connected to the conflicts analysis."

---

[4] Sherman Financial Group and Resurgent are the only two Entity Defendants that have audited financial statements. As counsel for the Entity Defendants has previously stated, these financial statements principally address the financial condition of these entities, and contain only limited disclosures regarding the relationships among the Entity Defendants, namely: (i) a statement that the consolidated results of Sherman Financial Group includes the financial results of certain of the Entity Defendants, (ii) Sherman Financial Group is owned by Sherman Capital LLC; (iii) Sherman Capital Markets LLC has a management services agreement with Sherman Financial Group; and (iv) Alegis Group LLC, as general partner, and Sherman Financial Group, LLC, as limited partner, own Resurgent. (All of this information is consistent with prior representations made by the Entity Defendants to Plaintiffs and does not provide the corporate structure, officer or securitization information sought by Plaintiff).

"[T]o the extent that any discovery information could be garnered from these sources, that information should in large part already be provided in response to the production the Court has permitted."); *see also In re Boston Herald, Inc. v. John J. Connolly, Jr.,* 321 F.3d 174, 190 (1st Cir. 2003) ("Personal financial information, such as one's income or bank account balance, is universally presumed to be private, not public.")

Moreover, because tax returns in particular are highly sensitive documents, courts do not lightly order their production, especially in the absence of considering alternative disclosures. *See, e.g., Commodity Futures Trading Commission v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993). While the Seventh Circuit has not expressed a specific standard for considering a request for the production of income tax returns, *see Poulos and A.G.P. Marketing v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992), some courts have adopted a special discovery standard for such returns, requiring their production only when the returns are relevant and there is a compelling need for the returns because the information sought is not otherwise available. *See, e.g., U.S. v. Real Property and Improvements Located at 2441 Mission St., San Francisco, California*, 3:13-cv-02062-SI, 2013 WL 6774081 at *2 (N.D. Cal. 2013); *White v. Michigan Dept. of Human Services*, 09-cv-14631, 2011 WL 1882924 (E.D. Mich. 2011). For instance, in *Crissen v. Gupta*, No. 2:12-cv-355-JMS-WGH, 2013 WL 5960965 at *5 (S.D. Ind. Nov. 7, 2013), the court, after concluding the discovery of tax returns was within its discretion under *Poulos*, ordered production of income tax returns only after the party opposing such discovery failed to direct the court to alternative sources of information. Similarly, the court in *Jackson v. N'Genuity Enterprises Co.*, No. 09 C 6010, 2010 WL 4928912 at *2 (N.D. Ill. Nov. 29, 2010), stated that discovery of income tax returns is not had simply for the asking, and reversed its initial denial of

a request for the production of income tax returns only after the plaintiff had exhausted alternative means of obtaining the requested information.

In his order on the Entity Defendants' Motion for Reconsideration, the Magistrate Judge expressly ignores all of this precedent finding that the Entity Defendants waived such arguments as they did not articulate them in full in their initial responses to Plaintiffs document requests. (Sept. 5 Order at 7.) That narrow view ignores not only the meet and confer sessions (from and after which the Magistrate Judge was more than willing to entertain Plaintiffs' repeatedly changed arguments regarding the purported relevance of the requested financial statements and income tax returns) or the oral argument on the motion to compel (where counsel for the Entity Defendants explicitly informed the Magistrate Judge of the various ways in which the Entity Defendants had provided the ownership information the Plaintiffs claimed they needed). (Trans. at 45-46.) As counsel stated at the hearing, "just because Plaintiffs file a lawsuit against Defendants does not give them the right to just say, 'Let me have all your financial information." (*Id.*, at 43.) Instead, as the cited cases instruct, a court must determine the relevance of such recognized confidential and sensitive information with consideration of the alternative sources for such discovery. The Magistrate Judge indicated he would not consider these arguments.

Given the recognized sensitivity of financial statements and income tax returns and the FRCP 26(b)(1) requirement that requested discovery be shown to have relevance to a claim or defense, a court must provide an express basis for the compelled production of financial statements and income tax returns. As explained above, neither of the Magistrate Judge's Orders provides any analysis or explanation to support a conclusion that these documents are relevant to the ownership and corporate structure issues upon which Plaintiffs based these discovery requests. That Plaintiffs have received such ownership and corporate structure information from

other sources only further shows the absence of any legitimate basis for the Magistrate Judge's order to compel the production of financial information and income tax returns.

The same can be said of the various other justifications Plaintiffs raised at various times as a basis for the production of these documents. Although not referenced in either of the Magistrate Judge's Orders, Plaintiffs additionally had argued that the requested financial documents were relevant to the issues of "securitization and sale of securities, . . . identity of current and former officers and net value for purposes of punitive damages." (Pls.' Mem. at 22.) The requested documents, however, do not contain any information regarding securitization, sale of securities and the identity of corporate officers. Further, Plaintiffs have obtained this type of information from many alternative sources that would not require the production of the sensitive, private financial information that is contained in the financial statements and tax returns.

In addition, production of the financial statements and income tax returns is not justified based on Plaintiffs' request for punitive damages as the Court dismissed their common law fraud claim, and in any event, such discovery should wait information until the case progresses to the point that it becomes evident that the plaintiff indeed has a genuine factual basis to support a punitive damage claim. *See, e.g., Finch*, 2011 WL 2516242 at *4. Moreover, in this Circuit there is some question as to whether, in a case involving a corporate defendant, corporate financial information is even relevant to a punitive damages claim. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508-09 (7th Cir. 1992); *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582 (S.D. Ind. 2000).

Plaintiffs' last minute attempt to link their request for financial statements and income tax returns to a need to show net worth and the potential limits of FDCPA statutory damages also fails. Plaintiffs received net worth disclosures for LVNV and Resurgent in response to requests

for production of documents that the Plaintiffs propounded on these entities. (*See* LVNV Funding, LLC Amd. Obj. and Responses to Pls.' First Set of RFP of Documents at 28 and LVNV 2892 (attached hereto as Ex. L); Def. Resurgent Capital Services, LP's Amd. Obj. and Responses to Pls.' First Set of RFP of Documents, at 30 and Resurgent 680) (attached hereto as Ex. M).) While true that the other Entity Defendants objected to the relevance of such net worth documents, and indicated that such documents were outside the scope of the matters alleged, these Entity Defendants further explained that if Plaintiffs prove a basis to assess statutory FDCPA damages against the affiliates of Resurgent and LVNV, the $500,000 cap on FDCPA damages would be triggered, thus making the disclosure of their net worth irrelevant. (*See* Def. Sherman Financial Group, LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 24-25; Def. Sherman Capital LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 24-25; Sherman Originator, LLC's Am. Obj. and Responses to Pls.' First Set of RFP of Documents, at 23 (attached hereto as Ex. N.) In other words, because the FDCPA limits the amount of statutory damages to the lesser of $500,000 or 1% of the net worth of the entities deemed to be debt collectors, (*see* 15 U.S.C. § 1692k(a)(2)(B)), and the combined net worth of all the Entity Defendants exceeds $50 million, Plaintiffs already know that the maximum statutory damages available for the putative class in this case is $500,000. Additionally, with the District Court's denial of Plaintiffs' class certification motion, only the FDCPA claims of the three individual Plaintiffs remain. And unlike a class action where the FDCPA caps statutory damages based on a defendant's net worth, 15 U.S.C. § 1692k(a)(2)(B), the FDCPA caps an individual plaintiff's statutory damages at $1000, without regard to the defendant's net worth. 15 U.S.C. § 1692k(a)(2)(A). Thus, disclosure of the precise amount of the net worth of the Entity Defendants other than LVNV and Resurgence has no relevance.

Thus, none of the various reasons Plaintiffs provide to support their requests for the production of financial information and income tax returns provides a legitimate basis for this discovery. Instead, the record reveals that the Plaintiffs have received the information they have requested to the extent it exists from multiple other sources. The Magistrate Judge in compelling the production of such confidential and sensitive documents ignored all of this information and failed to analyze the reasons Plaintiffs proffered in support of their document requests. That the Magistrate Judge then ordered the production of such documents for 2013 in addition to the two years set forth in the document requests themselves, only further shows his failure to exercise his discretion over discovery matters in a fair manner that affords the Entity Defendants the opportunity to respond to the discovery requests as presented. By so abusing his discretion, the Magistrate Judge made a mistake and committed clear error. The Entity Defendants, therefore, respectfully ask that this Court reverse the Magistrate Judge's order compelling the production of the financial information and income tax returns.

## CONCLUSION

For all the reasons stated above, the Court should reverse the Magistrate Judge's Order to the extent it requires that the Entity Defendants produce financial statements and tax returns.

Dated: September 19, 2014  Respectfully submitted,

s/*James A. Rolfes*

| | | |
|---|---|---|
| Thomas Allen *pro hac vice* | James A. Rolfes *pro hac vice* | James W. Riley, Jr. |
| REED SMITH LLP | jrolfes@reedsmith.com | Atty. No. 6073-49 |
| 225 Fifth Avenue | Michael DeMarino *pro hac vice* | RILEY BENNETT & |
| Pittsburgh, PA 15222 | mdemarino@reedsmith.com | EGLOFF LLP |
| (412) 288-3131 | David A. Maas *pro hac vice* | 141 East Washington Street |
| (412) 288-3086 (Facsimile) | dmaas@reedsmith.com | Fourth Floor |
| tallen@reedsmith.com | REED SMITH LLP | Indianapolis, IN  46204 |
| | 10 South Wacker Drive | (317) 636-8000 |
| | Chicago, IL  60606-7507 | (317) 636-8027 (Facsimile) |
| | (312) 207-1000 | jriley@rbelaw.com |
| | (312) 207-6400 (Facsimile) | |

*Attorneys for Defendants*

- 18 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of Court's electronic filing to all counsel of record.

      /s/ James A. Rolfes

US_ACTIVE-119176888.2