UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 1:12-cv-01654-TWP-MJD |
| | ) |
| SHERMAN CAPITAL LLC, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**ORDER ON DEFENDANTS' MOTIONS TO SEAL**

This matter comes before the Court on Defendants' Emergency Motion to Seal Deposition Transcripts Previously Filed in Docket 130, [Dkt. 301], Defendants' Motion to Seal Deposition Transcripts, [Dkt. 314], and Defendants' Motion for Leave to File Material Under Seal Pursuant to Stipulated Protective Order. [Dkt. 316.] For the following reasons, the Court **DENIES** these motions.

**I.     Background**

Andrew Cox, Lucinda Cox, and Stephanie Snyder ("Plaintiffs") filed suit in 2012 against numerous individuals and business entities ("Defendants"), alleging violations of the Federal Debt Collection Practices Act ("FDCPA") and Racketeer Influence Corrupt Organizations ("RICO") Act. [Dkt. 237 at 3.] Plaintiffs also brought claims for common-law fraud, unjust enrichment, and restitution. [*Id.*] The Court dismissed the individual Defendants and certain claims, leaving one FDCPA claim, the unjust enrichment claim, and the restitution claim against

Sherman Capital LLC, Sherman Financial Group LLC, Sherman Originator LLC, LVNV Funding LLC, and Resurgent Capital Services LP. [Dkt. 237 at 20.]

On May 17, 2013, the Court entered a Stipulated Protective Order, [Dkt. 73], stating that the parties could designate as confidential "contracts, correspondence, data, account information, and internal operations documents . . . or any documents that contain non-public personal, private information." [*Id.* at 2.] The order contemplated filing under seal, but provided that no document could be sealed absent a motion showing "good cause" and stating the reasons for sealing the document. [*Id.* at 4.] The order also stated that "the mere fact that information has been designated as confidential by a party is insufficient to permit under-seal filing." [*Id.*]

During discovery, Plaintiffs took depositions of several individuals who were originally named as defendants. [Dkt. 314 at 3.] The Court later dismissed these individuals for lack of personal jurisdiction, but their deposition testimony included facts related to the individuals' ownership and management of various defendant business entities. [*Id.*]

Defendants recently discovered that Plaintiffs filed un-redacted and unsealed transcripts of these depositions as exhibits to two briefs. [Dkts. 78-12 through 78-15 & 130-15 through 130-20.] Defendants requested a temporary seal on these transcripts. [Dkt. 301.] On September 25, 2014, Defendants filed the current Motion to Seal Deposition Transcripts, [Dkt. 314], in which they ask the Court to maintain the un-redacted transcripts under seal, and, to the extent that the Court determines portions of the un-redacted transcripts should be made public, ask that the Defendants be allowed to submit redacted versions of the transcripts for public filing. [*Id.* at 1-2.] Defendants included a sealed version of their proposed redactions as Exhibit A. [Dkt. 315.] In a separate motion, [Dkt. 316], Defendants ask the Court to maintain the seal on Exhibit A while the Court considers Defendants' motion to seal the un-redacted transcripts. [Dkt. 314.]

2

## II.  Legal Standard

This Court's order, [Dkt. 73], and Rule 26 contemplate filing under seal for "good cause." Fed. R. Civ. P. 26. "The determination of good cause cannot be elided by allowing the parties to seal whatever they want." *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The public "at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Id.* Hence, the judge is "duty-bound" to "review any request to seal the record." *Id.*

When information is filed with a court, it may "influence or underpin the judicial decision" and is therefore "open to public inspection unless" the information "meets the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). A motion asking to seal such information has "no prospect of success" unless it analyzes "in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Id.* at 548. General assertions that the information is "commercial" or otherwise sensitive will not suffice. *Id.* at 546.

## III.  Discussion

Defendants describe two broad types of information revealed in the deposition transcripts. First, the transcripts include non-public information "regarding the structure and operation" of the entity defendants. [Dkt. 314 at 8.] Second, they include "financial information as well as ownership interests" of the individuals who were formerly defendants. [*Id.* at 9.]

**1.  Structure and Operations of Entity Defendants**

As indicated in Appendix A, [Dkt. 315], Defendants seek to protect information such as the corporate offices that various individuals hold within the entity defendants. [*See, e.g.*, Dkt. 315-1 at 5, 12, 17, 20; Dkt. 315-2 at 4, 9; Dkt. 315-3 at 3, 5; Dkt. 315-4 at 10; Dkt. 315-5 at 4,

36.] They also ask to keep sealed or to redact descriptions of the interactions between the various entity defendants. [*See, e.g.*, Dkt. 315-2 at 24; Dkt. 315-3 at 7, 13.] For instance, they have redacted in Exhibit A information on how certain defendant entities finance debt purchases by other defendant entities, [Dkt. 315-3 at 13; Dkt. 315-4 at 11-13], how defendant entities sell accounts between themselves, [Dkt. 315-4 at 14], whether and how the entities hire each other to assist in debt collection, [Dkt. 315-5 at 38], whether and how the defendants rely on outside financing, [Dkt. 315-3 at 14, 16-18; Dkt. 315-4 at 13], and whether some of the defendant entities own other defendant entities. [Dkt. 315-5 at 21.] Defendants claim that public disclosure of this information "presents a substantial risk" of "competitive harm," [Dkt. 314 at 8], because they exist in a marketplace where operating "separate but connected businesses is vital to success." [*Id.*]

As support, Defendants cite numerous cases in which courts have allowed filing of confidential commercial information under seal. [Dkt. 314 at 7-8.] None of them is persuasive.

Defendants first cite *Nordock Inc. v Systems Inc.*, in which the court found good cause to seal documents that contained "pricing and profit information which a competitor could use to undercut or otherwise financially harm the subject party in the marketplace." No. 11-C-118, 2012 WL 4760784, at *8 (E.D. Wis. Oct. 5, 2012). The documents Defendants ask to seal in this case contain no such pricing or profit information. [*See* Dkts. 78-12 through 78-15, 130-15 through 130-20, & 315.] Further, the court in *Nordock* specifically ordered that the redacted versions of the documents in that case "must include everything but pricing or profit information." 2012 WL 4760784, at *8. This limits the persuasive appeal of *Nordock* for situations—such as this one—in which pricing information is not at issue, and thus undermines Defendants' reliance on the case.

4

Defendants then turn to *F.T.C. v. OSF Healthcare Systems*, in which the court stated "pricing information and the process involved in creating a 'pricing architecture' can qualify as a trade secret" worthy of filing under seal. No. 11 C 50344, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012). As with *Nordock*, the reliance on pricing data to justify filing under seal makes the case inapposite to Defendants' motion to seal information *other* than pricing data. Defendants encounter the same problem in citing *Thermal Design, Inc. v. Guardian Building Products, Inc.*, where the court allowed sealed filing of "highly sensitive sales data that reveals (both directly and indirectly) customer and/or vendor specific pricing." No. 08-C-828, 2011 WL 5105490, at *2 (E.D. Wis. Oct. 25, 2011). Again, Defendants have not asked to seal sales or pricing data, and *Thermal Design* will not justify the order they seek.

Defendants' other cases are even further from the mark. In *Eli Lilly & Co. v. Wockhardt Ltd.*, the court allowed sealed filing of documents that contained a party's non-public Abbreviated New Drug Application ("ANDA"), No. 1:08-CV-1547-TWP-TAB, 2010 WL 2925044, at *1 (S.D. Ind. July 20, 2010), and in *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, the court sealed emails related to a party's filing of its ANDA. No. 08-C-0953, 2009 WL 3444938, at *1 (E.D. Wis. Oct. 23, 2009). These decisions were appropriate, given that 1) the FDA's own regulations prohibit disclosure of such information, *see* 21 C.F.R. § 314.430, and 2) ANDAs are tantamount to trade secrets. *See ViroPharma Inc. v. Department of Health & Human Services*, 839 F. Supp. 2d 184, 190 (D.D.C. 2012). Defendants' current motion, however, involves no such new drug applications, and these cases therefore provide no support for sealing the transcripts at issue.

Defendants finally cite two cases in which the court allowed filing under seal for "genuine trade secrets," *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir.

2000), and "exhibits contain[ing] trade secrets." *Metavante Corp. v. Emigrant Sav. Bank*, 05-CV-1221, 2008 WL 4722336, at *9 (E.D. Wis. Oct. 24, 2008). As defendants note, [Dkt. 314 at 7 n.2], Indiana defines a trade secret as information such as a "formula, pattern, compilation, program, device, method, technique, or process" that derives "independent economic value, actual or potential, from not being generally known to . . . other persons." Ind. Code Ann. § 24-2-3-2. Defendants then broadly allege that disclosing the structure of and interactions between the defendant entities would "cause economic harm," [Dkt. 314 at 8], but Defendants do not identify any specific process, method, technique, or program that qualifies as a trade secret. The closest the transcripts at issue come to any such process or technique are vague descriptions of how a "working group" of various individuals "helps to make some decisions" about the management of the entities. [*See, e.g.*, Dkt. 130-16 at 24.] These descriptions are hardly the sorts of "specific methods, techniques and processes," *Metavante Corp.*, 2008 WL 4722336, at *9, that qualify as trade secrets, and the Defendants thus have not shown good cause for sealing this information. The Court therefore **DENIES** this portion of the motion.

    **2. Financial Information of Individual Former Defendants**

Defendants next contend the transcripts contain "financial information as well as ownership interests" of the individuals originally named as defendants. [Dkt. 314 at 9.] This information includes whether the individuals own interests in the entity defendants, [*see, e.g.*, Dkt. 315-2 at 8; Dkt. 315-3 at 6; Dkt. 315-4 at 3-5; Dkt. 315-5 at 24, 40, 53], and whether the entities compensate the individuals. [*See, e.g.*, Dkt. 315-4 at 7-8; Dkt. 315-5 at 19, 28, 54.] Defendants note that the individuals are no longer parties to this action, and that courts "protect sensitive information belonging 'to nonparties, who cannot be said to have put their private information at issue by availing themselves of the courts.'" [Dkt. 314 at 9 (quoting *Gilday*, 2010

6

WL 3928593, at *5).] They also argue that personal financial information has long been presumed private. [*Id.* (citing *In re Boston Herald, Inc.*, 321 F.3d 174, 190 (1st Cir. 2003)).]

Again, Defendants' own citations undermine their claim. First, the court in *Nordock* (discussed above) addressed the disclosure of the names of owners of a privately held corporation. 2012 WL 4760784, at *5. The court found that "there is no indication of harm that might warrant non-disclosure of the names of [the company's] stockholders and the percentage of their interest in the company." *Id.* Thus, *Nordock* weakens Defendants' contentions that the ownership interests of the individuals in this case deserve protection.

Second, in *Gilday*, the court allowed for sealing salary information of non-parties to prevent one of the party's competitors from luring executives to the competitors' businesses. 2010 WL 3928593, at *5. In contrast, the information in this case is limited to whether individuals receive compensation from the entity defendants at all. [*See, e.g.*, Dkt. 315-4 at 7-8; Dkt. 315-5 at 19, 28, 54.] The transcripts Defendants wish to seal include no information about the amount of compensation, [*see id.*], and thus do not present a danger that the entity defendants' competitors will be able to lure away the individual former defendants by offering higher salaries.

Finally, although Defendants cite *In re Boston Herald* for the proposition that financial information is presumed private, the context of that case was notably different than the current case. There, the First Circuit considered a request to unseal "comprehensive financial data, including employment income of the defendant and his or her spouse; all other income, cash, and property; identification of the defendant's dependents; and all obligations, debts, and monthly bills." 321 F.3d 174, 177. Here, in contrast, the deposition transcripts contain no such detailed information; they are limited, as noted above, to whether the individuals received compensation,

7

and thus reveal nothing about their debts, obligations, assets, dependents, or other financial affairs. Given the minimal inquiry into the individuals' finances, and given the strong public policy favoring disclosure of information filed with the court, *see Baxter*, F.3d at 548, the Court finds that Defendants have not carried their burden to show good cause for their requested filing under seal. The Court thus **DENIES** this portion of the motion.

### 3. Defendants' Remaining Motions

As previously described, Defendants submitted a sealed version of their proposed redactions to the deposition transcripts. [Dkt. 315.] They also moved the Court [Dkt. 316] to maintain the seal on these redacted submissions while the Court considered Defendants' motion to seal the un-redacted transcripts. [Dkt. 314.] Because the Court, as stated above, has determined that the transcripts need not be sealed, the Court **DENIES** the motion to maintain the seal on the proposed redacted transcripts.

Defendants also submitted an emergency motion to temporarily seal the portions of deposition transcripts attached as exhibits to Plaintiffs' brief. [Dkt. 301.] Because the Court has determined that the deposition transcripts need not be sealed, the Court **DENIES** this motion.

### IV.   Conclusion

For the reasons described above, the Court **DENIES** Defendants' Emergency Motion to Seal Deposition Transcripts Previously Filed in Docket 130 [Dkt. 301], Defendant's Motion to Seal Deposition Transcripts [Dkt. 314], and Defendants' Motion for Leave to File Material Under Seal Pursuant to Stipulated Protective Order. [Dkt. 316.] The Clerk is directed to unseal Dkts. 78-12 through 78-15, 130-15 through 130-20, and 315.

Dated:  10/10/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Robert D. Cheesebourough
ruaneagle@aol.com

Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
boruta17@hotmail.com

Amy E. Romig
PLEWS SHADLEY RACHER & BRAUN
aromig@psrb.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Jeffrey A. Townsend
PLEWS SHADLEY RACHER & BRAUN
jtownsend@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

David A. Maas
REED SMITH LLP
dmaas@reedsmith.com

Gary S. Caplan
REED SMITH LLP
gcaplan@reedsmith.com

James A. Rolfes
REED SMITH LLP
jrolfes@reedsmith.com

Michael L. DeMarino
REED SMITH LLP
mdemarino@reedsmith.com

Thomas L. Allen
REED SMITH LLP
tallen@reedsmith.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com