**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ANDREW COX, LUCINDA COX, STEPHANIE SNYDER, and ROBERT GOODALL, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No.: 1:12-cv-1654-TWP-MJD CLASS ACTION |
| v. | ) ) | |
| SHERMAN CAPITAL LLC, et al., | ) ) | |
| *Defendants*. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' RICO FRAUD AND CONSTRUCTIVE FRAUD CLAIMS**

## Table of Contents

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 7

I.      Legal Standard ......................................................................................................... 7

II.     PLAINTIFFS FAIL TO STATE A RICO CLAIM. .......................................... 7

        A.     Plaintiffs Fail to Plead a Pattern of Wire or Mail Fraud with the Particularity Required by Rule 9(b). ........................................................... 8

        B.     Plaintiffs' Insufficient Allegations of Interstate Transportation of Stolen Property and Extortion. ......................................................................... 12

        C.     Plaintiffs Fail to Plead a RICO Enterprise Under 1962(c). ................... 14

        D.     Plaintiffs' Allegations of Agency Fail to Meet Rule 9(b) Pleading Requirements. ......................................................................................... 18

III.    PLAINTIFFS FAIL TO STATE CLAIMS FOR ACTUAL AND CONSTRUCTIVE FRAUD. ............................................................................... 19

        A.     Plaintiffs Fail to Plead Their Actual Fraud Claim with the Particularity Required by Rule 9(b). ........................................................................... 19

        B.     Plaintiffs Fail to Plead Their Constructive Fraud Claim with the Particularity Required by Rule 9(b) .................................................... 21

        C.     Plaintiffs Fail to Allege That the Entity Defendants Owe Plaintiffs a Special Duty. ......................................................................................... 23

CONCLUSION ................................................................................................................. 24

**Table of Authorities**

**Cases**

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*,
    499 F.3d 663 (7th Cir. 2007) ........................................................................ 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 7

*Baker v. IBP, Inc.*,
    357 F.3d 685 (7th Cir. 2004) .................................................................. 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 7

*Bissessur v. Ind. Univ. Bd. of Trs.*,
    581 F.3d 599 (7th Cir. 2009) ........................................................................ 7

*Blair v. Infineon Techs. AG*,
    720 F. Supp 2d 462 (D. Del. 2010) ............................................................ 19

*Block v. Lake Mortg. Co.*,
    601 N.E.2d 449 (Ind. Ct. App. 1992) ........................................................ 24

*Borsellino v. Goldman Sachs Grp., Inc.*,
    477 F.3d 502 (7th Cir. 2007) ...................................................................... 20

*Brown v. County of Cook*,
    549 F. Supp. 2d 1026 (N.D. Ill. 2008) ...................................................... 15

*Bruce v. Grieger's Motor Sales, Inc.*,
    422 F. Supp. 2d 988 (N.D. Ind. 2006) ...................................................... 24

*Buck Creek Coal, Inc. v. United Workers of Am.*,
    917 F. Supp. 601 (S.D. Ind. 1995) .............................................................. 8

*Cincinnati Life Ins. Co. v. Grottenhuis*,
    No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114 (S.D. Ind. Mar. 23, 2011) ............... 22, 23

*Comfax Corp. v. N. Am. Van Lines, Inc.*,
    587 N.E.2d 118 (Ind. Ct. App. 1992) ........................................................ 23

*Corley v. Rosewood Care Center, Inc.*,
    142 F.3d 1041 (7th Cir. 1998) ...................................................................... 9

*Coronet Ins. Co. v. Seyfarth*,
    665 F. Supp. 661 (N.D. Ill. 1987) ................................................................ 9

*Design Time, Inc. v. Synthetic Diamond Tech., Inc.*,
    674 F. Supp. 1564 (N.D. Ind. 1987) ............................................................ 9

*DiLeo v. Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ...................................................................... 20

*E.E.O.C. v. Concentra Health Servs., Inc.*,
    496 F.3d 773 (7th Cir. 2007) ........................................................................ 7

*Emery v. Am. Gen. Fin., Inc.*,
    134 F.3d 1321 (7th Cir. 1998) .............................................................. 16, 17

*Fitzgerald v. Chrysler Corp.*,
    116 F.3d 225 (7th Cir. 1997) ........................................................ 14, 16, 17

*Frey v. Workhorse Custom Chassis LLC*,
No. 1:03-cv-1896-DFH-VSS, 2005 WL 775927 (S.D. Ind. Mar. 25, 2005) ........................... 22

*Gagan v. Am. Cablevision, Inc.*,
77 F.3d 951 (7th Cir. 1996) .......................................................................................................... 8

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) ..................................................................................................... 25

*Goren v. New Vision Int'l, Inc.*,
156 F.3d 721 (7th Cir. 1998) ........................................................................................................ 8

*Griffin v. Milwaukee Cnty.*,
369 F. App'x 741 (7th Cir. 2010) ................................................................................................. 13

*Gross v. Town of Cicero*,
619 F.3d 697 (7th Cir. 2010) ....................................................................................................... 24

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*,
747 F.2d 384 (7th Cir. 1984) ....................................................................................................... 14

*Hartz v. Friedman*,
919 F.2d 469 (7th Cir. 1990) ....................................................................................................... 16

*Huntington Mortg. Co. v. DeBrota*,
703 N.E.2d 160 (Ind. Ct. App. 1998) .......................................................................................... 24

*In re Matthys*,
No. 09-50794, 2010 WL 2176086 (Bankr. S.D. Ind. May 26, 2010) ............................................ 24

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
610 F.3d 382 (7th Cir. 2010) ....................................................................................................... 18

*Jennings v. Emry*,
910 F.2d 1434 (7th Cir. 1990) ................................................................................................ 14, 16

*Jepson, Inc. v. Makita Corp.*,
34 F.3d 1321 (7th Cir. 1994) ......................................................................................................... 9

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996) .................................................................................................. 15

*Laborers' Pension Fund v. Lay-Com, Inc.*,
580 F.3d 602 (7th Cir. 2009) ....................................................................................................... 19

*Lachmund v. ADM Investor Serv., Inc.*
191 F.3d 777 (7th Cir. 1999) .................................................................................................. 18, 21

*Lincoln Nat'l Bank v. Lampe*,
414 F. Supp. 1270 (N.D. Ill. 1976) ................................................................................................ 9

*Marcilis II v. Twp. of Redford*,
693 F.3d 589 (6th Cir. 2012) ....................................................................................................... 13

*Mathioudakis v. Conversational Computing Corp.*,
No. 1:12-cv-00558-JMS-DKL, 2012 WL 4052316 (S.D. Ind. Sept. 13, 2012) ............... 18, 21

*MDG Int'l Inc. v. Australian Gold, Inc.*,
No. 1:07-cv-1096-SEB-TAB, 2008 WL 3982072 (S.D. Ind. Aug. 22, 2008)........................... 22

*Midwest Grinding Co., Inc. v. Spitz*,
976 F.2d 1016 (7th Cir. 1992) ....................................................................................................... 9

- iii -

*Morgan Asset Holding Corp. v. CoBank, ACB,*
   736 N.E.2d 1268 (Ind. Ct. App. 2000) ................................................................. 24

*NNDYM IN, Inc. v. UV Imports, Inc.,*
   No. 3:09-cv-129-TWP-WGH, 2011 WL 5238824 (S.D. Ind. Nov. 1, 2011) .......................... 18

*Odishelidze v. Aetna Life & Cas. Co.,*
   853 F.2d 21 (1st Cir. 1988) .................................................................................. 15

*Otto v. Variable Annuity Life Ins. Co.,*
   814 F.2d 1127 (7th Cir. 1986) ............................................................................. 14

*Parker v. Chase Home Fin., LLC,*
   No. 11-05043-CV-DGK, 2011 WL 4972328 (W.D. Mo. Oct. 19, 2011) ............................ 13

*Pena v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO,*
   No. 08 C 4222, 2009 WL 2177239 (N.D. Ill. July 21, 2009) ...................................... 15

*Perlman v. Zell,*
   938 F. Supp. 1327 (N.D. Ill. 1996) ...................................................................... 12

*Pierson, III v. Orlando Reg'l Healthcare Sys., Inc.,*
   619 F. Supp. 2d 1260 (M.D. Fla. 2009) .................................................................. 13

*Rao v. BP Prods. N. Am., Inc.,*
   589 F.3d 389 (7th Cir. 2009) ............................................................................... 16

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ......................................................................................... 18

*Rice v. Strunk,*
   670 N.E.2d 1280 (Ind. 1996) ................................................................... 20, 22, 23

*Richmond v. Nationwide Cassel L.P.,*
   847 F. Supp. 88 (N.D. Ill. 1994) ......................................................................... 16

*Scott v. Bank of America,*
   No. 13-CV-987, 2013 WL 6164276 (E.D. Pa. 2013) .................................................. 11

*Sears v. Likens,*
   912 F.2d 889 (7th Cir. 1990) ............................................................................... 9

*Sedima, S.P.R.L. v. Imrex Co.,*
   473 U.S. 479 (1985) .......................................................................................... 7

*Spiegel v. Cont'l Ill. Nat'l Bank,*
   790 F.2d 638 (7th Cir. 1986) ............................................................................... 9

*Uni\*Quality, Inc. v. Infotronx, Inc.,*
   974 F.2d 918 (7th Cir. 1992) ............................................................................. 11

*United States v. Briscoe,*
   65 F.3d 576 (7th Cir. 1995) ................................................................................. 8

*United States v. Lack,*
   129 F.3d 403 (7th Cir. 1997) ............................................................................... 8

*United States v. Neapolitan,*
   791 F.2d 489 (7th Cir. 1986) ............................................................................... 8

*United States v. Turkette,*
   452 U.S. 576 (1981) ........................................................................................ 14

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994) ............................................................... 7, 9, 20

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) .................................................. 15

*Young v. Harbor Motor Works, Inc.*,
   No. 2:07-CV-0031JVB, 2009 WL 187793 (N.D. Ind. Jan. 27, 2009) .................................. 18

**Statutes**

15 U.S.C. § 1681 et seq............................................................................ 23

15 U.S.C. § 1692 et seq............................................................................ 6

15 U.S.C. § 6801 et seq............................................................................ 23

18 U.S.C. § 1341 ...................................................................................... 8

18 U.S.C. § 1343 ...................................................................................... 8

18 U.S.C. § 1951 ...................................................................................... 12

18 U.S.C. § 1962 et seq............................................................................ 1

18 U.S.C. § 1962(c) .................................................................................. 7

18 U.S.C. § 1962(d) .................................................................................. 7

18 U.S.C. § 2314 ...................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................... 1, 7, 25

Fed. R. Civ. P. 8(a) ............................................................................ 13, 19, 23

Fed. R. Civ. P. 9(b) ............................................................................ passim

# INTRODUCTION

In their Amended Class Action Complaint [Dkt. 303], Plaintiffs Andrew and Lucinda Cox, Stephanie Snyder and Robert Goodall (collectively, "Plaintiffs") assert seven causes of action against seventy defendants based on the premise that one of those defendants, LVNV Funding LLC, falsely claimed to own their credit card accounts. In doing so, Plaintiffs seek to resurrect claims made pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.* ("RICO") (Counts II and III), and common law fraud (Count IV) that the Court previously dismissed due to pleading defects (*see* Entry on Motion to Reconsider [Dkt. 237] at 10-11), and add a claim for constructive fraud. (Count V). With their lengthy, confusing and often contradictory Amended Complaint, however, Plaintiffs repeat the same essential pleading error the Court previously criticized—namely, they continue to lump together all "Defendants" and thus omit allegations of how *each* defendant participated in the alleged misconduct. Plaintiffs also fail to allege a RICO enterprise separate and apart from the defendants, fail to allege reliance on the purported misstatement regarding LVNV's ownership of their debts, and fail to allege the special duty essential to a claim for constructive fraud. That Plaintiffs cannot do so after having had more than a year to conduct discovery regarding LVNV's purchase of, and collection efforts related to, their accounts proves the futility of Plaintiffs' misguided efforts to state RICO and fraud based claims. As a result, Defendants Sherman Capital LLC, Sherman Financial Group LLC, Sherman Originator LLC, LVNV and Resurgent Capital Services LP (collectively, the "Entity Defendants") respectfully ask that the Court dismiss Plaintiffs' RICO, fraud and constructive fraud claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for their failure to state claims upon which the Court can grant relief.

## BACKGROUND

Plaintiff Andrew Cox maintained two credit card accounts with Chase Bank USA NA ("Chase"), one of which he shared with his wife, Lucinda, as co-signer.  (Am. Comp. ¶¶ 30-31.)  At some time prior to December 2010, neither Andrew, individually, nor the Coxes, jointly, could make the payments on the debts they incurred on these credit card accounts, resulting in Chase charging off these accounts 180 days after the Coxes' defaults.  (*Id.* ¶¶ 64-65.)  Thereafter, Sherman Capital Markets LLC entered into a December 10, 2010 Purchase Agreement with Chase pursuant to which Chase sold the Coxes' credit card accounts to Sherman Originator III LLC. (*Id.* ¶¶ 66, 77.)[1] Sherman Originator III then assigned ownership of the two Cox accounts to Defendant Sherman Originator, which then assigned that ownership to Defendant LVNV on or about April 8, 2011. (*Id.*)  Three days later, on April 11, 2011, Defendant Resurgent received data associated with the Coxes' accounts, which it then furnished to several consumer credit reporting agencies stating that the Coxes jointly, and Andrew individually, owed debts to LVNV. (*Id.* ¶¶ 67, 78.)  Resurgent also hired collection agents to collect these debts on LVNV's behalf. (*Id.* ¶¶ 68, 79.) Although these collection agents sent the Coxes "numerous collection letters" and made "telephone calls to their home and cellular numbers requesting payment," the Coxes apparently did not make any payments on their credit card accounts, or at least have not alleged that they have.  (*Id.* ¶¶ 68-75.)  Instead, as these collection efforts continued to affect the Coxes' credit ratings, they hired legal counsel. (*Id.* ¶ 76.)

Like the Coxes, Plaintiff Robert Goodall obtained a Chase credit card account. (*Id.* ¶ 102.)  By 2007, however, Goodall could no longer make payments due on this account, causing Chase to charge off his credit card debt 180 days after he defaulted on this payment obligation.

---

[1] Although named as defendants in the original Complaint [Dkt. 1], Sherman Capital Markets and Sherman Originator III are not named as defendants in the Amended Complaint.  (*See* Am. Complaint ¶¶ 36, 40.)

(*Id.* ¶ 102.) On September 9, 2010, Chase sold his credit card account to Sherman Originator III, which in turn transferred the account to Sherman Originator which transferred the account to LVNV. (*Id.* ¶ 104.) When Goodall subsequently filed for bankruptcy, Resurgent filed a proof of claim in his bankruptcy proceeding, indicating that Goodall owed a debt to LVNV. (*Id.* ¶¶ 103, 105.) Based on that claim (as later amended), Goodall's bankruptcy trustee remitted $7,904.41 to Resurgent in 2014. (*Id.* ¶ 106.)

Plaintiff Stephanie Snyder obtained a Sears credit card account apparently originated with Citibank (South Dakota) USA ("Citibank"). (*Id.* ¶ 83.) After she failed to maintain payments due on this account, Sears (or likely Citibank) charged-off her account and sold it to Sherman Originator, which then assigned her account to LVNV on April 4, 2007. (*Id.* ¶¶ 82-83.) Thereafter, Resurgent informed various credit reporting agencies that Snyder owed a debt to LVNV and hired various collection agents who attempted to collect that debt by making telephone calls and sending collection letters to Snyder over a period starting in 2007 and running through 2011. (*Id.* ¶¶ 83-93.) On April 11, 2011, a law firm acting on behalf of LVNV filed a collection action against Snyder and obtained a default judgment. (*Id.* ¶¶ 95, 97.) This led to the garnishment of Synder's wages in August, September and October 2012, with the $1,146.56 thereby collected remitted to Resurgent. (*Id.* ¶ 100.) Snyder subsequently filed for bankruptcy where Resurgent filed proof of claim stating LVNV remained a current creditor with an amount due and owing from Synder. (*Id.* ¶ 101.)

While each of the Plaintiffs thus acknowledges that he or she incurred debts on their credit card accounts that they failed to repay, they all further allege that LVNV never received ownership of those accounts or the right to collect the debts Plaintiffs incurred. (*Id.* ¶¶ 67, 70, 78, 84, 90, 92, 101, 106.) In particular, Plaintiffs allege that, because Citibank and Chase had

previously surrendered all control over, and ownership of, their accounts to trusts in securitization transactions, Plaintiffs' debt obligations ended when Citibank and Chase (presumably acting as servicers for the trusts) charged-off their accounts 180 days after default. (*Id*. ¶¶ 58-62.) As a result, in the purchase and transfer transactions noted above, LVNV purportedly did not obtain ownership of Plaintiffs' debts, but instead, received "leftover data" related to their now extinguished accounts.  (*Id.* ¶ 62.) Consequently, each time Resurgent, or the debt collectors and law firms it engaged on LVNV's behalf, represented that LVNV owned the Plaintiffs' credit card accounts, or identified LVNV as a creditor of the Coxes, Snyder or Goodall, Plaintiffs claim LVNV and Resurgent falsely asserted ownership of a debt owed by him or her. (*Id.* ¶¶ 67, 70, 81, 84, 89-93, 95-96, 101, 106, 121.)

While all of the communications upon which the Coxes, Goodall and Synder base their individual claims emanate from, or on behalf of, LVNV, Resurgent or various non-party collection agents or attorneys Resurgent engaged on LVNV's behalf, the allegations in remainder of the Amended Complaint in large part refer generically to "Sherman" or "Defendants"– both of which terms refer to 18 entities allegedly affiliated in various ways with LVNV and Resurgent, plus 50 unnamed "John Does." (*See id.* at 2.)  For instance, Defendant Sherman Capital purportedly "owns, employs and operates" Defendant Sherman Financial Group that in turn, "ultimately" owns, controls, employs and operates, LVNV, Resurgent and Sherman Originator "as subsidiaries and/or affiliates," "purchasing vehicles," "collateralized debt obligations" and "holding vehicles." (*Id.* ¶¶  34-35.) Plaintiffs further describe Sherman Originator as "the only member" of LVNV and a "purchasing vehicle for 'data' … assigned to the holding vehicle, LVNV." (*Id.* ¶ 39.)  Defendant Unknown S Corp., which Plaintiffs claims is a corporation all Defendants collectively created in 2012 or 2013, has a vaguely alleged

ownership interest in several of the other Defendants. (*Id.* ¶ 42.) The remaining non-Doe defendants – the so-called "New Shell Companies" – similarly came into existence in 2012 at the hand of all Defendants, and, with other non-parties, own and control Sherman Capital. (*Id.* ¶ 41.)

Plaintiffs, however, allege little about these other parties other than broad statements about the purported businesses they engage in and generic assertions regarding their supposed ownership and control of one another. In particular, Plaintiffs allege by rote that Sherman Capital, Sherman Financial Group and Sherman Originator are "debt collectors" primarily engaged in the "purchasing, and collecting on, data containing information about Indiana consumer accounts via mail, telephone, internet and civil debt collection lawsuits." (¶¶ 34-35, 39, 45, 53.) Sherman Capital owns, employs and operates Sherman Financial Group and has management services agreements with both Sherman Financial Group and Sherman Capital Markets through which it "ultimately" operates and manages, and has "decision making power and control over" LVNV, Sherman Originator and Sherman Originator III. (¶¶ 12, 34, 45-50, 54-55.) Described alternatively as a "complex business structure" and a "shell company," Sherman Financial Group also "ultimately" owns, controls, employs, and operates the "LVNV holding vehicle," Resurgent, Alegis Group LLC, and the Sherman Originator and Sherman Originator III "purchasing vehicles," as subsidiaries and/or affiliates, and maintains several collateralized debt obligations including LVNV. (¶¶ 12, 34, 35-36, 39, 53-55, 167(e).) Its subsidiary, Credit One Bank NA, issues credit cards. (¶ 115.) Sherman Originator (described as yet another "shell entity"), purportedly purchases and repackages data with financing and capital received from Sherman Capital Markets and then assigns this data to its wholly owned subsidiary, LVNV. (¶¶ 35-36, 38-39, 53.) Plaintiffs further state that Sherman Capital receives management fees and a commission in connection with the issuance of LVNV securities, (¶ 208),

while Sherman Financial Group receives a portion of servicing fee earned by Resurgent. (¶¶ 35, 37, 208.)

The remaining non-Doe Defendants are entities about whom Plaintiffs allege even less. Purportedly the pejoratively named "New Shell Companies" collectively own, employ and control Sherman Capital. (¶¶ 12, 41.)   And the last named Defendant, Unknown S Corp, "ultimately" pulls the strings of all the other Defendants, all of which it also directly or indirectly owns. (¶ 12, 42.)

According to Plaintiffs, "Sherman" or "Defendants" (again all seventy Defendants collectively) purchase information and data about charged off consumer credit card accounts (but do not actually acquire legal ownership of the debts themselves), and then securitize the information into a synthetic collateralized debt obligation ("CDO"). (*Id.* ¶¶ 2, 4.)  This collective group of Defendants then "improperly collect[s] money from Indiana consumers on the information contained in the data" on behalf of the CDO, despite Defendants' lack of legal ownership of the debts.  (*Id.* ¶ 5.)  Plaintiffs continue that the collected money "flows through" Defendants, and is ultimately used to purchase more data and pay the certificate holders of the CDO.  (*Id.*)

To account for their failure to identify specifically the role of each Defendant in this alleged "data" purchasing/debt collection conduct, Plaintiffs allege, in a conclusory fashion, that all Defendants are "jointly and severally liable for the improper acts of LVNV [and] Resurgent" on the basis of agency, and that all Defendants "are alter egos of each other."  (*Id.* ¶¶ 13-14.) Plaintiffs then assert that Defendants have committed actual and constructive fraud, violated RICO and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and must compensate Plaintiffs based on claims for restitution and unjust enrichment.  (*Id.* ¶¶ 146-219.)

<u>**ARGUMENT**</u>

**I.      LEGAL STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The complaint, moreover, must describe the claim in sufficient detail to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). Under this standard, "a plaintiff has the obligation to provide the factual 'grounds' of his entitlement to relief (more than 'mere labels and conclusions'), and a 'formulaic recitation of a cause of action's elements will not do.'" *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 547). A complaint that alleges only "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**II.     PLAINTIFFS FAIL TO STATE A RICO CLAIM.**

Plaintiffs attempt to state their RICO causes of action against the Entity Defendants under Sections 1962(c) and (d) of that Act. To state a viable cause of action under § 1962(c), a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Alternatively, to state a § 1962(d) claim, *i.e.*, conspiracy to violate § 1962(c), a plaintiff must establish that:

(1)      the defendants agreed to acquire or maintain an interest in or control of an

- 7 -

> enterprise or to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity; and
>
> (2)   defendants further agreed that someone would commit at least two predicate acts to accomplish those goals.

*Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 961 (7th Cir. 1996). More particularly, Plaintiffs "must allege that" Defendants "'agreed to the objective of a violation of RICO.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998) (quoting *United States v. Neapolitan*, 791 F.2d 489, 498 (7th Cir. 1986)); *see Buck Creek Coal, Inc. v. United Workers of Am.*, 917 F. Supp. 601 614 (S.D. Ind. 1995) (dismissing § 1964(d) claim because plaintiffs alleged no facts by which an agreement to commit a substantive RICO offense could be supported, other than general allegations that defendants committed predicate acts).

As in their original Complaint [Dkt. 1], Plaintiffs' RICO claim in the Amended Complaint once again fails to meet the detailed pleading requirement of FRCP 9(b), impermissibly lumping the Entity Defendants with other Defendants and failing to allege with particularity how *each* Entity Defendant participated in the alleged misconduct.  They also do not allege either a RICO enterprise or a particularized agreement among these five defendants to a RICO violation objective, both necessary elements of their RICO claims.

**A.      Plaintiffs Fail to Plead a Pattern of Wire or Mail Fraud with the Particularity Required by Rule 9(b).**

Plaintiffs seek to use wire and mail fraud as the predicate acts that purportedly form the racketeering activity here. To state a wire and mail fraud violation, the plaintiff must plead: (1) that the defendant participated in a "scheme to defraud;" (2) with the intent to defraud; and (3) that the defendant used a wire communication or the mails to further the scheme.  *See* 18 U.S.C. §§ 1341, 1343; *United States v. Lack*, 129 F.3d 403, 406 (7th Cir. 1997); *United States v. Briscoe*, 65 F.3d 576, 583 (7th Cir. 1995) (pertinent elements are the same for both offenses).

As their labels suggest, mail and wire fraud require a fraud.  *See, e.g.*, *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 646-47 (7th Cir. 1986).  Fed. R. Civ. P. 9(b) requires that, in all averments of fraud or mistake, the party asserting such a claim shall state the circumstances constituting the fraud or mistake with particularity.  This heightened pleading requirement "applies to allegations of mail and wire fraud, including where those offenses are alleged to comprise predicate acts of a RICO pattern."  *Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1050 (7th Cir. 1998) (citing *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994)).  Accordingly, a RICO plaintiff "must, at minimum, describe the predicate acts [of fraud] with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud.'"  *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (citation omitted).  And in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme.  *See Vicom*, 20 F.3d at 778; *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (complaint properly dismissed with prejudice where "complaint lump[ed] all the defendants together and [did] not specify who was involved with what activity."); *Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 666 (N.D. Ill. 1987) ("Plaintiffs may not 'lump' defendants together in general allegations of fraudulent activity, implying that each defendant is responsible for the statements and actions of others."); *Design Time, Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ind. 1987) (discussing prohibition on lumping defendants together); *Lincoln Nat'l Bank v. Lampe*, 414 F. Supp. 1270, 1278 (N.D. Ill. 1976) (same).

Plaintiffs' collective pleading technique fails to meet Rule 9(b)'s heightened pleading standard.  Throughout their mail and wire fraud allegations, Plaintiffs allege that "Defendants" (apparently all seventy of them): purchased and received data from originating banks; sold the

data to investors; located Plaintiffs by impermissibly pulling credit reports; made false reports to credit reporting agencies; hired subcontractors to make telephone calls to Plaintiffs and file lawsuits against Plaintiffs; used judgments obtained against Plaintiffs to freeze bank accounts, put levies on property, and garnish paychecks; and reinvested the money under false pretenses. (Am. Compl. ¶ 107.)   They further allege that Defendants collectively "through their agent Resurgent," or the Credit One Bank NA subsidiary, contract with collection agencies and law firms, or otherwise undertake, to perform traditional collection activities and credit reporting. (*Id.* ¶¶ 110-111, 113-115.)   Plaintiffs continue that "*Defendants* could foresee that the U.S. Postal Service and interstate wires would be used in every dunning letter, telephone call, credit report, proof of claim, and court judgment and enforcement."   (*Id.* ¶ 116 (emphasis added).)   Within the RICO counts, however, Plaintiffs do not allege how each Entity Defendant committed, or agreed to the objective of, "predicate acts" related to the five credit card accounts maintained by Plaintiffs.

Instead, Plaintiffs presumably rely on allegedly "false" statements associated with wire or mail communications in a chart that purportedly shows how the Defendants "through their agents" used the wires and mails.  (*See id.* ¶¶ 120-21.)   The chart lists communications regarding purchase agreements with Chase and Citibank, transfers of the Coxes' and Snyder's nonpublic personal information, reports to credit agencies, and various calls, correspondence and legal pleadings with regarding to the collection activities related to the Plaintiffs' credit card accounts. (*Id.*) Resurgent is the only Defendant, however, specifically associated with any allegedly "false" communication, and even then the Plaintiffs fail to plead why Resurgent knew about the alleged falsehood of the communications or intended to send them in an alleged scheme to defraud Plaintiffs.

Significantly, as alleged by Plaintiffs, originating banks (presumably Chase and Citibank here) entered into securitization transactions that somehow allow the Plaintiffs to walk away from debts they admit they incurred and never paid off. (*See* Am. Complaint ¶ 57-63.) As a consequence, when the Entity Defendants purchased, financed the purchase of, or transferred the Plaintiffs' credit card accounts such that LVNV became at least the nominal owner of the accounts, Plaintiffs claim LVNV did not also gain ownership of their now extinguished debt, thus making any statement to the contrary "false."  But nowhere in the Amended Complaint do Plaintiffs allege that any of the Entity Defendants *knew* that Chase or Citibank had lost their right to collect Plaintiffs' debts or that their transactions with these legitimate banking institutions was anything other than a valid purchase of credit card accounts that routinely take place in the marketplace. Moreover, the Court cannot simply infer knowledge of the effect these alleged securitization transactions purportedly had on Plaintiffs' obligation to pay his or her debt as courts have found such transactions do not have such an effect. *See Scott v. Bank of America*, No. 13-CV-987, 2013 WL 6164276 at *3 (E.D. Pa. 2013) (the court rejects the theory that a credit card bank could not sell a credit card receivable after the receivable had been securitized). Thus, simply indicating that Resurgent made a communication that contained a "false" statement regarding LVNV's ownership of Plaintiffs' debts does not fulfill Plaintiffs' pleading requirement. Instead, Plaintiffs must also allege Resurgent's intent (and the intent of each Entity Defendant) to make a false statement. That Plaintiffs fail to do.

As the Seventh Circuit has noted, "[a]ccusations of fraud can seriously harm a business. This is especially so in RICO cases where fraud accusations lead to the more damaging accusation that the business engaged in 'racketeering.'"  *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) (affirming district court's dismissal of RICO claims under Rule

9(b)).  Generic lumping together of "the Defendants" and the absence of specific allegation of the content of the fraud does not embody the fair notice principles the federal law embodies.  In sum, Plaintiffs' wire and mail fraud allegations have failed to satisfy Rule 9(b).

**B.  Plaintiffs' Insufficient Allegations of Interstate Transportation of Stolen Property and Extortion.**

Plaintiffs also allege interstate transportation of stolen property and extortion as predicate acts for purposes of their RICO claims.  (Am. Compl. ¶¶ 125-132.)  With respect to the former, Plaintiffs must plead that Defendants "transport[ed], transmit[ed], or transfer[red] in interstate . . . commerce any . . . money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud."  18 U.S.C. § 2314.  With respect to the latter, Plaintiffs must plead that Defendants "obstruct[ed], delay[ed], or "affect[ed] commerce . . . by . . . extortion or attempt[ed] or conspire[ed] so to do."  18 U.S.C. § 1951.

While an allegation of interstate transportation of stolen property generally must comply only with Rule 8(a), "[i]f the funds involved in the violation of the statute[] are alleged to have been fraudulently obtained, then the details of that underlying fraud must be pled with particularity."  *Perlman v. Zell*, 938 F. Supp. 1327, 1348 (N.D. Ill. 1996) (citations omitted).  In this case, Plaintiffs allege that Defendants "devised . . . a scheme or artifice to defraud and obtain Plaintiffs' money by false pretenses."  (Am. Compl. ¶ 125.)  Therefore, Plaintiffs' must plead with particularity the details of the underlying fraud.

As with their allegations of mail and wire fraud, Plaintiffs have failed to do so.  As noted above, Plaintiffs allege that collectively, "*Defendants* devised . . . a scheme or artifice to defraud and obtain Plaintiffs' money by false pretenses," (*id.* (emphasis added)), once again failing to specify the manner in which *each* Entity Defendant participated in fraudulently obtaining the funds. Such conclusory allegations cannot possibly meet the heightened pleading requirements of

- 12 -

Rule 9(b), or even a lesser Rule 8(a) standard. *See Griffin v. Milwaukee Cnty.*, 369 F. App'x 741, 743 (7th Cir. 2010) (dismissing a complaint under Rule 8(a) because it "is unclear how each defendant is supposed to have participated; some defendants listed in the caption are not even mentioned in the body of the complaint"); *Parker v. Chase Home Fin., LLC*, No. 11-05043-CV-DGK, 2011 WL 4972328, at *2 (W.D. Mo. Oct. 19, 2011) (similar dismissal under Rule 8(a)). Plaintiffs' conclusory allegation that "*Defendants* . . . transported and caused to be transported in interstate [*sic*] money that belonged to Plaintiffs," (Am. Compl. ¶ 125 (emphasis added)) does not meet this standard. Further, with regard to the transfers Resurgent allegedly received from Snyder's wages garnishment and Goodall's bankruptcy distribution, (*id.*, ¶ 126), Plaintiffs fail to allege Resurgent's knowledge that such payments resulted from a fraud.[2]

Similarly, with respect to Plaintiffs' extortion allegations, Plaintiffs assert that "*Defendants* . . . obtained money and property from Plaintiffs, with their consent, induced by wrongful use of actual or threatened fear in the form of 'sham' collection techniques," and only identify Resurgent's connection to the law suit against Snyder. (*Id.* ¶¶ 129-130 (emphasis added).) As these allegations also fail to allege the individual participation of the Entity Defendants in this activity, or Resurgent's knowing participation, Plaintiffs also fail to properly allege extortion. *See Marcilis II v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (dismissing claims where plaintiff failed to allege "facts that demonstrate what each defendant did," and instead referred to all defendants "generally and categorically"); *Pierson, III v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009) ("'[B]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the plaintiff's complaint fail[s] to satisfy [Fed. R. Civ. P. 8(a)].'" (citations

---

[2] Additionally, Plaintiffs allege that the total amount of wages garnished from Synder was $1,146.56, and thus less than the $5000 minimum amount specified in the interstate transportation of stolen property statute.

omitted)), *aff'd*, 451 F. App'x. 862 (11th Cir. 2012), *cert. denied*, 133 S. Ct. 940 (2013).

### C.     Plaintiffs Fail to Plead a RICO Enterprise Under 1962(c).

In addition to the pleading failures discussed above, Plaintiffs do not properly plead a RICO enterprise.  The "first rule" of RICO pleading is that "'a plaintiff must identify the enterprise.'"  *See Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990) (quoting *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1136 (7th Cir. 1986)).  Enterprises may be of two types: legal entities and extra-legal "'associations in fact.'"  *Id.* at 1440 (citing and quoting *United States v. Turkette*, 452 U.S. 576 (1981)).  In our case, Plaintiffs allege ten alternative enterprises, and assert that some are legal entities while others are associations in fact.  (Am. Compl. ¶¶ 164-73.)   Each alleged enterprise is composed of varying combinations of Defendants, previously dismissed Defendants, and collection agencies and law firms Defendants allegedly used to collect debts.  (*See id.*)

By alleging the existence of ten alternative enterprises, Plaintiffs imply that the RICO enterprise(s) in this case exists separate and apart from Defendants.   A closer examination of Plaintiffs' allegations, however, reveals that the alleged enterprises are various related entities, subsidiaries and their agents conducting a "traditional" debt collection business—*i.e.*, the Defendants conducting their normal business activities. This fundamental pleading failure is fatal to Plaintiffs' RICO claim under 1962(c).  As the Seventh Circuit has repeatedly explained, "[w]ithout a difference between the defendant and the 'enterprise' there can be no violation of RICO."  *Baker v. IBP, Inc.*, 357 F.3d 685, 692 (7th Cir. 2004) (citations omitted); *see also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227-28 (7th Cir. 1997); *Haroco, Inc. v. Am. Nat'l Bank & Trust Co.*, 747 F.2d 384, 401-02 (7th Cir. 1984).

The Seventh Circuit's decision in *Baker v. IBP, Inc.* is on point.  In *Baker*, the complaint alleged that the "enterprise" was the defendant corporation, "plus the persons and organizations

who help it find aliens to hire."   357 F.3d at 691.   After noting that "the complaint comes

perilously close to alleging that [defendant] plus its agents and employees is the 'enterprise,' a

theory that won't fly," the Seventh Circuit found that the "nub of the complaint is that defendant

operates *itself* unlawfully."   *Id.* (emphasis in original).   The Court then concluded that there was

no RICO violation because the defendant and the enterprise were one in the same.   *See id.* at 692.

Like *Baker*, this case involves an assortment of alleged enterprises that are one and the

same as Defendants sued.   Because Plaintiffs have failed to identify an enterprise that is distinct

from Defendants, their RICO claims fail and should be dismissed. *See e.g. Pena v. Int'l Union of

Operating Eng'rs, Local 150, AFL-CIO*, No. 08 C 4222, 2009 WL 2177239, at *4 (N.D. Ill. July

21, 2009) ("When a plaintiff seeks to hold a group of RICO persons liable, and that group is

identical to the group making up the alleged enterprise, the RICO claim fails because the persons

are not distinct from the enterprise.") (emphasis added); *Brown v. County of Cook*, 549 F. Supp.

2d 1026, 1030 (N.D. Ill. 2008) (finding no viable RICO claim where defendants were the same

as the alleged enterprise); *Vulcan Golf, LLC v. Google Inc*., 552 F. Supp. 2d 752, 784 (N.D. Ill.

2008) (same); *see also Odishelidze v. Aetna Life & Cas. Co*., 853 F.2d 21, 23 (1st Cir. 1988)

(finding no RICO claim where "Aetna companies and their officers or employees (the named

defendants)" were the same as the alleged enterprise); *Katzman v. Victoria's Secret Catalogue*,

167 F.R.D. 649, 658 (S.D.N.Y. 1996) (same).

Plaintiffs' enterprise theory fails for yet another reason: the alleged enterprises are simply

the incidental business relationships of various related entities.   The Amended Complaint does

little more than describe a typical corporate family of related entities and then ominously dubs

those relationships "enterprises."   (*See* Am. Compl. ¶¶ 164-73.)   But when one peeks beneath

that label, nothing ominous is revealed.   "[T]here is nothing indicating an enterprise existing

apart from [Defendants'] deeds." *Jennings*, 910 F.2d at 1440 n.14.  These allegations do not indicate how the different Defendants behaved apart from their ordinary business dealings; nor do they suggest a group of persons acting together for a common purpose or course of conduct. *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400-01 (7th Cir. 2009).  Plaintiffs plead no "enterprise" that "is meaningfully different . . . from the units that go to make it up." *Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88, 91 (N.D. Ill. 1994).  At bottom, Plaintiffs plead only that Defendants make up a family of related entities engaged in a debt collecting business that, allegedly and incidentally, fraudulently collected debts.  A RICO enterprise requires more.

One Seventh Circuit case makes this point clear.  In *Fitzgerald,*, a putative class of vehicle purchasers bought extended warranties.  116 F.3d at 226.  The purchasers alleged that Chrysler had "secretly determined not to provide" much of the protection promised in those extended warranties.  *Id.*  Alleging predicate acts of mail and wire fraud, the purchasers sued Chrysler for RICO violations.  *Id.*  The purchasers pleaded that the offending RICO enterprise included Chrysler, its independent dealers, and certain trusts that resold the automobile purchase contracts to the investing public.  *Id.*

Judge Posner writing for the Seventh Circuit affirmed the district court's dismissal, and explained that "RICO . . .  is not a conspiracy statute.  Its draconian penalties are not triggered just by proving conspiracy.  'Enterprise' connotes more." *Id.* at 228; *see also Hartz v. Friedman*, 919 F.2d 469, 471 (7th Cir. 1990) ("An enterprise is not merely a conspiracy; an enterprise must involve more than an agreement to commit a pattern of racketeering activity." (citation omitted)).  Where the defendant corporation operates through wholly-owned subsidiaries, "the parent would be exercising power that is inherent in its ownership of wholly owned subsidiaries." *Emery v. Am. Gen. Fin., Inc*., 134 F.3d 1321, 1324 (7th Cir. 1998).  The corporate defendant, therefore,

"must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate … firm and uses the firm as the instrument of his criminality." *Id.* Consequently, "where a large, reputable manufacturer deals with its dealers and other agents in the ordinary way, so that their role in the manufacturer's illegal acts is entirely incidental . . . the manufacturer plus its dealers and other agents (or any subset of the members of the corporate family) do not constitute an enterprise within the meaning of the statute." *Fitzgerald*, 116 F.3d at 228.

The Seventh Circuit also addressed the requirement that the RICO enterprise be separate and distinct from the RICO person in *Emery*, a case involving "loan flipping." In *Emery*, American General Finance Corporation (AGFC), its wholly-owned subsidiary American General Finance, Inc. (AGFI), and ten unnamed individual defendants were named as defendants. AGFC engages in consumer lending and AGFI conducts AGFC's business in Illinois. The ten individual defendants allegedly devised the policies used by the corporate defendants. The RICO enterprise, although variously described, was "essentially the corporate group." *Emery,* 134 F.3d at 1324.

Relying on *Fitzgerald,* the Seventh Circuit found that the distinction requirement was not met. The court explained that where the defendant corporation operated through wholly-owned subsidiaries, "the parent would be exercising power that is inherent in its ownership of wholly owned subsidiaries." *Id*. Judge Posner emphasized that the corporate defendant "must be shown to use its agents or affiliates in a way that bears at least a family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate … firm and uses the firm as the instrument of his criminality." *Id.*.

Plaintiffs here do no more. Plaintiffs' alleged enterprises are merely the incidental business relationships of the various entities involved in the alleged debt collection business.

"'Liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.'" *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).  Because Plaintiffs have failed to make this showing, their RICO claims should be dismissed.

**D.      Plaintiffs' Allegations of Agency Fail to Meet Rule 9(b) Pleading Requirements.**

Controlling Seventh Circuit authority is clear that "[w]hen the plaintiff relies upon the same circumstances to establish both the alleged fraud and the agency relationship of a defendant, the reasons for more particularized pleading that animate Rule 9(b) apply with equal force to the issue of agency and to the underlying fraud claim." *Lachmund v. ADM Investor Serv., Inc.,* 191 F.3d 777, 783 (7th Cir. 1999); *Young v. Harbor Motor Works, Inc.*, No. 2:07-CV-0031JVB, 2009 WL 187793, at *6 (N.D. Ind. Jan. 27, 2009) (applying *Lachmund* and determining that because plaintiff failed to sufficiently plead agency under Rule 9(b), the alleged misrepresentations are not imputable). Similarly, courts in this jurisdiction and elsewhere apply Rule 9(b) to veil piercing claims that are based on fraud. *See Mathioudakis v. Conversational Computing Corp.*, No. 1:12-cv-00558-JMS-DKL, 2012 WL 4052316, at *4 (S.D. Ind. Sept. 13, 2012) (recognizing that "when a party attempts to pierce the corporate veil based on fraud, the fraud allegations must comply with Federal Rule of Civil Procedure 9(b)."); *NNDYM IN, Inc. v. UV Imports, Inc.*, No. 3:09-cv-129-TWP-WGH, 2011 WL 5238824, at *2 (S.D. Ind. Nov. 1, 2011) (observing that when determining whether a plaintiff has sufficiently pleaded a veil-piercing claim, courts must consider whether plaintiff has sufficiently pleaded the state's substantive veil-piercing factors).

Under Rule 9(b)—or even Rule 8(a) for that matter—Plaintiffs' formulaic and conclusory allegations of agency, alter ego, veil-piercing and *respondeat superior* are simply not sufficiently pled. (*See* ¶¶ 5, 13-14, 24, 27-29, 51, 68, 79, 85, 109-111, 113-114, 119, 121, 123, 125, 128-131, 133, 154, 175, 186, 190, 194.) Nowhere in the Complaint, for instance, do Plaintiffs allege any of the factors that courts use to determine whether a plaintiff has sufficiently pleaded a veil-piercing theory, *i.e.*, "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor  corporation at the time; (5) siphoning of corporation's funds by the dominant stockholder; (6) absence of corporate records; and (7) whether the corporation is merely a façade." *Blair v. Infineon Techs. AG*, 720 F. Supp 2d 462, 470-71 (D. Del. 2010).[3]  As such, Plaintiffs cannot base there RICO claims against the Entity Defendants on such agency and veil piercing legal theories.

## III.   PLAINTIFFS FAIL TO STATE CLAIMS FOR ACTUAL AND CONSTRUCTIVE FRAUD.

Plaintiffs' Amended Complaint includes claims for actual and constructive fraud.  (Am. Compl. Counts IV and V.)  As discussed more fully below, Plaintiffs fail to plead these claims with the specificity required by Rule 9(b).  In addition, Plaintiffs' constructive fraud claim fails because Plaintiffs have failed to plead sufficient facts showing that Defendants owed Plaintiffs a requisite special duty.

### A.     Plaintiffs Fail to Plead Their Actual Fraud Claim with the Particularity Required by Rule 9(b)

Plaintiffs have not pled their claim for actual fraud to the heightened pleading standard under Rule 9(b).  To state a claim for actual fraud under Indiana law, Plaintiffs must plead with

---

[3] Because  all of the Entity Defendants are incorporated or organized under the laws of Delaware, Plaintiffs must plead Delaware's veil-piercing factors. *Cf. Laborers' Pension Fund v. Lay-Com, Inc*., 580 F.3d 602, 610 (7th Cir. 2009) ("Veil-piercing is an equitable remedy governed by state law, here the law of Illinois because that is where all the corporations at issue were incorporated.")

particularity: (1) a material misrepresentation of past or existing facts by a particular Defendant; (2) which was false; (3) which was made with knowledge or reckless ignorance of the falseness; (4) which was relied upon by Plaintiffs; and (5) which proximately caused Plaintiffs' injury. *See Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996) (citation omitted). Rule 9(b) demands the "'who, what, when, where, and how,'" not merely vague allegations of false statements. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citations omitted); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). When a claim of fraud is brought against multiple Defendants, "'the Complaint should inform each Defendant of the nature of his alleged participation in the fraud.'" *Vicom*, 20 F.3d at 778 (citation omitted). It is not sufficient to "lump[] together" all the Defendants; instead, the Complaint must "'specify who was involved in what activity.'" *Id.* (citation omitted).

Plaintiffs' actual fraud claim fails because it does not identify which Entity Defendant made the alleged misrepresentations, let alone when, where, or how. Plaintiffs allege that "Defendants, through their agents . . ., in each and every furnishing to a credit reporting agency, in each and every communication to its collection agency subcontractors, on each and every dunning letter sent by it or its agents, and in each and every lawsuit filed on its behalf in Indiana with Defendants' knowledge, made the material misrepresentation that a valid debt existed and that the debt was ultimately owned by, and owed to LVNV." (Am. Compl. ¶ 186.) But other than certain statements made by Resurgent on LVNV's behalf, Plaintiffs fail to identify which Defendant made the alleged communication, by what means, what the content of the communication was, when it was made, or where. And as noted, even the purported "false statements attributed to Resurgent are not alleged to have been made with Resurgent's knowledge of their purported falsehood or intent to defraud.

Plaintiffs allege, in an attempt to cure their pleading deficiency, "that each of the [D]efendants were the agents, representatives, servants, employees, principals, joint-venturers, co-conspirators, and/or representatives of each of their co-[D]efendants and were acting within the course and scope of their agency . . . and, therefore, to the extent that any Defendant did not directly engage in the actions upon which this Count is based, such Defendants should be equally liable for the resulting damages as . . . [D]efendants who performed such actions." (*Id.* ¶ 190.) But such conclusory agency allegations, as well as Plaintiffs unsupported alter ego and veil piercing claims, are not permitted. *Lachmund*, 191 F.3d at 783; *Mathioudakis*, 2012 WL 4052316, at *4.

Plaintiffs also fail to allege any reliance on the statements made by Resurgent. None of them paid their debts based on the statements that LVNV owned their debts and in fact, Plaintiffs repeatedly allege that they openly disputed LVNV's right to collect those debts. (Am. Compl. ¶ 65, 72, 81, 101, 106.)[4] Without reliance, Plaintiffs cannot state a clam for fraud. Because Plaintiffs have failed to plead actual fraud with particularity as required by Rule 9(b), their actual fraud claim should be dismissed.

### B. Plaintiffs Fail to Plead Their Constructive Fraud Claim with the Particularity Required by Rule 9(b)

Plaintiffs' claim for constructive fraud fails because the Amended Complaint again falls short of the heightened pleading standard of Rule 9(b). To state a claim for constructive fraud under Indiana law, Plaintiffs must plead that: (1) Defendants owed a duty to Plaintiffs due to their relationship; (2) Defendants violated that duty by making deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak existed; (3)

---

[4] Plaintiffs Andrew and Lucinda Cox are not alleged to have paid anything on their debts. Snyder paid $1,146 because of a garnishment proceeding she purportedly did not even know was taking place. The payment on Goodall's account came as a result of the trustee in his bankruptcy proceeding making the payment and not based on any statement upon which Goodall relied.

Plaintiffs relied on Defendants' alleged misrepresentations; (4) Plaintiffs were injured as a proximate result; and (5) Defendants gained an advantage at the expense of Plaintiffs. *Rice*, 670 N.E.2d at 1284 (citation omitted).   Moreover, Plaintiffs must plead Defendants' alleged deceptive material misrepresentations or omissions with particularity as the heightened pleading requirements of Rule 9(b) apply with equal force to a claim for constructive fraud. *See Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011) ("It is undisputed that the constructive and actual fraud claims are subject to heightened Rule 9(b) pleading standards." (citation omitted)); *see also* MDG *Int'l Inc. v. Australian Gold, Inc.*, No. 1:07-cv-1096-SEB-TAB, 2008 WL 3982072, at *2 (S.D. Ind. Aug. 22, 2008); *Frey v. Workhorse Custom Chassis LLC*, No. 1:03-cv-1896-DFH-VSS, 2005 WL 775927, at *12 (S.D. Ind. Mar. 25, 2005) (noting, in the context of constructive fraud, that "the heightened pleading standard of Rule 9(b) pertains to . . . fraudulent representations or omissions").

In support of this count, Plaintiffs allege that "*Sherman* owe[d] a duty to Indiana consumers" and that "LVNV *and the other Defendants* failed to notify Indiana consumers that their nonpublic personal information would be shared with the unaffiliated investors of LVNV, and failed to accurately report credit information."  (Am. Compl. ¶¶ 197, 199 (emphasis added).) Plaintiffs continue that "Indiana consumers relied upon *Sherman* to fulfill its duties," and assert that "*Sherman* gained an advantage by the breach of its duties."  (*Id.* ¶¶ 201, 203 (emphasis added).)  As is clear from these allegations, Plaintiffs improperly aggregate Defendants. By doing so, they fail to allege facts establishing a special duty running between any of the Entity Defendants, on one hand, and any or all of the Plaintiffs, on the other hand. Additionally, except with regard to Resurgent, Plaintiffs fail to plead with particularity any Entity Defendant

statement that either revealed Plaintiffs' alleged nonpublic personal information, or inaccurately reported their credit information. Plaintiffs' collective pleading practice thus renders their constructive fraud claim inadequate under Rule 8(a), let alone under the strictures of Rule 9(b).

### C. Plaintiffs Fail to Allege That the Entity Defendants Owe Plaintiffs a Special Duty.

To satisfy the first element of a claim for constructive fraud, Plaintiffs must plead that the Entity Defendants owed a duty to Plaintiffs due to their relationship. *See Rice*, 670 N.E.2d at 1284 (citation omitted). Considering whether a defendant has a duty to conform its conduct to a certain standard for the benefit of a plaintiff requires that three factors be balanced: "(i) the relationship between the parties, (ii) the reasonable foreseeability of harm to the person injured, and (iii) public policy concerns." *Id.* (citation omitted). In fact, Plaintiffs must plead sufficient facts showing that Defendants owed them a *fiduciary duty* to survive a motion to dismiss on a constructive fraud claim. *See Cincinnati Life Ins. Co.*, 2011 WL 1107114, at *9 (granting a motion to dismiss a constructive fraud claim for failing to sufficiently allege that a fiduciary duty existed). As one court has noted, "[t]his special relationship is shown when the parties have fiduciary duties to each other, such as in the relationship between lawyer and client." *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992) (citation omitted).

In this case, Plaintiffs allege that "Sherman owe[d] a duty to Indiana consumers, which duty is imposed by, among other things, the Graham Leach Bliley Act [*sic*], 15 U.S.C. § 6801 *et seq.* . . . and the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* . . . to protect nonpublic personal information and to not disclose nonpublic information, unless it notifies the consumer that such information is being shared with unaffiliated third parties and . . . to accurately report credit information." (Am. Compl. ¶ 197.) Plaintiffs add that "[t]here also exists a common law duty of keeping nonpublic personal financial information private." (*Id.*) But none of these

purported duties rises to a special, fiduciary duty of the type required to state a constructive fraud claim. In fact, the Gramm-Leach-Bliley Act has been interpreted not to provide for a private right of action. *See In re Matthys*, No. 09-50794, 2010 WL 2176086, at *2 (Bankr. S.D. Ind. May 26, 2010). Similarly, only certain sections of the Fair Credit Reporting Act have been interpreted to provide for a private right of action. *See Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 991 (N.D. Ind. 2006) ("[T]here is no private right of action for violations of section 1681m."). Thus, Plaintiffs' reliance on these two statutes—one of which does not even provide for a private right of action—to show that Defendants owed a special duty to Plaintiffs is insufficient. Moreover, to form the basis for a fiduciary duty, a statute must expressly provide for such a duty, and neither statute relied upon by Plaintiffs explicitly creates a fiduciary duty on the part of the Entity Defendants. *See Gross v. Town of Cicero*, 619 F.3d 697, 711 (7th Cir. 2010) ("[I]n . . . statutes that form the basis for a recognized fiduciary duty, the text itself explicitly creates such a duty."). The Entity Defendants' relationship to Plaintiffs cannot possibly be analogized to the relationship between a lawyer and a client. Further,to the extent Plaintiffs claim a common law duty arises because one or more of the Entity Defendants is a creditor, they do not plead a "special duty" as a creditor is not a fiduciary of a debtor. *See Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1992) (finding that no fiduciary duty existed because there was "no evidence of a relationship . . . other than that of debtor and creditor); *see also Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000); *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind. Ct. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances." (citation omitted)). As a result, Plaintiffs' constructive fraud claim should be dismissed.

## CONCLUSION

Plaintiffs Amended Complaint repeats many of the same errors that led to the dismissal

of their first Complaint.  Group pleading, a lack of particularized allegations and the failure to allege essential elements of their RICO, fraud and constructive fraud counts demands dismissal of those claims as pled against the Entity Defendants.  Further, because Plaintiffs have not corrected their pleading failures despite ample opportunity to conduct discovery, dismissal with prejudice is appropriate.  *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666-68 (7th Cir. 2007) (affirming district court's dismissal of amended complaint after the plaintiff failed to correct deficiencies); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("[W]here the plaintiff has repeatedly failed to remedy the same deficiency, the district court did not abuse its discretion by dismissing the claim with prejudice."). For all of the reasons set forth above, The Entity Defendants respectfully request that the Court dismiss Plaintiffs' RICO, common law fraud and constructive fraud claims against each the Entity Defendants with prejudice pursuant to Rule 12(b)(6) for failing to meet the pleading standards of *Twombly*, *Iqbal*, Rule 8(a), and Rule 9(b).

Dated: October 20, 2014                              Respectfully submitted,

                                                       */s/ James A. Rolfes*


Thomas Allen *pro hac vice*      James A. Rolfes  *pro hac vice*     James W. Riley, Jr.
REED SMITH LLP                   jrolfes@reedsmith.com              Atty. No. 6073-49
225 Fifth Avenue                 Michael DeMarino *pro hac vice*    RILEY BENNETT & EGLOFF
Pittsburgh, PA 15222             mdemarino@reedsmith.com            LLP
(412) 288-3131                   David A. Maas *pro hac vice*       141 East Washington Street
(412) 288-3086 (Facsimile)       dmaas@reedsmith.com                Fourth Floor
tallen@reedsmith.com             REED SMITH LLP                     Indianapolis, IN  46204
                                 10 South Wacker Drive              (317) 636-8000
                                 Chicago, IL  60606-7507            (317) 636-8027 (Facsimile)
                                 (312) 207-1000                     jriley@rbelaw.com
                                 (312) 207-6400 (Facsimile)


*Attorneys for Defendants Sherman Capital, LLC, Sherman Financial Group, LLC,*
*LVNV Funding, LLC, Resurgent Capital Services LP, and Sherman Originator, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 20, 2014, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of Court's electronic filing to all counsel of record.


      <u> /s/ James A. Rolfes  </u>