UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, et al.,<br>individually and on behalf of others<br>similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>SHERMAN CAPITAL LLC, et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.: 1:12-cv-1654-TWP-MJD<br>) CLASS ACTION<br>) JURY TRIAL DEMANDED<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' RICO, FRAUD, AND CONSTRUCTIVE FRAUD CLAIMS**

The motion to dismiss Plaintiffs' claims made pursuant to the Racketeer

Influenced and Corrupt Organizations Act ("RICO") (Counts II and III), common

law fraud (Count IV) and constructive fraud (Count V) should be denied.

Defendants again claim that Plaintiffs have failed to plead how each Defendant has

participated in the misconduct. Defendants ignore that Plaintiffs have included

such specific pleadings[1] in the Amended Complaint. The Magistrate has ruled that

the Amended Complaint has cured the issues that concerned the Court when the

Court dismissed the prior RICO claims and the common law fraud claim. [Dkt.

297]. Plaintiffs' Amended Complaint is sufficiently pleaded for this Court to deny in

---

[1] Defendants also claim that, after more than a year of discovery Plaintiffs should
be able to include more information in the Amended Complaint. [Doc. 339, p. 1].
Defendants ignore the fact that Plaintiffs have had to file *repeated* requests for
discovery due to Defendants' willful refusal to disclose ownership and structure of
defendant entities despite orders to provide this information. [*See* Dkt. 173, 187,
210].

1

its entirety the Defendants' Rule 12(b)(6) Motion to Dismiss for failure to state a claim.

## Standard of Review

While a Complaint is not required to have "detailed factual allegations," the factual allegations of the complaint must at least "raise a right to relief above the speculative level" in order to survive a 12(b)(6) motion to dismiss; mere recitation of the elements of a claim is not sufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The alleged factual allegations must state a claim that "is plausible on its face," though the court is allowed to draw "reasonable inference[s]" that lead to a conclusion that "the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Even so, "the bar to survive a motion to dismiss is not high." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (taking into account *Iqbal* and *Twombly*).

When reviewing a motion to dismiss, the Court must accept as true "all well-pleaded factual allegations and drawing all reasonable inferences in favor the plaintiff." *Dawson v. Gen. Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). "The plaintiff's claims should survive dismissal if relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* A 12(b)(6) motion to dismiss merely tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Furthermore, when reviewing claims that a complaint fails to comply with Fed. R. Civ. P. 9(b), the Court examines whether the circumstances are stated with

particularity. *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). Rule 9(b) requires "the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994); see also *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (stating that in a RICO action "the complaint must, at a minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.) (Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story.")

However, courts have looked at how Rule 9(b) interacts with the requirement to make a "short and plain statement" and have determined that plaintiffs "need only set forth the basic outline of the scheme…"[2] *Caliber Partners, Ltd. v. Affeld*, 583 F.Supp. 1308, 1311 (N.D.Ill.1984). *See also Lazaro v. Weichman* (In re Weichman), 2010 Bankr. LEXIS 3354, 43 (Bankr. N.D. Ind. Sept. 30, 2010) ("[I]t is only necessary to set forth the basic outline of fraud in order to *alert the defendant of the purported fraud he is defending against.*" Emphasis added). Plaintiffs aren't required to allege all of the evidentiary details in their complaint that will be used to support the claim. *Caliber Partners*, 538 F.Supp. at 1311.

---

[2] For example, "the who, what, when and where aspects of the fraud need not be related with exact details in the complaint as a journalist would hope to relate them to the general public." *Zamora v. Jacobs*, 403 B.R. 565, 573 (Bankr. N.D.Ill. 2009).

Furthermore, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  *Caliber Partners,* 538 at 1311 ("Rule 9(b) specifically permits general allegations of knowledge and intent. To require a plaintiff to plead such matters, which are peculiarly within a defendant's knowledge, would impose an impermissible burden.")

## I.      GENERAL BACKBROUND

Between November 2008 through November 15, 2013 Defendants have directly or indirectly collected on at least 1,174,222 accounts, just in Indiana.  *See* Am. Compl. [Dkt. 303, ¶¶135-136].  This collection activity included at least 33,440 lawsuits filed in the State of Indiana.  *Id.* at ¶¶137-138. The total amount collected from Indiana consumers during that time was at least $79,940,415.50.  *Id.* at ¶¶135-136.  Plaintiffs are all Indiana consumers who have been misled by the Defendants and through their agents' claim/false statement that a debt was owed and that it was owed to LVNV.

## II.      ARGUMENT

Each of Plaintiffs' claims state viable causes of action and each is stated with particularity. The Court should therefore deny Defendants' Motion to Dismiss.

### A. RICO Claims

Defendants request that Plaintiffs' RICO claims be dismissed because Plaintiffs fail to (1) plead the claims with sufficient particularity; (2) allege that there is an existence of an enterprise separate from Defendants; (3) plead a pattern of racketeering activity; and (4) make insufficient allegations of interstate

transportation of stolen property and extortion.  The Amended Complaint addresses all of these issues sufficiently – Defendants are incorrect that the Amended Complaint fails to make the relevant allegations.  What Defendants really seem to be claiming is that Plaintiffs cannot prove their case at this point – but that is not required at the initial pleadings stage.  Plaintiffs have sufficiently pleaded the RICO claims and this Court should deny Defendants' motion to dismiss.

RICO targets "persons" who use others (i.e. enterprise) to do their dirty work. 18 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, *directly or indirectly*, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. [emphasis added].

The allegations contained in the Amended Complaint correct the deficiencies this Court found in the initial complaint, and sufficiently state claims under RICO.

### 1.  The RICO Claims are Pled with Particularity

The Amended Complaint addresses, with reasonable particularity, the identity of the person making the misrepresentation; the time, place, and content of the misrepresentation; and the method by which the misrepresentation was communicated to the Plaintiffs. [Dkt 303 at ¶¶ 64-106; 121].  The Amended Complaint precisely states: (1) what statements were made in what documents; (2) who is responsible for making the statement; (3) when the statement was made; (4)

where each statement was made; (5) how the statement was made; and (6) identifies the particular fraudulent statement. *Id.*

Further, the Amended Complaint defines each Defendants' role: LVNV Funding LLC is the holding vehicle for a collateralized debt obligation [*Id.*at ¶38]; Sherman Originator LLC is the purchasing vehicle for a collateralized debt obligation; [*Id.* at ¶39]; Sherman Financial Group LLC is created and maintains the collateralized debt obligation [*Id.* at ¶35]; Resurgent Capital Services LP is the master servicer for the collateralized debt obligation [*Id.* at ¶37]; Sherman Capital LLC owns the other Defendants [*Id.* at ¶34]; Sherman Capital is owned by the New Shell Companies[3] and the Unknown S-Corp. [*Id.* at ¶¶ 41-42]. The Amended Complaint defines the roles of the Defendants in the collateralized debt obligation. [*Id.* at ¶¶ 51-56]. The Amended Complaint defines the roles of the Defendants in the illegal collection activities. [*Id.* at ¶¶ 51-56, 109-115].

The Amended Complaint includes a detailed table of the exact identity of the person, times, places, and content, and method of communications that constituted mail and/or wire fraud. This detail meets the heightened pleading requirements of Rule 9(b). [*Id.* at ¶121 based upon ¶¶ 64-106]. The Amended Complaint clarifies which Defendants are accused of each listed RICO claim. Additionally the Amended

---

[3] Huger Street LLC, Moultrie Street LLC, Woolfe Street LLC, Fulton Street LLC, Jasper Street LLC, Concord Street LLC, Hagood Street LLC, Charlotte Street LLC, Archdale Street LLC, Jacobs Alley LLC, Peachtree Street LLC, Greenhill Street LLC, Chalmers Street LLC, and Princess Street LLC (referred to collectively as the "New Shell Companies" in the Amended Complaint) [Dkt. 303, p.2].

Complaint has both defined and narrowed the scope of the "RICO Defendants," which is limited to LVNV Funding LLC, Resurgent Capital Services LLC, and their parent companies, Sherman Originator LLC, Sherman Financial Group LLC, and Sherman Capital LLC, all of which have common ownership and management. [*Id.* at ¶¶ 163 - 173] Next, the Amended Complaint pleads that "Defendants knowingly devised or knowingly participated in a scheme or artifice to defraud the Plaintiffs," and then alleges fifteen general actions agreed to be taken in furtherance of the scheme. [*Id.* at ¶107].

The Amended Complaint then alleges that "each and every Defendant has specific knowledge that the mails and wires are being utilized in furtherance of the overall purpose of executing the scheme to defraud," adding that the Defendants, "acting singly and in concert, personally or through their agents," took specific actions in furtherance of the alleged scheme. [*Id.* at ¶118.] Specific examples of dozens of Defendants' communications and collection activities in furtherance of the alleged scheme are no longer plead generally or "upon information and belief," but instead are detailed in the chart provided by Plaintiffs in the Amended Complaint. [*Id.* at ¶ 121]. While the Amended Complaint does not purport to include all possible actions taken by each Defendant, those currently pled are a detailed description of *which* specific Defendants committed which particular acts.

Furthermore, the requirement to plead with particularity does not require Plaintiffs prove their entire case at the complaint stage. Courts have stated that they:

don't want to create a Catch-22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery (normally of the defendant, because the essential information is in his possession, and he will not reveal it voluntarily) that she could not conduct before filing the complaint.  But Rule 9(b) is relaxed upon a showing of such inability." (Citations omitted)  In fact, the plaintiff in this case attempted to conduct discovery after she filed her initial complaint, and discovery was stayed upon the defendants' motion.  Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery.

*Emery v. American General Finance* ("*Emery*"), 134 F3d 1321, 1323 (7th Cir 1997).

In this case, Plaintiffs have repeatedly sought discovery from the Defendants, but despite filing several motions to compel (with the Magistrate ordering Defendants to produce this information on several occasions), Plaintiffs are still requesting reasonable discovery as to the ownership of Sherman Capital.  Benjamin Navarro, the president and CEO, at his Deposition stated that Sherman Capital was exclusively owned by an S Corp., created in the calendar year 2013, and named after a street in Charleston; but could not remember the name.  When asked if he could call someone at the office and find the answer right then; his response was "Yeah."  Deposition transcript of Benjamin W. Navarro (June 21, 2013) (p. 10:10-20; 16:3-12; 35:1-25; 36:2-3) [Dkt. 191].  (Designated as Confidential by defendants and filed under seal as Exhibit W in Dkt. 189)  Despite the Motions to Compel, the numerous meet and confers, and the assurance of an answer on a conference call with the Magistrate where defendant counsel stated that they would have the information by the end of November; defendants' attorney provided a January 29, 2014 letter providing that Sherman Capital LLC is owned, at least in part, by 15

separate limited liability companies and a trust.  The January 29, 2014 letter was attached as Exhibit F to Defendants' Objection to Magistrate Judge's Order on Motion to Compel. [Dkt. 219, Ex. F].  This information conflicts with the corporate disclosure statement that has never been amended.  Furthermore, Plaintiffs provided evidence to the Magistrate Judge that the Defendants created 13 of the LLCs listed in Defense Counsel's letter – purported owners of Sherman Capital LLC – on December 19, 2012, just 8 days after defendants filed Defendants' Corporate Disclosure Statement with this Court.  [Dkt 235, Affidavit of April Keaton, accompanied by copies of entity searches for the 13 companies from the Delaware Secretary of State website].  The letter never accounts for the newly created "S corp" about which Navarro testified.  [Dkt 303 ¶¶ 15, 41-42].

Defendants claim in their motion to dismiss that Plaintiffs have not pled with particularity regarding essential information – but Plaintiffs aren't required to prove their case at this stage.  Rather, as *Emery* points out, Plaintiffs are allowed to conduct discovery.  With respect to the Unknown S Corp and the Shell Companies, Plaintiffs have satisfied Rule 9(b) (as *Emery* allows) because Plaintiff has been diligently pursuing discovery and can show that the  further particulars of the claims cannot be obtained without discovery.  Defendants extensive and repeated refusal to comply with reasonable discovery requests alone precludes dismissal be entered at this point in the proceedings.

## 2.    Existence of Enterprise

Plaintiffs have alleged the existence of an enterprise and that the enterprise is distinct from the RICO persons. [Dkt 303 at ¶¶ 164-173]  Defendants claim that Plaintiffs are not specific enough because they "lump" Defendants together, yet they do the same in their motion.  Regardless of how Plaintiffs refer to the enterprises, Defendants do not address that there are different types of enterprises.  An enterprise can be a legal entity ("legal entity enterprises") but that is not the only way to satisfy the RICO requirements.  An enterprise may also be a loose-knit group of people or legal entities ("association-in-fact enterprises").  18 USC § 1961(4).

Furthermore, Plaintiffs may plead more than one enterprise.  Pleading alternative enterprises "does not undermine the plausibility of the pleadings." *Jackson v Segwick Claims Mgmt. Serv. Inc.*, 699 F.3d 466, 480 (6th Cir. 2012).  "If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *Id.*

Defendants' initial basis for requesting dismissal of the Amended Complaint is that Plaintiffs do not allege a RICO enterprise distinct and separate from the RICO persons.  Defendants, however, do not allege that they do not direct or control the enterprise directly or indirectly.

Section 1962(c) of RICO "requires only some separate and distinct existence for the person and the enterprise." *Chen v. Mayflower Transit, Inc.*, 315 F.Supp2d 866, 901 (N.D. Ill. 2004) citing *Gagan v. American Cablevision, Inc.*, 77 F.3d 951, 964 (7th Cir. 1996).  As discussed above, RICO recognizes two types of enterprises.

10

The Defendants' Motion discusses the "association-in-fact enterprises," but for the most part the cases upon which they rely do not address "legal entity enterprises." On face value, the definition of "legal entity enterprises" easily satisfies the distinctiveness requirement as there is some separate and distinct existence for the person and the enterprise.  Defendants' brief even states that alleged enterprises are composed of "Defendants, previously dismissed Defendants, and collection agencies and law firms." [Dkt 339 at p. 20].  Plaintiffs' Amended Complaint makes sufficient allegations to satisfy the requirement that the "legal entity enterprises" are separate and distinct from the Defendants.

For "association-in-fact enterprises," the Supreme Court reads this definition quite broadly. *See Boyle v. United States*, 556 U.S. 938, 944-45(2009). In *Boyle*, the Court held that an "association-in-fact enterprise" has just three elements: "a purpose," "relationships among those associated with the enterprise," and "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946; *see also Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2011) ("[T]he alleged enterprise in this case had purpose and relationships and it certainly had 'longevity,' and if *Boyle* is taken at face value[,] nothing more is required to make a conspiracy a RICO enterprise."). The Amended Complaint alleges all three elements of an "association-in-fact enterprise."  [Dkt 303 at ¶¶ 164-173].  Given the Supreme Court's crystal clear guidance in *Reves v. Ernst &Young*, 507 US 170, 185 (1993), the question of whether a particular defendant actually operates or manages an enterprise is generally considered by the lower courts to be

a question of fact that is left to the jury. *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998).

In their brief in support of dismissal, Defendants state that the "enterprise" is solely collections. The Amended Complaint alleges more "enterprises" than just collection activities.  [Dkt 303 at ¶¶ 164-173]   For example, Plaintiffs also make allegations about the operation and management of a collateralized debt obligation – which comprises an enterprise. [*Id.* at ¶167]  Defendants have directed the motion to dismiss to only one of the alleged "enterprises" identified in the Amended Complaint and have missed that Plaintiffs have alleged many more enterprises.

As to the "association-in-fact enterprises," the sets of facts in this case are similar to those found in *Wesleyan Pension Fund Inc v. First Albany Corp.*, 964 F.Supp. 1255 (S.D. Ind. 1997).  For example, LVNV Funding, Sherman Originator, and Resurgent are owned by Sherman Financial Group which is owned by Sherman Capital and its known and unknown "owners."   "A parent corporation can be a 'person' separate and distinct from its wholly-owned subsidiary, the 'enterprise.'" *Wesleyan* at 1275-1276 , citing *Ballay v. Legg Mason Wood Walker Inc.*, 925 F.2d 682 (3rd Cir. 1991); *See also Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir 1989) determining that controlling shareholder of a corporation-enterprise was a separate and distinct entity from that enterprise.  The corporate owner is distinct from the corporation because the corporation was "a legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions Ltd. v. King*, 533 US 158, 163 (2001).

Further, Defendants rely upon *Baker v. IBP, Inc.*, 357 F.3d 685 (7th Cir. 2004) for the proposition that a corporation cannot be an enterprise all by itself.   *Baker* is distinguishable from this case because "the allegedly illegal activity . . . was committed by the corporate employer alone, not the enterprise; thus, the complaint alleged that the employer operated *itself*, not the enterprise, unlawfully." *See Chen*, 315 F.Supp.2d at 904, footnote 16.   However, in *Baker*, the alleged enterprise was the sole defendant.  Here, unlike in *Baker,* the Amended Complaint includes many RICO Defendants.  Here, the Amended Complaint does not allege that the RICO persons operated only themselves (as in *Baker*) but instead "associated with or participated" in the enterprises.  [Dkt 303 ¶¶ 164-173, 175].

In *Baker,* the Court stated that an "enterprise" arguably existed, but then determined that there was not a common purpose⁴ among the entities in the enterprise.   *Baker*, 357 F.3d at 691.  Here, the Amended Complaint alleges a "common purpose."  [Dkt 303 at ¶¶ 164-173, 175].   Furthermore, neither *Baker* nor any of the other cases cited in Defendants' Motion to Dismiss contained the detail of the pleadings in the Amended Complaint in this Case.

Also, here, unlike the cases cited by Defendants, the RICO persons are not identical to the group making up the enterprise.  The Amended Complaint's enterprises are not only composed of wholly-owned subsidiaries but separately

---

⁴ Specifically, the Seventh Circuit stated that the employer "wants to pay lower wages; the recruiters want to be paid more for services rendered (though [the employer] would like to pay them less); the Chinese Mutual Aid Association wants to assist members of its ethnic group. These are divergent goals." *Baker,* 357 F.3d at 691.

owned entities such as Sherman Capital Market and non-captive collection agencies and law firms.

Next, Defendants allege that the enterprises are simply "incidental" business relationships.  To support this argument, Defendants' cite *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225 (7th Cir. 1997) and *Emery,* 134 F.3d at 1321.  These cases are distinguishable on their face because they only dealt with "association-in-fact" and not "legal entity" enterprises.  *Fitzgerald* and *Emery* dealt with different person-enterprise relationships than the relationships alleged in the Amended Complaint. *Fitzgerald* dealt with Chrysler and its agents.  *116 F.3d* at 227.  *Emery* dealt with American General Corporation and its subsidiaries.  134 F.3d at 1324.[5]  Here, unlike *Fitzgerald* and *Emery*, the Amended Complaint doesn't just discuss a corporation and its subparts – but alleges an enterprise that includes more than the Defendants and their subsidiaries – the Amended Complaint alleges that the enterprises include non-captive agents such as Sherman Capital Markets and the numerous collection agencies and law firms.  Further, unlike *Rao v. BP Prod North America, Inc.*, 589 F.3d 389, 400 (7th Cir 2009), the Amended Complaint alleges that the different actors are associated and suggest a group of persons acting together for a common purpose or course of conduct. [Dkt 303 at ¶¶164-173, 175].

The amended complaint alleges that the enterprises are more than simply an association that conducts the normal affairs of the RICO Defendants.  Specifically,

---

[5] *Fitzgerald* and *Emery,* however, actually hold open the possibility that a corporation and its agents or affiliates can constitute a RICO enterprise – for example *Emery* discusses how a control group or the people who control a corporation can be distinct from a corporation.  *Id.*

the "Law Firm Enterprise's" and the "Collection Agency Enterprise's" carry out the Defendants' scheme by engaging in legal and traditional collection activities. [Dkt 303 at ¶¶ 172, 173]. This is not Defendants' regular business because the Defendants do not physically send dunning letters or file lawsuits.  Unlike *Fitzgerald*, where the agents' role was entirely incidental, the Amended Complaint alleges that the collection agencies and law firms can determine on their own how to conduct the collections/law suits.  *See Chen* at 904. The Amended Complaint alleges a "Sherman Collection Enterprise" for a collateralized debt obligation in which Sherman Financial Group has hired Sherman Capital Marketers which is free to determine how to manage the collateralized debt obligation. [Dkt 303 at ¶ 167]. Neither of these enterprises are dealing with affiliates in merely the "ordinary way" the company conducts business, nor are they simply an association that conducts the normal affairs of the RICO defendants.

"The requirement that a RICO defendant have engaged in the enterprise's affairs rather than just its own is simply another reference to the fact that a RICO defendant must be distinct from the alleged enterprise." *Chen* at 906.  Plaintiffs have alleged that the wrongdoing was performed on behalf of the enterprise rather than the RICO Defendants and the wrongdoing is therefore not solely the RICO Defendants "own affairs." [Dkt. 303 at  ¶¶164-173. 175].   For instance, here the RICO Defendants are not in the business of collecting from Indiana consumers but instead rely upon the outside collection agencies and law firms.  Plaintiffs have alleged a RICO enterprise distinct and separate from the RICO persons (and their

affairs), and that the enterprises are not merely "incidental business relationships." Defendants' motion to dismiss should be denied.

### 3.    Conspiracy (Count III)

Section 1692(d) of RICO provides "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Plaintiffs have alleged this Count as an alternative to 1692(c)[6] and Defendants have not denied that the Defendants have operated and managed the enterprises' affairs.

A RICO claim is broad but a RICO conspiracy claim is even broader. Anyone who agrees or conspires to pursue the same criminal objective can be held liable for a RICO violation. *Salinas v. United States*, 522 U.S. 52, 63-64 (1997). Thus, in order to state a viable claim under sec. 1962(d), a plaintiff must allege (1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals. *Goren v. New Vision Int'l Inc*, 156 F.3d 721, 732 (7th Cir 1998). "If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators." *Salinas* 522 U.S. at 64. A conspirator must simply intend to further an endeavor which, if completed, would satisfy all elements of a civil RICO claim. *Id.* at 65.

---

[6] To the extent the Court were to find a specific Defendant did not participate (i.e. operate and manage) in an enterprise, that Defendant could still be held liable under RICO for conspiring with other Defendants which did operate and manage an enterprise.

Unlike the original Motion to Dismiss, Defendants make no argument regarding 1692(d), other than possibly stating that Plaintiffs fail to allege the existence of an agreement.  To the contrary, the Amended Complaint has pled "facts indicating an act of agreement among the alleged conspirators or what roles the various defendants would play in the conspiracy." *Lachmund v. ADM Investor Servs. Inc.*, 181 F.3d 777, 785 (7th Cir. 1999).  [Dkt 303 at 54-55; 182].

"A RICO conspiracy, like all conspiracies, does not require direct evidence of agreement; an agreement can be inferred from the circumstances." *United States v. Neapolitan*, 791 F.2d 489, 501(7th Cir 1986).  Once the plan is in place, a partner, supporter, or even a third party who agreed to participate can be guilty of RICO conspiracy. *Salinas* 522 US at 64.  The Amended Complaint specifically alleges that each defendant entered into an agreement to violate RICO.  [Dkt 303 at 54-55; 182].

The Amended Complaint particularly provides details as to the roles played by each Defendant, and there are specific allegations of an agreement. [Dkt  303 p 22-23, 67-68].   Here, Plaintiffs include facts alleging that there is an agreement to participate in the affairs of the RICO enterprise as well as an agreement to the commission of two specific predicate acts (by someone) on behalf of the enterprise. These pleadings are sufficient to support a claim for conspiracy under RICO.  *See also Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) (holding that a conspiracy claim must contain supportive factual allegations describing the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role

17

in the conspiracy).  Here, Plaintiffs have alleged enough facts to support the existence of a conspiracy and have included sufficient facts to support these claims. The Court should therefore deny Defendants' Motion to Dismiss.

### 4.   **Pattern of Racketeering (Counts II and III)**

To support a RICO claim, a plaintiff must plead a pattern of racketeering.  A plaintiff can satisfy this requirement by pleading two or more predicate acts that are related and that involve either a closed period of repeated conduct (closed-ended continuity) or present the threat of repetition in the future (open-ended continuity). *HJ Inc v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).  Defendants do not deny that Plaintiffs have alleged two or more predicate acts and that the acts are related.  Defendants have also failed to deny that there is continuity.  The Amended Complaint therefore alleges a pattern of racketeering.  [Dkt 303 at ¶¶ 162-174, 176].  Further, as discussed below, there are sufficient allegations of mail and wire fraud, interstate transportation of stolen property, and extortion.

To state a mail and wire fraud claim under RICO, a plaintiff must allege that the defendant made two predicate communications, via interstate commerce, that constitute a pattern of racketeering activity. *Sedima, S.P.L.R. v. Imrex Co.,* 473 U.S. 479, 495-96, 105 S.Ct. 3275, 3284-85, 87 L.Ed.2d 346 (1985).  Plaintiffs have included specific allegations of predicate mail and wire fraud acts that state the contents of the communications, who was involved, where and when they took place, and explain why these acts were fraudulent.  [Dkt 303 at ¶121].  At a bare

minimum, the Amended Complaint pleads facts that give rise to a strong inference that the Defendants possessed fraudulent intent.

As the Court instructed Plaintiff in its earlier opinion dismissing the initial RICO claims, where mail and wire fraud violations are treated by a plaintiff as "predicate acts," the mail and wire fraud violations must be pleaded with the specificity and particularity required for all fraud claims by Fed.R.Civ.P. 9(b). Plaintiffs' Amended Complaint now includes such specificity.

Defendants do not deny that there is a "Pattern of Racketeering" but instead appear to argue that the intent to implement a scheme to defraud is not adequately pled. *Chen* has stated that "[t]he 'scheme or device requirement' is broad….Specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Chen* 315 F.Supp.2d at 920.

"Although Rule 9(b) requires that a RICO plaintiff provide only a general outline of the alleged fraud scheme—one sufficient to reasonably notify the defendants of their purported role in the scheme—the complaint must, at minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co v. Spitz*, 976 F2d. 1016, 1020 (7th Cir 1992). Furthermore, Rule 9(b) "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false." *Uni\*Quality Inc v. Infotronx* Inc, 974 F.2d

19

918, 923 (7th Cir, 1992).  Rather, a plaintiff must "state the identity of the person

making the misrepresentation, the time, place, and content of the

misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff."  *Id.*  The Amended Complaint satisfies this

requirement.  The Amended Complaint defines each Defendants' role. [Dkt 303 at

¶¶ 51-56, 109-115]  It then goes on to "state the time, place, and content of the

communications perpetrating the fraud."  [*Id.* at 121]  Unlike *Sears v. Likens*, 912

F.2d 889, 893 (7th Cir. 1990), the Amended Complaint is not "bereft of any detail

concerning who was involved in each allegedly fraudulent activity."  Rather, the

Amended Complaint contains sufficient detail to notify the Defendants of their

purported role in the scheme.

RICO targets defendant persons who use others (i.e. an enterprise) to do their

dirty work Thus, it is a defendant's operation and management of an enterprise

through a pattern of racketeering activity that violates RICO.  A defendant may

violate RICO even if the defendant has not personally engaged in acts of

racketeering.  The Sixth Circuit explained why it is not required to allege that each

defendant engaged in at least two predicate acts:

> [Defendant] argues that the plaintiffs must plead that each defendant
> committed two predicate acts, as opposed to the enterprise as a whole
> having committed at least two predicate acts.  He cites no case law in
> support of this argument, and we have found none.  [Citation omitted]
> Indeed, requiring two acts by each defendant is contrary to the
> instruction in *Reves* that someone can participate in an enterprise
> *"directly or indirectly"* in violation of RICO.

*Jackson v. Sedgwick,* 699 F3d 466, 482 (6th Cir 2012). While Defendants claim that only Resurgent was associated with the acts listed in the complaint, and Plaintiffs failed to plead how each Defendant committed the predicate acts, Plaintiffs are *not required* to show how each Defendant committed the predicate acts. *Id.* Rather Plaintiffs must only plead that the enterprises as a whole committed at least two acts and that Defendants participated in the enterprises.

Furthermore, when Defendants discuss "securitization" [Dkt. 339 p. 17], they state that Plaintiffs cannot prove that Defendants knew about the securitization – implying that the fact of securitization was the sole act of the scheme to defraud. The Amended Complaint defined the scheme as more than just lack of knowledge regarding the securitization of the debt. [Dkt 303 at ¶107]. It includes more than fifteen examples of activities. *Id.* Plaintiffs also include other allegations such as that there is a collateralized debt obligation, false affidavits were filed against Plaintiffs, and false proofs of claims were filed in Bankruptcy Court. [Dkt 303 at 4-5, 38, 54-55, 107].

Plaintiffs' allege that the "scheme to defraud" Indiana consumers does not revolve around merely one piece of fraudulent misinformation. [Dkt 303 at 107]. Rather, Plaintiffs have alleged several acts taken in furtherance of the scheme to defraud. It is not just that Plaintiffs allegedly owe a debt, but that Defendants claim it was owed to LVNV. The Amended Complaint clearly states that Defendants are collecting on behalf of a collateralized debt obligation. [Dkt 303 at 5].

Further, while Rule 9(b) requires particularity with respect to averments of fraud, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Therefore, Defendants are incorrect that Plaintiffs are required to particularly plead Defendants' intent, knowledge or condition of mind. The Amended Complaint has sufficient factual foundation [Dkt 303 at 107] which creates a strong inference that Defendants both had a motive and opportunity to commit fraud or alleged facts that constitute a conscious misbehavior or recklessness. This is all that is required.

In response to Defendants' claim that Plaintiffs have not specifically alleged that Defendants knew about the securitization of the debts – such specific allegations are not necessary. As discussed above, Rule 9(b) only requires a general averment with respect to knowledge. The Amended Complaint alleges Defendants are limited in what they are purchasing. [Dkt 303 at ¶63] Further, the Amended Complaint alleges that Sherman Financial Group owns Credit One, which itself, like many other credit card originators, securitizes. [Id. at ¶115]. . The Amended Complaint alleges that Defendants "securitize" purchased information into a collateralized debt obligation. [*Id.* at ¶ 4, 38]. At a minimum, the Amended Complaint allows an inference that Defendants acted with reckless disregard with respect to the knowledge of securitization and thus intended to make a false statement that there was a debt owed and that the debt was owed to LVNV.

Defendants rely upon *Scott v. Bank of America*, 2013 WL 6164276 (E.D. Pa. 2013) to claim that securitizing transactions doesn't necessarily have an effect on

22

the obligation to pay debts and thus cannot support an inference with respect to Defendants' knowledge or condition of mind . First, unlike in *Scott,* all of the claims in this case are not dependent upon the debts being securitized by the originating banks (like Chase/Citi) but also that Defendants are managing and collecting on behalf of investors of a collateralized debt obligation.  Second, this Court is not bound by a decision from the Eastern District of Pennsylvania.  Third, *Scott* discusses how Plaintiff made mere allegations that securitization divested ownership of the receivables.  The *Scott* opinion includes no references to allegations regarding (1) why there the difference between an account and a receivable; and (2) how U.S. Generally Accepted Accounting Principles (GAAP) Accounting Standards Update (ASU) 2009-16, which amended Financial Accounting Standards Board (FASB) Accounting Standards Codification (ASC) 860 (formerly FASB 140), Transfers and Servicing affects ownership; and [Dkt 303 at 59-63]. Here Plaintiffs have made such detailed allegations that can support the inference that Defendants acted with reckless disregard with respect to the knowledge of securitization and thus intended to make a false statement that there was a debt owed and that the debt was owed to LVNV.

Plaintiffs allege that there is a motive to commit fraud to turn a profit for the investors of a collateralized debt obligation so Defendants can continue to earn management fees.  [Dkt. 303, ¶¶55-56].  Furthermore, Plaintiffs have alleged that LVNV illegally operated as a collection agency in Indiana until it eventually licensed itself, which it would not have done if not required.  [Dkt. 303, ¶38].

Plaintiffs also allege that the collateralized debt obligation is unregistered and the collateralized debt obligation is managed by an unregistered investment bank. [Dkt. 303, ¶36].  Here, the Amended Complaint contains allegations of mail and wire fraud and thus alleges a pattern of racketeering activity.  The Court should therefore deny Defendants' Motion to Dismiss.

## 5.   Extortion/Interstate Transportation of Stolen Property (Count II and III)

First, Plaintiffs have already sufficiently alleged two predicate acts under mail/wire fraud. The Extortion and Interstate Transportation are additional predicate acts.  Defendants argue that these allegations don't meet the requirements of Rule 8(a).  Under this rule, a complaint calls only for a short plain statement "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Vicom* at 775.  Defendants are using others to do the "dirty work" which is prototypical RICO.

Plaintiffs' allegations of interstate transportation of stolen property is sufficiently pled since the Amended Complaint provides a plain statement and provides specific facts. [Dkt 303 at ¶¶ 100, 106,121,125-127]. The cases cited by Defendants are inapplicable.  *Parker v. Chase Home Fin., LLC,* No. 11-05043-CV-DGK, 2011 WL 4872328, at *2 (W.D. Mo. Oct. 19, 2011) does not deal with RICO. Furthermore, *Griffin v. Milwaukee Cnty.*, 369 F.App'x 741, 743 (7th Cir. 2010) and *Perlman v. Zell*, 938 F.Supp. 1327, 1348 (N.D. Ill. 1996) do not even deal with interstate transportation, 18 U.S.C. §2314.

Notwithstanding Defendants' arguments, Plaintiffs have made specific allegations regarding interstate transportation.  Interstate transportation of stolen property requires a value of $5000 or more.  18 U.S.C. § 2314.  Plaintiffs alleged that between November, 2008 and November 15, 2013, at least $79,940,415.50 has been collected by agents of Defendants' and sent to Resurgent in South Carolina.  A RICO person need not actually have transported the property across state lines in order to be liable under §2314 so long as that person caused or induced another to do so. *See Pereira v. United State*s, 347 U.S. 1, 9; 74 S. Ct 358, 363 (1953).  At a bare minimum, Plaintiffs have alleged that Plaintiff Ferguson had over $5000.00 transferred across state lines [Dkt. 303, ¶¶100, 106,121,125-127], thus Plaintiffs have alleged at least one predicate act of interstate transportation of stolen property.

Extortion is likewise sufficiently pled as the Amended Complaint provides a plain statement as well as specific details.  [Dkt 303 at 95-100, 128-132].  There is at least one predicate act for Plaintiff Snyder.  Extortion is under 18 U.S.C. ¶1851. Defendants cite *Marcilis II v. Twp. Of Redford,* 693 F.3d 589, 596-97 (6th Cir. 2012) and *Pierson, III v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F.Supp. 2d 1260, 1273 (M.D. Fla. 2009) for the proposition that Plaintiffs have not met the pleading requirement for extortion.  Neither of these cases discusses extortion as a predicate act, 18 U.S.C. ¶1851, nor what is required to successfully allege extortion. Furthermore, a plain statement is sufficient under Tr. R. 8(a).  *See Chevron Corp v. Donzige*r, 871 F.Supp. 2d 229, 247-249 (SDNY May 14, 2012). The Amended

Complaint alleges sham collection techniques including sham litigation which instills fear of the legal system.  Plaintiffs allege that between November, 2008 and November 15, 2013 there were at least 33,440 lawsuits filed in Indiana with LVNV named Plaintiff, most of which occurred while LVNV was not licensed in Indiana, including a case against Plaintiff Snyder.[7]  [Dkt. 303, ¶¶99, 100, 121, 128-132].

As discussed above, the Amended Complaint contains allegations of interstate transportation of stolen property and extortion.  The Court should therefore deny Defendants' Motion to Dismiss.

### 6. **Agency**

Defendants claim that Plaintiffs fail to sufficiently plead the alleged agency relations of the Defendants as they discuss why Plaintiffs do not have a valid RICO Claim.  [Dkt 339 at p 25].  The RICO claim is not premised on agency or veil piercing legal theories.  The RICO claim is based on the RICO persons employed by or associated with an enterprise to conduct or participate, *directly or indirectly*, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

However, the Amended Complaint does discuss agency, alter ego, and veil piercing to show how the Defendants should be held jointly liable and how they perpetrated their fraudulent activities.  The Amended Complaint *does* contain specific allegations relating to the agency relations.  For example, the Amended

---

[7] *See e.g. Trice v. LVNV Funding LLC*, 952 N.E.2d 1232, 1237 (Ill. App. 2011)(complaint filed by an unregistered collection sun agency is a nullity and any judgment entered on such case is void), *Finch v. LVNV Funding LLC*, 212 MD App 748 (Md App 2013) (same).

Complaint defines the Defendants as "shell" companies, alleges common ownership and management, and alleges the constant restructuring by the at-will creation of new entities in order to manipulate balance sheets and financial statements. [Dkt 303 at ¶¶ 14, 15, 34, 38, 39, 42, 53-54].  These allegations are specific and sufficient to support the allegations related to the agency relationship between the Defendants (although, as discussed above, such an allegation is not required to support the RICO claims).

Defendants also note that Plaintiffs have failed to follow Delaware law in making its allegations related to the Defendants' corporate relationships.  Even though this case has had more than 340 filed pleadings, Defendants are alleging that Delaware law should apply for the very first time in this litigation for purposes of the issue of veil-piercing.  [Doc 339, p. 19, FN 3].  Failure to timely object to the Court's choice of law (such as the initial round of briefing with respect to these issues) results in Defendants' acquiescence to Indiana law.  *Wachovia Sec., LLC v. Banco Panamericano, Inc.,* 674 F.3d 743, 751 (7th Cir. 2012).  Furthermore, Delaware courts use specific factors in the veil-piercing analysis.  Indiana also looks at several nearly identical factors and considerations (none of them exclusive) to determine when a corporation is functioning as an "alter-ego" or the instrumentality of another such as "(1) undercapitalization of the corporation, (2) the absence of corporate records, (3) fraudulent representations by corporation shareholders or directors, (4) use of the corporation to promote fraud, injustice, or illegal activities, (5) payment by the corporation of individual obligations, (6) commingling of assets

and affairs, (7) failure to observe required corporate formalities, and (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Reed v. Reid*, 980 N.E.2d 277, 301 (Ind. Ct. App. 2012). Delaware and Indiana thus look at substantially similar factors, so application of either Delaware law or Indiana law will not change the result. The 7th Circuit has stated that a conflict in the laws must exist before choice of law even matters. *Wachovia*, 674 F.3d at 751 FN4. In any event, Plaintiffs have included detailed allegations related to the relationships between Defendants.[8]

### B. Fraud and Constructive Fraud Claims (Counts IV and V)

Rule 9(b)requires fraud circumstances to be stated explicitly but intent and "other conditions of mind" may be averred generally. Just as with the RICO claims, the "who, what, where, when, and how" is sufficiently alleged with particularity in the Amended Complaint.

Defendants first assert that Plaintiffs' common law fraud claim still improperly lumps the Defendants together as responsible for LVNV's actions, which the District Judge found insufficient to meet Rule 9(b)'s heightened pleading standard for claims of fraud. [Dkt. 285 at 13-14.] The Amended Complaint pleads each of the five elements of fraud required by Indiana law and in accordance with the District Judge's order. [Dkt. 291 at 5-6.] Under Indiana law, the plaintiff must plead five elements to successfully allege common law fraud: "(i) material

---

[8] Plaintiffs have made such allegations pending the outcome of the discovery which Plaintiffs have sought, and Defendants have declined to provide, for more than a year.

misrepresentation of past or existing facts by the party to be charged; (ii) which was false; (iii) which was made with knowledge or reckless ignorance of falseness; (iv) was relied upon by the complaining party; and (v) proximately caused the complaining party injury." *Kesling v. Kesling*, 546 F.Supp.2d 627, 638 (N.D. Ind. 2008). Under the heightened pleading standard, the plaintiff must allege the "who, what, when and where of the alleged fraud" in order to survive a 12(b)(6) motion to dismiss. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999).

The Amended Complaint sets forth the time of the fraudulent scheme by alleging that on specific dates Defendants intentionally misrepresented that there was a debt and that the debt was owed to LVNV. [Dkt. 303, ¶121]. The Amended Complaint explicitly alleges the place of the fraudulent scheme. *Id.* It alleges the content of the Defendant's misrepresentations by alleging that Defendants, through their agents, represented to the Plaintiffs that there was a debt and that the debt was owed to LVNV. *Id.* The Amended Complaint pled fraudulent intent sufficient to meet the requirements because Rule 9(b) allows a plaintiff to plead intent generally. The Amended Complaint avers that the Defendants knowingly made material misrepresentations.

The amended complaint now alleges that "Defendants, through their agents (e.g. Resurgent, members of the Law Firm Enterprise, members of the Collection Agency Enterprise)," were involved in "each and every" furnishing of an alleged debt, communication to agency subcontractors, dunning letter, and lawsuit filed in Indiana, and "with Defendants' knowledge, made the material misrepresentation

29

that a valid debt existed and that the debt was ultimately owned by, and owed to

LVNV." [Dkt. 303 at ¶ 186] Both Count IV and V of the Amended Complaint then

makes an internal reference to the "Plaintiffs' interactions with Defendants" section

of the proposed amended complaint, which details each transmission and

communication between each named plaintiff and a defendant or an agent of a

defendant. [*Id.* at ¶ 64-106] In matters where there are multiple defendants, "the

complaint should inform each defendant of the nature of his alleged participation in

the fraud" in order for the pleading requirements of Rule 9(b) to be met. *Vicom,* 20

F.3d at 778.  Thus, the purpose of Rule 9(b) has been met, as Plaintiffs have put

each defendant on notice that they are accused of having knowledge of, and being

liable for, each false representation that Defendant LVNV owned, and was owed,

Plaintiffs' debt. Additionally, Plaintiffs included in their proposed amended

complaint a chart detailing dozens of communications made by Defendants and

their agents in furtherance of their allegedly fraudulent scheme. [Dkt. 303 at ¶ 121]

Through such efforts, Plaintiffs have specified "which Defendant made what

representation, to whom, and when," in satisfaction of the District Judge's order,

thereby meeting Rule 9(b)'s pleading requirement. [Dkt. 237 at 10.]  Defendants

Motion to Dismiss should be denied.

### 1.   <u>Fraud</u>

As discussed in the previous section,Plaintiffs have alleged fraud with

particularity.  The only other issue Defendants raise is reliance.  The Amended

Complaint sufficiently alleges reliance.  Plaintiff Snyder relied on the face of the

legal lawsuit that a debt was owed and that the debt was owed to LVNV as well as the attorney statement that they would work out a resolution without garnishment. [Dkt 303 at ¶¶ 99-100; 188].   Plaintiff Ferguson as well as the US Bankruptcy Trustee relied on the proof of claim filed by Defendants through their agent Resurgent under penalty of perjury. *Id.* at ¶106.  Plaintiffs paid higher insurance based on reliance that Defendants followed Fair Credit Reporting Act despite the Coxes disputing the alleged debt with the credit agency. *Id.* at ¶67.

The Amended Complaint details who was involved in each allegedly fraudulent activity, how the alleged fraud was perpetrated, and when the allegedly fraudulent statements were made. The Amended Complaint does specify who was involved in what activity.  This Court should deny Defendants' Motion to Dismiss.

### 2.   **Constructive Fraud**

The elements of constructive fraud are "(1) a duty existing by virtue of the relationship between the parties, 2) representations or omissions made in violation of that duty, 3) reliance thereon by the complaining party, 4) injury to the complaining party as a proximate result thereof, and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Biberstine v. New York Blower Co.,* 625 N.E.2d 1308, 1315-16 (Ind. Ct. App. 1993) (*citations omitted*).  Defendants have alleged that Plaintiffs cannot show that Defendants owe plaintiffs a special duty.  [Doc 339, p. 23].  Defendants have not alleged that Plaintiffs have failed to allege any of the other four elements of constructive fraud. Indiana Courts discuss constructive fraud as:

> acts from which a defendant derives an unconscionable advantage; a breach of confidence coupled with an unjust enrichment which shocks the conscience; a breach of duty which the law declares fraudulent because of a tendency to deceive, injure the public interest, or violate public or private confidence; or the making of a false statement in the context of a confidential relationship.

*Lycan v. Walters,* 904 F.Supp. 884, 898 (S.D. Ind. 1995) (*citing Abdulrahim v. Gene B. Blick Co., Inc.,* 612 F.Supp. 256, 263 (N.D. Ind. 1985). "Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *Biberstine,* 625 N.E.2d at 1315 (*citing McDaniel v. Shepherd.* 577 N.E.2d 239 (Ind. Ct. App. 1991)).

Plaintiffs are only required to allege a duty exists by virtue of the relationship between the parties. *Town & Country Homecenter v. Woods*, 775 N.E.2d 1006, 1011 (Ind. Ct. App. 2000). Defendants are incorrect when they maintain that Plaintiffs must show a Defendants owed Plaintiffs a *fiduciary duty*. *See* Doc. 339, p. 23. The Indiana Court of Appeals has stated that constructive fraud exists where one has taken advantage of another in a fiduciary duty "but that is not the exclusive basis for the theory of constructive fraud." *Am. United Life Ins. v. Douglas,* 808 N.E.2d 690, 702 (Ind. Ct. App. 2004). Rather, Indiana recognizes constructive fraud in other circumstances, where the superior knowledge of a subject by one party "invokes a duty of good faith and fair dealing." *Id.* at 703. In *Douglas*, the Indiana Court of Appeals *specifically* relied

upon Indiana common law duty to uphold the denial of summary judgment in a constructive fraud case.  *Id.*

There are essentially two lines of cases in Indiana regarding constructive fraud.   One simply lists the five elements of constructive fraud.  On the other hand, there are numerous cases that, without mentioning these five elements, hold as follows:  In Indiana, various legal and domestic relationships raise a presumption of confidence and trust as to the subordinate party on the one hand and a corresponding influence as to the dominant party on the other.  *Lucas v. Frazee*, 471 N.E.2d 1163, 1166 (Ind.Ct.App.1984).

The Amended Complaint sufficiently alleges a relationship between the Plaintiffs and Defendants that could give rise to a fiduciary duty or a duty sufficient for negligence liability owed by Defendants to Plaintiffs.

*Block v. Lake Mortg. Co.*, 601 NE 2d 449, 452 (Ind App. 1992) stated that "[t]here was no evidence of a relationship . . . other than that of a debtor and creditor." This was a summary judgment not a motion to dismiss.  The Amended Complaint does not describe a "debtor and creditor" or a "lender and borrower" relationship (Defendants did lend any monies to Plaintiffs) not based on impermissibly obtaining and misusing nonpublic personal information.  This is the fiduciary relationship that The Amended Complaint alleges.

Even if this Court considered the relation "lender and borrower", this general presumption can be overcome.  *Paulston v. Centier Bank*, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998).  A fiduciary duty can exist "if certain fact establish a relationship of

33

trust and confidence between the two." *Id.* "[C]onfidence is reposed by one party in another with resulting superiority and influence exercised by the other" and "the party reposing the confidence" is in a "position of inequality, dependence, weakness, or lack of knowledge." *Id.* The Amended Complaint avers these elements by averring lack of consumer knowledge of securitization at the initial stage of dealing with the originating banks as well as the Defendants securitizing into a collateralized debt obligation. [Dkt 303 at ¶¶ 54, 107].

*Gross v. Town of Cicero Illinois*, cited by Defendants can also be distinguished as it dealt with a summary judgment. The district court did find a breach of fiduciary duty. The quote identified by Defendants continues, "But that does not end the inquiry of this issue." 619 F.3d 697, 711.

Also, *Cincinnati Life Ins. Co. v. Groteenhuis*, 2011 WL 1107114 (S.D. Ind. Mr. 23, 2011), can be distinguished as there were no facts pled as to duty. The Amended Complaint gives allegations of a duty [Dkt. 303 at ¶¶ 197-199] as well as Defendants' scheme to defraud. [*Id.* at ¶ 121].

## CONCLUSION

Plaintiffs amended complaint has cured the errors that led to the dismissal of the original complaint. The Magistrate has agreed in this case when granting the motion to amend. [Dkt. 297]. Plaintiffs' claims have been pled with particularity pursuant to Rule 9(b) where necessary. Plaintiffs have plead sufficient details in terms of time, place, and content of the fraud and the injury resulting from the fraud to allow the Defendants to prepare a responsive pleading.

Respectfully submitted

/s/ Amy E. Romig
*Attorneys for Plaintiffs, Andrew Cox,*
*Lucinda Cox,  Stephanie Snyder, and Robert*
*Goodall individually and on behalf of others*
*similarly situated*

George M. Plews, Attorney No. 6274-49
Frederick D. Emhardt, Attorney No. 10952-49
Amy E. Romig, Attorney No. 22523-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN  46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
        femhardt@psrb.com
        aromig@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA, L.P.A.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
        boruta17@hotmail.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 3rd day of December 2014, a copy of the foregoing

was filed electronically and that all parties of record who have appeared should

receive this document via the Court's electronic filing system.


*/s/Amy E. Romig*