UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, et al., individually and on behalf of others similarly situated, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No.: 1:12-cv-1654-TWP-MJD<br>) CLASS ACTION<br>) JURY TRIAL DEMANDED |
| SHERMAN CAPITAL LLC, et al. | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

## Table of Contents

I. INTRODUCTION .......... 5

II. FACTUAL BACKGROUND .......... 7

III. PROPOSED CLASS DEFINITION .......... 7

1. FDCPA Subclass .......... 7
2. RICO Subclass .......... 8
3. Restitution Subclass .......... 8

IV. ARGUMENT SUPPORTING CLASS CERTIFICATION .......... 9

A. Certification under Fed. R. Civ. P. 23(a) .......... 9

1. Numerosity .......... 11
2. Commonality .......... 11
3. Typicality .......... 13
4. Adequacy of Representation .......... 13

B. Certification under Trial Rule 23(b)(3) .......... 15

V. CONCLUSION .......... 19

## Table of Authorities

### Cases

*Alliance to End Repression v. Rochford*, 565 F.2d 975 (7th Cir. 1977) ........................ 8

*Blanford v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2009 U.S. Dist LEXIS 15760 (S.D. Ind. Feb. 27, 209) ........................ 16

*Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302 (N.D.Ill. 1995) ........................ 11

*Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194 (E.D. N.Y. 2005) 11

*De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225 (7th Cir.) ........................ 13

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 40 L.Ed. 2d 732, 94 S. Ct. 2140 (1974) ........................ 10

*Fields v. Maram*, 2004 U.S. Dist. LEXIS 16291 (N.D. Ill. 2004) ........................ 11

*Friedman v. 24 Hour Fitness USA, Inc.*, 2009 U.S. Dist. LEXIS 81975 (C.D. Cal. Aug. 25, 2009) ........................ 17

*Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313 (N.D. Ill. 1995) ........................ 14

*Hamilton v. Am. Corrective Counseling Serv.*, 2007 U.S. Dist. LEXIS 11488 (N.D. Ind. Feb. 14, 2007) ........................ 16

*Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D. Ill. 2008) ........................ 16

*In re Visa Check / MasterMoney Antitrust Litigation*, 280 F.3d 124 (2nd Cir. 2001) ........................ 16

*Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284 (N.D. Ill. 2005) ........................ 10, 13

*Johnson v. Aronson Furniture Co.*, 1996 U.S. Dist. LEXIS 14454 (N.D. Ill. Sept. 11, 1998) ........................ 18

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ........................ 11, 12, 13

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ........................ 17

*Kohen v. Pacific Investment Management Co.*, 571 F.3d 672 (7th Cir. 2009) ........................ 10

*Lucas v. GC Servs. L.P.*, 226 F.R.D. 337 (N.D. Ind. 2005) ........................ 16

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954 (7th Cir.) ........................ 11

*Matyasovszky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35 (D. Conn. 2005) ........ 11

*Mejdreck v. Lockformer Co.,* 2002 U.S. Dist. LEXIS 14785 (N.D. Ill. 2002) ........ 15

*Miller v. Material Sciences Corp.,* 1999 U.S. Dist. LEXIS 10628 (N. D. Ill. 1999) ... 14

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ........ 12, 13, 17

*Schlelcher v. Wendt*, 618 F.3d 679 (7th Cir. 2010) ........ 10

*Selburg v. Virtuoso Sourcing Group, LLC*, 2012 U.S. Dist. LEXIS 142653 (S.D. Ind. Sept. 29, 2012) ........ 16

*Suchanek v. Sturm Foods, Inc.* 764 F.3d 750 (7th Cir. 2014) ........ 18

*Swanson v. Am. Consumer Indus.*, 415 F.2d 1326 (7th Cir. 1969) ........ 11

*UHL v. Thoroughbred Tech. and Telecomms., Inc.,* 309 F.3d 978 (7th Cir. 2002) ..... 10

*Walker v. Calusa Investments, LLC*, 244 F.R.D. 502 (S.D. Ind. 2007) ........ 10

*Wallace v. Chi. Hous. Auth.*, 224 F.R.D. 420 (N.D. Ill. 2004) ........ 10

*Williams v. Chartwell Fin. Servs.*, 204 F.3d 748 (7th Cir. 2000) ........ 10, 11

*Williams v. Mohawk Indus.*, 568 F.3d 1350 (11th Cir. 2009) ........ 17

**Statutes**

18 U.S.C. §§1961, 1962(c), -(d), 1964(a), -(c) ........ 5

**Other Authorities**

5-23 Moore's Federal Practice – Civil § 23.45[5][b] ........ 17

5-23 Moore's Federal Practice – Civil § 23.23[4][d] ........ 17

Plaintiffs, Andrew Cox, Lucinda Cox, Stephanie Snyder, and Robert Goodall ("Plaintiffs" or "Named Plaintiffs") seek certification pursuant to Fed. R. Civ. P. 23(b)(3) of a class seeking damages against Defendants for their violations of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. 1692 *et seq.*, the United States Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961, 1962(c) and (d), and 1964(a) and (c), fraud and constructive fraud, restitution, and unjust enrichment. The class will consist of all Indiana residents who were the subject of collection activity by the Defendants or their agents or who paid money to Defendants as more fully discussed below.

## I. INTRODUCTION

Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3) for their claims against Defendants related to Defendants' alleged purchase of Indiana consumer debt obligations. From 2008 through 2013, Defendants collected tens of millions of dollars from Indiana consumers. Plaintiffs seek damages on behalf of all Indiana consumers affected by Defendants' collection activities as well as restitution of money Defendants have collected from Indiana consumers.

The consumer accounts involved in these claims are valued between a few hundred dollars and a few thousand dollars. While these amounts are significant to individual consumers, the amounts are small compared to likely litigation costs should individual lawsuits by each affected consumer would be required.

Fed. R. Civ. P. 23(a) requires that the class be sufficiently numerous that joinder of all members is impractical, that there be questions of law or fact common

to the class, that the claims of the representative party be typical of the claims of the class and that the representative party will fairly and adequately protect the interests of the class. Rule 23(b) requires, after satisfaction of the four prerequisites of subdivision (a), that the Court find that the questions of law or fact predominate over questions affecting individual members and that the class action is therefore superior to other methods for a fair and efficient adjudication of the controversy. Here the potential class numbers in excess of tens of thousands. The damages to all of the members derive from acts of the Defendants or their agents in attempts to collect the consumer accounts at issue in this matter. The applicable laws are identical as to all potential class members. The Named Plaintiffs' claims with respect to Defendant's conduct raise the same legal and factual issues as the claims of their fellow Indiana citizens with consumer accounts allegedly owned by Defendants. There is no conflict or antagonism among or between the claims of the Named Plaintiffs and any other prospective member of the class.

Named Plaintiffs' counsel have extensive class action experience as well as experience in consumer advocacy. Plews Shadley Racher & Braun LLP has participated in over 20 class action cases, recovering well in excess of $100,000,000 for class members. Plews Shadley Racher & Braun LLP has extensive experience in complex litigation matters, including regulatory and statutory claims. The two principals of Cheeseborough & Boruta have collectively represented Indiana consumers for almost 40 years and have counseled clients in matters involving debt

collection and the FDCPA. The Rule 23 requirement that counsel be competent, experienced and qualified is well satisfied in this case.

## II. FACTUAL BACKGROUND

As more fully detailed in the Amended Complaint [Dkt. 303] Defendants allegedly purchase charged-off consumer accounts from originating banks despite that those banks had previously securitized, or packaged groups of these accounts and sold them as investments. Between November 2008 and November 15, 2013, Defendants have directly or indirectly collected on at least 1,174,222 accounts, just in Indiana. November 15, 2013 letter from Defendants' Counsel to Plaintiffs' counsel, responding to Plaintiffs' discovery requests (hereinafter "Letter"). *See* Am. Compl. [Dkt. 303, ¶¶135-136]. This collection activity included at least 33,440 lawsuits filed in the State of Indiana. Letter, *id.* at ¶¶137-138. The total amount collected from Indiana consumers during that time was at least $79,940,415.50. Letter, *id.* at ¶¶135-136. The proposed class is comprised of Indiana consumers who have been misled by the Defendants and through their agents' false claim that a debt was owed to Defendants. Defendants and their agents have manipulated Indiana consumers through a consistent and repeated pattern of collection activities including pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits.

## III. PROPOSED CLASS DEFINITION

The Named Plaintiff proposes to represent the following three subclasses:

**1. FDCPA Subclass**

All Indiana citizens who were the subject of collection activity or activities which violate the FDCPA by the Defendants or Defendants' agents in an attempt to collect a debt incurred for personal, family or household purposes which were served with process or contacted in any matter by Defendants or Defendants' agents during the period beginning November 9, 2011 (one year prior to the filing of the original complaint in this action) through trial of this case.

**2. RICO Subclass**

All Indiana citizens who paid money to Defendants pursuant to Defendants' scheme to defraud using the mail or wires; interstate transportation of stolen property; or extortion or any combination of these during the period beginning November 9, 2008 (four years prior to the filing of the original complaint in this action) through trial of this case.

**3. Restitution Subclass**

All Indiana citizens who paid money to Defendants in payment of an alleged debt owed to Defendants for the period beginning November 9, 2006 (six years prior to the filing of the original complaint in this action) through the trial of this case.

The Seventh Circuit has recognized that classes "defined by the activities of the defendants" are generally sufficiently definite to warrant class certification. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978 (7th Cir. 1977). Here, the subclasses are defined based upon Defendants' actions.

All four plaintiffs are, by reason of the facts alleged in their Amended Complaint [Dkt. 303], members of both the FDCPA and RICO Subclasses. Plaintiffs Stephanie Snyder and Robert Goodall are also members of the Restitution subclass.

## IV. ARGUMENT SUPPORTING CLASS CERTIFICATION

### A. Certification under Fed. R. Civ. P. 23(a)

Class certification follows a two-step process. First, Trial Rule 23(a) provides in relevant part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements of Rule 23(a) are typically referred to as numerosity, commonality, typicality, and adequacy of representation. Once all of the 23(a) requirements are met, Rule 23(b) requires:

> (b) Types of Class Actions. A class may be maintained if Rule 23(a) is satisfied and if:
>
> * * *
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods

> for fairly and efficiently adjudicating the controversy….

The potential class representatives do not have to show that they are likely to succeed on the merits of the case; class certification proceedings are not the time for the trial on the merits. *Schlelcher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("certification is largely independent of the merits"); *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (rejecting argument that court had to determine which class members were damaged before certification as "putting the cart before the horse"). Rather, class certification is procedural in nature – a court should only determine whether the prerequisites of Rule 23 have been met. *See e.g. Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 40 L.Ed. 2d 732, 94 S. Ct. 2140 (1974); *Williams v. Chartwell Fin. Servs*., 204 F.3d 748, 758 (7th Cir. 2000); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 504 (S.D. Ind. 2007).

Finally, a court has broad discretion to determine whether the proposed class meets the Rule 23 certification requirements. *UHL v. Thoroughbred Tech. and Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002); *Jackson v. Nat'l Action Fin. Servs., Inc*., 227 F.R.D. 284, 286 (N.D. Ill. 2005) (citing *Wallace v. Chi. Hous. Auth.,* 224 F.R.D. 420, 423 (N.D. Ill. 2004)). As shown below, the proposed class, its members and its representatives fulfill the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. Additionally, the proposed class should be certified pursuant to Rule 23(b)(3) because questions of law and fact common to the class predominate over questions of individual members.

**1. Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members be impracticable." The precise number of class members does not need to be shown, rather a reasonable estimate is sufficient. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.). Class certification may be supported by common sense assumptions. *Fields v. Maram*, 2004 U.S. Dist. LEXIS 16291 at *11 (N.D. Ill. 2004). Crucial to the numerosity inquiry is judicial economy and the practical inability of individual class members to bring their own suits. *Id. See also Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 205 (E.D. N.Y. 2005) (citing *Matyasovszky v. Housing Auth. of the City of Bridgeport*, 226 F.R.D. 35, 40 (D. Conn. 2005)) (class certification proper where members may have "inadequate resources to prosecute their own claims"); *Williams*, 204 F.3d at 760 (courts should have heightened regard where the "difficult financial situations of many of the litigants may inhibit individualized litigation.") Federal Courts have held that joinder is usually impracticable when the class has more than 40 members. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D.Ill. 1995). Here, the potential class (and every subclass) numbers many thousand. This number is derived (and easily ascertainable) from Defendants' records of Indiana consumer accounts they allegedly purchased. Numerosity is satisfied here.

**2. Commonality**

Commonality will be satisfied if the claims of class members are derived from "a common nucleus of operative fact." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.

1998); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."). Commonality is satisfied where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594 (FDCPA class certified based upon defendants' conduct by mailing allegedly illegal form letters). The common nucleus here is exhibited by a common course of conduct by Defendants. Even where damages or affirmative defenses may differ between each class member, a common course of conduct will be sufficient to support class certification. *Keele*, 149 F.3d at 594 ("...factual variations among class members' grievances do not defeat a class action.")

All of the class claims derive from Defendants's collection and business practices. Whether or not Defendants are liable to individual members of the Class will involve the same questions of law and fact for each class member, including but not limited to the following:

a. Whether Defendants and their agents properly engaged in collection activities against Indiana consumers;

b. Whether Defendants and their agents acquired legal ownership of class members' debt obligations;

c. Whether Defendants and their agents impermissibly pulled credit reports, performed outbound dialer calling activity, sent dunning letters, and filed lawsuits against Indiana consumers;

d. Whether Defendants and their agents committed a scheme to defraud using the mail or wires; interstate transportation of stolen property; or extortion; and

e. Whether Defendants and their agents engaged in collection activity without legal standing.

Here liability turns on a course of conduct of Defendants that is identical as to all class members. This common course of conduct and common questions of law and fact are more than sufficient to satisfy the commonality requirement of class certification.

**3. Typicality**

Typicality is satisfied where "a plaintiff's claim arises out of the same practice or course of conduct as the claims of the other class members and is based on the same legal theory as the claims of the other class members." *Keele,* 149 F.3d at 595 (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.)); *Jackson*, at 227 F.R.D. at 288 (Class certified in FDCPA case). All that is required is a common element of fact or law; all of the same facts or damages need not be involved. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) (upholding certification of class in RICO and Illinois Consumer Fraud Act Case).

Here, all class members' claims are based upon the common conduct of Defendants and are based upon the same legal theories. Therefore, since the claims of the Named Plaintiffs raise the same legal and factual issues as the claims for the entire class, class certification is proper.

**4. Adequacy of Representation**

The adequacy of representation required by Rule 23(a)(4) has three components:

> (1) The chosen class representative cannot have antagonistic or conflicting claims with other members of the class;

> (2) the named representative must have a sufficient interest in the outcome to ensure vigorous advocacy; and
>
> (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously.

*Miller v. Material Sciences Corp.,* 1999 U.S. Dist. LEXIS 10628 at *10 (N. D. Ill. 1999) (citing *Gammon v. GC Services Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D. Ill. 1995)). As discussed above, the claims sought by the Named Plaintiffs are identical to the claims of the entire class; therefore the representative plaintiffs' claims are neither antagonistic to nor conflicting with claims of the class. All of the Named Plaintiffs will vigorously advocate the class interests. Finally, class counsel are experienced at class litigation, complex litigation, and consumer and FDCPA cases.[1]

---

[1] For example, Plews Shadley Racher & Braun LLP ("PSRB") is currently lead counsel, along with another Indianapolis attorney in a class action case pending in Dearborn County styled *Klepper v. ACE Am. Ins. Co.*, where a case was certified over the objection of the distillery defendant and the Court of Appeals declined to accept jurisdiction over the defendant's motion to decertify the class. *See* Cause No. 15A01-0806-CV-00277 (lower court case 15C01-0502-CC-9). PSRB litigated the underlying liability case resulting in the settlement and recovery of a common fund for the Class. PSRB was also lead counsel, with another Indianapolis law firm, in class action litigation in Hamilton County against Trinity Homes, LLC and its parent Beazer Corp. regarding water damage and in some instances mold growth that resulted from defective construction. *Colon v. Trinity Homes*, LLC, 29D02-0404-PL-374. The case settled in 2004. PSRB was lead counsel in *Volker v. McDay Corp., et al.*, 41D02-0101-CT-00030, where residents of a mobile home park filed class action litigation against the landlord and owner regarding the quality of drinking water provided. The case settled in 2002. In addition, PSRB has been lead or co-counsel in a number of class action cases against financial institutions in litigation involving unlawful business practices such an inflated mortgage escrow deposits, and inflated interest rates on adjustable rate mortgages. These cases include *Bastin v. First Indiana Bank*, No. 95-C-4085 (N.D.Ill. February 21, 1997); *Ziefel v. M&T Bank*, No. 95-C-6309 (N.D.Ill. November 7, 1996); *Lyons v. Atlantic Mortgage & Investment Corp.*, No. 11410/93 (Monroe County (new York) Supreme Court, March 27, 1995); *Mufford v. Dale Mortgage Bankers Corp.*, Index No. 8135/93 (Monroe County (New York) Supreme Court, April 4, 1996); *Murray v.*

Since all three components of Trial Rule 23(A)(1) are met, the Named Plaintiffs will adequately represent the interests of the class.

**B. Certification under Trial Rule 23(b)(3)**

Certification of a class pursuant to Trial Rule 23(b)(3) is proper (1) where questions of law and fact common to the class predominate over questions affecting only individuals, and (2) a class action is superior to other means of resolving the dispute. *Mejdreck v. Lockformer Co.,* 2002 U.S. Dist. LEXIS 14785 at *17 (N.D. Ill. 2002). Thus, the commonality requirement of Rule 23(a)(2) overlaps considerably with Rule 23(b), but Rule 23(b)(3) requires that the common issues not only exist; they predominate. *Id.* at 18. "[I]ssues are considered to predominate when there is a 'common nucleus of operate facts.'" *Id.*

Courts have repeatedly recognized that class actions are superior to deal with FDCPA claims. First, the common issues in an FDCPA claim typically revolve

---

*Shawmut Mortgage Company*, Index No. 3037/94 (Monroe County (New York) Supreme Court, May 8, 1996); *Murray v. Dime Savings Bank of New York, FSB*, Index No. 012712/93 (Queens County (New York) Supreme Court, August 29, 1995); *Troy v. OnBank*, Index No. 93-21061 (Orleans County (new York) Supreme Court, July 28, 1995); *Whitford v. First National Bank*, 147 F.R.D. 135 (W.D.Ky. 1992); *Israel v. Citibank, N.A. and Citicorp Mortgage, Inc.* No. 629470 (St. Louis County (Missouri) Circuit Court 1993); *Moore v. Banc One Corp. and Banc One Mortgage Corp.*, No. IP 91-219-C (S.D.Ind. 1993); *Reed v. Banc One Mortgage Corp.*, No. 49D079505CP-0662 (Marion County (Indiana) Superior Court 1995); *Radke v. Bank United of Texas*, No. 93-12213 (District Court of Harris County Texas, 269th Judicial District 1993); *Ward v. First Federal Savings and Loan Association of Rochester,* No. 8136/93 (Monroe County (New York) Supreme Court 1993; *Reigle v. Sibley Mortgage Corp.*, No. 5897/93 (Monroe County (New York) Supreme Court 1993); *Miller v. FBS Mortgage Corp.*, No. CT 94-013743 (District Court of Hennepin County (Minnesota) 1994); *Hermann v. Meridian Mortgage*, No. 1381 (Philadelphia Court of Common Pleas 1996); *Hall v. Moneyline Money Centers, Inc. and Altegra Credit Company,* No. CV 95-776 (E.D.N.Y. 1995); *Cronic v. Shenandoah Life Insurance Co.*, No. E-67762 (Superior Court of Fulton County (Georgia) 1998); and *Kiltz v. California Federal Bank,* No. BC 92098 (Superior Court of Los Angeles County 1993). Robert Cheeseborough and

around the legality of the defendant's actions, which establishes the predominance of common issues. *See e.g., Blanford v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2009 U.S. Dist LEXIS 15760 at *23 (S.D. Ind. Feb. 27, 209) (citing *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008)) ("When a class challenges a standard practice, the legality of that practice will usually be the predominant issue in the class action."); *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337 (N.D. Ind. 2005); *Hamilton v. Am. Corrective Counseling Serv.*, 2007 U.S. Dist. LEXIS 11488 (N.D. Ind. Feb. 14, 2007)). FDCPA claims are appropriate for class treatment even when there are other, non-common issues to be resolved, such as individual damages. *Id.* at *16-17 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues.") (citing *In re Visa Check / MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2nd Cir. 2001)).

Moreover, class actions are typically a better vehicle for resolving FDCPA claims than individual claims because they almost always involve low individual recovery; the suits would likely not proceed at all without the cost-sharing of a class action. *Lucas*, 226 F.R.D. at 343-42; *Selburg v. Virtuoso Sourcing Group, LLC*, 2012 U.S. Dist. LEXIS 142653 at *29-30 (S.D. Ind. Sept. 29, 2012). Further, as Judge Hamilton explained, the FDCPA itself provides for a special measure of damages in class action cases. *Blanford*, 2009 U.S. Dist. LEXIS 15760 at *24-25.

---

Matthew Boruta have been representing consumers in debt issues since 1994 and 1997 respectively and have experience with the FDCPA.

Class actions are also a superior method to adjudicate the RICO claims as well:

> courts have found questions to predominate over individual questions in cases in which the representations or omissions are so uniform or standardized, and resulting damages from the fraudulent conduct are so uniform or standard, that consumers' reliance on the fraudulent conduct is susceptible to generalized proof."

5-23 Moore's Federal Practice – Civil § 23.45[5][b]. *See also*, 5-23 Moore's Federal Practice – Civil § 23.23[4][d] ("Actions under [RICO] often involve…schemes to defraud, which can satisfy the commonality requirement.") *See also* *Rosario*, 963 F.2d at 1017-18 (affirming certification of RICO class where there was a common scheme to defraud and deceive despite factual variations among the class grievances); *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1356 (11th Cir. 2009) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257 (11th Cir. 2004)) (explaining that RICO claims are "often susceptible to common proof" because "the very gravamen of the RICO claims is the pattern of racketeering activities and the existence of a national conspiracy . . . . These are not facts from which jurors will be asked to infer the commission of wrongful acts against individual plaintiffs; these very facts constitute essential elements of each plaintiff's RICO claims."); *Friedman v. 24 Hour Fitness USA, Inc.*, 2009 U.S. Dist. LEXIS 81975 at *23-24 (C.D. Cal. Aug. 25, 2009) ("Common issues frequently predominate in RICO actions that allege injury as a result of a single fraudulent scheme. The question of individual injury would not even arise if Plaintiffs fail to establish any of the common elements of a RICO claim, such as a pattern of racketeering activity, an enterprise, and scienter.")

(citations omitted); *Johnson v. Aronson Furniture Co.*, 1996 U.S. Dist. LEXIS 14454 at *21 (N.D. Ill. Sept. 11, 1998) ("RICO classes are commonly certified.").

Finally, a class action is the superior method to adjudicate the constructive fraud, restitution and unjust enrichment claims since the claims are based upon Defendants' common course of conduct. *See Suchanek v. Sturm Foods, Inc.* 764 F.3d 750, 759 (7th Cir. 2014) (possible individual elements of reliance or causation did not defeat class certification; rather certification is an efficient procedure for litigation of cases involving tens of thousands of consumers, yet damages not large enough to justify the expense of individual suits)

Questions of common fact predominate over individual questions here. The claims of the Named Plaintiffs and the Class members are identical, and the liability of Defendants to individual Class members involves the same course of conduct and the same common nucleus of operative facts. Furthermore, the legal theories of liability will be the same for each class member.

Many of the potential class members are unsophisticated consumers who may be unaware of their legal claims against Defendants. Moreover, the damages sustained by any single class member may not rise to a level making it economically feasible to retain legal counsel and pursue an individual remedy. Here, individual plaintiffs are unlikely and possibly unable to bring their own claims. If this action does not proceed as a class, the claims of these Indiana consumers will simply remain unredressed. Moreover, forcing each class member to litigate claims individually would waste litigation and judicial resources because each member

would be presenting the same evidence and legal theories in each case. Proceeding as a class action therefore is the most appropriate form of adjudication to allow all members of the class to adjudicate common claims in one action. This action therefore should be certified as a class action under Fed. R. Civ. P. 23(B)(3).

## V. CONCLUSION

The Court should enter an order determining that this action may proceed against Defendants as a class action, pursuant to Fed. R. Civ. P. 23, since the requirements of numerosity, commonality, typicality, and adequacy of representation have been satisfied and since common questions predominate over individual questions and proceeding as a class would be superior to other means of adjudication.

Respectfully submitted

*s/Amy E. Romig*
*Attorneys for Plaintiffs, Andrew Cox, Lucinda Cox, Stephanie Snyder, and Robert Goodall individually and on behalf of others similarly situated*

George M. Plews, Attorney No. 6274-49
Frederick D. Emhardt, Attorney No. 10952-49
Amy E. Romig, Attorney No. 22523-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN 46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
femhardt@psrb.com
aromig@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 637-7000
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
boruta17@hotmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of March 2015, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/ Amy E. Romig*