# **EXHIBIT A**



CREDIT CARD ACCOUNT PURCHASE AGREEMENT

Between

Chase Bank USA, N. A.

And

Sherman Originator III, LLC

dated as of

July 26, 2010

Legal Recall Credit Card portfolio

1

## CREDIT CARD ACCOUNT PURCHASE AGREEMENT

THIS AGREEMENT is made as of July 26, 2010, by and between CHASE BANK USA, N. A., a national banking association, ("Seller") and Sherman Originator III LLC, a Delaware Limited Liability Company ("Purchaser").

## W I T N E S S E T H

WHEREAS, Seller in the normal course of its banking business operates MasterCard and Visa credit card programs, and revolving credit products other than credit cards; pursuant to which accounts were established or maintained for Cardholders, which accounts are governed by the terms of applicable agreements;

WHEREAS, in connection with the operation of its program, Seller from time to time charges-off accounts which are delinquent, but the outstanding balances of which remain the obligations of the defaulting Cardholders;

WHEREAS, Seller desires to sell certain of these charged-off accounts;

WHEREAS, Purchaser desires to purchase such charged-off accounts, all on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants and agreements of the parties hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. **Definitions**

As used herein, the following terms have the following meanings:

"Account" means a consumer account established or maintained for a Cardholder pursuant to Seller's MasterCard and Visa credit card program, or other revolving credit program, including the Unpaid Balance owed by the applicable Cardholder. , and will include accounts where Seller has been contacted by a third party who asserts it has the authority granted by the Cardholder to discuss and settle the Cardholder's Unpaid Balance and/ or where Seller has received a request to cease communicating with the Cardholder about the debt.

"Business Days shall mean Monday – Friday except for federal holidays (E.g., New Years Day, Presidents Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas) and such other days when Seller is closed or authorized to close.

"Cardholder" means the person or entity who or which is obligated to repay

an Account, or if there are multiple persons or entities obligated to repay an Account, all such persons or entities collectively.

"Charged-off Account" means an Account which Seller has charged-off the Unpaid Balance as uncollectible in accordance with its usual and customary banking practices as of the File Creation Date and applicable federal regulations.

"Closing Date" shall mean such other date as may be agreed upon by Seller and Purchaser for the purchase and sale of Charged-off Accounts pursuant to Section 2 of this Agreement. Each Closing Date shall occur no later than three (3) Business Days after the corresponding File Creation Date.

"Confidential Information" shall mean all oral, written or electronically delivered information and material, in tangible or intangible form, including all copies thereof, partial or complete in whatever media and information relating to Seller and/or its Cardholders, including, but not limited to, names, addresses, telephone numbers, and Account numbers.

"File Creation Date" means the date Seller creates a list of Accounts that will be sold to Purchaser on the Closing Date.

"Ineligible Account" means any Account in which on or prior to the File Creation Date: (i) the Primary Cardholder voluntarily filed for bankruptcy protection or involuntarily became subject to bankruptcy proceedings and which bankruptcy has not been dismissed; (ii) the Cardholder has asserted in writing to Purchaser that the Account or any transaction on the Account was fraudulently originated or used and is disputed, which allegation has not been resolved to Seller's satisfaction; (iii) the statute of limitations for collection of the Account has elapsed; (iv) the Primary Cardholder has died; (v) it is determined that the Account is subject to pending litigation, other than a class action or a case purported to be a class action, or is being handled by a collection agency or attorney either through sale or assignment; or; (vi) the Account was validly settled; .

Primary Cardholder" means the first name on the account, as reflected in Seller's records and which can be located on the sale file in columns titled Last Name and First Name.

"Purchase Price" means the amount to be paid by Purchaser to Seller on the Closing Date for the purchase and sale of Charged-off Accounts as determined pursuant to the provisions of Section 2(b) hereof.

"Purchase Price Percentage" means ███████████████████ .

"Recallable Account" means, any Account which, in the sole discretion of Seller, meets any of the following criteria:

(i)     any Account which is the subject of a Charge-off reversal; or

(ii)    any Account which has been referred to the Seller's office of the President, Seller's regulators, or any federal, state or local government agency or authority;

(iii)   any Account which Seller has a reasonable business need to recall;

(iv)    is an Ineligible Account.

"Term" means the period of time commencing from the date of this Agreement through August 31, 2010. The volume to be purchase under the Term of this Agreement shall be approximately ██████████████████

"Unpaid Balance" means, as to any Account, the total outstanding unpaid balance, as shown on Seller's books and records as of the last Business Day prior to the File Creation Date (including all amounts due in respect of purchases, cash advances, finance charges, payments and credit adjustments, late fees, return check charges, overlimit fees and all other applicable fees and charges) excluding post charge-off interest

## 2.   **Sale of Accounts**

(a)     Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances owed on such Charged-off Accounts and is not to commence an action or proceeding against Cardholders obligated under such Charged-off Accounts. Notwithstanding the preceding, the Purchaser retains the right to pursue an action or proceeding in the event that reasonable legal collections are not successful in securing a satisfactory payment on the account.

(b)     Subject to the terms and conditions of this Agreement, on the Closing Date, Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on a diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by Purchase Price Percentage.

(c)     Seller, in its sole judgment, and subject to the provisions hereof shall determine which Charged-off Accounts shall be eligible for sale to Purchaser hereunder. The Accounts sold under the terms of this Agreement include a random selection of the Accounts in the Seller's accumulated monthly recall for each of the applicable segments of Accounts. The Accounts have been recalled from the attorneys and selected for sale without regard to credit quality or any Account scoring methodology.

(d)     The sale shall be for Charged-off Accounts in one or more billing cycles and shall be documented by a Bill of Sale in the form attached hereto as **Exhibit A**, a UCC-1

form containing the information as provided in **Exhibit B** signed by Seller and prepared by Purchaser, and a Closing Statement prepared by Seller in the form attached hereto as **Exhibit C**.

(e)     Any information that Seller provides to the Purchaser prior to the sale shall be deemed Seller's Confidential Information. Any information Seller provides with respect to Accounts not purchased by Purchaser, or later returned as an Ineligible Account or a Recallable Account shall, at Seller's option and request be returned to Seller or be destroyed by Purchaser.  Purchaser shall certify in writing such destruction of Confidential Information to Seller.  Notwithstanding the proceeding sentence, the Purchaser shall not be required to destroy any copies of Confidential Information which are stored in disaster recovery backups made for Purchaser's system, so long as those backups are not readily available to users.  However, the Purchaser agrees not recall such information from backup files once the Purchaser has received a request to destroy such Confidential Information.

(f)     Information to be provided on a diskette or spreadsheet referred to in subparagraph (b) above shall be delivered electronically to Purchaser on the File Creation Date.  The information that shall be provided is listed on **Exhibit D**, but such information shall be provided only as it is reasonably available to Seller.  Purchaser shall pay the Purchase Price for such sale to Seller by 2:00 p.m. Eastern Time on the Closing Date pursuant to wiring instructions provided to Purchaser. Until such time as Seller has received the Purchase Price for the applicable Charged-off Accounts and Seller has executed a Bill of Sale therefor, all such information shall be deemed Seller's Confidential Information and property. Prior to the aforesaid sale, without Seller's prior written consent, Purchaser shall not disclose or release any of Seller's Confidential Information to any third party, other than (i) to Purchaser's financing entities, lenders, accountants or counsel in connection with this Agreement or (ii) if compelled to do so pursuant to judicial or administrative order. Prior to providing any Seller Confidential Information to any such third-party, Purchaser will obtain a written acknowledgement from such third party that the information is Seller's Confidential Information and will not be used for any purpose other than for determining whether Purchaser shall purchase the Accounts or whether financing for Purchaser's purchase of Seller's Accounts shall be made available. Upon either a determination to not purchase the Accounts or to decline to finance the purchase, Purchaser shall obligate such third party to destroy Seller's Confidential Information.  Purchaser hereby represents to Seller that Seller's Confidential Information shall be destroyed within ten (10) days of a determination to neither purchase nor finance the purchase of Accounts as referenced above.

3.     **Representations and Warranties of Seller**

(a)     Seller is a national banking association duly organized, validly existing and in good standing under the laws of the United States with full power and authority to enter into this Agreement, to sell the Charged-off Accounts, and to carry out the terms and provisions hereof.

(b)     Seller has the power and authority and all licenses and permits ("Authorization"), if any, required by governmental authority to carry on its business as

now being conducted which relate to the Charged-off Accounts, which Authorizations are in full force and effect.

(c)     The execution and delivery of this Agreement and the performance hereunder have been duly authorized on or prior to the Closing Date, by all necessary action on the part of Seller and no provision of applicable law or regulation or the charter or by-laws of Seller or any agreement, judgment, injunction, order, decree or other instrument binding upon Seller is or will be contravened by Seller's execution and delivery of this Agreement or Seller's performance thereunder.

(d)     No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or any other body is required in connection with the execution, delivery or performance by Seller of this Agreement, which authorization, consent, approval, license, qualification or formal exemption from, or filing declaration or registration has not been obtained on or prior to the Closing Date hereunder.

(e)     No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or other body is required in connection with the sale of any or all of the Charged-off Accounts to be sold on the Closing Date, which Authorization, consent, approval, license, qualification or formal exemption, or filing, declaration or registration has not been obtained on or prior to such date.

(f)     Seller has good and marketable title to each Charged-off Account to be sold hereunder and each such Charged-off Account shall be transferred free and clear of any lien or encumbrance.

(g)     Seller hereby acknowledges and represents that the sale of the Charged-off Accounts to Purchaser hereunder: (i) is not made in contemplation of the insolvency of Seller, (ii) is not made with the intent to hinder, delay or defraud the creditors of Seller, (iii) has been approved by an officer of Seller with the authority to approve the sale of Charged-off Accounts, (iv) will be recorded in the records of Seller, and (v) represents a *bona fide* and arm's length transaction undertaken for adequate consideration in the ordinary course of business. Further, Seller hereby acknowledges and represents that Purchaser is neither an insider nor an affiliate of Seller.

(h)     Each of the Charged-off Accounts has been maintained and serviced by Seller in compliance with all applicable state and federal consumer credit laws, including, without limitation, the Truth-in-Lending Act, the Equal Credit Opportunity Act, and the Fair Credit Billing Act.

(i)     None of the Charged-off Accounts is subject to pending collection litigation.

(j)     **EXCEPT AS PROVIDED IN THIS SECTION, THE CHARGED-OFF**

**ACCOUNTS ARE BEING SOLD "AS IS" AND "WITH ALL FAULTS", WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER AS TO EITHER CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, AND SELLER SPECIFICALLY DISCLAIMS ANY WARRANTY, REPRESENTATION, ORAL OR WRITTEN, PAST OR PRESENT, EXPRESS OR IMPLIED, CONCERNING THE CHARGED-OFF ACCOUNTS, OR THE STRATIFICATION OR PACKAGING OF THE CHARGED-OFF ACCOUNTS.**

(k)   The Account level data shown in Exhibit D is materially true and accurate to the best of seller's books and records

(l) All representations and warranties contained in this Section 3 shall survive the execution and delivery of the Closing as represented by the Bill of Sale therefore until the first anniversary thereof

4.   **Representations and Warranties of Purchaser**

(a)   Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of Delaware with full power and authority to enter into this Agreement, to purchase the Charged-off Accounts, and to carry out the terms and provisions hereof.

(b)   Purchaser has the power and Authorizations, if any, required by governmental authority to carry on its business as now being conducted which relate to the Charged-off Accounts, which Authorization is in full force and effect.

(c)   The execution and delivery of this Agreement and the performance thereunder have been duly authorized on or prior to the Closing Date, by all necessary action on the part of Purchaser and no provision of applicable law or regulation or the charter or by-laws of Purchaser or any agreement, judgment, injunction, order, decree or other instrument binding upon Purchaser is or will be contravened by Purchaser's execution and delivery of this Agreement or Purchaser's performance thereunder.

(d)   No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or any other body is required in connection with the execution, delivery or performance by Purchaser of this Agreement, which authorization, consent, approval, license, qualification or formal exemption from, or filing declaration or registration has not been obtained on or prior to the Closing Date hereunder.

(e)   No Authorization, consent, approval, license, qualification or formal exemption from, nor any filing, declaration or registration with, any governmental agency or regulatory authority or other body is required in connection with the sale of any or all of the Charged-off Accounts to be sold on the Closing Date, which authorization, consent, approval, license, qualification or formal exemption, or filing, declaration or registration has not been obtained on or prior to such date.

(f)     Purchaser is a sophisticated Purchaser that is in the business of buying or Collecting Accounts of the type being purchased or otherwise deals in the collection of consumer debt in the ordinary course of Purchaser's business.

(g)     Purchaser agrees to immediately notify Seller in writing of any unauthorized misappropriation, disclosure or use by any person of any of Seller's Confidential Information which may come to its attention and to take immediate steps to limit, stop, or otherwise remedy such misappropriation, disclosure or use.

(h)     All representations and warranties contained the execution and delivery of the Closing as represented by the Bill of Sale therefor until the first anniversary thereofin this Section 4 shall survive.

Purchaser agrees that it will not attempt to enforce any rights it may otherwise have under any arbitration clauses that may appear in Seller's Cardholder agreements.

5.     **Operations**

(a)     Seller may, or upon being notified in writing by Purchaser or by a Cardholder shall, report to each of the credit bureaus it uses, that the Accounts have been sold to Purchaser to the extent that each credit bureau provides such reporting. Except as set forth in the preceding sentence, Seller shall have no further obligation with respect to credit bureau reporting for the Accounts.

(b)     Purchaser agrees not to refer any inquiries from a Cardholder whose Account is the subject of this Agreement to Seller but to handle any such inquiries directly with Seller.

(c)     Purchaser represents and warrants that it shall continue to report to those credit bureaus to which it reports, after the Closing Date, appropriate updates with respect to each Charged-off Account purchased from Seller hereunder.

6.     **Documentation**

(a)     Digitized Media which has been purchased by Purchaser as part of this Agreement shall be received by Purchaser. Digitized Media shall include statements up to eighteen (18) months prior to Charge-off.

(b)     In addition to the Digitized Media described above, for a period of up to ▮▮▮▮▮▮ from the Closing Date and upon receipt of a written request from Purchaser, Seller shall, to the extent such documents are reasonably available, provide Purchaser with copies of signed Account applications, applicable terms and conditions, and other media relating to the Charged-off Accounts, up to a maximum monthly number of documents of ▮▮▮of the number of Charged-off Accounts sold hereunder. The fee for such service shall

be ███████ for the first ██████████ per document provided for up to ██████████ of the Charged-off Accounts. If the total number of documents requested is greater than ██████████████ but less than ███████████████ of the Charged-off Accounts, Seller may, in its sole discretion, honor such requests and charge Purchaser ███ ██████████████ for each provided document. If the total number of documents provided exceeds ████████ of the Charged-off Accounts, Seller may in its sole discretion honor such request and charge Purchaser ████████████████ for each document provided. Notwithstanding the foregoing, Seller shall have no obligation to retrieve or provide any documents to any assignee of the Purchaser without Seller's prior written consent.

      (b)   .Payment for documents pursuant to subparagraph (a) is due thirty (30) days from Seller's invoice date.

      (c)   If Purchaser files any legal action to collect on a purchased Charged-off Account and requests or subpoenas an officer or employee of the Seller or an affiliate to appear at a trial, hearing or deposition to testify about the Charged-off Account, the Purchaser shall pay the Seller or the affiliate for the officer's or employee's time in traveling to, attending and testifying at the trial, hearing or deposition, whether or not the officer or employee is called as a witness, at the then current hourly rate of such officer or employee. The Purchaser will also reimburse the Seller or the affiliate for the officer's or employee's out-of-pocket, travel and other related expenses.

## 7.    **Compliance with the Law**

      (a)   In the performance of its collection efforts with respect to the purchased Charged-off Accounts, Purchaser represents and warrants that it shall comply with all requirements of all applicable federal, state and local laws, rules and regulations, including, without limitation, the requirements of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*).

      (b)   In the event Purchaser receives a notice from any state or federal agency that it is being investigated for violations of any debt collection practices statute or regulation, Purchaser shall promptly, but in no event more than ten (10) days after receipt of such notice, notify Seller in writing that such investigation has been initiated. Purchaser shall provide Seller with details of the allegations made and of Purchaser's intended response thereto.

## 8.    **Indemnification**

      (a)   Purchaser agrees to indemnify and hold Seller, and its parent, affiliates, subsidiaries, predecessors, successors, assigns, officers, directors, employees, and agents, harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including

reasonable counsel fees and disbursements) incurred or suffered by Seller by reason of willful misconduct or violation of any applicable law, rule or regulation by Purchaser (or its employees or agents) in connection with Purchaser's actions or omissions related to the collection or enforcement of the purchased Charged-off Accounts or the breach of any representation, warranty or covenant made by Purchaser herein.  At its sole option, Seller shall have the right to require Purchaser to assume the defense of such any claim, action, suit or other actual or threatened proceeding and to directly pay for all losses, judgments, damages, expenses or other costs (including all counsel fees and disbursements of counsel) which may be imposed.

(b)     Seller agrees to indemnify and hold Purchaser, and its parent, affiliates, subsidiaries, predecessors, successors, assigns, officers, directors, employees and agents harmless from and against any claims, actions, suits or other actual or threatened proceedings, and all losses, judgments, damages, expenses or other costs (including reasonable counsel fees and disbursements) incurred or suffered by Purchaser by reason of the willful misconduct or violation of any applicable law, rule or regulation by Seller (or its employees or agents) in connection with Seller's origination, maintenance, collection or enforcement of the purchased Charged-off Accounts or the breach of any representation, warranty or covenant made by Seller, except as is otherwise provided herein.  At its sole option, for any event that is subject to indemnification hereunder, Purchaser shall have the right to require Seller to assume the defense of any claim, action, suit or other actual or threatened proceeding and to directly pay for all losses, judgments, damages, expenses or other costs (including all counsel fees and disbursements of counsel) which may be imposed.

9.     **Relationship**

(a)     Nothing in this Agreement is intended to or shall be construed to constitute or establish an agency, joint venture, partnership or fiduciary relationship between the parties and neither party shall have the right or authority to act for or on behalf of the other with respect to any matter.

(b)     Purchaser agrees that notwithstanding any sale by Purchaser of the Charged-off Accounts purchased pursuant to this Agreement, Purchaser shall continue to be subject to all terms and conditions set forth herein as to such Charged-off Accounts.

10.     **Notices**

Any and all notices or other communications required or permitted under this Agreement shall be in writing and shall be delivered by Federal Express or similar courier service for delivery the next business morning, addressed as follows:

If to Seller:                    Chase Bank USA, N.A.
                                 301 North Walnut Street Floor18

Wilmington, DE 19801
Attn: Thomas Henry, Director of Recovery

and

Chase Bank USA, N.A.
201 North Walnut Street
10th Floor
Wilmington, DE 19801
Attn: Frank Borchert
Credit Card Service General Counsel

If to Purchaser:     Jon Mazzoli,
Sherman Originator III LLC
c/o Sherman Capital Markets, LLC
200 Meeting Street, Suite 206
Charleston, SC 29491

or to such other address as either party shall have previously designated to the other by written notice sent Federal Express or similar courier service for delivery next business morning.

11.   **Entire Agreement/Amendment**

This Agreement, including exhibits, constitutes the entire understanding between the parties with respect to the subject matter hereof and supersedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged and incorporated herein. No representations, warranties, and/or covenants have been made by either party to the other except as expressly set forth herein. Purchaser acknowledges and agrees that it is not relying on any representations of Seller in executing this Agreement except as are set forth herein. No amendment of this Agreement shall be effective unless in writing and executed by each of the parties hereto.

12.   **Assignment**

Purchaser and Seller may assign this Agreement to an affiliate or the successor surviving entity in any merger, reorganization or the like, upon the condition that the assignee shall assume, either expressly or by operation of law, all of Seller's or Purchaser's respective obligations hereunder. In addition Purchaser may assign, as security, its rights in the purchased Accounts and its rights under this Agreement to the financial institution (and its successors, assigns or affiliated corporations) which may be providing financing to Purchaser for the purchase of Charged-off Accounts hereunder. In the event that a financial institution takes control of the assets as a secured creditor acting in response to the default of the Purchaser or an agent of the Purchaser with regard to a secured obligation,

the financial institution shall remain liable to comply with all laws and regulations regarding the Accounts, but shall not otherwise be bound by the terms of this Agreement. Purchaser also may sell or transfer any or all of the Charged-off Accounts purchased hereunder, but Seller shall have no obligation to any such transferee of the Charged-off Accounts.

13.   **Use of Seller's Name**

(a)   In any litigation which Purchaser undertakes to collect monies owed on the Charged-off Accounts, it shall sue in its own name and shall not include the Seller's name in the caption of the action, either as a plaintiff or in any other capacity.

(b)   Purchaser shall not use the name of Seller in any way in the operation of its collection of the Charged-off Accounts including, but not limited to, checks, drafts, letters, and forms, except that Seller shall permit Purchaser to refer to a purchased Charged-off Account in the body of a collection letter as an Account purchased from Chase Bank USA, N.A.

14.   **Repurchase of Accounts**

(a)   If, within one hundred twenty (120) days following the Closing Date, Purchaser determines that an Ineligible Account (other than an Account subject to subparagraph (d) below) was included among the purchased Charged-off Accounts, then the Seller agrees, upon receipt of written demand by Purchaser within such 120 day period (the "Written Notice"), to repurchase such Ineligible Account.  The repurchase price for the Ineligible Account shall be an amount equal to Purchase Price for such Charged-off Account determined in accordance with Section 2(b), less any net amounts received by Purchaser in connection with such Ineligible Account.   Each such demand for the repurchase of Ineligible Accounts shall be accompanied by documentary evidence as set forth on Exhibit E in addition to commercially recognized third party databases, reasonably satisfactory to Seller to establish that an Account is an Ineligible Account.

(b)   For each Account identified in the Written Notice, Seller shall have forty-five (45) days from the date it receives such notice to provide Purchaser with specific evidence that an Account identified in the Written Notice is not, in fact, an Ineligible Account.  Seller's failure to provide such evidence or Seller's failure to respond to the Written Notice within forty-five (45) days of its receipt of such notice shall mean that Seller concurs with Purchaser's findings. In such event, Seller shall repurchase the Ineligible Account within (sixty) 60 Business Days of its receipt of the Written Notice, and Seller shall have no further liability or obligation to the Purchaser hereunder; provided, however, that the repurchase shall not relieve Seller from its obligation to indemnify Purchaser as provided under Section 8 of this Agreement.   In no event shall such repurchase release, discharge, or relieve Purchaser from any claim of any third party with respect to the underlying Ineligible Account or its collection.

(c)     In the event of any purported class action naming the Seller as a defendant involving any Charged-off Account sold hereunder, Seller shall have the unlimited right to recall and repurchase such Account. The repurchase price for such Account shall be as described above. If any such Account has been sold to a third party by Purchaser, Purchaser shall first repurchase such Account from such third party.

(d)     If, within forty-five (45) days following the Closing Date, Purchaser determines that an Account included in the purchased Charged-off Accounts is an Ineligible Account because a Cardholder voluntarily filed for bankruptcy protection or became the subject of an involuntary bankruptcy proceeding and that bankruptcy has not been dismissed, then Seller agrees, upon the written demand by Purchaser made within such 45-day period (the "Bankruptcy Written Notice"), to repurchase such Ineligible Account. The repurchase price for the Ineligible Account shall be an amount equal to Purchaser's payment for such Charged-off Account as determined by Section 2(b), less any amounts received by Purchaser in connection with such Ineligible Account.  For each Account that Purchaser has identified in the Bankruptcy Written Notice as an Ineligible Account, the Seller shall have forty-five (45) days from the date it receives such notice to provide specific evidence to the contrary.  Seller's failure to provide specific evidence to the contrary or to respond within forty-five (45) days of receipt of the Written Notice shall mean that Seller concurs with the Purchaser's findings. In such event, Seller will repurchase the Ineligible Account within (sixty) 60 business days of the Written Notice, in accordance with the provisions set forth in subparagraphs (a) and (b) above, and Seller shall have no further liability for any such breach and no further obligation to the Purchaser hereunder; provided, however, that the repurchase shall not relieve Seller from its obligation to indemnify Purchaser, as provided under Section 8 of this Agreement. In no event shall such repurchase release, discharge, or relieve Purchaser from any claim of any third party with respect to the underlying Ineligible Account or its collection.

(e)     In connection with the repurchase of Ineligible Accounts hereunder, Seller and Purchaser shall prepare, execute and exchange appropriate bills of sale.  All communications in connection with a repurchase of an Ineligible Account involving Confidential information of a Cardholder shall be consistent with the standards set forth in Section 14(f) hereof.

(f)     Purchaser shall provide at Seller's request an encrypted Excel spreadsheet reconciliation sale file using PC Guardian Secure Export file software or encrypted software as otherwise approved by Seller.  The Excel spreadsheet shall include a list of Accounts, Seller's 16-digit Account number for each Account, Cardholder first and last name, and social security number. Such list will exclude Ineligible Accounts repurchased by Seller.

(f)     This Section 14 shall be Purchaser's sole remedy in the event Seller has sold Ineligible Accounts to Purchaser.  Notwithstanding the preceding, this Section shall not limit the Seller's Indemnification rights under Section 8.

(g)     Once an account has been repurchased by Seller, the Purchaser will remove all credit bureau reporting from the Cardholder's credit report.

**15.     Seller's Recall**

(a)     If, at anytime following the Closing Date, Seller determines that an Account is a Recallable Account, Seller shall have the right to repurchase such Account and Purchaser hereby agrees to return to the Seller the Recallable Account and any payments, information and correspondence relating to such Recallable Account within thirty (30) days of notice by Seller.

(b)     If Seller recalls an Account determined to be a Recallable Account, Seller shall repurchase such Recallable Account as follows: (i) in the event that Seller elects to repurchase a Recallable Account, Seller shall remit to Purchaser an amount equal to the original Purchase Price within sixty (60) Business Days of the date Seller receives the payments and information required pursuant to subparagraph (a) above.

(c)     In connection with the repurchase of a Recallable Account hereunder, Purchaser shall execute a bill of sale assigning all right, title and interest to such Recallable Accounts back to Seller.

16.     **Payments**

All payments received on purchased Charged-off Accounts by Seller on or after the File Creation Date shall be remitted to Purchaser within sixty (60) days of receipt by Seller. All payments received more than ninety (90) days after the Closing Date shall be remitted to Purchaser within sixty (60) days of Seller's receipt, with the Seller retaining a ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ of such payment as a service fee.

17.     **Provision of Account Information**

Purchaser agrees to provide Seller from time to time with information (including but not limited to, information needed by Seller to reconcile Seller's accounting records with respect to such Accounts or packages of Accounts, or information on performance, liquidation or resale data) with respect to particular Charged-off Accounts or particular packages of Charged-off Accounts sold to Purchaser hereunder; provided such information is reasonably available to Purchaser and such request from Seller is made within three years from the Closing Date.

18.     **Insurance**

Purchaser shall, during the term of this Agreement, maintain at its sole expense general liability insurance with a financially sound and reputable insurer in an amount of at least ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ per occurrence. Purchaser, upon request, shall provide a copy of its certificate of insurance to Seller by delivering such copy to Chase

Bank USA, N.A., 301 North Walnut Street, Wilmington DE 19801 Attn: Thomas Henry Director, Recovery Management and Strategy.

19.   **Severability**

If any term or condition of this Agreement should be held invalid by a court or tribunal of competent jurisdiction in any respect, such invalidity shall not affect the validity of any other term or condition hereof. If any term or condition of this Agreement shall be held unreasonable as to time, scope or otherwise by such a court or tribunal, it shall be construed by limiting or reducing it to a minimum extent so as to be enforceable under then applicable law. The parties acknowledge that they would have executed this Agreement with any such invalid term or condition excluded or with any such unreasonable term or condition so limited or reduced. The parties acknowledge that each has been represented by counsel in its review and negotiation of this Agreement and that no presumption or other means of construction shall exist against either party drafting this Agreement.

20.   **Survival**

The provisions of Section 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 19, 20, 23, 25, 26, 27, 28, and 29 shall survive the termination or cancellation of this Agreement, but such survival shall be limited when expressly provided for herein.

21.   **Cancellation/Termination**

(a)   Seller may cancel this Agreement upon five (5) days prior written notice to Purchaser if (i) Purchaser fails or refuses to purchase any Charged-off Accounts offered for sale hereunder to Purchaser by Seller, or (ii) Purchaser becomes insolvent, has instituted a bankruptcy proceeding seeking relief under any bankruptcy law, has an involuntary petition for bankruptcy filed against it and fails to have such petition dismissed within thirty (30) days of the filing date, or makes a general assignment for the benefit of creditors, or (iii) Purchaser is dissolved or passes a resolution for its winding up, other than pursuant to a merger, consolidation or transfer of substantially all of its assets, or (iv) Purchaser becomes the subject of any investigation by a state or federal agency regarding its debt collection practices, or (v) Purchaser breaches any other term or condition herein and fails to cure such breach with five (5) days of receipt of Chase's notice of such breach.

(b)   Purchaser may terminate this Agreement upon five (5) days written notice to Seller in the event that Seller fails or refuses to offer for sale the Unpaid Balances as required by Section 2(b) hereof. Purchaser shall not be entitled to damages or any other remedy at law or in equity due to Seller's failure or refusal to offer said Unpaid Balances for sale.

22.   **Contract Executed in Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, including facsimile transmissions thereof, but all of which together shall constitute one and the same instrument.

23.   **No Third Party Beneficiaries**

This Agreement is for the sole and exclusive benefit of the parties hereto; nothing in this Agreement shall be construed to grant to any person other than the parties hereto, and their successors and permitted assigns, any right, remedy or claim under or in respect of this Agreement or any provision hereof.

24.   **Brokers**

Neither party hereto has had or is having any dealings with, or has received any services from any finder, broker, agent or other similar party, who is or will be entitled to a commission, fee or other payment of any nature in connection with this Agreement or any transaction contemplated hereby.

25.   **Independent Contractors**

Nothing in this Agreement shall be deemed to create a partnership or joint venture between the parties. Except as expressly set forth herein, no party shall have any authority to bind or commit the other party.  In the performance of its duties or obligations under this Agreement or any other contract, commitment, undertaking or agreement made pursuant to this Agreement, each party hereto shall not be deemed to be, or permit itself to be, understood as an agent of the other party hereto and shall at all times take whatever measures are necessary to ensure that its status shall be that of an independent contractor operating a separate entity.

26.   **Purchaser's Duty to Keep Information Confidential**

From and after the execution of this Agreement, Purchaser shall keep confidential, and shall cause its officers, directors, employees and agents to keep confidential the terms of this Agreement and all information related to the Charged-Off Accounts sold hereunder (other than as may be necessary to disclose in order to collect on those Charged-Off Accounts or to report Charged-Off Account experience to credit bureaus) and, any and all information obtained from Seller concerning the assets, properties, and business of Seller, and shall not use such Confidential Information for any purpose other than those contemplated by this Agreement, provided, however, the Purchaser shall not be subject to the obligations set forth in the proceeding clause with respect to any such information provided to it by Seller which either (i) was in Purchaser's possession at the time of Seller's disclosure, (ii) is lawfully obtained by Purchaser from a third party, or (iii) is or becomes a matter of public knowledge, (iv) is required to be disclosed to any governmental authority, court or regulatory agency.  Purchaser agrees that Seller would suffer irreparable harm and that damages caused by a breach of this Section 26 would be impossible to calculate and would, therefore, be an inadequate remedy.  Accordingly, the

Purchaser agrees that Seller shall be entitled to temporary and permanent injunctive relief against the Purchaser and/or its agents for any threatened or actual breach hereof. In the event Seller initiates any action to enforce the obligation of the Purchaser or its agents hereunder, the Purchaser agrees to reimburse Seller for all costs and expenses, including reasonable attorney's fees, incurred by Seller in this regard. Nothing in this Agreement shall be construed to limit Purchaser's obligation under any provisions of any confidentiality agreement entered into between Purchaser and Seller.

27.   **Public Announcement**

Neither Purchaser nor Seller shall make any public announcement of this Agreement or provide any information concerning this Agreement or the subject matter hereof to any representative of the news media or any other person not a party to this transaction without the prior approval of the other party. The parties herein will not respond to any inquiry from public, governmental or administrative authorities concerning this Agreement without prior consultation and coordination with each other.

28.   **Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of Delaware, without regard to any conflict of law principles. Purchaser consents and submits to the jurisdiction of the state and federal courts of New York, County of New York in connection with any controversy arising out of and related to this Agreement. Both parties also agree to irrevocably waive all rights to trial by jury in any action proceeding or counterclaim arising out of or relating to this Agreement or any amendment hereto. The prevailing party in any such litigation shall be entitled to reimbursement for its reasonable attorney's fees and the cost of expenses of litigation.

29.   **LIMITATION OF LIABILITY**

EXCEPT FOR EACH PARTY'S OBLIGATIONS UNDER SECTION 8 (Indemnification) AND PURCHASER'S OBLIGATIONS WITH RESPECT TO SELLER'S CONFIDENTIAL INFORMATION, IN NO EVENT SHALL EITHER PARTY HERETO, ITS AFFILIATES, OR THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES OR THIRD PARTY PROVIDERS BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, OR FOR ANY DAMAGES FOR LOST DATA, BUSINESS INTERRUPTION, LOST PROFITS, LOST REVENUE OR LOST BUSINESS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES COULD HAVE BEEN FORESEEN OR PREVENTED BY EITHER PARTY HERETO OR WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

IN WITNESS WHEREOF, the parties to this Agreement have caused it to be executed by their duly authorized officers as of the day and year first written above.

17

**CHASE BANK USA, N.A.**

By: _Keith Schuck_

Name: __**KEITH SCHUCK**__
          **PRESIDENT**

Title: _____

**SHERMAN ORIGINATOR III LLC**

By: _____

Name: __Jon C. Mazzoli__

Title __Director__

## EXHIBIT A

BILL OF SALE

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated Month Day, Year between Seller and ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date of Month Day, Year all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1 attached hereto and made part hereof for all purposes.

Number of Accounts
Total Unpaid Balances
Premium
Due Seller

Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller on (the "Closing Date") Month Day, Year by 200 p.m. Seller's time, as follows:

**Chase Bank USA, N.A.**
**ABA** ▮▮▮▮▮▮▮
**Beneficiary Name:  Chase Bank USA, N.A.**
**Beneficiary Account:** ▮▮▮▮▮▮▮

This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

**Chase Bank USA, N.A.**

By: _____

Date: Month Day Year

Title: Vice President

**Purchaser Name**

By: _____

Date: Month Day Year

Title _____

## <u>EXHIBIT B</u>

## INFORMATION IN FINANCING STATEMENT

The following information will be included in any UCC financing statements filed pursuant to the Uniform Commercial Code.

1.        The Seller/Debtor:

          Chase Bank USA, National Association
          201 North Walnut Street
          Wilmington, Delaware 19801
          Attention:

2.        The Purchaser/Secured Party:

          Sherman Originator III LLC
          c/o Sherman Capital Markets, LLC
          200 Meeting Street, Suite 206
          Charleston, SC 29491

3.        Property Sold: Credit card Accounts and revolving lines of credit Accounts.
          A description of the Accounts can be examined by interested parties, at no
          cost to them, at Purchaser's office.

**EXHIBIT C**

# CLOSING STATEMENT

AGREEMENT DATE: _____

SELLER: CHASE BANK USA, N. A.

PURCHASER: _____

FILE NUMBER: _____

NUMBER OF ACCOUNTS: _____

TOTAL UNPAID BALANCE: _____
PURCHASE PRICE
PERCENTAGE: _____

PURCHASE PRICE: _____

FILE CREATION DATE: _____

CLOSING DATE: _____

WIRING INSTRUCTIONS

**Chase Bank USA, N.A.**
**ABA** ▮▮▮▮▮▮▮
**Beneficiary Name:  Chase Bank USA, N.A.**
**Beneficiary Account:** ▮▮▮▮▮▮▮

21

# EXHIBIT D

## FILE CONVERSION CHECKLIST

Required Fields:

*     Seller's Account Number
*     Debtor and Co-Debtor Name/Authorized User
*     Social Security Number (Debtor)
        Social Security Number (Co-Debtor)
*     Address
        Phone (home and work)
        Last Payment Date
        Amount of Last Payment
*     Unpaid Balance
*     Charge Off Date
        Contract Date
        First Date of Delinquency

*     The items marked with an asterisk will be provided on the anticipated File Creation Date; the other items will be provided when and if available.

## EXHIBIT E

### REQUIRED DOCUMENTATION FOR REIMBURSEMENT OF INELIGIBLE ACCOUNTS

### BANKRUPTCY:

- Chapter <u>and</u>
- Date filed <u>and</u>
- Docket No or Case Number <u>and</u>
- Joint or Individual Filing (to the extent available) <u>and</u>
- Attorney Name and Telephone Number (to the extent available) <u>and</u>
- Filing county and state (and Court District Name to the extent available)

Bankruptcy filing date must be on, prior to the File Creation Date.  If the bankruptcy is an individual filing and the Account is a joint Account, the Account will not be repurchased unless the Primary Cardholder has filed.

### DECEASED

- Copy of death certificate <u>or</u>
- Letter from attorney indicating date of death <u>or</u>
- Verification from Department of Social Security indicating date of death <u>or</u>
- Copy of credit bureau indicating date of death <u>or</u>
- Copy of obituary or

- Date of death must be on or prior to the File Creation Date or the Account will not be repurchased. If a joint Account, the Primary Cardholder must have died on or prior to the File Creation Date.

### FRAUD OR DISPUTE CLAIMS

- Letter from debtor or debtor's attorney alleging fraud received by Chase on or prior to the File Creation Date, which allegation has not been resolved to the Seller's satisfaction by the File Creation Date.

### PREVIOUSLY SETTLED

- Letter from either the Seller or Collection Agency stating the Account was settled.

23



FIRST AMENDMENT

This First Amendment dated as of August 31, 2010 to the Credit Card Account Purchase Agreement Between Chase Bank USA, National Association, ("Seller") and Sherman Originator III, LLC ("Purchaser"), dated as of July 26, 2010 ("the Agreement").

**WHEREAS,** Seller and Purchaser have entered into the Agreement; and

**WHEREAS,** Seller and Purchaser would now like to amend the Agreement;

**NOW THEREFORE,** Seller and Purchaser hereby agree as follows:

1. The parties entered into two agreements on July 26, 2010. For clarification, this Amendment is intended to apply to the Agreement which included a Purchase Price ▉▉▉▉▉▉ of ▉▉▉▉

2. The definition of "Term" included in Article 1, titled "Definitions," of the Agreement is deleted and replaced with the following language:

   "Term" means the period of time commencing from the date of this Agreement through September 30, 2010. The volume to be purchase under the Term of this Agreement shall be approximately ▉▉▉▉▉▉▉▉▉

3. All capitalized terms shall, unless otherwise defined herein, have the same meaning ascribed to them in the Agreement.

4. Except as specifically provided herein, all other terms and conditions of the Agreement shall remain in full force and effect.

This First Amendment shall be effective as of the date first written above upon execution by the respective authorized officers of Seller and Purchaser.

**IN WITNESS WHEREOF,** the parties to this First Amendment have caused it to be executed by their duly authorized officers as of August 31, 2010.

CHASE BANK USA, N.A.

By: _____

Name: _____ KEITH SCHUCK _____
             PRESIDENT

Title: _____

SHERMAN ORIGINATOR III, LLC

By: _____

Name: _____ Jon G Mazzoli _____

Title: _____ DIRECTOR _____