UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ANDREW COX, et al., individually and on behalf of others similarly situated,

Plaintiffs,

v.

SHERMAN CAPITAL LLC, et al.

Defendants.

Civil Action No.: 1:12-cv-1654-TWP-MJD
CLASS ACTION
JURY TRIAL DEMANDED

# REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

Defendants oppose class certification because they contend that Plaintiffs cannot meet any of the Trial Rule 23 requirements for Class Certification. However, in their argument about each of the elements required for class certification, Defendants' common theme is that Plaintiffs have not put forth enough evidence to prove their claims. In essence, Defendants' attacks on the elements of class certification are just veiled representations that Plaintiffs may lose this case on the merits. In fact, Defendants do not even begin addressing the elements for class certification until page twelve of their brief – instead they spend the first three pages of their brief addressing why they believe Plaintiffs' theory of securitization will fail and the next seven pages addressing why the individual Plaintiffs' claims may fail.[1]

[1] Defendants have repeatedly tried to force the Court to address the merits at an inappropriate time. For example, in opposition to Plaintiffs' Motion to Amend the Complaint, Defendants repeatedly tried to argue why the securitization argument did not work. The Court has rejected this attempt at least once. Order on Motion for Leave to Amend, [Dkt. 297], p. 4 ("although

The law does not require Plaintiffs to prove their claims on the merits at the class certification stage. In fact, the motion to certify must not be decided based upon asserted defenses (none of which have been raised by motion), but *only* upon the factors set forth in Trial Rule 23. All of the merits-based arguments in opposition to the motion for class certification must be rejected.

To the extent that Defendants argue that this is a complex case in which proof of debt ownership and where the debt originates from will be highly individualized, Defendants have both fundamentally mischaracterized the lawsuit and have misunderstood the purpose of class litigation. The gravamen of Plaintiffs' complaint is that Defendants' common course of conduct is in their attempts to mislead Indiana consumers through a consistent and repeated pattern of collection activities for accounts Defendants claim they own. Defendants' conduct in allegedly obtaining these debts and systematically pulling credit reports, performing manual and automated outbound dialer calling activity, sending dunning letters, and filing lawsuits is uniform with respect to the citizens of Indiana.

## II.
## ARGUMENT

### A. **Defendants' Arguments Against Class Certification Are Improper Attacks on the Merits of the Case**

During class certification, plaintiffs are not required to show that they will succeed on the merits. *Schlelcher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). "The question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

---

Rule 56(b) permits Defendants to file a motion for summary judgment at any time until thirty days after the close of discovery, Defendants have filed no such motion. Instead, and in violation of the Local Rules, Defendants have seemingly asked for summary judgment within an opposition brief to a motion to amend…" [Dkt. 297] Once again, in opposition to class certification, Defendants are attempting to argue the merits of their case.

whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), citing *Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir. 1971).

Defendants are correct that the Court is not required to blindly accept all allegations in the complaint as true. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). However, Defendants are incorrect in their insistence that Plaintiffs must prove that they will prevail on the merits. Rather, the inquiry demanded by *Szabo* is only those inquiries needed to determine whether the elements of Trial Rule 23 are met. As *Szabo* found, the matters pertinent to these findings include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* In *Szabo* the court was troubled by "nagging issues of choice of law, commonality, and manageability" in a nationwide class action that involved the conduct of different dealers in different parts of the country. *Id.* at 677-78. Furthermore, each claimant in *Szabo* had a substantial claim that would likely be pursued individually. *Id.* at 678. Finally, the *Szabo* court even hinted that class treatment might be appropriate for a single state class action – although it questioned if that would then mitigate the numerosity of the class. *Id.*

In summary, Courts are directed by Trial Rule 23 to look beyond allegations to determine whether it is practical to manage the suit as a class action, bearing in mind that "a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical

manner." *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 166-167(S.D. Ind. 2009)(*citing Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 at 155).

Much of Defendants' arguments are simply an attempt to argue the merits of the case or to raise its affirmative defenses – both of which go to the merits of the case and are therefore inappropriate at the class certification stage. *See* Defendants' Brief, p.19 (asserting individual issues include different sellers, some of which weren't banks); p. 22 (alleging that Defendants have a good faith belief defense that may differ for different accounts"); and p. 23 (bankruptcy may act as *res judicata*).

With respect to securitization – Defendants spend an inordinate time in their brief discussing why Plaintiffs cannot succeed on a securitization claim, citing to the holding in *Cox v. CA Holding, Inc. et. al.*, No. 13-CV-1754, 2015 U.S.Dist. LEXIS 17820 (S.D. Ind. Feb. 13, 2015). Defendants misconstrue and overstate the holding in *CA Holding*. The *CA Holding* court found the securitization theory to be speculative as it pertains to the issue of "whether [Plaintiff's] account had been securitized prior to the [ ] Purchase Agreement,"[2] and therefore whether the arbitration clause could be enforced. That court did not rule on whether the defendant had legal ownership of the debt after the debt had been charged off by the original creditor and sold as a receivable to the debt buyer. The latter issue is what is before this Court and is at the core of Plaintiffs' claims.

The securitization at issue here isn't just whether the originating banks securitized the accounts before LVNV acquired the accounts[3] – but Plaintiffs have also alleged that LVNV

---

[2] 2015 U.S. Dist. LEXIS 17820, *38 (S.D. Ind. Feb. 13, 2015).

[3] Defendants claim that most banks do not securitize their credit card receivables, citing a law review article. Defendants brief, p. 19. This is in direct conflict with FDIC Credit Card Securitization Manual which states "[w]hile the process of securitizing loans has been around for over 30 years, the securitization of credit card receivables first began in 1987. Since then, the

securitizes accounts *itself* - i.e. Defendants have sold the debt to investors yet continues to allege that they own the debt in its collection accounts. For example, attached to Plaintiffs' Amended Complaint was an Investors' Day Presentation in which Sherman Financial Group lists its subsidiary's primary business as "Purchase, Service, Securitize." Exhibit E to Amended Complaint [Dkt. 303-5, Page ID#4285]. Furthermore, Moody's Investors Service, which rates debt securities, lists LVNV Funding, LLC and has based its ratings on a determination that the rating of LVNV is as "ABS-consumer loans." Exhibit D to Amended Complaint [Dkt. 303-5, Page ID#4281-82]. "ABS" are "asset-backed securities" or bonds backed by credit card or consumer loans receivables.[4] Moody's wouldn't rate LVNV Funding, LLC, nor would Moody's refer to LVNV as an "ABS-consumer loans" unless LVNV Funding, LLC engaged in securitization.[5] Whether Defendants securitize the assets they allegedly purchase isn't dependent upon the originating banks, or even when consumers' accounts were allegedly purchased, but is an issue that is solely a question of Defendants' conduct.

---

process and structure have evolved significantly, and credit card securitizations currently represent the **primary** funding vehicle for unsecured revolving consumer credit." FDIC Credit Card Securitization Manual, Chapter II – The Securitization Transaction (Overview), Introduction. https://www.fdic.gov/regulations/examinations/credit_card_securitization/ch2.html#sec1, last visited June 11, 2015.

[4] FDIC Credit Card Securitization Manual, Chapter II – The Securitization Transaction (Overview), Introduction. https://www.fdic.gov/regulations/examinations/credit_card_securitization/ch2.html#sec1, last visited June 11, 2015.

[5] This evidence is in direct contradiction of Defendants' statement that "Plaintiffs have come forth with no evidence that Defendants engage in such 'securitizations'" and is in conflict with the conclusory Emmerick Declaration attached to Defendants' brief. In any event, Plaintiffs aren't required to affirmatively prove their case at this juncture – but Plaintiffs have presented evidence that Defendants securitize what they purchase.

Regardless of whether Plaintiffs can ultimately prevail on issues related to securitization (which they are not required to do at this time), every one of Defendants' arguments goes to the merits of Plaintiffs' claims or forecast the outcome of various matters. Where Defendants claim that "individual issues of proof" predominate, they're really claiming that Plaintiffs cannot prevail on the merits or that Defendants will raise affirmative defenses to prevail in the litigation. Instead of being required to prove the case now, "the task for plaintiffs at class certification is to demonstrate that the element of [their claim] is ***capable*** of proof at trial through evidence that is common to the class rather than individual to its members." *In re Hydrogen Peroxide Antitrust Litig* [6] (emphasis added). Defendants' arguments regarding the merits of the case are not legally sufficient to warrant denial of class certification.

**B. <u>Defendants' "Individualized Proof" Arguments Do Not Defeat Class Certification</u>**

As Defendants have noted, "the adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)." Defendants' Brief, p. 30 (*citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 no. 20 (1997). For each of these elements Defendants claim both that Plaintiffs will never prevail on the securitization theory and that individual issues of proof will predominate over any common issues. However, Defendants ignore that class members may have differences of fact in their claims without defeating class certification.

**1. All Class Members' Claims Do Not Need To Be Identical**

Courts have recognized that "[t]ypical does not mean identical, and the typicality requirement is to be liberally construed." *Roe v. Bridgestone Corp.*, 257 F.R.D. 159, 167 (S.D. Ind. 2009)(*citing Gaspar v. Linvatec Corp.*167 F.R.D. 51, 57 (N.D. Ill. 1996). Likewise, the

[6] 552 F.3d 305, 311-12 (3d Cir. 2008)

commonality requirement allows class members to have differences between claims as long as there are "questions of law or fact common to the class." *Keele v. Wexler*, 149 F.3d. 589, 594 (7th Cir. 1998).

Federal courts have not applied the rigid construction upon class certification that Defendants urge here - requiring that all claims be identical – rather courts have determined that the elements of class certification can be met even with individual questions. *See e.g. Hudson v. City of Chi.*, 242 F.R.D. 496, 502-03 (N.D. Ill. 2007) (typicality satisfied even though circumstances for each plaintiff were different where plaintiffs' arrests/tickets arose from the same course of conduct and were based on the same legal theories as the claims of the putative class members); *Vodak v. City of Chicago*, 2006 U.S. Dist. LEXIS 30052 at *19 (N.D. Ill. 2006) ( "certain factual differences may be excused as long as the named representative's claims are based on the same course of conduct as the class as a whole and the same legal theory"); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 ("[W]e have not previously interpreted Rule 23(a)(3) to require all class members suffer the same injury as the named class representative."); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members; similarity of legal theory may control even in the face of differences of fact).

Likewise, commonality can be satisfied even if there are individual issues affecting each class member. *See Rogers v. Khatra Petro, Inc.*, 2010 U.S. Dist. LEXIS 103599, *12 (N.D. Ind. Sept. 29, 2010) (A common nucleus of operative fact is usually found where the defendant has engaged in some standardized conduct toward the proposed class members.) *See also In re FedEx Ground Package Sys., Empl. Practices Litig.*, 273 F.R.D. 424, 435 (N.D. Ind. 2008):

> That there is some factual variation among the class grievances will not defeat a class action.

*Id. Citing Rosario*, 963 F.2d at 1017. As *In Re FedEx* points out – claims arising from a defendant's "standardized conduct" is enough for class certification. In fact, courts don't require that all of the questions of law or fact be common – but that there is at least one such common question of law or fact. *Gates v. City of Chicago*, 2011 U.S. Dist. LEXIS 50874, *20-21 (N.D. Ill. May 12, 2011) ("At a minimum, the Rule requires a showing of at least one such common question of law or fact...some factual variations among class members will be considered acceptable…Indeed, factual variations among class members' experiences will not defeat class certification so long as there is a common nucleus of operative fact." (citations omitted)).

Here, to defeat typicality, commonality, and adequacy of representation, Defendants erroneously focus primarily on whether common evidence can show the securitization of debt on the original creditor's end (and ignoring the allegations and evidence that Plaintiffs have produced regarding Defendants' own securitization activities) and focus on myriad sources of class members' debt.[7] But the elements of class certification are not determined by speculation concerning whether one particular piece of evidence will require individual proof even before complete discovery has been undertaken. Instead, the common[8] questions that require

---

[7] While Defendants focus on the fact that the sale of the debts occurred over fifteen years and thus, they claim, require individual proof, Defendants ignore the fact that many of the original creditors are limited and securitize their debt through a master trust where receivables are cycled through. https://www.fdic.gov/regulations/examinations/credit_card_securitization/ch2.html. "Rather than seeting up a new trust for each securitization issued, most credit card companies use a single master trust for multiple issues." *Id.* Thus, notwithstanding the different time frames, the master trusts at issue here will be much more limited.

[8] "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement," Rosario 963 F.2d at 1018.

certification are focused on Defendants' actions. Here, the standardized conduct[9] emanates from the lack of LVNV's debt ownership and their uniform misrepresentation thereof and whether Defendants acted properly in collection activities.

### 2. Individual Defenses Do Not Preclude Class Certification

Defendants also claim that some defenses (good faith belief and bankruptcy[10]) may apply to some class members, but not all, and that the existence of these defenses therefore defeats class certification. Once again, Defendants ignore that not all claims must be identical; likewise, all class members need not be subject to the same defenses. Defendants cite no case law to support their argument that it must be easy for them to establish their defense class-wide. In fact, the prevailing case law does not support denying class certification due to individual or common defenses:

> First, the fact that the defendants may be able to raise different defenses against the claims of different class members does not necessarily defeat typicality.

*Nelson v. IPALCO Enters.*, 2003 U.S. Dist. LEXIS 26392, *17 (S.D. Ind. Sept. 30, 2003); *see also Korn v. Franchard Corp*. 456 F.2d 1206, 1210 (2d Cir. 1972) (reversing district court's denial of class certification; validity of release could be determined on broad basis and at most might call for creation of sub-class). Thus, the fact that Defendants have some defenses does not defeat class certification.

---

[9] A class may be certified where "defendants have engaged in standardized conduct towards members of the proposed class." Keele, 149 F.3d at 494.

[10] Again, Defendants are seeking to try the merits of their defenses at this early proceeding. If Defendants believed that any named Plaintiffs' claim was precluded by bankruptcy, Defendants could have raised this at the time that Plaintiff sought to amend the complaint. In fact, Defendants objected to the addition of two plaintiffs, Mr. Cottey and Ms. Edison, whose bankruptcy cases were still open and the Court denied the right to amend the Complaint to add these Plaintiffs. [Dkt. 297, p. 8].

### 3. Reliance for the Fraud and Rico Cases Does Not Prevent Class Certification

Defendants claim that class certification is not appropriate when there are issues regarding reliance or proximate cause because individual issues will predominate over common issues." Defendants ignore that Plaintiffs have alleged a uniform misrepresentation or "a common practice," and individual reliance need not necessarily be shown to certify the class as discussed in *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639 (2008) ("We hold that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations."). The reasoning in *Bridge* has been adopted by the 7th Circuit Court of Appeals in *United States v. Seidling*, where it found "that a scheme to defraud existed even when the scheme was unsuccessful and 'no one relied on any misrepresentation.'" 737 F.3d 1155, 1160 (7th Cir. 2013). Instead of addressing the myriad of cases Plaintiffs cited in their opening brief where courts have determined that class actions are a superior method to adjudicate RICO claims, Defendants cite to a 2nd Circuit case, *UFCW Local 1776 v. Eli Lilly & Co*., 620 F.3d 121, 133-36 (2d Cir. 2010), which they describe as "reversing class certification of RICO claims because proof of proximate cause would require individualized inquiries into connection between purported misrepresentations by defendant and putative class members' injuries." Defendants' Brief, p. 26. In that case, however, the court is actually acknowledging that "the [Supreme] Court rejected reliance as an element of the RICO fraud claim, either to show but-for causation or to establish a direct relationship between the defendant's conduct and the plaintiff's injury sufficient to demonstrate proximate causation." *Id.* at 132. The court in *UFCW* only

required reliance because Plaintiffs alleged an injury that <u>necessarily</u> required a showing of third-party reliance as part of their chain of causation.[11] Such is not the case here.

Furthermore, in arguing that Plaintiffs cannot prevail on the RICO and fraud claims, Defendants argue that "[p]laintiffs do not allege and have never identified any uniform communications between Defendants and the class members." Defendants' brief, p. 26. Plaintiffs do allege uniform[12] communications – Plaintiffs allege that Defendants consistently communicate regarding the status of the ownership of the debt.

While Defendants spend the majority of the brief focusing on the individual issues[13] they claim pertains to each putative class member – claiming that this destroys commonality, typicality, and adequacy of representation – they ignore the crux of Plaintiffs' argument which is that these claims arise from a common element of fact and law revolving around whether Defendants own the debts at issue and whether Defendants perpetrated a scheme to defraud Indiana consumers. The Defendants' actions are thus subject to class treatment. *See Rosario* 963 F.2d at 1018.

---

[11] "While reliance may not be an element of the cause of action, there is no question that in this case the plaintiffs allege, and must prove, third-party reliance as part of their chain of causation. Plaintiffs allege an injury that is caused by physicians relying on Lilly's misrepresentations and prescribing Zyprexa accordingly." Id. at 133.

[12] The advisory committee's notes to Rule 23(b)(3) also rebuke Defendants' argument: "a fraud perpetrated on numerous persons by the use of ***similar*** misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of damages suffered by the individuals within the class." Fed. R. Civ. P. Rule 23(b)(3) advisory committee's notes, emphasis added.

[13] Even where individual issues amongst class members arise, "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damage issues." *In re FedEx Ground Package Sys. Emp. Practices Litig.*, 273 F.R.D. at 437.

### C. Certification under Trial Rule 23(b)(3)

Certification of a class pursuant to Trial Rule 23(b)(3) is proper (1) where questions of law and fact common to the class predominate over questions affecting only individuals, and (2) a class action is superior to other means of resolving the dispute. *Mejdreck v. Lockformer Co.,* 2002 U.S. Dist. LEXIS 14785 at *17 (N.D. Ill. 2002). As previously discussed, the commonality requirement of Rule 23(a)(2) overlaps considerably with Rule 23(b), but "[I]ssues are considered to predominate when there is a 'common nucleus of operate facts.'" *Id.* at 18. As discussed above, the fact that there are some factual differences is not enough to defeat certification. In fact, in consumer protection cases like this, class actions are superior:

> Class actions have been found superior when potential damages might be too insignificant to provide class members with incentive to pursue a claim individually, and where potential plaintiffs may not be aware of their rights or be able to hire competent counsel to protect these rights.

In re FedEx Ground Package Sys., Empl. Practices Litig., 273 F.R.D. 424, 437 (*citing Amchem Prods. v. Windsor,* 521 U.S. at 617).

### D. Plaintiffs' Class Definitions Are Adequate

Defendants argue that Plaintiffs' class definitions are flawed because they are "fail-safe" classes which are "defined so that whether a person qualifies as a member depends on whether the person has a valid claim," and "such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir. 2012).

Defendants attempt to argue the merits on the one hand – claiming that they have legal ownership of the debt (because they purchased the "account"), that they have a "good faith belief" defense, and that some plaintiffs did not rely on the misrepresentation and attempt to

show why they would prevail, but then argue that these definitions are "fail-safe" definitions because the definitions incorporate these very "facts" that Defendants allege should be subject to individual proof. These definitions are not fail-safe classes. Rather, they limit the class definition to those who have been harmed by Defendants' actions.

However, even if the class definitions can be construed as a fail-safe class definition, that is not a basis for denying class certification because "[d]efining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science. *Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis*." *Messner* (emphasis added) 669 F.3d at 825. "The court need not merely accept or reject plaintiffs' proposed class definition without considering modifications of that definition." *Martin v. American Med. Sys.*, 1995 U.S. Dist. LEXIS 22169, *21 (S.D. Ind. Oct. 25, 1995).

Both the Plaintiffs and the Court are afforded the flexibility to redefine the class as more information comes forth through discovery or the action moves forward. *See Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73 (D. Me. 2010) (court revised class definition to correct problem); *Lewis v. First American Title Ins. Co.*, 265 F.R.D. 536, 551 (D. Idaho 2010) (same); *Carson P. ex rel. Foreman v. Heineman*,240 F.R.D. 456, 492 (D. Neb. 2007) (same); *Flanagan v. Allstate Ins. Co.*, 228 F.R.D. 617, 618-19 (N.D. Ill. 2005) (same); Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judge,* Third Edition, Federal Judicial Center 2010 "Feel free to suggest broader or narrower definitions that would make a proposed class more manageable.").

### E. **Class Counsel are Adequate**

Defendants allege that Plaintiffs' counsel have not shown adequacy because they "have failed to submit any evidence with respect to the resources that counsel will commit to representing the class" (Defendants' Brief, p. 33) and because they've failed to conduct third-party discovery. (Defendants' Brief, p. 34).

Defendants fail to cite to any case law to support their argument that Plaintiffs' counsel must provide specific evidence of the dollar amount of resources that will be committed to the litigation. Moreover, Defendants do not challenge the evidence that Plaintiffs presented regarding their involvement in the dozens of class actions in which class counsel were approved. Given this previous involvement in successful class action lawsuits, class counsel are only aware of the resources that must be committed to such actions but is also capable of putting forth such resources.

The comments to the 2003 Amendments to the rule state how this section is to guide the courts:

> In evaluating prospective class counsel, the court should weigh all pertinent factors. No single factor should necessarily be determinative in a given case. For example, the resources counsel will commit to the case must be appropriate to its needs, but the court should be careful not to limit consideration to lawyers with the greatest resources.

USCS Fed Rules Civ Proc R 23, comments to 2003 Amendments; *see also Krzesniak v. Cendant Corp.*, 2007 U.S. Dist. LEXIS 47518, *34 (N.D. Cal. June 20, 2007) ("Counsel have also exhibited knowledge of the applicable law and appear prepared to commit the resources necessary to represent the class."). The fact that class counsel did not specifically provide evidence of a dollar amount it was willing to commit to the litigation is not fatal to the Court's determination of adequacy of counsel – in fact – the rule does not require such a finding. As this

Court can attest to, Plaintiffs' counsel have expended considerable time, expense, and resources to every facet of this contentious litigation indicating that counsel is willing to invest the resources necessary to adequately represent the class.

Defendants further argue that Plaintiffs have failed to serve third-party discovery and thus must not be adequate. Again, Defendants make this argument before the conclusion of discovery. Such argument is also ironic given the years-long discovery disputes that Plaintiffs' counsel have persevered in forcing Defendants to honor discovery obligations throughout the course of this case. Based upon counsel's previous class-action experience as well as the resources that counsel have invested thus far in the case, this Court should find that counsel is adequate.

## V. CONCLUSION

Questions of common fact predominate over individual questions here. The existence of factual differences between potential class members is not enough to defeat class certification given the common course of conduct of the Defendants. Furthermore, the legal theories of liability will be the same for each class member.

Many of the potential class members are unsophisticated consumers who may be unaware of their legal claims against Defendants. Moreover, the damages sustained by any single class member may not rise to a level making it economically feasible to retain legal counsel and pursue an individual remedy. Here, individual plaintiffs are unlikely and possibly unable to bring their own claims. If this action does not proceed as a class, the claims of these Indiana consumers will simply remain unredressed. Moreover, forcing each class member to litigate claims individually would waste litigation and judicial resources because each member would be presenting the same evidence and legal theories in each case. Proceeding

as a class action therefore is the most appropriate form of adjudication to allow all members of the class to adjudicate common claims in one action. This action therefore should be certified as a class action under Fed. R. Civ. P. 23(B)(3).

The Court should enter an order determining that this action may proceed against Defendants as a class action, pursuant to Fed. R. Civ. P. 23, since the requirements of numerosity, commonality, typicality, and adequacy of representation have been satisfied and since common questions predominate over individual questions and proceeding as a class would be superior to other means of adjudication.

Respectfully submitted

*s/Amy E. Romig*
*Attorneys for Plaintiffs, Andrew Cox, Lucinda Cox, Stephanie Snyder, and Robert Goodall individually and on behalf of others similarly situated*

George M. Plews, Attorney No. 6274-49
Frederick D. Emhardt, Attorney No. 10952-49
Amy E. Romig, Attorney No. 22523-49
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN 46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
femhardt@psrb.com
aromig@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 637-7000
Facsimile: (317) 638-2707
Email: rdc@home-saver.org
boruta17@hotmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of June, 2015, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/ Amy E. Romig*