**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ANDREW COX, LUCINDA COX, | ) |
| STEPHANIE SNYDER, ROBERT GOODALL, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:12-cv-01654-TWP-MJD |
| | ) |
| SHERMAN CAPITAL LLC, | ) |
| SHERMAN FINANCIAL GROUP LLC, | ) |
| LVNV FUNDING LLC, | ) |
| RESURGENT CAPITAL SERVICES, LP, | ) |
| JOHN DOES 1-50, | ) |
| SHERMAN ORIGINATOR LLC, | ) |
| UNKNOWN S CORPORATION, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This matter is before the Court on Plaintiffs' Motion for Class Certification. (Filing No. 395.) Plaintiffs Andrew Cox, Lucinda Cox, and Stephanie Snyder, Individually and on behalf of others similarly situated, and Robert Goodall (collectively, the "Plaintiffs") seek certification pursuant to Federal Rule of Civil Procedure 23(b)(3) of a class seeking damages against Defendant Sherman Capital LLC and four of its subsidiaries and affiliates for alleged violation of the Fair Debt Collection Practice Act ("FDCPA"), the United States Racketeer Influence and Corrupt Organization Act ("RICO"), fraud and constructive fraud, restitution and unjust enrichment. The purported class consists of all Indiana residents who were the subject of collection activity by the Defendants or their agents or who paid monies to Defendants. For the reasons stated below, the Court denies the Plaintiffs' motion for class certification.

# I. BACKGROUND

## A.     The Parties

The named Defendants are "debt collectors" and, according to the Plaintiffs, are alter-egos of one another.  Of particular relevance to the Court's analysis regarding the pending motion are Defendants Sherman Capital LLC ("Sherman"), LVNV Funding LLC ("LVNV"), and Resurgent Capital Services LP ("Resurgent") (collectively, the "Defendants").  Sherman is alleged to be a limited liability company, "primarily engaged in the business of purchasing, and collecting on, data containing information about Indiana consumer accounts".  (Filing No. 303 at 10.)  LVNV is alleged to be the "holding vehicle of data on behalf of unknown investors".  (Filing No. 303 at 14.) Resurgent is a subsidiary of the other Defendants and is alleged to be "the master servicer of the LVNV collateralized debt obligation."  (Filing No. 303 at 13.)  Between November 2008 and November 2013, the Defendants collected over $79,940,415.50 on over 1,174,222 Indiana consumer accounts.  In addition, over the same period, the Defendants collected another $18,890,420.79 through 33,440 lawsuits against Indiana consumers.

The Plaintiffs, Andrew and Lucinda Cox, Stephanie Snyder, and Robert Goodall, are residents of Indiana and alleged "victims" of the Defendants' collection activities in the state.

In June 2010, Andrew Cox and his wife (and co-signor), Lucinda Cox, began to receive collection letters and phone calls from Defendants "and a cadre of other agents" regarding alleged debt that was originally due to Chase Bank.  Mr. Cox made several telephonic and written requests that Defendants prove their ownership of the alleged debt, apart from a Chase billing statement from November 2011, and notified Defendants that they were not licensed or registered in Indiana. Without being provided answers to these questions, Defendants continued to pursue their collection of the Cox's alleged debt.

Defendants also collected on the alleged debt of Stephanie Snyder. Defendants then pursued Ms. Snyder's alleged Sears/Citibank debt, basing their ownership on a "non-notarized, robo-signed affidavit." After Defendants obtained a default judgment against Ms. Snyder, her wages were garnished beginning in September 2012. Ms. Snyder avers that she had no knowledge of Defendants or their suit against her until the Proceeding Supplemental was mailed to her employer on the matter, after the default judgment had been entered against her.

Robert Goodall alleges claims arising out of a credit card account with Chase. Following a personal injury accident, Mr. Goodall was unable to make payments due on his Chase account and others. Mr. Goodall filed for bankruptcy. He alleges the Defendants "falsely" stated to the bankruptcy trustee that it was a creditor, and based on this assertion, the trustee remitted $7,904.41 to LVNV.

Each of the Plaintiffs has in common an unpaid consumer debt that was "written off" by the originating creditor after a period of 180 days of non-payment. Thereafter, each Plaintiff was the subject of collection activities by the Defendants and their agents, which included telephone calls, dunning letters, and lawsuits. In addition, each Plaintiff's purported "indebtedness" was repeatedly reported to the major credit reporting agencies by the Defendants and their agents. Pursuant to these collection activities, the Defendants and their agents repeatedly indicated that each Plaintiff owed a debt to LVNV.

**B.**      **The Disputed Effect of Securitization on the Plaintiffs' Debt Obligations**

Each of the Plaintiffs allege that LVNV did not actually own their debts when the Defendant and their agents engaged in collection activities against them. Indeed, in their motion for class certification, the Plaintiffs identify the following factual and legal issues as "common to all class members' claims" –

Whether Defendants and their agents acquired legal ownership of class members' debt obligations
. . .
Whether Defendants and their agents engaged in collection activity without legal standing.

(Filing No. 395 at 3-4.)

Underlying the argument that LVNV did not own the Plaintiffs' debts is the Plaintiffs' understanding of the effects of "securitization" on the debts. Plaintiffs allege that shortly after a consumer assumes a debt obligation or receivable, the originating bank, through subsidiaries, pools the receivable with others into a financial instrument that can be sold to outside investors, which results in the creation of an asset-backed security. According to the Plaintiffs, the primary results of securitization are:

1) the originating bank is paid in full; 2) *the originating bank surrenders all control and ownership including all rights, title, and interest over the receivables*; 3) the outside investors own the receivables as result of a true sale; 4) evidence of indebtedness is delivered to the Trustee; 5) *the originating bank transforms into the servicer for the asset-backed security*; and 6) *the originating bank cannot get the receivables back without violating numerous agency rules*.

(Filing No. 303 at 24) (emphasis added). Thereafter, if the consumer does not pay the debt obligation or receivable, the originating bank (which now acts as the "servicer" for the asset-backed security) has 180 days to collect upon the receivable. If the originating bank is unsuccessful, the debt or receivable is considered "charged-off". When this occurs, the originating bank (servicer) informs the investor who purchased the receivable, and if the investor had a credit default agreement or similar credit enhancement, the investor is paid in full. According to Plaintiffs, once the investor is paid in full, there is no longer a debt obligation. Instead, the only thing that is left over is "data" of the debt or receivable, therefore, the originating bank can only sell the data and not the actual debt.

4

Despite the Plaintiffs' description of securitization and its purported effect on their debts or receivables, Defendants claim that they, nevertheless, obtained valid title to each of the named Plaintiffs' debts directly from the originating banks.  In addition, Defendants argue that there is competing evidence to suggest that after a securitized receivable is "written off" by the originating bank, the receivable or debt is automatically removed from the securitized trust and is returned to the originating bank rather than becoming merely "data".

**C.**   **Plaintiffs' Legal Theories Regarding the Defendants' Ownership of the Plaintiffs' Debt Obligations**

As a result of securitization, the Plaintiffs contend that LVNV did not own their debts based on three different, but related, arguments.

First, as explained above, Plaintiffs argue that, after their debts were "written-off" by the originating bank, the Defendants could only legally purchase "data" of the debts or receivables. Thus, the Defendants falsely represented that LVNV "owned" the Plaintiffs' debts when it engaged in collection activities against them because it only owned "data" of the Plaintiffs' debts.  (*See* Filing No. 303 at 58, 70; Filing No. 493 at 3.)

Second, Plaintiffs contend that even if LVNV eventually acquired title to their debts, LVNV prematurely began collection activities when it was still only in possession of the "data" and before LVNV had obtained title to the debts. Therefore, Defendants falsely represented that LVNV "owned" the Plaintiffs' debts when it engaged in collection activities against them.  (*See* Filing No. 493 at 2-3.)

Third, Plaintiffs argue that regardless of whether the Defendants acquired "data" or title to their debts, the Defendants securitized whatever they owned (either data or debt) into a new asset-backed security after obtaining it.  Plaintiffs assert that as a result of this second securitization, LVNV became a "servicer" to the new asset-backed security rather than an "owner" of the

Plaintiffs' debts or receivables.   As a result, the Defendants falsely represented that LVNV "owned" the Plaintiffs' debts when LVNV was actually a "servicer" of the new asset-based security. (*See* Filing No. 303 at 70; Filing No. 440 at 4-5.)

## II. <u>LEGAL STANDARD</u>

Class action lawsuits are governed by Federal Rule of Civil Procedure 23.   Pursuant to Rule 23, the named parties of a class of plaintiffs may sue on behalf of all the members of the class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  The court is required to conduct "a rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003); *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982) ("actual, not presumed, conformance with Rule 23(a) . . . remains indispensable").

If the Rule 23(a) requirements are met, the Plaintiffs must also satisfy at least one subsection of Fed. R. Civ. P. 23(b); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).  Fed. R. Civ. P. 23(b)(2) applies if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  Fed. R. Civ. P. 23(b)(3) applies if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The parties seeking class certification bear the burden of proof in establishing each of the requirements under Rule 23. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993); *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 325 (S.D. Ill. 2009). Further, the court has broad discretion to determine whether certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008).

In deciding whether to certify a class, the court is not required to accept the allegations in the complaint as true. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001) ("[c]ertifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys-who may use it in ways injurious to other class members, as well as ways injurious to defendants."). While consideration of class certification is not "a dress rehearsal for trial on the merits," the court "must receive evidence and resolve the disputes before deciding whether to certify the class." *Messner*, 669 F.3d at 811 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003) ("[c]lass certification requires a *rigorous investigation* into the propriety of proceeding as a class") (emphasis added).

Indeed, the court should make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap with the merits of the case. *Szabo*, 249 F.3d at 677 ("similarities of claims and situations must be demonstrated rather than assumed"); *Messner*, 669 F.3d at 811; *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 407 (S.D. Ind. 2001). Therefore, in evaluating class certification, the court must take into consideration the substantive elements of the plaintiff's cause of action, inquire into the proof

necessary for the various elements, and envision the form that trial on the issues would take.  *Cima*

*v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377 (S.D. Ill. 2008).

## III.  DISCUSSION

The Court begins its analysis with Defendants argument that class certification must fail

because Plaintiff's proposed class constitutes an impermissible "fail safe" class.

### A.  "Fail-Safe" Class Definitions

The Plaintiffs seek certification of three sub-classes.  The first, a FDCPA subclass, is

proposed as follows,

> All Indiana citizens who were the subject of collection activity or activities *which violate the FDCPA* by the Defendants or Defendants' agents in an attempt to collect a debt incurred for personal, family or household purposes which were served with process or contacted in any matter by Defendants or Defendants' agents during the period beginning November 9, 2011 (one year prior to the filing of the original complaint in this action) through trial of this case.

(Filing No. 396 at 7-8) (emphasis added).

The second, a Racketeer Influenced and Corrupt Organizations Act ("RICO") subclass, is

proposed as follows,

> All Indiana citizens who paid money to Defendants pursuant to Defendants' *scheme to defraud* using the mail or wires; interstate transportation of stolen property; or extortion or any combination of these during the period beginning November 9, 2008 (four years prior to the filing of the original complaint in this action) through trial of this case.

(Filing No. at 396 at 8) (emphasis added).

The third, a Restitution subclass, is proposed as follows,

> All Indiana citizens who paid money to Defendants in payment of an *alleged debt* owed to Defendants for the period beginning November 9, 2006 (six years prior to the filing of the original complaint in this action) through the trial of this case.

(Filing No. at 396 at 8) (emphasis added).

A "fail-safe" class is one that is defined so that "whether a person qualifies as a member depends on whether a person has a valid claim."  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see also Dafforn v. Rousseau Assocs., Inc.*, Civil No. F 75-74, 1976 WL 1358, *1 (N.D. Ind. July 27, 1976) (defining a "fail-safe" class as a class "which would be bound only by a judgment favorable to plaintiffs but not by an adverse judgment.").  Such a definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.  *Messner*, 669 F.3d at 825.  "Rule 23 was never meant to be an exception to the rules of res judicata or to provide a risk-free method of litigation.  The class definition must be such that all (except those who opt out) are as much bound by an adverse judgment as by a favorable one." *Dafforn*, 1976 WL 1358 at *1.

Each of the proposed sub-classes includes the language of a valid claim in its definition. For instance, the FDCPA sub-class contains the criterion that the Defendants' collection activities "violate the FDCPA".  Similarly, the RICO sub-class includes the criterion that the Defendants acted pursuant to a "scheme to defraud".  Finally, the Restitution sub-class includes the criterion that the class members paid an "alleged debt".   It is reasonably foreseeable that, should the class members fail to prove their claims based on one of these claim-specific criteria, they would not be bound by the judgment because they would no longer be part of the class. *See, e.g.*, *Dafforn*, 1976 WL 1358 at *1 (concluding that a class defined by whether a homeowner was charged "an artificially fixed and illegal brokerage fee" was a "fail-safe" class because a jury determination that the defendants did not charge an illegal fee would determine there was no class and allow absent class members to relitigate the legality of the defendant's fee structures).  Accordingly, as defined, the Plaintiffs' proposed sub-classes are improperly "fail-safe".

In this regard, the Plaintiffs urge the Court to exercise its discretion and redefine the class instead of denying class certification.  *See Messner*, 669 F.3d at 825 (noting that the "fail-safe problem" can be often be avoided by refining the class definition rather than denying class certification on that basis).  However, the Plaintiffs do not offer any alternatives in their motion, and the Court is unable to conceive of a class definition that would encompass the Plaintiffs' claims and still satisfy the requirements of Fed. R. Civ. P. 23.  *See Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) (declining to exercise discretion to redefine class where it was "nearly impossible for [the] [c]ourt to fathom a class . . . that would be sufficiently definite.").

Indeed, as discussed in greater detail below, a determination of what the Defendants owned, if anything, and when the Defendants acquired ownership over it, will necessarily require an individualized review of the history of each Plaintiff's debt obligation, from creation and securitization through non-payment, "write-off", sale, and attempted collection.  Because of the significant number of individualized factual issues, the Plaintiffs' claims appear to be unmanageable as a class action under any definition.  *See, e.g.*, *Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 WL 329013, *7 (S.D. Ind. Jan. 22, 2015) (Pratt, J.) (declining to amend the class definition to avoid ascertainability problems, when individual issues predominated over the analysis and rendered potential amendments futile).

Because Plaintiffs' three proposed sub-classes are "fail-safe" classes and the Court does not conceive how the class can be amended to avoid individual factual inquiries, class certification is not appropriate for this reason alone.

B.      **Federal Rule of Civil Procedure 23(a)**

Nevertheless, even assuming that the Plaintiffs' claims could be amended to avoid being "fail-safe", class certification is not appropriate because Plaintiffs can satisfy some, but not all of the requirements of Fed. R. Civ. P. 23(a).

1.      **Numerosity**

The first Rule 23(a) prerequisite, numerosity, requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In order to satisfy the numerosity element, a plaintiff is not required to specify the exact number of persons in the class. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989); *Jackson v. Nat'l Action Fin. Servs.*, 227 F.R.D. 284, 287 (N.D. Ill. 2005) (noting that a class of forty is generally sufficient to satisfy the numerosity requirement). The Plaintiffs assert, and the Defendants do not contest, that the number of class members could easily number in the tens of thousands, noting that the Defendants collected on over 1,174,222 Indiana consumer accounts between 2008 and 2013. The Court agrees that the sheer number of potential class members easily satisfies the numerosity requirement of Rule 23(a).

2.      **Commonality**

The second Rule 23(a) prerequisite, commonality, requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts generally find that there is sufficient commonality among class members if their claims share a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 328 (S.D. Ill. 2009). Some factual variation does not preclude a finding of commonality; there need only be at least one question of law or fact common to the class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Cunningham Charter Corp.*, 258 F.R.D. at 328.

Central to each of the Plaintiffs' claims is the argument that LVNV did not actually own the Plaintiffs' debts when the Defendants and their agents engaged in collection activities against the Plaintiffs.  Underlying this argument is the Plaintiffs' theory that the "securitization" changed Plaintiffs' debts to asset-based securities and, after being written-off, were mere "data".   As a result, the Plaintiffs identify at least five factual and legal issues which they allege are "common to all class members' claims", including:

> (a) Whether Defendants and their agents properly engaged in collection activities against Indiana consumers;
> (b) Whether Defendants and their agents acquired legal ownership of class members' debt obligations;
> (c) Whether Defendants and their agents impermissibly pulled credit reports, performed outbound dialer activity, sent dunning letters, and filed lawsuits against Indiana consumers;
> (d)  Whether Defendants and their agents committed a scheme to defraud using the mail or wires; interstate transportation of stolen property; or extortion; and
> (e) Whether Defendants and their agents engaged in collection activity without legal standing.

(Filing No. 395 at 3-4.)  The Court agrees that there is a "common nucleus of operative fact" pervading each of the Plaintiffs' claims.  Indeed, each of the Plaintiffs' claims hinge entirely on whether LVNV actually owned their debts when the Defendants and the Defendants' agents engaged in collection activity against the Plaintiffs.

### 3.     Typicality

The third Rule 23(a) prerequisite, typicality, requires that the claims of the representative party be "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A party's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and the class representative's claims are based on the same legal theory.  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006); *Bledsoe v. Combs*, No. NA 99-153-C H/G, 2000 WL 681094, *2 (S.D. Ind. Mar. 14, 2000).  Even though some factual

variations may not defeat typicality, the requirement is meant to ensure that the class representatives' claims "have the same essential characteristics as the claims of the class at large." *Id.* When evaluating typicality, courts generally focus on the conduct of the defendant and the nature of the injuries to the putative class members. *Rosario*, 963 F.2d at 1018; *Cunningham Charter Corp.*, 258 F.R.D. at 328.

Despite relying on the common legal theory that LVNV could not have obtained ownership of the Plaintiffs' debts as a result of securitization, Defendants assert that Plaintiffs cannot produce evidence that their debts were actually securitized. As a result, Defendants argue that the named Plaintiffs claims are not typical of the other class members, whose claims depend on establishing that the class members' debts were securitized. Although the Plaintiffs assert that discovery is ongoing and that their discovery efforts have been impeded by the Defendants harsh tactics, the Court is concerned that, after nearly three years of discovery, the Plaintiffs still cannot affirmatively demonstrate evidence to establish their primary legal theory in regards to the four named Plaintiffs' debts.

While a motion to certify does not test the merits of the case, the Court must conduct a "rigorous investigation" into the propriety of class certification and "similarities of claims must be demonstrated rather than assumed". *Livingston*, 339 F.3d at 558; *Szabo*, 249 F.3d at 677. If the named Plaintiffs' debts *were not* securitized and the Plaintiffs must rely on a securitization theory to establish their claims, then the named Plaintiffs' claims are not typical of the class. Alternatively, if the named Plaintiffs' debts *were* securitized but the Plaintiffs' attorney cannot demonstrate securitization for even the four named Plaintiffs, let alone a class of tens of thousands of Indiana consumers, the Plaintiffs may not be "adequate" for purposes of class certification. In either case, without some indication of how the Plaintiffs will establish their securitization theory,

particularly in regards to the four named Plaintiffs, the Court cannot conclude that the named Plaintiffs' claims are typical of the class.

In addition, Defendants note that named Plaintiff Robert Goodall may not have standing to pursue his claims, since he filed for bankruptcy and fully paid a claim to LVNV pursuant to his court-approved Chapter 13 plan. Defendants assert that they have a *res judicata* defense against Robert Goodall as a result of the final bankruptcy order. Defendants persuasively argue that Robert Goodall's claims are not typical of the class because they are subject to unique defenses that are not typical of class members who did not file for bankruptcy. The Court agrees that this is enough to conclude that, Robert Goodall's claims are not typical of the other class members' claims. *See Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619-TWP-TAB, 2015 WL 329013, *4-5 (S.D. Ind. Jan. 22, 2015) (Pratt, J.) (Concluding that the plaintiff's claims were not typical because the defendants' defenses against the named plaintiff's claims were not typical of the defenses against the proposed class).

### 4. <u>Adequacy</u>

The fourth Rule 23(a) prerequisite, adequacy, requires that the class representative be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the "different, separate, and distinct interest" of the class members. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

A class representative is adequate as long as its claims do not conflict with, and are not antagonistic to the claims and interests of the class members it seeks to represent. *Id.*; *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 329 (S.D. Ill. 2009). In order to satisfy the adequacy prerequisite, the class representative must "possess the same interest and suffer the same

injury as the class members." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.,* 309 F.3d 978, 985 (7th Cir. 2002); *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 329 (S.D. Ill. 2009). Also, counsel for the named plaintiffs must be experienced, qualified, and generally able to conduct the litigation. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981); *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 329 (S.D. Ill. 2009) (noting that the adequacy prerequisite requires that the court select counsel that is "best able to represent the interests of the class.").

The Court has discussed its concerns regarding the adequacy of the named Plaintiffs if they cannot produce evidence to demonstrate their primary legal theory after three years of discovery. However, the Court is not clear whether the Plaintiffs lack such evidence or just failed to discuss it for purposes of their motion for class certification, and such inquiries are better addressed in relation to a Rule 56 motion.

With respect to class counsel, Defendants attempt to persuade the Court that the Plaintiffs' attorneys are not adequate because they have not stated whether they can commit adequate resources to a class-wide case and have, otherwise, been unsuccessful in discovery. The Court is not persuaded by either argument.

Unlike the attorney in *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, who moved to serve as class counsel shortly after leaving a law firm, the Plaintiffs' attorneys are well-established in a law firm that has significant experience litigating class action cases. No. 09 CV 3690, 2013 WL 6050431, *3-4 (N.D. Ill. Nov. 15, 2013). Further, it is not the law that class certification requires a showing of financial might, as the Defendants suggest. Indeed, such a rule would run contrary to the superiority requirement of Rule 23(b)(3), which evaluates whether certifying a class serves the desired purpose of aggregating "relatively paltry potential recoveries"

into an economically viable case. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *Cunningham Charter Corp.*, 258 F.R.D. at 332.

In addition, even a cursory review of the procedural history of the case, reveals a history of contentious discovery disputes with "wins" and "losses" on both sides. Indeed, currently pending before this Court is the Plaintiffs' *fourth* motion to compel discovery responses from the Defendants. If anything, this lends credibility to the Plaintiffs' assertion that Defendants have been difficult in the exchange of discovery. Regardless, the rule is not whether the Plaintiffs' attorneys are successful in winning a contentious discovery war, but whether the Plaintiffs' attorneys are "generally able to conduct the litigation". *See Eggleston*, 657 F.2d 890, 896 (7th Cir. 1981). After three years of litigation, there is no evidence before the Court that would undermine the conclusion that the Plaintiffs' attorneys meet this criterion. Accordingly, the Court concludes that the adequacy requirement of Rule 23(a) is met in this case.

Nevertheless, because the named Plaintiffs cannot demonstrate that their claims are typical of the other class members, Plaintiffs cannot satisfy all of the requirements of Fed. R. Civ. P. 23(a) as required. As a result, class certification is also not justified for this reason.

## C.   Federal Rule of Civil Procedure 23(b)

Finally, even assuming the Plaintiffs could satisfy the requirements of Fed. R. Civ. P. 23(a), the Plaintiffs cannot satisfy Fed. R. Civ. P. 23(b)(3)'s additional requirements of predominance and superiority. In addition to satisfying all four of the Rule 23(a) prerequisites, the party seeking class certification must demonstrate that its proposed class falls within at least one of the enumerated Rule 23(b) categories. *Cunningham Charter Corp.*, 258 F.R.D. at 330. In this case, the Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3).

Fed. R. Civ. P. 23(b)(3) authorizes the certification of a class action if the court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3) also lists four non-exhaustive factors relevant to a determination of "predominance" and "superiority", including: 1) the class members' interest in individually controlling the prosecution or defense of separate actions; 2) the extent and nature of any litigation concerning the controversy already begun by or against class members; 3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and 4) the likely difficulties in managing a class action.

The Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Cunningham Charter Corp.*, 258 F.R.D. at 332.  Additionally, implicit in Rule 23(b)(3) is the understanding that it was designed "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action . . . by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997); *Cunningham Charter Corp.*, 258 F.R.D. at 332.

The predominance requirement is satisfied when "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication."  *Messner*, 669 F.3d at 815.  Common questions predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class.  *Id*.  There is no

17

mathematical or mechanical test for evaluating predominance.  *Id.* at 814.  However, the purpose

of the predominance requirement is to ensure that a proposed class is sufficiently cohesive to

warrant adjudication by representation.  *Golon v. Ohio Sav. Bank*, No. 98 C. 7430, 1999 WL

965593, *4 (N.D. Ill. Oct. 15, 1999).

At the class certification stage, the plaintiff need not prove their legal theory but must,

instead, "demonstrate that their legal theory is *capable of proof at trial* through evidence that is

common to the class rather than individual to its members."  *Messner*, 669 F.3d at 818 (emphasis

in original); *Blair v. Supportkids, Inc.*, No. 02 C 0632, 2003 WL 1908031, *4 (N.D. Ill. Apr. 18,

2003) ("[i]f liability questions are not subject to class wide proof but, rather, would require both

individual and fact intensive determinations, common issues cannot be found to predominate");

*Golon*, 1999 WL 965593 at *4 (noting that predominance may be found "when there exists

generalized evidence that proves or disproves an element on a simultaneous, class-wide basis",

thereby "obviat[ing] the need to examine each class member's individual position.").

> If, to make a prima facie showing on a given question, the members of a proposed
> class will need to present evidence that varies from member to member, then it is
> an individual question.  If the same evidence will suffice for each member to make
> a prima facie showing, then it becomes a common question.

*Messner*, 669 F.3d at 814 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Fed. R. Civ. P. 23(b)(3)'s predominance requirement is the chief obstacle to the Plaintiffs'

motion for class certification.  As already discussed, central to each of the Plaintiffs' claims is the

argument that LVNV did not actually own the Plaintiffs' debts when the Defendants and the

Defendants' agents engaged in collection activities against the Plaintiffs.  Underlying this common

argument is the Plaintiffs' theory that the "securitization" changed Plaintiffs' debts to asset-based

securities and, after being written-off, mere "data".   To prove this legal theory, the Plaintiffs

identify at least five factual and legal issues which they claim are "common to all class members'

claims", including:

> Whether Defendants and their agents acquired legal ownership of class members'
> debt obligations, and
> . . .
> Whether Defendants and their agents engaged in collection activity without legal
> standing.

([Filing No. 395 at 3-4](#).)  As the Defendants point out, to prove these underlying theories and resolve

these common factual and legal issues, individualized proof will be necessary for each of the class

member's claims.  In particular, the Plaintiffs will need to establish that each class member's debt

was securitized, was written-off by the originating bank or servicer, was sold either as "data" or as

debt to the Defendants, and that the sale took place prior to the Defendants' collection activities

against the individual class member.

   In response, the Plaintiffs have not offered any indication how they intend to establish these

critical facts through class-wide proof, arguing instead, that such considerations are not properly

considered pursuant to a motion for class certification.  The Plaintiffs are mistaken as they must

"demonstrate that their legal theory is capable of proof at trial through evidence that is common to

the class rather than individual to its members" to demonstrate predominance.  *See Messner*, 669

F.3d at 818; *Blair*, 2003 WL 1908031 at *4; *Golon*, 1999 WL 965593 at *4.  Indeed, courts

frequently deny certification when class-wide legal theories cannot be demonstrated through

common evidence.  *See, e.g.*, *Panwar*, 2015 WL 329013 at *5 (concluding that individual factual

assessments regarding each plaintiff's subjective state of mind predominated and precluded class

certification); *Cunningham Charter Corp.*, 258 F.R.D. at 334-35 (concluding that individual

factual assessments regarding each plaintiff's warranty denial predominated and precluded class

certification because the common questions were not susceptible to class-wide proof, creating

19

"intractable manageability problems" and "casting grave doubt on the superiority of the class mechanism" for resolving the plaintiffs' claims); *Blair*, 2003 WL 1908031 at *5 (concluding that individual factual assessments regarding each plaintiff's child support status predominated and precluded class certification); *Bledsoe*, 2000 WL 681094 at *5 (concluding that individual factual assessments regarding each plaintiff's police search predominated and precluded class certification); *Williams v. Ford Motor Co.*, 192 F.R.D. 580, 585 (N.D. Ill 2000) (concluding that individual factual assessments regarding each plaintiff's warranty contracts predominated and precluded class certification).

Given the sheer enormity of the proposed class and the complexity of the Plaintiffs' legal theories, without some indication that the Plaintiffs' claims are capable of proof through evidence common to the class rather than individual to its members, the Court is not persuaded that common issues predominate in this case or that a class action is the superior method for litigating the Plaintiffs' claims. As a result, the Plaintiffs also cannot satisfy the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). Accordingly, denial of the Plaintiffs' motion for class certification is appropriate.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiffs' Motion for Class Certification (Filing No. 395).

**SO ORDERED.**

Date: 1/22/2016

_____

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert D. Cheesebourough
ruaneagle@aol.com

Matthew D. Boruta
CHEESEBOUROUGH & BORUTA
boruta17@hotmail.com

Amy E. Romig
PLEWS SHADLEY RACHER & BRAUN
aromig@psrb.com

Frederick D. Emhardt
PLEWS SHADLEY RACHER & BRAUN
emhardt@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

F. Ronalds Walker
PLEWS SHADLEY RACHER & BRAUN
rwalker@psrb.com

James A. Rolfes
REED SMITH LLP
jrolfes@reedsmith.com

Michael L. DeMarino
REED SMITH LLP
mdemarino@reedsmith.com

Nicholas G. Whitfield
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606-7507

Thomas L. Allen
REED SMITH LLP
tallen@reedsmith.com

Timothy R. Carraher
REED SMITH LLP
tcarraher@reedsmith.com

Stephanie Snell Chaudhary
RILEY BENNETT & EGLOFF LLP
schaudhary@rbelaw.com

James W. Riley, Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com