IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW COX, *et al.*, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SHERMAN CAPITAL LLC, *et al.*,<br><br>Defendants. | Civil Action No.: 1:12-cv-1654-TWP-MJD<br><br>CLASS ACTION |

## MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER DENIAL OF CLASS CERTIFICATION

Plaintiffs respectfully request that the Court reconsider its Denial of Class Certification, most recently in its "Entry on Plaintiffs' Motion for Class Certification." [Dkt. 529]. First, there is additional discovery bearing on the issue of ownership of the debt allegedly being collected upon. After the Plaintiffs moved for class certification and the briefing was complete, discovery continued and Defendants produced documents that could impact how the case proceeds. Furthermore, Plaintiffs *are still* waiting for Defendants to produce unredacted copies of those documents to allow the parties to fully litigate the issues impacted by those documents. Furthermore, these new documents demonstrate that in fact, Plaintiffs' claims will be subject to proof through evidence that is common to the class – it will not require individual inquiries to resolve every issue. Thus Plaintiffs request that the Court review this new evidence, reconsider its Entry on Plaintiffs Motion for Class Certification, and certify a class in this matter.

Second, the denial of class certification is based in part on the "Entry on Motion to Reconsider" [Dkt.237] entered by the Court on March 31, 2014.  In that entry, this court dismissed Count I and Count II of the original complaint overruling Magistrate Judge Dinsmore's "Report and Recommendation" [Dkt.131] which recommended class certification and his  "Report and Recommendation" [Dkt. 151] recommending denial of the motion to dismiss Count I and Count II of the original complaint.  Proof of Count I, failing to register as a debt collector under Indiana law and Count II, failing to be licensed to do business, also are subject to evidence, believed to be undisputed, and common to the class.  Reconsideration of all these arguments is essential to full and complete consideration of whether to certify this case as a class action.

### A. Defendants Treat Every Account Owned by LVNV Funding, Inc. the Same – thus Ownership Can Be Decided on a Class-wide Basis

#### 1. The Ownership of All Accounts Can be Determined by the Same Evidence

Plaintiffs have alleged both that the accounts at issue were securitized before Defendants allegedly purchased them, and that Defendants also engaged in activities *after* they acquire the accounts that may divest Defendants of ownership of the accounts.[1]  [Dkt. 493]  Even if the accounts were not securitized before Defendants acquired them, the question of Defendants' ownership does not stop

---

[1] "Plaintiffs will be able to prove that the accounts at issue are, in effect, owned by investors (the investors ultimately receive the benefit of collection activities), not LVNV….The Defendants have misrepresented the true recipients of the monies unjustly collected from Plaintiffs, and on whose real behalf the collections and litigations have taken place." Plaintiffs Statement of Claims, pp. 2-3. [Dkt. 493]

there – if Defendants' subsequent actions divested them of ownership this is another (and independent theory) upon which Plaintiffs may prevail.

Through discovery, Plaintiffs learned how Defendants dealt with the accounts after they were acquired by LVNV. However, Plaintiffs did not receive this information until October of 2015, well after the completion of class certification briefing. Aff. of A. Romig, attached hereto as Exhibit 1, ¶¶4-5. Plaintiffs are still having difficulty determining the exact nature of the transactions since the documents produced are heavily redacted and as of the date of this filing Plaintiffs still have not received unredacted copies.[2] *Id.* Notwithstanding the difficulty in reviewing the documents – there is no doubt that all of the accounts are covered by these uniform sets of documents and thus any legal conclusion regarding ownership can be determined on a class-wide basis by reviewing these documents and how Defendants proceeded under these documents.[3]

This question of what Defendants did after they acquired the accounts is subject to decision on a class-wide basis that is not particular to each Plaintiff.

---

[2] The Court ordered Defendants to produce these documents unredacted by February 5, 2015 in response to Plaintiffs Fourth Motion to Compel. [Dkt.535]. Defendants, however, filed an emergency motion requesting clarification of the order. [Dkt. 537]. In response to various filings by the Defendants, The Court gave Defendants until February 12, 2016 to produce these unredacted documents. [Dkt. 541].

[3] Plaintiffs believe that once Defendants produce unredacted documents produced by non-Party Moody's Analytic's Inc. ("Moody's") that this information may support proof regarding how Defendants acted under the agreements. Again, this inquiry focuses on Defendants' conduct which can be decided on a class-wide basis.

Defendants do not handle different accounts in different ways, they themselves state that "LVNV financed the purchase of credit card debts using receivables financing in which it used the debts as collateral..." Defendants Memorandum of Law In Support of Their Motion for Summary Judgment (hereinafter "Summary Judgment Memorandum"), p. 25[4] [Dkt. 495]. Defendants finance these deals through a Receivables Financing Agreement ("RFA")[5]. All of the accounts covered by the RFA are also subject to the same "Security Agreement."[6]

The RFA specifies how the money is to be handled once it has been collected from consumers – and how the money is to be distributed.[7] LVNV 2931, LVNV 3051. Each RFA details how the Collateral Agent (the agent for the investors) may take control of the bank account that contains the collection proceeds generated from the consumer accounts. LVNV 2937, LVNV 3053.

---

[4] Throughout its Memorandum in Support of Summary Judgment, Defendants claim that they retain ownership through the entire process. The fact of "ownership" is a question at issue in this case despite Defendants' self-serving statements. Once again, this is an issue regarding Defendants unrelated to any differences between class representatives or potential class members.

[5] The Defendants have produced the RFA applicable during the relevant time frame and its amendment. These documents are attached hereto as Exhibits 2 and 3 respectively, and begin at Bates Labels LVNV 2899 – "Amended and Restated Receivables Financing Agreement dated as of May 30, 2007 and LVNV 3007 -- Second Amended and Restated Receivables Financing Agreement dated as of November 7, 2008. These documents were produced in heavily redacted form, and are also the subject of the Court's Order references in Footnote 2.

[6] The Security Agreement is attached hereto as Exhibit 4, and begins at Bates Label LVNV3149.

[7] This section has been redacted, but it is doubtful, given its length, that it would treat different plaintiff accounts in different ways.

4

Defendants' own Tr.R. 30(b)(6) witness confirms that *all consumer accounts* are treated identically. In particular, Defendants have stated that all of these "receivables" are pledged as security under loan agreements:[8]

> Q: So all receivables of LVNV –
> A. Yes.
> Q: --are—
> A. Because LVN –yes. Well, all – as we said before, all assets of LVNV are pledged to the lenders as security under the loan agreement.

(Dep. Tr. of Scott Silver, Vol. 2, pp. 130-131, ll23-3, attached hereto as Exhibit 5).

Furthermore, all of the money collected from consumers on these accounts is treated the same:

> A. A consumer doesn't really send money to LVNV. The consumer will send money to either Resurgent or more likely to a servicing agent/subservices that Resurgent has engaged.
> Q. And then the subservicer would send the money to Resurgent?
> A. The money finds its way to the collection account. I'm not sure exactly within the context of the loan structure how those monies flow but I think there's – you know, there's two accounts, a collection account and a consolidated deposit account. I don't know which one it goes into first actually –
> Q. Okay.
> A. -- but there's a structure by which the money is effectively protected for the interests of the lender, all right, because that's his – that's his – part of his collateral package for the loan is the money that's generated by the receivables that he's lending money on. So he doesn't want to lose control of it, basically. He doesn't want it going outside of a secured structure.

Dep. Tr. Silver, pp. 124-125, ll.20-16.

---

[8] *See also* Summary Judgment Memorandum, p. 3 describing the structure of Defendants' business.

### 2. Defendants Concede by Their Summary Judgment Filing that the Case Can be Proven on a Class-wide Basis

Defendants have moved for Summary Judgment jointly against Plaintiffs – they did not file four motions for summary judgment against each Plaintiff. Rather, Defendants moved for summary judgment claiming that as a matter of law the way they did their business did not divest LVNV of its ownership (Summary Judgment Memorandum, p. 25), or that even if LVNV securitized the accounts it holds that it would not divest LVNV of its right to collect Plaintiffs' debts (Summary Judgment Memorandum, p. 28).

Defendants cite the RFA described above for proof that LVNV owns all of the accounts at issue in this case (as well as *any accounts* LVNV allegedly owns, not just Indiana accounts) and that it did not sell the accounts to investors. While Plaintiffs disagree about the legal meaning of the RFA and how Defendants describe the structure of their business,[9] Plaintiffs do agree with Defendants that the Court can determine whether LVNV owns the consumer accounts or whether it in effect transferred ownership to the investors based upon their rights in these documents. Nowhere in its Summary Judgment Memorandum on this issue do

---

[9] Defendants maintain that throughout these transactions they maintained ownership of the consumer accounts. However, title alone is not the sole indicia of ownership of personal property in Indiana. *Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) indicates that possession of title is not enough – rather, the courts will look at title, possession, and control to determine ownership. That case indicated that a jury could look at the facts surrounding the transfer, possession, or control of the personal property. *Id.* at 324-325. Defendants admit that these documents are common to all of the consumer accounts and that these will be the documents determining the transfer, possession, or control of the consumer accounts.

Defendants refer to different documents that apply to the different plaintiffs. Rather, Defendants ask this Court to look at the same evidence to determine that LVNV did not transfer ownership of the accounts to investors, but rather still owns each of Plaintiffs' accounts. Defendants' own summary judgment motion and the evidence they have produced in support of that motion shows that this issue can be determined on a class-wide basis.

Furthermore, Defendants also moved for summary judgment as to its state of mind under the Racketeering Influenced and Corrupt Organizations Act ("RICO") claims.[10] (Summary Judgment Memorandum, p. 29). Defendants do not produce evidence about its state of mind for RICO that is specific to each Plaintiff; rather Defendants talk about the knowledge and conduct of Defendants. That common course of conduct applies to all Plaintiffs, and thus is also determinable on a class-wide basis. In fact, besides the issue of whether the originating banks securitized the accounts[11] – Defendants have moved for summary judgment on every other claim based upon evidence and legal arguments common to every Plaintiff. Defendants' own Memorandum in Support of Summary Judgment supports certifying this action as a Class.

---

[10] Plaintiffs deny that Defendants are presenting the correct *scienter* requirement with respect to RICO, these issues will be addressed in Plaintiffs' response to Defendants Motion for Summary Judgment.

[11] Plaintiffs do not have to prove that the accounts were securitized by the originating banks *and* that they were sold by Defendants to prevail. Plaintiffs will only have to prove one of these cases in order to prevail on the Fair Debt Collection Practices Act claim related to ownership.

7

### 3. The fact that some Plaintiffs have Filed Bankruptcy is *Not* Fatal to Class Certification

The Court cited the fact that putative class representative Robert Goodall filed bankruptcy and thus Defendants may have a *res judicata* defense against him as sufficient proof that Goodall's claims might not be typical of those class members who did not file bankruptcy. [Dkt. 529, p. 14]. However, the fact that one representative may have claims that are typical of the claims of the class is not a reason to deny the entire class. Rather the solution is to remove Goodall. *See Spizzirri v. C.I.L., Inc.,* 1994 U.S. Dist. LEXIS 11719, 9-12 (N.D. Ill., Aug. 18, 1994) (Although the Seventh Circuit has not specifically addressed the issue, other courts have recognized a policy freely permitting substitution[12] of one named plaintiff for another if necessary). Furthermore, the Court denied the remaining class representatives based upon the fact that the Court did not believe Plaintiffs would be able to show that the originating banks securitized their accounts. As discussed above – Plaintiffs will be able to prove a common course of conduct of Defendants after they allegedly acquired the accounts and the representative Plaintiffs' claims are typical of all class members because Defendants admit that they financed *all* of their accounts the same way. It is therefore appropriate to determine that Andrew Cox, Lucinda Cox, and Stephanie Snyder are adequate class representatives and their claims are typical of other class members regardless of how the Court handles Robert Goodall.

---

[12] Here substituting for Mr. Goodall would not be necessary since there are other potential Class Representatives.

Moreover, even if Robert Goodall did file bankruptcy and not all class members did so, this is not a reason to deny class certification or to remove Mr. Goodall as a class representative. First, the Court seems to be addressing the merits of Goodall's claim when discussing the potential effect of bankruptcy and this is not appropriate at the class certification stage. Class certification is not a time to decide the case on the merits. *Schlelcher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). "The question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

Furthermore, class treatment is not only appropriate for Plaintiffs' claims, but also any defenses raised by Defendants. The way in which bankruptcy may or may not affect the claims of any class members who have filed bankruptcy can be decided on a class-wide basis applicable to every class member who filed bankruptcy. This is a legal question that is common to all class members against whom Defendants may claim the defense of bankruptcy. If the Court decides at a later date that filing bankruptcy has the effect of *res judicata* as Defendants claim, it can and should amend the class definitions to exclude anyone who has filed bankruptcy.

### B. The Court Improperly Dismissed Counts I and II on Plaintiffs Initial Complaint – Which Could have Been Decided on a Class-wide Basis

Plaintiffs' original complaint alleged that Defendants were engaged in collection practices without being licensed in Indiana. [Dkt 1, ¶¶74-91]. Likewise the original complaint alleged that Defendants failed to obtain a registration mandated by Indiana under IND. CODE §23-1-49-1. [Dkt. 1, ¶¶92-99]. On March 31, 2014 the Court dismissed these claims. [Dkt. 237, pp 14-16]. The dismissal of these claims was without support and should be reconsidered as well. If reversed, this claim serves as support for certification of a Class since the only question – whether or not Defendants were required to register in Indiana as debt collectors and/or obtain a certification to transact business in Indiana and whether they did so – can be determined on a class-wide basis without any reference to any characteristic or fact particular to any class member.

### 1. Failure to Register as a Debt-Collector and Failure to is the Basis of an FDCPA Violation

Many circuits have held that being non-licensed in a state can support a Fair Debt Collection Practices Act ("FDCPA") claim. *See Leblanc v. Unifund CCR Partners*, 601 F3d 1185, 1192 (11th Cir. 2010); *Bradshaw v. Hilco Receivables LLC*, 765 F. Supp. 2d 719, 729 (D. Md. 2011); *Hauk v. LVNV Funding LLC*, F. Supp. 2d 358, 366 (D. Md. Nov. 5 2010); *St. Denis v. New Horizon Credit Inc.*, 2006 U.S. Dist. LEXIS 47446, 3 (D. Conn. July 12, 2006); *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995); *Russey v. Rankin*, 911 F. Supp. 1449, 1459 (D.N.M. 1995); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443 (D. Nev. 1994).

Furthermore, judgments entered in favor of an unlicensed debt collection agency have also been found to be void. *LVNV Funding LLC v. Trice*, 952 N.E.2d

1232 (Ill. App. 2011); *Finch v. LVNV Funding LLC*, 212 Md. App. 748 (Md. App 2013).

In this case, the magistrate recommended denying Defendants' motion to dismiss Plaintiffs' FDCPA claims that were based upon Defendants' failure to obtain a Debt Collection License in Indiana. [Dkt. 151 at 10-13]. The Court did not follow the Report and Recommendation, instead relying solely upon *Fausett v. Mortgage First, LLC*, 2010 US. Dist. Lexis 24315 (N.D. Ind. March 12, 2010) for the proposition that "[r]egardless of whether the Defendants are or are not required to obtain a license under the ICAA, alleged violations of the ICAA cannot form the basis of an FDCPA claim under §1692e." [Dkt. 237, p. 12]. The Court followed a non-binding Northern District of Indiana opinion and ignored the wealth of law from other Circuits which have found that failure to be licensed or registered in a state *is a* misrepresentation under the FDCPA.

Section 1692e is a general provision that prohibits a debt collector from "any false, deceptive, or misleading representation or means in connection with the collection of any debt." This general prohibition is intended to cover deceptive collection acts and practices that do not fit the specifically enumerated prohibitions in the subsections of §1692e (such as prohibiting statements indicating that a debt collector is "vouched for" by a state under §1692e(1), which would cover the affirmative misrepresentation that the court was looking for in *Fausset*.) Congress recognized that it would be impossible to foresee every type of deceptive collection misbehavior and expressly provided this general standard to give courts the

11

flexibility to proscribe improper conduct not specifically anticipated and addressed in the Act.  See S. Rep. No. 382, 95th Cong., 1st Sess. 4, at 4, *reprinted in* 1977 USCCAN 1695, 1696; *see also* FTC Official Staff Commentary §807.  Courts are encouraged to construe §1692e to address new forms of deception, which explains the reason that so many courts have found that failure to obtain the correct state licenses is a violation under §1692e.  This Court should have done the same.

In addition *Fausset* also implies that there are some circumstances in which a state law violation *may* be an FDCPA violation, yet this Court ignored that part of the *Fausset* case.  The *Fausset* Court also looked at §1692f to see whether it was unfair and unconscionable to allow defendants in that case to violate state law in the collection of the debt.  *Fausset,* 2010 U.S. Dist. LEXIS 24315 at *11.  The Court denied summary judgment to plaintiffs in *Fausset* on the issue of whether they violated §1692f.  The *Fausset* Court failed to go as far as stating that failure to be licensed could never constitute a violation of §1692f.  Rather, in resisting the plaintiff's motion for summary judgment under §1692f, the defendant submitted an affidavit that it was not a collection agency and thus did not need to be licensed. *Id.* at 13.  The court determined that issues of fact existed that prevented entry of summary judgment under §1692f.  *Id.* at 13-14.

Besides the fact that *Fausset* is not controlling and does not set a blanket prohibition on finding the failure to follow state law as an FDCPA Violation, this Court should not have followed *Fausset* because more recent case law decided after *Fausset* overrules the holding in *Fausset*.  Two years later the Northern District

decided *Fick v. American Acceptance Company, LLC,* 2012 Lexis 43761 (N.D. Ind. March 28, 2012). There the court specifically stated that "there is no Seventh Circuit precedent that is dispositive on the issue of whether a state law violation can form the basis of a Section 1692e claim, the best approach, an approach taken by numerous district and appellate courts, is to determine if the alleged violation of state law is also a violation of the FDCPA." *Id.* at *10. In *Fick*, the court dealt with a 1692e(5) claim which is the "threat to take any action that cannot legally be taken or that is not intended to be taken." Since the FDCPA complaint was based on a lawsuit filing, the Court held that the filing of a lawsuit was not a threat. However, the Court failed to rule that the filing of the lawsuit was not a violation of §1692e but simply stated in footnote 4 that the issue was not raised by the plaintiff, hence was not addressed.

This court erred in finding that Defendants' failure to register as debt collectors in Indiana could never be a violation of the FDCPA and thus dismissing that claim. Plaintiffs therefore request that the Court reconsider its dismissal of Count I of Plaintiffs' Original Complaint and use that as a basis to certify a class in this action.

### 2. Failure to Obtain A Registration Pursuant to IND. CODE §Register as a Debt-Collector and Failure to is the Basis of an FDCPA Violation

13

The Indiana Foreign Corporation Registration Statute ("IFCRS") requires foreign corporations to register with the Indiana Secretary of State to conduct business in Indiana. IND. CODE §23-1-49-1. The Magistrate correctly pointed out that although there are some exceptions to the definition of "transacting business" (which includes "securing or collecting debts") that to determine whether a company transacts business in a district you must look at various "every day business concepts." The Magistrate looked at all of the activity conducted by Defendants in Indiana – which includes filing lawsuits, sending letters, and using affidavits in Indiana. [Dkt. 151, p. 14]. This Court dismissed that reasoning, saying that since securing or collecting debts is excluded from the transaction of business, nothing Defendants do would qualify. [Dkt. 237, p. 13] Plaintiffs' claims should not be dismissed so easily. The Court should not have dismissed the activity in filing lawsuits, sending letters, and drafting affidavits as simply "securing or collecting debts." Although some of Defendants' activities possibly fall under that exception, it is unreasonable on a motion to dismiss to sweep *all* of Defendants' actions within the state into that exception as this Court did when dismissing Count II of Plaintiffs' original complaint. Also, as discussed above, this Court was incorrect that violation of state law could never be a violation of the FDCPA.

This court erred in finding that Defendants' failure to obtain a registration before conducting business in Indiana could never be a violation of the FDCPA and thus dismissing that claim. Plaintiffs therefore request that the Court reconsider

its dismissal of Counts I and II of Plaintiffs' Original Complaint and use that as a basis to certify a class in this action.

## C. The Court Should Have Reformed the Class Definitions

The Court has ruled that Plaintiffs' subclasses are impermissible "Fail-Safe" classes because the class is defined such that a person is a member only if they have a valid claim. The Seventh Circuit, however, has indicated that even if the class definitions can be construed as a fail-safe class definition, that is not a basis for denying class certification because "[d]efining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science. *Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.*" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (emphasis added). In fact, this Court has determined that considering a class definition does not require merely accepting or rejecting Plaintiffs' suggested class definition, but rather should consider modification of the definition. *Martin v. American Med. Sys.*, 1995 U.S. Dist. LEXIS 22169, *21 (S.D. Ind. Oct. 25, 1995).

Furthermore, the definition of the class is flexible so that the Court may manage the class as more information comes forth and the lawsuit changes. *See Campbell v. First Am. Title Ins. Co.,* 269 F.R.D. 68, 73 (D. Me. 2010) (court revised class definition to correct problem); Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judge,* Third Edition, Federal

Judicial Center 2010 ("Feel free to suggest broader or narrower definitions that would make a proposed class more manageable.").

Finally the Court's order highlighted language in the proposed class definitions it thought made the class definitions "fail-safe" definitions. For example, the proposed FDCPA subclass included the term "subject of collection activity or activities which violate the FDCPA..." These portions of the class definitions are elements which Plaintiffs will have to prove, they are not required in order to define the class of Indiana consumers that will be affected. In fact, as discussed above, Plaintiffs contend that *every Indiana citizen* who was subject to collection activities by Defendants or their agents should be in the class because how LVNV handled the accounts is common to *every Indiana citizen* for which LVNV allegedly owns their account. This is true because LVNV handles every single account it owns in the same manner through its financing arrangements. Thus, in light of the documents generated during discovery strongly implying that LVNV's transactions in financing purchase of the pools of consumer accounts may have divested LVNV of actual control, and thus ownership of the consumer accounts and the resultant collection proceeds, it is appropriate to redefine the classes such that the FDCPA Subclass should be defined as:

      (i)     All Indiana citizens
      (ii)    who were the subject of collection activity by Defendants or Defendants' agents
      (iii)   for the period beginning November 9, 2011 through trial of this cause.

This subclass should capture all of the violations of Defendants since Defendants uniformly have insisted during the collections process that LVNV owns the debt and thus the representation that LVNV (and not its investors) own the debts would have been made during all Indiana collection activities by Defendants. Likewise, the other alleged violations of the FDCPA – failure to register as debt collectors in Indiana and failure to obtain a certification to transact business in Indiana would apply to all of Defendants' collection activities as well.

The RICO Subclass should be defined as:

(i) All Indiana citizens
(ii) who were the subject of collection activity by Defendants or Defendants' agents
(iii) and who paid money to Defendants or Defendants' agents
(iv) for the period beginning November 9, 2008 through trial of this cause.

Likewise, the Restitution Subclass should be defined as:

(i) All Indiana citizens
(ii) who were the subject of collection activity by Defendants or Defendants' agents
(iii) and who paid money to Defendants or Defendants' agents
(iv) for the period beginning November 9, 2006 through trial of this cause.

These class definitions are not fail-safe definitions. Furthermore, the claims of each of these classes may be adjudicated on a class-wide basis – as discussed above – whether Defendants' activities after they acquired the alleged consumer accounts divested them of the ownership (and effectively transferred it to the investors funding the purchase), whether Defendants' failure to register as debt collectors in Indiana rises to the level of an FDCPA violation, and whether

17

Defendants' failure to obtain a the correct certificate of authority under IND. CODE §23-1-49-1 to transact business in Indiana is an FDCPA violation – are all subject to a class-wide determination that does not change based upon any facts specific to any individual class member. Likewise, as can be demonstrated by Defendants' own memorandum in support of summary judgment, the remaining claims such as RICO and Restitution focus on the conduct of Defendants and thus can also be decided on a classwise basis. Since the claims (and any defenses) can be determined on a class-wide basis, Plaintiffs' claims are typical of the class and would satisfy the economies of time, effort, expense, and uniformity of decision required to demonstrate that certification is appropriate under Rule 23(b)(3).

For these reasons, the Plaintiffs respectfully request that Court reconsider its Denial of Class Certification.

Dated: February 5, 2016					Respectfully submitted,

*s/ Amy Romig*
*Attorneys for Plaintiffs*

George M. Plews, Attorney No. 6274-49
Frederick D. Emhardt, Attorney No. 10952-49
Amy E. Romig, Attorney No. 22523-49
F. Ronalds Walker, Attorney No. 1095-98
PLEWS SHADLEY RACHER & BRAUN LLP
1346 North Delaware Street
Indianapolis, IN 46202
Telephone: (317) 637-0700
Facsimile: (317) 637-0710
Email: gplews@psrb.com
　　　　femhardt@psrb.com
　　　　aromig@psrb.com
　　　　rwalker@psrb.com

Robert D. Cheesebourough
Matthew D. Boruta
CHEESEBOUROUGH &
BORUTA L.P.A.
543 E. Market Street
Indianapolis, IN 46204
Telephone: (317) 708-3925
Facsimile: (317) 638-2707  Email: rdc@home-saver.org
       boruta17@hotmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of February 2016, a copy of the foregoing was filed electronically and that all parties of record who have appeared should receive this document via the Court's electronic filing system.

*s/Amy Romig*